**RAINES FELDMAN LLP**
JOHN S. CHA (SBN 129115)
jcha@raineslaw.com
1800 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone:  (310) 440-4100
Facsimile:   (424) 239-1613

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
MARK E. ELLIOTT (SBN 157759)
mark.elliott@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone:  (213) 488-7100
Facsimile:   (213) 629-1033

Attorneys for Plaintiffs
TC RICH, LLC, Rifle Freight, Inc., Fleischer
Customs Brokers, Richard G. Fleischer, and
Jacqueline Fleischer

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TC RICH, LLC, a California Limited Liability Company, RIFLE FREIGHT, INC., a California corporation, FLEISCHER CUSTOMS BROKERS, a sole proprietorship, RICHARD G. FLEISCHER, an individual, and JACQUELINE FLEISCHER, an individual,<br><br>                    Plaintiffs,<br><br>          v.<br><br>HUSSAIN M. SHAIKH, an individual, HAROON KHAN, an individual, and SHAH CHEMICAL CORPORATION, a California Corporation.<br><br>                    Defendants. | Case No.: 2:19-CV-02123-DMG-AGR<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1.  **COST RECOVERY- OWNER LIABILTY;**<br>2.  **COST RECOVERY- OPERATOR LIABILTY;**<br>3.  **DECLARATORY RELIEF;**<br>4.  **CONTINUING PRIVATE NUISANCE;**<br>5.  **CONTINUING TRESPASS; and**<br>6.  **INJUNCTION RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

*TC RICH v. Shaikh, et al.*                                   **FIRST AMENDED COMPLAINT**

Plaintiffs allege as follows:

## INTRODUCTION

1.      This action arises out of hazardous substance contamination at and release from the real property commonly known as 132 West 132nd Street, Los Angeles, California (the "Property").

2.      Plaintiff TC RICH, LLC, the current record owner of the Property, discovered chemical contamination at its Property in 2015.

3.      The contamination included significant subsurface concentrations of volatile organic compounds, including tetrachloroethene (a.k.a. perchloroethylene or "PCE"), a known toxic and carcinogenic compound commonly used as a cleaning solvent.  In addition to appearing in soil, soil vapor, and in groundwater samples taken from the Property, airborne PCE has been detected within the structure on the Property at levels in excess of California Human Health Screening Levels ("CHHSLs") for indoor air concentrations for commercial/industrial sites.

4.      Plaintiffs bring this action under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 *et seq.* ("CERCLA") to recover the costs of response to the contamination that have now been and will continue to be incurred in responding to the contamination at the Property, and also under the Resource Conservation and Recovery Act 42 U.S.C. § 6901 *et seq.* ("RCRA") for injunctive relief and attorneys' fees.  Plaintiffs seek recovery of these costs from the prior owners, operators, and polluters that caused the ongoing contamination and release of hazardous substances at the Property.

5.      Plaintiffs have a complete third party defense to liability under CERCLA § 107(b)(3) (42 U.S.C. § 9607(b)(3)), having acquired ownership of the Property after all disposal of hazardous substances occurred as a result of actions or omissions solely by third parties, having no agency or contractual relationship with the third parties who solely caused the contamination through their actions or

1  inactions, having exercised due care with respect to the contamination, and having

2  taken precautions against foreseeable acts or omissions of the third parties.

3        6.      In the alternative, Plaintiffs qualify under the "innocent landowner"

4  third party defense under CERCLA §§ 101(35)(A) & 107(b)(3) (42 U.S.C. §§

5  9601(35)(A) & 9607(b)(3)), because Plaintiffs acquired the Property after all

6  disposal of hazardous substances had occurred, the contamination is solely a result

7  of the actions or omissions of third parties, and Plaintiffs made all appropriate

8  inquiries regarding the Property prior to Plaintiffs' purchase of same through

9  professional environmental investigations consistent with relevant ASTM standards.

10              **JURISDICTION AND VENUE**

11        7.      This Court has original jurisdiction pursuant to 42 U.S.C. § 9607(a), 42

12  U.S.C. § 6972(a), and 28 U.S.C. § 1331, and supplemental jurisdiction over the state

13  law claims pursuant to 28 U.S.C. § 1367.

14        8.      Venue is proper in the Western Division of the Central District of

15  California pursuant to 42 U.S.C. § 9607(a) and 28 U.S.C. § 1391(b) because the

16  events giving rise to this action, including the releases or threatened releases of

17  hazardous substances, occurred and are occurring at the Property, which is real

18  property located in this District.

19                    **PARTIES**

20        9.      Plaintiff TC RICH, LLC ("TC RICH"), is a California limited liability

21  company and is the Property's record owner.  TC RICH is a single purpose entity

22  created to purchase the Property.  Its members are Richard Fleischer and Jacqueline

23  Fleischer. TC RICH purchased the Property by way of conveyance from Eun H. Lee

24  in 2005.

