Bret A. Stone   SBN 190161 BStone@PaladinLaw.com
Kirk M. Tracy   SBN 288508 KTracy@PaladinLaw.com
PALADIN LAW GROUP® LLP
220 W. Gutierrez Street
Santa Barbara, CA 93101
Telephone:  (805) 898-9700
Facsimile:   (805) 852-2495

Counsel for Defendant and Counter-Claimant
Hussain M. Shaikh

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TC RICH, LLC, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> HUSSAIN M. SHAIKH, *et al.*, <br><br> *Defendants*. <br><br> HUSSAIN M. SHAIKH, <br><br> *Counter-Claimant*, <br><br> v. <br><br> TC RICH, LLC; RICHARD G. FLEISCHER; and JACQUELINE FLEISCHER, <br><br> *Counter-Defendants*. | Case No. 2:19-CV-02123-DMG-AGR <br><br> HUSSAIN M. SHAIKH'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br> Hearing: <br> February 19, 2021 <br> 3:00 p.m. <br> Courtroom 8C, 8th Floor <br><br> Judge Dolly M. Gee <br><br> Action filed: March 21, 2019 <br> Trial date: June 1, 2021 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. 2

TABLE OF AUTHORITIES ...................................................................................... 3

I. INTRODUCTION ........................................................................................... 5

II. FACTS ............................................................................................................. 5

    A. History of the Property. ......................................................................... 5

    B. The Fleischers' entities and operations at the Property. ....................... 6

    C. Murex's reasonable and appropriate response activities. .................... 6

III. LEGAL STANDARD ..................................................................................... 8

IV. ARGUMENT ................................................................................................... 8

    A. Plaintiffs' RCRA claim lacks redressability. ........................................ 8

    B. There are genuine issues of material fact to preclude granting Plaintiffs' motion for summary judgment on their RCRA claim. ................................. 9

    C. There are genuine issues of material fact that preclude granting Plaintiffs' motion for summary judgment on their CERCLA claim. ........................... 12

        1. Plaintiffs have not met their burden to show that Shaikh was an owner or operator at the time of disposal. ........................................................... 12

        2. Plaintiffs have not met their burden to show that they incurred response costs that were "necessary" and "consistent with the NCP." ............... 14

    D. Shaikh is entitled to judgment on his CERCLA and HSAA claims against the Fleischers as operators. ................................................................... 15

V. CONCLUSION ............................................................................................. 17



# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ........................................... 8

*Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029 (N.D. Cal. 2017) ...................................................................................................... 11

*California Dept. of Toxic Subst. Control v. Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d 930 (E.D. Cal. 2003) ........................................................................ 10

*Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863 (9th Cir. 2001) ........... 17

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ....................................................... 8

*Center for Cmty. Action & Envtl. Justice v. BNSF Ry. Co.,* 764 F.3d 1019 (9th Cir. 2014) .................................................................................................... 10

*Christie-Spencer Corp. v. Hausman Realty Co., Inc.*, 118 F. Supp. 2d 408 (S.D.N.Y. 2000) .............................................................................................. 9

*City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 451 (9th Cir. 2011) 16

*Frances T. v. Village Green Owners Assn.*, 42 Cal. 3d 490 (1986) ............... 11, 13

*Hinds Invs., L.P. v. Angioli*, 654 F.3d 846 (9th Cir. 2011) ............................ 10, 11

*Hunt v. Cromartie*, 526 U.S. 541 (1999) .............................................................. 12

*Litgo New Jersey, Inc. v. Commissioner New Jersey Dept. of Environmental Protection*, 725 F.3d 369 (3rd Cir. 2013) ...................................................... 16

*Long Beach Unified School Dist. v. Dorothy B. Godwin California Living Trust,* 32 F.3d 1364 (9th Cir. 1994) ......................................................................... 13

*Orange County Water Dist. v. Sabic Innovative Plastics US, LLC*, 14 Cal. App. 5th 343, 376 (2017) ................................................................................. 16, 17

*United States v. Bestfoods*, 524 U.S. 51 (1998) ............................................. 11, 13

