1  Bret A. Stone    SBN 190161  BStone@PaladinLaw.com
2  Kirk M. Tracy   SBN 288508  KTracy@PaladinLaw.com
   PALADIN LAW GROUP® LLP
3  220 W. Gutierrez Street
   Santa Barbara, CA  93101
4  Telephone:  (805) 898-9700
   Facsimile:   (805) 852-2495
5
6  Counsel for Defendant and Counter-Claimant
   Hussain M. Shaikh
7
8              UNITED STATES DISTRICT COURT
9             CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  TC RICH, LLC, *et al.*, | Case No. 2:19-CV-02123-DMG-AGR |
| 12              *Plaintiffs*, | HUSSAIN M. SHAIKH'S STATEMENT OF GENUINE |
| 13      *v.* | DISPUTES AND ADDITIONAL UNCONTROVERTED FACTS IN |
| 14  HUSSAIN M. SHAIKH, *et al.*, | OPPOSITION TO PLAINTIFFS' SEPARATE STATEMENT OF |
| 15              *Defendants*. | UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN |
| 16 | SUPPORT OF PARTIAL SUMMARY JUDGMENT |
| 17  HUSSAIN M. SHAIKH, | |
| 18              *Counter-Claimant*, | Re: ECF No. 61-3. |
| 19      *v.* | <u>Hearing:</u> February 19, 2021 |
| 20  TC RICH, LLC; RICHARD G. | 3:00 p.m. |
| 21  FLEISCHER; and JACQUELINE FLEISCHER, | Courtroom 8C, 8th Floor |
| 22 | Judge Dolly M. Gee |
| 23              *Counter-Defendants*. | Action filed: March 21, 2019 |
| 24 | Trial date: June 1, 2021 |
| 25 | [filed concurrently with Shaikh's Opposition to Plaintiffs' Motion for |
| 26 | Partial Summary Judgment] |

27
28



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

Pursuant to Local Rule 56–2 and in response to the Separate Statement of Uncontroverted Facts and Conclusions of Law, ECF No. 61-3, by TC Rich, LLC ("TC Rich"), Rifle Freight, Inc. ("Rifle Freight"), Fleischer Customs Brokers, Richard G. Fleischer, and Jacqueline Fleischer (Collectively, "Plaintiffs), Defendant and Counter-Claimant Hussain M. Shaikh ("Shaikh") hereby submit his Statement of Genuine Disputes and Additional Uncontroverted Facts in Opposition to Plaintiffs' Motion for Partial Summary Judgment.

## **Table of Contents**

Shaikh's responses to Plaintiffs' alleged uncontroverted facts ................................. 2

Shaikh's additional uncontroverted facts ............................................. 37

Shaikh's responses to Plaintiffs' proposed conclusions of law............................. 38

| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| 1 | Shaikh owned the property at 132 W. 132nd Street ("Property") from approximately August 1979 until December 1984, when title transferred to Haroon Khan.<br><br>**Supporting Evidence**<br>Declaration of Mark E. Elliott ("Elliott Decl."), ¶ 3, Ex. 1 (Shaikh Dep.) at 30:20-31:25, 39:22-40:6, 40:2-17, 44:13-45:2, 45:10-23, 46:6-16.<br>Elliott Decl. ¶ 8, Ex. 6 at 5:8-17.<br>Elliott Decl. ¶ 9, Ex. 7. | Undisputed. |
| 2 | Shaikh leased the Property to Shah Chemical Corporation ("Shah Chemical") and collected rents.<br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at | Undisputed. |



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | 35:12-36:2; 58:3-10, 58:18-24. | |
| 3 | Shaikh leased the Property to Pacifica Chemical Incorporated ("Pacifica Chemical") and collected rents.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 35:12-36:2; 39:22-6, 58:11-14, 58:18-24. | Undisputed. |
| 4 | Shaikh prepared the articles of incorporation for Shah Chemical in February 1977.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 41:7-8, 48:13-49:2.<br>Elliott Decl. ¶ 8, Ex. 6 at 9:3-6.<br>Elliott Decl. ¶ 10, Ex. 8. | Undisputed. |
| 5 | Shaikh served as Shah Chemical's sole president.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 13:5-13, 49:23-24.<br>Elliott Decl. ¶ 8, Ex. 6 at 3:4-8. | Undisputed. |
| 6 | Shaikh served as Shah Chemical's sole acting officer.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 49:3-19, 49:20-22; 49:25-50:24, 51:20-25; 52:1-53:21. | Undisputed. |



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| 7 | Shaikh served as Shah Chemical's sole acting director.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 49:3-19, 50:25-51:25. | Undisputed. |
| 8 | Shaikh was Shah Chemical's sole shareholder.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 41:25-42:2; 53:24-54:1.<br><br>Elliott Decl. ¶ 7, Ex. 5 at 4:5-8. | Undisputed. |
| 9 | Shaikh prepared the articles of incorporation for Pacifica Chemical in September 1978.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 41:7-8; 56:15-57:2.<br>Elliott Decl. ¶ 8, Ex. 6 at 8:26-9:2.<br>Elliott Decl. ¶ 11, Ex. 9. | Undisputed. |
| 10 | Shaikh served as Pacifica Chemical's sole president.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 12:25-13:4<br>Elliott Decl. ¶ 8, Ex. 6 at 2:27-3:3. | Undisputed. |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| 11 | Shaikh served as Pacifica Chemical's sole acting officer.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 60:13-18, 61:21-62:20, 65:22-66:6.<br>Elliott Decl. ¶ 4, Ex. 2 at 6:15-19. | Undisputed. |
| 12 | Shaikh served as Pacifica Chemical's sole acting director.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 60:13-18, 62:21-63:2, 65:22-66:6.<br>Elliott Decl. ¶ 8, Ex. 6 at 6:22-26. | Undisputed. |
| 13 | Shaikh was Pacifica Chemical's sole shareholder.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 42:3-5, 65:22-66:6.<br>Elliott Decl. ¶ 7, Ex. 5 at 4:9-13. | Undisputed. |
| 14 | While other officers and directors were initially named, Shaikh concedes that he alone oversaw business operations.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 41:7-8, 41:25-42:2, 48:13-54:1, 53:4-5, 60:13-18, 61:21-63:2, 65:22-66:6. | Disputed that Mr. Shaikh was the only person overseeing business operations. Undisputed, however, that he was the only officer and director involved in the business. Mr. Shaikh was not always present at the site while operation was ongoing. Shaikh's companies employed 2-3 individuals who independently handled the |



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | | chemicals, completed, and oversaw environmental compliance, neutralization activities with the wastewater, pumping and/or refilling the tanks, the acquisition and storage of PCE, etc. often in his absence. As such, employees oversaw environmental compliance activities and the hands-on operations in terms of handling chemicals. **Supporting Evidence:** Elliott Decl., Ex. 1 (Shaikh Dep.) at 74:14-75:3, 78:2-18, 128:2-17, 148:6-20, 160:4-7. Decl. of Kirk M. Tracy in Supp. of Shaikh's Opp'n to Pls.' Mot. for Partial Summ. J. ("Tracy Opp'n Decl."), *filed herewith*, at Ex. 3, and supplemental interrogatory responses 18-19. |
| 15 | Shah Chemical operated from approximately 1979 until operations were transferred to Pacifica Chemical in approximately 1981. **Supporting Evidence** Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 55:2-12. Elliott Decl. ¶ 8, Ex. 6 at 6:17-21. | Undisputed. |
| 16 | Pacifica Chemical operated at the Property from the early 1980s through at least 1999. | Undisputed. |



