1
2
3
4

RAINES FELDMAN LLP
JOHN S. CHA, ESQ. (SBN 129115)
JCHA@RAINESLAW.COM
1800 AVENUE OF THE STARS, 12TH FLOOR
LOS ANGELES, CA 90067
TELEPHONE:  (310) 440-4100
FACSIMILE:    (424) 239-1613

5
6
7
8

PILLSBURY WINTHROP SHAW PITTMAN LLP
MARK E. ELLIOTT (SBN 157759)
mark.elliott@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone:      213.488.7100
Facsimile:      213.629.1033

9
10
11

Attorneys for Plaintiffs
TC RICH, LLC, Rifle Freight, Inc., Fleischer
Customs Brokers, Richard G. Fleischer, and
Jacqueline Fleischer

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TC RICH, LLC, a California Limited Liability Company, RIFLE FREIGHT, INC., a California corporation, FLEISCHER CUSTOMS BROKERS, a sole proprietorship, RICHARD G. FLEISCHER, an individual, and JACQUELINE FLEISCHER, an individual,<br><br>         Plaintiffs,<br><br>         v.<br><br>HUSSAIN M. SHAIKH, an individual, HAROON KHAN, an individual, and SHAH CHEMICAL CORPORATION, a California Corporation.<br><br>         Defendants. | Case No. 2:19-CV-02123-DMG-AGR<br><br>**PLAINTIFFS' RESPONSE TO HUSSAIN M. SHAIKH'S STATEMENT OF GENUINE DISPUTES AND ADDITIONAL UNCONTROVERTED FACTS**<br><br>[Filed concurrently with Plaintiffs' Reply in Support of Motion for Partial Summary Judgment and Evidentiary Objections]<br><br>Courtroom: 8C<br>Judge: Hon. Dolly M. Gee<br>Date: February 19, 2021<br>Time: 3:00 p.m. |

-1-

Pursuant to Standing Order Section 5(d.)(i.), TC Rich, LLC ("TC Rich"), Rifle Freight, Inc., Fleischer Customs Brokers, Richard G. Fleischer, and Jacqueline Fleischer (Collectively, "Plaintiffs), hereby submit this Response to the Separate Statement of Genuine Disputes and Additional Uncontroverted Facts in Opposition to Plaintiffs' Motion for Partial Summary Judgment, ECF No. 64-1, by Defendant and Counter-Claimant Hussain M. Shaikh ("Shaikh").

## Table of Contents

Plaintiffs' responses to Shaikh's responses to Plaintiffs' uncontroverted facts .......... 2

Plaintiffs' responses to Shaikh's additional uncontroverted facts ............................ 55

| No. | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Shaikh's Response | Plaintiffs' Response |
|---|---|---|---|
| 1 | Shaikh owned the property at 132 W. 132nd Street ("Property") from approximately August 1979 until December 1984, when title transferred to Haroon Khan.<br><br>**Supporting Evidence**<br>Declaration of Mark E. Elliott ("Elliott Decl."), ¶ 3, Ex. 1 (Shaikh Dep.) at 30:20-31:25, 39:22-40:6, 40:2-17, 44:13-45:2, 45:10-23, 46:6-16. | Undisputed. | No response. |

| | | | | |
|---|---|---|---|---|
| | Elliott Decl. ¶ 8, Ex. 6 at 5:8-17.<br><br>Elliott Decl. ¶ 9, Ex. 7. | | | |
| 2 | Shaikh leased the Property to Shah Chemical Corporation ("Shah Chemical") and collected rents.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at35:12-36:2; 58:3-10, 58:18-24. | Undisputed. | | No response. |
| 3 | Shaikh leased the Property to Pacifica Chemical Incorporated ("Pacifica Chemical") and collected rents.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 35:12-36:2; 39:22-6, 58:11-14, 58:18-24. | Undisputed. | | No response. |

-3-

| | | | | |
|---|---|---|---|---|
| 4 | Shaikh prepared the articles of incorporation for Shah Chemical in February 1977.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 41:7-8, 48:13-49:2.<br>Elliott Decl. ¶ 8, Ex. 6 at 9:3-6.<br>Elliott Decl. ¶ 10, Ex. 8. | Undisputed. | | No response. |
| 5 | Shaikh served as Shah Chemical's sole president.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 13:5-13, 49:23-24.<br>Elliott Decl. ¶ 8, Ex. 6 at 3:4-8. | Undisputed. | | No response. |
| 6 | Shaikh served as Shah Chemical's sole acting officer.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 49:3-19, 49:20-22; 49:25-50:24, 51:20-25; 52:1-53:21. | Undisputed. | | No response. |

-4-

| 7 | Shaikh served as Shah Chemical's sole acting director.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 49:3-19, 50:25-51:25. | Undisputed. | No response. |
|---|---|---|---|
| 8 | Shaikh was Shah Chemical's sole shareholder.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 41:25-42:2; 53:24-54:1.<br>Elliott Decl. ¶ 7, Ex. 5 at 4:5-8. | Undisputed. | No response. |
| 9 | Shaikh prepared the articles of incorporation for Pacifica Chemical in September 1978.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 41:7-8; 56:15-57:2.<br>Elliott Decl. ¶ 8, Ex. 6 at 8:26-9:2.<br>Elliott Decl. ¶ 11, Ex. 9. | Undisputed. | No response. |

-5-

| 10 | Shaikh served as Pacifica Chemical's sole president.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 12:25-13:4<br>Elliott Decl. ¶ 8, Ex. 6 at 2:27-3:3. | Undisputed. | No response. |
|---|---|---|---|
| 11 | Shaikh served as Pacifica Chemical's sole acting officer.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 60:13-18, 61:21-62:20, 65:22-66:6.<br>Elliott Decl. ¶ 4, Ex. 2 at 6:15-19. | Undisputed. | No response. |
| 12 | Shaikh served as Pacifica Chemical's sole acting director.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 60:13-18, 62:21-63:2, 65:22-66:6.<br>Elliott Decl. ¶ 8, Ex. 6 at 6:22-26. | Undisputed. | No response. |

-6-

| 13 | Shaikh was Pacifica Chemical's sole shareholder.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 42:3-5, 65:22-66:6.<br>Elliott Decl. ¶ 7, Ex. 5 at 4:9-13. | Undisputed. | No response. |
| --- | --- | --- | --- |
| 14 | While other officers and directors were initially named, Shaikh concedes that he alone oversaw business operations.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 41:7-8, 41:25-42:2, 48:13-54:1, 53:4-5, 60:13-18, 61:21-63:2, 65:22-66:6. | Disputed that Mr. Shaikh was the only person overseeing business operations.  Undisputed, however, that he was the only officer and director involved in the business. Mr. Shaikh was not always present at the site while operation was ongoing. Shaikh's companies employed 2-3 individuals who independently handled the chemicals, completed, and oversaw environmental compliance, neutralization activities with the wastewater, pumping and/or refilling the tanks, the acquisition and storage of PCE, etc. often in his absence. As such, employees oversaw environmental compliance activities and the hands-on operations in terms of handling chemicals. | Shaikh's Response does not raise a genuine dispute because it does not controvert the fact that Shaikh oversaw business operations, including those activities he personally delegated to employees in his capacity as manager and supervisor. Shaikh's evidence is not material to his role. |

*TC RICH v. Shaikh, et al.*

PLAINTIFFS' RESPONSE TO SHAIKH'S STATEMENT OF GENUINE DISPUTES

Case No: 2:19-CV-02123-DMG-AGR

4825-7745-7626.v1

| | | **Supporting Evidence:** | |
|---|---|---|---|
| | | Elliott Decl., Ex. 1 (Shaikh Dep.) at 74:14-75:3, 78:2-18, 128:2-17, 148:6-20, 160:4-7. Decl. of Kirk M. Tracy in Supp. of Shaikh's Opp'n to Pls.' Mot. for Partial Summ. J. ("Tracy Opp'n Decl."), *filed herewith*, at Ex. 3, and supplemental interrogatory responses 18-19. | |
| 15 | Shah Chemical operated from approximately 1979 until operations were transferred to Pacifica Chemical in approximately 1981.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 55:2-12.<br>Elliott Decl. ¶ 8, Ex. 6 at 6:17-21. | Undisputed. | No response. |
| 16 | Pacifica Chemical operated at the Property from the early 1980s through at least 1999.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 55:2-12, 64:16-20. | Undisputed. | No response. |