25        10.     Plaintiff FLEISCHER CUSTOMS BROKERS is a sole proprietorship

26  of Richard G. Fleischer and conducts business on the Property and pays rent to TC

27  RICH.  Plaintiff RIFLE FREIGHT, INC., is a California corporation and conducts

28  business at the Property and pays rent to TC RICH.  Its shareholders are Richard

---

*TC RICH v. Shaikh, et al.*                    2        **FIRST AMENDED COMPLAINT**

1   Fleischer and Jacqueline Fleischer.  RICHARD and JACQUELINE FLEISCHER

2   are individual citizens of California, with their residence in Los Angeles County,

3   California.

4        11.    Plaintiffs TC RICH, FLEISCHER CUSTOMS BROKERS, RIFLE

5   FREIGHT, INC., RICHARD FLEISCHER, and JACQUELINE FLEISCHER

6   (collectively "Plaintiffs") bring this action as Potentially Responsible Parties (herein

7   "PRP") pursuant to the authority of Section 107(a)(4)(B) of CERCLA (42 U.S.C. §§

8   9607(a)(4)(B)), but further allege that they have a complete third party defense to

9   liability under Section 107(b)(3) of CERCLA (42 U.S.C. § 9607(b)(3)) or, in the

10  alternative, have a complete defense to liability as "innocent landowners" within the

11  meaning of Section 101(35)(A) of CERCLA (42 U.S.C. §§ 9607(b)(3) and

12  9601(35)(A)), in that Plaintiffs did not participate in any way in the disposal of toxic

13  or hazardous substances on the Property; acquired the Property after the disposal of

14  hazardous substances; did not know or have any reason to know at the time of the

15  acquisition of the Property that any hazardous substances were disposed there; had

16  no agency or contractual relationship with the parties responsible for the disposal of

17  hazardous substances at the Property; and conducted all appropriate inquiries

18  through professional environmental site reviews prior to purchasing the Property,

19  which reviews did not uncover the contamination.

20       12.    Defendant SHAH CHEMICAL CORPORATION ("Shah Chemical") is

21  named herein as a PRP pursuant to CERCLA Section 107(a)(2), 107(a)(3) and

22  107(a)(4), (42 U.S.C. §§ 9607(a)(2), (a)(3) and (a)(4)) in that said defendant was the

23  occupant and/or operator of the Property from approximately 1980 to 1983, during

24  which time said defendant actively transported to and disposed of hazardous

25  substances on the Property as more fully described herein.  Plaintiffs are informed

26  and believe that Shah Chemical was the predecessor entity to Pacifica Chemical

27  Incorporated ("Pacifica Chemical"), which took over site operations from Shah

28  Chemical beginning in and around 1983.

13.     Defendant Hussain M. Shaikh ("Shaikh") is named herein as a PRP pursuant to CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2), in that said defendant was the record owner of the Property from approximately August 1979 to December 1984 and again from October 1987 to April 2003, during which periods hazardous substances were disposed of at the Property. **Exhibit 1** are certified copies of deeds conveying the Property to Shaikh.

14.     Defendant Shaikh is currently and was at all relevant times herein the sole shareholder and director and/or "owner" of Shah Chemical and Pacifica Chemical. **Exhibit 2** are California Secretary of State records establishing Shaikh's ownership of Shah Chemical and Pacifica Chemical.

15.     Defendant Haroon Khan ("Khan") is named herein as a PRP pursuant to CERCLA Section 107(a)(2), (42 U.S.C. § 9607(a)(2)), in that said defendant was the record owner of the Property from approximately December 1984 to October 1987 during which time hazardous substances were disposed of at the Property. See **Exhibit 1**.

## FACTUAL BACKGROUND

**The Property and Shah Chemical's Operations.**

16.     The Property is comprised of parcels of real property located in an unincorporated portion of the County of Los Angeles, State of California, commonly known as 132 W. 132nd Street, Los Angeles, California, bearing Los Angeles County Assessor Parcel Numbers 05-300-19 and 05-300-20 and consisting of approximately 1.62 acres in total size and an improvement of a two-story industrial structure, which is approximately 36,750 square feet in size.  The structure was developed in or around 1978. Shah Chemical used the Property for chemical manufacturing and distribution from approximately 1980 until approximately 1983, at which time its successor entity, Pacifica Chemical, took over operations. Pacifica Chemical continued to use the Property for chemical manufacturing and distribution until approximately 2000.

17.     After TC RICH acquired the Property in May 2005 from an unrelated third party, the Property has been utilized for warehouse and distribution purposes, including Plaintiffs' current customs-clearing and logistics-operations focused businesses.