*Young v. United States,* 394 F.3d 858 (10th Cir. 2005) ....................................... 14

## STATUTES

42 U.S.C. § 6972(a)(1)(B) ..................................................................................... 9

42 U.S.C. § 9607(a)(4)(B) ................................................................................... 14

**RULES**

Fed. R. Civ. P. 56(a) ................................................................................................. 8

Fed. R. Civ. P. 56(c) ................................................................................................. 8

**REGULATIONS**

40 C.F.R. § 300.430(f)(1)(ii)(D) ............................................................................. 14



# I. INTRODUCTION

Plaintiffs' RCRA[1] claim is moot. During the four years Plaintiffs waited to bring their RCRA claim, Defendant's company has taken the lead in conducting remedial investigations under the oversight and approval of state regulators. On the merits, it is a wonder why Plaintiffs bothered with this motion. They do not offer any concrete evidence that Defendant actually contributed to a disposal. Plus, they skip entirely a key element of their claim by stating that they are not "seeking a declaration as to the imminent and substantial endangerment element of RCRA."

Thus, while it is undisputed that a release of a hazardous substance occurred on the cross-motions for summary judgment before this Court, there is an important difference between CERCLA[2] liability under § 107(a)(1) and § 107(a)(2). Unlike Defendant's cross-motion against Plaintiffs as the *current* owners and operators, Plaintiffs have the additional burden of proving *when* the disposal occurred against a *former* owner. Plaintiffs do not even attempt to meet that burden. They offer no evidence of any specific release. They offer no expert opinion on when or how a disposal occurred. To be sure, Plaintiffs concede that there was a three-year gap in Shaikh's ownership in the mid-1980s and that he has not owned the property since 2003. Thus, a genuine issue of material fact exists whether Defendant was an owner or operator "at the time of disposal" under CERCLA § 107(a)(2).

# II. FACTS

A. **History of the Property.**

Shaikh was the record title owner of the property at 132 West 132nd Street, Los Angeles, California (the "Property") from August 1979 to December 1984 and again from October 1987 to April 2003.[3] In December 1984, Shaikh transferred

---

[1] "RCRA" refers to the Resource Conservation and Recovery Act, RCRA §§ 1002–11011, 42 U.S.C. §§ 6901–6992k.

[2] "CERCLA" refers to the Comprehensive Environmental Response, Compensation, and Liability Act, CERCLA §§ 101–405, 42 U.S.C. §§ 9601–9675.

[3] Shaikh's Statement of Genuine Disputes and Additional Uncontroverted Facts in Opp. to Pls.'

-5- 2:19-CV-02123-DMG-AGR
SHAIKH'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

ownership of the Property to Haroon Khan.[4] Shaikh sold the Property to Eun H. Lee in 2003, who in turn sold the Property to TC Rich, the current owner, in May 2005.[5]

### B. The Fleischers' entities and operations at the Property.

TC Rich is a single-purpose entity that owns the Property and performs no other activities.[6] Each Plaintiff is owned and operated by the Fleischers, whether as corporations or sole-proprietorships.[7] Richard Fleischer is the managing member of TC Rich and Jacqueline Fleischer is the only other member identified by Plaintiffs.[8]

Jacqueline Fleischer handles which Plaintiffs pay rent and manages financial matters for each of them, including leases and payments to environmental consultants.[9] Although written leases initially existed, they were not renewed.[10]

Only Richard Fleischer Customs Brokers ("RFCB")[11] and TC Rich paid TC Rich's consultant, EEC, for its work—and RFCB only did so due to a funds shortage for TC Rich.[12] But the Fleischers believe it "all boils down to . . . the same thing" because they own both entities.[13] The Fleischers control all activities at the Property.

### C. Murex's reasonable and appropriate response activities.

Murex has performed numerous activities since 2015 that have delineated the extent of the contamination, confirmed a lack of hazardous conditions at the Property,

---

Mot. for Partial Summ. J. ("Shaikh's SGD"), *filed herewith*, at Fact 1.

[4] *Id.*

[5] *Id.* at Facts 41, 43.