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | **Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 55:2-12, 64:16-20.<br>Elliott Decl. ¶ 8, Ex. 6 at 6:12-16. | |
| 17 | A building was developed on the Property in approximately 1978 for use by Shah Chemical just prior to Shah Chemical's commencement of operations at the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 24, Ex. 22. | Undisputed. |
| 18 | Prior to occupancy of the Property by Shah Chemical, the building at the Property was an empty warehouse with no tanks, storage containers, or other implements used for the dyeing or blending of fabrics in the building.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 33:17-34:1. | Undisputed as to the warehouse being empty. Disputed that there was ever any "dyeing or blending of fabrics in the building." There is no evidence in this matter to support that implication. |
| 19 | The equipment, tanks, and other materials used for the Shaikh's chemical businesses were purchased and installed by Shaikh's first company, Shah Chemical.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 35:2-11. | Disputed. Not all materials used for the chemical businesses were purchased and installed by Shah Chemical. For example, Pacifica Chemical installed a trench and drainage system. Further, the clarifier was installed around the same time as the drainage system, potentially by Pacifica.<br>**Supporting evidence:**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | | Dep.) at 116:14-23. |
| 20 | Shaikh operated both Shah Chemical and Pacifica Chemical.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 41:7-8. | Disputed to the extent this fact purports to imply Shaikh was an "operator" for the purpose of CERCLA liability. |
| 21 | Shah Chemical and Pacifica Chemical blended and mixed specialty chemicals for the textile industry and purchased chemicals for resale at the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 66:19-67:5, 69:8-13, 71:18-21. | Undisputed that some specialty chemicals were mixed and blended at the site. However, it must be noted and clarified that PCE was never mixed nor blended by Shah Chemical or Pacifica Chemical on the site. Instead, the company bought PCE from third party suppliers then resold PCE to customers. Further, neither company was a "manufacturer" of chemicals. The companies merely bought large quantities of product, repackaged it into smaller quantities, then sold to customers. They also blended some chemicals for soaps and detergents, not "manufactured."<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 68:16-25, 69:1-5; 66:22-67:5.<br>Elliot Decl. ¶ 6, Ex. 4 at 3:8-12. |
| 22 | Shaikh bought the Property back from Haroon Khan in October 1987 and held | Undisputed. |

| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | title until approximately 2003.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 31:3-25; 44:13-45:2; 45:10-23; 46:12-16.<br>Elliott Decl. ¶ 8, Ex. 6 at 5:8-17.<br>Elliott Decl. ¶ 9, Ex. 7. | |
| 23 | Haroon Khan held title to the Property while Pacifica Chemical continued its operations.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 40:7-17. | Undisputed. |
| 24 | Mr. Khan had no involvement in, nor ownership of, Pacifica Chemical.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 40:18-42:5. | Undisputed. |
| 25 | Until at least 1986, perchloroethylene ("PCE") was stored in a 2,000-gallon above-ground storage tank located in the interior of the building at the Property next to tanks that were utilized for mixing and blending of chemicals and dyes.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 77:13-78:1, 106:17-108:14, 111:24-112:15.<br>Elliott Decl. ¶ 4, Ex. 2 at 3:6-15, 4:5-9.<br>Elliott Decl. ¶ 8, Ex. 6 at 7:22-26. | Undisputed that a 2,000-gallon above ground storage tank in the interior of the facility was used to store PCE for a short period of time. Disputed as to the proximity to the mixing tanks. The evidence does not clearly demonstrate the proximity of PCE tank to the other tanks and in fact suggests the PCE tank was some distance away from the mixing tanks. |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | | **Supporting Evidence** Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 77:17-78:1. Tracy Opp'n Decl., at ¶ 3 & Ex. 2 (map of Property showing "2,000 Gal. Pirchlor-etheyline [sic]" tank near two other storage tanks some distance from three "Mixing Tanks"). |
| 26 | For a period of time, Shah Chemical acquired PCE, stored it in a 2,000 gallon above-ground storage tank, and re-sold it to customers in small quantities. **Supporting Evidence** Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 69:1-5, 70:9-13, 77:13-78:1. Elliott Decl. ¶ 6, Ex. 4 at 2:4-17, 2:26-3:12. Elliott Decl. ¶ 22, Ex. 20. Elliott Decl. ¶ 5, Ex. 3 at 3:12-15, 4:5-9. Elliott Decl. ¶ 8, Ex. 6 at 7:22-26. | Undisputed that Shah Chemical acquired, stored in a storage tank inside the facility, and sold PCE from the premises for a *short* period of time ending in approximately 1986. **Supporting Evidence** Tracy Opp'n Decl., Ex. 1 (Shaikh Depo.) at 67:19-68:4, 112:5-11. Elliott Decl. ¶ 6, Ex. 4, at supplemental response no. 3. |
| 27 | The PCE repackaged for resale was delivered by truck and pumped to Shaikh's companies' above-ground storage tank using a hose that connected through the exterior of the building to the tank through a hole in the wall and ran to the west wall of the building. **Supporting Evidence** Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at | Undisputed that PCE was delivered by truck to Shah Chemical and that the delivery was completed by running a hose through the exterior of the building to the tank connection piping that ran to the west wall of the building and pumped PCE directly into the storage tank. The evidence does not demonstrate such deliveries were to Pacifica |



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | 119:24-120:21, 159:9-160:3. | Chemical.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 159:9-160:3.<br>Elliott Decl. ¶ 6, Ex. 4, at supplemental response no. 3. |
| 28 | The solvent was transferred by company employees to 55-gallon drums for resale.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 120:15-21.<br>Elliott Decl. ¶ 6, Ex. 4 at 3:8-12. | Undisputed that during the time Shah Chemical acquired, stored, and sold PCE, the solvent was pumped directly into the storage tank upon delivery then transferred by company employees to 55-gallon sealed drums for resale.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 159:9-160:3.<br>Elliott Decl. ¶ 6, Ex. 4, at supplemental response no. 3. |
| 29 | From 1978 until approximately 2000, Shaikh's chemical businesses that operated on the Property generated wastewater from spills and rinsing drums, tanks and other storage containers that previously contained chemicals, including PCE.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 5, Ex. 3 at 4:5-9.<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 127:5-12.<br>Elliott Decl. ¶ 4, Ex. 2 at 4:5-9.<br>Elliott Decl. ¶ 8, Ex. 6 at 7:27-8:11. | Disputed. While cleanup on the premises did include rinsing tanks and other storage containers that contained various chemicals into the drainage system therefore creating wastewater, nothing within the evidence states that any such receptacles contained PCE. The containers that were rinsed were those used in the mixing and blending operations. PCE was not blended or mixed. Further, the 55-gallon sealed drums that held PCE for individual sale were kept by customers who bought the PCE contained inside the drum and never |