-8-

| | | | | |
|---|---|---|---|---|
| | Elliott Decl. ¶ 8, Ex. 6 at 6:12-16. | | | |
| 17 | A building was developed on the Property in approximately 1978 for use by Shah Chemical just prior to Shah Chemical's commencement of operations at the Property.<br><br>**<u>Supporting Evidence</u>**<br>Elliott Decl. ¶ 24, Ex. 22. | Undisputed. | No response. | |
| 18 | Prior to occupancy of the Property by Shah Chemical, the building at the Property was an empty warehouse with no tanks, storage containers, or other implements used for the dyeing or blending of fabrics in the building.<br><br>**<u>Supporting Evidence</u>**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 33:17-34:1. | Undisputed as to the warehouse being empty. Disputed that there was ever any "dyeing or blending of fabrics in the building." There is no evidence in this matter to support that implication. | Undisputed. Plaintiffs' evidence establishes the absence of any such implements prior to Shah Chemical's occupancy. Plaintiffs' inadvertently imprecise description of the processes used by Shaikh's businesses is not material. Shaikh does not proffer any evidence to controvert Fact 18. | |

-9-

| 19 | The equipment, tanks, and other materials used for the Shaikh's chemical businesses were purchased and installed by Shaikh's first company, Shah Chemical.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 35:2-11. | Disputed. Not all materials used for the chemical businesses were purchased and installed by Shah Chemical. For example, Pacifica Chemical installed a trench and drainage system. Further, the clarifier was installed around the same time as the drainage system, potentially by Pacifica.<br>**Supporting evidence:**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 116:14-23. | Undisputed.<br>The evidence proffered by Shaikh does not controvert the fact that Shah Chemical purchased and installed equipment, tanks, and other materials for use in its chemical business. In addition, it is immaterial whether Shaikh's first or second business installed certain equipment—all were installed by one of Shaikh's chemical companies at the Property. |
| 20 | Shaikh operated both Shah Chemical and Pacifica Chemical.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 41:7-8. | Disputed to the extent this fact purports to imply Shaikh was an "operator" for the purpose of CERCLA liability. | This response improperly states a legal argument. *See* Initial Standing Order, Section 5(d.)(i), at p. 7 ("No legal argument should be set forth in [the Statement of Genuine Disputes.]").<br>Shaikh's legal argument does not controvert this undisputed fact. |

| 21 | Shah Chemical and Pacifica Chemical blended and mixed specialty chemicals for the textile industry and purchased chemicals for resale at the Property.<br><br>**<u>Supporting Evidence</u>**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 66:19-67:5, 69:8-13, 71:18-21. | Undisputed that some specialty chemicals were mixed and blended at the site. However, it must be noted and clarified that PCE was never mixed nor blended by Shah Chemical or Pacifica Chemical on the site. Instead, the company bought PCE from third party suppliers then resold PCE to customers.<br><br>Further, neither company was a "manufacturer" of chemicals. The companies merely bought large quantities of product, repackaged it into smaller quantities, then sold to customers. They also blended some chemicals for soaps and detergents, not "manufactured."<br><br>**<u>Supporting Evidence</u>**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 68:16-25, 69:1-5; 66:22-67:5.<br><br>Elliot Decl. ¶ 6, Ex. 4 at 3:8-12. | No response. |
| 22 | Shaikh bought the Property back from Haroon Khan in October 1987 and held title until approximately 2003. | Undisputed. | No response. |

-11-

| | | | |
|---|---|---|---|
| | **Supporting Evidence** Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 31:3-25; 44:13-45:2; 45:10-23; 46:12-16. Elliott Decl. ¶ 8, Ex. 6 at 5:8-17. Elliott Decl. ¶ 9, Ex. 7. | | |
| 23 | Haroon Khan held title to the Property while Pacifica Chemical continued its operations. **Supporting Evidence** Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 40:7-17. | Undisputed. | No response. |
| 24 | Mr. Khan had no involvement in, nor ownership of, Pacifica Chemical. **Supporting Evidence** Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 40:18-42:5. | Undisputed. | No response. |
| 25 | Until at least 1986, perchloroethylene ("PCE") was stored in a 2,000-gallon above-ground storage tank located in the interior of the building at the Property next to tanks | Undisputed that a 2,000-gallon above ground storage tank in the interior of the facility was used to store PCE for a short period of time. Disputed as to the proximity to the mixing tanks. The evidence does not clearly | Undisputed. Shaikh's Response does not controvert the fact that the 2,000-gallon above-ground storage tank was next to ("adjacent to") the |

-12-

| | | | |
|---|---|---|---|
| | that were utilized for mixing and blending of chemicals and dyes.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 77:13-78:1, 106:17-108:14, 111:24-112:15.<br>Elliott Decl. ¶ 4, Ex. 2 at 3:6-15, 4:5-9.<br>Elliott Decl. ¶ 8, Ex. 6 at 7:22-26. | demonstrate the proximity of PCE tank to the other tanks and in fact suggests the PCE tank was some distance away from the mixing tanks.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 77:17-78:1.<br><br>Tracy Opp'n Decl., at ¶ 3 & Ex. 2 (map of Property showing "2,000 Gal. Pirchlor- etheyline [sic]" tank near two other storage tanks some distance from three "Mixing Tanks"). | tanks used for mixing and blending of chemicals and dyes. The precise proximity of the 2,000-gallon above-ground storage tank to the mixing and blending tanks is not material. |
| 26 | For a period of time, Shah Chemical acquired PCE, stored it in a 2,000 gallon above-ground storage tank, and re-sold it to customers in small quantities.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 69:1-5, 70:9-13, 77:13-78:1.<br>Elliott Decl. ¶ 6, Ex. 4 at 2:4-17, 2:26-3:12.<br>Elliott Decl. ¶ 22, Ex. 20.<br>Elliott Decl. ¶ 5, Ex. 3 at 3:12-15, 4:5-9. | Undisputed that Shah Chemical acquired, stored in a storage tank inside the facility, and sold PCE from the premises for a *short* period of time ending in approximately 1986.<br><br>**Supporting Evidence**<br>Tracy Opp'n Decl., Ex. 1 (Shaikh Depo.) at 67:19-68:4, 112:5-11.<br>Elliott Decl. ¶ 6, Ex. 4, at supplemental response no. 3. | No response. |

-13-

| | | | |
|---|---|---|---|
| | Elliott Decl. ¶ 8, Ex. 6 at 7:22-26. | | |
| 27 | The PCE repackaged for resale was delivered by truck and pumped to Shaikh's companies' above-ground storage tank using a hose that connected through the exterior of the building to the tank through a hole in the wall and ran to the west wall of the building.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 119:24-120:21, 159:9-160:3. | Undisputed that PCE was delivered by truck to Shah Chemical and that the delivery was completed by running a hose through the exterior of the building to the tank connection piping that ran to the west wall of the building and pumped PCE directly into the storage tank. The evidence does not demonstrate such deliveries were to Pacifica Chemical.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 159:9-160:3.<br>Elliott Decl. ¶ 6, Ex. 4, at supplemental response no. 3. | Undisputed.<br><br>It is immaterial whether PCE was received by Shaikh's first or second business—all were installed by one of Shaikh's chemical companies at the Property. |