18.     Shaikh was the record title owner of the Property from August 1979 to December 1984 and again from October 1987 to April 2003, which includes the entire period of Shah Chemical's operations and most of its successor's (Pacifica Chemical) operations.

19.     Shah Chemical occupied the Property from at least 1980 to 1983 for its chemical manufacturing and distribution business, including the formulation of fabric softeners, dyes, and light detergents.  The detergents and softeners were blended in mixing tanks before distribution and sale.  Wastewater was generated when the mixing tanks were rinsed in order to receive new materials.

20.     As part of its chemical manufacturing processes and distribution business, Shah Chemical stored and utilized chlorinated solvents such as perchloroethylene ("PCE") at the Property – a hazardous substance currently present in groundwater, soil, and soil gas at the Property.

21.     According to the Los Angeles County Department of Public Works (DPW) and the Los Angeles County Sanitation District (LACSD) records, in June 1981 Shah Chemical was issued a notice of violation for discharge of liquid waste from the mixing tanks to the sewer by way of a floor sink. **Exhibit 3** is a Notice of Violation issued to Shah Chemical.

22.     In or around December 1984, Shaikh transferred ownership of the Property to Khan. See **Exhibit 1**.

23.     During the period of Khan's ownership of the Property, Pacifica Chemical operated its chemical manufacturing and distribution business, which included the use and storage of PCE to formulate fabric softeners, dyes, and light detergents. The detergents and softeners were blended in mixing tanks before

1  distribution and sale.  Wastewater was generated when the mixing tanks were rinsed
2  in order to receive new materials.

3      24.    In or around October 1987, Khan transferred ownership of the Property
4  back to Shaikh. See **Exhibit 1**.

5      25.    After Pacifica Chemical ceased operating at the Property in or around
6  2000, DPW issued a notice to Shaikh in September 2000 notifying him that he was
7  now responsible for the associated industrial wastewater discharge permit as the
8  owner of the Property. **Exhibit 4** is the County notice to Shaikh regarding the
9  industrial wastewater discharge permit.

10     26.    Shaikh sold the Property to an unrelated third party in approximately
11 August 2003, and Plaintiffs are informed and believe that the new owners used the
12 Property for garment storage purposes and/or held the Property vacant. *See*
13 **Exhibit 1**.

14     27.    Plaintiffs are informed and believe that the clarifier that was located
15 and used on the Property by Shah Chemical and its successor, Pacifica Chemical,
16 during Shaikh's and Khan's ownership periods was closed in-place in 2004, and the
17 concrete trenches were also filled in.

18 **Plaintiff's Purchase of and Appropriate Inquiry into the Property.**

19     28.    Around the time TC RICH purchased the Property in May 2005, in
20 connection with a re-financing of the Property and as a matter of due diligence and
21 reasonable inquiry, a Phase I Environmental Assessment Report for the Property
22 was prepared by a registered environmental assessor at A/E West Consultants, Inc.
23 of Irvine, California ("A/E West").  In preparing the report, A/E West also reviewed
24 an April 2003 Phase I report prepared by JMK Environmental Solutions, Inc., of
25 Granada Hills, California, which was commissioned by the third party from whom
26 TC RICH acquired the Property. The JMK Environmental Solutions, Inc., report
27 recommended no further action or investigation.

28

29.     Based on its investigation and the historical operation of a clarifier on the Property, A/E West recommended a limited further investigation solely comprised of the creation of a closure report for the clarifier with an accompanying analysis of soil samples to be submitted to DPW for certification.

30.     In accordance with the recommendation by A/E West, Plaintiff Fleischer contracted with Aqua Science Engineers, Inc., of Irvine, California ("Aqua Science"), to perform the recommended subsurface analysis for closure of the clarifier in accordance with DPW requirements.  Aqua Science determined that a closure certificate for the Property and clarifier had already been issued by the DPW in 2004 based on representations made by Shaikh and Pacifica Chemical, but without any apparent soil sampling.

31.     Despite the certificate, Aqua Science coordinated with DPW to perform soil sampling, and took soil samples at the Property under the supervision and instruction of DPW on April 7, 2005.

32.     Having made a reasonable inquiry into the potential environmental issues and having received a finding of "no contamination" from the single identified recognized environmental condition, TC RICH proceeded with and completed its purchase of the Property.

**Plaintiffs' Discovery of Contamination at the Property.**

33.     In connection with Plaintiffs' repayment of the purchase-money loan for the Property, which was a 10-year term loan, a new Phase I Environmental Site Assessment was performed by Andersen Environmental of Los Angeles, California, in early 2015. After completing its own review of businesses and environmental data and records for the Property, Andersen concluded that the prior operations of Shah Chemical and its successor Pacifica Chemical constituted a recognized environmental condition.