[6] ECF No. 59-13 ("Plaintiffs' Depo."), at depo. pages 12:14-16, 15:23-16:5.

[7] Plaintiffs' Depo. at 12:21-13:3, 13:15-18, 20:9-12, 13:4-6, 13:19-23, 23:7-19, 24:3-8, 32:16-33:2, 21:9-11.

[8] ECF 51 (Answer to Shaikh's Counterclaim), at ¶¶ 4-6.

[9] Plaintiffs' Depo. at 14:4-10, 30:20-33:5.

[10] Plaintiffs' Depo. at 94:5-96:19.

[11] Richard G. Fleischer Customs Brokers is a sole proprietorship (named as a plaintiff herein as "Fleischer Customs Brokers"), of which Richard Fleischer is the sole proprietor. Plaintiffs' Depo. at 12:21-13:3.

[12] Shaikh's SGD, at Fact 92.

[13] *Id.*

and even reduced the concentrations of contamination. Plaintiffs' interrogatory responses enumerate multiple activities taken by Murex in 2015, February 2016, May 2016, August to October 2016, December 2016 to March 2017, and continuing to the present.[14] For the sake of brevity, Shaikh directs the Court to his own Memorandum in Support of Motion for Partial Summary Judgement for details of these numerous activities by Murex. ECF No. 59-1 ("Shaikh's Memo."), at 10:12-12:6.

Murex's efforts have resulted in a reduction of contamination at the Property.[15] TC Rich has admitted that Murex's work has "contribut[ed] to abatement" of the contamination.[16] Moreover, DTSC has been "*very impressed by the work done,*" considers the work performed by Murex "*a model as to how investigations at a contaminated site should be performed,*" and has "*no concerns*" about the work performed.[17]

Further, Plaintiffs confirmed in deposition testimony that the investigations to date have not identified any hazardous conditions,[18] that Murex's work is ongoing,[19] and that TC Rich's consultant, EEC, is just reviewing the work performed by Murex.[20] Further, Plaintiffs admit that DTSC is overseeing the work by Murex and that they understand that, "According to DTSC, they're doing the right thing."[21] The investigation taking place and described above is part and parcel of an appropriate response action and in fact *has* had the effect already of reducing contaminant concentrations at the Site. Brown Decl. ¶¶ 46, 111, 126-27.

---

[14] ECF No. 59-10 (Tracy Decl., Ex. 7), at TC Rich's interrogatory resp. no. 9.

[15] Shaikh's SGD, at Fact 93.

[16] ECF No. 59-8 (Tracy Decl., Ex. 5), at TC Rich interrogatory response no. 3, at p. 7, lines 12-13.

[17] ECF No. 59-15 ("Brown Decl.") ¶ 80 (based on Brown's own January 2021 communication with DTSC).

[18] Plaintiffs' Depo. at 66:18-20.

[19] Plaintiffs' Depo. at 67:11-24.

[20] Plaintiffs' Depo. at 68:7-19.

[21] Plaintiffs' Depo. at 69:15-19, 71:9-72:4, 73:2-9, 73:19-21 (at no time has Murex has stopped working at the Site).

Of note, EEC was retained by TC Rich, not the other Plaintiffs.[22] Plaintiffs admit they have taken no remedial action at the Site.[23]

### III.    LEGAL STANDARD

Summary judgment is properly entered on each claim—or on the part of each claim—on which summary judgment is sought where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). If the moving party satisfies this burden, then the burden shifts to the non-moving party to show that there exists a genuine issue of material fact. *Celotex,* 477 U.S. at 323–24; Fed. R. Civ. P. 56(c)(1). A dispute is "genuine" if it reasonably could be resolved in favor of either party, and is "material" if it could affect the outcome of the suit under governing law. *See Anderson,* 477 U.S. at 248–51. In making these determinations, courts view the evidence in the light most favorable to the non-moving party and do not resolve factual disputes, engage in credibility determinations, or weigh the evidence. *Anderson,* 477 U.S. at 255; *Celotex,* 477 U.S. at 325.