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | | returned to Shaikh's businesses. **Supporting Evidence** Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) 118:18-119:15, Tracy Opp'n Decl., Ex. 1 (Shaikh Depo.), at 112:5-113:15, 160:8-24, 160:25-161:3. Elliott Decl. ¶ 8, Ex. 6 at request numbers 44-47. |
| 30 | During the course of their operations at the Property, both Shah Chemical and Pacifica Chemical were issued numerous notices of violation ("NOVs"), many of which were received and signed as received by Shaikh. **Supporting Evidence** Elliott Decl. ¶ 16, Ex. 14. Elliott Decl. ¶ 8, Ex. 6 at 14:1-18:20. Elliott Decl. ¶ 14, Ex. 12. | Undisputed that plaintiffs cite 12 notices of violation issued to Pacifica from 1981-2001 and that 1 of these violations was signed by Mr. Shaikh himself. Shaikh objects to this fact on relevance grounds. None of the cited notices of violation specifically state discharges or exceedances of PCE which is the contaminant at issue in this litigation. |
| 31 | Various NOVs were issued to Shah Chemical and Pacifica Chemical, many with cover letters to Shaikh, in 1981, 1992, 1993, 1995, 1996, 1999, 2000, and 2001. **Supporting Evidence** Elliott Decl. ¶ 14, Ex. 12. Elliott Decl. ¶ 8, Ex. 6 at 8:12-19, 14:1-18:20. | Undisputed that Plaintiffs cite 12 notices of violation, 8 of which included a cover letter addressed to Mr. Shaikh as owner and/or president of Pacifica Chemical. As with Fact 30, Shaikh objects to this fact on relevance grounds. None of the cited notices of violation specifically state discharges or exceedances of PCE which is the contaminant at issue in this |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | | litigation. |
| 32 | In June of 1981, Shaikh received an NOV issued to Shah Chemical by the Los Angeles County Sanitation District for discharge of liquid waste from the mixing tanks to the sewer by way of a floor sink and failure to obtain an industrial wastewater discharge permit.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 8, Ex. 6 at 14:1-13.<br>Elliott Decl. ¶ 14, Ex. 12 at 1. | Undisputed. However, this evidence is irrelevant as it relates to mixing tanks and not to PCE, which is the contaminant at issue in this litigation. |
| 33 | Pacifica Chemical installed a clarifier and corresponding sampling box in February of 1986.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 144:2-145:15.<br>Elliott Decl. ¶ 12, Ex. 10. | Undisputed. However, importantly, the evidence does not suggest that the system was installed to address any PCE spills, discharges, cleanup, etc.; instead, it states that the system was installed to address the wastewater from the blending and mixing operations ongoing at the facility. PCE was never blended or mixed. Nothing in the evidence suggests that PCE was drained to the clarifier system.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 118:9-119:15, 126:24-127:17, 136:11-137:2. |
| 34 | Pacifica Chemical installed cement trench drains in the floor of its warehouse building at the Property, which led to the clarifier | Undisputed that Pacifica Chemical installed trench drains all of which drained to |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | system.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 114:3-118:4. | the clarifier. However, importantly, the trench drains were not installed to address PCE spills or clean up. PCE was never blended or mixed. The evidence does not suggest that PCE was rinsed through the trench drains and into the clarifier.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 118:9-119:15, 126:24-127:17. |
| 35 | The trench drains were installed to control spills and deliver any wastewater rinseate from the interior of the building, where PCE was stored and repackaged and chemical mixing and blending occurred, to the clarifier system located at the northeast side of the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 118:7-119:2, 126:20-127:12.<br>Elliott Decl. ¶ 5, Ex. 3 at 4:13-5:15.<br>Elliott Decl. ¶ 6, Ex. 4 at 5:9-26, 5:27-6:26, 6:27-7:2, 8:7-13.<br>Elliott Decl. ¶ 8, Ex. 6 at 7:16-21. | Disputed. that the trenches were intended to collect PCE spills, leaks, or other PCE cleanup.  The evidence cited does not refer to PCE.<br><br>Undisputed that the trench drains were installed to control spills and deliver any wastewater from the chemical mixing and blending operation to the clarifier system. PCE was never blended or mixed.<br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 118:9-119:15, 126:24-127:17.<br>Elliot Decl. ¶ 8, Ex. 6 at response to request no. 47. |
| 36 | Pacifica Chemical's self-monitoring reports from 1992-1994 and 1998-2000 reflect detections of PCE in industrial wastewater. | Undisputed. |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | **Supporting Evidence**<br>Elliott Decl. ¶ 16, Ex. 14. | |
| 37 | Despite the installation of the clarifier six years after commencing operations, Pacifica Chemical continued to receive numerous NOVs for improper industrial wastewater disposal at the Property including in 1992, 1993, 1995, 1999, and 2000.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 16, Ex. 14. | Disputed.  The evidence cited is self-monitoring reports, not notices of violation.<br><br>Disputed as to the use of the phrase "improper industrial wastewater disposal."<br><br>Defendant also objects to this fact for relevance. PCE was never blended or mixed. None of the NOVs are related to exceedances, spills, or discharges of PCE, the contaminant of concern in this litigation.<br><br>Undisputed to the fact that Pacific Chemical was issued 11 NOVs after the clarifier was installed between the years of 1992 and 2001, however, none of the NOVs issued to Pacifica Chemical from 1992-2001 state the phrase "improper industrial wastewater disposal." |
| 38 | Shaikh admitted there was a release of PCE to the environment at the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 8, Ex. 6 at 2:4-8. | Undisputed.  Disputed to the extent Plaintiffs imply a specific time that a release occurred. |
| 39 | After Pacifica Chemical ceased operations at the Property in or around 2000, the Los Angeles Department of Public Works | Undisputed. |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | ("DPW") issued a notice to Shaikh in September 2000 notifying him that he was now responsible for the associated industrial wastewater discharge permit as the owner of the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 152:25-154:18, Ex 13, p. 4.<br>Elliott Decl. ¶ 15, Ex. 13 at 4. | |
| 40 | In July of 2004, Shaikh submitted an application for closure of the clarifier at the 132nd Street Property and the clarifier was closed in place by filling the clarifier and trench drains with cement.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 152:25-155:24.<br>Elliott Decl. ¶ 4, Ex. 2 at 3:20-27. | Undisputed. However, by this time Mr. Shaikh no longer owned the Property. *See* Fact 41, *infra*. |
| 41 | Shaikh sold the Property to an unrelated third party, Eun Hee Lee, in approximately August 2003, who used the Property for garment and handbag storage purposes and/or held the Property vacant.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 45:10-23.<br>Elliott Decl. ¶ 9, Ex. 7.<br>Elliott Decl. ¶ 17, Ex. 15.<br>Elliott Decl. ¶ 26, Ex. 24 (Rule 30(b)(6) and Individual Deposition of Richard G. | Undisputed. |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | Fleischer and Jacqueline A. Fleischer ("Fleischer Dep.")) at 35:11-22. | |
| 42 | Due to the nature of operations at the Property during Eun Hee Lee's period of ownership, DPW did not require an application for an industrial wastewater discharge permit following transfer of title from Shaikh.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 17, Ex. 15. | Undisputed. |
| 43 | Since TC Rich's purchase of the Property in 2005, the Property has been used for logistics and distribution services businesses.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 17, Ex. 15.<br>Elliott Decl. ¶ 24, Ex. 22.<br>Elliott Decl. ¶ 26, Ex. 24 (Fleischer Dep.) at 18:1-21:11.<br>Elliott Decl. ¶ 27, Ex. 25 at 22:24. | Undisputed. |
| 44 | No hazardous substances are used or stored at the Property by Plaintiffs or their tenant.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 26, Ex. 24 (Fleischer Dep.) at 16:6-17:9. | Undisputed. |
| 45 | Shaikh admits perchloroethylene (PCE) is a hazardous substance under the Comprehensive Environmental Response, Compensation and Liability Act | Undisputed. |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | ("CERCLA").<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 4, Ex. 2 at 5:26-6:2. | |
| 46 | Shaikh admits PCE is a hazardous waste under the Resource Conservation and Recovery Act ("RCRA").<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 4, Ex. 2 at 3:3-7. | Undisputed. |
| 47 | Shaikh admits that the Property constitutes a "facility" under CERCLA.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 8, Ex. 6 at 2:9-14. | Undisputed. |
| 48 | PCE is currently present in soil and groundwater at the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 4, Ex. 2 at 3:16-19. | Undisputed. |
| 49 | PCE contamination is the primary focus of the ongoing environmental investigation being conducted at the Property under the oversight of the California Department of Toxic Substances Control ("DTSC").<br>**Supporting Evidence**<br>Elliott Decl. ¶ 2.<br>Elliott Decl. ¶ 4, Ex. 2 at 6. | Undisputed. |
| 50 | Shaikh managed all aspects of Shah Chemical's and Pacifica Chemical's | Disputed. Shaikh employed several individuals to conduct, |