-14-

| 28 | The solvent was transferred by company employees to 55-gallon drums for resale.<br><br>**<u>Supporting Evidence</u>**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 120:15-21.<br>Elliott Decl. ¶ 6, Ex. 4 at 3:8-12. | Undisputed that during the time Shah Chemical acquired, stored, and sold PCE, the solvent was pumped directly into the storage tank upon delivery then transferred by company employees to 55-gallon sealed drums for resale.<br><br>**<u>Supporting Evidence</u>**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 159:9-160:3.<br>Elliott Decl. ¶ 6, Ex. 4, at supplemental response no. 3. | |
| 29 | From 1978 until approximately 2000, Shaikh's chemical businesses that operated on the Property generated wastewater from spills and rinsing drums, tanks and other storage containers that previously contained chemicals, including PCE.<br><br>**<u>Supporting Evidence</u>**<br>Elliott Decl. ¶ 5, Ex. 3 at 4:5-9.<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 127:5-12. | Disputed. While cleanup on the premises did include rinsing tanks and other storage containers that contained various chemicals into the drainage system therefore creating wastewater, nothing within the evidence states that any such receptacles contained PCE. The containers that were rinsed were those used in the mixing and blending operations. PCE was not blended or mixed. Further, the 55-gallon sealed drums that held PCE for individual sale were kept by customers who bought the PCE contained inside the drum and never returned to Shaikh's businesses. | Shaikh's Response does not raise a genuine dispute of material fact because it does not controvert the fact that the Property generated wastewater from spills and from rinsing various drums, tanks, and other storage containers, some of which previously contained PCE. Additionally, in written discovery, Shaikh wrote "Admit" as his response to Request for Admission No. |

-15-

| | | Elliott Decl. ¶ 4, Ex. 2 at 4:5-9.<br><br>Elliott Decl. ¶ 8, Ex. 6 at 7:27-8:11. | **Supporting Evidence**<br><br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) 118:18-119:15,<br><br>Tracy Opp'n Decl., Ex. 1 (Shaikh Depo.), at 112:5- 113:15, 160:8-24, 160:25-161:3.<br><br>Elliott Decl. ¶ 8, Ex. 6 at request numbers 44-47. | 10: "From 1978 to 1999, businesses that operated on the PROPERTY generated wastewater from cleaning containers that had stored PCE." Elliott Decl., ECF No. 69, ¶ 4, Ex. 2 at 4:5-9. |
| | 30 | During the course of their operations at the Property, both Shah Chemical and Pacifica Chemical were issued numerous notices of violation ("NOVs"), many of which were received and signed as received by Shaikh.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 16, Ex. 14.<br><br>Elliott Decl. ¶ 8, Ex. 6 at 14:1-18:20.<br><br>Elliott Decl. ¶ 14, Ex. 12. | Undisputed that plaintiffs cite 12 notices of violation issued to Pacifica from 1981-2001 and that 1 of these violations was signed by Mr. Shaikh himself.<br><br>Shaikh objects to this fact on relevance grounds. None of the cited notices of violation specifically state discharges or exceedances of PCE which is the contaminant at issue in this litigation. | No response. |
| | 31 | Various NOVs were issued to Shah Chemical and Pacifica Chemical, many with cover letters to Shaikh, in 1981, 1992, 1993, 1995, 1996, 1999, | Undisputed that Plaintiffs cite 12 notices of violation, 8 of which included a cover letter addressed to Mr. Shaikh as owner and/or president | No response. |

| | | | |
|---|---|---|---|
| | 2000, and 2001.<br><br>**<u>Supporting Evidence</u>**<br>Elliott Decl. ¶ 14, Ex. 12.<br>Elliott Decl. ¶ 8, Ex. 6 at 8:12-19, 14:1-18:20. | of Pacifica Chemical.<br><br>As with Fact 30, Shaikh objects to this fact on relevance grounds. None of the cited notices of violation specifically state discharges or exceedances of PCE which is the contaminant at issue in this litigation. | |
| 32 | In June of 1981, Shaikh received an NOV issued to Shah Chemical by the Los Angeles County Sanitation District for discharge of liquid waste from the mixing tanks to the sewer by way of a floor sink and failure to obtain an industrial wastewater discharge permit.<br><br>**<u>Supporting Evidence</u>**<br>Elliott Decl. ¶ 8, Ex. 6 at 14:1-13.<br>Elliott Decl. ¶ 14, Ex. 12 at 1. | Undisputed. However, this evidence is irrelevant as it relates to mixing tanks and not to PCE, which is the contaminant at issue in this litigation. | No response. |

-17-

| 33 | Pacifica Chemical installed a clarifier and corresponding sampling box in February of 1986.<br><br>**<u>Supporting Evidence</u>**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 144:2-145:15.<br>Elliott Decl. ¶ 12, Ex. 10. | Undisputed. However, importantly, the evidence does not suggest that the system was installed to address any PCE spills, discharges, cleanup, etc.; instead, it states that the system was installed to address the wastewater from the blending and mixing operations ongoing at the facility. PCE was never blended or mixed. Nothing in the evidence suggests that PCE was drained to the clarifier system.<br><br>**<u>Supporting Evidence</u>**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 118:9-119:15,<br>126:24-127:17, 136:11-137:2. | No response. |
| 34 | Pacifica Chemical installed cement trench drains in the floor of its warehouse building at the Property, which led to the clarifier system.<br><br>**<u>Supporting Evidence</u>**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 114:3-118:4. | Undisputed that Pacifica Chemical installed trench drains all of which drained to the clarifier. However, importantly, the trench drains were not installed to address PCE spills or clean up. PCE was never blended or mixed. The evidence does not suggest that PCE was rinsed through the trench drains and into the clarifier. | No response. |

-18-

| | | | |
|---|---|---|---|
| | | **Supporting Evidence** Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 118:9-119:15, 126:24-127:17. | |
| 35 | The trench drains were installed to control spills and deliver any wastewater rinseate from the interior of the building, where PCE was stored and repackaged and chemical mixing and blending occurred, to the clarifier system located at the northeast side of the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 118:7-119:2, 126:20-127:12.<br>Elliott Decl. ¶ 5, Ex. 3 at 4:13-5:15.<br>Elliott Decl. ¶ 6, Ex. 4 at 5:9-26, 5:27-6:26, 6:27-7:2, 8:7-13.<br>Elliott Decl. ¶ 8, Ex. 6 at 7:16-21. | Disputed that the trenches were intended to collect PCE spills, leaks, or other PCE cleanup. The evidence cited does not refer to PCE.<br><br>Undisputed that the trench drains were installed to control spills and deliver any wastewater from the chemical mixing and blending operation to the clarifier system. PCE was never blended or mixed.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 118:9-119:15, 126:24-127:17.<br>Elliot Decl. ¶ 8, Ex. 6 at response to request no. 47. | The evidence proffered by Shaikh is not responsive to Fact 35 and therefore does not dispute it. PCE was stored and repackaged and chemical mixing and blending occurred within in the building at the Property. Trench drains were installed to control spills and delivery wastewater rinseate to the clarifier system. Additionally, in written discovery, Shaikh wrote "Admit" as his response to Request for Admission No. 10: "From 1978 to 1999, businesses that operated on the PROPERTY generated wastewater from cleaning containers that had stored |

-19-

| | | | PCE." Elliott Decl., ECF No. 69, at ¶ 4, Ex. 2 at 4:5-9. |
|---|---|---|---|
| 36 | Pacifica Chemical's self-monitoring reports from 1992-1994 and 1998-2000 reflect detections of PCE in industrial wastewater<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 16, Ex. 14.. | Undisputed. | No response. |