34.     Andersen recommended further soil sampling near the clarifier and at locations along the associated concrete trenches.

35.     Plaintiffs engaged EEC Environmental of Orange, California, to perform a Phase II report and investigation to assess the recognized environmental conditions identified by Andersen and to determine if these recognized environmental conditions resulted in a release of chemicals to the environment.

36.     Specifically, EEC conducted a limited subsurface investigation and indoor air sampling at the Property in two separate stages.  Following the testing, EEC reported detections of PCE, a hazardous substance regulated by CERCLA, in soil, soil gas and groundwater at the Property in concentrations and locations consistent with discharge from Shah Chemical and Pacifica Chemical's operations at the Property during the ownership periods of both Shaikh and Khan.

37.     Plaintiffs notified the California Department of Toxic Substances Control (DTSC) of the sampling results, and together with DTSC, actively engaged with Pacifica Chemical to investigate the contamination at the Property.

38.     Since mid-2015, Shaikh's company, Pacifica Chemical, has taken the lead in conducting investigations of the contamination at the Property under DTSC's supervision.

39.     Although Pacifica Chemical has been investigating the contamination since 2015, no actual remediation has been performed at the Property, nor has any removal or other protective action been taken to ameliorate or otherwise reduce the high PCE indoor air and soil vapor concentrations.

40.     Plaintiffs are informed and believe that when DTSC presented Pacifica Chemical with a Facility Initiated Corrective Action (FICA) agreement, which would have committed Pacifica Chemical to performing its remedial obligations at the Property, Pacifica Chemical refused to sign it. Furthermore, it is Plaintiffs' understanding that none of the Defendants in this action has entered into a FICA agreement with DTSC, nor has DTSC issued an order requiring Defendants to perform investigation or remediation at the Property.

41.     To date, remediation of the Property has not begun and therefore the risks posed by the contamination found in both groundwater and soil remain unabated.

## FIRST CAUSE OF ACTION

**(Cost recovery and contribution based on owner liability under the Comprehensive Environmental Response, Compensation, And Liability Act, 42 U.S.C. § 9601, *et seq*. - Against All Defendants)**

42.     Plaintiffs repeat and incorporate each and every allegation contained in Paragraphs 1 through 41, inclusive, as though fully set forth herein.

43.     Shaikh, Khan, and Shah Chemical are each a person within the meaning of CERCLA § 101(21) (42 U.S.C. § 9601(21)).

44.     Shaikh was the record owner of the Property from approximately August 1979 to December 1984 and again from October 1987 to April 2003.

45.     Khan was the record owner of the Property from approximately December 1984 to October 1987.

46.     Upon information and belief, Plaintiffs contend that Shah Chemical owned equipment at the Property from which hazardous substances were released into the environment, and therefore Shah Chemical is a person who owned a facility, as defined by CERCLA § 101(9), (42 U.S.C. § 9601(9)), at the time of disposal of hazardous substances within the meaning of 107(a)(2) of CERCLA, (42 U.S.C. § 9607 (a)(2)).

47.     At various times during Shaikh's and Khan's ownership of the Property, hazardous substances were disposed of at the Property through a release and/or threatened release caused by Shah Chemical's and Pacifica Chemical's operations.  As such, Shaikh and Khan are both persons who owned a facility at the time of disposal of hazardous substances within the meaning of Section 107(a)(2) of CERCLA, (42 U.S.C. § 9607(a)(2)).

48.     Plaintiffs are investigating and remediating the contamination at the Property consistent with the National Contingency Plan and have incurred, and continue to incur, response costs that are necessary and consistent with the National Contingency Plan.

49.     The hazardous substances disposed of at the Property through a release was caused solely by the acts of third-parties, and Plaintiffs in no way contributed to the contamination.

50.     On August 20, 2015, Pacifica Chemical filed a counterclaim against Plaintiffs alleging Plaintiffs have joint and several liability under CERCLA Section 107, and seeking contribution under CERCLA Section 113(f). **Exhibit 5** is a copy of Pacifica Chemical's claim against Plaintiffs.

51.     Pursuant to Sections 107(a)(4)(B) and 113(f)(1) of CERCLA, (42 U.S.C. §§ 9607(a)(4)(B) and 9613(f)(1)), Plaintiffs are entitled to cost recovery and contribution from Defendants in connection with the contamination at the Property.

52.     Plaintiffs gave notice of this Complaint to the Attorney General of the United States and Administrator of the United States Environmental Protection Agency, as required by CERCLA § 113(l) (42 U.S.C. § 9613(l)).