### IV.    ARGUMENT

#### A.    Plaintiffs' RCRA claim lacks redressability.

Before turning to the substance of the RCRA claim, the Court should first determine whether the claim for injunctive relief is moot given DTSC's continuing multi-year oversight of Murex's remedial investigation work since 2015. The legal standard for evaluating the redressability and mootness of Plaintiffs' RCRA injunctive relief claim is thoroughly discussed in Shaikh's Memo., at V.A. Shaikh incorporates that argument herein, for the sake of brevity. *See* Shaikh's Memo., at 14:18-18:8.

---

[22] Plaintiffs' Depo. at 68:24-69:14.

[23] ECF No. 59-7 (Tracy Decl., Ex. 4), at TC Rich request for admission response no. 15 (TC Rich admits it had taken no remedial action at the site as of May 12, 2017); ECF 62-8, at Ex. 24, deposition pages and lines 68:13-15: 60:13-20; 61:18-21.



As discussed therein, there is no evidence of inadequate response to the contamination, nor is there any evidence that DTSC has neglected its duties.[24] Moreover, Plaintiffs here have not raised any concerns regarding DTSC's handling of this case except to mention that there is no formal order, which itself suggests that DTSC does not consider the contamination to be an imminent and substantial endangerment. Plaintiff offers no admissible evidence the remedial process is not proceeding exactly as planned.[25] *See Christie-Spencer Corp. v. Hausman Realty Co., Inc.*, 118 F. Supp. 2d 408, 420 (S.D.N.Y. 2000) (there was no imminent and substantial threat to public health or the environment if defendant proceeded with its cleanup plan, even though it was voluntary, in part because there was no indication that defendant would deviate from the state agency's approved plans).

### B. There are genuine issues of material fact to preclude granting Plaintiffs' motion for summary judgment on their RCRA claim.

Even if Plaintiffs' RCRA claim was not moot, there are disputed issues of fact on whether Defendant *contributed* to the disposal of hazardous waste and whether the contamination may present an imminent and substantial endangerment.

To prevail on a claim under RCRA § 7002(a)(1)(B), a plaintiff must prove: [1] the defendant is "any person, . . . including any past or present generator, past or present transporter, or past or present owner or operator of the treatment, storage, or disposal facility, [2] who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste [3] which may present an imminent and substantial endangerment to health or the environment."[26] 42 U.S.C. § 6972(a)(1)(B); *Center for Cmty. Action & Envtl.*

---

[24] Brown Decl. ¶¶ 31-32 (summary of Murex's work to date), 40-55 (detailed review of Murex's work since 2015), 78-79 (reasonableness of Murex's work under DTSC supervision); Tracy Decl., ¶ 5 & Ex. 4, at TC Rich request for admission response no. 15 (TC Rich admits it had taken no remedial action at the site as of May 12, 2017); ECF 62-8, at Ex. 24, deposition pages and lines 68:13-15: 60:13-20; 61:18-21 (no action by Plaintiffs; they have let Murex do all the work).

[25] *See* Evid. Objections in Supp. of Shaikh's Opp'n to Pls.' Mot. for Partial Summ. J., *filed herewith*, at Objections 1, 3; Shaikh's SGD, at Facts 87-89, 91.

[26] Although not discussed in Plaintiffs' motion, providing 90-days' notice under RCRA

1  *Justice v. BNSF Ry. Co.,* 764 F.3d 1019, 1023 (9th Cir. 2014).

2        For purposes of their motion for partial summary judgment, Plaintiffs concede
3  that they cannot meet their burden with respect to the third element—they "are not
4  seeking a declaration as to the imminent and substantial endangerment element of
5  RCRA." ECF 61-3, at 19:10-11. Based on that concession, Defendant incorporates
6  by reference the legal argument and supporting evidence that there is not an
7  "imminent and substantial endangerment" from his affirmative motion rather than
8  repeat those points here. ECF 59-1, at 18:11-23:14. To that end, Defendant requests
9  a ruling that there was not an "imminent and substantial endangerment" at the time
10 Plaintiffs filed their RCRA claim in June 2019.