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | businesses while the companies occupied the Property from 1978 through approximately 2000.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 5, Ex. 3. At 2:4-9. | manage and oversee day to day operations, including blending and mixing, cleanup, neutralizing, environmental compliance, etc. The companies also employed bookkeepers, a corporate controller, and a secretary. Mr. Shaikh traveled often, leaving his employees to manage numerous aspects of business operations in his absence routinely. In fact, between 1978 and 2000, there were periods of time where Mr. Shaikh would not even be available via telephone sporadically in which situation employees were prepared to continue business operations independently. The companies also hired outside consultants intermittently.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 50:14-18, 74:14-75:3, 78:2-18, 79:2-25, 84:5-85:10, 128:2-17, 160:4-7.<br>Tracy Opp'n Decl., Ex. 1 (Shaikh depo.), at 148:6-20.<br>Tracy Opp'n Decl., Ex. 3, at supplemental response nos. 18-19. |
| 51 | Shaikh worked almost daily at the Property from when Shah Chemical first occupied the Property until when Pacifica Chemical vacated the Property in or around 2000. | Disputed. Shaikh worked at the property regularly, but often traveled, leaving employees to manage various |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
|  | **Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 69:18-24. | aspects of the business in his absence.<br>**Supporting Evidence**<br>Fact 50, *supra*.<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 128:9-17. |
| 52 | Shaikh was familiar with the products mixed, blended, and repackaged for resale at the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 69:25-70:8. | Undisputed. |
| 53 | As the companies' president working daily at the Property, Shaikh was also familiar with the companies' methods of mixing, blending, and packaging of chemicals at the Property for resale, including PCE.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 70:9-13, 70:19-71:4. | Disputed. Shaikh worked at the property regularly, but often traveled, leaving employees to manage various aspects of the business in his absence.<br>**Supporting Evidence**<br>Fact 51, *supra*. |
| 54 | Shaikh oversaw approximately 2-3 employees at the Property during Shah Chemical's period of operation.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 73:1-5. | Undisputed. |
| 55 | Shaikh oversaw approximately 10 employees at the Property during Pacifica Chemical's period of operations, including | Undisputed that Shaikh trained and supervised approximately 10-12 |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | two employees who performed the mixing, blending, and repackaging of chemicals for resale.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 73:6-21, 74:5-9, 76:3-14, 76:20-77:9, 87:3-5. | employees that worked at Pacifica Chemical, often from his office.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 73:17-21, 74:21-75:3, 78:14-79:2, 87:3-5. |
| 56 | Shaikh trained and supervised the two employees responsible for performing mixing, blending, and repackaging of chemicals for resale.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 74:10-75:3, 76:8-10, 86:20-87:5. | Undisputed that Shaikh trained and supervised approximately 10-12 employees that worked at Pacifica Chemical, often from his office.<br><br>**Supporting Evidence**<br>Fact 55, *supra*. |
| 57 | Shaikh trained and supervised his employees' intake and repackaging of PCE stored at the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 86:20-87:5. | Undisputed that Shaikh trained and supervised approximately 10-12 employees that worked at Pacifica Chemical, often from his office.<br><br>**Supporting Evidence**<br>Fact 55, *supra*. |
| 58 | Shaikh also trained and supervised the employees' cleanup and spill management activities with respect to the mixing and blending processes and intake and packaging of chemicals for resale, even at times when he was away from the facility. | Undisputed that Shaikh trained and supervised approximately 10-12 employees that worked at Pacifica Chemical, often from his office. His supervision was not hands-on. The employees independently completed |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | **Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 78:8-79:1, 128:2-129:9. | cleanup procedures while Shaikh was in his office or, sometimes, out of town.<br><br>**Supporting Evidence**<br>*See* response to Facts 50, 55, *supra.* |
| 59 | Shaikh was also responsible for the companies' environmental compliance obligations.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 85:13-86:6.<br>Elliott Decl. ¶ 14, Ex. 12. | Disputed. Shaikh's companies employed 2-3 individuals who independently handled the chemicals, completed, and oversaw environmental compliance, neutralization activities with the wastewater, pumping and/or refilling the tanks, the acquisition and storage of PCE, etc. often in his absence. As such, employees oversaw environmental compliance activities and the hands-on operations in terms of handling chemicals.<br>**Supporting Evidence**<br>*See* response to Fact 14, *supra.* |
| 60 | Shaikh was the signatory and responsible party on his companies' industrial wastewater discharge permit.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 133:21-134:21, 142:5-24.<br>Elliott Decl. ¶ 8, Ex. 6 at 13:7-20. | Undisputed. |



| No. | **Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence** | **Shaikh's Response** |
|---|---|---|
| | Elliott Decl. ¶ 13, Ex. 11. | |
| 61 | The industrial wastewater discharge permit issued to Pacifica Chemical on January 29, 1986 required sampling of wastewater for PCE.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 13, Ex. 11 at 34-39. | Undisputed. |
| 62 | Shaikh was present during agency inspections of the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 135:20-136:10. | Disputed.  The evidence only refers to one inspection. Undisputed as to the inspection that occurred on June 16, 1981 as Plaintiffs cited. |
| 63 | Shaikh signed for and acknowledged receipt of NOVs issued by oversight agencies to his companies for violation of industrial wastewater discharge regulations.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 136:11-137:25.<br>Elliott Decl. ¶ 14, Ex. 12. | Undisputed only as to those particular NOVs cited. However, this evidence is irrelevant because none of the NOVs include reference to PCE which is the contaminant at issue in this litigation. |
| 64 | Shaikh similarly was the signatory on industrial wastewater self-monitoring reports submitted by his chemical companies.<br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 162:10-163:9, 166:22-167:1, 169:4-16. | Disputed that Shaikh signed all self-monitoring reports. Undisputed that he signed some of the reports. Both Shaikh and Mukesh Doshi signed self-monitoring reports for the businesses. |



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | Elliott Decl. ¶ 16, Ex. 14. | **Supporting Evidence**<br>Elliot Decl. ¶ 16, Ex. 14 at 4-6, 16. |
| 65 | The permitted sampling point for industrial wastewater coming through the clarifier system before discharge via the sewer line into the county sewer system was immediately north of the clarifier.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 109:19-111:19. | Undisputed. |
| 66 | Pacifica Chemical's industrial wastewater self-monitoring report from October 1993 reflects the presence of PCE in samples taken from the clarifier sampling point.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 162:10-163:9; 166:22-167:1, Ex. 14.<br>Elliott Decl. ¶ 16, Ex. 14. | Undisputed. |
| 67 | Investigations in 2015 of the soils immediately adjacent to the abandoned clarifier, as well as in soils beneath the historic location of the PCE above-ground storage tank and cement trench drains used by Pacifica Chemical, identified high concentrations of PCE.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 24, Ex. 22. | Disputed. The evidence cited does not refer to contamination in soil nor does it refer to "high concentrations." It does, however, identify PCE concentrations detected in soil vapor, groundwater, and indoor air at various levels. |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| 68 | Shaikh admits that disposal of PCE is a disposal of a hazardous substance within the meaning of Section 107(a)(2) of CERCLA (42 U.S.C. § 9607(a)(2)). **Supporting Evidence** Elliott Decl. ¶ 4, Ex. 2 at 5:26-6:2. | Undisputed. |
| 69 | In or around 2000, Pacifica Chemical relocated to another facility, located at 2910 Ana Street in Rancho Dominguez, California, and operated there for approximately 2-3 years. **Supporting Evidence** Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 64:16-65:19. | Undisputed, but irrelevant. |
| 70 | In approximately 2003, Pacifica Chemical moved again to 935 East Artesia Boulevard to continue its operations. **Supporting Evidence** Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 63:21-64:3. | Undisputed, but irrelevant. |
| 71 | In early 2005, TC Rich undertook due diligence in anticipation of its eventual purchase of the Property from Eun Hee Lee. **Supporting Evidence** Elliott Decl. ¶ 18. Elliott Decl. ¶ 26, Ex. 24 (Fleischer Dep.) at 35:4-6. | Disputed that the TC Rich's due diligence was sufficient investigatory action to fulfill the All Appropriate Inquiries (AAI) requirement. TC Rich did not preform its own Phase I Environmental Site Assessment ("ESA"). Further, the Phase I ESA conducted in 2005 contains significant |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | | deficiencies including its failure to identify PCE as a recognized environmental condition (REC), failure to identify Pacifica Chemical as an occupant of the property and its operations including storage of PCE, and failure to review available agency records containing information about chemicals used on site including PCE. As such, the Phase I and other due diligence conducted by Plaintiffs does not satisfy the AAI requirement. Undisputed TC Rich took some steps toward due diligence. **Supporting Evidence:** ECF No. 59-15 (Brown Decl.) at ¶¶ 33, 36, 64, 67, 70-72. Elliott Decl. ¶ 26, Ex. 24 (Fleischer Dep.) at 51:20-52:11. |
| 72 | TC Rich's lender commissioned A/E West to prepare a Phase I investigation of the Property, which included a review of the Phase I report previously prepared by JMK Environmental Solutions on behalf of the seller, Eun Hee Lee. **Supporting Evidence** Elliott Decl. ¶ 18, Ex. 16. | Undisputed. |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| 73 | In its Phase I report, A/E West recommended a limited further investigation of the abandoned clarifier, including creation of an agency-approved closure report with accompanying soil sampling as determined by DPW.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 18, Ex. 16. | Undisputed. |
| 74 | In accordance with A/E West's recommendation, Aqua Science Engineers was retained to review the status of the clarifier and conduct any necessary additional investigation as determined by DPW.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 19, Ex. 17. | Undisputed. |
| 75 | Aqua Science determined that Shaikh had obtained a closure certificate for the clarifier from DPW in 2004, but that no confirmatory soil sampling had been performed.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 19, Ex. 17. | Undisputed. |
| 76 | Aqua Science Engineers then coordinated with DPW to perform the requisite soil sampling in the area of the clarifier under DPW supervision.<br>**Supporting Evidence**<br>Elliott Decl. ¶ 19, Ex. 17. | Undisputed |