-20-

| | | | |
|---|---|---|---|
| 37 | Despite the installation of the clarifier six years after commencing operations, Pacifica Chemical continued to receive numerous NOVs for improper industrial wastewater disposal at the Property including in 1992, 1993, 1995, 1999, and 2000.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 16, Ex. 14. | Disputed. The evidence cited is self-monitoring reports, not notices of violation.<br><br>Disputed as to the use of the phrase "improper industrial wastewater disposal."<br><br>Defendant also objects to this fact for relevance. PCE was never blended or mixed. None of the NOVs are related to exceedances, spills, or discharges of PCE, the contaminant of concern in this litigation.<br><br>Undisputed to the fact that Pacific Chemical was issued 11 NOVs after the clarifier was installed between the years of 1992 and 2001, however, none of the NOVs issued to Pacifica Chemical from 1992-2001 state the phrase "improper industrial wastewater disposal." | Shaikh acknowledges the undisputed fact that Pacifica Chemical received numerous NOVs for violations of wastewater ordinances and its industrial wastewater discharge permits. This is properly supported by Elliot Decl., ECF No. 69, at ¶ 14, Ex. 12. The mistaken reference to Elliott Decl. ¶ 16, Ex. 14 is not material. |
| 38 | Shaikh admitted there was a release of PCE to the environment at the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 8, Ex. 6 at 2:4-8. | Undisputed. Disputed to the extent Plaintiffs imply a specific time that a release occurred. | No response. |

PLAINTIFFS' RESPONSE TO SHAIKH'S STATEMENT
OF GENUINE DISPUTES
Case No: 2:19-CV-02123-DMG-AGR

| | | | |
|---|---|---|---|
| 39 | After Pacifica Chemical ceased operations at the Property in or around 2000, the Los Angeles Department of Public Works ("DPW") issued a notice to Shaikh in September 2000 notifying him that he was now responsible for the associated industrial wastewater discharge permit as the owner of the Property.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 152:25-154:18, Ex 13, p. 4.<br>Elliott Decl. ¶ 15, Ex. 13 at 4. | Undisputed. | No response. |
| 40 | In July of 2004, Shaikh submitted an application for closure of the clarifier at the 132nd Street Property and the clarifier was closed in place by filling the clarifier and trench drains with cement.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 3, Ex. 1 | Undisputed. However, by this time Mr. Shaikh no longer owned the Property. *See* Fact 41, *infra*. | No response. |

-22-

| | | | |
|---|---|---|---|
| | (Shaikh Dep.) at 152:25-155:24.<br><br>Elliott Decl. ¶ 4, Ex. 2 at 3:20-27. | | |
| 41 | Shaikh sold the Property to an unrelated third party, Eun Hee Lee, in approximately August 2003, who used the Property for garment and handbag storage purposes and/or held the Property vacant.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 45:10-23.<br><br>Elliott Decl. ¶ 9, Ex. 7.<br><br>Elliott Decl. ¶ 17, Ex. 15.<br><br>Elliott Decl. ¶ 26, Ex. 24 (Rule 30(b)(6) and Individual Deposition of Richard G. Fleischer and Jacqueline A. Fleischer ("Fleischer | Undisputed. | No response. |

-23-

| | | | |
|---|---|---|---|
| | Dep.")) at 35:11-22. | | |
| 42 | Due to the nature of operations at the Property during Eun Hee Lee's period of ownership, DPW did not require an application for an industrial wastewater discharge permit following transfer of title from Shaikh.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 17, Ex. 15. | Undisputed. | No response. |
| 43 | Since TC Rich's purchase of the Property in 2005, the Property has been used for logistics and distribution services businesses.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 17, Ex. 15.<br>Elliott Decl. ¶ 24, Ex. 22.<br>Elliott Decl. ¶ 26, Ex. 24 (Fleischer Dep.) at 18:1-21:11.<br>Elliott Decl. ¶ 27, Ex. 25 at 22:24. | Undisputed. | No response. |

-24-

| 44 | No hazardous substances are used or stored at the Property by Plaintiffs or their tenant.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 26, Ex. 24 (Fleischer Dep.) at 16:6-17:9. | Undisputed. | No response. |
|---|---|---|---|
| 45 | Shaikh admits perchloroethylene (PCE) is a hazardous substance under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA").<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 4, Ex. 2 at 5:26-6:2. | Undisputed. | No response. |
| 46 | Shaikh admits PCE is a hazardous waste under the Resource Conservation and Recovery Act ("RCRA").<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 4, Ex. 2 at 3:3-7. | Undisputed. | No response. |

-25-

| 47 | Shaikh admits that the Property constitutes a "facility" under CERCLA.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 8, Ex. 6 at 2:9-14. | Undisputed. | No response. |
|---|---|---|---|
| 48 | PCE is currently present in soil and groundwater at the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 4, Ex. 2 at 3:16-19. | Undisputed. | No response. |
| 49 | PCE contamination is the primary focus of the ongoing environmental investigation being conducted at the Property under the oversight of the California Department of Toxic Substances Control ("DTSC").<br>**Supporting Evidence**<br>Elliott Decl. ¶ 2.<br>Elliott Decl. ¶ 4, Ex. 2 at 6. | Undisputed. | No response. |

| 50 | Shaikh managed all aspects of Shah Chemical's and Pacifica Chemical's businesses while the companies occupied the Property from 1978 through approximately 2000.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 5, Ex. 3. At 2:4-9. | Disputed. Shaikh employed several individuals to conduct, manage and oversee day to day operations, including blending and mixing, cleanup, neutralizing, environmental compliance, etc. The companies also employed bookkeepers, a corporate controller, and a secretary. Mr. Shaikh traveled often, leaving his employees to manage numerous aspects of business operations in his absence routinely. In fact, between 1978 and 2000, there were periods of time where Mr. Shaikh would not even be available via telephone sporadically in which situation employees were prepared to continue business operations independently. The companies also hired outside consultants intermittently.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 50:14-18, 74:14-75:3, 78:2-18, 79:2-25, 84:5-85:10, 128:2-17, 160:4-7.<br><br>Tracy Opp'n Decl., Ex. 1 (Shaikh depo.), at 148:6-20. | In written discovery, Shaikh responded "Hussain M. Shaikh" to Interrogatory No. 1: "Identify all individuals responsible for managing any aspect of your business operations at 132 West 132nd Street, Los Angeles, California (the "PROPERTY") from 1978 to the sale of the PROPERTY by Hussain M. Shaikh." Elliott Decl., ECF No. 69, ¶ 5, Ex. 3 at 2:4-9. Under penalty of perjury, Shaikh declined to list any other person as responsible for management.<br><br>In addition, the evidence proffered by Shaikh does not controvert the fact that Shaikh managed the companies while they occupied the Property, including those activities he personally delegated to employees in his capacity as manager and supervisor. Furthermore, Shaikh's evidence is |

-27-

| | | | Tracy Opp'n Decl., Ex. 3, at supplemental response nos. 18-19. | not material to the oversight of his businesses. |
|---|---|---|---|---|

-28-

| | | | |
|---|---|---|---|
| 51 | Shaikh worked almost daily at the Property from when Shah Chemical first occupied the Property until when Pacifica Chemical vacated the Property in or around 2000.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 69:18-24. | Disputed. Shaikh worked at the property regularly, but often traveled, leaving employees to manage various aspects of the business in his absence.<br>**Supporting Evidence**<br>Fact 50, *supra*.<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 128:9-17. | Shaikh's Response concedes that he consistently worked at the Property. The distinction made by Shaikh is not material, and the evidence does not controvert Fact 51. |
| 52 | Shaikh was familiar with the products mixed, blended, and repackaged for resale at the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 69:25-70:8. | Undisputed. | No response. |
| 53 | As the companies' president working daily at the Property, Shaikh was also familiar with the companies' methods of mixing, blending, and packaging of chemicals at the Property for resale, including PCE. | Disputed. Shaikh worked at the property regularly, but often traveled, leaving employees to manage various aspects of the business in his absence.<br>**Supporting Evidence**<br>Fact 51, *supra*. | *See supra*, Fact 51. |