### SECOND CAUSE OF ACTION

**(Cost recovery and contribution based on operator liability under the Comprehensive Environmental Response, Compensation, And Liability Act, 42 U.S.C. § 9601, *et seq*. - Against Shaikh and Shah Chemical)**

53.     Plaintiffs repeat and incorporate each and every allegation contained in Paragraphs 1 through 52, inclusive, as though fully set forth herein.

54.     Shaikh and Shah Chemical are each a person within the meaning of CERCLA § 101(21) (42 U.S.C. § 9601(21)).

55.     Shah Chemical operated a business at the Property from approximately 1980 to 1983, which resulted in the release and disposal of hazardous substances.

56.     At various times before cessation of Shah Chemical's operations at the Property, hazardous substances were disposed of at the Property through a release and/or threatened release at a time when Shah Chemical managed, directed or otherwise controlled operations at the Property, including operations and equipment specifically related to the acquisition, storage, and use and/or disposal (including leakage) of hazardous substances.

57.     As such, Shah Chemical is a person who operated a facility at the time of disposal of hazardous substances within the meaning of Section 107(a)(2) of CERCLA (42 U.S.C.§ 9607(a)(2)).

58.     Shaikh was an operator of the Property, including, but not limited to, from 2000 to 2003 when the industrial wastewater permit associated with the Property was transferred from Pacifica Chemical to him. *See* **Exhibit 4**.

59.     During the time when Shaikh managed, directed, or otherwise controlled operations at the Property, the clarifier and other equipment associated with hazardous substances at the Property remained operational and therefore additional hazardous substances were released and/or posed a substantial threat of release during Shaikh's period of operations.

60.     As such, Shaikh is a person who operated a facility at the time of disposal of hazardous substances within the meaning of Section 107(a)(2) of CERCLA (42 U.S.C.§ 9607(a)(2)).

61.     Plaintiffs are investigating and remediating the Property consistent with the National Contingency Plan and have incurred, and continue to incur, response costs that are necessary and consistent with the National Contingency Plan.

62.     The hazardous substances disposed of at the Property through a release was caused solely by the acts of third-parties, and Plaintiffs in no way contributed to the contamination.

63.     On August 20, 2015, Pacifica Chemical filed a counterclaim against Plaintiffs alleging Plaintiffs have joint and several liability under CERCLA Section

107, and seeking contribution under CERCLA Section 113(f). **Exhibit 5** is a copy of Pacifica Chemical's claim against Plaintiffs.

64.     Pursuant to Sections 107(a)(4)(B) and 113(f)(1) of CERCLA (42 U.S.C. §§ 9607(a)(4)(B) and Section 9613(f)(1)), Plaintiffs are entitled to cost recovery and contribution from Shaikh and Shah Chemical in connection with the contamination at the Property.

## THIRD CAUSE OF ACTION

### (Declaratory Relief – Plaintiffs Against All Defendants)

65.     Plaintiffs repeat and incorporate each and every allegation contained in Paragraphs 1 through 64, inclusive, as though fully set forth herein.

66.     CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), provides that in any action for recovery of response costs, the Court shall enter a declaratory judgment on liability for response costs or damages that will be binding in any subsequent action to recover further response costs or damages.

67.     The Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., provides that "[i]n a case of actual controversy within its jurisdiction ..., any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

68.     Plaintiffs are informed and believe that the Defendants have refused to acknowledge their fair and reasonable share of past and future investigatory and response costs related to the Property.

69.     Accordingly, there has arisen and now exists an actual controversy between Plaintiffs, on the one hand, and each Defendant, on the other, relating to liability and responsibility for the costs at the Property, and how such costs should be allocated. The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

70.     Absent a judicial declaration setting forth the parties' rights and obligations, including the appropriate allocable shares under CERCLA, a

1  multiplicity of actions may result, and Plaintiffs may be obligated in the future to

2  pay costs and damages that under CERCLA are in fact the responsibility of the

3  Defendants.

4        71.    Pursuant to CERCLA § 113(g)(2), (42 U.S.C. § 9613(g)(2)), the

5  Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and any other applicable

6  statute, regulation or principle of law, Plaintiffs are entitled to a declaration from

7  this Court, and request a judgment in their favor as set forth herein.  Such a

8  declaration would avoid the potential for a multiplicity of actions related to future

9  costs and effectuate a just and speedy resolution of the issues and liabilities.

10        72.    Plaintiffs seek the determination that should response costs be

11  necessary concerning the contamination at the Property, the Defendants shall jointly

12  and severally be held liable for said costs, and that Plaintiffs shall have no liability.

13  **FOURTH CAUSE OF ACTION**

14  **(Continuing Private Nuisance – By TC RICH Against All Defendants)**

15        73.    Plaintiff TC RICH repeats and incorporates each and every allegation

16  contained in Paragraphs 1 through 72, inclusive, as though fully set forth herein.