11       Turning back to the second element—the only element addressed in Plaintiffs'
12 motion—they fail to meet their burden there too. Proof that a defendant "contributed
13 to" a disposal of a hazardous waste requires much more than a mere showing that
14 PCE is in the environment. Instead, a plaintiff must show "that the defendant had a
15 measure of control over the waste at the time of its disposal or was otherwise actively
16 involved in the waste disposal process." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846,
17 852 (9th Cir. 2011). Such "control" requires a direct connection to the waste, such as
18 by "handling it, storing it, treating it, transporting it, or disposing of it." *Id.* Thus,
19 "contributed to" under RCRA means "some level of causation between the
20 contamination and a party to be held liable." *California Dept. of Toxic Subst. Control*
21 *v. Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d 930, 979 (E.D. Cal. 2003) (citation
22 and internal quotation marks omitted).

23       Importantly, this is Plaintiffs' *second* lawsuit relating to the *same*

---

§ 7002(a)(1)(B) may be considered an element of a RCRA claim. *See KI/FLA San Leandro v. Gildard Hess,* No. 97-01675 TEH, 1998 U.S. Dist. LEXIS 1516, at *4-5 (N.D. Cal. Feb. 9, 1998). Shaikh disputes that the notice here was sufficient because it concedes that Murex was already performing the work necessary to respond to the contamination. As Murex had been doing so for four years prior to the filing of the FAC, all with DTSC oversight and approval, the notice did not explain what further action was necessary; it did not identify any "failure to take action to prevent the VOC groundwater plume from migrating to and further impacting the Property, or to remediate past and continuing waste discharges at the Property."



SHAIKH'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1 contamination. Plaintiffs' first lawsuit alleged that Pacifica Chemical Corporation (and not Shaikh) was responsible for the contamination. Four years later, Plaintiffs filed the instant lawsuit against Shaikh *personally*. But the facts that Mr. Shaikh was the president of the corporation, that his name might be on an application, or even on a notice of violation, is not the type of "active functions with a direct connection to the waste itself." *Hinds*, 654 F.3d at 851. Rather, as Mr. Shaikh testified, he worked in the office. Shaikh's SGD, at Fact 94. He did not handle PCE himself. *Id.* He did not cause or contributed to any spill (he did not even know about any spills). *Id.*

Further, one of Pacifica and Shah Chemical's employees, Mr. Tomas Macedonio, was in charge of environmental management and compliance. Shaikh's SGD, at Fact 95. Under the reasoning of the Supreme Court in *United States v. Bestfoods*, 524 U.S. 51 (1998), an individual can be held liable as an operator only if he personally took part in the operation that caused the release. This is consistent with the well-settled principle that "officers and directors are not vicariously liable for torts of the corporation in which they do not participate." *Frances T. v. Village Green Owners Assn.*, 42 Cal. 3d 490, 503-04 (1986). Shaikh's corporate entities and their respective employees operated at the Property—he had no sole proprietorships such as Fleischer Customs Brokers operating at the Property.

Plaintiffs fail to meet their burden of proof. They offer no evidence of Shaikh's personal contribution to a disposal. They offer no evidence of any disposal at all. The closest Plaintiffs come to producing evidence relating to any disposal is from a report produced by Murex stating the storage and transfer of PCE in the late 1970s and early 1980s is the "suspected" source of PCE impacts. Shaik's SGD, at Fact 86.[27] Murex

---

[27] Plaintiffs also incorrectly claim that DTSC "confirmed" there were discharges during the time period of Shaikh's ownership and operations through documents for which Plaintiffs requested the Court take judicial notice. Shaikh's SGD, at Fact 82. Such evidence fails for two reasons. First, it does not make any conclusion regarding a time period in which any releases or discharges occurred. *Id.* Second, "Courts cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed." *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017) (citations omitted). For good reason, since the same letter, at the top of its page 2, incorrectly states, "Since 1999, the property has been utilized for warehouse and distribution purposes by the current owner." That is untrue given that TC Rich



did not state any personal knowledge of releases or refer to any direct evidence of releases—nor does a request for judicial notice mean the Court accepts the statement in a judicially-noticed document is true. *Id.* To the contrary, "suspicion" does not suffice to make a fact more likely than not to have occurred or support a grant of summary judgment on Plaintiffs' RCRA claim. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) ("Summary judgment in favor of the party with the burden of persuasion, however, is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact.").