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| 77 | The sampling did not identify any concerns and, following these activities, TC Rich acquired the Property from Eun Hee Lee in May 2005.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 20, Ex. 18. | Undisputed. |
| 78 | In March of 2015, TC Rich sought to refinance the Property, so its intended lender, City National Bank, engaged Anderson Environmental to perform a new Phase I investigation.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 21, Ex. 19. | Undisputed. |
| 79 | Anderson Environmental identified the former Shah Chemical and Pacifica Chemical operations as recognized environmental conditions and recommended further soil sampling near the closed clarifier and along the concrete trenches leading to the clarifier.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 21, Ex. 19. | Undisputed. |
| 80 | In April 2015, additional subsurface and indoor air sampling was performed by Plaintiffs' environmental contractor, EEC Environmental, which revealed PCE contamination at the Property and indoor vapor intrusion. | Undisputed that the evidence cited mentions a 2015 limited subsurface investigation and indoor air sampling conducted by EEC Environmental finding indoor air samples containing PCE concentrations above California Human |



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

| **No.** | **Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence** | **Shaikh's Response** |
|---|---|---|
| | **Supporting Evidence**<br>Elliott Decl. ¶ 22, Ex. 20. | Health Screening Levels suggesting that the concentrations of soil vapor were volatilizing from the subsurface to indoor air. However, Plaintiffs cannot be certain which portion of the cited evidence Plaintiffs are referring to and therefore dispute the remainder of this fact. |
| 81 | Plaintiffs notified the California Department of Toxic Substances Control (DTSC) of the sampling results, requested agency oversight by DTSC, and together with DTSC actively engaged with Pacifica Chemical to investigate the contamination at the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 23, Ex. 21.<br>Elliott Decl. ¶ 26, Ex. 24 (Fleischer Dep.) at 84:21-85:16. | Disputed as to the meaning of "actively engaged." Disputed that all plaintiffs took any action regarding investigation of the contamination at the property as the evidence cited does not mention Rifle Freight or Fleischer Customs Brokers. Undisputed that TC Rich and the Fleischers notified DTSC. |
| 82 | DTSC confirmed that the PCE contamination detected at the Property was the result of discharges that occurred during the time period that Shaikh owned and operated his chemical businesses at the Property, and that the contamination has been found to exist primarily underneath the cement-filled trench drains and footprint of Pacifica's clarifier and in the area where the 2,000 gallon PCE above-ground storage tank was historically located. | Disputed. The evidence cited does not support this alleged fact and is presented pursuant to a request for judicial notice, ECF No. 63, at ¶ 11. However, "Courts cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed." *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | **Supporting Evidence**<br><br>Elliott Decl. ¶ 24, Ex. 22. | Cal. 2017) (citations omitted). For good reason, since the same letter, at the top of its page 2, incorrectly states, "Since 1999, the property has been utilized for warehouse and distribution purposes by the current owner."  That is untrue given that TC Rich has only owned the property since 2005. *See* Fact 43, *supra.*<br><br>The document cited does not make statements regarding "discharges that occurred during the time period that Shaikh owned and operated his chemical businesses at the Property."  Rather, the document states,<br><br>"Environmental Investigations indicated that releases of volatile organic compounds (VOCs), primarily PCE, have occurred on the Site as a result of past operations."  It *does not* make any statement as to a specific date or who the owner or operator at the property was at the time of any releases. |
| 83 | The discovery of PCE at the Property has resulted in the need to investigate and characterize volatile organic compounds (VOCs), including PCE and its daughter compounds, in soil, soil gas, and groundwater beneath the Property.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 4, Ex. 2 at 6:3-8. | Undisputed. |



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| 84 | The discovery of PCE at the Property has resulted in the need to assess potential risks to human health associated with PCE in soil vapor and indoor air at the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 2.<br>Elliott Decl. ¶ 4, Ex. 2 at 6:9-14. | Undisputed. |
| 85 | Since mid-2015, Shaikh's company, Pacifica Chemical, has taken the lead in conducting investigations of the contamination at the Property under DTSC's supervision. Its environmental contractor, Murex Environmental, Inc. ("Murex"), has performed these activities, including development of a Removal Action Workplan ("RAW").<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 25, Ex. 23. | Undisputed. |
| 86 | The RAW states: "The Site was reportedly occupied by Pacifica from the late-1970s until roughly 1999. Operations conducted by Pacifica were reported to include chemical mixing and distribution, including the formulation of fabric softeners, dyes, and light detergents. It is the storage and transfer of tetrachloroethylene (PCE) in the late-1970s/early-1980s that is suspected of being the source of PCE impacts at the Site."<br>**Supporting Evidence**<br>Elliott Decl. ¶ 25, Ex. 23 at viii. | Disputed as to the cause and timing of any releases and the sufficiency of such evidence presented through a request for judicial notice. *See* Fact 82, *supra*.<br>Undisputed that the quoted language is stated in the report. |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| 87 | Despite these investigatory activities, no actual remediation has been performed at the Property, nor has any removal or other protective action been taken to ameliorate or otherwise reduce the elevated PCE indoor air and soil vapor concentrations.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 29. | Disputed. The evidence cited is objectionable and inadmissible. Elliott Declaration paragraph 29 admits a lack of personal knowledge and foundation and is therefore inadmissible as hearsay.<br><br>Further, evidence presented herein and with Shaikh's motion for partial summary judgment demonstrates that Murex's efforts have resulted in a reduction of contamination at the Property and TC Rich has admitted that Murex's work has "contribut[ed] to abatement" of the contamination.<br><br>**Supporting Evidence**<br>Evid. Objections in Supp. of Shaikh's Opp'n to Pls.' Mot. for Partial Summ. J. ("Shaikh's Objections"), *filed herewith*, at Objection No. 3.<br><br>Decl. of Jeremy R. Squire in Supp. of Opp'n to Pls.' Mot. for Partial Summ. J. ("Squire Decl."), *filed herewith*, at ¶ 3.<br><br>ECF No. 59-10 (Tracy Decl., Ex. 7), at TC Rich's interrogatory resp. no. 9.<br><br>ECF No. 59-8 (Tracy Decl., Ex. 5), at TC Rich interrogatory response no. 3, at p. 7, lines 12-13. |