-29-

| | | | |
|---|---|---|---|
| | **Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 70:9-13, 70:19-71:4. | | |
| 54 | Shaikh oversaw approximately 2-3 employees at the Property during Shah Chemical's period of operation.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 73:1-5. | Undisputed. | No response. |
| 55 | Shaikh oversaw approximately 10 employees at the Property during Pacifica Chemical's period of operations, including two employees who performed the mixing, blending, and repackaging of chemicals for resale.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 | Undisputed that Shaikh trained and supervised approximately 10-12 employees that worked at Pacifica Chemical, often from his office.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 73:17-21, 74:21-75:3, 78:14-79:2, 87:3-5. | No response. |

-30-

PLAINTIFFS' RESPONSE TO SHAIKH'S STATEMENT OF GENUINE DISPUTES
Case No: 2:19-CV-02123-DMG-AGR

| | | | |
|---|---|---|---|
| | (Shaikh Dep.) at 73:6-21, 74:5-9, 76:3-14, 76:20-77:9, 87:3-5. | | |
| 56 | Shaikh trained and supervised the two employees responsible for performing mixing, blending, and repackaging of chemicals for resale.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 74:10-75:3, 76:8-10, 86:20-87:5. | Undisputed that Shaikh trained and supervised approximately 10-12 employees that worked at Pacifica Chemical, often from his office.<br><br>**Supporting Evidence**<br>Fact 55, *supra*. | No response. |
| 57 | Shaikh trained and supervised his employees' intake and repackaging of PCE stored at the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 86:20-87:5. | Undisputed that Shaikh trained and supervised approximately 10-12 employees that worked at Pacifica Chemical, often from his office.<br><br>**Supporting Evidence**<br>Fact 55, *supra*. | No response. |
| 58 | Shaikh also trained and supervised the employees' cleanup and spill management activities with respect to the mixing and blending processes and intake and | Undisputed that Shaikh trained and supervised approximately 10-12 employees that worked at Pacifica Chemical, often from his office. His supervision was not hands-on. The employees | No response. |

-31-

| | | | |
|---|---|---|---|
| | packaging of chemicals for resale, even at times when he was away from the facility.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 78:8-79:1, 128:2-129:9. | independently completed cleanup procedures while Shaikh was in his office or, sometimes, out of town.<br><br>**Supporting Evidence**<br>*See* response to Facts 50, 55,<br>*supra.* | |
| 59 | Shaikh was also responsible for the companies' environmental compliance obligations.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 85:13-86:6.<br>Elliott Decl. ¶ 14, Ex. 12. | Disputed. Shaikh's companies employed 2-3 individuals who independently handled the chemicals, completed, and oversaw environmental compliance, neutralization activities with the wastewater, pumping and/or refilling the tanks, the acquisition and storage of PCE, etc. often in his absence. As such, employees oversaw environmental compliance activities and the hands-on operations in terms of handling chemicals.<br><br>**Supporting Evidence**<br>*See* response to Fact 14, *supra.* | The evidence proffered by Shaikh does not controvert the fact that Shaikh was the party responsible for the companies' environmental compliance obligations. Shaikh's Response regarding subordinates is not material to Fact 59.<br><br>In addition, in written discovery, Shaikh responded "Hussain M. Shaikh" to Interrogatory No. 1: "Identify all individuals responsible for managing any aspect of your business operations at 132 West 132nd Street, Los Angeles, California (the |

-32-

| | | | |
|---|---|---|---|
| | | | "PROPERTY") from 1978 to the sale of the PROPERTY by Hussain M. Shaikh." Elliott Decl., ECF No. 69, ¶ 5, Ex. 3 at 2:4-9. Under penalty of perjury, Shaikh declined to list any other person as responsible for management. |
| 60 | Shaikh was the signatory and responsible party on his companies' industrial wastewater discharge permit.<br><br>**<u>Supporting Evidence</u>**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 133:21-134:21, 142:5-24.<br>Elliott Decl. ¶ 8, Ex. 6 at 13:7-20. Elliott Decl. ¶ 13, Ex. 11. | Undisputed. | No response. |

-33-

| 61 | The industrial wastewater discharge permit issued to Pacifica Chemical on January 29, 1986 required sampling of wastewater for PCE.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 13, Ex. 11 at 34-39. | Undisputed. | No response. |
|----|----|----|----|
| 62 | Shaikh was present during agency inspections of the Property.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 135:20-136:10. | Disputed. The evidence only refers to one inspection.<br>Undisputed as to the inspection that occurred on June 16, 1981 as Plaintiffs cited. | The evidence establishes Shaikh's presence during an agency inspection. The distinction noted by Shaikh does not constitute a material fact in genuine dispute. |
| 63 | Shaikh signed for and acknowledged receipt of NOVs issued by oversight agencies to his companies for violation of industrial wastewater discharge regulations.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 136:11-137:25.<br>Elliott Decl. ¶ 14, Ex. 12. | Undisputed only as to those particular NOVs cited.<br>However, this evidence is irrelevant because none of the NOVs include reference to PCE which is the contaminant at issue in this litigation. | No response. |

-34-

| 64 | Shaikh similarly was the signatory on industrial wastewater self-monitoring reports submitted by his chemical companies.<br><br>**<u>Supporting Evidence</u>**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 162:10-163:9, 166:22-167:1, 169:4-16.<br>Elliott Decl. ¶ 16, Ex. 14. | Disputed that Shaikh signed all self-monitoring reports. Undisputed that he signed some of the reports. Both Shaikh and Mukesh Doshi signed self-monitoring reports for the businesses.<br><br>**<u>Supporting Evidence</u>**<br>Elliot Decl. ¶ 16, Ex. 14 at 4-6, 16. | Shaikh's Response does not controvert the fact that Shaikh was the signatory on industrial wastewater self-monitoring reports submitted by his chemical companies. Shaikh's evidence is not material to the reports signed by Shaikh. |
| --- | --- | --- | --- |
| 65 | The permitted sampling point for industrial wastewater coming through the clarifier system before discharge via the sewer line into the county sewer system was immediately north of the clarifier.<br><br>**<u>Supporting Evidence</u>**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 109:19-111:19. | Undisputed. | No response. |

-35-

| | | | |
|---|---|---|---|
| 66 | Pacifica Chemical's industrial wastewater self-monitoring report from October 1993 reflects the presence of PCE in samples taken from the clarifier sampling point.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 162:10-163:9; 166:22-167:1, Ex. 14.<br>Elliott Decl. ¶ 16, Ex. 14. | Undisputed. | No response. |
| 67 | Investigations in 2015 of the soils immediately adjacent to the abandoned clarifier, as well as in soils beneath the historic location of the PCE above-ground storage tank and cement trench drains used by Pacifica Chemical, identified high concentrations of PCE.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 24, Ex. 22. | Disputed. The evidence cited does not refer to contamination in soil nor does it refer to "high concentrations." It does, however, identify PCE concentrations detected in soil vapor, groundwater, and indoor air at various levels. | In April 2015, Plaintiffs' environmental contractor, EEC Environmental, performed subsurface and indoor air sampling, which revealed PCE contamination at the Property and indoor vapor intrusion. Elliott Decl., ECF No. 69, at ¶ 22, Ex. 20. The evidence in support of this fact included a review of this sampling. Elliott Decl., at ¶ 24, Ex. 22.<br><br>In addition, the Removal Action |

| | | | | Workplan prepared by Pacifica Chemical's environmental contractor summarizes EEC's 2015 soil investigation, stating "PCE was detected in a majority of soil samples." Elliott Decl., ECF No. 69, at ¶ 25, Ex. 23. |
|---|---|---|---|---|
| | 68 | Shaikh admits that disposal of PCE is a disposal of a hazardous substance within the meaning of Section 107(a)(2) of CERCLA (42 U.S.C. § 9607(a)(2)). | Undisputed. | No response. |
| | | **Supporting Evidence** Elliott Decl. ¶ 4, Ex. 2 at 5:26-6:2. | | |
| | 69 | In or around 2000, Pacifica Chemical relocated to another facility, located at 2910 Ana Street in Rancho Dominguez, California, and operated there for approximately 2-3 years. | Undisputed, but irrelevant. | No response. |
| | | **Supporting Evidence** Elliott Decl. ¶ 3, Ex. 1 | | |