17        74.    TC RICH is informed and believes and thereupon alleges that the

18  Defendants collectively occupied and maintained, continued to occupy and

19  maintain, and/or aided or assisted in creating conditions on the Property in such a

20  manner as to cause the release and continued presence of hazardous substances into

21  the soil and groundwater beneath the Property, and that the presence of said

22  hazardous substances (due to the physical interference as well as potential site health

23  and safety risks) is injurious to the free use and comfortable enjoyment of the

24  Property by Plaintiffs.

25        75.    The above-referenced injuries and interference are specially injurious

26  to TC RICH in a manner different in kind from that of the general public in that the

27  hazardous substances that remain in the soil and groundwater beneath the Property

28  affected the physical condition of the Property, and have significantly interfered

1   with and continue to significantly interfere with Plaintiffs' ability to use, develop,

2   sell, let, insure or encumber the Property. The Defendants' release and maintenance

3   of hazardous substances have substantially and unreasonably interfered with, and

4   continue to substantially and unreasonably interfere with, Plaintiffs' use and

5   enjoyment of the Property.

6       76.   At all material times, the Defendants had a duty not to permit or allow

7   the continuance of a nuisance, and the Defendants have breached and are breaching

8   that duty by allowing hazardous substances to remain in the subsurface of the

9   Property.

10      77.   As set forth above, TC RICH is informed and believes and thereupon

11  alleges that the Defendants maintained, have continued to maintain, and created or

12  assisted in the creation of a situation leaving hazardous substances in the soil and

13  groundwater beneath the Property without the consent or permission of Plaintiffs.

14      78.   As set forth above, TC RICH is informed and believes and thereupon

15  alleges that it is both technically and economically feasible to complete a full and

16  comprehensive cleanup and removal of the hazardous substances knowingly

17  released by and maintained on the Property by the Defendants, and that because it is

18  technically and economically feasible to abate the subsurface hazardous substance

19  conditions on the Property, such conditions are not of a permanent nature.

20      79.   As a direct and proximate result of said continuing private nuisance,

21  TC RICH has been damaged in sums exceeding the jurisdictional minimum of this

22  Court, including damages that Plaintiffs may sustain in the future due the assertion

23  of third-party claims.  TC RICH will seek leave of Court to further amend its

24  complaint to state the true amount of said damages when the same has been

25  ascertained.

26      80.   TC RICH has no adequate remedy at law against the Defendants for the

27  ongoing and threatened injuries posed by the continuing private nuisance, in that TC

28  RICH would be required to maintain a multiplicity of judicial proceedings to protect

*TC RICH v. Shaikh, et al.*                14        **FIRST AMENDED COMPLAINT**

1  its interests. TC RICH does not have an adequate remedy at law for damages alone

2  because it is difficult to determine what the actual costs of remediating and

3  monitoring will be, and whether future claims will be asserted against Plaintiffs in

4  connection with the hazardous substances knowingly released by and maintained on

5  the Property by the Defendants.

6  ### **FIFTH CAUSE OF ACTION**

7  ### **(Continuing Trespass – By TC RICH Against All Defendants)**

8       81.    Plaintiff TC Rich repeats and incorporates each and every allegation

9  contained in Paragraphs 1 through 80, inclusive, as though fully set forth herein.

10       82.    TC RICH is informed and believes and thereupon alleges that the

11  Defendants caused and allowed the release of hazardous substances into the soil and

12  groundwater beneath the Property during the periods when Shah Chemical and its

13  successor Pacifica Chemical occupied and operated the Property, and that this

14  release or releases occurred without the consent or permission of Plaintiffs.

15       83.    TC RICH is informed and believes and thereupon alleges that the

16  Defendants maintained the continued presence on the Property of hazardous

17  substances, and that this maintenance occurred without the consent or permission of

18  Plaintiffs.

19       84.    TC RICH is informed and believes and thereupon alleges the hazardous

20  substances released by and maintained on the Property by the Defendants currently

21  remain in the soil and groundwater beneath the Property and have not been

22  removed.

23       85.    TC RICH is informed and believes and thereupon alleges that it is both

24  technically and economically feasible to complete a full and comprehensive cleanup

25  and removal of the hazardous substances released on the Property by the

26  Defendants, and that because it is technically and economically feasible to abate the

27  subsurface conditions resulting from the release of hazardous substances on the

28  Property, such conditions are not of a permanent nature.

---

*TC RICH v. Shaikh, et al.*          15     **FIRST AMENDED COMPLAINT**

86.     TC RICH is informed and believes and thereupon alleges the hazardous substances released by and maintained on the Property by the Defendants have interfered with, and continue to interfere with, Plaintiffs' possession, use and enjoyment of the Property by requiring (among other things): the installation and maintenance of numerous groundwater and soil/soil vapor sampling wells on the Property that limit or render unusable certain portions of the Property; incurring significant environmental consulting, testing and legal costs in connection with responding to the Defendants' release and maintenance of hazardous substances on the Property; and potential future liability for remediation costs, damages and third-party claims associated with the Defendants' release and maintenance of hazardous substances on the Property.