### C. There are genuine issues of material fact that preclude granting Plaintiffs' motion for summary judgment on their CERCLA claim.

To prevail on their CERCLA claim, Plaintiffs must prove: (1) the site on which the hazardous substance is present is a "facility"; (2) a "release" or "threatened release" of a "hazardous substance" from the facility has occurred; (3) the release or threatened release caused Plaintiffs to incur response costs that were "necessary" and "consistent with the national contingency plan" (NCP); and (4) Defendant owned or operated a facility "at the time of disposal of any hazardous substance." There are genuine issues as to the third and fourth elements.

#### 1. Plaintiffs have not met their burden to show that Shaikh was an owner or operator at the time of disposal.

Plaintiffs argue that it is "undisputed that Shaikh was the Property's fee title owner between 1979 and 2003 when hazardous substances were disposed." ECF No. 61 ("Pls.' Mot."), at 27:19-20.[28] To the contrary, this genuine issue of material fact is *disputed*. Plaintiffs' own evidence demonstrates that Shaikh was *not* the fee title owner from 1984 to 1987. Pls.' Mot., at 11:26-28; ECF No. 61-3 ("Pls.' SSUF"), at Facts 1, 22. Shaikh has not been the fee title owner since he sold the Property in 2003.

---

has only owned the property since 2005. *See id.*, at Fact 43.

[28] Unless otherwise noted, citations to page numbers refer to ECF auto-generated page numbers at the top of the respective documents, not the page numbers at the bottom.



SHAIKH'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1  Thus, to meet their burden of proof on summary judgment, Plaintiffs must
2  show on undisputed facts that a disposal of PCE occurred either between 1979 and
3  1984 or between 1987 and 2003. Plaintiffs offer no such evidence. Similarly, without
4  such evidence, how is the Court to rule out the possibility that the contamination was
5  not the result of disposal during decades of oil exploration activities that occurred
6  *before* Shaikh bought the Property?[29] Or a disposal during the textile operations that
7  occurred *after* Shaikh sold the Property?[30] Or a disposal from an *offsite* source? Or a
8  disposal from one of Plaintiffs' shipments?

9  In addition to the genuine issue of material fact on *when* the disposal occurred,
10 there are other factual questions for the trier of fact on whether Shaikh had hands-on
11 involvement in the daily running of the corporate business. To establish operator
12 liability under CERCLA, the defendant "must [have] play[ed] an active role in
13 running the facility, typically involving hands-on, day-to-day participation in the
14 facility's management." *Long Beach Unified School Dist. v. Dorothy B. Godwin*
15 *California Living Trust,* 32 F.3d 1364, 1367 (9th Cir. 1994). Under the "actual
16 control" standard, to be an operator of a facility, the defendant "must [have] play[ed]
17 an active role in running the facility, typically involving hands-on, day-to-day
18 participation in the facility's management." *Long Beach,* 32 F.3d at 1367. This rule
19 makes sense given that "officers and directors are not vicariously liable for torts of
20 the corporation in which they do not participate." *Frances T.*, 42 Cal. 3d at 503-04.
21 Thus, individual (non-corporate) operator liability includes someone who *personally*
22 handles the hazardous substance or manages, directs, or controls those operations.
23 *Bestfoods,* 524 U.S. at 66–67.

24 Although it is true that Mr. Shaikh was the president of Pacifica Chemical

---

[29] *See* ECF No. 62-6, at Ex. 19 (Mar. 16, 2015 Phase I Report), at page "I" ("The subject property was developed with unpaved roads associated with adjacent oil field exploration activities between at least 1928 through 1965. Excavations and/or piles are apparent on the subject property in the 1956 aerial.").

[30] Shaikh's SGD, at Fact 41.