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| 88 | Despite having been approached by the agency to do so, neither Shaikh nor his companies have agreed to enter into a Voluntary Cleanup Agreement with DTSC to guarantee their performance of the cleanup.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 8, Ex. 6 at 4:8-27.<br>Elliott Decl. ¶ 29.<br>Declaration of John S. Cha ("Cha Decl."), ¶ 3, Ex. 1. | Disputed. The evidence cited is objectionable and inadmissible. Elliott Declaration paragraph 29 admits a lack of personal knowledge and foundation and is therefore inadmissible as hearsay.<br><br>Further, nothing within the cited evidence states that Shaikh was approached by DTSC to engage in voluntary cleanup nor that has he refused to do so. Shaikh has not received an administrative enforcement order or any other legal directive from DTSC and is participating with ongoing environmental investigative actions as an officer of Pacifica Chemical Corporation.<br><br>**Supporting Evidence**<br>Shaikh Objections, at Objection No. 3. |
| 89 | Shaikh has not personally paid for any of the services performed by Murex or any other environmental contractor relating to the investigation and remediation of the Property to date.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 180:2-10.<br>Cha Decl., ¶ 4. | Disputed. Mr. Shaikh has incurred such costs through payments made for his defense by his insurance carrier.<br><br>Moreover, the evidence cited is objectionable and inadmissible.  First, paragraph 4 of the Cha declaration discloses confidential settlement communications in violation of FRE 408.  Second, the testimony of |

SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| | | Mr. Shaikh cited was objected to as vague and ambiguous. **Supporting Evidence** Shaikh Objections, at Objection Nos. 1-2. Squire Decl., at ¶¶ 2-6. |
| 90 | Plaintiffs have incurred response costs, including the costs to perform initial investigations and notifications to DTSC immediately following discovery of the contamination. **Supporting Evidence** Elliott Decl. ¶ 26, Ex. 24 (Fleischer Dep.) at 59:15-61:17, 64:21-65:6, 68:24-69:14, 75:3-76:5, 99:24-101:12, 102:8-103:23, 104:17-25, 105:5-23, 107:7-21, 112:10-21. Elliott Decl. ¶ 27, Ex. 25 at 5:21-6:19, 8:24-9:20, 10:1-2, 12:9-12, 13:3-12, Ex. A. Elliott Decl. ¶ 28, Ex. 26. | Disputed that all plaintiffs have incurred response costs as the evidence does not mention anyone beside TC Rich and the Fleischers. The letter to DTSC for agency oversight was submitted on behalf of TC Rich and signed by Richard and Jackie Fleischer. Further, EEC was retained by TC Rich only, not any of the other plaintiffs. Disputed also to the extent Plaintiffs claim that the evidence demonstrates such costs were "necessary" under CERCLA. The evidence cited does not support such a conclusion or inference. Undisputed that *some* plaintiffs have incurred *some* costs. **Supporting Evidence** Elliott Decl. ¶ 26, Ex. 24 (Fleisher Dep.) at 61:7-17, 65:3-6, 68:24-69:5, 104:19-105:17, 112:10-21 (only TC Rich and Fleischer Customs Brokers paid any costs). |



| No. | Plaintiffs' Alleged Uncontroverted Facts and Supporting Evidence | Shaikh's Response |
|---|---|---|
| 91 | EEC Environmental, Plaintiffs' environmental contractor, billed fees and costs to Plaintiffs for the initial investigation of the leaking clarifier in 2015 and subsequent investigatory activities and administrative interactions with DTSC.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 29. | Disputed.  Shaikh believes Plaintiffs intended to cite paragraph 28 of the Elliott Declaration for this fact.  To the extent they rely on paragraph 29, see Shaikh Objections, at Objection number 3, and the evidence cited does not support this alleged fact.<br><br>Also disputed that all Plaintiffs incurred such costs.  Only TC Rich and Fleischer Customs Brokers paid any such costs.<br><br>To the extent Plaintiffs intended to rely upon paragraph 28, it is disputed to the extent Plaintiffs claim that the evidence demonstrates such costs were "necessary" under CERCLA.  The evidence cited does not support such a conclusion or inference.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 26, Ex. 24 (Fleisher Dep.) at 61:7-17, 65:3-6, 68:24-69:5, 104:19-105:17, 112:10-21 (only TC Rich and Fleischer Customs Brokers paid any costs). |



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

## SHAIKH'S ADDITIONAL UNCONTROVERTED FACTS

| No. | Shaikh's Additional Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| 92 | Only Richard Fleischer Customs Brokers ("RFCB") and TC Rich paid TC Rich's consultant, EEC, for its work | ECF No. 59-13 ("Plaintiffs' Depo."), at depo. pages 100:4-22, 103:17-20, 107:7-21. |
| 93 | Murex's efforts have resulted in a reduction of contamination at the Property. | Squire Decl., at ¶ 3.<br><br>ECF No. 59-15 (Brown Decl.) at ¶¶ 46, 111, 126-27.<br><br>ECF No. 59-10 (Tracy Decl., Ex. 7), at TC Rich's interrogatory resp. no. 9. |
| 94 | Shaikh has not caused or contributed to any spill, release, or discharge of PCE at the Property. | ECF No. 62-1 (Shaikh Depo.), at depo. pages 74:5-75:3, 77:12-79:1 (Shaikh worked in his office), 76:3-77:9 (Shaikh did not handle PCE; two employees were the only ones involved in PCE intake and repackaging); 119:10-15 (no PCE spills); 128:5-17 (not aware of any spills of PCE).<br><br>Tracy Opp'n Decl., Ex. 1 (Shaikh Depo.), at 158:7-161:3 (PCE never mixed, nor used drums of PCE rinsed and Shaikh was not the person overseeing delivery of PCE).<br><br>ECF No. 62-2 (Shaikh Depo. continued) at depo. pages 129:10-15 (never informed of any spills either, such as when returning from travel). |



| No. | Shaikh's Additional Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| 95 | One of Pacifica and Shah Chemical's employees, Mr. Tomas Macedonio, was in charge of environmental management and compliance. | Tracy Opp'n Decl., Ex. 3, at supplemental response nos. 18-19. |
| 96 | Murex's work at the Property has been paid for by the insurance company for Shaikh and Pacifica. | Squire Decl., at ¶¶ 2-6. |

## RESPONSE TO PLAINTIFFS' CONCLUSIONS OF LAW

### Plaintiffs' Conclusions of Law No. 1:

That Shaikh is a responsible party liable under CERCLA § 107(a)(2) (42 U.S.C. § 9607(a)(2)) due to his ownership of a facility at the time of disposal of hazardous substances. Shaikh, an individual, is a "person" within the meaning of CERCLA. 42 U.S.C. § 9601(21). Shaikh admitted in responses to written discovery that the Property is a "facility" within the meaning of CERCLA (*see* 42 U.S.C. § 9601(9)), and that PCE is a "hazardous substance" under CERCLA (*see* 42 U.S.C. § 9601(14); 42 U.S.C. § 6903(5)(B)). Shaikh has also admitted that PCE was received and stored in large quantities by his chemical companies at the Property, and was detected in wastewater releases occurring over the course of the 20 years Shaikh was the fee title owner of the Property. *City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 444, 451 (9th Cir. 2011) ("owner" under CERCLA means fee title owner). It is the PCE that was disposed in the course of Shaikh's and his companies' operations and Shaikh's ownership of the Property that is now found in groundwater and soil at the Property. *See* 42 U.S.C. § 9601(29). Finally, Plaintiffs have incurred and will continue to incur necessary response costs to remove and remediate the PCE contamination caused during Shaikh's period of ownership.[1] *See* 42 U.S.C. § 9601(25). See 1, 25-26, 29, 35-38, 45-49, 61, 66-68, 82, 85-86, 90-91.