-37-

| | | | |
|---|---|---|---|
| | (Shaikh Dep.) at 64:16-65:19. | | |
| 70 | In approximately 2003, Pacifica Chemical moved again to 935 East Artesia Boulevard to continue its operations.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 63:21-64:3. | Undisputed, but irrelevant. | No response. |
| 71 | In early 2005, TC Rich undertook due diligence in anticipation of its eventual purchase of the Property from Eun Hee Lee.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 18.<br>Elliott Decl. ¶ 26, Ex. 24 (Fleischer Dep.) at 35:4-6. | Disputed that the TC Rich's due diligence was sufficient investigatory action to fulfill the All Appropriate Inquiries (AAI) requirement. TC Rich did not preform its own Phase I Environmental Site Assessment ("ESA"). Further, the Phase I ESA conducted in 2005 contains significant deficiencies including its failure to identify PCE as a recognized environmental condition | This Response improperly states a legal argument. *See* Initial Standing Order, Section 5(d.)(i), at p. 7 ("No legal argument should be set forth in [the Statement of Genuine Disputes.]")<br><br>Shaikh's Response does not controvert the fact that TC Rich undertook due diligence. Shaikh's legal argument about |

-38-

| | | | (REC), failure to identify Pacifica Chemical as an occupant of the property and its operations including storage of PCE, and failure to review available agency records containing information about chemicals used on site including PCE. As such, the Phase I and other due diligence conducted by Plaintiffs does not satisfy the AAI requirement.<br><br>Undisputed TC Rich took some steps toward due diligence.<br><br>**Supporting Evidence:**<br>ECF No. 59-15 (Brown Decl.) at ¶¶ 33, 36, 64, 67, 70-72.<br><br>Elliott Decl. ¶ 26, Ex. 24 (Fleischer Dep.) at 51:20-52:11. | the AAI requirements does not controvert this fact, which Shaikh concedes. |
| 72 | TC Rich's lender commissioned A/E West to prepare a Phase I investigation of the Property, which included a review of the Phase I report previously prepared by JMK Environmental Solutions on behalf of the seller, Eun Hee | Undisputed. | No response. |

-39-

| | | | |
|---|---|---|---|
| | Lee.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 18, Ex. 16. | | |
| 73 | In its Phase I report, A/E West recommended a limited further investigation of the abandoned clarifier, including creation of an agency-approved closure report with accompanying soil sampling as determined by DPW.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 18, Ex. 16. | Undisputed. | No response. |
| 74 | In accordance with A/E West's recommendation, Aqua Science Engineers was retained to review the status of the clarifier and conduct any necessary additional investigation as determined by DPW. | Undisputed. | No response. |

-40-

| | | | |
|---|---|---|---|
| | **Supporting Evidence**<br>Elliott Decl. ¶ 19, Ex. 17. | | |
| 75 | Aqua Science determined that Shaikh had obtained a closure certificate for the clarifier from DPW in 2004, but that no confirmatory soil sampling had been performed.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 19, Ex. 17. | Undisputed. | No response. |
| 76 | Aqua Science Engineers then coordinated with DPW to perform the requisite soil sampling in the area of the clarifier under DPW supervision.<br>**Supporting Evidence**<br>Elliott Decl. ¶ 19, Ex. 17. | Undisputed | No response. |

-41-

| 77 | The sampling did not identify any concerns and, following these activities, TC Rich acquired the Property from Eun Hee Lee in May 2005. **Supporting Evidence** Elliott Decl. ¶ 20, Ex. 18. | Undisputed. | No response. |
|----|----|----|----|
| 78 | In March of 2015, TC Rich sought to refinance the Property, so its intended lender, City National Bank, engaged Anderson Environmental to perform a new Phase I investigation. **Supporting Evidence** Elliott Decl. ¶ 21, Ex. 19. | Undisputed. | No response. |
| 79 | Anderson Environmental identified the former Shah Chemical and Pacifica Chemical operations as recognized environmental conditions and recommended further soil sampling near the closed clarifier and along the concrete | Undisputed. | No response. |

| | | | |
|---|---|---|---|
| | trenches leading to the clarifier.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 21, Ex. 19. | | |
| 80 | In April 2015, additional subsurface and indoor air sampling was performed by Plaintiffs' environmental contractor, EEC Environmental, which revealed PCE contamination at the Property and indoor vapor intrusion.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 22, Ex. 20. | Undisputed that the evidence cited mentions a 2015 limited subsurface investigation and indoor air sampling conducted by EEC Environmental finding indoor air samples containing PCE concentrations above California Human Health Screening Levels suggesting that the concentrations of soil vapor were volatilizing from the subsurface to indoor air.<br><br>However, Plaintiffs cannot be certain which portion of the cited evidence Plaintiffs are referring to and therefore dispute the remainder of this fact. | Shaik's Response does not controvert the fact that subsurface and indoor air sampling was performed in April 2015 by EEC or that sampling revealed PCE contamination at the Property and indoor vapor intrusion. |

-43-

| 81 | Plaintiffs notified the California Department of Toxic Substances Control (DTSC) of the sampling results, requested agency oversight by DTSC, and together with DTSC actively engaged with Pacifica Chemical to investigate the contamination at the Property. <br><br> **Supporting Evidence** <br> Elliott Decl. ¶ 23, Ex. 21. <br> Elliott Decl. ¶ 26, Ex. 24 (Fleischer Dep.) at 84:21-85:16. | Disputed as to the meaning of "actively engaged." Disputed that all plaintiffs took any action regarding investigation of the contamination at the property as the evidence cited does not mention Rifle Freight or Fleischer Customs Brokers. Undisputed that TC Rich and the Fleischers notified DTSC. | Shaikh's Response does not controvert the evidence of Plaintiffs' actions. The level of engagement—active or otherwise—is not material. |
| --- | --- | --- | --- |
| 82 | DTSC confirmed that the PCE contamination detected at the Property was the result of discharges that occurred during the time period that Shaikh owned and operated his chemical businesses at the Property, and that the contamination has been found to exist primarily underneath the cement-filled trench drains and footprint of Pacifica's clarifier and in the area where the 2,000 | Disputed. The evidence cited does not support this alleged fact and is presented pursuant to a request for judicial notice, ECF No. 63, at ¶ 11. <br><br> However, "Courts cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed." *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017) (citations omitted). For good reason, | This Response improperly states a legal argument. *See* Initial Standing Order, Section 5(d.)(i), at p. 7 ("No legal argument should be set forth in [the Statement of Genuine Disputes.]") <br><br> Shaikh's legal argument cannot contest this fact. <br><br> The language quoted by Shaikh from Plaintiffs' evidence |

| | | |
|---|---|---|
| gallon PCE above-ground storage tank was historically located.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 24, Ex. 22. | since the same letter, at the top of its page 2, incorrectly states, "Since 1999, the property has been utilized for warehouse and distribution purposes by the current owner." That is untrue given that TC Rich has only owned the property since 2005. *See* Fact 43, *supra.*<br><br>The document cited does not make statements regarding "discharges that occurred during the time period that Shaikh owned and operated his chemical businesses at the Property." Rather, the document states, "Environmental Investigations indicated that releases of volatile organic compounds (VOCs), primarily PCE, have occurred on the Site as a result of past operations."  It *does not* make any statement as to a specific date or who the owner or operator at the property was at the time of any releases. | regarding contamination from "past operations" follows a description of past operations by Pacifica Chemical between 1980 and 2000. |