87.     As a direct and proximate result of said continuing trespass, TC RICH has been damaged in sums exceeding the jurisdictional minimum of this Court, including damages which Plaintiffs may sustain in the future due the assertion of third-party claims.  TC RICH will seek leave of Court to further amend its complaint to state the true amount of said damages when the same has been ascertained.

88.     TC RICH has no adequate remedy at law against the Defendants for the ongoing and threatened injuries posed by the continuing trespass, in that TC RICH would be required to maintain a multiplicity of judicial proceedings to protect its interests.  TC RICH does not have an adequate remedy at law for damages alone because it is difficult to determine what the actual costs of remediating and monitoring will be, and whether future claims will be asserted against Plaintiffs in connection with the hazardous substances released by and maintained on the Property by the Defendants.

///

## SIXTH CAUSE OF ACTION

**(Injunctive Relief Under RCRA § 7002(a)(1)(B) (42 U.S.C. § 6972(a)(1)(B)**

**against Shah Chemical and Shaikh))**

89.     Plaintiffs re-allege and incorporate by reference herein paragraphs 1-88, inclusive, as though fully set forth herein.

90.     Plaintiffs have given the requisite notice to Defendants Shah Chemical and Shaikh pursuant to RCRA § 7002(b)(2)(A) (42 U.S.C. § 6972(b)(2)(A)) and 40 C.F.R. 254, true and correct copies (without exhibits) of which are attached as **Exhibit 6.**

91.     Shah Chemical and Shaikh are both liable parties under RCRA as a "person" who falls within RCRA § 1004(15) (42 U.S.C. § 6903(15)).

92.     Shah Chemical and Shaikh are both a past "owner" of a treatment, storage, or disposal facility under RCRA at the Property.

93.     Shah Chemical and Shaikh are both a past "operator" under RCRA of a disposal facility at the Property.

94.     The Property and/or the equipment from which the releases emanated are a past "storage" and/or "disposal facility" within the meaning of RCRA.

95.     Shah Chemical and Shaikh contributed to the "handling, storage, treatment, transportation, or disposal" of hazardous wastes at and emanating from the Property.  The PCE released at the Property is "hazardous waste" within the meaning of RCRA § 3001 (41 U.S.C. § 6921).

96.     Indoor air quality sampling was conducted at the Property in 2015. Six locations were sampled, which showed indoor air PCE concentrations ranging from 1.6 ug/m$^3$ to 18 ug/m$^3$, with the three highest samples (14, 16, and 18 ug/m$^3$) located proximal to or above the former clarifier used by Shah Chemical and its successor Pacifica Chemical during Shaikh's and Khan's ownership of the Property.

97.     As of November 2018, both the DTSC and the U.S. Environmental Protection Agency (USEPA) recognized 2.0 ug/m$^3$ as the industrial air screening level for PCE.

98.     In addition to the exceedance of indoor air quality screening levels, subsurface sampling at the Property revealed very high concentrations of PCE in soil vapor – with at least one sample showing PCE concentrations of 360,000 ug/m$^3$ – posing a continued imminent and substantial vapor intrusion threat to Plaintiffs.

99.     The indoor air concentrations of PCE found at the Property and the high concentrations of PCE in soil vapor constitute an "imminent and substantial endangerment to the health or the environment" within the meaning of RCRA § 7002(a)(1)(B) (42 U.S.C. § 6972 (a)(1)(B)).  The endangerment is due to Shah Chemical's, its successor Pacifica Chemical's, and Shaikh's past handling, storage, treatment or disposal of PCE.

100.   The release of PCE at the Property has resulted in the need to investigate and characterize volatile organic compounds (VOCs), including PCE and its daughter compounds, in soil, soil gas, and groundwater beneath the Property and to the east, and assess potential risks to human health associated with PCE in soil vapor and indoor air at the Property and to the south and east of the Property.

101.   To date, neither Shaikh nor Shah Chemical has entered into an enforceable agreement with DTSC to perform remediation at the Property, nor has DTSC sought to compel Shaikh or Shah Chemical (or any other party) to perform the cleanup.

102.   Although Pacifica Chemical has been investigating the contamination since 2015, no actual remediation has been performed at the Property, nor has any removal or other protective action been taken to ameliorate or otherwise reduce the high PCE indoor air and soil vapor concentrations.