Corp., there is no evidence that he actually controlled or had hands-on participation in the handling of any chemicals himself—let alone PCE. Rather, as Mr. Shaikh testified, he worked in the office. Shaikh's SGD, at Fact 94. He did not handle PCE himself. *Id.* He did not cause or contributed to any spill (he did not even know about any spills). *Id.* Further, one of Pacifica and Shah Chemical's employees, Mr. Tomas Macedonio, was in charge of environmental management and compliance. *Id.* at Fact 95. Plaintiffs do not allege, and offer no evidence, that the corporate veil should be pierced.

### 2. Plaintiffs have not met their burden to show that they incurred response costs that were "necessary" and "consistent with the NCP."

A private-party plaintiff must show that the release or threatened release caused the plaintiff to incur "necessary costs of response . . . consistent with the [NCP]." 42 U.S.C. § 9607(a)(4)(B).

Courts have insisted that response costs must be closely tied to the cleanup or containment of hazardous substances to be considered "necessary" and recoverable under CERCLA. *Young v. United States,* 394 F.3d 858, 863 (10th Cir. 2005); 40 C.F.R. § 300.430(f)(1)(ii)(D) ("Costs are 'necessary' under the NCP when the remedy is cost-effective and the response cost is tied to the actual cleanup of hazardous releases."). It comes as no surprise that Plaintiffs cite no evidence to support their motion that they incurred "necessary costs of response." How could they when they claim no remediation has taken place at all? ECF No. 61-3, at Fact 87. Indeed, Plaintiffs admit that they have not taken any action to remediate the property; "We've been letting Murex do their work." ECF 62-8, at Ex. 24, deposition pages and lines 68:13-15: 60:13-20; 61:18-21.[31] The only related evidence Plaintiffs cite to does not demonstrate such costs were "necessary" in this context. Shaikh's

---

[31] On the other hand, Shaikh has incurred necessary costs of response that have reduced the concentrations of PCE in soil vapor and groundwater. ECF No. 59-15 (Brown Decl.), ¶¶ 89-91; Shaikh's SGD, at Fact 96 (Murex's work paid for by the insurance company for Shaikh and Pacifica).



SGD, at Facts 90-91. Therefore, Plaintiffs do not even come close to meeting their burden on the "necessary" prong of their purported costs.

Turning to consistency with the NCP, Plaintiffs expressly punt on this prong claiming they "are not seeking to prove that the response costs incurred are consistent with the [NCP]." Pls.' Mot., at 28:21-28. Instead, Plaintiffs wrongly believe that summary judgment should be granted in their favor leaving this critical element for trial.

Submitting a few invoices without explanation as to the work performed or why the costs were "necessary" and "consistent with the NCP" is simply not enough. Plaintiffs offer no expert opinion. They do not offer a declaration from EEC explaining how the work was closely tied with clean up or containment. To the extent a few invoices were submitted, there is also a question of fact about which of the five Plaintiffs incurred them. Rifle Freight incurred no response costs. Richard Fleischer incurred no response costs. Jacqueline Fleischer incurred no response costs. At best TC Rich paid some costs for some initial testing and Richard Fleischer Custom Brokers paid some too, although it all "boils down" to the "same thing" in Plaintiffs' view. Regardless, Plaintiffs have not demonstrated that such costs are "necessary costs of response" nor NCP compliant. Without evidence, Plaintiffs' motion must be denied.

**D. Shaikh is entitled to judgment on his CERCLA and HSAA claims against the Fleischers as operators.**

Plaintiffs concede each of the elements to establish their liability under CERCLA and the HSAA except one—whether they are owners or operators. Here, unlike Plaintiffs' claim against Shaikh as a *former* owner or operator, that element is easily established against TC Rich as the *current* owner of the property and against the Fleischers as the *current* operators of the facility.

"Owner" under CERCLA includes a fee title owner, although certain possessory rights less than full ownership may also sufficiently add up to "owner"

1  status. *City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 451 (9th Cir.
2  2011). TC Rich is the current title holder of the property. ECF No. 62-8, Ex. 24, at
3  depo. page 12:14-16.