---

[1] Through this Motion, Plaintiffs are not seeking to prove that the response costs they incurred are consistent with the National Contingency Plan; rather, Plaintiffs seek to establish only as a threshold

**Response to Conclusions of Law No. 1:**

A genuine issue of material fact exists as to *when* the disposal occurred for purposes of Shaikh's alleged liability as an owner under CERCLA § 107(a)(2). Plaintiffs' own evidence demonstrates that Shaikh was *not* the fee title owner from 1984 to 1987. Fact 1, *supra*. Shaikh has not been the fee title owner since he sold the Property in 2003. Thus, to meet their burden of proof on summary judgment, Plaintiffs must show on undisputed facts that a disposal of PCE occurred either between 1979 and 1984 or between 1987 and 2003. Plaintiffs offer no such evidence.

In addition to the genuine issue of material fact on *when* the disposal occurred, there are other factual questions for the trier of fact on whether Shaikh had hands-on involvement in the daily running of the corporate business. To establish operator liability under CERCLA, the defendant "must [have] play[ed] an active role in running the facility, typically involving hands-on, day-to-day participation in the facility's management." *Long Beach Unified School Dist. v. Dorothy B. Godwin California Living Trust,* 32 F.3d 1364, 1367 (9th Cir. 1994). Under the "actual control" standard, to be an operator of a facility, the defendant "must [have] play[ed] an active role in running the facility, typically involving hands-on, day-to-day participation in the facility's management." *Long Beach,* 32 F.3d at 1367. This rule makes sense given that "officers and directors are not vicariously liable for torts of the corporation in which they do not participate." *Frances T.*, 42 Cal. 3d at 503-04. Thus, individual (non-corporate) operator liability includes someone who *personally* handles the hazardous substance or manages, directs, or controls those operations. *Bestfoods,* 524 U.S. at 66–67.

Although it is true that Mr. Shaikh was the president of Pacifica Chemical Corp., there is no evidence that he actually controlled or had hands-on participation in the handling of any chemicals himself—let alone PCE. Rather, as Mr. Shaikh testified, he worked in the office. Fact 94, *supra*. He did not handle PCE himself. *Id.*

---

matter that they have incurred response costs under CERCLA.



He did not cause or contribute to any spill (he did not even know about any spills). *Id.* Further, one of Pacifica and Shah Chemical's employees, Mr. Tomas Macedonio, was in charge of environmental management and compliance.  Fact 95, *supra*. Plaintiffs do not allege, and offer no evidence, that the corporate veil should be pierced.

## Plaintiffs' Conclusions of Law No. 2:

That Shaikh is a responsible party liable under CERCLA § 107(a)(2) (42 U.S.C. § 9607(a)(2)) based on his operation of a facility at the time of disposal of hazardous substances. Shaikh, an individual, is a "person" within the meaning of CERCLA. 42 U.S.C. § 9601(21). Shaikh admitted in responses to written discovery that the Property is a "facility" within the meaning of CERCLA (*see* 42 U.S.C. § 9601(9)), and that PCE is a "hazardous substance" under CERCLA (*see* 42 U.S.C. § 9601(14); 42 U.S.C. § 6903(5)(B)). In managing, directing, and controlling activities at the Property, Shaikh operated a "facility" within the meaning of CERCLA (*see* 42 U.S.C. § 9601(9)), which used and stored PCE, a "hazardous substance" under CERCLA (*see* 42 U.S.C. § 9601(14); 42 U.S.C. § 6903(5)(B)). The PCE which was utilized as part of Shaikh's and his companies' operations at the Property is now found in groundwater and soil at the Property, in locations consistent with Shah Chemical's and Pacifica Chemical's chemical blending, storage, and rinsing equipment, evidencing disposal. *See* 42 U.S.C. § 9601(29); *Voggenthaler v, Maryland Square LLC,* 724 F.3d 1050, 1064. The pollution-causing operations were undisputedly "managed" and "controlled" by Shaikh. *United States v. Bestfoods*, 524 U.S. 51, 66–67 (1998). Plaintiffs have incurred and will continue to incur necessary response costs[2] to remove and remediate the PCE contamination caused during Shaikh's operations at the Property. *See* 42 U.S.C. § 9601(25). *See* SSUF 1, 5-8, 10-13, 29, 35-38, 45, 47-48, 50-51, 54-61, 64-66, 85-86, 90-91.

/ / /

---

[2] *See supra* note 1.

SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

**<u>Response to Conclusions of Law No. 2:</u>**

A genuine issue of material fact exists as to *when* the disposal occurred for purposes of Shaikh's alleged liability as an operator under CERCLA § 107(a)(2). Plaintiffs' own evidence demonstrates that Shah Chemical Corporation or Pacific Chemical Corporation (not Shaikh personally) were *not* tenants on the property before 1979 or after 1999. ECF No. 61 ("Pls.' Mot."), at 11:26-28; ECF No. 61-3 ("Pls.' SSUF"), at Facts 1, 22.

Thus, to meet their burden of proof on summary judgment, Plaintiffs would have to show that Shaikh himself was an operator (which is disputed) and that on undisputed facts that a disposal of PCE occurred between 1979 and 1999. Plaintiffs offer no such evidence.

In addition to the genuine issue of material fact on *when* the disposal occurred, there are other factual questions for the trier of fact on whether Shaikh had hands-on involvement in the daily running of the corporate business. To establish operator liability under CERCLA, the defendant "must [have] play[ed] an active role in running the facility, typically involving hands-on, day-to-day participation in the facility's management." *Long Beach Unified School Dist. v. Dorothy B. Godwin California Living Trust,* 32 F.3d 1364, 1367 (9th Cir. 1994). Under the "actual control" standard, to be an operator of a facility, the defendant "must [have] play[ed] an active role in running the facility, typically involving hands-on, day-to-day participation in the facility's management." *Long Beach,* 32 F.3d at 1367. This rule makes sense given that "officers and directors are not vicariously liable for torts of the corporation in which they do not participate." *Frances T.,* 42 Cal. 3d at 503-04. Thus, individual (non-corporate) operator liability includes someone who *personally* handles the hazardous substance or manages, directs, or controls those operations. *Bestfoods,* 524 U.S. at 66–67.

Although it is true that Mr. Shaikh was the president of Pacifica Chemical Corp., there is no evidence that he actually controlled or had hands-on participation



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

in the handling of any chemicals himself—let alone PCE. Rather, as Mr. Shaikh testified, he worked in the office. Fact 94, *supra*. He did not handle PCE himself. *Id.* He did not cause or contributed to any spill (he didn't even know about any spills). *Id.* Further, one of Pacifica and Shah Chemical's employees, Mr. Tomas Macedonio, was in charge of environmental management and compliance.  Fact 95, *supra*. Plaintiffs do not allege, and offer no evidence, that the corporate veil should be pierced.

**Plaintiffs' Conclusions of Law No. 3:**

That Shaikh is liable under RCRA, 42 U.S.C. § 6972(a)(1)(B), as a person who contributed to the handling, storage, and/or disposal of hazardous waste at the Property, which may present an imminent and substantial endangerment to health or the environment. PCE is a "solid waste" within the meaning of RCRA when discarded, as it was here. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1041 (9th Cir. 2004). Disposal of PCE—a solid waste—occurred during the time period of Shaikh's operation of two chemical businesses at the Property over the course of approximately two decades. Shaikh exercised significant and almost exclusive control over ever aspect of his chemical businesses. *See Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 852 (9th Cir. 2011); *Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1226 (E.D. Wash. 2015). Although Plaintiffs are not seeking a declaration as to the imminent and substantial endangerment element of RCRA, PCE which "may present an imminent and substantial endangerment to health or the environment" is present in the environment in areas consistent with Shaikh's operations. *See* 42 U.S.C. § 6972(a)(1)(B) (emphasis added). *See* SSUF 1, 5-8, 10-13, 19, 25, 29, 33-35, 38-40, 45-49, 50-68, 82, 85-86.

**Response to Conclusions of Law No. 3:**

First, Plaintiffs' RCRA claim is moot. There is no evidence of inadequate response to the contamination, nor is there any evidence that DTSC has neglected its

duties.[3] Moreover, Plaintiffs here have not raised any concerns regarding DTSC's handling of this case except to mention that there is no formal order, which itself suggests that DTSC does not consider the contamination to be an imminent and substantial endangerment. Plaintiff offers no admissible evidence the remedial process is not proceeding exactly as planned.[4] *See Christie-Spencer Corp.*, 118 F. Supp. 2d at 420 (there was no imminent and substantial threat to public health or the environment if defendant proceeded with its cleanup plan, even though it was voluntary, in part because there was no indication that defendant would deviate from the state agency's approved plans).