-45-

| 83 | The discovery of PCE at the Property has resulted in the need to investigate and characterize volatile organic compounds (VOCs), including PCE and its daughter compounds, in soil, soil gas, and groundwater beneath the Property. **Supporting Evidence** Elliott Decl. ¶ 4, Ex. 2 at 6:3-8. | Undisputed. | No response. |
|----|----|----|----|
| 84 | The discovery of PCE at the Property has resulted in the need to assess potential risks to human health associated with PCE in soil vapor and indoor air at the Property. **Supporting Evidence** Elliott Decl. ¶ 2. Elliott Decl. ¶ 4, Ex. 2 at 6:9-14. | Undisputed. | No response. |

-46-

| 85 | Since mid-2015, Shaikh's company, Pacifica Chemical, has taken the lead in conducting investigations of the contamination at the Property under DTSC's supervision. Its environmental contractor, Murex Environmental, Inc. ("Murex"), has performed these activities, including development of a Removal Action Workplan ("RAW"). **Supporting Evidence** Elliott Decl. ¶ 25, Ex. 23. | Undisputed. | No response. |
| 86 | The RAW states: "The Site was reportedly occupied by Pacifica from the late-1970s until roughly 1999. Operations conducted by Pacifica were reported to include chemical mixing and distribution, including the formulation of fabric softeners, dyes, and light detergents. It is the storage and transfer of tetrachloroethylene (PCE) in the late- | Disputed as to the cause and timing of any releases and the sufficiency of such evidence presented through a request for judicial notice. *See* Fact 82, *supra*. Undisputed that the quoted language is stated in the report. | This Response improperly states a legal argument. *See* Initial Standing Order, Section 5(d.)(i), at p. 7 ("No legal argument should be set forth in [the Statement of Genuine Disputes.]") Shaik's Response does not dispute the fact that the RAW contains the quoted language. Shaikh's legal argument does |

| | | |
|---|---|---|
| 1970s/early-1980s that is suspected of being the source of PCE impacts at the Site." **<u>Supporting Evidence</u>** Elliott Decl. ¶ 25, Ex. 23 at viii. | | not contest this fact. |

-48-

| 87 | Despite these investigatory activities, no actual remediation has been performed at the Property, nor has any removal or other protective action been taken to ameliorate or otherwise reduce the elevated PCE indoor air and soil vapor concentrations.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 29. | Disputed. The evidence cited is objectionable and inadmissible. Elliott Declaration paragraph 29 admits a lack of personal knowledge and foundation and is therefore inadmissible as hearsay.<br><br>Further, evidence presented herein and with Shaikh's motion for partial summary judgment demonstrates that Murex's efforts have resulted in a reduction of contamination at the Property and TC Rich has admitted that Murex's work has "contribut[ed] to abatement" of the contamination.<br><br>**Supporting Evidence**<br>Evid. Objections in Supp. of Shaikh's Opp'n to Pls.' Mot. for Partial Summ. J. ("Shaikh's Objections"), *filed herewith*, at Objection No. 3.<br><br>Decl. of Jeremy R. Squire in Supp. of Opp'n to Pls.' Mot. for Partial Summ. J. ("Squire Decl."), *filed herewith*, at ¶ 3.<br><br>ECF No. 59-10 (Tracy Decl., Ex. 7), at TC Rich's interrogatory resp. no. 9. | This Response improperly states a legal argument. *See* Initial Standing Order, Section 5(d).(i), at p. 7 ("No legal argument should be set forth in [the Statement of Genuine Disputes.]") Shaikh's legal argument does not controvert this fact.<br><br>No actual remediation, as opposed to investigatory activities, has been performed at the Property, nor has any removal or other protective action been taken to ameliorate or otherwise reduce the elevated PCE indoor air and soil vapor concentrations. Declaration of Vanessa Layne in Support of Plaintiffs' Opposition ("Layne Decl."), ECF 65-3, at ¶ 6; Declaration of David C. Chamberlin ("Chamberlin Decl."), ECF 65-1, at ¶ 3. |

| | | ECF No. 59-8 (Tracy Decl., Ex. 5), at TC Rich interrogatory response no. 3, at p. 7, lines 12-13. | |
|---|---|---|---|

-50-

| 88 | Despite having been approached by the agency to do so, neither Shaikh nor his companies have agreed to enter into a Voluntary Cleanup Agreement with DTSC to guarantee their performance of the cleanup.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 8, Ex. 6 at 4:8-27. Elliott Decl. ¶ 29.<br><br>Declaration of John S. Cha ("Cha Decl."), ¶ 3, Ex. 1. | Disputed. The evidence cited is objectionable and inadmissible. Elliott Declaration paragraph 29 admits a lack of personal knowledge and foundation and is therefore inadmissible as hearsay.<br><br>Further, nothing within the cited evidence states that Shaikh was approached by DTSC to engage in voluntary cleanup nor that has he refused to do so. Shaikh has not received an administrative enforcement order or any other legal directive from DTSC and is participating with ongoing environmental investigative actions as an officer of Pacifica Chemical Corporation.<br><br>**Supporting Evidence**<br>Shaikh Objections, at Objection No. 3. | In May 2018, DTSC tendered a voluntary Facility Initiated Corrective Action Agreement ("FICA") to Pacifica Chemical with respect to further remedial activities at the Property. Elliott Decl., ECF 65-4 at ¶ ¶ 10-11; Chamberlin Decl., ECF 65-1 at ¶ 9. As of January 28, Pacifica Chemical had not entered into the FICA with DTSC, despite DTSC's request that it do so. Layne Decl., ECF 65-3 at ¶ 7. |
| 89 | Shaikh has not personally paid for any of the services performed by Murex or any other environmental contractor relating to the investigation and remediation of the Property to date. | Disputed. Mr. Shaikh has incurred such costs through payments made for his defense by his insurance carrier.<br><br>Moreover, the evidence cited is objectionable and inadmissible. First, paragraph 4 of the Cha declaration discloses | Shaikh's Response does not controvert the fact that he has not personally paid for any of the services performed by Murex or any other environmental contractor relating to the investigation and remediation of |

-51-

| **Supporting Evidence**<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 180:2-10.<br><br>Cha Decl., ¶ 4. | confidential settlement communications in violation of FRE 408. Second, the testimony of Mr. Shaikh cited was objected to as vague and ambiguous.<br><br>**Supporting Evidence**<br>Shaikh Objection, at Objection Nos. 1-2.<br>Squire Decl., at ¶¶ 2-6. | the Property to date. |

-52-

| 90 | Plaintiffs have incurred response costs, including the costs to perform initial investigations and notifications to DTSC immediately following discovery of the contamination.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 26, Ex. 24 (Fleischer Dep.) at 59:15-61:17, 64:21-65:6, 68:24-69:14, 75:3-76:5, 99:24-101:12, 102:8-103:23, 104:17-25, 105:5-23, 107:7-21, 112:10-21.<br><br>Elliott Decl. ¶ 27, Ex. 25 at 5:21-6:19, 8:24-9:20, 10:1-2, 12:9-12, 13:3-12, Ex. A.<br><br>Elliott Decl. ¶ 28, Ex. 26. | Disputed that all plaintiffs have incurred response costs as the evidence does not mention anyone beside TC Rich and the Fleischers. The letter to DTSC for agency oversight was submitted on behalf of TC Rich and signed by Richard and Jackie Fleischer. Further, EEC was retained by TC Rich only, not any of the other plaintiffs.<br><br>Disputed also to the extent Plaintiffs claim that the evidence demonstrates such costs were "necessary" under CERCLA. The evidence cited does not support such a conclusion or inference.<br><br>Undisputed that *some* plaintiffs have incurred *some* costs.<br><br>**Supporting Evidence**<br><br>Elliott Decl. ¶ 26, Ex. 24 (Fleischer Dep.) at 61:7-17, 65:3-6, 68:24-69:5, 104:19-105:17, 112:10-21 (only TC Rich and Fleischer Customs Brokers paid any costs). | Shaikh does not contest the fact that Plaintiffs have incurred response costs. Shaikh's legal argument does not controvert Fact 90 and is not material to the issues before the Court. |