103.   Plaintiffs request the Court, pursuant to RCRA § 7002(a)(2) (42 U.S.C. § 6972(a)(2)), to enjoin Shah Chemical and Shaikh from continuing to endanger

human health and the environment, and to order Shah Chemical and Shaikh to remediate immediately the source(s) of PCE on the Property from their past activities, cleanup the groundwater contaminated by PCE beneath and downgradient from the Property, implement a soil vapor/multi-phase extraction program until all elevated soil gas and indoor air concentrations of PCE and its daughter chemicals are remediated, and take all other actions necessary to eliminate the groundwater and other contamination that has emanated from the Property.

104.   Plaintiffs have served a copy of this complaint on the United States Attorney General and the Administrator of the EPA, pursuant to RCRA § 7002(b)(2)(F) (42 U.S.C. § 6972(b)(2)(F)).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

1.   The recovery of such above-described cleanup costs for the Property from Defendants SHAH CHEMICAL CORPORATION, HUSSAIN M. SHAIKH, and HAROON KHAN and, further, that this Court allocate such costs in an equitable manner among said Defendants;

2.   A judgment of this Court in declaratory relief against Defendants SHAH CHEMICAL CORPORATION, HUSSAIN M. SHAIKH, and HAROON KHAN for an equitable allocation among said Defendants for the future clean-up costs to be incurred for the removal of all toxic and hazardous substances from the Property consistent with the NCP;

3.   For an award against the Defendants for past damages resulting from the continuing trespass and continuing private nuisance caused by the release and presence of hazardous substances on the Property;

4.   For injunctive relief to compel the Defendants to abate and remove the current continuing trespass and continuing private nuisance caused by the release and presence of hazardous substances on the Property;

1       5.    For general damages according to proof in an amount in excess of the

2   jurisdiction of the above-entitled court;

3       6.    For all consequential damages and related incidental expenses

4   according to proof, including, but not limited to, costs associated from loss of use or

5   Plaintiffs' increased cost of financing the Property;

6       7.    For Plaintiffs' reasonable attorney fees recoverable under 42 U.S.C.

7   § 6972(e);

8       8.    For a declaration pursuant to the Declaratory Judgments Act, 28 U.S.C.

9   § 2201, and Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and any other

10  applicable statutes, regulations or principles of law, adjudging and decreeing that the

11  Defendants are jointly and severally liable to Plaintiffs for all response costs related

12  to the Property, including, but not limited to, investigation and remediation costs,

13  and for such judgment to be binding in any subsequent action or actions to recover

14  further response costs related to the Property;

15      9.    For an order pursuant to RCRA § 7002(a)(2) (42 U.S.C. §6972(a)(2))

16  requiring Shah Chemical and Shaikh to remediate the source(s) of PCE on the

17  Property, cleanup the groundwater contaminated by PCE beneath and downgradient

18  from the Property, implement a soil vapor/multi-phase extraction program until all

19  elevated soil gas and indoor air concentrations of PCE and its daughter chemicals

20  are abated, and take all other actions necessary to eliminate the groundwater

21  contamination and other contamination on and emanating from the Property

22  resulting in an imminent and substantial endangerment to health or the environment

23  within the meaning of RCRA § 7002(a)(1)(B) (42 U.S.C. § 6972 (a)(1)(B));

24      10.    For an award of prejudgment interest calculated in accordance with the

25  law on all sums awarded;

26      11.    For costs of suit herein incurred; and

27      12.    For such other and further relief as this court may deem just and proper.

28

*TC RICH v. Shaikh, et al.*           20     **FIRST AMENDED COMPLAINT**

1   Dated:  June 4, 2019                        **RAINES FELDMAN** LLP

2                                               */s/ John S. Cha*

3                                               _____

4                                               John S. Cha
                                                Counsel for Plaintiffs

5

6   Dated:  June 4, 2019                        **PILLSBURY WINTHROP SHAW**
                                                **PITTMAN LLP**

7

8                                               */s/ Mark Elliot*

9                                               _____
                                                Mark Elliot
10                                              Counsel for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiffs TC RICH, LLC, Rifle Freight, Inc., Fleischer Customs Brokers, Richard G. Fleischer, and Jacqueline Fleischer demand a trial by jury on all causes of action upon which jury trial is available.


Dated:  June 4, 2019                    **RAINES FELDMAN LLP**

*/s/ John S. Cha*

_____
John S. Cha
Counsel for Plaintiffs


Dated:  June 4, 2019                    **PILLSBURY WINTHROP SHAW PITTMAN LLP**

*/s/ Mark Elliot*

_____
Mark Elliot
Counsel for Plaintiffs