4  With respect to "operator" liability under CERCLA, the arguments discussed
5  above as to why Shaikh was not an operator at the time of disposal do not apply to
6  the Fleischers' operator liability.[32] "Indeed, in the case of a current operator, as
7  opposed to a past operator, the plaintiff is not even required to show that the party
8  was an operator when an active 'disposal' of hazardous waste occurred." *Orange
9  County Water Dist. v. Sabic Innovative Plastics US, LLC*, 14 Cal. App. 5th 343, 376
10 (2017) (quoting *Litgo New Jersey, Inc. v. Commissioner New Jersey Dept. of
11 Environmental Protection*, 725 F.3d 369, 381 (3d Cir. 2013)). Although the current
12 tenant in *Sabic* presented evidence that a hazardous substance release had not
13 occurred during its tenancy, summary judgment was denied because it did not present
14 evidence that it is not responsible for decisions about compliance with environmental
15 regulations.

16 In contrast to Shaikh's role as a corporate officer, the Fleischers operate
17 (present tense) a classic mom-and-pop sole proprietorship—Fleischer Custom
18 Brokers. Therefore, the Fleischers do not enjoy the corporate protections afforded by
19 California law. Even so, it does not appear that the Fleischers have maintained *any*
20 corporate formalities for Rifle Freight or TC Rich given the loose rental agreements
21 and shifting of money from business to another since it "all boils down to . . . the
22 same thing." ECF No. 62-8, Ex. 24, at depo. page 100:4-22.

23 As the current operators, no proof of when the disposal occurred is required.
24 Indeed, the phrase "at the time of disposal" found in CERCLA § 107(a)(2) is

---

[32] To the extent Plaintiffs argue that the counterclaim focuses on owner liability rather than operator liability, Shaikh moves to amend the counterclaim to conform it to the evidence. Fed. R. Civ. Proc. 15(b); <u>*Jeong v. Minn. Mut. Life Ins. Co.*</u>, 46 F. App'x 448, 450 (9th Cir. 2002) (liberal policy favors amendments of pleadings to conform to proof at any time, even as late as at trial, under Rule 15(b) unless it results in prejudice to one of the parties).



noticeably absent in CERCLA § 107(a)(1). Following the rationale in *Sabic*, the Fleischers are current tenants (at the very least through the sole proprietorship of Fleischer Custom Brokers) who have been responsible for decisions about the contamination at the Property. Therefore, the Fleischers are "strictly liable for any such releases, regardless of when they occurred." *Sabic*, 14 Cal. App. 5th at 377.

Still, Plaintiffs argue that "disposal" does not include passive migration. Pls.' Mot., at 33:11-25. The issue of passive migration relates to liability of prior owners and is inapplicable here for determining the liability of current owners and operators. *See Carson Harbor Vill., Ltd. v. Unocal Corp*., 270 F.3d 863, 879 (9th Cir. 2001).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment should be denied in all respects.

- Plaintiffs' RCRA claim is moot.
- Plaintiffs have not met their burden on their RCRA claim to prove Shaikh "contributed to" the disposal of hazardous waste.
- Plaintiffs have not met their burden on their RCRA claim to prove an "imminent and substantial endangerment."
- Plaintiffs have not met their burden on their CERCLA claim to prove Shaikh was an owner "at the time of disposal."
- Plaintiffs have not met their burden on their CERCLA claim to prove Shaikh was an operator "at the time of disposal."
- Plaintiffs have not met their burden on their CERCLA claim to prove each Plaintiff incurred response costs "necessary" and "consistent with the NCP."
- TC Rich has not met its burden that it is not liable as a current owner under CERCLA and HSAA on Shaikh's counterclaim.
- Richard Fleischer and Jacqueline Fleischer have not met their burden that they are not liable as a current owners and operators under

1 | CERCLA and HSAA on Shaikh's counterclaim.

Respectfully submitted,

Dated: January 29, 2021        PALADIN LAW GROUP® LLP

By:  */s/ Kirk M. Tracy*
Kirk M. Tracy
Counsel for Defendant and Counter-Claimant Hussain M. Shaikh