Even if Plaintiffs' RCRA claim was not moot, there are disputed issues of fact on whether Defendant *contributed* to the disposal of hazardous waste and whether the contamination may present an imminent and substantial endangerment.

For purposes of their motion for partial summary judgment, Plaintiffs concede that they cannot meet their burden with respect to the third element—they "are not seeking a declaration as to the imminent and substantial endangerment element of RCRA." ECF 61-3, at 19:10-11. Based on that concession, Defendant incorporates by reference the legal argument and supporting evidence that there is not an "imminent and substantial endangerment" from his affirmative motion rather than repeat those points here. ECF 59-1, at 18:11-23:14. To that end, Defendant requests a ruling that there was not an "imminent and substantial endangerment" at the time Plaintiffs filed their RCRA claim in June 2019.

Turning back to the second element—the only element addressed in Plaintiffs'

---

[3] ECF No. 59-15 (Brown Decl.) ¶¶ 31-32 (summary of Murex's work to date), 40-55 (detailed review of Murex's work since 2015), 78-79 (reasonableness of Murex's work under DTSC supervision); ECF No. 59-7 (Tracy Decl., Ex. 4), at TC Rich request for admission response no. 15 (TC Rich admits it had taken no remedial action at the site as of May 12, 2017); ECF 62-8, at Ex. 24, deposition pages and lines 68:13-15: 60:13-20; 61:18-21 (no action by Plaintiffs; they have let Murex do all the work).

[4] *See* Evid. Objections in Supp. of Shaikh's Opp'n to Pls.' Mot. for Partial Summ. J., *filed herewith*, at Objections 1, 3; Shaikh's SGD, at Facts 87-89, 91.



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

motion—they fail to meet their burden there too. Proof that a defendant "contributed to" a disposal of a hazardous waste requires much more than a mere showing that PCE is in the environment. Instead, a plaintiff must show "that the defendant had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 852 (9th Cir. 2011). Such "control" requires a direct connection to the waste, such as by "handling it, storing it, treating it, transporting it, or disposing of it." *Id.* Thus, "contributed to" under RCRA means "some level of causation between the contamination and a party to be held liable." *California Dept. of Toxic Subst. Control v. Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d 930, 979 (E.D. Cal. 2003) (citation and internal quotation marks omitted).

The facts that Mr. Shaikh was the president of the corporation, that his name might be on an application, or even on a notice of violation, is not the type of "active functions with a direct connection to the waste itself." *Hinds*, 654 f.3d at 851. Rather, as Mr. Shaikh testified, he worked in the office. Fact 94, *supra*. He did not handle PCE himself. *Id.* He did not cause or contributed to any spill (he did not even know about any spills). *Id.* Further, one of Pacifica and Shah Chemical's employees, Mr. Tomas Macedonio, was in charge of environmental management and compliance. Fact 95, *supra*. Under the reasoning of the Supreme Court in *United States v. Bestfoods*, 524 U.S. 51 (1998), an individual can be held liable as an operator only if he personally took part in the operation that caused the release. This is consistent with the well-settled principle that "officers and directors are not vicariously liable for torts of the corporation in which they do not participate." *Frances T. v. Village Green Owners Assn.*, 42 Cal. 3d 490, 503-04 (1986). Shaikh's corporate entities and their respective employees operated at the Property—he had no sole proprietorships such as Fleischer Customs Brokers operating at the Property.

Plaintiffs fail to meet their burden of proof. They offer no evidence of Shaikh's personal contribution to a disposal. They offer no evidence of any disposal at all.



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

**Plaintiffs' Conclusions of Law No. 4:**

That the Fleischers are not statutorily liable parties under CERCLA or the California Health and Safety Code for hazardous waste at the Property, and no other theory of liability alleged against the Fleischers in Shaikh's Counterclaim is supported by evidence or legal basis. The Fleischers are not "owners" of the Property and are therefore not responsible parties within the definition of either CERCLA §§ 107(a)(1) or (a)(2) owner liability categories. *See City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 451 (9th Cir. 2011) ("owner" under CERCLA means fee title owner). Nor are the Fleischers "operators" under CERCLA, as they do not manage, direct, or control activities at the facility relating to the pollution. *United States v. Bestfoods*, 524 U.S. 51, 66–67 (1998); *see also Long Beach Unified Sch. Dist. v. Dorothy B. Godwin California Living Tr.*, 32 F.3d 1364, 1367–68 (9th Cir. 1994) ("To be an operator of a hazardous waste facility, a party must do more than stand by and fail to prevent the contamination. It must play an active role in running the facility, typically involving hands-on, day-to-day participation in the facility's management."). Finally, no "disposal" has occurred at the Property since TC Rich acquired the Property in 2005. *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 879 (9th Cir. 2001) (gradual passive migration of contaminants through soil at a facility does not constitute a disposal for purposes of CERCLA owner or operator liability). The absence of any responsibility by the Fleischers for the PCE contamination at the Property invalidates Shaikh's counterclaim for equitable indemnity and contribution against the Fleischers because equitable contribution and indemnity claims under California law require there to be a joint legal obligation, or a duty and responsibility for the injury by the party from whom indemnity is sought. *See Wells Fargo Bank, N.A. v. Renz*, 795 F. Supp. 2d 898, 927 (N.D. Cal. 2011) citing *Jocer Enters., Inc. v. Price*, 183 Cal.App.4th 559, 573–74 (2010). See SSUF 1, 41–44, 71, 80-82, 85-86.

/ / /



**Response to Conclusions of Law No. 4:**

Plaintiffs concede each of the elements to establish their liability under CERCLA and the HSAA except one—whether they are owners or operators. "Owner" under CERCLA includes a fee title owner, although certain possessory rights less than full ownership may also sufficiently add up to "owner" status. *City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 451 (9th Cir. 2011). TC Rich is the current title holder of the property. ECF No. 62-8, Ex. 24, at depo. page 12:14-16.

With respect to "operator" liability under CERCLA, ". . . in the case of a current operator, as opposed to a past operator, the plaintiff is not even required to show that the party was an operator when an active 'disposal' of hazardous waste occurred." *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC*, 14 Cal. App. 5th 343, 376 (2017) (quoting *Litgo New Jersey, Inc. v. Commissioner New Jersey Dept. of Environmental Protection*, 725 F.3d 369, 381 (3d Cir. 2013)).

Here, the Fleischers operate (present tense) a classic mom-and-pop sole proprietorship—Fleischer Custom Brokers. Therefore, the Fleischers do not enjoy the corporate protections afforded by California law. Even so, it does not appear that the Fleischers have maintained *any* corporate formalities for Rifle Freight or TC Rich given the loose rental agreements and shifting of money from business to another since it "all boils down to . . . the same thing." ECF No. 62-8, Ex. 24, at depo. page 100:4-22.

As the current operators, no proof of when the disposal occurred is required. Indeed, the phrase "at the time of disposal" found in CERCLA § 107(a)(2) is noticeably absent in CERCLA § 107(a)(1). Following the rationale in *Sabic*, the Fleischers are current tenants (at the very least through the sole proprietorship of Fleischer Custom Brokers) who have been responsible for decisions about the contamination at the Property.  Therefore, the Fleischers are "strictly liable for any

/ / /

SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS

such releases, regardless of when they occurred." *Sabic*, 14 Cal. App. 5th at 377.

DATED: January 29, 2021                      PALADIN LAW GROUP® LLP

By:    /s/ Kirk M. Tracy
       Kirk M. Tracy
       Counsel for Defendant and Counter-
       Claimant Hussain M. Shaikh



SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITONAL UNCONTROVERTED FACTS