| 91 | EEC Environmental, Plaintiffs' environmental contractor, billed fees and costs to Plaintiffs for the initial investigation of the leaking clarifier in 2015 and subsequent investigatory activities and administrative interactions with DTSC.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 29. | Disputed. Shaikh believes Plaintiffs intended to cite paragraph 28 of the Elliott Declaration for this fact. To the extent they rely on paragraph 29, see Shaikh Objections, at Objection number 3, and the evidence cited does not support this alleged fact.<br><br>Also disputed that all Plaintiffs incurred such costs. Only TC Rich and Fleischer Customs Brokers paid any such costs.<br><br>To the extent Plaintiffs intended to rely upon paragraph 28, it is disputed to the extent Plaintiffs claim that the evidence demonstrates such costs were "necessary" under CERCLA. The evidence cited does not support such a conclusion or inference.<br><br>**Supporting Evidence**<br>Elliott Decl. ¶ 26, Ex. 24 (Fleisher Dep.) at 61:7-17, 65:3-6, 68:24-69:5, 104:19-105:17, 112:10-21 (only TC Rich and Fleischer Customs Brokers paid any costs). | Plaintiffs intended to rely on paragraph 28, which sets forth evidence of invoices paid by Plaintiffs to EEC Environmental in connection with the Property. Elliott Decl. ¶ 28, Ex. 26. Shaikh's legal argument does not challenge Fact 91 and it is therefore undisputed. It is also not material to the issues before the Court. |

-54-

**PLAINTIFFS' RESPONSE TO SHAIKH'S ALLEGED ADDITIONAL**

**UNCONTROVERTED FACTS**

| No. | Shaikh's Alleged Additional Uncontroverted Facts and Supporting Evidence | Plaintiffs' Response |
|---|---|---|
| 92 | Only Richard Fleischer Customs Brokers ("RFCB") and TC Rich paid TC Rich's consultant, EEC, for its work<br><br>**Supporting Evidence**<br>ECF No. 59-13 ("Plaintiffs' Depo."), at depo. pages 100:4- 22, 103:17-20, 107:7-21. | Undisputed. |

-55-

| 93 | Murex's efforts have resulted in a reduction of contamination at the Property.<br><br>**Supporting Evidence**<br>Squire Decl., at ¶ 3.<br>ECF No. 59-15 (Brown Decl.) at ¶¶ 46, 111, 126-27.<br>ECF No. 59-10 (Tracy Decl., Ex. 7), at TC Rich's interrogatory resp. no. 9. | Disputed.<br><br>Murex has only conducted investigatory and pilot study activities. No actual, full-scale remediation has begun at the Property, nor has any remedial or other protective action been taken to ameliorate or otherwise reduce the elevated PCE indoor air and soil vapor concentrations. Layne Decl., ECF 65-3, at ¶ 6; Chamberlin Decl., ECF 65-1, at ¶ 3. Any reduction of contamination is limited in scope to the pilot test and associated soil vapor extraction and cannot be said to encompass "the Property."<br><br>The effect, if any, of Murex's efforts cannot be determined based on the existing data. Soil vapor samples were last taken in September 2017. Brown Decl., ECF 59-15 at ¶ 46. No deeper groundwater data exist beneath the on-site source areas. Chamberlin Decl., ECF No. 65-1, at ¶ 3. The data from two off-site wells are inadequate for determining the extent of contamination. Chamberlin Decl., ECF 65-1, at ¶ 3. The 2015 and 2020 indoor air data are flawed because sampling was not conducted consistent with DTSC guidance. Layne Decl., ECF 65-3, at ¶¶ 3,5 |

-56-

| 94 | Shaikh has not caused or contributed to any spill, release, or discharge of PCE at the Property.<br><br>**Supporting Evidence**<br><br>ECF No. 62-1 (Shaikh Depo.), at depo. pages 74:5-75:3, 77:12-79:1 (Shaikh worked in his office), 76:3-77:9 (Shaikh did not handle PCE; two employees were the only ones involved in PCE intake and repackaging); 119:10-15 (no PCE spills); 128:5-17 (not aware of any spills of PCE).<br><br>Tracy Opp'n Decl., Ex. 1 (Shaikh Depo.), at 158:7- 161:3 (PCE never mixed, nor used drums of PCE rinsed and Shaikh was not the person overseeing delivery of PCE).<br><br>ECF No. 62-2 (Shaikh Depo. continued) at depo. pages 129:10-15 (never informed of any spills either, such as when returning from travel). | Disputed. Shaikh was the sole president, shareholder, acting director, acting officer, manager, and supervisor of two chemical companies at the Property for two decades. *See* Plaintiffs' Separate Statement of Uncontroverted Facts (ECF 61-3, "SSUF"), Fact 5-8, 10-16, 19, 29, 33-35, 38-40, 45-49, 50-68. Shaikh was the responsible party for environmental compliance obligations and oversaw operations. *See supra*, SSUF, Facts 14, 15, 16, 20, 54-64.<br><br>PCE was purchased, stored, and repackaged at the Property. *See supra*, SSUF, Facts 25, 26, 27, 28. Drums, tanks and other storage containers, including those containing PCE, were rinsed at the property. SSUF, Fact 29. Spills and wastewater generated at the Property were routed to the clarifier installed during Shaikh's chemical companies' operations at the Property. SSUF, Facts 33-35. Shaikh's chemical companies were required to sample for PCE in wastewater pursuant to an industrial wastewater discharge permit. SSUF, Facts 60-61. PCE was detected in Pacifica Chemical's wastewater at the Property. SSUF, Facts 36, 66.<br><br>Investigations in 2015 identified the presence of PCE on the site near the clarifier and above ground storage tank used by Shaikh's companies. *See supra*, SSUF, Facts 65-67; 82, 85-86. There is no evidence of a source of PCE at the Property other than chemical companies Shaikh owned, |

-57-

| | | operated, and managed. SSUF, Facts 38-44. |
|---|---|---|
| 95 | One of Pacifica and Shah Chemical's employees, Mr. Tomas Macedonio, was in charge of environmental management and compliance.<br><br>**Supporting Evidence**<br>Tracy Opp'n Decl., Ex. 3, at supplemental response nos. 18-19. | Disputed. *See supra*, Response to Shaikh's Alleged Uncontroverted Additional Fact 94. |
| 96 | Murex's work at the Property has been paid for by the insurance company for Shaikh and Pacifica.<br><br>**Supporting Evidence**<br>Squire Decl., at ¶¶ 2-6. | Undisputed. However, see Fact 89. Shaikh has not personally paid for Murex's services or the services of any other environmental contractor relating to the investigation and remediation of the Property to date.<br>Elliott Decl. ¶ 3, Ex. 1 (Shaikh Dep.) at 180:2-10.<br>Cha Decl., ¶ 4. |

-58-

PLAINTIFFS' RESPONSE TO SHAIKH'S STATEMENT OF GENUINE DISPUTES
Case No: 2:19-CV-02123-DMG-AGR

1     Dated: February 5, 2021                RAINES FELDMAN LLP

2

3                                      By: _____

4                                              RAINES FELDMAN LLP

5

6                                      PILLSBURY WINTHROP SHAW
                                       PITTMAN LLP
7

8

9

10                                     By: _____/s/ Mark E. Elliot_____

11                                              MARK E. ELLIOTT

12                                     Attorneys for Plaintiffs
                                       TC RICH, LLC, Rifle Freight, Inc.,
13                                     Fleischer Customs Brokers, Richard G.
                                       Fleischer, and Jacqueline Fleischer
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-59-