1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3

4

5   TC RICH, LLC, a California    )

6   Limited Liability Company,    ) No. 2:19-CV-02123-

7   et al.,                       )     DMG (AGRx)

8              Plaintiff,         )

9        VS.                      )

10  HUSSAIN M. SHAIKH,an          )

11  individual, et al.,           )

12             Defendants.        )

13  _____  )

14

15

16

17             DEPOSITION OF:

18             HUSSAIN SHAIKH

19        TUESDAY, DECEMBER 1, 2020

20             9:08 A.M.

21

22

23  Pages 1 - 188

24  Reported by:  LINDA NICKERSON

25             CSR No. 8746

Page 1

1      Deposition of HUSSAIN SHAIKH, the defendant,

2  taken on behalf of the Plaintiffs, on TUESDAY,

3  DECEMBER 1, 2020, 9:08 a.m., utilizing Zoom Remote

4  Technology, Carson, California, before LINDA

5  NICKERSON, CSR No. 8746, pursuant to NOTICE.

6

7  APPEARANCES OF COUNSEL:

8

   FOR PLAINTIFFS:

9      PILLSBURY, WINTHROP, SHAW, PITTMAN, LLP

10     BY:  MARK E. ELLIOTT, ESQ.

11        STEPHANIE AMARU, ESQ.

12     725 South Figueroa Street

13     Suite 2800

14     Los Angeles, California  90017-5406

15     (213) 488-7100

16     mark.elliott@pillsburylaw.com

17

   FOR DEFENDANTS:

18     PALADIN LAW GROUP, LLP

19     BY:  KIRK M. TRACY, ESQ.

20     220 West Gutierrez Street

21     Santa Barbara, California  93101

22     (805) 898-9700

23     ktracy@paladinlaw.com

24

   ALSO PRESENT:

25     AMY OUSLEY

```
1                          I N D E X

2

3    WITNESS              EXAMINATION                    PAGE

4    HUSSAIN SHAIKH

5

6                         By Mr. Elliott                   6

7

8                       E X H I B I T S

9    NUMBER        PAGE        DESCRIPTION

10   Exhibit 1      19       Hussain M. Shaikh's Response

11                           to TC Rich, LLC's Requests

12                           for Admissions, Set One

13   Exhibit 2      22       Hussain M. Shaikh's Response

14                           to TC Rich, LLC's

15                           Interrogatories, Set One

16   Exhibit 3      23       Hussain M. Shaikh's

17                           Supplemental Responses to TC

18                           Rich, LLC's Interrogatories,

19                           Set One

20   Exhibit 4      25       Hussain M. Shaikh's Response

21                           to TC Rich, LLC's

22                           Interrogatories, Set Two

23   Exhibit 5      27       Hussain M. Shaikh's Response

24                           to TC Rich, LLC's Requests

25                           for Admissions, Set Two
```

```
 1              E X H I B I T S (Continued)

 2    NUMBER        PAGE       DESCRIPTION

 3    Exhibit 6      29        Hussain M. Shaikh's Response

 4                             to TC Rich, LLC's Requests

 5                             for Admissions, Set Two

 6    Exhibit 7      30        Corporation Grant Deed

 7    Exhibit 8      48        Articles of Incorporation

 8    Exhibit 9      91        Letter dated 11-18-80 to Shah

 9                             Chemical Corp.

10    Exhibit 10    106        Plans for Wastewater

11                             Discharge

12    Exhibit 11    114        Site Plan Showing PCE Indoor

13                             and Ambient Air

14    Exhibit 12    143        Application for Plumbing

15                             Permit

16                             (LACOUNTYDPW0000011-

17                             LACOUNTYDPW0000012)

18    Exhibit 13    152        Notice of Violation and Order

19                             to Comply

20    Exhibit 14    162        Industrial Wastewater

21                             Self-Monitoring Report

22    Exhibit 15    178        Hussain M. Shaikh's

23                             Counterclaim

24    Exhibit 16    184        Discharger Identification

25                             Questionnaire
```

Page 4

```
1                    E X H I B I T S (Continued)

2     NUMBER          PAGE        DESCRIPTION

3     Exhibit 17     181          Notice of Noncompliance

4


5


6     INFORMATION REQUESTED

7          Page    Line

8          158       4

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 5

```
 1              TUESDAY, DECEMBER 1, 2020; 9:08 A.M.

 2

 3                    HUSSAIN SHAIKH,

 4              having been first duly sworn, was

 5              examined and testified as follows:

 6

 7                    EXAMINATION

 8   BY MR. ELLIOTT:

 9       Q    Good morning, Mr. Shaikh.  If you could

10   please state and spell your name for the record.

11       A    Good morning.  Hussain M. Shaikh,

12   S-h-a-i-k-h.  Hussain would be H-u-s-s-a-i-n.

13       Q    Thank you very much, Mr. Shaikh.  My name

14   is Mark Elliott.  We've met before.  I represent TC

15   Rich and the Fleischers, and I'm going to be taking

16   your deposition today.

17            As Mr. Tracy mentioned a moment ago, any

18   time you need to take a break, just let us know.

19   Obviously we're operating in COVID-19 situation

20   where we're doing this in video.  It's a little bit

21   odd.

22       A    Right.

23       Q    The one thing that I will say, Mr. Shaikh,

24   other than yourself, you're the most important

25   person here today.  We're going to try and jog your
```

Page 6

```
 1   memory, ask you some questions about 20 plus years
 2   ago, but other than yourself, the most important
 3   person is the court reporter.
 4         She will be transcribing a record,
 5   literally typing up the questions, Mr. Tracy's
 6   comments, his objections, your responses, and it's
 7   very important, particularly when we're operating
 8   with not the greatest audio on computers, that you
 9   and I and Mr. Tracy not speak over each other.
10         So if you could really sort of think to
11   allow me to complete my questions and then respond
12   audibly to Ms. Nickerson, I'd really appreciate it.
13   Okay?
14      A    Okay.  Yes.
15      Q    Mr. Shaikh, have you been deposed
16   previously?
17      A    In my life, yes.
18      Q    Okay.  On roughly how many occasions?
19      A    Probably two or three maybe.
20      Q    Well, you've previously heard probably
21   lengthy admonitions from counsel as to how a
22   deposition works.  I won't bore you with those
23   details because you've heard it before, but I will
24   mention the most important instructions that you
25   should be aware of.
```

Veritext Legal Solutions
866 299-5127

```
 1            First, your testimony today is under
 2     penalty of perjury.  So we ask that you provide both
 3     truthful responses and really your best
 4     recollection.  No guessing.
 5            If you don't know, truthful responses, I
 6     don't know, so we would just ask that you respond
 7     honestly and to the best of your recollection since
 8     we are discussing a situation in your business that
 9     was 20 plus years ago.
10            Do you understand that?
11        A    Yes.
12        Q    Second, at the conclusion of the
13     deposition, despite the fact that we're operating in
14     sort of a video context, and it may have been the
15     case at one of your prior depositions, they actually
16     had a videotape in the conference room where your
17     deposition took place and they created a video
18     record of the deposition, despite the fact that
19     we've made these leaps and bounds into new
20     technologies to allow us to get our jobs done, the
21     reality is that your deposition will constitute a
22     written transcript.
23            All of the questions that I ask, the
24     comments, objections from your counsel, Mr. Tracy,
25     your responses will be compiled into the same paper
```

Page 8

1    booklet that you've previously seen.

2           Mr. Tracy will no doubt provide you a copy

3    of that document for your review, ask you to make

4    any corrections, any changes that are necessary to

5    your responses to the questions that I pose and ask

6    you to sign the acknowledgement page of the

7    deposition.

8           I just have to advise you, sir, since you

9    do have the opportunity to review and change

10   responses to your -- your answers to the questions

11   that I pose, in the event that you change your

12   response, a yes to a no, a no to a yes, not really

13   talking about correcting typographical errors.

14          Ms. Nickerson is wonderful and there will

15   probably be no typographical errors.  But if you do

16   change a response from a yes to a no, the

17   transcript, which may be used at the time of trial,

18   may be used to impeach you, to place it in front of

19   the court and advise the court that you have changed

20   an answer, and that may adversely bear upon your

21   credibility in the eyes of the trier of facts.

22          So it is important, sir, to try and provide

23   your best testimony today.  That's why I began with

24   saying be truthful, no guesses, etcetera.

25          Do you understand that?

1    A    Yes, I do.

2    Q    If I could, sir, get a little background

3    information on where, where were you educated.  I'm

4    only interested in college and graduate school, sir.

5    A    Say it again now.

6    Q    Where were you educated?  Where did you go

7    to college or graduate school?

8    A    I went to college in Pakistan, and I went

9    to college at University of Texas and that's about

10   it.

11   Q    Did you have any graduate program after the

12   University of Texas or was that a gradate program?

13   A    No.

14   Q    What was the date that you graduated from

15   University of Pakistan, sir?

16   A    It was a BS in chemistry.

17   Q    And when did you receive that degree, sir,

18   approximately?

19   A    In 1964, '65, something like that.

20   Q    All right.  And when did you attend the

21   University of Texas in Austin?

22   A    1965 and '66.

23   Q    And do you continue to cheer for their

24   football team today or have you adopted your home

25   state of California college football teams?

1        A      Both.

2        Q      Did you obtain a degree from University of

3    Texas, sir?

4        A      No, I didn't.

5        Q      And what were your studies at University of

6    Texas?  What did they involve?

7        A      Chemical engineering.

8        Q      And you departed UT after two years without

9    obtaining a degree, correct?

10        A      I did.

11        Q      It sounds like, sir, given your current

12    line of business, that you've probably been working

13    in the chemical manufacturing industry for quite a

14    number of years, correct?

15        A      Yes.

16        Q      Following your graduation or following

17    completing the studies that you undertook at the

18    University of Texas, would I be correct in assuming

19    that you went to work in the chemical engineering

20    industry?

21        A      I went to work for a textiles dye house.

22        Q      And given the fact that Pacifica Chemical,

23    your current concern, is involved in manufacturing

24    chemicals or blending chemicals for the textiles

25    industry, is it the case, sir, that your entire

Page 11

1  career in the chemical industry has been in

2  formulating chemicals for use in the textile

3  industry?

4      A    Yes.

5           MR. TRACY:  And, Mark, sorry to interrupt.

6  You're kind of leaning out of the screen a little

7  bit.  So I'm not sure if we can see your whole head.

8           MR. ELLIOTT:  Yeah, I apologize.  I don't

9  know that my head is that important.  That's beside

10  the point.

11          MR. TRACY:  Your mouth at least so

12  Mr. Shaikh can see you.

13  BY MR. ELLIOTT:

14      Q    Mr. Shaikh, let me do this.  I'm not

15  interested in a complete recitation of all your

16  areas of employment.  What I'd like to actually do

17  is work backwards, make it a little bit easier.

18          I'm interested in understanding your

19  experience and expertise in the manufacture of

20  chemicals in the textile industry.

21          You're currently the president, the CEO of

22  Pacifica Chemical operating out of Carson,

23  California, the office you're in right now?

24      A    Correct, yes.

25      Q    And you've been the president of Pacifica

Page 12

```
 1    Chemical, which is a manufacturer and specialty
 2    chemicals for the textile industry since its
 3    formation in roughly 1978, correct?
 4         A    Yes.
 5         Q    At the same -- roughly the same time that
 6    you incorporated Pacifica Chemical, you also
 7    incorporated another company, Shah Chemical, which
 8    similarly manufactured chemicals for the textile
 9    industry, correct?
10         A    Yes.
11         Q    You're also the president of that company,
12    correct?
13         A    Yes.
14         Q    Okay.  Prior to the incorporation and your
15    operation of Shah Chemical and Pacifica Chemical,
16    which roughly overlapped in the same time frame,
17    whom did you work for or what company in the textile
18    industry did you operate?
19         A    It was a Texfi West out of Carolinas.
20         Q    I'm sorry, sir.  I didn't understand what
21    you said.
22         A    It's a -- the company's name was Texfi
23    West.
24              THE REPORTER:  Tech what?
25              THE WITNESS:  Texfi, T-e-x-f-i.
```

                                              Page 13

1    BY MR. ELLIOTT:

2        Q    And where did Texfi West operate, sir?

3        A    It did operate.  It does not exist anymore.

4    It did operate out of Ontario, California.

5        Q    Were you an officer of that corporation,

6    Texfi West?

7        A    No.

8        Q    And what was your role at Texfi West?

9        A    I was a dye house manager.

10       Q    And for what period of time were you

11   employed by Texfi West as a warehouse manager?

12       A    Wow, it was for 23 years.  I don't really

13   know exact timings.

14       Q    And what did you do as a dye house manager?

15       A    Looked at the production of dying, used

16   chemicals in the production, supervised people.

17       Q    Thank you.  So in other words, you

18   physically had hands-on oversight of the production

19   activities as a dye house manager, correct?

20       A    Yes.

21       Q    Prior to working for Texfi West, whom were

22   you employed by previously?

23       A    I was employed by another dye house.  It

24   was -- company's name was Duplan, D-u-p-l-a-n, and

25   that company I don't think exists anymore.  It was

                                          Page 14

1    out of New York based company which was here in

2    Los Angeles.

3        Q    And for approximately how long did you work

4    for Duplan, sir?

5        A    I think maybe three, four years.  I don't

6    recollect that much, you know, how long.

7        Q    That's okay, your best recollection.  I can

8    assure you, Mr. Tracy probably doesn't remember what

9    he was doing two years ago so you're doing far

10   better than what he or I could do.

11       A    Well --

12       Q    What was -- were you an officer of the

13   Duplan company in California, sir?

14       A    No, I was just an employee.

15       Q    And what was your position as an employee

16   with Duplan?

17       A    In the dye house as a dyer and as a dye

18   manager.

19       Q    I'm assuming that your responsibilities as

20   a dyer and a dye manager at Duplan were similar to

21   those that you described as Texfi West?

22       A    Yes.

23       Q    And is it correct to assume, sir, that at

24   Duplan, you had responsibilities to yourself to

25   participate in the manufacture, blending, etcetera,

Page 15

1    of the chemicals utilized for the dye activities,

2    right?

3          A    Yes.

4          Q    Now, did the dye house actually dye

5    textiles or did it manufacture chemicals for

6    purposes of dying and use in the textile industry?

7          A    Dye textile.

8          Q    And Texfi West, did it also dye fabrics or

9    was it involved only in the manufacture of chemicals

10   for purposes of --

11         A    Dye fabric.

12         Q    Okay.  So, sir, could I ask -- I'm not

13   going to go further back into your history.  I'd

14   like to know generally, Shah Chemical and Pacifica

15   Chemical, your two companies that you operated for

16   many years, were in the business of manufacturing

17   chemicals for use in the textile industry, correct?

18         A    Yes.

19         Q    Okay.  Where did you gain your experience

20   in the manufacture of chemicals for the textile

21   industry?

22         A    Some from my knowledge of education and

23   some from working at the dye houses.

24         Q    So prior to your work with Shah Chemical

25   and Pacifica Chemical, is it correct, sir, that you

                                              Page 16

```
1    did not work for another company whose primary
2    purpose was to manufacture chemicals for use in the
3    textile industry?
4         A    I am not sure.  There was a -- there was a
5    chemical company who asked me for help, but I do not
6    know if I worked for them.
7         Q    Do you recall the name of the company, sir?
8         A    It was West Tex -- West Tex Chemicals,
9    somewhere in Orange County, I believe, but it didn't
10   exist for a long time, like about 30 years now or
11   20 some years.
12        Q    Okay.  And so you had somewhat a consulting
13   or an independent contractor role?
14        A    Yes.
15        Q    Many years ago, correct?
16        A    It was -- it was just for a very short
17   period, yes.
18        Q    And what were the consulting or contracting
19   services that you provided to West Tex Chemicals?
20        A    They just asked me how the chemicals are
21   used in the textile.  That's all.
22        Q    Okay.  Thank you very much.
23        A    Yeah.
24        Q    So, sir, with the formation of Shah and
25   Pacifica Chemicals in the late 1970s and with your
```

Page 17

```
 1   discussion of working for Tex West -- excuse me --
 2   Texfi West and Dye Duplan, by my estimate, it looks
 3   like we've roughly pushed your company experience
 4   back to maybe 1970, and I believe you testified
 5   previously that you completed your studies at UT in
 6   roughly 1966.  So we just have a couple-year gap
 7   there.
 8       A    Yeah, that period, I worked for the same
 9   company Duplan West, okay.  It used to be called
10   Beachwood Dye Works which was acquired by Duplan,
11   okay, and I started there in 1967.
12       Q    And so following your time frame at Duplan
13   starting in 1967, you worked there for roughly three
14   to four years.
15            Was your next position then with Texfi
16   West?
17       A    Yes.
18       Q    And after concluding your period of
19   employment with Texfi West, did you have any other
20   employers between your departure from that company
21   and the start of Shah and Pacifica Chemicals?
22       A    No, I was out of a job.
23       Q    Okay.  Thank you.  So, sir, what I'd like
24   to do is we'll do a little bit of experimenting now
25   with the exhibits because I'd like to just get some
```

Page 18

```
 1    confirmation of the interrogatory and other written

 2    discovery responses that we asked you and previously

 3    your company to respond to.

 4            So what I've given you is the very first

 5    exhibit, which we've marked as Exhibit Number 1,

 6    which is entitled "Hussain M. Shaikh's Response to

 7    TC Rich, LLC's Request for Admissions, Set One."

 8            (The document referred to was marked by the

 9    Reporter as Plaintiffs' Exhibit 1 for identification

10    and is attached hereto.)

11    BY MR. ELLIOTT:

12        Q    Do you see that document on your iPad, sir?

13        A    Yes, I do.

14        Q    Okay.  Do you recognize this document?

15        A    Yes.

16        Q    Okay.  And it was -- if you turn to the --

17    I think you yourself, sir, can see it, but if you

18    scroll down to the sixth PDF page, can you do that?

19        A    Okay.

20        Q    Okay.  You'll note that it's dated July 27,

21    2020.  Mr. Tracy actually has his signature on the

22    document there.

23        A    Which question are you --

24        Q    I'm not actually referring to a question,

25    sir.
```

Page 19

1        A    Oh, okay, yeah, yeah, yes, I see the last

2    page, yes.

3        Q    So these requests for admission responses

4    are dated July 27, 2020.  Mr. Tracy signed off on

5    that.

6        A    Right.

7        Q    But it is correct, sir, that you reviewed

8    this document before it was provided to my client

9    TC Rich, correct?

10       A    Yes.

11       Q    And while I'm not interested in your

12   conversations with Mr. Tracy, Mr. Stone, it is

13   correct that you provided input to ensure the

14   accuracy of the responses, correct?

15       A    Yes.

16       Q    Okay.  And so the request for admission

17   responses to the best of your understanding are

18   accurate and truthful responses, right?

19       A    Yes.

20            MR. ELLIOTT:  Kirk, we actually don't have

21   a verification in the file.  We have verifications

22   for the other documents that accompanied this one.

23   So I think it probably fell out of the e-mail loop.

24   So if you wouldn't mind, if you could check your

25   files --

1            MR. TRACY:  Mark, I don't think -- in

2    federal court, I don't think verifications are

3    required on RFAs.

4            MR. ELLIOTT:  Actually I believe you're

5    right.  I believe you're right, so okay.  For --

6    it's subject to certain objections, okay.  Thank you

7    very much, good point.

8            So let me now go to the next document in

9    order.  Let me introduce another one, sir.

10           THE WITNESS:  So I need to get out of this

11   one first?

12           MR. ELLIOTT:  You can just do the arrow

13   back.

14           THE WITNESS:  I got it, yeah, okay.

15           MR. ELLIOTT:  Now I'm going to introduce

16   another document.  You may have to refresh your

17   screen.  Ms. Ousley can help you with that.

18           THE WITNESS:  Yes, I got it -- no, it's the

19   same.

20           MS. OUSLEY:  Just give him a moment.  He

21   has to introduce the document.

22           THE WITNESS:  Okay.

23           MR. ELLIOTT:  Okay.  Sir, I've introduced

24   another document.  It appears as Exhibit 2.  It's

25   going to look pretty similar.  It's another

Page 21

1    discovery response.

2            MS. OUSLEY:  I do not have Exhibit 2 yet.

3            MR. TRACY:  I see it.  So go ahead and

4    click on the marked exhibits to refresh.

5            MR. ELLIOTT:  Okay.

6            THE WITNESS:  Okay.  I got it.

7            (The document referred to was marked by the

8    Reporter as Plaintiffs' Exhibit 2 for identification

9    and is attached hereto.)

10   BY MR. ELLIOTT:

11       Q    Again, similar question, sir, what I've

12   attached as Exhibit Number 2 is Hussain M. Shaikh's

13   Response to TC Rich, LLC's Interrogatories, Set

14   Number One.

15           I want to confirm that you've seen this

16   document previously, correct?

17       A    Yes.

18       Q    And you reviewed the document and assisted

19   with its preparation, correct?

20       A    Yes.

21       Q    Scroll to the bottom of the document, if

22   you could please go to the last page.

23       A    Yes.

24       Q    Okay.  You'll see there's a document there

25   on the last page of Exhibit 2 entitled

                                        Page 22

1    "Verification."

2          Do you see that, sir?

3     A    Yes, I have.

4     Q    Okay.  And that is your signature on the

5    document, correct?

6     A    Yes, it is.

7     Q    So you've attested that the responses to

8    the discovery that constitutes Exhibit 2 are

9    accurate and truthful to the best of your knowledge,

10   right?

11    A    Yes.

12          MR. ELLIOTT:  I'm introducing another

13   exhibit, sir, Exhibit Number 3.

14          (The document referred to was marked by the

15   Reporter as Plaintiffs' Exhibit 3 for identification

16   and is attached hereto.)

17   BY MR. ELLIOTT:

18    Q    Please let me know when Exhibit 3 appears

19   on your screen.

20    A    Okay.  It's here.

21    Q    Okay.  Thank you.  What we've introduced as

22   Exhibit Number 3, sir, it's entitled "Hussain M.

23   Shaikh's Supplemental Responses to TC Rich, LLC's

24   Interrogatories, Set Number One."

25    A    It's not on my screen yet.  Okay.  Now it

Page 23

```
 1    is, yes.
 2        Q    Do you recognize this document, sir?
 3        A    Yes, I do.
 4        Q    If I could have you scroll to the very last
 5    page again, sir.
 6        A    Yes, I have.
 7        Q    And you'll notice a verification page dated
 8    November 10, 2020.
 9             Do you see that?
10        A    Yes, I do.
11        Q    And is that your signature appearing on the
12    page, sir?
13        A    Yes, it is.
14        Q    And do you attest that the responses are
15    accurate and truthful responses to the best of your
16    knowledge?
17        A    Yes.
18        Q    Okay.  Thank you.  Sorry having a computer
19    glitch there.
20             Just two more and we'll be done with this
21    line.
22        A    No problem.
23        Q    I apologize.  It's taking a moment for the
24    file to load.
25        A    It's okay.
```

Page 24

```
 1        Q    So much faster to shuffle paper.

 2        A    Yes, it's easier to do, but sitting in

 3   person --

 4             MS. OUSLEY:  It just appeared for me.

 5             MR. ELLIOTT:  Okay.  Thank you.  It

 6   actually hasn't appeared for me.

 7             (The document referred to was marked by the

 8   Reporter as Plaintiffs' Exhibit 4 for identification

 9   and is attached hereto.)

10   BY MR. ELLIOTT:

11        Q    Okay.  Sir, if you refresh your browser,

12   you should be able to see what we've introduced as

13   Exhibit Number 4.  Tell me when you're ready.

14             MS. OUSLEY:  It has not appeared for us

15   yet.

16             MR. ELLIOTT:  Thank you.

17             THE WITNESS:  Okay.  Now it has.

18   BY MR. ELLIOTT:

19        Q    Mr. Shaikh, what I introduced --

20        A    Let me download it first.  It's not on my

21   screen yet.

22        Q    Thank you.

23        A    Okay.  Yes, I got it.

24        Q    So, Mr. Shaikh, what I've introduced as

25   Exhibit Number 4 is entitled "Hussain M. Shaikh's
```

Page 25

1     Response to TC Rich, LLC's Interrogatories, Set

2     Number Two."

3            Have you seen this document before?

4     A     Yes, I have.

5     Q     And did you review the document previously?

6     A     Yes.

7     Q     Did you assist in its preparation?

8     A     Pardon me?

9     Q     Did you assist in its preparation?

10    A     Yes -- yes, I did.

11    Q     Okay.  If you could scroll to the last page

12    of the document, sir, please let me know when you're

13    there.

14    A     Yeah, I'm here.

15    Q     There's a verification dated October 31,

16    2020.  There's a signature there.

17           Is that your signature, sir?

18    A     Yes, it is.

19    Q     Thank you.  Again, sir, with respect to

20    Exhibit Number 4, you attest that it's accurate and

21    truthful responses, to the best of your knowledge?

22    A     Yes.

23           MR. ELLIOTT:  I'm introducing the last

24    document, sir, Exhibit Number 5.  Just give it a

25    moment.  Let me know when it's on your screen.

Page 26

1            THE WITNESS:  Yes, it is.  One second.  One

2    second.  Yes, I got it.

3            MR. ELLIOTT:  Perfect.

4            (The document referred to was marked by the

5    Reporter as Plaintiffs' Exhibit 5 for identification

6    and is attached hereto.)

7    BY MR. ELLIOTT:

8        Q    So what we've introduced as Exhibit Number

9    5, sir, is entitled "Hussain M. Shaikh's Responses

10   to TC Rich, LLC's Requests for Admission, Set Number

11   Two."

12           Have you seen this document before, sir?

13       A    Yes, I have.

14       Q    Did you assist in its preparation?

15       A    Yes.

16       Q    And do you confirm that the responses are

17   accurate and truthful responses to the best of your

18   knowledge?

19       A    Yes.

20       Q    Thank you very much.  You can set that

21   document aside.

22           Now, sir, as I go through the deposition

23   today, I'm going to be asking questions about a

24   variety of documents.

25           What I've tried to do to assist you, given

Page 27

```
 1    the passage of time, is have specific documents that
 2    not only I may have questions about, but that may be
 3    useful to you to refresh your recollection.
 4           So typical of lawyers, we talk fast.  Your
 5    lawyer talks fast.  I talk fast.  It drives
 6    Ms. Nickerson crazy.  We have a tendency to put a
 7    document in front of a witness and to save time, we
 8    just read a page and we ask a question about it.
 9           The benefit of the Veritext Exhibit Share
10    software program is that you actually have control
11    of the document on your desktop.  So if I ask a
12    question about a document, feel free to say hold
13    your horses, give me a moment to read it.
14           And you have the ability, sir, to scroll
15    through the document, take your time to read it,
16    because the wonderful thing about documents, after
17    many years being away from your business at 132nd
18    Street, it may actually help to refresh your
19    recollection, and that will provide me and Mr. Tracy
20    the best testimony.
21           So please don't let me rush ahead.  If you
22    want to take a moment to review an exhibit, please
23    do so.  As Mr. Tracy indicated previously, any time
24    you want to take a break, please let us know.
25           My only request would be if you need to go
```

Veritext Legal Solutions
866 299-5127

```
 1    grab a cup of coffee or something, please put up
 2    your hand and say that you would like to take a
 3    break, but not when a question is pending.  Answer
 4    the question and then we can take a break.  Okay?
 5         A    Okay.
 6         Q    What I'll do, though, is when we go through
 7    the deposition, I'm going to try and go in sort of
 8    chronological order on topics and introduce
 9    exhibits, but occasionally it may be necessary to
10    refer back to a prior exhibit.
11              What you're going to want to do is click
12    the back arrow in the top corner, go back to the
13    file folder entitled "Deposition of Hussain M.
14    Shaikh" and "Marked Exhibits" and then you can click
15    and open an exhibit we previously introduced.  Okay?
16         A    Okay.
17         Q    Okay.  I'm introducing another exhibit,
18    sir.  Please let me know when you can see it.
19              Went to the wrong one.  I apologize.
20         A    It's not loading.
21              MR. ELLIOTT:  I apologize.  It opened the
22    wrong exhibit.  Let me get the right one.
23              Okay.  Ms. Nickerson, for the record,
24    Exhibit 5 was reintroduced accidentally as
25    Exhibit 6.  So we'll strike Exhibit 6 or it's
```

Veritext Legal Solutions
866 299-5127

```
 1    irrelevant, and so the next in order to be
 2    Exhibit 7.  And I'm introducing that exhibit now.
 3              THE REPORTER:  So there is no Exhibit 6?
 4              MR. ELLIOTT:  Yeah, it was a duplicate.  My
 5    apologies.
 6              (The document referred to was marked by the
 7    Reporter as Plaintiffs' Exhibit 7 for identification
 8    and is attached hereto.)
 9    BY MR. ELLIOTT:
10       Q    So, sir, I've introduced Exhibit 7 which is
11    going to be a copy of the corporation grant deed for
12    the 132nd property.  Please let me know when you can
13    see those documents.
14       A    Yes, I can see it.
15       Q    Okay.  So the first document, sir, is
16    entitled "Corporation Grant Deed."  You'll notice
17    that your name is in the upper left-hand corner.
18              Can you see that?
19       A    Say it again now.
20       Q    The first page of the Exhibit 7 is entitled
21    "Corporation Grant Deed."
22       A    Correct.
23       Q    Your name is in the upper left-hand corner?
24       A    Yes, it is.
25       Q    So have you seen this document previously,
```

Page 30

```
 1    sir?

 2        A    Yes, I have.

 3        Q    And, sir, this is the corporation grant

 4    deed by which Marmac Resources Company granted to

 5    you, Mr. Shaikh, the property located at 132nd --

 6    excuse me -- 132 West 132nd Street in Los Angeles,

 7    California, correct?

 8        A    Yes.

 9        Q    And that acquisition, I realize the

10    recording was a little later, but that acquisition

11    occurred on August 6, 1979.  You can see the date in

12    the lower left-hand corner, sir.

13             MR. TRACY:  Is there a question there,

14    Mark?

15             MR. ELLIOTT:  Yeah.  I just want to confirm

16    that the August 6, 1979 acquisition date is correct

17    to the best of his understanding.

18             THE WITNESS:  Yeah, I see that.

19    BY MR. ELLIOTT:

20        Q    But as you sit here today, sir, there's

21    trepidation in your voice.

22             You don't actually recall the date the deal

23    closed to buy the property?

24        A    I don't remember the date, but I can see

25    it, yeah.
```

Page 31

1      Q    Did you inspect the property prior to

2   acquisition, sir?

3      A    No more than what the real estate

4   normalities are.

5      Q    No, I understand the normalities as of

6   1979, they're probably a little different than

7   your --

8      A    Normality is you want to buy this thing.

9   This is a nice place, and that's about it.  Did I

10  inspect to go through like what's being done?  I

11  don't even know what Marmac Resources did or didn't

12  do or anything.  I have no clue.

13     Q    Was there a building on the property when

14  you acquired it, sir?

15     A    There was a building, yes.

16     Q    And was it the warehouse building that was

17  occupied first by Shah Chemical and subsequently

18  by -- excuse me -- by Pacifica Chemical?

19     A    Yes.

20     Q    Do you have any understanding as to when

21  that building was constructed?

22     A    No.

23     Q    Did you have any understanding as to

24  whether your companies were the first occupants of

25  that building?

                                        Page 32

1        A     No, I don't.

2        Q     Did you enter into an agreement with Marmac

3    to have the building constructed for yourself?

4        A     No, I didn't.

5        Q     Do you have any understanding, as you sit

6    here today, as to when the building was constructed?

7        A     No, I don't.

8        Q     Do you have any understanding as to whether

9    there were any occupants of the building prior to

10   its occupancy by Shah Chemical or Pacifica Chemical?

11       A     No, I don't.

12       Q     Do you have any understanding as to whether

13   any chemical blending activities for the textile

14   industry occurred in the property prior to your

15   occupation?

16       A     No, I don't.

17       Q     When you acquired the property, were there

18   any tanks, storage containers, or other implements

19   used for the dying and blending of fabrics located

20   in the building?

21       A     When I acquired, there was nothing.  What

22   happened before, I have no idea.

23       Q     It was just an empty warehouse when you

24   acquired it, correct?  It was an empty warehouse

25   when you acquired it, correct?

Page 33

1       A       Yes.

2       Q       Thank you.   Then after the acquiring the

3    property in August of 1979, did either you or --

4    well, let me take a step back, sir.

5           The first business to operate at the 132

6    132nd Street was Shah Chemical, correct?

7       A       Yes.

8       Q       And what was the date of -- or

9    approximately the date of occupancy in the building

10   by Shah Chemical?

11      A       No idea.

12      Q       Was it within six months of acquiring the

13   property?

14      A       I believe so, yes.

15      Q       I'm assuming that, prior to commencing

16   activities manufacturing chemicals for the textile

17   industry, either you or Shah Chemical had to build

18   the property out to undertake those chemical

19   blending and mixing activities, correct?

20      A       I don't understand what build the facility

21   means.

22      Q       Since you purchased, sir, individually an

23   empty warehouse, am I correct that you can't blend

24   and mix chemicals in an empty warehouse?

25      A       Yeah, you can, but, you know -- yeah, you

                                        Page 34

```
 1   can.
 2        Q    I'm assuming, however, either Shah Chemical
 3   or you installed a variety of equipment, tanks,
 4   etcetera, for purposes of blending the chemicals
 5   that you intended to market on behalf of Shah
 6   Chemical, correct?
 7        A    Yes.
 8        Q    Was that equipment installed -- purchased
 9   and installed by you or your business, Shah
10   Chemical?
11        A    By Shah Chemical.
12        Q    Okay.  Thank you.  Now, it's my
13   understanding, sir, you provided me a copy of the
14   lease, I won't make it an exhibit, but you, as the
15   property owner, entered into a lease with Shah
16   Chemical for its occupation of 132 132nd Street,
17   correct?
18        A    Yes.
19        Q    You were also -- in addition to being the
20   owner of the property, you were also the president
21   of Shah Chemical, correct?
22        A    Yes.
23        Q    So you would have executed the lease both
24   in your capacity as the property owner and the
25   landlord and as the tenant on behalf of Shah
```

Page 35

1    Chemical, correct?

2        A    Yes.

3        Q    What I'd like to do now, sir, is scroll to

4    the second page of Exhibit 7.  It's entitled

5    "Quitclaim Deed."

6             Tell me when you see that.

7        A    Yes, I do.

8        Q    So page 2 of Exhibit 7, sir, confirms that

9    Mrs. Shaikh quitclaimed her interest in 132 132nd

10   Street, correct?

11       A    That I quitclaimed my interest in 100 --

12       Q    She quitclaimed any interest that she may

13   have as your wife at that time in the 132nd Street?

14       A    Yes.

15            MR. TRACY:  Objection; assumes facts.

16            MR. ELLIOTT:  Thank you.

17       Q    I apologize, sir.  I'm scrolling down to

18   the next deed and the pagination is not showing up.

19            So if you hover your pointer, sir, at the

20   bottom of the document, you'll see the pagination

21   will come up for the PDF, and I'd like you to go to

22   page 7 of 12, please.

23            MS. OUSLEY:  7 of -- 7 of 12.

24            THE WITNESS:  It doesn't show that.  It's

25   only showing 7 of 7.

Veritext Legal Solutions
866 299-5127

1          MS. OUSLEY:  Because you're in the seventh

2     file.  He asked you to find 7 of 12.  So let's go

3     back to the front and start from the beginning.

4     That's one, two, three --

5          MR. TRACY:  Mark, the pagination is not

6     going to show the same way on the iPad as your

7     computer, I think.

8          MR. ELLIOTT:  Yeah, unfortunately.

9          MS. OUSLEY:  Does 7 of 7 have an 85 69977

10    at the top of your page with the American Title

11    Company at the very top?

12         MR. ELLIOTT:  Yes, that's correct.

13         MS. OUSLEY:  Okay.  So what would you like

14    him to look at?

15         MR. ELLIOTT:  Well, just put it on that

16    page, but Ms. Ousley --

17         MS. OUSLEY:  Yes.

18         MR. ELLIOTT:  -- on the iPad -- I should

19    have brought my iPad so I could compare, when we use

20    a pointer on a computer and hover at the bottom of

21    the PDF, the ability to zoom in, zoom out, the page

22    number shows up, is that not a function that appears

23    on the iPad?

24         THE WITNESS:  No, it's not.

25         MS. OUSLEY:  That is not a function that

Page 37

1    appears on the iPad.

2              MR. ELLIOTT:  Okay.

3              MR. TRACY:  It might work -- it might work

4    if you just tap once in the middle of the page

5    you're looking at.  It's just a guess.

6              MS. AMARU:  I was just going to say that.

7    I think a light tap might show.

8              MS. OUSLEY:  You want to blow something up.

9    What is it that you want to blow up?

10              MR. ELLIOTT:  I don't want to actually blow

11    up the document just yet.  It's illegible, and

12    Mr. Shaikh can only just use two fingers to spread

13    it apart anyway on his iPad.

14              THE WITNESS:  Yes.

15    BY MR. ELLIOTT:

16        Q    You will be -- there is one exhibit -- I've

17    tried not to include lengthy exhibits that we have

18    to go through, but there will be one where we will

19    be skipping through pages.

20              Possibly, Ms. Ousley, you could tap the

21    iPad and see if the pagination function appears

22    because it will make it easier to scroll through

23    pages in a later exhibit.

24              MS. OUSLEY:  No, it does not appear.  We've

25    tapped it.  Oh, there it is.

                                        Page 38

1          MR. ELLIOTT:  Perfect.

2          MS. OUSLEY:  So page 6 of 12, if you tap,

3     it does appear.

4          MR. ELLIOTT:  Thank you very much.  Thank

5     you very much.

6     Q    Now, referring to page 7 of Exhibit 7, sir,

7     this document is entitled "Grant Deed."  You'll

8     notice in the upper left-hand corner in the

9     "Recording Requested By" box, the name Haroon Khan.

10         Do you see that?

11    A    Yes.

12         MS. OUSLEY:  You have to be back on page 7.

13         THE WITNESS:  No, I'm on -- I think you're

14    talking about -- I can see what you're talking about

15    is the one that has the title "American Title

16    Company."

17    BY MR. ELLIOTT:

18    Q    Correct, in the upper left-hand corner.

19         MS. OUSLEY:  But that's our page 6.

20         THE WITNESS:  Page 6 of 12.

21         MR. ELLIOTT:  Interesting.

22    Q    Okay.  Well, be that as it may -- be that

23    as it may, sir, this document is entitled "Grant

24    Deed."  If you could take a glance at it and let me

25    know if you've seen this document before.

                                        Page 39

1       A     Yes, I have.

2       Q     Okay.  So this is the grant deed by which

3   you, Mr. Shaikh, granted to Haroon, H-a-r-o-o-n,

4   Khan, K-h-a-n, the property located at 132 132nd

5   Street on December 10, 1984, correct?

6       A     Yes.

7       Q     At that time, sir, in December 1984, I

8   believe Pacifica Chemicals was operating at the

9   132nd Street property, correct?

10      A     Right.

11      Q     Despite your sale of the property to

12  Mr. Khan, Pacifica Chemical continued to occupy the

13  property, right?

14      A     Yes.

15      Q     Did Pacifica Chemical enter into a lease

16  with Mr. Khan for its use of the property?

17      A     I would imagine, but I don't recall.

18      Q     Did Mr. Khan have any officer or director

19  status with Pacifica Chemical?

20      A     No.

21      Q     Did he work for Pacifica Chemical in any

22  capacity?

23      A     No.

24      Q     Did he have any relationship to Pacifica

25  Chemical?

Page 40

```
 1        A     No.

 2        Q     So he was not involved in the operations of

 3   Pacifica Chemical, correct?

 4        A     None, yes.

 5        Q     And similar question, sir, did Mr. Khan

 6   have any relationship to Shah Chemical?

 7        A     Not that I know.  Shah Chemical and

 8   Pacifica Chemical were both operated by me.

 9        Q     Okay.  Did Mr. Khan own --

10        A     No, he did not, yeah.

11        Q     I'm sorry.

12        A     The previous -- previous question, no, he

13   did not.

14        Q     So let me just make sure the record is

15   clear, sir, and I'll sort of stuff it into one

16   question.

17        A     Yeah.

18        Q     Mr. Khan was neither an officer, employee,

19   nor owner of any stock in Shah Chemical, correct?

20        A     Yes.

21        Q     And, similarly, Mr. Khan was neither an

22   officer, employee, nor owner of any stock in

23   Pacifica Chemical, correct?

24        A     Yes.

25        Q     I believe at all times, sir, the stock in
```

Page 41

1   Shah Chemicals was owned by you?

2       A    Yes.

3       Q    I believe at all times the stock in

4   Pacifica Chemicals was only owned by you, correct?

5       A    Yes.

6       Q    If you could please scroll to the next page

7   of Exhibit 7, sir.

8       A    Yeah.

9       Q    Okay.  At the top of the page, there's an

10  87 1739359.

11      A    Yes.

12      Q    Do you see that?

13      A    Yes.

14      Q    Okay.  That document is a grant deed.  Have

15  you seen this document before?

16      A    Yes.

17      Q    So by this grant deed, Mr. Khan granted to

18  you, Mr. Shaikh, the 132 -- 132 132nd Street on

19  October 26, 1987, correct?

20      A    Yes.

21      Q    Would you -- you recognize Mr. Khan's

22  signature, sir?  I see it in the lower right-hand

23  corner.  Would you recognize this to whether that

24  was his signature?

25      A    To the best of my recollection, I guess

Page 42

1    it's his.  Yes, I recognized it.

2         Q    Who was Mr. Khan, sir?

3         A    He was a friend.

4         Q    And for a period of time, he acquired the

5    property?

6         A    For a period of time, yes, he did.

7         Q    Did you have a preexisting agreement, an

8    option or some other written or unwritten agreement,

9    to reacquire the property at a point in time in the

10   future?

11        A    No.

12        Q    Thank you.  If I could have you scroll down

13   two additional pages, sir, you'll see a document

14   that is dated at the very top corner, it says,

15   "Chicago Title Insurance" and then there's a stamp

16   for May 8, 2003.

17        A    Yes.

18        Q    This is another grant deed, sir.  Have you

19   seen this document before?

20        A    Let me go through it.  Let me read this

21   document because I'm trying to recollect my memory.

22   Okay?

23        Q    Please.  Thank you.

24             MR. TRACY:  Mark, I know it's a simple

25   question.  What is the question?  Has he seen it?

                                          Page 43

1    Does you recognize it?  I'm sorry.  It's been a

2    minute.

3            MR. ELLIOTT:  I've actually forgotten the

4    question, Kirk.  Let's allow him to review the

5    document and then I'll pose a new question.

6            MR. TRACY:  Okay.  Thanks.

7            THE WITNESS:  Yeah, I don't -- I'm not

8    remembering it so --

9            MR. TRACY:  Hold on.  Hold on, Maq.  Let

10   him go ahead and ask you a question.

11           THE WITNESS:  Yeah, okay.

12   BY MR. ELLIOTT:

13       Q    Have you completed your review of the

14   document we are describing, Mr. Shaikh, that's

15   entitled "Grant Deed," and in the upper left-hand

16   corner, it says, "Chicago Title Insurance Company"?

17       A    Yes, I have, yes.

18       Q    As you sit here today, sir, you're not

19   recalling this specific document, correct?

20       A    No, I am not, but, okay, go ahead.

21       Q    I do note, sir, on sort of the middle left

22   of the page, there's a signature block there for

23   Hussain M. Shaikh?

24       A    That's my signature, yes.

25       Q    So that is your signature on this document

Veritext Legal Solutions
866 299-5127

1    that you don't recognize?

2        A    Yes.

3        Q    Okay.  But it is correct, sir, that in

4    approximately 1993, you do recall selling the

5    property at 132 132nd Street?

6            MR. TRACY:  Objection; misstates the

7    document.  You said '93.  It says 2003.

8            MR. ELLIOTT:  Thank you, I apologize.  I'll

9    restate my question.

10       Q    It is correct, sir, that in approximately

11   2003, you sold the property at 132 132nd Street,

12   correct?

13       A    Right.

14       Q    And this grant deed that you don't

15   currently recognize identifies the purchaser of the

16   property as a woman by the name of Eun Hee Lee,

17   E-u-n, H-e-e, L-e-e.

18           Do you recognize or remember that name,

19   sir?

20       A    I -- this is -- I believe that I don't

21   recognize it, but I did sell the property, yes --

22       Q    Okay.

23       A    -- and this is my signature.

24       Q    Did you work -- did you work with a real

25   estate broker, sir?

1      A    Yes.

2      Q    So it's not surprising that you may not

3  have even had direct contact with the purchaser,

4  correct?

5      A    Right, I didn't.

6      Q    Thank you very much.  So, Mr. Shaikh,

7  between the 1979 acquisition of 132nd -- 132 132nd

8  Street and the first sale from the sale to Mr. Khan

9  in 1984, you were the sole owner of that property,

10  correct?

11      A    Yes.

12      Q    Okay.  And then from the time that you

13  reacquired the property from Mr. Khan in 1987 until

14  it was sold in 2003 to an individual, you were the

15  sole owner of 132 132nd Street, correct?

16      A    Yes.

17      Q    Thank you.  Let me introduce another

18  exhibit, sir.

19      A    On a different page?

20      Q    It will be an entirely new exhibit so you

21  can --

22      A    How do I do that?

23      Q    You can back up or you can close out.

24      A    Yeah, yeah, I need to ask for help.

25           Exhibit 8, I got it.

Page 46

```
 1                  MR. ELLIOTT:  Ms. Ousley?
 2                  MS. OUSLEY:  Yes.
 3                  MR. ELLIOTT:  At the top of the tabs at the
 4       top of the Internet connection, are there just a
 5       whole bunch of Veritext Exhibit Shares open up
 6       there?
 7                  MS. OUSLEY:  Yes.
 8                  MR. ELLIOTT:  Yeah, you may want to just
 9       for ease so there's no confusion, you may want to
10       close out the --
11                  MS. OUSLEY:  We will on the next round
12       because I don't want to close this document we just
13       opened.
14                  MR. ELLIOTT:  Okay.  And we've been going
15       for about an hour.  So I'll ask questions about
16       these series of documents.  As you can see,
17       Mr. Shaikh, I try and be efficient, just move
18       quickly through this.
19                  THE WITNESS:  Okay.
20                  MR. ELLIOTT:  And maybe we can take a
21       coffee break for Mr. Shaikh, if he wants one, and
22       then you can close out the files.
23                  THE WITNESS:  Okay.
24                  MS. OUSLEY:  Okay.
25                  MR. ELLIOTT:  Sir, what we've introduced as
```

Page 47

```
 1    Exhibit 8, a little yellow sticky has now popped

 2    over, it appears in the lower left-hand corner --

 3              THE WITNESS:  Yes.

 4              MR. ELLIOTT:  -- is a series of documents.

 5    What I've done you've noticed with prior Exhibit 7

 6    and then with Exhibit 8, to simplify the use of the

 7    Veritext Exhibit Share system, I compiled documents

 8    together for ease of reference.

 9              (The document referred to was marked by the

10    Reporter as Plaintiffs' Exhibit 8 for identification

11    and is attached hereto.)

12    BY MR. ELLIOTT:

13        Q    The first page is titled "Articles of

14    Incorporation of Shah Chemical Corporation."

15        A    Uh-huh.

16        Q    Have you seen this document before, sir?

17        A    Yes.

18        Q    Okay.  If you scroll down, you'll see

19    there's two signatures in the lower right corner on

20    February 15, 1977.

21              Will you confirm for the record, sir, that

22    those are your signatures?

23        A    Yes.

24        Q    So it is correct, sir, on November 15th,

25    1997, you prepared the articles of incorporation for
```

Page 48

```
1    Shah Chemical Corporation, right?

2         A    Yes.

3         Q    If you scroll, sir, to the second page,

4    you'll see in the upper left corner, it says,

5    "Statement of Domestic Stock Corporation."  It has a

6    filing date of March 2nd, 1981 on the right.

7              Do you see that?

8         A    Right.

9         Q    Okay.  In the right-hand corner, there's a

10   signature of February -- dated February 25th, 1981.

11             Is that your signature, sir?

12        A    Yes.

13        Q    Okay.  Have you seen this document before?

14        A    Yes.

15        Q    So this is the statement for Shah Chemical

16   Corporation.  It identifies officers of the

17   corporation there in the middle of the page.

18             Do you see that?

19        A    Yes.

20        Q    The first officer identified is Hussain M.

21   Shaikh which is you, correct, sir?

22        A    Right.

23        Q    You were the president of the company?

24        A    Right.

25        Q    Okay.  Below that is Mohammed Yousuf
```

Page 49

1    Shaikh.  I believe he's one of your family members,

2    sir; is that correct?

3         A    He's my brother.

4         Q    And what was Mr. Mohammed Yousuf Shaikh's

5    officer title for Shah -- for Shah Chemical?  What

6    was his job?

7         A    Nothing.  I mean there was no job there.

8    There was nothing.  I don't recall why we did this,

9    but he had nothing to do with it.

10        Q    Okay.  Thank you.  I see below Mr. Yousuf

11   Shaikh's, the name Craig Kiernan.

12             Do you see that?

13        A    Yes.

14        Q    Who is Mr. Kiernan?

15        A    He was a bookkeeper.

16        Q    Did he act as a bookkeeper for Shah

17   Chemical?

18        A    Yes, he did.

19        Q    Other than serving as a bookkeeper, did he

20   have any corporate responsibility at Shah Chemical?

21        A    No.

22        Q    Did he work actually at the Shah Chemical

23   facility at 132nd Street?

24        A    No, he didn't.

25        Q    Thank you.  You'll then see a list of

Page 50

```
 1    directors of the corporation listed below.

 2            Do you see that, sir?

 3    A     Right, yes.

 4    Q     It lists both you and Yousuf Shaikh as

 5    directors of the corporation, correct?

 6    A     It says that, yes.

 7    Q     Then I also noticed that there's a third

 8    individual Mohammed Younus Shaikh that is listed

 9    there.

10            Do you see that?

11    A     Yes, that's also my brother who's deceased.

12    Q     Okay.  I'm sorry about that.

13            Sir, as director of Shah Chemical, did

14    Mr. Younus Shaikh and Mr. Yousuf Shaikh have any

15    responsibilities of the corporation?

16    A     No.

17    Q     Did you have any -- did you have regular

18    meetings of the board of directors?

19    A     No, no, they never were involved.

20    Q     So it's correct to state that for the

21    period of time that Shah Chemical was incorporated

22    and operating at the 132nd Street property, sir,

23    that you were in all actuality the sole operating

24    officer and director of the corporation, correct?

25    A     Yes.
```

Page 51

1       Q     Okay.  Thank you.  If I could have you go,

2    sir, to the next page.

3       A     Okay.

4       Q     This is another -- it's a little difficult

5    to see at the top, sir.  This is another statement

6    by domestic stock corporation that is dated

7    February 19, 1982, so roughly a year later.

8            There's a signature in the bottom

9    right-hand corner for Yousuf Shaikh.  Do you see

10   that, sir?

11      A     Yes, I do.

12      Q     And that was your brother Yousuf Shaikh?

13      A     Yes.

14      Q     And you recognize his signature?

15      A     Yes, I do.

16      Q     I note, sir, just very briefly in the list

17   of officers, Mr. Kiernan drops out as a listed

18   officer and I see that Mr. Younus Shaikh is now

19   listed as an officer as of February 19, 1982.

20           Do you see that?

21      A     Yes, I do.

22      Q     So as of February 1982, did Mr. Younus

23   Shaikh assume any responsibilities for the operation

24   of Shah Chemical?

25      A     No, he didn't.

                                      Page 52

1    Q    Was there a reason why Mr. Kiernan was

2  removed, to the best of your recollection, as an

3  officer?

4    A    No idea.  Not -- nobody was very involved

5  with any of the business except myself so --

6    Q    Did Mr. Kiernan continue to serve as the

7  bookkeeper for the company?

8    A    For a little while.  Just I don't know for

9  how long.  It was like 25 years some ago.  So I

10  don't have that much -- maybe more than that,

11  30 years ago, 40 years ago.  So he was involved as a

12  bookkeeper for a little while.  That's all I know.

13    Q    Okay.  Thank you.  And then I note, sir,

14  that Mr. Manzoor Shaikh -- I apologize if I

15  mispronounced his name -- was included as a

16  director --

17    A    That was my dad who is also deceased.

18    Q    Did Manzoor Shaikh have any activities or

19  involvement in the actual operation of the Shah

20  Chemical, the corporation?

21    A    No.

22    Q    Thank you very much.  If I could have you

23  scroll to the next page, sir.

24         Sir, it's correct that you were the sole

25  shareholder of all stock in Shah Chemical, correct?

Page 53

1       A     Yes.

2       Q     What was the period of time -- before I ask

3   you about Pacifica, let me just step back for a

4   moment.

5            What was the period of time that Shah

6   Chemical actually physically occupied and operated

7   at the 132nd Street property?

8       A     I don't remember how many years, but --

9       Q     Well, the property was acquired in August

10  of 1979.  We confirmed that.  So my assumption is

11  that Shah Chemical did not operate at the property

12  before that date, correct?

13      A     Say that again now.

14      Q     Since the property was purchased in August

15  of 1979.

16      A     Right.

17      Q     I assume Shah Chemical did not operate at

18  the 132nd Street property before that date?

19      A     I believe, yes.

20      Q     Okay.  So Shah Chemical, after the -- you

21  acquired the property, built out the site for

22  purposes of manufacturing chemicals, correct?

23      A     Yes.

24      Q     Okay.  Do you recall whether that build-out

25  was completed in 1979?

Page 54

```
 1        A    I don't recall, but could be.
 2        Q    But certainly by sometime in 1980, Shah
 3   Chemical was operating at 132nd Street property
 4   blending and mixing chemicals for the textile
 5   industry?
 6        A    I would assume so, yes.
 7        Q    Now, when did Shah Chemical cease to
 8   operate at the property and Pacifica Chemical became
 9   the site operator?
10        A    I don't have an exact date, and I don't
11   even know when, but it ceased to operate sometime in
12   that period and now Pacifica was operating.
13        Q    Was there any particular reason, sir, why
14   the operations at 132nd Street property was
15   transferred from one of your corporations to the
16   other corporation?
17        A    There was a specific reason of there was a
18   hostage crisis going on at that time in Iran, and it
19   had nothing to do with -- just the name Shah was a
20   wrong name to be operating under.  We got threats,
21   bodily threats, got beaten down because of that name
22   or something.  So it was ceased after that.
23        Q    Okay.  Thank you.  That's a very honest
24   response to what was sort of an uncomfortable
25   situation that I recall as a child.
```

Page 55

1      A     Right.

2      Q     So thank you, sir.

3      A     Thank you.

4      Q     If I could have you refer to the document

5   that is appearing on your screen now which should be

6   page 4 of 6 of Exhibit 8.

7           MS. OUSLEY:  If you want to tell us what it

8   says at the top because --

9           MR. ELLIOTT:  Thank you, Ms. Ousley.

10  Articles of incorporation of Pacifica Chemical,

11  Incorporated.

12          MS. OUSLEY:  Articles of -- yes.

13          THE WITNESS:  Okay.

14          MR. ELLIOTT:  Okay.

15     Q     So, sir, what we've identified here as page

16  4 of 6 in Exhibit 8 is entitled "Articles of

17  Incorporation of Pacifica Chemical, Incorporated."

18          Have you seen this document before, sir?

19     A     Yes.

20     Q     In the bottom right-hand corner, there are

21  two signatures.

22          Are those your signatures, sir?

23     A     Yes.

24     Q     It is correct that this is the document by

25  which on September 28, 1978, you incorporated

Page 56

1    Pacifica Chemical?

2        A    Yes.

3        Q    And as you're sitting here today, sir, you

4    don't recall specifically, but sometime following

5    the Iranian hostage crisis in 1979, sometime in the

6    early 1980s, Pacifica Chemical assumed the

7    operations at 132nd Street, correct?

8        A    Yes.

9        Q    Was there any form of sale or formal

10   transfer of assets between Shah Chemical and

11   Pacifica Chemical of the equipment and other assets

12   and goodwill associated with Shah Chemical?

13       A    I don't recall.

14       Q    Now, sir, you previously confirmed that

15   Shah Chemical occupied the 132nd Street property

16   pursuant to a lease between yourself, the property

17   owner, and Shah Chemical as the tenant.

18            Did you similarly enter into a lease

19   between Pacifica Chemical as the tenant and you as

20   the property owner, landlord at 132nd Street?

21       A    I don't remember, but -- yeah, I don't

22   remember.

23       Q    Okay.  Do you have any understanding as to

24   whether the lease between Shah Chemical and you was

25   assigned to Pacifica Chemical as the new tenant at

Page 57

1  the property?

2      A    I don't remember.

3      Q    Now, the amount is irrelevant, sir, but I

4  realized that Shah Chemical as a tenant at the 132nd

5  Street property agreed to pay rent to you, correct?

6      A    Yes.

7      Q    Did Shah Chemical, in fact, pay a monthly

8  or annual rent to you during its period of occupancy

9  at the 132nd Street property?

10     A    I don't recall, but possibly, yes.

11     Q    And during the period of time that Pacifica

12  Chemical occupied the 132nd Street property, did it

13  similarly pay rent to you?

14     A    I would assume so.

15     Q    Do you have any recollection of the

16  frequency that the rent was paid to you?

17     A    No, I don't.

18     Q    As you sit here today, Mr. Shaikh, and this

19  really isn't a memory test, do you recall whether or

20  not either Shah or Pacifica ever paid any rent to

21  you for the 132nd -- occupation of the 132nd Street

22  property?

23     A    Yes, they did pay the rent, but I don't

24  remember how often and how much.

25     Q    And I realize that Pacifica Chemical

Page 58

```
 1    relocated to 935 East Artesia Boulevard in Carson,

 2    correct?

 3        A    Yes.

 4        Q    I believe you're the owner of that property

 5    as well, correct?

 6        A    Yes.

 7        Q    So is it the case that Pacifica Chemical

 8    continued as your tenant at the 935 East Artesia

 9    Boulevard property once the company transitioned to

10    that location?

11        A    Yes.

12        Q    And is it currently paying rent to you as a

13    tenant to that property?

14        A    Yes.

15            MR. TRACY:  I'm going to object on

16    questions on East Artesia as to relevance.

17    Actually, Mark, do you have a line of relevance for

18    operations there?  As far as I know, there's no

19    evidence of TCE use.

20            MR. ELLIOTT:  But the reality is, Kirk,

21    relevance isn't grounds to instruct your client not

22    to answer the question, and I have just a very few

23    modest number of questions about 935.

24            So I am going to respect your objections

25    partially just to be efficient, not that I
```

Veritext Legal Solutions
866 299-5127

1    necessarily agree with you, but certainly a business

2    that manufactures the same chemicals it rolls from

3    one property to another, I would say it's very

4    relevant to ask questions about the activities

5    there, but I don't think we really need to worry

6    about it because I have so few questions.

7          MR. TRACY:  Fair enough.  I'll just, for

8    one, state an objection to all of the line of

9    questions on the Artesia Boulevard property so I

10   don't interrupt you with each single one.

11         MR. ELLIOTT:  Thank you.  I acknowledge

12   that objection.

13     Q   Sir, if I could have you refer back to

14   Exhibit 8 again, I'd like to have you scroll down to

15   the next page.  It will be page 5 of 6.  Tell me

16   when you see that document, sir.  It's got a caption

17   at the top "State of California, Kevin Shelley,

18   Secretary of State."

19         MS. OUSLEY:  State of California --

20         THE WITNESS:  5 of 6.

21         MS. OUSLEY:  Yes, we've located it.

22   BY MR. ELLIOTT:

23     Q   Sir, this is just a more recent form for

24   the corporate disclosure.  This was a document filed

25   September 1st, 2004.

Page 60

1           Can you confirm that that's your signature

2      in the bottom right corner?

3           A    I don't see -- wait a minute.  No, but

4      you're talking about -- one second, okay.

5           What happened?

6           MS. OUSLEY:  You got out of the document.

7           THE WITNESS:  Okay.

8           MS. OUSLEY:  Hold on.  Hold on.  Slow down.

9      So we have to go back -- sorry.  We're having

10     technical difficulty.

11          MR. ELLIOTT:  That's okay.

12          MS. OUSLEY:  So we're back on 5 of 6 and it

13     says the Secretary of State of California filed

14     August 31st.

15          MR. ELLIOTT:  Actually, it should say State

16     of California, Kevin Shelley.  In the upper

17     right-hand corner is the stamp 04- --

18          MS. OUSLEY:  Okay.  We've got that.

19          THE WITNESS:  We got it, okay.

20          MR. ELLIOTT:  Okay.

21          Q    So, Mr. Shaikh, if you could just go to the

22     bottom right corner of this corporate disclosure

23     document and confirm that that's your signature next

24     to the date of July 22nd, 2004.

25          A    Yes, that is my signature.

                                              Page 61

1     Q     Okay.  Do you recognize this document?

2     A     Yes.

3     Q     And I note, sir, this is the corporation

4  disclosure on behalf of Pacifica Chemical,

5  Incorporated, and that appears to have been formally

6  filed on September 1st, 2004.  There is a listing of

7  the officers and directors, at least as of 2004 for

8  Pacifica Chemical in the middle of the page.

9          Do you see that?

10    A     Yes, I do.

11    Q     Okay.  And it identifies you as the --

12  within the box entitled "Officer," you are serving

13  the role of chief executive officer, secretary, and

14  chief financial officer, correct?

15    A     Yes.

16    Q     So is it correct to state, sir, from the

17  time of formation to the present, you have served as

18  the sole officer of Pacifica Corporation -- or

19  excuse me -- Pacifica Chemical Corporation?

20    A     Yes.

21    Q     You'll notice below, sir, it lists you as

22  the sole director of Pacifica Chemical, at least as

23  of 2004.

24          Is it correct that from incorporation to

25  the present, you had served as the sole director of

Page 62

1    Pacifica Chemical Corporation?

2       A    Yes.

3       Q    And Pacifica Chemical Corporation, you see

4    at the very bottom there, it describes the type of

5    business.

6            As with Shah Chemical, it is in the

7    business of manufacturing chemicals and dye stuff

8    for the textile industry, correct?

9       A    It is -- it is true.  However, Pacifica --

10   Shah Chemical and Pacifica Chemical are a little bit

11   completely different business.  They do not -- at

12   Shah Chemical, we had PCE and other type of

13   solvents.  We do not handle any solvents here.  We

14   do not have any relevant type of that business.  We

15   have -- the industry has evolved into a nontoxic

16   type business.

17      Q    Okay.  And I appreciate that, sir.  Believe

18   me, I'm not -- I will later ask a couple of

19   questions about your activities at 935 and I realize

20   the date of this document is 2004.

21           In 2004, Pacifica Chemical was occupying

22   the 935 East Artesia building, correct?

23      A    Yes -- say it again now.

24      Q    As of 2004, Pacifica Chemical was operating

25   at 935 East Artesia, correct?

Veritext Legal Solutions
866 299-5127

1        A     No.

2        Q     No.  That's what it says on this form, sir.

3        A     Okay.  Then it does, yeah, yeah.

4        Q     And, sir, again, I realize --

5        A     I mean I'm just not very good with the

6    dates.

7        Q     That's okay.  Just your best recollection

8    is the most honest testimony, sir.

9              I realize Pacifica Chemical today, sir, in

10   some respects is a different company.  I understand

11   from your discovery responses that TCE -- excuse

12   me -- perchloroethylene, PCE, was sold for a period

13   of time at the 132nd Street property.  So I'm not

14   going to ask you questions specifically about the

15   activities at 935.

16             But let me just qualify one thing, sir.

17   Pacifica Chemical departed the 132nd Street property

18   in late 1999, early 2000, and transitioned to a new

19   location, correct?

20       A     Yes.

21       Q     Was there an intermediate location or

22   another location where the company operated before

23   it operated at 935 East Artesia?

24       A     Yes.

25       Q     And where was that property?

                                        Page 64

```
1        A     That was 2910 Ana Street.
2        Q     For how long did the company operate at
3    2910 Ana Street?
4        A     I don't know exactly how many years, but it
5    was probably two to three years.
6        Q     And then after departing the 2910 Ana
7    Street property, the Pacifica Chemical relocated to
8    935 East Artesia, correct?
9        A     Yes.
10       Q     And if my memory is correct, the 2910 Ana
11   Street property was in Dominguez Hills?
12       A     Rancho Dominguez.
13       Q     Rancho Dominguez, California, right?
14   Rancho Dominguez, California?
15       A     Yes.
16       Q     Okay.  Thank you.  And did you own the
17   property at the 2910 Ana Street, Rancho Dominguez,
18   California that Pacifica Chemical transitioned to?
19       A     Yes.
20       Q     And do you own that property today, sir?
21       A     No.
22       Q     So returning to -- and I apologize if I'm
23   duplicating my questions -- sir, again, Pacifica
24   Chemical from the time that it was incorporated to
25   the present, you had served as the sole officer or
```

Page 65

```
 1   sole director of the corporation during that entire

 2   time, right?

 3       A    Yes.

 4       Q    And you're also the shareholder of Pacifica

 5   Chemical, Incorporated?

 6       A    Yes.

 7       Q    Okay.  Would you like to grab a cup of

 8   coffee or take a break, sir?  We've been going for

 9   about an hour and a half.

10       A    Yes, I think that would be nice.

11            MR. TRACY:  How long of a break first?

12            MR. ELLIOTT:  We can give the reporter a

13   chance to wiggle her fingers, too.

14            We'll just do ten minutes.  Is that enough,

15   Ms. Nickerson, for you to grab a cup of copy?

16            THE REPORTER:  Yes.

17                    (Recess taken.)

18            MR. ELLIOTT:  So back on the record.

19       Q    Sir, while operating at 132nd Street

20   property, Shah Chemical and Pacifica Chemical

21   manufactured pretty much the same products, right?

22       A    Okay.  Let me clarify.  You keep saying

23   manufacture.  We are not a manufacturer.  Dow

24   Chemical is a manufacturer.  Steffan is a

25   manufacturer or ICI is a manufacturer.  We are a
```

Page 66

1    wholesaler who buys the product and we distribute --

2    we buy large quantity.  We distribute into smaller

3    quantities and also we do some blending of the soaps

4    and detergents so we're not a manufacturer.  We are

5    blenders.

6         Q    Okay.  So going forward, sir, thank you for

7    that qualification, I realize that blending and

8    mixing with respect to the proprietary chemicals and

9    the chemicals requested by your customers, when

10   you're operating at 132nd Street property, is what

11   you did.  So I'll refer to it as blending and

12   mixing.

13        Is that okay?

14        A    Thank you.  Thank you.

15        Q    Sure.  Okay.  While operating at the 132nd

16   Street property in Los Angeles, Shah Chemical and

17   Pacifica Chemical blended and mixed essentially the

18   same products, correct?

19        A    Except -- yes, similar product, except we

20   do not have any more perchloroethylene type product.

21        Q    That's why I qualified my question, sir.

22   So while operating at the 132nd Street property,

23   Shah Chemical and Pacifica Chemical blended and

24   mixed essentially the same products?

25        A    Shah Chemical did, but Pacifica Chemical

```
 1    evolved after -- this was a very small period of

 2    time where it did on the PCE.  After that, it did

 3    not do.  So I don't recall that Pacifica Chemical

 4    had anything to do with PCE.

 5        Q    I was actually, sir, talking about blending

 6    and mixing.  I realize that the PCE was a product

 7    that the companies purchased, repackaged, and sold,

 8    correct?

 9        A    Yes, yes.

10        Q    So I'm not -- I'm not talking about --

11        A    Blending, yes, blending, yes, similar

12    product.

13        Q    So let me just have a clean record with a

14    question and answer.

15        A    Sure.

16        Q    It is correct, sir, that while operating at

17    132nd Street, Shah Chemical and Pacifica Chemical

18    blended and mixed essentially the same products,

19    correct?

20        A    Yes, with the exception of PCE.

21        Q    So it is also the case, sir, that neither

22    Shah Chemical nor Pacifica Chemical blended or mixed

23    PCE with the company's proprietary chemicals,

24    correct?

25        A    Yes, they did not.
```

Page 68

1  Q  Rather the companies acquired PCE, stored

2 in an underground storage tank, and then sold it to

3 the company's customers in small quantities,

4 correct?

5  A  Yes.

6  Q  I'll ask you about that in a few minutes.

7  A  Sure.

8  Q  It's also correct that putting aside PCE,

9 Shah Chemical and Pacifica Chemical, while operating

10 at the 132nd Street property, also had other

11 products that it acquired from third-party suppliers

12 and which it resold to its own customers, correct?

13  A  Yes.

14  Q  Okay.  And you provide a list of some of

15 those products in your interrogatory responses.

16 We'll turn to those in a moment, sir.

17  A  Yes.

18  Q  Okay.  Now, you as the president of the

19 company, I'm assuming you pretty much worked daily

20 at the 132nd Street property from when the Shah

21 Chemical first occupied the property until when

22 Pacifica Chemical vacated the property in roughly

23 1999, correct?

24  A  Yes.

25  Q  So you were familiar during that 20-year

Page 69

1    period with the products that were mixed and blended

2    by the companies, correct?

3        A    Yes.

4        Q    And you're familiar with the products that

5    were neither mixed nor blended, but instead were

6    acquired for third parties, repackaged, and sold to

7    your customers, correct?

8        A    Yes.

9        Q    And for a period of time, it's correct that

10   PCE was one of those products that at least Shah

11   Chemical acquired from a third party, repackaged,

12   and sold to your customers, correct?

13       A    Yes.

14       Q    But as you sit here today, sir, I'm

15   assuming you're not entirely certain when the

16   companies discontinued the resale of PCE, correct?

17       A    When Shah Chemical discontinued it, I do

18   not have a specific date, yes, I don't.

19       Q    Okay.  And as a result of your role as the

20   president of the company and your daily activities

21   at 132nd Street property, I'm assuming that you were

22   familiar with the methods of production, the mixing

23   and blending of chemicals at the property?

24       A    Yes.

25       Q    Okay.  And you were similarly familiar with

Page 70

1    the method of the acquisition of third-party

2    products, the repackaging, and resale of those

3    products including PCE for a period of time?

4        A    For a period of time, yes.

5        Q    Okay.  But as to that method that the

6    company followed for buying large quantities of

7    third-party products, repackaging them into smaller

8    containers, irrespective of what the product was,

9    you yourself were personally familiar with how that

10   process worked, correct?

11       A    Yes.

12       Q    You were also familiar as a result of

13   having to drag yourself to the office every day with

14   the physical layout of the Shah and Pacifica

15   Chemical mixing and blending and storage and

16   distribution facility, correct?

17       A    Oversight, yes.

18       Q    So between 1980 and 1990, Shah and Pacifica

19   mixed and blended fabric dyes, light detergents, and

20   fabric softeners for the textile industry, correct?

21       A    Yes.

22       Q    Any other products that were mixed and

23   blended on-site?  Did you guys have any other

24   specialty chemicals that went to, you know, maybe

25   industries other than the textile industry?

Page 71

1      A     Not that I recall.

2      Q     And the only reason I ask, sir, is I

3   realize that Pacifica Chemical in its current

4   iteration has changed its business model a little

5   bit, maybe grown and done some other chemicals.  I

6   think now you may actually -- the company may

7   actually provide chemicals for the water control

8   industry or something like that.  Am I correct in

9   that regard?

10     A     Yes.

11     Q     Were any of those line of chemicals mixed

12  or blended or somehow manufactured at the 132nd

13  Street property?

14     A     No.

15     Q     Now, taking a look at your company, sir, I

16  don't remember exactly where I saw it, but possibly

17  on Pacifica Chemical's website, I believe currently

18  Pacifica Chemical employs roughly 20 people at its

19  facility in Carson, California, correct?

20     A     Yes.

21     Q     Now, I've asked in discovery -- or my

22  clients asked in discovery to identify the employees

23  at the 132nd Street property, and you very kindly

24  responded to us and provided us the names that you

25  could recall.

Veritext Legal Solutions
866 299-5127

1          But I'm interested in knowing, sir, roughly

2     how many employees other than yourself as the

3     president of the company, Shah Chemical, employed

4     when it operated at 132nd Street property?

5          A     Probably two or three.

6          Q     And then during the period of time that

7     Pacifica Chemical operated at the 132nd Street

8     property, so from roughly 1981 or so through 1999,

9     how many employees on average did the company employ

10    for that period of time?

11         A     I'm guessing it was around 10 -- 10 to 12.

12         Q     So when you use the word "guess," that

13    implies that you don't really know one way or the

14    other.

15              So is that your best estimate that the

16    company --

17         A     My best estimate is ten.

18         Q     Ten, okay, thank you.  And that was roughly

19    the total number of employees from -- on an annual

20    basis from roughly 1981 through 1999?

21         A     Yes.

22         Q     Or did you grow in the number of employees

23    over time from when Pacifica Chemical first occupied

24    the property, began doing business there until the

25    time that it departed?

Page 73

1        A     No.

2        Q     So roughly ten employees is your best

3    estimate?

4        A     Yes.

5        Q     How many of those employees, sir, were

6    involved in the physical process of mixing and

7    blending of these specialty products that the

8    company sold to the textile industry?

9        A     Two.

10       Q     Two, okay.  Who trained those employees and

11   the procedures by which they were to mix and blend

12   the chemicals?

13       A     I did that.

14       Q     And who was their supervisor during the

15   period of time that those two individuals undertook

16   those activities for Pacifica Chemical and Shah

17   Chemical?

18       A     We were not that big to have supervisors,

19   yeah, so --

20       Q     So you were the sole supervisor?

21       A     Yeah, the way it works is you showed them

22   how to do that, and I'm mostly in my office, and

23   they bring something to me, and I mark it down this

24   is how you do it step by step, and that's how it

25   say -- it's not a very tedious operation.  So

Page 74

```
 1    unfortunately we're not making a -- you know,

 2    technically very -- you know, it's a simpler

 3    operation.

 4        Q    You're not thinking of automating and using

 5    artificial intelligence for your business

 6    activities, sir?

 7        A    I wish -- I wish I even knew how to use the

 8    artificial intelligence.  I have to have somebody

 9    here who can show me how to do a Zoom call.

10        Q    Well, don't worry.  Ms. Amaru is smiling

11    because she has to do the same thing for me on a

12    regular basis.  So between her and Mr. Tracy,

13    they've got a few years on us and a better

14    understanding of information technology.

15        A    This is the first time I have used the Zoom

16    in my life.

17        Q    Unfortunately you end up using it a bit too

18    often.  My parents are a little bit older, so I

19    spend the time on the phone with their doctors.

20             Sir, just to get the record -- our record

21    to be clean, so for the period of time that Shah

22    Chemical and Pacifica Chemical operated at 132nd

23    Street property, is it correct to say that you both

24    trained the production employees and ultimately had

25    to supervise the production employees in the mixing
```

Page 75

```
 1    and blending of chemical operations?
 2         A    I would say yes.
 3         Q    Okay.  Now, obviously that was not your
 4    sole business.  The company also had the business of
 5    acquiring third-party chemicals and then repackaging
 6    those in smaller quantities and reselling those
 7    products.
 8              Did you similarly train and oversee the
 9    employees that were involved in those activities?
10         A    Those were the same employees, yes.
11         Q    Same two employees?
12         A    Yes.
13         Q    So that was Mr. Montes and Tomas Macedonio?
14         A    Yes.
15         Q    And both of those individuals, sir, you're
16    not familiar with where they are currently?
17         A    Tomas is deceased 20 years ago, do not know
18    where Montes is or have heard anything at least more
19    than 20 years.
20         Q    So Mr. Montes and Mr. Macedonio, were they
21    employed at Pacifica Chemical during the entire time
22    that it operated at the 132nd Street property?
23         A    Yes.
24         Q    Okay.  And they were the sole individuals
25    in the mixing and blending activities?
```

Page 76

1      A    Yes.

2      Q    And they similarly were responsible for the

3  intake and repackaging of third-party chemicals that

4  the company distributed?

5      A    Yes.

6      Q    And were they also the two individuals who

7  were involved in the intake and then repackaging of

8  PCE stored in the above-ground storage tank?

9      A    Yes.

10          MR. TRACY:  Objection; assumes facts.

11  BY MR. ELLIOTT:

12      Q    Why don't I lay a foundation for that, sir.

13          We've talked a little bit about the PCE

14  that the company acquired and resold for a period of

15  time at the 132nd Street property?

16      A    Correct.

17      Q    Now, it's my understanding from the

18  discovery responses that you've provided that PCE

19  was stored in an above-ground storage tank located

20  in the interior of the building, correct?

21      A    Yes.

22      Q    And that 2,000-gallon above-ground storage

23  tank was located adjacent to the mixing and blending

24  tanks that were utilized as part of your mixing and

25  blending operations for proprietary products?

Page 77

1        A     Yes.

2        Q     Okay.  And Mr. Macedonio and Mr. Montes

3   were the individuals that then would have been

4   responsible for the oversight of that above-ground

5   storage tank, the intake of product, and the

6   repackaging of it in smaller containers, correct?

7        A     Yes.

8        Q     And those individuals were also

9   responsible, going back to the mixing and blending

10  activities, following mixing and blending, I'm

11  assuming that there was some cleanup that was

12  performed in the production area?

13       A     Yes.

14       Q     Okay.  And were Mr. Montes and

15  Mr. Macedonio, during their period of employment for

16  roughly 20 years, responsible for cleanup in the

17  area of the mixing and blending activities?

18       A     Yes.

19       Q     As their supervisor and president of the

20  company, I'm assuming you trained them in the

21  procedures by which they were to clean up in between

22  mixing different batches of products?

23       A     Yes.

24       Q     Okay.  So you supervised those activities

25  as well, correct?

Page  78

1     A     I supervised them from my office, yes.

2     Q     It's a better place to supervise.

3           In your interrogatory responses, sir, you

4  identified a few other employees that you could

5  recall.  For example, I believe it's pronounced

6  Mukesh Doshi was an employee and employed by

7  Pacifica Chemical at the 132nd Street property?

8     A     Yes.

9     Q     For the record, Mukesh Doshi, M-u-k-e-s-h

10  first name, second name D-o-s-h-i.

11          THE REPORTER:  I'm sorry.  The last name

12  again?

13          MR. ELLIOTT:  D-o-s-h-i.

14          THE WITNESS:  Yes.

15  BY MR. ELLIOTT:

16     Q     Okay.  Thank you.  Now, Mr. Doshi served as

17  the corporate controller for Pacifica Chemical?

18     A     Yes, it's a good title, bookkeeper.

19     Q     For what period of time -- because I

20  realize he's still employed, sir?

21     A     Yeah.

22     Q     When did -- when did Mr. Doshi first come

23  to serve as the corporate controller?

24     A     I don't have the date, but he's been here

25  for at least more than 20 some years.

Page 79

1      Q    So when Mr. Kiernan hit the brakes as the

2    recordkeeper, did Mr. Doshi step in and serve that

3    role as --

4      A    After -- I think after a few months, yeah.

5      Q    So was Mr. Doshi employed at the 132nd

6    Street property?

7      A    I believe so, yes.

8      Q    And was he an employee of Shah Chemical or

9    did he arrive with Pacifica Chemical?  Sorry?

10     A    Pacifica Chemical.

11     Q    And do you have any recollection of when

12   you first began to serve as the controller for the

13   company at the 132nd Street property?

14     A    It was over 20 some years ago, so yeah.

15     Q    You don't recall specifically?

16     A    I don't know the specific dates, yeah, but

17   I can, you know, find out, but I don't have them.

18     Q    You don't need to run down the hallway and

19   ask him.

20     A    Yeah, yeah.

21     Q    Did Mr. Doshi have any responsibilities for

22   the production, the mixing and blending of the

23   company's products while it occupied the 132nd

24   Street property?

25     A    No.

Veritext Legal Solutions
866 299-5127

1       Q    Did he have any responsibility for the
2    intake and repackaging of third-party products that
3    the company distributed while at 132nd Street?
4       A    No.
5       Q    Does Mr. Doshi have a chemical engineering
6    degree like you, sir?
7       A    No.
8       Q    Does he have any familiarity other than
9    serving as a controller --
10      A    No.
11      Q    -- with mixing and blending of chemicals
12   for the textile industry?
13      A    None at all.
14      Q    Did Mr. Doshi work at the company during
15   the period of time that it sold PCE from the
16   above-ground storage tank?
17      A    No.
18      Q    You also listed a couple of individuals
19   that also were more of office employees.  The first
20   was Helga, last name is M-a-r-k-g-r-a-f dash Fowler,
21   F-o-w-l-e-r.
22           You stated that that individual,
23   Ms. Fowler, served in a secretarial capacity at
24   132nd Street property, but you don't understand or
25   have knowledge of her whereabouts currently,

Page 81

1    correct?

2       A    Absolutely right, yes.

3       Q    But Ms. Fowler in her capacity as an office

4    employee, is it correct that she had no involvement

5    with the chemical production activities of the

6    company, correct?

7       A    Yes, she didn't.

8       Q    Okay.  Do you have a recollection of the

9    period of time that Ms. Fowler worked at the 132nd

10   Street property?

11      A    Do I have what?

12      Q    A recollection of the time period that

13   Ms. Fowler worked at the 132nd Street property?

14      A    It was few years.  I don't know how many

15   years so --

16      Q    Another employee you identify in discovery

17   responses, sir, was another office employee by the

18   name of Patricia, last name N-e-r-e-s-t-a-n-t,

19   Nerestant.

20           Did I pronounce that right?

21      A    I think so, yeah.

22      Q    Do you recall when Ms. Nerestant worked at

23   the 132nd Street property?

24      A    She worked for quite a few years.  I do not

25   know exact dates, yeah.

Page 82

1        Q    And you don't currently know her

2    whereabouts either, correct?

3        A    No, no, I don't.

4        Q    Ms. Nerestant did not, to your

5    recollection, have any involvement in the chemical

6    production activities of the company, correct?

7        A    None.

8        Q    Okay.  The additional employee that you

9    recalled was a gentleman by the name of Guadilio,

10   G-u-a-d-i-l-i-o.

11            Did I pronounce that correctly?

12       A    That's -- that's the same employee you're

13   talking about, Guadilio Macedonio.

14       Q    Guadilio and Tomas Macedonio are the same

15   individual?

16       A    Yeah, exactly.

17       Q    Oh, okay.  Thank you very much.

18       A    Yeah, they're the same employee.

19       Q    Thank you for that correction.

20            During the period of their occupation of

21   the 132nd Street property, did either Shah Chemical

22   or Pacifica Chemical have an officer who is

23   responsible for oversight of environmental

24   compliance under state and federal law?

25       A    No.

Veritext Legal Solutions
866 299-5127

1    Q    Did you have a non-officerial environmental

2  manager that was responsible for the company's

3  compliance with state and federal environmental

4  laws?

5    A    No.  We hired outside consultants from time

6  to time.  I don't have any recollection of the names

7  or the companies, but we did hire as specifically to

8  that need outside employees sometimes.

9    Q    And do you recall when it was that you went

10  to your outside contractors to assist with

11  environmental compliance activities?

12    A    Only when we needed to file for some

13  permits or when we had some sort of question from

14  the county or something.

15    Q    So you're speaking specifically, sir, in

16  relation to the company obtaining an industrial

17  waste discharge permit from Los Angeles County

18  Department of Public Works and Sanitation, correct?

19    A    Right.

20    Q    So for purposes of complying with the

21  requirements to obtain that permit, for example, the

22  diagrams that the county would require with respect

23  to the plumbing features, you would go to an outside

24  contractor for those purposes?

25    A    Uh-huh.

Page 84

1        Q    Is that a yes?

2        A    Yes.

3        Q    And, similarly, ultimately the company

4    installed a clarifier as a pretreatment unit at the

5    property.  I'm assuming you went to an outside

6    contractor to --

7        A    Yes.

8        Q    -- design and install that clarifier,

9    correct?

10       A    Yes.

11       Q    Now, my question is a little bit more

12   general.

13            You know, as a business person, you realize

14   that you, as a company, in United States, California

15   have certain obligations to comply with OSHA

16   regulations, worker health and safety.  You have

17   certain obligations to comply with environmental

18   regulations under state and federal law for air

19   emissions, discharges of water, management of, for

20   example, solid waste and hazardous waste.

21            I'm talking more generally about

22   environmental compliance as opposed to physically

23   applying for a permit or constructing a piece of

24   equipment.

25            So with that in mind, sir, during the

Page 85

1   period of time that Shah Chemical or Pacifica

2   Chemical occupied 132nd Street property, did you

3   have an officer that was responsible for overseeing

4   environmental compliance as I described just a

5   moment ago?

6       A    It would be me.

7       Q    Thank you.  I noticed -- I don't know that

8   it's worth flipping to the document, but I noticed a

9   gentleman that signed one document that was

10  submitted to the county.  His name was -- put his

11  initials on the page of T.S. Carran, C-a-r-r-a-n.

12          Do you recognize that name, sir?

13      A    C-a-r-r-a-n, no, I don't.

14      Q    Since I've been asking you so many

15  questions about your employees, did we by chance

16  shake free any other employee names which you can

17  recall during the period that Shah and Pacifica

18  Chemical occupied the 132nd Street property?

19      A    No.

20      Q    Thank you.  Suffice to say, sir, Mr. Montes

21  and Mr. Macedonio for the period of time that Shah

22  and Pacifica Chemical occupied the 132nd Street

23  property, they were the employees responsible for

24  the mixing and blending of the company's products as

25  well as the management of third-party products that

Page 86

```
 1   were resold to the company's employees, correct?

 2        A    Yes.

 3        Q    And you were both their trainer and

 4   supervisor during that entire time frame, correct?

 5        A    Yes, from my office, yeah.

 6        Q    Sir, I'm going to have -- we're going to go

 7   back to an exhibit we previously marked.  So if I

 8   could have Ms. Ousley click on the marked exhibits

 9   tab.

10        A    There we go.

11             MS. OUSLEY:  We're signed out.

12             THE WITNESS:  Let me -- let me sign in.  It

13   takes a minute.

14             MS. OUSLEY:  Takes a minute.  So you want

15   us to go back to the exhibit?

16   BY MR. ELLIOTT:

17        Q    What I'm going to do is I'm going to open

18   for viewing -- whoops, I don't want to introduce it.

19   I want to open it.

20             Okay.  You should be able to see on your

21   screen Exhibit 3 which is Mr. Shaikh's supplemental

22   responses to interrogatories.

23             MS. OUSLEY:  Nothing is open.

24             THE WITNESS:  Okay.  Exhibit 3.

25   BY MR. ELLIOTT:
```

Veritext Legal Solutions
866 299-5127

```
 1        Q    You can actually just double click on it,
 2   and it will just open up again.  It's already been
 3   produced.
 4             MS. OUSLEY:  It's opening.
 5             THE WITNESS:  It's coming up.
 6             MS. OUSLEY:  Okay.
 7             THE WITNESS:  Okay.  It's here.
 8   BY MR. ELLIOTT:
 9        Q    Okay.  Now, this is a little bit easier
10   because the documents are numbered.  I would
11   appreciate it if you could turn to -- it's going to
12   be PDF page 2 and page 2 of the document.
13        A    Page 2, okay.  Yes, I have that.
14        Q    So, sir, why don't you take a moment.  We
15   had asked you in discovery -- my client had asked to
16   identify the -- you know, to the best of your
17   recollection, the various chemicals in this
18   interrogatory request that were stored at the
19   property from 1978 -- actually really should
20   probably be 1979 until the sale of the property, but
21   I guess it's really when Pacifica Chemical vacated.
22             So you listed here a series of chemicals
23   that you could recall.  Do me a favor.  Please
24   review that list to yourself.  You don't have to
25   read it out loud.
```

Page 88

1      A      Yeah.

2      Q      And inform me if there's any additional

3  chemicals that were stored at the site that you can

4  now recall.

5      A      No, that's it.

6      Q      Okay.  So that's for -- to the best of your

7  recollection, that's the most complete list of

8  chemicals stored at the site; is that correct?

9      A      To the best of my knowledge, yes.

10     Q      Now, I note, sir, beginning at line 22 of

11  that response, it states, "The softeners and

12  detergents mixed at the property and stored pending

13  sale included PAC SEQUEST NTANA3," and it goes on to

14  list additional products with a PAC numerator on it?

15     A      Right, right.

16     Q      Okay.  Are those -- is the PAC referring to

17  Pacifica?

18     A      Right.

19     Q      So are these examples of the proprietary

20  products that the company blended and mixed and sold

21  out of the 132nd Street property?

22     A      Yes.

23     Q      Were these products, sir, patented or

24  otherwise subject to intellectual property

25  protections?

Page 89

```
 1        A     No.

 2        Q     Were they -- I used the word "proprietary

 3   chemicals" because I see the PAC name.

 4        A     Yeah, I hear you, yeah.

 5        Q     Were they -- was the formula developed by

 6   you for Pacifica Chemical?

 7        A     Yes.

 8        Q     But they were not patented for anyone?

 9        A     No.

10        Q     And all of these chemicals, either the

11   proprietary ones or the other items listed on the

12   page, they were all ones that were -- with the

13   exception of PCE because I realize that was more

14   limited time, all the rest of these were stored and

15   utilized at the facility essentially during the

16   entire occupation of the property by Pacifica

17   Chemical?

18        A     Yes.

19        Q     So, sir, you very kindly in your

20   interrogatory responses essentially described the

21   layout of the property, but I was able to cobble

22   together a couple of exhibits that I'd like to show

23   you that depict the interior of the property at

24   different points in time.

25        A     Okay.
```

Veritext Legal Solutions
866 299-5127

1      Q    Let me introduce another exhibit.

2      A    I should get out of this one.

3           MR. ELLIOTT:  Yeah, I'll introduce another

4    one.  So this is going to be the next in order.

5           MS. OUSLEY:  You have to be careful not to

6    log us out.

7           (The document referred to was marked by the

8    Reporter as Plaintiffs' Exhibit 9 for identification

9    and is attached hereto.)

10   BY MR. ELLIOTT:

11     Q    This is going to be probably the largest

12   exhibit.  There's some larger ones but we won't go

13   through them.

14     A    We have to get out of this one first.

15          MS. OUSLEY:  Trying to get out.  If we go

16   to the top -- there we go.

17          THE WITNESS:  There it goes, okay.

18          Which one?

19   BY MR. ELLIOTT:

20     Q    Okay.  So what I've introduced, sir, is

21   next in order Exhibit 9.  I assembled a variety of

22   documents all taken from the files of the County

23   Sanitation Districts or the L.A. County -- it's now

24   known as the Department of Public Works.

25          I put them together for simplicity for this

Page 91

```
 1    depo.   What I'd like you to do is scroll down to --
 2             MS. OUSLEY:   It's still loading.
 3             MR. ELLIOTT:   Oh, okay.
 4             THE WITNESS:   Just once again, please.
 5             MR. ELLIOTT:   No problem.
 6             MR. TRACY:   Mark, I see these don't have
 7    any Bates number.   Are any of these documents that
 8    were not produced?
 9             MR. ELLIOTT:   This is -- actually these
10    are -- that's strange.   They don't have Bates
11    numbers.   These were all the county records that I
12    actually thought came from you guys.   It may be that
13    these were separately provided to us.
14             MR. TRACY:   I mean they look very familiar.
15    I guess just my request to you and Stephanie would
16    be is if there's anything in here that hasn't been
17    produced, if you could go ahead afterwards and put a
18    Bates stamp on it and produce it, but I suspect your
19    suspicion is right, that they come from us.
20             MR. ELLIOTT:   Yeah, or the reality is that
21    maybe we had them from -- we went and got them from
22    the county after you guys produced them.
23             You know, we did a PRA request, and I just
24    went to the file that unfortunately didn't have a
25    Bates number on them.
```

Page 92

1          No problem, Kirk, we can do an own up.  As

2    we all go scavenging for information, we should

3    probably pick a date and just update all of our

4    production responses.  Then we can give each other

5    duplicates of all the documents.

6          MR. TRACY:  Sounds good.

7    BY MR. ELLIOTT:

8       Q    Mr. Shaikh, just let me know when the

9    document is loaded.

10      A    It's loaded.

11      Q    If you could scroll down to PDF page 10.

12      A    Okay.  Let me see.

13          MS. OUSLEY:  You have to slow and stop to

14    see for the page number to come up.

15    BY MR. ELLIOTT:

16      Q    It's actually going to be easy to identify.

17    It's a hand-drawn map of the 132nd Street property.

18          MS. OUSLEY:  Okay.  It's --

19          THE WITNESS:  Let's just go to that.

20          Yeah, we got it, okay.

21    BY MR. ELLIOTT:

22      Q    So, sir, I'll represent to you this is a

23    document that's in the files of the Los Angeles

24    County Sanitation and Department of Public Works

25    files.  This is a map that purportedly was drawn by

Page 93

```
 1    Robert Hartley when he visited the site with you on
 2    June 16, 1981.
 3            I'll ask you about that visit later, but
 4    what I'm more interested in is using it as a map to
 5    see if I can get you to confirm that this was an
 6    accurate layout, though quite spare, of the facility
 7    at 132nd Street circa 1981 when Pacifica Chemical
 8    was operating there.
 9            If you could take a moment to look at it
10    and confirm for me whether this does generally
11    comport with your recollection of the layout of the
12    plant during that time frame.
13        A    Kind of, yeah.
14        Q    Okay.  Now, I understand, sir, from the
15    information that you provided to us that Pacifica
16    Chemical -- or excuse me -- that you as the property
17    owner entered into a lease with Flying Tigers for
18    the storage of aircraft parts at the 132nd Street
19    property, correct?
20        A    Correct.
21        Q    So did they, in fact, during the period of
22    that lease from 1981 through 1986, did Flying Tigers
23    store aircraft parts at the property?
24        A    Yes.
25        Q    Okay.  And the lease indicated that the
```

Page 94

```
 1    company would erect like a chain link fence inside

 2    the warehouse storage area --

 3         A     Yes.

 4         Q     -- and Flying Tigers would occupy roughly

 5    20,000 plus square foot of the warehouse area,

 6    correct?

 7         A     Right.

 8         Q     Okay.  Now, this map is -- you'll notice

 9    it's upside down.  North is pointing down instead of

10    up, the orientation.

11         A     Yeah, right now, right, yeah.

12         Q     We've got the office and lab that are

13    located down in the -- what would be the northwest

14    corner of the property -- I'm sorry, I've got to

15    flip it over -- it's going to be the northeast

16    corner of the property, correct?

17         A     Right.

18         Q     And then you had -- it appears to say -- is

19    that a --

20         A     No, office would be northwest -- northwest

21    of the property, yeah.

22         Q     Okay.  Thank you.  So office is to the

23    northwest.

24               Then you had -- is that a truck deck

25    located in the northeast corner of the property?
```

Page 95

1    A    No.

2         MS. OUSLEY:  Truck dock.

3         THE WITNESS:  Truck dock is not on this

4    site, no.

5    BY MR. ELLIOTT:

6    Q    I think the truck dock was on the other

7    side of the property, correct?

8    A    Right, exactly.  It's on the -- it's on the

9    southwest side of the property.

10   Q    Okay.  Thank you.  There's an RR identified

11   on this map.

12        Do you know what that is?

13   A    Restroom.

14   Q    Thank you.  And then there's a lab.  Is

15   that short for laboratory?

16   A    Yes.

17   Q    What was the laboratory at the Pacifica

18   Chemical facility circa 1981?

19   A    Just basically to keep the samples, the

20   retaining samples and, you know, play around in the

21   lab.

22   Q    So when you say "samples," are you talking

23   about the samples of the various proprietary

24   chemicals -- excuse me -- proprietary products the

25   company manufactured?

```
 1        A     Right.  We came so close.

 2        Q     And when you say "play around," would that

 3   have been you --

 4        A     Just talking, okay.  So, you know, playing

 5   around, that's me, okay.

 6        Q     Well, but I -- I'm assuming that that was

 7   your home away from home when you were developing

 8   those proprietary products, is that not correct,

 9   sir?

10        A     Yes, yes, it was.

11        Q     So that's where the magic got done, right?

12        A     Well, don't know if it's magic or what, but

13   that got some things done.

14        Q     So when we then look into the large storage

15   area of the warehouse, I'm assuming that the chain

16   link fence was erected running north to south

17   through essentially the middle of the property --

18        A     Yes, something very close to like where R

19   and R is all the way down to the other side, yes.

20        Q     So that side of the property where it says

21   "storage" was essentially dry storage of aircraft

22   parts for Flying Tigers?

23        A     I'm assuming that there was the parts and

24   their equipment, whatever they were, but they were

25   stored, yes.
```

Page 97

1      Q     But that lease provides it was just storage

2      activities that were going on there, correct?

3      A     That's what it provides, yes.

4      Q     The lease stated that it ran in mid-1986.

5            Did Flying Tigers vacate that side of the

6      property in circa 1986?

7      A     Yes, I believe so.  Again, I don't have

8      exact dates, but I'm assuming, yes.

9      Q     And between the time that Flying Tigers

10     vacated the property for its storage activities and

11     the vacation of the property by Pacifica Chemical,

12     did you have any other tenants at the property?

13     A     No.

14     Q     Did you take down the chain link fence?

15     A     Yes.

16     Q     Returning to the illustration, sir, there's

17     over on the right corner the gentleman from the

18     county illustrated I think what I generally describe

19     as the production area.

20           So in the upper right-hand corner of the

21     exhibit, which is going to be the southwest corner

22     of the property, there's a 400-gallon storage tank

23     identified there, correct?

24     A     Right.

25     Q     Okay.  Okay.  And do you recall what that

Page 98

1   storage tank was for?

2   A   No, I don't.  There were only two tanks and

3   this shows like four or five tanks.  There were only

4   two tanks.  One was a 400-gallon tank and the other

5   one was 1500- to 2,000-gallon tank.

6   Q   Okay.  So the illustration shows a

7   2,000-gallon tank, correct?

8   A   It shows -- that 2,000-gallon tank should

9   be where it says 1500 gallons and where it says two

10  75 gallon, it's like 400 gallon, and those were the

11  only two tanks.

12  Q   So let's -- let's make sure the record is

13  correct.

14      There are -- on this illustration in 1981,

15  there are described as storage tanks, three storage

16  tanks, and that's in the southwest corner and then

17  they describe two mixing tanks located sort of in

18  the center west portion of the property?

19  A   Right, mixing tanks were the ones that --

20  which were used and the other tanks were just maybe

21  stationary.

22  Q   Okay.  For storage purposes?

23  A   Yeah, could be.

24  Q   But -- and I realize you said there should

25  only be two storage tanks around 1981 rather than

Page 99

1    three, sir --

2         A    Yeah.

3         Q    -- but are they properly located on the map

4    to the best of your recollection?

5         A    No, I think they were closer to these two

6    tanks so --

7         Q    It's closer to the mixing tanks?

8         A    Right.

9         Q    So to more accurately depict the 400-gallon

10   storage tank and the 2,000-gallon storage tank, we

11   should move those a little bit to the north, right?

12        A    Right.

13        Q    Okay.  Now, what's identified is the

14   2,000-gallon tank.  That was for the storage of PCE,

15   correct?

16        A    Right.

17        Q    But you don't remember what the 400-gallon

18   storage tank was for?

19        A    No.

20             MR. TRACY:  Can I interject just an

21   objection?  I'm not sure we're clear as to time.  I

22   probably should have objected sooner to clear it up,

23   but I guess moving from here forward, clarify the

24   time frame, please.

25             MR. ELLIOTT:  Yes.  This drawing was

                                           Page 100

```
1    generated during an inspection by Mr. Hartley in

2    approximately June of 1981.

3            MR. TRACY:  Are you asking just about '81

4    or are you asking about all times moving forward?

5            MR. ELLIOT:  We have additional maps going

6    forward that I'll show in a moment.  So I'm asking

7    as of 1981, was this an appropriate location or was

8    this the rough location of where the 2,000-gallon

9    above-ground storage tank for PCE was located.  I'm

10   asking for your response.

11           MR. TRACY:  Thanks for the clarification.

12   I appreciate that.  I'm not sure if there was a

13   question there, if Mr. Shaikh heard it.

14           MR. ELLIOTT:  I'll rephrase the question.

15      Q    So, sir, as of approximately June 1981, the

16   2,000-gallon storage tank for PCE should actually be

17   moved a little bit to the north closer to the mixing

18   tanks, correct?

19      A    Yes.

20      Q    And the 400-gallon storage tank that you

21   don't recall what its use was for, that should also

22   be moved a little bit to the north closer to the

23   mixing tanks, correct?

24      A    Yes.

25      Q    And the additional 1,000-gallon storage
```

                                              Page 101

1    tank, you're uncertain, as you sit here today, as to

2    whether or not that actually was at the facility in

3    1981, correct?

4        A    Yes, I don't recall that.

5        Q    Okay.  Now, turning to the mixing tanks,

6    there's two identified.  There's a 1500-gallon

7    mixing tank and either a 250 or 350 -- I can't quite

8    read it -- gallon mixing tank there.

9            Are those two tanks that you recall, sir,

10   that were used for mixing and blending of the

11   company's proprietary products?

12       A    Yes, they were.

13       Q    And are they generally properly located?

14       A    Yes.

15       Q    I notice that a steam boiler that's

16   identified as not being used is located immediately

17   north of those mixing and blending tanks.

18           Was that in place in approximately June of

19   1981?

20       A    Yes.

21       Q    But that was not actually used by the

22   company?

23       A    No.

24       Q    Was the mixing and blending process, did

25   you have the need to heat any of the chemicals or

Page 102

```
 1    other additives that went into the products?
 2        A    No.
 3        Q    So they were mixed at room temperature?
 4        A    Yes.
 5        Q    Okay.  And then I notice that immediately
 6    north of the steam boiler, there's a -- what's
 7    described as a boiler blow down tank and a pump pit.
 8            Do you see those?
 9        A    Yeah, it's part of the boiler I believe,
10    yeah.
11        Q    And do you have any recollection of the
12    blow down tank and pump pit?
13        A    No, how many -- I'm sure they're there,
14    yes, they're part of the boiler.
15        Q    Okay.  And I notice that there is --
16    there's the squiggly line which I believe was a hose
17    that ran from the mix tanks to what's identified as
18    FS which is the floor sink; is that correct?
19        A    Yes.
20        Q    So that was -- that was the hose that the
21    production employees utilized for draining the tanks
22    following mixing and blending and cleaning?
23        A    I am not sure on that.  The way maybe you
24    have it on a future drawing, but it has a -- it has
25    a -- the whole parameter has a drain -- drain which
```

                                        Page 103

```
 1    was directly when you clean up and all that, and it
 2    goes into a clarifier from there, and from the
 3    clarifier, it gets cleaned up and it goes into the
 4    city sewer.
 5         Q    Okay.
 6         A    I -- I don't see that on your drawing.
 7         Q    Yeah.  And, sir, that's -- we'll go through
 8    those documents in a moment.
 9         A    Yes.
10         Q    This was a drawing that was done at a time
11    at least based on records prior to the installation
12    of the clarifier and the concrete trenches through
13    the property.  So I'm taking you back to the early
14    days before the clarifier.  Okay?
15         A    Take me back to my childhood.
16         Q    A few more years to do that.
17         A    Yeah, okay.
18         Q    So let's go pre-clarifier and concrete
19    trenches.
20              And so do you have a recollection, sir, of
21    the use before the clarifier system was installed of
22    a hose to drain the tanks and rinsate to the floor
23    sink?
24         A    I was not -- I don't think so.  I don't
25    know, no.
```

Page 104

1      Q     And then there's another line, sir, drawn

2   between the floor sink and what's identified as the

3   pump pit near the steam boiler.

4           Do you know what that line represents?

5      A     No, I don't.  I mean it's just an equipment

6   line or something.  I -- maybe somebody put a pipe

7   there.  It's like leaving a hole in your garage.

8      Q     So what I'll do is I have two more maps to

9   show you.  Let's look at the next one.

10     A     Okay.  So how do I go to the next one?  Do

11  I scroll up?

12          MS. OUSLEY:  No, no, we're done with this.

13          THE WITNESS:  We're done with that?

14          MS. OUSLEY:  He's going to want to go back

15  out and then you're going to reload here and then he

16  will put another one up.

17          THE WITNESS:  Thank God she's here to show

18  me.

19          MR. ELLIOTT:  You're going to need to use

20  your two fingers to blow this one up a little bit or

21  maybe reduce its size.

22          THE WITNESS:  Okay.

23          MS. OUSLEY:  You're going to put up

24  Exhibit 10?

25          MR. ELLIOTT:  Uh-huh.

                                    Page 105

1          MS. OUSLEY:  Okay.  It hasn't shown up --
2     there it is.
3          MR. ELLIOTT:  I'm actually shrinking its
4     size down to make it a little bit more useful here
5     now.  Now I will view the exhibit.
6          THE WITNESS:  Okay.  I got it.
7          (The document referred to was marked by the
8     Reporter as Plaintiffs' Exhibit 10 for
9     identification and is attached hereto.)
10          MR. ELLIOTT:  And, Mr. Tracy, we'll make a
11     record on this exhibit, this came from the
12     Department of Public Works files.  We'll zoom in on
13     the dates so that we can confirm the date for your
14     purposes.  Okay?
15          MR. TRACY:  Sounds good.
16     BY MR. ELLIOTT:
17     Q    So, Mr. Shaikh, we've introduced what we've
18     described as Exhibit 10, a one-page document.
19     A    Right.
20     Q    It's a drawing of the 132nd Street
21     property.  This is done by a plumbing service for
22     the company as part of its submittal for an
23     industrial waste discharge permit.
24          Do you recognize this document, sir?
25     A    Yes, I do.

Page 106

1    Q    Okay.  Let me zoom in so I can get the date

2    and I can show you where it is.

3         So in the lower right corner, sir, there is

4    a stamp date you'll see --

5    A    June 26th.

6    Q    Yep, yep.  June 26th, 1985.

7    A    June 26th, 1985, okay.

8    Q    Okay.  So if I could then have you go back

9    over to the area showing the storage tanks.

10   A    Okay.

11   Q    Okay.  So we've got -- in the southwest

12   corner, we have what are described in the map when

13   this was drawn by your outside -- company's outside

14   contractor, it says polypropylene above-ground

15   storage tanks.  Then sort of in the middle west of

16   property, it says polypropylene above-ground tanks,

17   mixing tanks for production manufacturing.

18        Do you see that?

19   A    Yes.

20   Q    Okay.  So, sir, again putting this in 1986,

21   it identifies per the above-ground storage tanks,

22   the first is described as a 2,000-gallon acetic acid

23   storage tank.

24        Do you see that?

25   A    Yes.

Page 107

1        Q     Is that generally accurately depicted on

2    the maps --

3        A     Yes.

4        Q     -- where it was located in 1986?

5        A     Yes.

6        Q     Okay.  Then we have a 2,000-gallon

7    perchloroethylene -- unfortunately it's

8    misspelled -- tank that's located there.

9              Do you see that?

10       A     Yes.

11       Q     And does that refresh your recollection as

12   to the location of the 2,000-gallon

13   perchloroethylene tank in 1986?

14       A     Yes.

15       Q     And then below that is -- it just says

16   700-gallon storage.

17             Was there a 700-gallon storage tank located

18   there?

19       A    I don't remember, but I'm assuming it's

20   right.

21       Q     But you don't recall what it was for?

22       A     No, but I'm assuming it was there.

23       Q     Okay.  Now, next, sir, if you move a little

24   bit north, you see the mixing tanks.  So we've gone

25   from two tanks to three tanks as of 1986?

                                        Page 108

```
 1        A     Okay.

 2        Q     So the first is 350-gallon mixing and

 3   blending tank; is that correct?

 4        A     Yes.

 5        Q     And that's properly identified on the map?

 6        A     Right.

 7        Q     And then the next is the thousand-gallon

 8   blending tank?

 9        A     I think so, yes.

10        Q     It may actually say 1400 gallons, I

11   apologize, not 1,000.

12              Okay.  And then --

13        A     I don't recall exact size, but, you know,

14   I'm just -- I'm assuming they are right.

15        Q     And then there was a 300-gallon tank that

16   is located immediately north of the largest tank,

17   correct?

18        A     Right.

19        Q     Okay.  So this is the time frame, sir,

20   where you recall that these tanks were then plumbed,

21   you can see the illustration of the plumbing beneath

22   them, that then flowed to what they describe as the

23   new collection box.

24              Do you see that?

25        A     Right.
```

Page 109

1      Q    So is that accurately depicting how the

2   tanks were then drained following use and rinse to

3   the new collection box?

4      A    Yes, yes, I would say yes.

5      Q    And then you'll note that there is -- the

6   drawing shows what they describe as a new three-inch

7   waste line that runs due north to what's described

8   as a new clarifier fixed 1500 gallons.

9           Do you see that?

10     A    Yes.

11     Q    Does this map therefore, to the best of

12  your recollection, accurately depict the waste line

13  running to the new clarifier, at least as it was

14  planned during the time of this plan submittal?

15     A    Yes.

16     Q    And you'll see that there's a legal

17  sampling point that's identified immediately to the

18  north of the clarifier.

19          Does that refresh your recollection as to

20  the location of the sampling point for the

21  clarifier?

22     A    Say it again now.  Repeat your last

23  question, please.

24     Q    Sure.  Do you see where the clarifier is

25  identified on the map?

Page 110

1       A     Right.

2       Q     And immediately north of that is a little

3    arrow pointing to a little box, and it says legal

4    sampling point.

5             Do you see that?

6       A     Okay.  Yeah.

7       Q     Okay.  So does that map -- is this

8    accurately depicting to the best of your

9    recollection the sampling points --

10      A     Right.

11      Q     -- of the water coming from the clarifier?

12      A     Yes.

13      Q     And then that water would then be

14   discharged via the sewer line to the county sewer

15   system, correct?

16      A     Right, but it has to go through the

17   clarifier first --

18      Q     Correct.

19      A     -- yeah.

20      Q     Did you yourself ever draw any samples of

21   the water as it exited the clarifier on the way to

22   the sewer line, sir?

23      A     No.

24      Q     So in reviewing this map, sir, admittedly

25   it's circa 1986, this is generally an accurate

                                              Page 111

1    depiction to the best of your recollection of the

2    above-ground storage tanks and mixing tanks at the

3    132nd Street property, correct?

4        A    Yes.

5        Q    So I see the 2,000-gallon perchloroethylene

6    tank located on the property in 1986.

7             Do you recall, sir, after 1986 when the use

8    of that tank was discontinued?

9        A    I don't think it was any longer time after

10   that.  I think it was very -- probably 1986 might

11   have been the last year or something.  I do not --

12       Q    I didn't mean to interrupt you.  Did you

13   finish your statement, sir?

14       A    Yeah, I don't recall it would be any longer

15   than that, but I don't have any specific dates.

16       Q    Okay.  Once the company discontinued the

17   sale of perchloroethylene, what happened to the

18   above-ground storage tank?

19       A    We got it out, to my knowledge.

20       Q    Was the above-ground storage tank itself,

21   was that owned by the company?

22       A    Yes.

23       Q    Okay.  When you say you got it out, you

24   just mean it was removed and taken out of the --

25       A    Sold it.  Yeah, sold it, junked it.

Page 112

1      Q    So it didn't remain at the property and was

2    relocated outside?

3      A    Right.

4      Q    Do you know if a hazardous waste manifest

5    was prepared for its disposal?

6      A    No, I have no idea.

7      Q    Well, as you sit here today, sir, do you

8    have any understanding of what happened to that tank

9    after PCE sales were discontinued?

10      A    No, I don't.

11      Q    So are you speculating as to whether or not

12    it was removed from the interior --

13      A    No, it was removed.  That's all I know, but

14    I don't know what happened to the tank after that.

15    It was sold.

16      Q    So you don't know when exactly it was

17    removed and to whom or where it was disposed of?

18      A    Exactly.

19          MR. ELLIOTT:  This map doesn't show the

20    concrete drains.  Let me go to the only map that

21    we've been able to see, sir, that identifies the

22    concrete drains that we mentioned in passing.  Let

23    me introduce a new exhibit.

24          That's strange -- I'm sorry.  It's taking

25    time to load.

Page 113

1              MS. OUSLEY:  Ours is loaded.

2              THE WITNESS:  Ours is loaded.

3              MR. ELLIOTT:  Not for me.  This is Exhibit

4    11.  It is a document that I extracted from a report

5    prepared by Murex Environmental, Incorporated.

6              (The document referred to was marked by the

7    Reporter as Plaintiffs' Exhibit 11 for

8    identification and is attached hereto.)

9    BY MR. ELLIOTT:

10       Q    Are you familiar with the company Murex,

11   Mr. Shaikh?

12       A    Yes, I am.

13       Q    So they're the entity that is supporting

14   Pacifica Chemical, Incorporated, in its

15   investigation of the 132nd Street property, correct?

16       A    Yes.

17       Q    Okay.  So what I did is -- because it's a

18   little bit of a mystery as to the location of the

19   concrete sort of drain system that ran through the

20   production area, I went looking for a document that

21   attempted to depict it, and this document was

22   extracted from -- I've forgotten which report it

23   was.  I'll provide that information -- actually I

24   included a copy of the complete report because I

25   knew Mr. Tracy would want to see it.

                                            Page 114

1            This was the best estimate of the
2    approximate location of the cemented trench drains.
3    So you can ignore for the moment, sir, you know, the
4    blue and green data that's been plotted on the map.
5    We're not interested in that?
6            You'll see that there's a dotted line near
7    the building identified as the approximate location
8    of the cemented trench drains.  I believe this is
9    somewhat drawn from the filled-in cement drains that
10   are visible in the interior of the property as of --
11   this was prepared in 2015.
12           So, sir, the orientation is flipped.  Now
13   north is to the north.  So we properly have the
14   office in the upper --
15        A    Yeah, we do.
16        Q    Can you take a look at the dotted lines on
17   the interior of the -- in the interior of the
18   warehouse building and let us know whether those
19   dotted lines or dash lines, to the best of your
20   recollection, reflected the locations of the
21   concrete trench drains throughout the production
22   area?
23        A    Yes.
24           MR. TRACY:  I just want to interject real
25   quick.  If I zoom it on the date, it claims that the

                                             Page 115

1   date was April 4, 2016.

2           MR. ELLIOTT:  I'm sorry.

3           MR. TRACY:  I just want to clarify that for

4   the record so we know what we're looking at.

5           MR. ELLIOTT:  I apologize.  I said 2015.

6   Thank you.

7           THE WITNESS:  Yeah, they seem okay.  They

8   seem like this is how it was.

9   BY MR. ELLIOTT:

10      Q    And so the trench drains, sir, do you

11  recall when those were installed in the floor of the

12  warehouse building?

13      A    Say again now.

14      Q    The trench drains that are depicted, do you

15  recall when those were installed in the concrete

16  floor of the warehouse building?

17      A    No, I don't have the date.

18      Q    Were they in the floor of the warehouse

19  building when you acquired the property in 1979?

20      A    No.

21      Q    Were they added at a later point in time by

22  Pacifica Chemical?

23      A    Yes.

24      Q    Did Pacifica Chemical's employees install

25  the drains or did you have an outside contractor

                                        Page 116

1    come in and do it?

2        A    Outside contractor.

3        Q    Okay.  Do you recall how the drains were

4    actually installed?  Was it simply a cut and chip

5    out the concrete?

6        A    To my -- best of my recollection, cut out

7    and installed by putting the rebar and the cement

8    and having a proper drainage angle.

9        Q    So they used gravity for purposes of

10   draining to --

11       A    Yes.

12       Q    And they draw all of those trenches drained

13   to the clarifier?

14       A    Yes.

15       Q    So is it your understanding, sir, that they

16   were installed at roughly the same time that the

17   clarifier was installed?

18       A    Yes, or it could be installed before, but,

19   yes, it was.

20       Q    Is there any lining in the concrete

21   trenches?

22       A    Lining?

23       Q    Yeah, like metal, plastic.  I don't know.

24       A    I don't have any idea.

25       Q    So it's to the best of your recollection

Page 117

```
 1   they were simply concrete that would have been cut
 2   out and further supported and an inclination was put
 3   in so that they would properly drain?
 4        A    Yes.
 5             MR. TRACY:  Asked and answered.
 6   BY MR. ELLIOTT:
 7        Q    What was the purpose of the drainage
 8   system, sir?
 9        A    It's required by the county and I think
10   now, but at that time, it was just if there is an --
11   it's basically a spill control.
12        Q    Okay.  And your -- in your interrogatory
13   responses, you indicated that in the production
14   area, which is -- you can see where there's a little
15   red rectangle that says "Location of historic" --
16   "historical mixing tanks."
17        A    Right.
18        Q    Your discovery responses indicate that
19   those tanks were rinsed down and the water flowed to
20   the clarification.
21             Was it also the case, sir, that there would
22   be general cleanup where the floor of the production
23   area would be rinsed down such that water would flow
24   into the concrete trenches and then to the
25   clarifier?
```

Page 118

1          A     Normally, we didn't have that, but it could

2     be used for that.

3          Q     Do you recall specifically, as you sit here

4     today -- and before you laugh at me, I'll throw in

5     the time frame -- Pacifica spills of any products in

6     the production area or elsewhere in the warehouse

7     facility that necessitated rinsing chemicals down to

8     the clarifier?

9          A     No.

10         Q     Do you have any specific recollection of

11    any spills of PCE from the above-ground storage tank

12    or the drums to which the PCE was transferred that

13    necessitated rinse down to the concrete storage

14    drains?

15         A     No, this refers to my --

16         Q     Sorry.

17             MR. TRACY:  Sorry, Maq.  I think you

18    answered the question.  If you have more -- I don't

19    mean to cut you off, but can we do a time check,

20    Mark?

21             MR. ELLIOTT:  Sure.  Let me just ask one

22    last question.  I didn't mean to remove that

23    exhibit.  I took it off my screen.

24         Q     Can I ask Mr. Shaikh -- and then we'll do a

25    time check -- the maps that show the production and

                                        Page 119

```
 1    the above-ground storage tank areas, but where
 2    generally were the new products that the company
 3    acquired and then the repackaged products that the
 4    company assembled for its customers, where was that
 5    stored on this map during the time that Pacifica
 6    Chemical and Shah Chemical operated at the 132nd
 7    Street property?
 8         A    The product came in in a larger quantity
 9    into the tank, and then it was pumped into the --
10    right in the -- right by there and then it was
11    stored into the enclosed sealed drums.
12         Q    Okay.  So that's -- that's the PCE we're
13    talking about, right?
14         A    Yes.
15         Q    So in discovery responses, it was stated
16    that the PCE was pumped into 55-gallon sealed drums?
17         A    Right.
18         Q    Where were those drums stored at the
19    property prior to shipping to Pacifica Chemical
20    customers?
21         A    Somewhere near the tanks.
22         Q    Okay.  Now, obviously, sir, you had
23    mentioned other activities the company did was the
24    mixing and blending of its proprietary chemicals.
25    So I'm assuming you acquired raw materials to be
```

Page 120

1    used in the mixing and blending process, correct?

2        A    Right.

3        Q    Where were those raw materials stored in

4    the warehouse?  Could you generally describe that

5    looking at this map?

6        A    They were on the east southeast area by the

7    wall.

8        Q    Okay.  Sort of middle -- excuse me --

9    southeast corner along the east --

10       A    Along the wall, the middle of it along the

11   long wall, near the wall.

12       Q    Now, you also testified that the company

13   would acquire bulk chemicals that it would then

14   resell to --

15       A    Right.

16       Q    -- to customers.

17            And you describe those in your

18   interrogatory responses?

19       A    Right.

20       Q    Where were those materials stored during

21   the period of time that Shah and Pacifica Chemical

22   operated at the 132nd Street property?

23       A    They were -- the bulk would come in.  And

24   it would be -- it would be taken out of the tank,

25   and it would be stored right there into the sealed

1    drums and it would be shipped after that.

2        Q    Sir, so we're talking about not PCE, but

3    the other product --

4        A    Yeah.  So you have other product which

5    could come in.  Like acetic acid, it would come into

6    the tank.  You would take it out and put it in a

7    55-gallon drum and you sell it as a 55-gallon drum.

8        Q    And my interest, sir, is where were those

9    55-gallon drums, for example, of acetic acid stored?

10       A    They were in the designated area somewhere

11   in the middle.  They were on the pallets, and they

12   were -- you know, they were put on the pallets.

13   Then you ship it as a pallet.

14       Q    So, for example, the product acetic acid,

15   that would be placed into storage drums --

16       A    Right.  So it would come in as a bulk into

17   the acetic acid tank and then you would take it out

18   from there into 55-gallon drum.  And then you have

19   that thing labeled and everything, and then you put

20   it on a pallet and the pallet would go out as

21   shipping.

22       Q    Okay.  Prior to shipping, sir, where would

23   the palletized drums of acetic acid be stored in the

24   warehouse?  Could you describe where it was located

25   north, south, east, or west?

Page 122

1       A      I would say it would be closer to the

2   acetic acid tank, the one before, maybe towards the

3   middle of it, and I would say northwest building --

4   northwest from the middle.

5       Q      Okay.  Thank you.  In your discovery

6   responses, sir, you identify that hydrogen peroxide

7   was stored in bulk in a large plastic tank by

8   Pacifica Chemical.

9             Was that hydrogen peroxide again delivered

10  in bulk and pumped into that storage tank?

11      A      Yes.

12      Q      And then the hydrogen peroxide would be

13  placed into smaller drums or plastic totes for

14  resale, correct?

15      A      Yes.

16      Q      Do you recall where these smaller drums or

17  totes of hydrogen peroxide were stored in the

18  warehouse prior to the sale?

19      A      Middle to the west -- middle to the east.

20      Q      You also noted that the company would

21  acquire caustic soda that was not opened?

22      A      Right.

23      Q      Do you recall where that was stored prior

24  to sale to your customer?

25      A      That would be stored in the middle.

Page 123

1    Q    Okay.  So you've now described for us where

2    the bulk storage above-ground storage tanks are, the

3    mixing tanks.  You described the storage of hydrogen

4    peroxide, PCE, sodium hydroxide, caustic soda, and

5    the raw materials that you obtained for your

6    products.

7         Any other chemicals that you -- that the

8    company acquired that were stored at the property

9    that you can identify for us?

10   A    Can you repeat it again, please?

11   Q    That was a mouthful.

12   A    That was a mouthful, I know.

13   Q    You also received powdered dyes that you

14   resold to customers, correct?

15   A    Right.

16   Q    And I believe those were resold in the same

17   packages they arrived in, correct?

18   A    Yes, yes.

19   Q    Where were they stored, sir?

20   A    They were stored on the north by the

21   north -- by the office because they were all sealed

22   drums, and they were, you know, like taped and

23   sealed, and all that.  So they were north in the

24   middle, all the way against the wall.

25   Q    Okay.  Thank you.  See, sir, you have the

Page 124

```
 1   benefit -- you know, Ms. Amaru and Mr. Tracy and I
 2   look at these very flat maps that everybody is
 3   always interested in our world in tanks, but you're
 4   able to paint a picture for us on the record to
 5   describe what else filled up the warehouse.  So it
 6   isn't simply blank space on the page.  Thank you
 7   very much for doing that.
 8        A    Thank you.
 9             MR. ELLIOTT:  Let me do a time check.  Let
10   me quickly go through my notes.  This may be a good
11   time for a break.
12             Yeah, why don't we -- why don't we do a
13   lunch break.  As to the timing, I will have a couple
14   of hours of questions after lunch.  So, Mr. Shaikh,
15   Mr. Tracy, tell me how long you need for a lunch
16   break, and I'm happy to accommodate you and
17   Ms. Nickerson.
18             MR. TRACY:  Well, Maq, it's really up to
19   you.  So if Mr. Elliott has got a couple more hours
20   to go, is a half-hour lunch break good enough --
21             THE WITNESS:  I think half hour is perfect,
22   yeah.
23             MS. OUSLEY:  Now, once again, do we just
24   mute and stop video?
25             MR. ELLIOTT:  You just mute and stop video.
```

Page 125

```
 1    That's the simplest way, I think, to basically log

 2    off for the moment.

 3              THE WITNESS:  Okay.  Let's just do

 4    30 minutes or 35 minutes, yeah.

 5              MR. ELLIOTT:  Why don't we just -- 12:30,

 6    we'll reconvene.

 7              THE WITNESS:  Yes, that would be perfect.

 8              MS. OUSLEY:  Perfect.

 9              MR. ELLIOTT:  Thank you.

10              MR. TRACY:  We can go off the record then.

11                   (Luncheon recess taken.)

12    BY MR. ELLIOTT:

13        Q    If you wouldn't mind reopening Exhibit 3.

14        A    Exhibit 3?

15        Q    Yes.

16        A    Yes, it's open.

17        Q    And scroll down to interrogatory response

18    number 11, it's on page 6 of 9.

19        A    6 of 9, okay.  Page 4, 5, 6, 6 of 9, okay.

20        Q    So I just want to follow up on wastewater

21    that went to sanitary sewers, sir.  So I'm not

22    interested in gray water coming from the bathroom

23    and sinks in the office complex.

24              So I just want to confirm that during the

25    time that Shah and Pacifica Chemical operated at the
```

Page 126

1  property, its primary source of wastewater that was

2  discharged to the sanitary sewer system was rinse

3  waters from the mixing and blending tanks, correct?

4      A    It's from probably blending the tank, yes.

5      Q    And then you said that after the

6  installation of the concrete trench drainage system,

7  were any spills to occur and there was any cleanup,

8  that that would necessitate water, then that rinsate

9  would also go to the sanitary sewer system, correct?

10     A    Well, cleanup, things like if there is a --

11 yeah, it would wash down, yeah, wash it, dilute and

12 then go, yeah, right --

13     Q    Other than cleaning up the production

14 activities and potential spills, were there any

15 other sources of wastewater that were discharged to

16 the sewer system?

17     A    No.

18     Q    Okay.  Now, referring to --

19     A    Excuse me.

20     Q    -- number 3, response to interrogatory

21 number 11.

22     A    Okay.  So am I -- am I going to 11 page

23 now?

24     Q    No, no, it's the response to interrogatory

25 number 11 which appears on page 6 of Exhibit 3.

Page 127

1      A     Okay.

2      Q     So, sir, at line 12 and 13, it states, "Any

3  spills of chemicals or any other liquids at the

4  property were properly cleaned up."

5          My question for you is:  As you sit here

6  today, are you familiar with any spills of chemicals

7  or other liquids at the property that were actually

8  properly cleaned up?

9      A     Just to give you a little bit of a

10  background, not specific one, okay, because I do

11  travel a lot.  I -- you know, if there was a spill

12  that was handled through properly, however, it

13  doesn't necessarily mean I was there at that time.

14          You know, I have an extensive history of

15  travel.  So I could have been informed afterwards or

16  I could have been informed that when it happened or

17  something and what to do.

18      Q     Okay.

19      A     But that most likely it was handled

20  properly and then, you know --

21      Q     So it's correct then, sir, in interpreting

22  this statement in the interrogatory response that

23  what the response means is that you were wearing

24  your unfortunate hat of environmental supervisor,

25  instructed your employees on how to manage spills

Page 128

 1   and it's your understanding that they adhered to

 2   your instructions how to manage spills, whether you

 3   were present at the facility or away, correct?

 4       A    Yes.

 5       Q    Thank you.  If I could have you go back,

 6   sir --

 7       A    I want to add on to that unless -- just to

 8   add on that, unless they could not get hold of me,

 9   they did it the best way they could, okay, so yeah.

10       Q    Thank you.  As you sit here today, sir, do

11   you have any recollection while you were traveling

12   or out of the office, your employees contacting you

13   for instruction on spill response?

14       A    I don't have a specific, you know,

15   knowledge of that, no.

16       Q    Thank you.  If I could have you refer to

17   Exhibit 9, please, I previously introduced it.  I'd

18   like to walk through --

19       A    Go to Exhibit 9.

20       Q    Yeah, we'll go through Exhibit 9.  This

21   goes -- relates to the installation or removal of

22   the clarifier.  So we'll skip through these pages

23   and touch on that issue.

24            MS. OUSLEY:  At the top, okay.  So now you

25   want to go back to --

Page 129

1                    THE WITNESS:  Number 9, right?

2                    MR. ELLIOTT:  Correct.

3                    MS. OUSLEY:  Just a second, we've got to

4     get it loaded.  Nope, that's Exhibit 8, Exhibit 9.

5                    THE WITNESS:  Okay.  One second.  It's

6     loading.

7     BY MR. ELLIOTT:

8          Q     Thank you.

9          A     What happened?

10                   MS. OUSLEY:  It's not happening?

11                   THE WITNESS:  No, it's not happening.

12                   MS. OUSLEY:  Okay.  Hold on.

13                   THE WITNESS:  Can you please check why it's

14    not happening?

15                   MS. OUSLEY:  It's not loading.

16                   Is it a large --

17                   MR. ELLIOTT:  It's a large document.  So it

18    may still be loading.

19                   MS. OUSLEY:  All right.

20                   THE WITNESS:  Okay.  No, it's not loading.

21                   MS. OUSLEY:  It's doing the swirl.

22                   THE WITNESS:  So why isn't it loading?

23                   MS. OUSLEY:  Well, it looks like it's

24    stuck.  Let me see if maybe we bring it up, you have

25    signal.  Exhibit 9 does not want to load.

                                        Page 130

1    BY MR. ELLIOTT:

2        Q     What I would do is I would attempt to

3    reload it.   I would close that out and then go back

4    to the screen previously and attempt to reload it

5    because we know it loaded before so it's in that.

6        A     It's loading.

7             MS. OUSLEY:   It's loading now.

8             THE WITNESS:   Now it's loading.

9             MS. OUSLEY:   Must be a very big file.

10            MR. ELLIOTT:   It's actually only 50 pages

11   long, but the problem is the documents are gray

12   scale.   So it's far more information than you would

13   realize, that County of Sanitation Districts, their

14   color of the documents submitted to Mr. Tracy were,

15   shall we say, odd.

16            MS. OUSLEY:   Okay.   We just have to wait

17   for the circle to stop circling.

18            THE WITNESS:   I'm sorry it takes that long.

19            MR. ELLIOTT:   No, sir.   I'm imposing on

20   you.

21            THE WITNESS:   No, no, yeah.

22            MS. OUSLEY:   I think -- I think it got

23   stuck.   So let's go back because it stopped the

24   circle.   It's still trying to load.

25            MR. ELLIOTT:   Ms. Ousley, were you able to

                                        Page 131

1    close --

2            MS. OUSLEY:  I closed everything out except

3    for the Exhibit Share and the initial, you know,

4    menu to go to.  So there's nothing else that is --

5    that it's trying to open.

6            MR. ELLIOTT:  Let's just give it a moment.

7    Then my suggestion will be to log out and log back

8    in.  Maybe that's the easiest way to jump start it.

9            Shall we -- Ms. Nickerson, are we on the

10   record any longer?

11           THE REPORTER:  Yes.

12           MR. ELLIOTT:  Why don't we go off the

13   record.  Thank you.

14           (Discussion held off the record.)

15           THE WITNESS:  Let's go back on.

16           Okay.  I have Exhibit 9.

17   BY MR. ELLIOTT:

18       Q    Good.  So what I'm going to do,

19   Mr. Shaikh -- and I realize that these questions

20   about these documents from the Los Angeles County

21   are a little bit antiquated.  This isn't a memory

22   game.  I'm just going to ask the best of your

23   recollection as we go through this process.  Okay?

24       A    All right.

25       Q    The very first page, sir, of Exhibit 9 is a

                                        Page 132

1   November 18, 1980 letter from the --

2       A    Yes.

3       Q    -- County Sanitation Districts of Los

4   Angeles County to shut our chemical, and it's

5   addressed attention to -- I believe it's a

6   misspelling -- but Yousi Shaikh, I believe probably

7   your brother that it was addressed to.

8       A    Yes, yes.

9       Q    Do you have any recollection, sir, of

10  seeing this document or discussing it with

11  Mr. Shaikh?

12      A    I did not see the document at that time,

13  but I believe that I looked at it later on.  And

14  that's when -- I think it's asking us to -- that we

15  need a permit -- let me -- let me just go through

16  the document once again, please, okay.

17      Q    Thank you.

18      A    Okay.  So I believe I looked at the

19  document later and then we applied for the permit

20  and now subsequently we got the permit and you know.

21      Q    Perfect.  Actually, sir, if you scroll down

22  to the -- it's going to be the fifth page, I believe

23  you will see the actual permit application that was

24  completed by Shah Chemical Corporation.

25      A    Okay.  Yes.

                                        Page 133

1      Q    Okay.  So, sir, the document we're looking

2    at now the fifth page of Exhibit 9 is entitled

3    "Permit for Industrial Wastewater Discharge

4    Sanitation Districts of Los Angeles County."

5      A    Yes.

6      Q    You'll see in the lower left corner below

7    the December 8, 1980 date, a signature for the

8    applicant.

9          Is that your signature?

10     A    Yes, it is.

11     Q    Okay.  And you'll see that just above the

12   date of December 8, 1980, it states that the person

13   responsible for industrial wastewater discharge as

14   part of this permit application is yourself, Hussain

15   M.  Shaikh, correct?

16     A    Right.

17     Q    So this is the permit application that you

18   recall completing after either -- after you reviewed

19   the correspondence that we spoke about just a moment

20   ago, correct?

21     A    Yes.

22     Q    Thank you.  So what I'd like you to do,

23   sir, is if you could then scroll down to what would

24   be page 9 -- excuse me -- yes, page 9 of the

25   document.

Veritext Legal Solutions
866 299-5127

1     A    Okay.  So what is it, page 9 is -- what
2   does it start with?
3     Q    It's going to -- the top of it is a county
4   of Los Angeles form.  It will be headed the
5   "Industrial Waste Survey."
6     A    Right, I got it.
7     Q    Okay.
8     A    Plan check review, that's the one you're
9   talking about?
10    Q    Correct -- actually it's just entitled
11  "Industrial Waste Survey," sir.
12    A    Okay.  Let me go back.
13         MR. TRACY:  I think it might be the next
14  page after the plan check.
15         THE WITNESS:  Okay.  Let me look, too,
16  okay.
17         Okay.  Industrial waste survey, yes, I got
18  it.
19  BY MR. ELLIOTT:
20    Q    Correct.  So now page 9 of Exhibit 9, this
21  is the survey that immediately preceded, if you go
22  to the next page, you'll see the map that we
23  previously discussed.  Okay?
24    A    Right.
25    Q    And then immediately on the following page

Page 135

1    after that, page 11, you'll see an inspector's

2    report, if you could turn to that document.

3        A    Okay.  I'm on there.  Okay.

4        Q    And in the inspector's report, which is

5    dated June 16, 1981, which is the same date as the

6    map which we discussed previously, Mr. Tallman wrote

7    to Mr. Hartley, and he provides a report, "A survey

8    was made today of the above property in the presence

9    of Mr. Hussain M. Shaikh."

10       A    Yes.

11       Q    "The mixing tanks were washed out once a

12   week and discharged through a hose to a floor sink.

13   Approximately 500 gallons at a time are used in the

14   cleanup.  He was informed that this was a violation

15   and needed to be corrected with the proper

16   pretreatment facilities."

17            New paragraph, "On July 15, 1981, an order

18   to comply was issued to him.  He agreed to correct

19   it."

20            Sir, do you have any recollection of the

21   site survey that Mr. Tallman is referring to in this

22   communicate?

23       A    I don't recall that, but I'm sure it was

24   done by me, I mean, because if it says that I was

25   present, then I would be present.  I don't recall

Page 136

1    specific things at that time.  It was a long time

2    ago.

3        Q    No, I understand that, sir.  I appreciate

4    that.

5            Do you have any -- any reason, as you sit

6    here today, based on your recollection of the

7    activities of the facility in 1981, to conclude that

8    Mr. Tallman's summary is inaccurate?

9        A    No, it seems to be right.

10       Q    Okay.  If you could turn to the next page,

11   sir, which will be page 12, let me know when you're

12   there.

13       A    Okay.

14       Q    So this is a document entitled "Notice of

15   Violation and Order to Comply," and there's a

16   receipt date and signature at the top of the

17   document.

18           Is that your signature, the received by

19   location, Mr. Shaikh?

20       A    Yes.

21       Q    So this is dated July 15, 1981.  Do you

22   have any recollection of receiving this notice of

23   violation to Shah Chemical Corporation in --

24       A    I don't remember it.  However, it is my

25   signature, so obviously I did, yeah.

Page 137

1      Q    Okay.  Thank you.  So if I could please --

2   so, sir, is it your understanding that as of 1981,

3   you as the responsible person for Shah Chemical

4   Corporation have been instructed to install a

5   pretreatment facility, fancy name for a clarifier,

6   at the 132nd Street property?

7      A    No, I mean pretreatment, I don't believe

8   that -- okay.  I think it's just a clarification how

9   it's connected to the clarifier, and I think it was

10  done through the contractor.  So I'm sure it was

11  done according to the way they had described it.

12     Q    Okay.  Thank you.  Sir, if I could have

13  you -- get the right page for you -- if I could have

14  you scroll down to page 23, please.

15     A    Okay.  So tell me what does it start with

16  because I'm not getting the pages that's why I'm

17  asking 14, 15, I got it.

18          MS. OUSLEY:  Got it?

19          THE WITNESS:  I got it.

20  BY MR. ELLIOTT:

21     Q    It's going to begin the "County of Los

22  Angeles, Department of County Engineer" is the

23  center top.

24     A    Right, I got it.  February, March 22nd,

25  right.

Page 138

1        Q    No, it's August 12, 1983, sir.

2             MS. OUSLEY:  Do you want help?

3             THE WITNESS:  Yeah, August 16, 1981, no.

4    BY MR. ELLIOTT:

5        Q    August 12, 1983.  It's page 23 of the PDF.

6        A    Okay.  Amy, you need to come up here and

7    help me a little bit.  Sorry.

8             MS. OUSLEY:  It's okay.

9             THE WITNESS:  Do I need to go to 22?

10            MS. OUSLEY:  Page 23.

11            MR. ELLIOTT:  23.

12            THE WITNESS:  23, correct.  Okay.  I'm on

13   23 now.

14            MS. OUSLEY:  County of Los Angeles,

15   Department of County Engineer Facilities?

16            THE WITNESS:  Yeah.

17            MS. OUSLEY:  September 28, 1983?

18            MR. ELLIOTT:  No, August 12, 1983.

19            MS. OUSLEY:  Okay.  Well, that's your page

20   1983.  January.

21            MR. TRACY:  It's back one page from that I

22   think from where you just were.

23            MS. OUSLEY:  August 12, 1983?

24            MR. ELLIOTT:  Correct.

25            MS. OUSLEY:  Okay.  It's handwritten?

Page 139

1            MR. ELLIOTT:  Yes, handwritten.

2            THE WITNESS:  Yeah, that's the one, okay.

3    BY MR. ELLIOTT:

4        Q    Okay.  So, Mr.  Shaikh, this is another

5    report from Mr. Tallman to Mr. Hartley at the County

6    of Los Angeles dated August 12, 1983.

7            In the report, Mr. Tallman states,

8    "Observation of the above plant with Mr. Yousuf

9    Shaikh, office manager, revealed a large yellow hose

10   (1 1/2 inch diameter) connected from the two mixing

11   tanks (280 and 1700 gallons to the floor sink).  The

12   hose is connected to a pump which connected to the

13   underside of the tanks."

14       A    Okay.  First of all -- first of all, that's

15   his assumption that office manager and all that.

16   Secondly, that it says no discharge was observed.

17           He said that they were -- they were washed

18   out.  The tank, sometimes the operation appeared to

19   be same as previous survey showed.  Shah Chemical

20   Corporation was no longer -- no longer exist.

21           The new company is named Pacifica Chemical

22   and the new owner was not present.  Office manager

23   was not familiar with the presence or no further

24   information.  It's his assumption.  My brother

25   happened to be there.

Page 140

```
 1            Okay.  It's his assumption that he was an

 2    officer manager.  So, you know, if somebody comes up

 3    to your house and you're going to answer, you know,

 4    I don't know.  So anyway I don't know what this is

 5    all about.

 6       Q    Mr. Shaikh, you jumped far ahead.  I was

 7    actually going to ask you, if this was a

 8    typographical error and if you actually participated

 9    in this inspection, but your testimony is that your

10    brother was the individual that was there with the

11    inspector, correct?

12       A    Yes, that's what it seems because he

13    happens to be there probably, but he was not an

14    employee of Pacifica.  He was not a part of Pacifica

15    so --

16       Q    But, sir, the inspector Mr. Tallman

17    commented to Mr. Hartley at L.A. County that the

18    operations appeared to be the same as the previous

19    survey.  His prior survey was in 1981.

20            So it is correct, sir, that the

21    pretreatment system as of August 12, 1983 had not

22    yet been installed?  In other words, the clarifier

23    system had not yet been installed in 1983, correct?

24       A    I don't know.

25       Q    Okay.  Thank you.  If I could please, sir,
```

Page 141

1    have you turn to page 30.

2         A    Okay.  We're on 22, right?

3         Q    You are on 23.

4         A    23, 24, 25, 26, 27, right.

5         Q    Yes.  You should see again a gray scale

6    document that states "Existing Industry Permit for

7    Industrial Wastewater Discharge."

8              Do you see that?

9         A    Right, I do that, yeah.

10        Q    So, sir, you'll note that this is an

11   application made by Pacifica Chemical, Incorporated.

12   It's dated June 20, 1985.

13             Do you see that?

14        A    Yes.

15        Q    Okay.  If you scroll down the page, you'll

16   see a signature for the applicant under the date of

17   June 20th, 1985?

18        A    Right, that's mine.

19        Q    That's your signature?

20        A    Right.

21        Q    Okay.  So this then, sir, do you recognize

22   this document or have any recollection of it?

23        A    I don't recognize it, but it's my

24   signature.  So obviously, yeah, yeah.

25        Q    Thank you.  Sir, I'm going to do this -- I

                                            Page 142

```
1    hate to do this, to get things hung up, but I'm
2    going to introduce another exhibit.  I apologize.
3    Hopefully we won't get hung up again.
4        A    Okay.
5            MS. OUSLEY:  So we're going to get out of
6    this one?
7            MR. ELLIOTT:  I'm going to go ahead and
8    open another exhibit.  Let me make sure I've got the
9    right one.
10           THE WITNESS:  Okay.  Then it will be right
11   there.  I'll just hold here for a moment.
12           MR. ELLIOTT:  Now my circle is going.
13           MS. OUSLEY:  We just had something pop up.
14           MR. ELLIOTT:  You should have what I'm
15   introducing as Exhibit 12.  It is entitled
16   "Application for Plumbing Permit."  Unfortunately
17   it's at an angle.  We can rotate it on our screen,
18   but I'm not certain that you can.  So I apologize.
19           MS. OUSLEY:  You're just going to have to
20   turn the iPad.
21           THE WITNESS:  Okay.  Let me just turn the
22   iPad.  It's easier.  Okay.
23           (The document referred to was marked by the
24   Reporter as Plaintiffs' Exhibit 12 for
25   identification and is attached hereto.)
```

Page 143

BY MR. ELLIOTT:

Q So Exhibit 12, sir, is entitled "Application for Plumbing Permit." If you look in the upper left-hand corner, it provides a date of February 10, 1986.

A One second.

Q Okay.

MS. OUSLEY: Do you need help?

THE WITNESS: You know what, let me see because it's not rotating, so let's see, 2-28-86, is that what you're showing?

MR. ELLIOTT: That's correct. That's the certified submittal date in the upper left-hand corner.

MR. TRACY: Mark, there's a Bates number on that one if you want to use that.

THE WITNESS: All right.

MR. ELLIOTT: Okay. For purposes of identifying the exhibit, for the record, Exhibit 12 is a two-page document, first page has a Bates stamp number LACOUNTYDPW, a bunch of zeroes, 11.

Q Sir, I apologize. It was on an angle.

A That's okay. Yeah.

Q This is an application by Taisho Plumbing, T-a-i-s-h-o, Plumbing in the left seeking permission

of the Los Angeles County Department of Building and Safety to install a clarifier with a sampler box and a -- gosh, I can't read the second item.

A I think it's a sampler box, yeah.

Q So, sir, does this refresh your recollection as to the date that the company solicited outside technical support to install the --

A I'm pretty sure that it's right, you know.

Q Okay. Do you have any recollection, though, of when the clarifier was installed?

A No, I don't, but we have it -- the documents are showing that it's being installed or it was installed at that time. So I'm sure it's correct.

Q Okay. Thank you. Can I have you go back to Exhibit 9.

A Amy, come back and help me, please. Sorry.

MS. OUSLEY: So you're going to go like this and then you're going to go back to -- no, no, I think this is 9.

THE WITNESS: This is 9, okay.

MS. OUSLEY: Nope, that's Exhibit 10. That's Exhibit 9. Hopefully, it loads up. Give it a minute.

```
 1              THE WITNESS:  We've got circle going so --
 2              MR. ELLIOTT:  We're almost done with this
 3    exhibit.
 4              THE WITNESS:  I know we -- okay.  I got it.
 5    All right.
 6    BY MR. ELLIOTT:
 7        Q    So if you could scroll almost to the end.
 8    It's 50 pages.  I'd like you to go to page 47 of
 9    Exhibit 9.
10        A    I'm going to go all the way to the end and
11    pull up three pages.
12        Q    Yep.
13        A    So that's two.  So I got it.  Is that the
14    one industrial waste survey?
15        Q    Correct.
16        A    Okay.
17        Q    So, sir, this is not a document that you've
18    likely seen before.  It's another one of the
19    industrial waste surveys that was conducted.  In the
20    bottom right-hand corner, you'll see the date of
21    November 9, 1987.
22              Do you see that?
23        A    I'm trying to find it, yes.
24        Q    Okay.  If you notice --
25        A    1987?
```

Page 146

1     Q     Correct.  You'll notice, as you scroll up

2  just a little bit, there's in very dark letter, it

3  says 1500-gallon I2 3COMP.

4           Do you see that?

5     A     Yes.

6     Q     I'll represent to you, sir, that that

7  refers to a 1500-gallon industrial two-stage,

8  three-compartment --

9     A     Clarifier.

10    Q     -- clarifier.  Thank you.

11          So based on looking at this document, sir,

12 is it your understanding that the clarifier was in

13 place certainly prior to November 9, 1987?

14    A     Yes, based on this document, yes.

15    Q     Okay.  Now, there's remarks and

16 recommendations down at the bottom, sir.  You'll see

17 it says, "No pH system.  Use batch neutralization."

18          So that's related to --

19    A     Inspected as per approved plan, right?

20    Q     Correct.  So instructed as per approved

21 plans applies to the clarifier itself, the clarifier

22 indicates it had no pH system --

23    A     Okay.  See the way -- the way pH system

24 works, if you have a continuous operation, you need

25 a pH system which neutralizes.

Page 147

```
 1              Since this was not a continuous operation,
 2    it was a batch to batch.  So you only have a --
 3    hello -- you only have a batch-to-batch pH system
 4    and neutralization.  So it's not a continuous
 5    operation where the water is always going so --
 6         Q    Okay.  I realize that, sir.  My question
 7    was:  I wanted to confirm that after the
 8    installation in the clarifier, Pacifica Chemical did
 9    use a batch neutralization process when there was
10    wastewater discharge to the clarifier, correct?
11         A    Yes.
12         Q    And who was responsible for performing the
13    neutralization activities?
14         A    The same two guys, Tomas Macedonio and Juan
15    Montes.
16         Q    Okay.  Who instructed them as to the
17    process of utilizing batch neutralization to
18    pretreat the chemicals --
19         A    I think sanitation department showed them
20    how to do it and they did that from there on.
21         Q    Thank you.  If you scroll to the next page,
22    sir, page 48 of Exhibit 9, you'll see a hand
23    drawing.
24         A    Yes.
25         Q    Okay.  So this is a little bit rougher than
```

Page 148

1    the others.

2         Have you seen this drawing before?

3    A    No, I don't, but it's not my handwriting.

4    I know that.

5    Q    I was going to ask you next, sir.  You'll

6    see a couple of trench drains are drawn into the

7    drawing of the warehouse?

8    A    Yeah, that's -- that's the drains we put

9    surrounding the building, you know, inside the

10   building, so like a catch basin or whatever you call

11   them.

12   Q    Okay.  The schematic of the drains isn't

13   quite as detailed as the schematic that was prepared

14   by Murex and where they were estimating the

15   locations of the drains?

16   A    No, no, this is not.

17   Q    So this is not to scale, it's not entirely

18   accurate, correct?

19   A    No, no.

20   Q    Thank you very much.  So, sir, if you

21   scroll to the next page, which is going to be page

22   49, you'll notice that -- to make the record, that

23   the notice of compliance states, "The corrections

24   made following the issuance of the Notice of

25   Violation and Order to Comply issued on July 16,

Page 149

1    1981," have essentially now been satisfied.

2           Did the county provide you a copy of this

3    document to your recollection?

4       A    No, I don't see it, no.

5       Q    If you could scroll to the last page, sir,

6    it's a notice dated August 10, 1990 addressed to

7    Mr. Maq Hussain Shaikh.

8       A    That's myself, yes.

9       Q    Have you seen this document before, sir?

10      A    No, I have not, but --

11      Q    It states, sir, that the violation was

12   excessive solids in the pretreatment facilities, see

13   below.  It says, "The excessive solids in the

14   interceptor must be vacuum pumped and hauled to a

15   legal plant of disposal.  After the trap is cleaned,

16   please call and leave a message for reinspection."

17          Do you have any recollection, sir, of L.A.

18   County directing the vacuum pumping of the

19   interceptor in --

20      A    No, but if it's -- it's all up to the

21   inspector.  Some inspector they would like to have

22   it cleaned that way.  Some people do it the normal

23   way.  I don't know.

24      Q    When you say "the normal" --

25      A    I have not seen that paper, no.

Page 150

1    Q    So during the period of time that Pacifica
2    Chemical operated the clarifier at the 132nd Street
3    property, do you recall, sir, the clarifier or the
4    interceptor being cleaned out, being pumped out to
5    remove solids?
6    A    I believe it was -- once it was done
7    because we comply with every -- every letter or
8    every notice from the county or from the city.  We
9    comply with them.  So if it was given to them and
10   the inspector wanted to get it done that way, then
11   we had done it.
12   Q    And in those instances where the inspector
13   would have directed Pacifica Chemical to excavate
14   solids from the clarifier, sir, do you know what
15   happened to the solids that were removed or they
16   were disposed of?
17   A    I don't know, no, but they get hauled out
18   by a licensed company which -- which disposes them,
19   and I have no record who they were, but they were --
20   because you have to provide the report to them, so
21   we did that.
22   Q    Do you have any recollection, sir, of being
23   provided a copy of a hazardous waste manifest by the
24   disposal company after it pumped or otherwise
25   excavated the solids from the clarifier?

Page 151

1      A      No.

2      Q      Thank you.  Okay.  You can close that

3    exhibit out, sir.

4      A      All right.  So let me -- let me -- so what

5    do I do -- let me -- let me try myself, see if I can

6    do it.  Okay.  So I'm out of this exhibit now.

7             MR. ELLIOTT:  Okay.  I'm going to introduce

8    a new exhibit, Exhibit 13, sir.

9             THE WITNESS:  Okay.

10            (The document referred to was marked by the

11   Reporter as Plaintiffs' Exhibit 13 for

12   identification and is attached hereto.)

13            THE WITNESS:  Still not loading.  As soon

14   as they get loaded, I will call you to help me.

15   BY MR. ELLIOTT:

16     Q      Let me know when you have it.

17     A      No, I don't have it yet.

18            MR. TRACY:  It should be there soon.  It's

19   up on mine.

20            THE WITNESS:  It's up on yours?

21            MR. TRACY:  Yes, so just be patient with

22   it.

23            THE WITNESS:  Okay.  It's up now, yes.

24   BY MR. ELLIOTT:

25     Q      So what we're marking as Exhibit 13 is an

                                          Page 152

1  excerpt from the Anderson Environmental phase one

2  from 2015.  This copy came from your ex's files that

3  they produced in response to the subpoena.

4        It's a multipage document, sir.  I would

5  appreciate it if you could scroll down to the third

6  page.

7     A    Okay.  All right.  I have it.

8     Q    Okay.  So, sir, this is an inspection

9  record again from Los Angeles County, this time the

10 Department of Public Works, relating to an

11 inspection of 132 West 132nd Street in 2000.  It's

12 going to be in September of 2000.  It states the

13 site is vacant.  Pacifica Chemical has moved out.

14 Will send notice to property owner.

15        Okay.  Did you receive any notice following

16 the move by Pacifica Chemical?

17    A    I had no -- I had never seen this document,

18 but you know.

19    Q    Okay.  If we could then scroll down one

20 page, sir.

21    A    Okay.

22    Q    There's a notice.  Tell me when you're

23 there.

24    A    I'm -- yeah, I'm here.  This is -- this is

25 7187.  Is that the one you're talking about?

Page 153

1    Q    That's correct.  It's a notice dated

2  September 15, 2000 to M. Shaikh.

3         Do you have any recollection of receiving

4  this document, sir?

5    A    No, I have not.  I have not seen it.

6    Q    If I could then, sir, have you scroll down

7  to page 8 of the PDF, the PDF is nine pages long,

8  sir.  You can go to the bottom and then go back one

9  page.

10   A    I think that would be okay.  So I get then

11 nine pages, so I have it.

12   Q    You have that in front of you?

13   A    Yes.

14   Q    So, sir, this document -- let me -- if you

15 scroll down towards the bottom of page 8, you'll see

16 a signature in the left-hand corner, if you could

17 confirm that's your signature.

18   A    That is my signature.

19   Q    And the date to the right appears to be

20 July 14, 2004?

21   A    Yes.

22   Q    If you scroll back up, you'll see this is

23 an application for closure?

24   A    Okay.  Yes.

25   Q    So this is the application for closure of

Page 154

1    the clarifier at 132 132nd Street, right?

2        A    Yes.

3        Q    You submitted this application for

4    permanent closure in place, correct?

5        A    Right.

6        Q    Sir, if you scroll down to the second page,

7    you'll see it's headed "Authorization for Closure

8    Industrial Waste Control Program Conditions and

9    Limitations"?

10       A    Right.

11       Q    Okay.  So the conditions and limitations of

12   disclosure acquired essentially cementing in the

13   clarifier, the need to take environmental evaluation

14   to determine if the clarifier leaked?

15       A    Okay.

16       Q    Did you apply for and undertake any closure

17   of the clarifier to comply with those conditions?

18       A    We hired a contractor who filled out this

19   and who made the closure and he dealt with the

20   County of Los Angeles.

21       Q    Sure.  At page 9 of 9, there's another

22   signature at the bottom.  Can you just confirm

23   that's your signature?

24       A    That is my signature, yes.

25       Q    One of the items when you close a clarifier

Page 155

```
 1    sort of back in this time frame is there was
 2    supposed to be a postclosure report.
 3           Do you recall your contractor ever
 4    providing a postclosure report to submit to the
 5    county?
 6       A    Not --
 7           MR. TRACY:  Objection -- hold on, Maq --
 8    objection; assumes facts and counsel is testifying.
 9    BY MR. ELLIOTT:
10       Q    So if you look on page 9, sir, in the
11    corner under F "Required Reports"?
12       A    Okay.
13       Q    It says, "Within 30 days of the date of
14    closure, the applicant shall furnish EPD a closure
15    report describing all work done, results of any
16    required sampling, disposition of any contaminated
17    soils or materials found, and evidence of compliance
18    with Conditions B1, B2, B3, C4, D2, E1, and E2."
19           Do you see that?
20       A    I see that.
21       Q    Okay.  Did your contractor that cemented in
22    the clarifier in approximately 2004 provide you that
23    report to submit to the county?
24       A    No, I'm sure he submitted directly to the
25    county.  I have no -- not seen it.
```

Page 156

```
 1        Q     Thank you.
 2        A     He has -- he had done everything with the
 3   county and directly with the county.
 4        Q     Do you recall the name of the contractor
 5   that you utilized --
 6        A     Yes.
 7        Q     -- to do that work in 2004?
 8        A     His name is Skee.  I'm trying to think of
 9   his last name.  I will have to ask somebody and
10   unfortunately about -- about 10 years, 12 years ago,
11   12 years ago, he died also.  His name is Skee.  It's
12   a Polish name.  So I don't remember how you spell it
13   and all that, but I can provide it if I locate it.
14        Q     Okay.  If you recall his name, that would
15   be great.  We can leave a blank in the transcript.
16   You can write it in.
17        A     Yes, but his name is Skee, so yeah,
18   S-k-e-e.
19        Q     But you don't recall his last name?
20        A     No, I don't right now, but I'll find out.
21        Q     We'll leave a blank, sir, and you can write
22   it in, but I'm not allowed to give you homework
23   assignments when I take a deposition.  If you
24   recall, great.
25              Otherwise, your counsel is going to tell
```

Page 157

1    you you're under no obligation to do so.  You just

2    have to testify to your best recollection today.

3         A    That is here.  Thank you.

4              (INFORMATION REQUESTED:_____

5    _____.)

6    BY MR. ELLIOTT:

7         Q    Sir, I want to ask a couple questions,

8    going back to the company's acquisition and resale

9    of perchloroethylene, PCE.

10        A    Right.

11        Q    During the period of time that the company

12   had that as one of its products, do you recall who

13   the provider or supplier of PCE was to the company?

14        A    Van Waters & Rogers, Van Waters & Rogers,

15   V-a-n, Waters & Rogers, three different words.

16        Q    And I think -- I'm trying to remember.  I

17   think they've been acquired now.

18             Do you remember the location, sir, from Van

19   Waters that you acquired chemicals?

20        A    I don't remember the address, but they were

21   on Bandini Street in Los Angeles.

22        Q    Okay.  Okay.  I'm assuming it's a pretty

23   large entity or distributorship.

24        A    One of the nation's largest ones so I don't

25   know.

                                        Page 158

1          Q    So Pacifica Chemical acquired other raw

2    materials and chemicals from Van Waters?

3          A    Yes.

4          Q    But your primary supply location was the

5    old facility on Bandini Street, correct?

6          A    On what?

7          Q    Bandini Street.

8          A    Yes, yes.

9          Q    And when the -- when the PCE was delivered,

10   I'm assuming it came in essentially a small tanker

11   truck, is that correct, sir?

12         A    Yes.

13         Q    Okay.  And they would run a hose through an

14   open door and pump it into a tank?

15         A    They would run a hose and connect it to the

16   tank.

17         Q    Do you recall where the connection was on

18   the above-ground storage tank?

19         A    There was a hole in the wall and they ran

20   it through -- there was a connection there.

21         Q    So there was actually a connection to --

22   the connection was on the top of the tank, the

23   piping ran to the west wall of the building,

24   correct?

25         A    Yes.

Page 159

1      Q      And there was a connection on the exterior

2    of the building?

3      A      Yes.

4      Q      And who is responsible for oversight of

5    the -- you know, the pumping or refilling of the

6    tank by the Van Waters driver?

7      A      Tomas Macedonio.

8      Q      Okay.  Thank you.  Turning to the 55-gallon

9    drums that were utilized for the resale of the PCE,

10   when the drum was provided -- the drum of fresh PCE

11   was provided to Pacifica -- excuse me -- Pacifica

12   Chemical's customers, did the customer later return

13   the empty drum to Pacifica Chemical?

14     A      No, no.

15     Q      And the drums that were utilized to fill

16   with PCE, do you have a recollection of where

17   Pacifica Chemical obtained those drums?

18     A      We bought them from the drum company.  At

19   that time, there were a couple of drum companies in

20   Los Angeles who used to sell that, and I'm sure they

21   still have drum companies.

22     Q      So you used a drum refurbisher to provide

23   you effectively newer or refurbished drums, correct?

24     A      Correct.

25     Q      Was any of the PCE -- excuse me -- the PCE

Page 160

```
 1    used in any of the products that were blended or

 2    mixed by Pacifica Chemical?

 3        A     No.

 4             MR. ELLIOTT:  I'm going to introduce a new

 5    exhibit, sir.  Give me just a moment.

 6             MR. TRACY:  Exhibit 14, correct?

 7             MR. ELLIOTT:  Let us know when you can see

 8    that, Mr. Shaikh.

 9             THE WITNESS:  Okay.  Let me get out of this

10    first.  Okay.  So -- okay.  So it's a new exhibit

11    you just sent?

12             MR. ELLIOTT:  Correct.  It's Exhibit 14.

13             THE WITNESS:  It doesn't say any numbers

14    here, so I need to --

15             MS. OUSLEY:  Do you want me to help you?

16             THE WITNESS:  Let me see if I can get it

17    first, Amy.  No, I did not get it, okay.

18             MS. OUSLEY:  You have to get out and then

19    hit --

20             THE WITNESS:  Oh, you have to hit that.

21             MS. OUSLEY:  And then it's right there.

22             Exhibit 13?

23             THE WITNESS:  No, 14, he said.

24             MR. ELLIOTT:  It will be marked as Exhibit

25    14, but unfortunately because I hit something twice,
```

Page 161

1    it also says Exhibit 13 on it, but the exhibit is
2    Exhibit 14.
3          MS. OUSLEY:  It says Exhibit 14, 13
4    Sanitation Districts?
5          MR. ELLIOTT:  Correct.
6          (The document referred to was marked by the
7    Reporter as Plaintiffs' Exhibit 14 for
8    identification and is attached hereto.)
9    BY MR. ELLIOTT:
10     Q    So for the record, Exhibit 14 is a
11   multipage document selected from the documents
12   produced by L.A. County Sanitation Districts, begins
13   with Bates number 000160.
14         Mr. Shaikh, these are just a sampling of
15   documents from the Sanitation Districts.  Were you
16   aware that, as one of the permit conditions for the
17   industrial discharge permit, that Pacifica Chemical
18   had the obligation to sample its wastewater on a
19   biannual basis and provide the environmental sample
20   data to the -- to the Sanitation Districts in what's
21   referred to as industrial wastewater self-monitoring
22   report?
23         MR. TRACY:  Objection; compound.
24         THE WITNESS:  No.
25   BY MR. ELLIOTT:

Page 162

1      Q    What we're looking at, sir, you may want to

2   zoom in a little bit because these documents are

3   getting to be a little bit old, is an industrial

4   wastewater self-monitoring report.  If you scroll to

5   the bottom of the page, you'll see opposite the date

6   of October 9, 1992, a signature.

7           Can you look at that and confirm whether

8   that's your signature?

9      A    That is my signature, yeah.

10     Q    And you'll note, sir, that the report

11  includes I'll represent to you, water testing data.

12          Were you aware, sir, at the time you signed

13  this document what was being reported to the county?

14     A    Nope.

15     Q    So if I ask you specific questions about

16  the test results that appear on this page, you

17  wouldn't have any recollection?

18     A    No, I don't.

19     Q    So that report was 1992.  Let's scroll

20  down, if we could, sir, to page 4 of 24.

21     A    Okay.  One second, 1, 2, 3, and 4, okay.

22     Q    Okay.  So this fourth page of Exhibit 14

23  is, again, an industrial wastewater self-monitoring

24  report submitted to the L.A. County Department of

25  Sanitation.

                                        Page 163

```
 1            If you look at the signature at the bottom,
 2    you'll see that it was -- appears to have been
 3    signed by Mr. Doshi on October 25, 1993?
 4        A    Yes, it is signed by him.
 5        Q    Okay.  And do you recognize this signature,
 6    sir?
 7        A    Yes.
 8        Q    Okay.  If you look at the sampling data,
 9    sir, from the ground sample collected at the
10    clarifier sampling point, you'll notice that the
11    reported concentrations of tetrachloroethylene, PCE,
12    is 330 parts per billion.
13        A    Yes.  Let me clarify -- let me say
14    something.  All these test results, it seems like
15    they put it down the same chemicals, and you have no
16    way of knowing what they're writing except they just
17    hand you down and say, hey, that's what it is.  You
18    know, you sign it.
19            So here's a -- Mr. Doshi is not a technical
20    man, neither he is -- in this case, neither am I,
21    you know, so put it down and just sign it here.
22    It's an acknowledgement.  It's like we're buying a
23    car.  You just sign at the bottom line.
24        Q    But, sir, I mean under the permit
25    conditions, the company was required to submit these
```

Page 164

```
 1    reports under your industrial discharge --
 2    wastewater discharge permit, and the reason the form
 3    was prepopulated is these were all of the chemicals
 4    that had to be monitored for under your permit.
 5            So that's -- counsel would be proper to
 6    object and say that's testimony on my part, but my
 7    question is about the sample results that appear on
 8    the page.
 9            So I have in front of me a document that
10    shows wastewater in July of 1993 having detections
11    of 330 parts per billion of PCE.
12            And my question, sir, is:  Does that
13    refresh your recollection as to when the company
14    discontinued the use and sale -- excuse me -- the
15    sale of PCE from the above-ground storage tank?
16       A    Long before that.  I have no clue about
17    this, okay.
18       Q    Okay.
19       A    Long before that.
20       Q    Thank you.
21       A    I don't have any specific dates, okay.
22       Q    Okay.  Thank you.  If I could have you
23    scroll down, sir, to page 6 of 24.
24       A    What does it start with?
25       Q    It's going to actually be L.A. sand files,
```

Page 165

1  but these ones are colored.  It's blue and white and

2  yellow.

3      A    Okay.  There's blue and white and yellow

4  ones.  Yes, it says, "Returned."  Is that the one?

5      Q    Yep, returned.

6      A    Okay.

7      Q    So, again, sir, if you look at the bottom

8  of that form, the industrial wastewater

9  self-monitoring report, you'll see a signature for

10  Mukesh Doshi on January 28, 1999 at the bottom.

11         Do you see that?

12      A    Same thing.  When I'm not there, somebody

13  is required to sign it.  Somebody hands him down and

14  you have to sign it.

15      Q    Okay.  Would you put --

16      A    He doesn't have any --

17         MR. TRACY:  Hold on, Maq.  Hold on, Maq.

18  There's no question pending.  Let Mr. Elliott ask

19  his questions.

20         THE WITNESS:  Okay.

21  BY MR. ELLIOTT:

22      Q    Would you either generally, Mr. Shaikh,

23  given your responsibilities at the -- at Pacifica

24  Chemical at this time, would you have typically been

25  the individual to sign this document?

Page 166

1     A     Yes.

2     Q     So, sir, my question, if you could scroll

3   down to the next page, if you wouldn't mind, it's a

4   report from Chem Pro Laboratory, Incorporated.

5     A     Okay.

6     Q     Tell me when you see that.

7     A     I see it.

8     Q     Okay.  So this was a lab report that was

9   sent to Pacifica Chemical by Chem Pro Laboratory.

10  The report was prepared on December 12th -- excuse

11  me -- December 2nd, 1998.

12          Sir, the results indicate the presence in

13  the sample from wastewater collected at the sample

14  box of 1,1,1-trichloroethane, that's TCA, and then

15  trichloroethylene at 359 and 643 parts per billion.

16    A     Okay.

17          MR. TRACY:  I'm going to object.  It

18  misstates the document.  I read it as both of them

19  saying trichloroethane.

20          MR. ELLIOTT:  Yeah, it's a typo.  1,1,1 is

21  trichloroethane.  The next one is trichloroethylene.

22  They report it on later documents.  So it is correct

23  that it says "ethane," but it's referring to

24  ethylene.

25          MR. TRACY:  And what units are you

Page 167

1   believing this is in?

2          MR. ELLIOTT:  If it's going to be in water,

3   it should be reported.  It's saying it's in

4   milligrams per liter, but it's probably more

5   accurately stated in parts per billion, Kirk,

6   because it wouldn't typically be reported at those

7   concentrations.

8          MR. TRACY:  I tend to agreed with you that

9   that's the general practice.  I guess I'm just going

10  to broadly object to anything on this document that

11  the results are inaccurate.  So I think it would be

12  ambiguous to ask Mr. Shaikh to agree to any specific

13  results here.

14  BY MR. ELLIOTT:

15      Q    No, I'm not going to ask -- Mr. Shaikh, I'm

16  not asking you to agree or disagree with the reports

17  of the contaminants that are identified in the

18  wastewater in 1998.  I'm interested in knowing

19  whether as of 1998, was Pacifica Chemical using

20  either TCA or TCE as part of its production

21  processes?

22      A    No, they were not.

23      Q    As you sit here today, you would have no

24  idea how circa 1998 TCA and TCE would be present --

25      A    Absolutely not.

Page 168

```
 1        Q    You wouldn't know how it would be present
 2   in the wastewater, correct?
 3        A    No, I would not.
 4        Q    Okay.  If you could please scroll down to
 5   page 12 of 24.
 6        A    What does this start with?
 7        Q    It's going to be another industrial
 8   wastewater self-monitoring report.
 9        A    Okay.  I got it.
10        Q    This one is dated July 15, 1999.
11             Do you see that?
12        A    July 15th -- July 15th, 1999, yes.
13        Q    There's a signature at the bottom of the
14   page.
15             Can you confirm that's yours?
16        A    My signature, yes.
17        Q    If you scroll to the next page, so this is
18   now roughly five months later, you'll see another
19   Chem Pro Laboratory report, again, addressed to
20   Mr. Doshi of Pacifica Chemical.
21             Tell me when you're there.
22        A    Okay.  Yes.
23        Q    If you look at the results of the testing
24   from the wastewater sample box, you'll see that
25   trichloroethylene and 1,1,1-trichloroethane, TCE and
```

Page 169

1    TCA, were again detected.

2         A    Again, don't know where -- what it is, how

3    it's in the report, why they're reporting, how is it

4    being done, don't have any idea.

5         Q    So as of May of 1999, you have no

6    recollection of any use of those chemicals at the

7    facility, correct?

8         A    Exactly, yes.

9         Q    Sir, if you could scroll down to page 17 of

10   24, again, it's an industrial wastewater

11   self-monitoring report?

12        A    How does it start?

13        Q    It's again blue and white, and the report

14   says it's due no later than January 15, 2000, the

15   form that was provided.

16        A    I don't see it, okay.  Can you tell me

17   which one again?

18        Q    It's going to be blue and white.  It's the

19   industrial wastewater self-monitoring report in the

20   middle --

21             MS. OUSLEY:  January 15, 2000?

22             THE WITNESS:  January 15, 2000?

23             MR. ELLIOTT:  Correct, correct.

24             THE WITNESS:  Okay.

25   BY MR. ELLIOTT:

                                        Page 170

1       Q    Okay.  Sir, if you scroll to the bottom of
2    the page, you'll see a signature from Mukesh Doshi
3    on January 24, 2000?
4       A    Right.
5       Q    Can you confirm that's Mr. Doshi's
6    signature?
7       A    Yes.
8       Q    So this sample -- the sample date was
9    October 27 to October 28, 1999 is what's represented
10   in the form, and then the sample data reported on
11   the first page represents that tetrachloroethylene,
12   PCE, was detected at 110.
13          Does that refresh your recollection as to
14   whether or not the company was continuing to use and
15   sell PCE?
16      A    No, company -- company was not using it,
17   don't have -- don't have any idea.
18      Q    Okay.  If I could have you go to the next
19   page, sir.
20      A    Yeah, okay.
21      Q    Okay.  This is again a Chem Pro Laboratory
22   report to Pacifica Chemical to Mukesh dated
23   November 19, 1999.
24      A    November 19th -- November 8, 1999?
25      Q    Well, the date of the report is November --

                                        Page 171

```
 1        A     November 19th, I got that.

 2        Q     So, again, it identifies PCE as well as TCA

 3   and in this instance, DCE in the wastewater.

 4              Do you have any knowledge of the company

 5   using these three chemicals in your processes as of

 6   October 1999?

 7        A     No, I don't.  No, I don't.

 8        Q     Thank you.  You can close that exhibit,

 9   sir.

10        A     All right.  So let's see.  How do you do

11   that?

12              MS. OUSLEY:  Can I help?

13              THE WITNESS:  Yes.  Can you do that for me,

14   please?  You've got to go all the way down.

15              All right.  Done.

16   BY MR. ELLIOTT:

17        Q     Sir, I have a couple more very large

18   documents that I was going to ask you questions

19   about, but I think I'll touch on it generally before

20   introducing exhibits that may hang up your computer

21   screen or your iPad.

22              Excuse me.  They relate to the

23   environmental activities undertaken by Pacifica

24   Chemical at the 132nd Street property.

25              Sir, are you personally involved in any
```

Page 172

1   supervisorial or directed capacity regarding the

2   environmental activities that have been undertaken

3   by Pacifica Chemical at the 132nd Street property

4   over the last couple years?

5        A    No -- oh, in the last couple of years?

6        Q    Yes, last couple years.

7        A    No, we -- last couple of years right now?

8        Q    Correct.

9        A    When we received a report that there was

10  something detected on 132nd, we acted right away and

11  we hired Murex who has been directing it and doing

12  their test and doing their reports and getting to

13  fix the problem.

14       Q    Sir, I want --

15       A    Yeah.

16       Q    Before I ask you additional questions, I'm

17  going to ask about interactions with Murex.

18  Please -- no doubt Mr. Tracy or Mr. Stone would

19  participate in meetings with you and Murex.  Please

20  refrain from providing any information that you

21  obtained through communications with your counsel or

22  the communications with your counsel in the presence

23  of the representatives from Murex.  Okay?

24            MR. TRACY:  Do you understand that Maq.  So

25  even if Brett or I was on the phone, you're not

Page 173

1    supposed to -- that's privileged material to not

2    disclose.

3            So whether you were just talking to your

4    attorneys or you were talking to the consultants

5    with the attorneys, I'm going to object to any

6    questions that seek information on that.

7            THE WITNESS:  Okay.

8    BY MR. ELLIOTT:

9        Q    So in your role as the president of

10   Pacifica Chemical, you worked directly to oversee

11   the work of Murex relating to the environmental

12   investigation or remediation at the 132nd Street

13   property?

14       A    I -- okay.  Like I said before, we hired

15   Murex, and they are the one who is conducting the

16   remediation and fixing the problem, and I don't have

17   that much knowledge other than they're doing it.

18       Q    Okay.  Thank you, sir.  So do you review

19   the draft reports prepared by Murex relating to

20   environmental investigations and other activities at

21   132nd Street property before they're submitted to

22   the lead agency, the Department of Toxic Substances

23   Control?

24       A    No, they -- they directly do it with the

25   county.

Page 174

1    Q    So you don't actually serve in your

2    capacity as the president of Pacifica Chemical to

3    oversee and comment and direct the work of Murex,

4    correct?

5    A    They are experts.  So I don't know too much

6    other than what they are doing is the right thing to

7    do, and they're working with the proper authorities.

8    Q    Okay.  So it's correct then, sir, that

9    Pacifica Chemical has designated Murex and the

10   principal engineer there is a gentleman by the name

11   of Jeremy Squire -- I've known him for 30 years -- a

12   contractor with authority to act with the Department

13   of Toxic Substances Control, correct?

14   A    Yes.

15   Q    And you yourself therefore defer to the

16   actions of Murex and to a certain extent, counsel,

17   but I don't want you to talk about that, on the

18   activities that are being undertaken at the 132nd

19   Street property, correct?

20   A    Murex is handling it.

21   Q    Do you, as you sit here today, sir, have an

22   awareness of the nature and extent of the

23   environmental evaluations performed by Murex on

24   Pacifica Chemical's behalf at the 132nd Street

25   property?

                                              Page 175

1      A      No.

2      Q      If Murex stated that PCE in soil and

3   groundwater at the property originated from the

4   activities at Pacifica Chemical, would you disagree

5   with Murex?

6      A      I have not seen anything.  So I can't

7   really make a comment on that.

8      Q      Are you familiar with the pilot studies

9   evaluating the use of vapor extraction to remove

10  soil vapor, if any, located at the 132nd Street

11  property?

12     A      I'm not familiar.  Only thing I'm familiar

13  is they are doing a pilot study and they are working

14  with the County of Los Angeles.

15     Q      Do you have any understanding, sir, as you

16  sit here today, as to whether the vapor extraction

17  system to extract any soil -- excuse me --

18  contaminated soil vapor, if any, is operating at the

19  132nd Street property at this time?

20          MR. TRACY:  Objection; calls for

21  speculation.

22          You can answer, Maq, if you know.

23          THE WITNESS:  I -- I don't have any idea.

24  They are working and I have not contacted them.

25  BY MR. ELLIOTT:

                                    Page 176

```
 1        Q    Okay.  You mentioned a pilot test a moment
 2   ago, sir.
 3        A    No, you mentioned a pilot and I replied
 4   that if it is a pilot, they must be doing it.  I
 5   have no idea.  I don't know what -- all I know is
 6   that they are expert and they are doing the thing
 7   which needs to be done.
 8        Q    Is there any other individual at Pacifica
 9   Chemical to whom you've assigned the responsibility
10   to oversee the work of Murex?
11        A    No.
12        Q    Good.  We skipped a bunch of fat exhibits,
13   sir.
14             MR. TRACY:  Mark, where are we at
15   time-wise?
16             MR. ELLIOTT:  Probably 30 minutes.  Do you
17   want to do a quick break?  We've been going, I
18   know -- please, Ms. Nickerson has been typing away.
19   We've been going for an hour and a half.  Do you
20   want to do a five-minute break and then we'll come
21   back and wrap up?
22             MR. TRACY:  Does that sound good, Maq?
23             THE WITNESS:  Yes.
24             MR. TRACY:  Okay.  Take five.
25                      (Recess taken.)
```

                                        Page 177

1           MR. ELLIOTT:  So I'm going to introduce as

2    an exhibit what will be marked as Exhibit 15.

3           THE WITNESS:  Let me see, Amy.  I need your

4    help, okay, because I have no idea.

5           MS. OUSLEY:  You just have to --

6           THE WITNESS:  It's not coming up.  Why?

7    Okay.  Let's see if this is the one.

8           MS. OUSLEY:  It's this one.

9           THE WITNESS:  That last one.

10           MS. OUSLEY:  Now Exhibit 15 is Ex. 19.

11           MR. ELLIOTT:  Correct.

12           THE WITNESS:  All right.  Thank you.

13           MS. OUSLEY:  Uh-huh.

14           (The document referred to was marked by the

15    Reporter as Plaintiffs' Exhibit 15 for

16    identification and is attached hereto.)

17    BY MR. ELLIOTT:

18       Q    So, Mr. Shaikh, what we've marked as

19    Exhibit 15 is entitled "Hussain M. Shaikh's

20    Counterclaim."  So this is the counterclaim filed by

21    yourself against my clients, TC Rich and the

22    Fleischers in the litigation that we're -- it's the

23    reason why we're taking your deposition today.

24           Have you seen this document before, sir?

25       A    Yes.

                                        Page 178

1      Q    So you were aware that as an individual you

2   filed counterclaims for contribution under CERCLA

3   Section 113(f) against my clients TC Rich and the

4   Fleischers, correct?

5      A    So I'm working with my attorneys to --

6           MR. TRACY:  Hold on, Maq.  He's asking if

7   you're aware or not.

8   BY MR. ELLIOTT:

9      Q    All I'm doing is asking if you're aware and

10   then I will have one question, sir.  Please don't

11   discuss your conversations with and your

12   interactions with your counsel.

13      A    All right.

14      Q    So it is correct, Mr. Shaikh, that you're

15   aware that you, as an individual, has filed a

16   counterclaim against TC Rich, the current owner of

17   132nd Street property, and Richard and Jacqueline

18   Fleischer, correct?

19      A    Yes.

20      Q    Just one question for you, sir.  As an

21   individual, have you yourself paid for any of the

22   services performed by Murex or any other

23   environmental contractor relating to the

24   environmental investigation and remediation at the

25   132nd Street property?

Page 179

1      A    Say it again now.  Have I --

2      Q    Have you, as an individual, paid for any of

3    the services of Murex or any other environmental

4    contractor relating to the environmental

5    investigation and remediation activities at the

6    132nd Street property?

7               MR. TRACY:  Objection; vague and ambiguous.

8               Sorry, Maq.  I think I spoke over you.  Go

9    ahead with your answer.

10              THE WITNESS:  No.

11              MR. ELLIOTT:  My screen just disappeared.

12   Guys, I'm almost done, and something just logged me

13   out.  Let me go back into it.  Sorry about that.

14              Okay.  Sir, I'm introducing our last

15   exhibit, Exhibit 16.

16              THE WITNESS:  Okay.

17              MS. OUSLEY:  Do you need some help?

18              THE WITNESS:  Yeah, let me --

19              MR. ELLIOTT:  Actually this is the wrong

20   exhibit.  I apologize.  Let me see if that answers

21   the question.

22              We'll come back to this one in just a

23   moment.  Let me ask you a prior one, if I could.

24              Okay.  This is the right one.  Sir, this is

25   just another exhibit.  We'll mark it as Exhibit 17.

                                              Page 180

```
 1    It's coming up and then I can come back to this
 2    exhibit in a moment.
 3            (The document referred to was marked by the
 4    Reporter as Plaintiffs' Exhibit 17 for
 5    identification and is attached hereto.)
 6    BY MR. ELLIOTT:
 7        Q    Let me know when you can see Exhibit 17,
 8    sir.
 9        A    Okay.
10            MS. OUSLEY:  Did you get it?
11            THE WITNESS:  Yeah, I got it.  I'm becoming
12    expert, okay.
13    BY MR. ELLIOTT:
14        Q    So your Exhibit 17 is again files obtained
15    from the L.A. County Department of Public Works.
16    I'm going to pause so that your counsel can put his
17    objection on the record.
18            These actually are files that relate to the
19    Pacifica Chemical activities at 935 East Artesia.  I
20    have just one question I was to ask you about, but I
21    want to be differential to Mr. Kirk in making an
22    objection.
23            MR. TRACY:  I'll state the same objection
24    that I stated this morning as to relevance, this
25    property being totally unrelated and not using any
```

Page 181

```
 1    PCE.  But go ahead with your questions.  I'll just
 2    state that objection applies to any questions you
 3    ask on these documents.
 4    BY MR. ELLIOTT:
 5         Q    Sir, if I could have you scroll down to
 6    page 23 of what we've marked as Exhibit 17.  It's
 7    going to begin "Permit for Industrial Wastewater
 8    Discharge," and it has a permit number, the 16768
 9    written in the upper right-hand corner.
10         A    Permit for industrial, 1676B or 68?
11         Q    68 would be their numbering system.
12         A    Fac ID 2082711.
13         Q    Yes, that's it, sir.
14         A    Okay.
15         Q    Okay.  Sir, so in Exhibit 17, page 23 of 25
16    per the exhibit is a permit application for an
17    existing sewer connection for Pacifica Chemical,
18    Incorporated, at the 935 East Artesia Boulevard,
19    Carson, California, that was prepared on 9-26-2007.
20              If you look at the bottom of the page, your
21    signature appears.  Can you please confirm that that
22    is your signature as the applicant?
23         A    Yes.
24         Q    If you look immediately above that, sir, at
25    item number 16, it states, "Person in company
```

Page 182

1    responsible for industrial wastewater discharge" and

2    same as that, the 132nd Street property when you

3    submitted the application, cases here that Hussain

4    Shaikh is identified as the person responsible for

5    industrial wastewater discharge at the 935 East

6    Artesia property as well, correct?

7         A    Yes.

8         Q    Okay.  Okay.  If we could go back to

9    Exhibit 16, if you wouldn't mind.

10        A    Go up?

11        Q    Go back to Exhibit 16.

12        A    Show me, please.

13             MS. OUSLEY:  Go back to the top, there's a

14   little -- it's a long document.

15             THE WITNESS:  Okay.

16             MS. OUSLEY:  And then 16 is the one above.

17             THE WITNESS:  Okay.

18             MS. OUSLEY:  You're in.

19             THE WITNESS:  All right.

20             (The document referred to was marked by the

21   Reporter as Plaintiffs' Exhibit 16 for

22   identification and is attached hereto.)

23   BY MR. ELLIOTT:

24        Q    What we marked previously as Exhibit 16, a

25   multipage document again from the California

Page 183

1   Sanitation Districts of Los Angeles County, it's a

2   four-page document entitled "Discharge

3   Identification Questionnaire."

4           Sir, have you seen this document before?

5   A    No.

6   Q    If you scroll to the bottom of the second

7   page, sir, you'll see in section D a signature.

8           Can you confirm that's your signature?

9   A    That is my signature, yes.

10  Q    Okay.  And it's dated 11-30-2004, correct?

11  A    Okay.

12  Q    And it pertains to activities at 935 East

13  Artesia Boulevard?

14  A    Yes.

15  Q    If you look at paragraph 14, immediately

16  above, it identifies the names and persons in charge

17  of industrial wastewater discharge.

18  A    Again, myself, yes.

19  Q    You are identified as the responsible

20  person, correct?

21  A    Right, uh-huh.

22          MR. ELLIOTT:  I have no additional

23  questions, sir.

24          THE WITNESS:  Okay.

25          MR. TRACY:  I don't -- I don't have any

Page 184

```
 1    questions on my own, Mark.  So I think we're all
 2    done.  We want to go ahead and excuse Mr. Shaikh.
 3              MR. ELLIOTT:  Yeah, and then we can just do
 4    a stipulation and order copies of the transcript,
 5    etcetera.
 6              MR. TRACY:  Maq, I've got to talk to
 7    counsel for a few minutes.  You can go ahead and
 8    hang up.  I'll give you a call in a little bit.
 9              THE WITNESS:  Thank you.  Thank you very
10    much, Mark.  I appreciate it.
11              MR. ELLIOTT:  Thank you, Mr. Shaikh.  I'll
12    see you at Peet's and I'll wave and buy you a cup of
13    coffee, but we will not talk about --
14              THE WITNESS:  I run into you.  We won't
15    discuss the case, but I'll buy you coffee.  Okay?
16              MR. ELLIOTT:  Thank you for your time, sir.
17              THE WITNESS:  Thank you very much.  Have a
18    nice day.
19              MR. ELLIOTT:  Thank you, Ms. Ousley.
20              MS. OUSLEY:  Thank you.
21         (Ms. Ousley and the witness exited the
22              deposition proceedings.)
23              MR. ELLIOTT:  So, Linda, we'll propose a
24    stipulation.  I forget in this day and age exactly
25    how Veritext handles this, but I would like to order
```

Page 185

1   a copy of the transcript.  I would like to get, you

2   know, a draft electronic version, etcetera, but what

3   I would suggest is, if it's acceptable to you, Kirk,

4   what we typically do is it's your witness.

5           You take control of the original

6   transcript, provide it to Mr. Shaikh for review and

7   then if you could please retain the original and

8   just stipulate that you'll make it available, you

9   know, for purposes of, you know, necessity at trial,

10  etcetera.  If there's no changes, that a certified

11  copy can be used for all purposes would be what I

12  would suggest.

13          MR. TRACY:  Yeah, so stipulated.

14          MR. ELLIOTT:  Okay.  Great.  Linda, do you

15  have enough information from me for placing that

16  order?

17          THE REPORTER:  Yes.

18          (Whereupon, at the hour of 2:17 p.m.,

19          the deposition was concluded.)

20

21

22

23

24

25

                                        Page 186

```
 1   STATE OF CALIFORNIA    )

 2                          )  ss

 3   COUNTY OF ORANGE       )

 4

 5        I, HUSSAIN SHAIKH, declare under the

 6   penalties of perjury of the laws of the United

 7   States that the foregoing is true and correct.

 8        Executed this _____ day of _____,

 9   2020, at _____, California.

10

11

12

13        _____

14             HUSSAIN SHAIKH

15

16

17

18

19

20

21

22

23

24

25

                                      Page 187
```

```
1    STATE OF CALIFORNIA    )
2                           )  ss
3    COUNTY OF ORANGE       )
4            I, LINDA NICKERSON, CSR #8746, in and for
5    the State of California do hereby certify:
6            That, prior to being examined, the witness
7    named in the foregoing deposition was by me duly
8    sworn to testify the truth, the whole truth, and
9    nothing but the truth;
10           That said deposition was taken down by me in
11   shorthand at the time and place therein named, and
12   thereafter reduced to typewritten form at my
13   direction, and the same is a true, correct, and
14   complete transcript of the testimony at said
15   proceedings.
16           Before completion of the deposition, review
17   of transcript [X] was [ ] was not requested.  If
18   requested, any changes made by the deponent (and
19   provided to the reporter) during the period allowed
20   are appended hereto.
21           I further certify that I am not interested
22   in the event of the action.
23   WITNESS MY HAND this 19th day of December, 2020.
24
25           LINDA NICKERSON, CSR No. 8746
```

Page 188

**[& - 1999]**

| & | | |
|---|---|---|
| **&** 158:14,14,15 | | |

**0**

**000160** 162:13
**02123** 1:6
**04** 61:17

**1**

**1** 1:19,23 2:3 3:10
6:1 19:5,9 140:10
163:21
**1,000** 101:25
109:11
**1,1,1** 167:14,20
169:25
**1/2** 140:10
**10** 4:10 24:8 40:5
73:11,11 93:11
105:24 106:8,18
144:5 145:23
150:6 157:10
**100** 36:11
**106** 4:10
**11** 4:12 114:4,7
126:18 127:21,22
127:25 136:1
144:21
**11-18-80** 4:8
**11-30-2004** 184:10
**110** 171:12
**113** 179:3
**114** 4:12
**12** 4:14 36:22,23
37:2 39:2,20
73:11 128:2
137:11 139:1,5,18
139:23 140:6
141:21 143:15,24
144:2,19 157:10
157:11 169:5

**12:30** 126:5
**12th** 167:10
**13** 4:18 128:2
152:8,11,25
161:22 162:1,3
**132** 31:6 34:5
35:16 36:9 40:4
42:18,18 45:5,11
46:7,15 153:11
155:1
**132nd** 28:17 30:12
31:5,6 34:6 35:16
36:9,13 40:4,9
42:18 45:5,11
46:7,7,15 50:23
51:22 54:7,18
55:3,14 57:7,15,20
58:4,9,12,21,21
64:13,17 66:19
67:10,15,22 68:17
69:10,20 70:21
72:12,23 73:4,7
75:22 76:22 77:15
79:7 80:5,13,23
81:3,24 82:9,13,23
83:21 86:2,18,22
89:21 93:17 94:7
94:18 106:20
112:3 114:15
120:6 121:22
138:6 151:2
153:11 155:1
172:24 173:3,10
174:12,21 175:18
175:24 176:10,19
179:17,25 180:6
183:2
**14** 4:20 138:17
154:20 161:6,12
161:23,25 162:2,3
162:7,10 163:22

184:15
**1400** 109:10
**143** 4:14
**15** 4:22 48:20
136:17 137:21
138:17 154:2
169:10 170:14,21
170:22 178:2,10
178:15,19
**1500** 99:5,9 102:6
110:8 147:3,7
**152** 4:18
**158** 5:8
**15th** 48:24 169:12
169:12
**16** 4:24 94:2 136:5
139:3 149:25
180:15 182:25
183:9,11,16,21,24
**162** 4:20
**16768** 182:8
**1676b** 182:10
**17** 5:3 170:9
180:25 181:4,7,14
182:6,15
**1700** 140:11
**1739359** 42:10
**178** 4:22
**18** 133:1
**181** 5:3
**184** 4:24
**188** 1:23
**19** 3:10 6:19 52:7
52:19 171:23
178:10
**1964** 10:19
**1965** 10:22
**1966** 18:6
**1967** 18:11,13
**1970** 18:4

**1970s** 17:25
**1977** 48:20
**1978** 13:3 56:25
88:19
**1979** 31:11,16 32:6
34:3 46:7 54:10
54:15,25 57:5
88:20 116:19
**1980** 55:2 71:18
133:1 134:7,12
**1980s** 57:6
**1981** 49:6,10 73:8
73:20 94:2,7,22
96:18 99:14,25
101:2,7,15 102:3
102:19 136:5,17
137:7,21 138:2
139:3 141:19
150:1
**1982** 52:7,19,22
**1983** 139:1,5,17,18
139:20,23 140:6
141:21,23
**1984** 40:5,7 46:9
**1985** 107:6,7
142:12,17
**1986** 94:22 98:4,6
107:20 108:4,13
108:25 111:25
112:6,7,10 144:5
**1987** 42:19 46:13
146:21,25 147:13
**1990** 71:18 150:6
**1992** 163:6,19
**1993** 45:4 164:3
165:10
**1997** 48:25
**1998** 167:11
168:18,19,24
**1999** 64:18 69:23
73:8,20 166:10

[1999 - 91]

169:10,12 170:5
171:9,23,24 172:6
**19th** 171:24 172:1
188:23
**1st** 60:25 62:6

**2**

**2** 3:13 21:24 22:2
22:8,12,25 23:8
36:8 88:12,12,13
163:21
**2,000** 77:22 99:5,7
99:8 100:10,14
101:8,16 107:22
108:6,12 112:5
**2-28-86** 144:10
**20** 7:1 8:9 17:11
69:25 72:18 76:17
76:19 78:16 79:25
80:14 142:12
**20,000** 95:5
**2000** 64:18 153:11
153:12 154:2
170:14,21,22
171:3
**2003** 43:16 45:7,11
46:14
**2004** 60:25 61:24
62:6,7,23 63:20,21
63:24 154:20
156:22 157:7
**2015** 115:11 116:5
153:2
**2016** 116:1
**2020** 1:19 2:3 6:1
19:21 20:4 24:8
26:16 187:9
188:23
**2082711** 182:12
**20th** 142:17
**213** 2:15

**22** 3:13 89:10
139:9 142:2
**220** 2:20
**22nd** 61:24 138:24
**23** 3:16 14:12
138:14 139:5,10
139:11,12,13
142:3,4 182:6,15
**24** 142:4 163:20
165:23 169:5
170:10 171:3
**25** 3:20 53:9 142:4
164:3 182:15
**250** 102:7
**25th** 49:10
**26** 42:19 142:4
**26th** 107:5,6,7
**27** 3:23 19:20 20:4
142:4 171:9
**28** 56:25 139:17
166:10 171:9
**280** 140:11
**2800** 2:13
**29** 4:3
**2910** 65:1,3,6,10
65:17
**2:17** 186:18
**2:19** 1:6
**2nd** 49:6 167:11

**3**

**3** 3:16 23:13,15,18
23:22 87:21,24
126:13,14 127:20
127:25 163:21
**30** 4:6 17:10 53:11
126:4 142:1
156:13 175:11
177:16
**300** 109:15
**31** 26:15

**31st** 61:14
**330** 164:12 165:11
**35** 126:4
**350** 102:7 109:2
**359** 167:15
**3comp** 147:3

**4**

**4** 3:20 5:8 25:8,13
25:25 26:20 56:6
56:16 116:1
126:19 163:20,21
**40** 53:11
**400** 98:22 99:4,10
100:9,17 101:20
**47** 146:8
**48** 4:7 148:22
**488-7100** 2:15
**49** 149:22

**5**

**5** 3:23 26:24 27:5
27:9 29:24 60:15
60:20 61:12
126:19
**50** 131:10 146:8
**500** 136:13
**55** 120:16 122:7,7
122:9,18 160:8

**6**

**6** 3:6 4:3 29:25,25
30:3 31:11,16
39:2,19,20 56:6,16
60:15,20 61:12
126:18,19,19,19
127:25 165:23
**643** 167:15
**65** 10:19
**66** 10:22
**68** 182:10,11
**6861** 188:24

**69977** 37:9

**7**

**7** 4:6 30:2,7,10,20
36:4,8,22,23,23,25
36:25 37:2,9,9
39:6,6,12 42:7
48:5
**700** 108:16,17
**7187** 153:25
**725** 2:12
**75** 99:10

**8**

**8** 4:7 43:16 46:25
48:1,6,10 56:6,16
60:14 130:4 134:7
134:12 154:7,15
171:24
**805** 2:22
**81** 101:3
**85** 37:9
**87** 42:10
**8746** 1:25 2:5
188:4,25
**898-9700** 2:22

**9**

**9** 4:8 91:8,21
126:18,19,19
129:17,19,20
130:1,4,25 132:16
132:25 134:2,24
134:24 135:1,20
135:20 145:17,21
145:22,24 146:9
146:21 147:13
148:22 155:21,21
156:10 163:6
**9-26-2007** 182:19
**90017-5406** 2:14
**91** 4:8

Page 2

**[93 - anyway]**

**93** 45:7
**93101** 2:21
**935** 59:1,8,23
  63:19,22,25 64:15
  64:23 65:8 181:19
  182:18 183:5
  184:12
**9:08** 1:20 2:3 6:1

**a**

**a.m.** 1:20 2:3 6:1
**ability** 28:14 37:21
**able** 25:12 87:20
  90:21 113:21
  125:4 131:25
**absolutely** 82:2
  168:25
**acceptable** 186:3
**accidentally** 29:24
**accommodate**
  125:16
**accompanied**
  20:22
**accuracy** 20:14
**accurate** 20:18
  23:9 24:15 26:20
  27:17 94:6 111:25
  149:18
**accurately** 100:9
  108:1 110:1,12
  111:8 168:5
**acetic** 107:22
  122:5,9,14,17,23
  123:2
**acid** 107:22 122:5
  122:9,14,17,23
  123:2
**acknowledge**
  60:11
**acknowledgement**
  9:6 164:22

**acquire** 121:13
  123:21
**acquired** 18:10
  32:14 33:17,21,24
  33:25 43:4 54:9
  54:21 69:1,11
  70:6,11 77:14
  116:19 120:3,25
  124:8 155:12
  158:17,19 159:1
**acquiring** 34:2,12
  76:5
**acquisition** 31:9
  31:10,16 32:2
  46:7 71:1 158:8
**act** 50:16 175:12
**acted** 173:10
**action** 188:22
**actions** 175:16
**activities** 14:19
  16:1 33:13 34:16
  34:19 53:18 60:4
  63:19 64:15 70:20
  74:16 75:6 76:9
  76:25 78:10,17,24
  82:5 83:6 84:11
  98:2,10 120:23
  127:14 137:7
  148:13 172:23
  173:2 174:20
  175:18 176:4
  180:5 181:19
  184:12
**actual** 53:19
  133:23
**actuality** 51:23
**add** 129:7,8
**added** 116:21
**addition** 35:19
**additional** 43:13
  83:8 89:2,14

**101:5,25 173:16
  184:22
**additives** 103:1
**address** 158:20
**addressed** 133:5,7
  150:6 169:19
**adhered** 129:1
**adjacent** 77:23
**admission** 20:3,16
  27:10
**admissions** 3:12
  3:25 4:5 19:7
**admittedly** 111:24
**admonitions** 7:21
**adopted** 10:24
**adversely** 9:20
**advise** 9:8,19
**age** 185:24
**agency** 174:22
**ago** 6:17 7:2 8:9
  15:9 17:15 53:9
  53:11,11 76:17
  80:14 86:5 134:20
  137:2 157:10,11
  177:2
**agree** 60:1 168:12
  168:16
**agreed** 58:5
  136:18 168:8
**agreement** 33:2
  43:7,8
**agrx** 1:7
**ahead** 22:3 28:21
  44:10,20 92:17
  141:6 143:7 180:9
  182:1 185:2,7
**air** 4:13 85:18
**aircraft** 94:18,23
  97:21
**al** 1:7,11

**allow** 7:11 8:20
  44:4
**allowed** 157:22
  188:19
**amaru** 2:11 38:6
  75:10 125:1
**ambient** 4:13
**ambiguous** 168:12
  180:7
**american** 37:10
  39:15
**amount** 58:3
**amy** 2:25 139:6
  145:18 161:17
  178:3
**ana** 65:1,3,6,10,17
**anderson** 153:1
**angeles** 2:14 15:2
  31:6 67:16 84:17
  93:23 132:20
  133:4 134:4 135:4
  138:22 139:14
  140:6 145:1 153:9
  155:20 158:21
  160:20 176:14
  184:1
**angle** 117:8
  143:17 144:22
**annual** 58:8 73:19
**answer** 9:20 29:3
  59:22 68:14 141:3
  176:22 180:9
**answered** 118:5
  119:18
**answers** 9:10
  180:20
**antiquated** 132:21
**anymore** 14:3,25
**anyway** 38:13
  141:4

Page 3

[apart - back]

apart   38:13
apologies   30:5
apologize   12:8
   24:23 29:19,21
   36:17 45:8 53:14
   65:22 109:11
   116:5 143:2,18
   144:22 180:20
appear   38:24 39:3
   163:16 165:7
appearances   2:7
appeared   25:4,6
   25:14 140:18
   141:18
appearing   24:11
   56:5
appears   21:24
   23:18 37:22 38:1
   38:21 48:2 62:5
   95:18 127:25
   154:19 164:2
   182:21
appended   188:20
applicant   134:8
   142:16 156:14
   182:22
application   4:14
   133:23 134:14,17
   142:11 143:16
   144:3,24 154:23
   154:25 155:3
   182:16 183:3
applied   133:19
applies   147:21
   182:2
apply   155:16
applying   85:23
appreciate   7:12
   63:17 88:11
   101:12 137:3
   153:5 185:10

appropriate   101:7
approved   147:19
   147:20
approximate
   115:2,7
approximately
   10:18 15:3 34:9
   45:4,10 101:2,15
   102:18 136:13
   156:22
april   116:1
area   78:12,17 95:2
   95:5 97:15 98:19
   107:9 114:20
   115:22 118:14,23
   119:6 121:6
   122:10
areas   12:16 120:1
arrive   80:9
arrived   124:17
arrow   21:12 29:12
   111:3
artesia   59:1,8,16
   60:9 63:22,25
   64:23 65:8 181:19
   182:18 183:6
   184:13
articles   4:7 48:13
   48:25 56:10,12,16
artificial   75:5,8
aside   27:21 69:8
asked   17:5,20 19:2
   37:2 72:21,22
   88:15,15 118:5
asking   27:23
   86:14 101:3,4,6,10
   133:14 138:17
   168:16 179:6,9
assembled   91:21
   120:4

assets   57:10,11
assigned   57:25
   177:9
assignments
   157:23
assist   26:7,9 27:14
   27:25 84:10
assisted   22:18
associated   57:12
assume   15:23
   52:23 54:17 55:6
   58:14
assumed   57:6
assumes   36:15
   77:10 156:8
assuming   11:18
   15:19 34:15 35:2
   69:19 70:15,21
   78:11,20 85:5
   97:6,15,23 98:8
   108:19,22 109:14
   120:25 158:22
   159:10
assumption   54:10
   140:15,24 141:1
assure   15:8
attached   19:10
   22:9,12 23:16
   25:9 27:6 30:8
   48:11 91:9 106:9
   114:8 143:25
   152:12 162:8
   178:16 181:5
   183:22
attempt   131:2,4
attempted   114:21
attend   10:20
attention   133:5
attest   24:14 26:20
attested   23:7

attorneys   174:4,5
   179:5
audibly   7:12
audio   7:8
august   31:11,16
   34:3 54:9,14
   61:14 139:1,3,5,18
   139:23 140:6
   141:21 150:6
austin   10:21
authorities   175:7
authority   175:12
authorization
   155:7
automating   75:4
available   186:8
average   73:9
aware   7:25 162:16
   163:12 179:1,7,9
   179:15
awareness   175:22

**b**

b   3:8 4:1 5:1
b1   156:18
b2   156:18
b3   156:18
back   16:13 18:4
   21:13 29:10,12,12
   34:4 37:3 39:12
   46:23 54:3 60:13
   61:9,12 66:18
   78:9 87:7,15
   104:13,15 105:14
   107:8 129:5,25
   131:3,23 132:7,15
   135:12 139:21
   145:16,18,20
   154:8,22 156:1
   158:8 177:21
   180:13,22 181:1
   183:8,11,13

Page 4

[background - business]

**background** 10:2
128:10
**backwards** 12:17
**bandini** 158:21
159:5,7
**barbara** 2:21
**based** 15:1 104:11
137:6 147:11,14
**basically** 96:19
118:11 126:1
**basin** 149:10
**basis** 73:20 75:12
162:19
**batch** 147:17
148:2,2,3,3,9,17
**batches** 78:22
**bates** 92:7,10,18
92:25 144:15,20
162:13
**bathroom** 126:22
**beachwood** 18:10
**bear** 9:20
**beaten** 55:21
**becoming** 181:11
**began** 9:23 73:24
80:12
**beginning** 37:3
89:10
**begins** 162:12
**behalf** 2:2 35:5,25
62:4 175:24
**believe** 17:9 18:4
21:4,5 34:14 40:8
41:25 42:3 45:20
50:1 54:19 59:4
63:17 72:17 79:5
80:7 98:7 103:9
103:16 115:8
124:16 133:5,6,13
133:18,22 138:7
151:6

**believing** 168:1
**beneath** 109:21
**benefit** 28:9 125:1
**best** 8:3,7 9:23
15:7 20:17 23:9
24:15 26:21 27:17
28:20 31:17 42:25
53:2 64:7 73:15
73:17 74:2 88:16
89:6,9 100:4
110:11 111:8
112:1 115:1,19
117:6,25 129:9
132:22 158:2
**better** 15:10 75:13
79:2
**biannual** 162:19
**big** 74:18 131:9
**billion** 164:12
165:11 167:15
168:5
**bit** 6:20 12:7,17
18:24 63:10 72:5
75:17,18 77:13
85:11 88:9 100:11
101:17,22 105:20
106:4 108:24
114:18 128:9
132:21 139:7
147:2 148:25
163:2,3 185:8
**blank** 125:6
157:15,21
**blend** 34:23 74:11
**blended** 67:17,23
68:18,22 70:1,5
71:19,23 72:12
89:20 161:1
**blenders** 67:5
**blending** 11:24
15:25 33:13,19

34:19 35:4 55:4
67:3,7,11 68:5,11
68:11 70:23 71:15
74:7 76:1,25
77:23,25 78:9,10
78:17 80:22 81:11
86:24 102:10,17
102:24 103:22
109:3,8 120:24
121:1 127:3,4
**block** 44:22
**blow** 38:8,9,10
103:7,12 105:20
**blue** 115:4 166:1,3
170:13,18
**board** 51:18
**bodily** 55:21
**boiler** 102:15
103:6,7,9,14 105:3
**bookkeeper** 50:15
50:16,19 53:7,12
79:18
**booklet** 9:1
**bore** 7:22
**bottom** 22:21
36:20 37:20 52:8
56:20 61:2,22
63:4 146:20
147:16 154:8,15
155:22 163:5
164:1,23 166:7,10
169:13 171:1
182:20 184:6
**bought** 160:18
**boulevard** 59:1,9
60:9 182:18
184:13
**bounds** 8:19
**box** 39:9 62:12
109:23 110:3
111:3 145:2,4

167:14 169:24
**brakes** 80:1
**break** 6:18 28:24
29:3,4 47:21 66:8
66:11 125:11,13
125:16,20 177:17
177:20
**brett** 173:25
**briefly** 52:16
**bring** 74:23
130:24
**broadly** 168:10
**broker** 45:25
**brother** 50:3
51:11 52:12 133:7
140:24 141:10
**brought** 37:19
**browser** 25:11
**bs** 10:16
**build** 34:17,20
54:24
**building** 32:13,15
32:16,21,25 33:3,6
33:9,20 34:9
63:22 77:20 115:7
115:18 116:12,16
116:19 123:3
145:1 149:9,10
159:23 160:2
**built** 54:21
**bulk** 121:13,23
122:16 123:7,10
124:2
**bunch** 47:5 144:21
177:12
**business** 8:8 11:12
16:16 28:17 34:5
35:9 53:5 60:1
63:5,7,11,14,16
72:4 73:24 75:5
76:4,4 85:13

Veritext Legal Solutions
866 299-5127

[buy - circle]

| | | | |
|---|---|---|---|
| **buy**  31:23 32:8 67:2 185:12,15 | **ceased**  55:11,22 | 35:6,10,11,16,21 | 172:24 173:3 |
| **buying**  71:6 164:22 | **cement**  115:9 117:7 | 36:1 40:12,15,19 40:21,25 41:3,6,7 | 174:10 175:2,9 176:4 177:9 |
| **buys**  67:1 | **cemented**  115:2,8 156:21 | 41:8,19,23 48:14 49:1,15 50:5,17,20 | 181:19 182:17 **chemical's**  72:17 |

**buy**  31:23 32:8 67:2 185:12,15

**buying**  71:6 164:22

**buys**  67:1

**c**

**c**  86:11,13

**c4**  156:18

**california**  1:2,5 2:4,14,21 10:25 12:23 14:4 15:13 31:7 60:17,19 61:13,16 65:13,14 65:18 72:19 85:14 182:19 183:25 187:1,9 188:1,5

**call**  75:9 149:10 150:16 152:14 185:8

**called**  18:9

**calls**  176:20

**capacity**  35:24 40:22 81:23 82:3 173:1 175:2

**caption**  60:16

**car**  164:23

**career**  12:1

**careful**  91:5

**carolinas**  13:19

**carran**  86:11

**carson**  2:4 12:22 59:1 72:19 182:19

**case**  8:15 11:25 59:7 68:21 118:21 164:20 185:15

**cases**  183:3

**catch**  149:10

**caustic**  123:21 124:4

**cease**  55:7

**ceased**  55:11,22

**cement**  115:9 117:7

**cemented**  115:2,8 156:21

**cementing**  155:12

**center**  99:18 138:23

**central**  1:2

**ceo**  12:21

**cercla**  179:2

**certain**  21:6 70:15 85:15,17 143:18 175:16

**certainly**  55:2 60:1 147:13

**certified**  144:13 186:10

**certify**  188:5,21

**chain**  95:1 97:15 98:14

**chance**  66:13 86:15

**change**  9:9,11,16

**changed**  9:19 72:4

**changes**  9:4 186:10 188:18

**charge**  184:16

**check**  20:24 119:19,25 125:9 130:13 135:8,14

**cheer**  10:23

**chem**  167:4,9 169:19 171:21

**chemical**  4:9 11:7 11:13,19,22 12:1 12:22 13:1,6,7,15 13:15 16:14,15,24 16:25 17:5 32:17 32:18 33:10,10,13 34:6,10,17,18 35:2

35:6,10,11,16,21

36:1 40:12,15,19

40:21,25 41:3,6,7

41:8,19,23 48:14

49:1,15 50:5,17,20

50:22 51:13,21

52:24 53:20,25

54:6,11,17,20 55:3

55:7,8 56:10,17

57:1,6,10,11,12,15

57:17,19,24,25

58:4,7,12,25 59:7

62:4,8,19,22 63:1

63:3,6,10,10,12,21

63:24 64:9,17

65:7,18,24 66:5,20

66:20,24 67:16,17

67:23,23,25,25

68:3,17,17,22,22

69:9,9,21,22 70:11

70:17 71:15 72:3

72:18 73:3,7,23

74:16,17 75:22,22

76:1,21 79:7,17

80:8,9,10 81:5

82:5 83:5,21,22

86:1,2,18,22 88:21

90:6,17 94:7,16

96:18 98:11

114:14 116:22

120:6,6,19 121:21

123:8 126:25

133:4,24 137:23

138:3 140:19,21

142:11 148:8

151:2,13 153:13

153:16 159:1

160:13,17 161:2

162:17 166:24

167:9 168:19

169:20 171:22

172:24 173:3

174:10 175:2,9

176:4 177:9

181:19 182:17

**chemical's**  72:17

116:24 160:12

175:24

**chemicals**  11:24

11:24 12:2,20

13:2,8 14:16 16:1

16:5,9,17,20 17:2

17:8,19,20,25

18:21 34:16,24

35:4 40:8 42:1,4

54:22 55:4 60:2

63:7 67:8,9 68:23

70:23 71:24 72:5

72:7,11 74:12

76:5 77:3 81:11

88:17,22 89:3,8

90:3,10 96:24

102:25 119:7

120:24 121:13

124:7 128:3,6

148:18 158:19

159:2 164:15

165:3 170:6 172:5

**chemistry**  10:16

**chicago**  43:15

44:16

**chief**  62:13,14

**child**  55:25

**childhood**  104:15

**chip**  117:4

**chronological**  29:8

**circa**  94:7 96:18

98:6 111:25

168:24

**circle**  131:17,24

143:12 146:1

Veritext Legal Solutions
866 299-5127

[circling - concrete]

circling  131:17
city  104:4 151:8
claims  115:25
clarification
  101:11 118:20
  138:8
clarifier  85:4,8
  104:2,3,12,14,18
  104:21 110:8,13
  110:18,21,24
  111:11,17,21
  117:13,17 118:25
  119:8 129:22
  138:5,9 141:22
  145:2,11 147:9,10
  147:12,21,21
  148:8,10 151:2,3
  151:14,25 155:1
  155:13,14,17,25
  156:22 164:10
clarify  66:22
  100:23 116:3
  164:13
clean  68:13 75:21
  78:21 104:1
cleaned  104:3
  128:4,8 150:15,22
  151:4
cleaning  103:22
  127:13
cleanup  78:11,16
  118:22 127:7,10
  136:14
clear  41:15 100:21
  100:22
click  22:4 29:11,14
  87:8 88:1
client  20:8 59:21
  88:15
clients  72:22
  178:21 179:3

close  46:23 47:10
  47:12,22 97:1,18
  131:3 132:1 152:2
  155:25 172:8
closed  31:23 132:2
closer  100:5,7
  101:17,22 123:1
closure  154:23,25
  155:4,7,16,19
  156:14,14
clue  32:12 165:16
cobble  90:21
coffee  29:1 47:21
  66:8 185:13,15
collected  164:9
  167:13
collection  109:23
  110:3
college  10:4,7,8,9
  10:25
color  131:14
colored  166:1
come  36:21 79:22
  92:19 93:14 117:1
  121:23 122:5,5,16
  139:6 145:18
  177:20 180:22
  181:1
comes  141:2
coming  88:5
  111:11 126:22
  178:6 181:1
commencing
  34:15
comment  175:3
  176:7
commented
  141:17
comments  7:6
  8:24

communicate
  136:22
communications
  173:21,22
companies  16:15
  32:24 68:7 69:1
  70:2,16 84:7
  160:19,21
company  1:6 13:7
  13:11,17 14:25
  15:1,13 17:1,5,7
  18:3,9,20 19:3
  31:4 37:11 39:16
  44:16 49:23 53:7
  59:9 64:10,22
  65:2 69:19 70:20
  71:6 72:6,15 73:3
  73:9,16 74:8 76:4
  77:4,14 78:20
  80:13 81:3,14
  82:6 83:6 84:16
  85:3,14 89:20
  95:1 96:25 102:22
  106:22 112:16,21
  114:10 120:2,4,23
  121:12 123:20
  124:8 140:21
  145:6 151:18,24
  158:11,13 160:18
  164:25 165:13
  171:14,16,16
  172:4 182:25
company's  13:22
  14:24 68:23 69:3
  80:23 84:2 86:24
  87:1 102:11
  107:13 158:8
compare  37:19
compartment
  147:8

compiled  8:25
  48:7
complete  7:11
  12:15 89:7 114:24
  188:14
completed  18:5
  44:13 54:25
  133:24
completely  63:11
completing  11:17
  134:18
completion  188:16
complex  126:23
compliance  83:24
  84:3,11 85:22
  86:4 149:23
  156:17
comply  4:19 85:15
  85:17 136:18
  137:15 149:25
  151:7,9 155:17
complying  84:20
comport  94:11
compound  162:23
computer  24:18
  37:7,20 172:20
computers  7:8
concentrations
  164:11 168:7
concern  11:23
conclude  137:7
concluded  186:19
concluding  18:18
conclusion  8:12
concrete  104:12
  104:18 113:20,22
  114:19 115:21
  116:15 117:5,20
  118:1,24 119:13
  127:6

[conditions - correction]

conditions  155:8
155:11,17 156:18
162:16 164:25
conducted  146:19
conducting  174:15
conference  8:16
confirm  22:15
27:16 31:15 48:21
61:1,23 94:5,10
106:13 126:24
148:7 154:17
155:22 163:7
169:15 171:5
182:21 184:8
confirmation  19:1
confirmed  54:10
57:14
confirms  36:8
confusion  47:9
connect  159:15
connected  138:9
140:10,12,12
connection  47:4
159:17,20,21,22
160:1 182:17
constitute  8:21
constitutes  23:8
constructed  32:21
33:3,6
constructing
85:23
consultants  84:5
174:4
consulting  17:12
17:18
contact  46:3
contacted  176:24
contacting  129:12
containers  33:18
71:8 78:6

contaminants
168:17
contaminated
156:16 176:18
context  8:14
continue  10:23
53:6
continued  4:1 5:1
40:12 59:8
continuing  171:14
continuous  147:24
148:1,4
contracting  17:18
contractor  17:13
84:24 85:6 107:14
116:25 117:2
138:10 155:18
156:3,21 157:4
175:12 179:23
180:4
contractors  84:10
contribution
179:2
control  28:10 72:7
118:11 155:8
174:23 175:13
186:5
controller  79:17
79:23 80:12 81:9
conversations
20:12 179:11
copies  185:4
copy  9:2 30:11
35:13 66:15
114:24 150:2
151:23 153:2
186:1,11
corner  29:12
30:17,23 31:12
39:8,18 42:23
43:14 44:16 48:2

48:19 49:4,9 52:9
56:20 61:2,17,22
95:14,16,25 98:17
98:20,21 99:16
107:3,12 121:9
134:6 144:4,14
146:20 154:16
156:11 182:9
corp  4:9
corporate  50:20
60:24 61:22 79:17
79:23
corporation  4:6
14:5 30:11,16,21
31:3 48:14 49:1,5
49:16,17 51:1,5,15
51:24 52:6 53:20
55:16 62:3,18,19
63:1,3 66:1
133:24 137:23
138:4 140:20
corporations
55:15
correct  11:9,14,18
12:24 13:3,9,12
14:19 15:23 16:17
16:25 17:15 20:7
20:9,13,14 22:16
22:19 23:5 30:22
31:7,16 33:24,25
34:6,19,23 35:6,17
35:21 36:1,10
37:12 39:18 40:5
40:9 41:3,19,23
42:4,19 44:19
45:3,10,12 46:4,10
46:15 48:24 49:21
50:2 51:5,20,24
53:24,25 54:12,22
56:24 57:7 58:5
59:2,5 62:14,16,24

63:8,22,25 64:19
65:8,10 67:18
68:8,16,19,24 69:4
69:8,12,23 70:2,7
70:9,12,16 71:10
71:16,20 72:8,19
75:23 77:16,20
78:6,25 82:1,4,6
83:2,6 84:18 85:9
87:1,4 89:8 94:19
94:20 95:6,16
96:7 97:8 98:2,23
99:7,13 100:15
101:18,23 102:3
103:18 109:3,17
111:15,18 112:3
114:15 121:1
123:14 124:14,17
127:3,9 128:21
129:3 130:2
134:15,20 135:10
135:20 136:18
139:12,24 141:11
141:20,23 144:12
145:15 146:15
147:1,20 148:10
149:18 154:1
155:4 159:5,11,24
160:23,24 161:6
161:12 162:5
167:22 169:2
170:7,23,23 173:8
175:4,8,13,19
178:11 179:4,14
179:18 183:6
184:10,20 187:7
188:13
corrected  136:15
correcting  9:13
correction  83:19

Page 8

[corrections - described]

**corrections**  9:4
149:23
**correctly**  83:11
**correspondence**
134:19
**counsel**  2:7 7:21
8:24 156:8 157:25
165:5 173:21,22
175:16 179:12
181:16 185:7
**counterclaim**  4:23
178:20,20 179:16
**counterclaims**
179:2
**county**  17:9 84:14
84:17,22 86:10
91:22,23 92:11,22
93:24 98:18
111:14 118:9
131:13 132:20
133:3,4 134:4
135:3 138:21,22
139:14,15 140:5
141:17 145:1
150:2,18 151:8
153:9 155:20
156:5,23,25 157:3
157:3 162:12
163:13,24 174:25
176:14 181:15
184:1 187:3 188:3
**couple**  18:6 63:18
81:18 90:22
125:13,19 149:6
158:7 160:19
172:17 173:4,5,6,7
**court**  1:1 7:3 9:19
9:19 21:2
**covid**  6:19
**craig**  50:11

**crazy**  28:6
**created**  8:17
**credibility**  9:21
**crisis**  55:18 57:5
**csr**  1:25 2:5 188:4
188:25
**cup**  29:1 66:7,15
185:12
**current**  11:11,23
72:3 179:16
**currently**  12:21
45:15 59:12 72:17
76:16 81:25 83:1
**customer**  123:24
160:12
**customers**  67:9
69:3,12 70:7,12
120:4,20 121:16
124:14 160:12
**cut**  117:4,6 118:1
119:19
**cv**  1:6

### d

**d**  3:1 14:24 79:10
79:13 83:10 184:7
**d2**  156:18
**dad**  53:17
**daily**  69:19 70:20
**dark**  147:2
**dash**  81:20 115:19
**data**  115:4 162:20
163:11 164:8
171:10
**date**  10:14 31:11
31:16,22,24 34:8,9
49:6 54:12,18
55:10 61:24 63:20
70:18 79:24 93:3
106:13 107:1,4
115:25 116:1,17
134:7,12 136:5

137:16 142:16
144:4,13 145:6
146:20 154:19
156:13 163:5
171:8,25
**dated**  4:8 19:20
20:4 24:7 26:15
43:14 49:10 52:6
136:5 137:21
140:6 142:12
150:6 154:1
169:10 171:22
184:10
**dates**  64:6 80:16
82:25 98:8 106:13
112:15 165:21
**day**  71:13 185:18
185:24 187:8
188:23
**days**  104:14
156:13
**dce**  172:3
**deal**  31:22
**dealt**  155:19
**deceased**  51:11
53:17 76:17
**december**  1:19 2:3
6:1 40:5,7 134:7
134:12 167:10,11
188:23
**deck**  95:24
**declare**  187:5
**deed**  4:6 30:11,16
30:21 31:4 36:5
36:18 39:7,24
40:2 42:14,17
43:18 44:15 45:14
**defendant**  2:1
**defendants**  1:12
2:17

**defer**  175:15
**degree**  10:17 11:2
11:9 81:6
**delivered**  123:9
159:9
**departed**  11:8
64:17 73:25
**departing**  65:6
**department**  84:18
91:24 93:24
106:12 138:22
139:15 145:1
148:19 153:10
163:24 174:22
175:12 181:15
**departure**  18:20
**depict**  90:23 100:9
110:12 114:21
**depicted**  108:1
116:14
**depicting**  110:1
111:8
**depiction**  112:1
**depo**  92:1
**deponent**  188:18
**deposed**  7:15
**deposition**  1:17
2:1 6:16 7:22 8:13
8:17,18,21 9:7
27:22 29:7,13
157:23 178:23
185:22 186:19
188:7,10,16
**depositions**  8:15
**describe**  98:18
99:17 109:22
110:6 121:4,17
122:24 125:5
**described**  15:21
86:4 90:20 99:15
103:7 106:18

**[described - dotted]**

107:12,22 110:7
124:1,3 138:11
**describes** 63:4
**describing** 44:14
156:15
**description** 3:9
4:2 5:2
**design** 85:8
**designated** 122:10
175:9
**desktop** 28:11
**despite** 8:13,18
40:11
**detailed** 149:13
**details** 7:23
**detected** 170:1
171:12 173:10
**detections** 165:10
**detergents** 67:4
71:19 89:12
**determine** 155:14
**developed** 90:5
**developing** 97:7
**diagrams** 84:22
**diameter** 140:10
**died** 157:11
**different** 32:6
46:19 63:11 64:10
78:22 90:24
158:15
**differential** 181:21
**difficult** 52:4
**difficulty** 61:10
**dilute** 127:11
**direct** 46:3 175:3
**directed** 151:13
173:1
**directing** 150:18
173:11
**direction** 188:13

**directly** 104:1
156:24 157:3
174:10,24
**director** 40:18
51:13,24 53:16
62:22,25 66:1
**directors** 51:1,5
51:18 62:7
**disagree** 168:16
176:4
**disappeared**
180:11
**discharge** 4:11
84:17 106:23
134:3,13 140:16
142:7 148:10
162:17 165:1,2
182:8 183:1,5
184:2,17
**discharged** 111:14
127:2,15 136:12
**discharger** 4:24
**discharges** 85:19
**disclose** 174:2
**disclosure** 60:24
61:22 62:4 155:12
**discontinued**
70:16,17 112:8,16
113:9 165:14
**discovery** 19:2
22:1 23:8 64:11
72:21,22 77:18
82:16 88:15
118:18 120:15
123:5
**discuss** 179:11
185:15
**discussed** 135:23
136:6
**discussing** 8:8
133:10

**discussion** 18:1
132:14
**disposal** 113:5
150:15 151:24
**disposed** 113:17
151:16
**disposes** 151:18
**disposition** 156:16
**distribute** 67:1,2
**distributed** 77:4
81:3
**distribution** 71:16
**distributorship**
158:23
**district** 1:1,2
**districts** 91:23
131:13 133:3
134:4 162:4,12,15
162:20 184:1
**dmg** 1:7
**dock** 96:2,3,6
**doctors** 75:19
**document** 9:3 19:8
19:12,14,22 20:8
21:8,16,21,24 22:7
22:16,18,21,24
23:5,14 24:2 25:7
26:3,5,12,24 27:4
27:12,21 28:7,11
28:12,15 30:6,15
30:25 36:20 38:11
39:7,23,25 42:14
42:15 43:13,19,21
44:5,14,19,25 45:7
47:12 48:9,16
49:13 56:4,18,24
60:16,24 61:6,23
62:1 63:20 86:8,9
88:12 91:7 93:9
93:23 106:7,18,24
114:4,6,20,21

130:17 133:10,12
133:16,19 134:1
134:25 136:2
137:14,17 142:6
142:22 143:23
144:20 146:17
147:11,14 150:3,9
152:10 153:4,17
154:4,14 162:6,11
163:13 165:9
166:25 167:18
168:10 178:14,24
181:3 183:14,20
183:25 184:2,4
**documents** 20:22
27:24 28:1,16
30:13 47:16 48:4
48:7 88:10 91:22
92:7 93:5 104:8
131:11,14 132:20
145:13 162:11,15
163:2 167:22
172:18 182:3
**doing** 6:20 15:9,9
73:24 125:7
130:21 173:11,12
174:17 175:6
176:13 177:4,6
179:9
**domestic** 49:5
52:6
**dominguez** 65:11
65:12,13,14,17
**door** 159:14
**doshi** 79:6,9,16,22
80:2,5,21 81:5,14
164:3,19 166:10
169:20 171:2
**doshi's** 171:5
**dotted** 115:6,16,19

[double - employers]

**double** 88:1
**doubt** 9:2 173:18
**dow** 66:23
**download** 25:20
**draft** 174:19 186:2
**drag** 71:13
**drain** 103:25,25
  104:22 114:19
  118:3
**drainage** 117:8
  118:7 127:6
**drained** 110:2
  117:12
**draining** 103:21
  117:10
**drains** 113:20,22
  115:2,8,9,21
  116:10,14,25
  117:3 119:14
  149:6,8,12,15
**draw** 111:20
  117:12
**drawing** 100:25
  103:24 104:6,10
  106:20 110:6
  148:23 149:2,7
**drawn** 93:17,25
  105:1 107:13
  115:9 149:6
**driver** 160:6
**drives** 28:5
**drops** 52:17
**drum** 122:7,7,18
  160:10,10,13,18
  160:19,21,22
**drums** 119:12
  120:11,16,18
  122:1,9,15,23
  123:13,16 124:22
  160:9,15,17,23

**dry** 97:21
**due** 110:7 170:14
**duly** 6:4 188:7
**duplan** 14:24 15:4
  15:13,16,20,24
  18:2,9,10,12
**duplicate** 30:4
**duplicates** 93:5
**duplicating** 65:23
**dye** 11:21 14:9,14
  14:19,23 15:17,17
  15:20 16:1,4,4,7,8
  16:11,23 18:2,10
  63:7
**dyer** 15:17,20
**dyes** 71:19 124:13
**dying** 14:15 16:6
  33:19

**e**

**e** 2:10 3:1,8 4:1 5:1
  13:25 20:23 45:17
  45:17,17,17,17
  79:9 81:21 82:18
  82:18 157:18,18
**e1** 156:18
**e2** 156:18
**early** 57:6 64:18
  104:13
**ease** 47:9 48:8
**easier** 12:17 25:2
  38:22 88:9 143:22
**easiest** 132:8
**east** 59:1,8,16
  63:22,25 64:23
  65:8 121:6,9
  122:25 123:19
  181:19 182:18
  183:5 184:12
**easy** 93:16
**educated** 10:3,6

**education** 16:22
**effectively** 160:23
**efficient** 47:17
  59:25
**either** 34:3,17 35:2
  58:20 83:2,21
  90:10 102:7
  134:18 166:22
  168:20
**electronic** 186:21
**elliot** 101:5
**elliott** 2:10 3:6 6:8
  6:14 12:8,13 14:1
  19:11 20:20 21:4
  21:12,15,23 22:5
  22:10 23:12,17
  25:5,10,16,18
  26:23 27:3,7
  29:21 30:4,9
  31:15,19 36:16
  37:8,12,15,18 38:2
  38:10,15 39:1,4,17
  39:21 44:3,12
  45:8 47:1,3,8,14
  47:20,25 48:4,12
  56:9,14 59:20
  60:11,22 61:11,15
  61:20 66:12,18
  77:11 79:13,15
  87:16,25 88:8
  91:3,10,19 92:3,5
  92:9,20 93:7,15,21
  96:5 100:25
  101:14 105:19,25
  106:3,10,16
  113:19 114:3,9
  116:2,5,9 118:6
  119:21 125:9,19
  125:25 126:5,9,12
  130:2,7,17 131:1
  131:10,19,25

  132:6,12,17
  135:19 138:20
  139:4,11,18,24
  140:1,3 143:7,12
  143:14 144:1,12
  144:18 146:2,6
  152:7,15,24 156:9
  158:6 161:4,7,12
  161:24 162:5,9,25
  166:18,21 167:20
  168:2,14 170:23
  170:25 172:16
  174:8 176:25
  177:16 178:1,11
  178:17 179:8
  180:11,19 181:6
  181:13 182:4
  183:23 184:22
  185:3,11,16,19,23
  186:14
**emissions** 85:19
**employ** 73:9
**employed** 14:11
  14:22,23 73:3
  76:21 79:6,20
  80:5
**employee** 15:14,15
  41:18,22 79:6
  80:8 82:4,16,17
  83:8,12,18 86:16
  141:14
**employees** 72:22
  73:2,9,19,22 74:2
  74:5,10 75:24,25
  76:9,10,11 79:4
  81:19 84:8 86:15
  86:23 87:1 103:21
  116:24 128:25
  129:12
**employers** 18:20

[employment - experimenting]

employment 12:16 18:19 78:15
employs 72:18
empty 33:23,24 34:23,24 160:13
enclosed 120:11
engineer 138:22 139:15 175:10
engineering 11:7 11:19 81:5
ensure 20:13
enter 33:2 40:15 57:18
entered 35:15 94:17
entire 11:25 66:1 76:21 87:4 90:16
entirely 46:20 70:15 149:17
entitled 19:6 22:25 23:22 25:25 27:9 29:13 30:16,20 36:4 39:7,23 44:15 56:16 62:12 134:2 135:10 137:14 143:15 144:2 178:19 184:2
entity 114:13 158:23
environmental 83:23 84:1,3,11 85:17,22 86:4 114:5 128:24 153:1 155:13 162:19 172:23 173:2 174:11,20 175:23 179:23,24 180:3,4
epd 156:14

equipment 35:3,8 57:11 85:24 97:24 105:5
erect 95:1
erected 97:16
error 141:8
errors 9:13,15
esq 2:10,11,19
essentially 67:17 67:24 68:18 90:15 90:20 97:17,21 150:1 155:12 159:10
estate 32:3 45:25
estimate 18:2 73:15,17 74:3 115:1
estimating 149:14
et 1:7,11
etcetera 9:24 15:25 35:4 185:5 186:2,10
ethane 167:23
ethylene 167:24
eun 45:16
evaluating 176:9
evaluation 155:13
evaluations 175:23
event 9:11 188:22
everybody 125:2
evidence 59:19 156:17
evolved 63:15 68:1
ex 178:10
ex's 153:2
exact 14:13 55:10 82:25 98:8 109:13
exactly 65:4 72:16 83:16 96:8 113:16 113:18 170:8

185:24
examination 3:3 6:7
examined 6:5 188:6
example 79:5 84:21 85:20 122:9 122:14
examples 89:19
excavate 151:13
excavated 151:25
exception 68:20 90:13
excerpt 153:1
excessive 150:12 150:13
excuse 18:1 31:6 32:18 62:19 64:11 94:16 96:24 121:8 127:19 134:24 160:11,25 165:14 167:10 172:22 176:17 185:2
executed 35:23 187:8
executive 62:13
exhibit 3:10,13,16 3:20,23 4:3,6,7,8 4:10,12,14,18,20 4:22,24 5:3 19:5,5 19:9 21:24 22:2,8 22:12,25 23:8,13 23:13,15,18,22 25:8,13,25 26:20 26:24 27:5,8 28:9 28:22 29:10,15,17 29:22,24,25,25 30:2,2,3,7,10,20 35:14 36:4,8 38:16,23 39:6 42:7 46:18,20,25

47:5 48:1,5,6,7,10 56:6,16 60:14 87:7,15,21,24 91:1 91:8,12,21 98:21 105:24 106:5,8,11 106:18 113:23 114:3,7 119:23 126:13,14 127:25 129:17,19,20 130:4,4,25 132:3 132:16,25 134:2 135:20 143:2,8,15 143:24 144:2,19 144:19 145:17,23 145:24 146:3,9 148:22 152:3,6,8,8 152:11,25 161:5,6 161:10,12,22,24 162:1,1,2,3,7,10 163:22 172:8 178:2,2,10,15,19 180:15,15,20,25 180:25 181:2,4,7 181:14 182:6,15 182:16 183:9,11 183:21,24
exhibits 18:25 22:4 29:9,14 38:17 87:8 90:22 172:20 177:12
exist 14:3 17:10 140:20
existing 142:6 182:17
exists 14:25
exited 111:21 185:21
experience 12:19 16:19 18:3
experimenting 18:24

[expert - function]

**expert** 177:6
181:12
**expertise** 12:19
**experts** 175:5
**extensive** 128:14
**extent** 175:16,22
**exterior** 160:1
**extract** 176:17
**extracted** 114:4,22
**extraction** 176:9
176:16
**eyes** 9:21

**f**

**f** 13:25 81:20,21
156:11 179:3
**fabric** 16:11 71:19
71:20
**fabrics** 16:8 33:19
**fac** 182:12
**facilities** 136:16
139:15 150:12
**facility** 34:20
50:23 71:16 72:19
90:15 94:6 96:18
102:2 119:7 129:3
137:7 138:5 159:5
170:7
**fact** 8:13,18 11:22
58:7 94:21
**facts** 9:21 36:15
77:10 156:8
**fair** 60:7
**familiar** 69:25
70:4,22,25 71:9,12
76:16 92:14
114:10 128:6
140:23 176:8,12
176:12
**familiarity** 81:8
**family** 50:1

**fancy** 138:5
**far** 15:9 59:18
131:12 141:6
**fast** 28:4,5,5
**faster** 25:1
**fat** 177:12
**favor** 88:23
**features** 84:23
**february** 48:20
49:10,10 52:7,19
52:22 138:24
144:5
**federal** 21:2 83:24
84:3 85:18
**feel** 28:12
**fell** 20:23
**fence** 95:1 97:16
98:14
**fifth** 133:22 134:2
**figueroa** 2:12
**file** 20:21 24:24
29:13 37:2 84:12
92:24 131:9
**filed** 60:24 61:13
62:6 178:20 179:2
179:15
**files** 20:25 47:22
91:22 93:23,25
106:12 153:2
165:25 181:14,18
**filing** 49:6
**fill** 160:15
**filled** 115:9 125:5
155:18
**financial** 62:14
**find** 37:2 80:17
146:23 157:20
**fingers** 38:12
66:13 105:20
**finish** 112:13

**first** 6:4 8:1 19:4
21:11 25:20 30:15
30:20 32:17,24
34:5 46:8 48:13
49:20 66:11 69:21
73:23 75:15 79:10
79:22 80:12 81:19
91:14 107:22
109:2 111:17
132:25 140:14,14
144:20 161:10,17
171:11
**five** 99:3 169:18
177:20,24
**fix** 173:13
**fixed** 110:8
**fixing** 174:16
**flat** 125:2
**fleischer** 179:18
**fleischers** 6:15
178:22 179:4
**flip** 95:15
**flipped** 115:12
**flipping** 86:8
**floor** 103:18
104:22 105:2
116:11,16,18
118:22 136:12
140:11
**flow** 118:23
**flowed** 109:22
118:19
**flying** 94:17,22
95:4 97:22 98:5,9
**folder** 29:13
**follow** 126:20
**followed** 71:6
**following** 11:16,16
18:12 57:4 78:10
103:22 110:2
135:25 149:24

153:15
**follows** 6:5
**foot** 95:5
**football** 10:24,25
**foregoing** 187:7
188:7
**forget** 185:24
**forgotten** 44:3
114:22
**form** 57:9 60:23
64:2 135:4 165:2
166:8 170:15
171:10 188:12
**formal** 57:9
**formally** 62:5
**formation** 13:3
17:24 62:17
**formula** 90:5
**formulating** 12:2
**forward** 67:6
100:23 101:4,6
**found** 156:17
**foundation** 77:12
**four** 15:5 18:14
99:3 184:2
**fourth** 163:22
**fowler** 81:20,23
82:3,9,13
**frame** 13:16 18:12
87:4 94:12 100:24
109:19 119:5
156:1
**free** 28:12 86:16
**frequency** 58:16
**fresh** 160:10
**friend** 43:3
**front** 9:18 28:7
37:3 154:12 165:9
**fs** 103:18
**function** 37:22,25
38:21

[furnish - hand]

**furnish** 156:14
**further** 16:13
  118:2 140:23
  188:21
**future** 43:10
  103:24

**g**

**g** 81:20 83:10
**gain** 16:19
**gallon** 77:22 98:22
  99:4,5,7,8,10,10
  100:9,10,14,17
  101:8,16,20,25
  102:6,8 107:22
  108:6,12,16,17
  109:2,7,15 112:5
  120:16 122:7,7,9
  122:18 147:3,7
  160:8
**gallons** 99:9
  109:10 110:8
  136:13 140:11
**game** 132:22
**gap** 18:6
**garage** 105:7
**general** 85:12
  118:22 168:9
**generally** 16:14
  85:21 94:10 98:18
  102:13 108:1
  111:25 120:2
  121:4 166:22
  172:19
**generated** 101:1
**gentleman** 83:9
  86:9 98:17 175:10
**getting** 138:16
  163:3 173:12
**give** 21:20 26:24
  28:13 66:12 93:4
  128:9 132:6

145:24 157:22
  161:5 185:8
**given** 11:11,22
  19:4 27:25 151:9
  166:23
**glance** 39:24
**glitch** 24:19
**go** 10:6 16:13 21:8
  22:3,22 27:22
  28:25 29:6,7,12
  32:10 36:21 37:2
  38:18 43:20 44:10
  44:20 52:1 61:9
  61:21 84:23 87:6
  87:10,15 91:12,15
  91:16 92:17 93:2
  93:19 104:7,18
  105:10,14 107:8
  111:16 113:20
  122:20 125:10,20
  126:10 127:9,12
  129:5,19,20,25
  131:3,23 132:4,12
  132:15,23 133:15
  135:12,21 139:9
  143:7 145:16,19
  145:20 146:8,10
  154:8,8 171:18
  172:14 180:8,13
  182:1 183:8,10,11
  183:13 185:2,7
**god** 105:17
**goes** 89:13 91:17
  104:2,3 129:21
**going** 6:15,25
  16:13 21:15,25
  27:23 29:7,11
  30:11 37:6 38:6
  47:14 55:18 59:15
  59:24 64:14 66:8
  67:6 78:9 87:6,6

87:17,17 88:11
  91:4,11 93:16
  95:15 98:2,21
  101:5 105:14,15
  105:19,23 127:22
  132:18,22 133:22
  135:3 138:21
  141:3,7 142:25
  143:2,5,7,12,19
  145:19,20 146:1
  146:10 148:5
  149:5,21 152:7
  153:12 157:25
  158:8 161:4
  165:25 167:17
  168:2,9,15 169:7
  170:18 172:18
  173:17 174:5
  177:17,19 178:1
  181:16 182:7
**good** 6:9,11 21:7
  64:5 79:18 93:6
  106:15 125:10,20
  132:18 177:12,22
**goodwill** 57:12
**gosh** 145:3
**grab** 29:1 66:7,15
**gradate** 10:12
**graduate** 10:4,7
  10:11
**graduated** 10:14
**graduation** 11:16
**grant** 4:6 30:11,16
  30:21 31:3 39:7
  39:23 40:2 42:14
  42:17 43:18 44:15
  45:14
**granted** 31:4 40:3
  42:17
**gravity** 117:9

**gray** 126:22
  131:11 142:5
**great** 157:15,24
  186:14
**greatest** 7:8
**green** 115:4
**ground** 77:8,19,22
  78:4 81:16 101:9
  107:14,16,21
  112:2,18,20
  119:11 120:1
  124:2 159:18
  164:9 165:15
**grounds** 59:21
**groundwater**
  176:3
**group** 2:18
**grow** 73:22
**grown** 72:5
**guadilio** 83:9,13
  83:14
**guess** 38:5 42:25
  73:12 88:21 92:15
  100:23 168:9
**guesses** 9:24
**guessing** 8:4 73:11
**gutierrez** 2:20
**guys** 71:23 92:12
  92:22 148:14
  180:12

**h**

**h** 3:8 4:1 5:1 6:12
  6:12,12 40:3,4
  45:17 79:9,10,13
  144:25
**half** 66:9 125:20
  125:21 177:19
**hallway** 80:18
**hand** 29:2 30:17
  30:23 31:12 39:8
  39:18 42:22 44:15

Page 14

48:2 49:9 52:9
56:20 61:17 93:17
98:20 144:4,13
146:20 148:22
154:16 164:17
182:9 188:23
**handle**  63:13
**handled**  128:12,19
**handles**  185:25
**handling**  175:20
**hands**  14:18
166:13
**handwriting**
149:3
**handwritten**
139:25 140:1
**hang**  172:20 185:8
**happened**  33:22
61:5 112:17 113:8
113:14 128:16
130:9 140:25
151:15
**happening**  130:10
130:11,14
**happens**  141:13
**happy**  125:16
**haroon**  39:9 40:3
**hartley**  94:1 101:1
136:7 140:5
141:17
**hat**  128:24
**hate**  143:1
**hauled**  150:14
151:17
**hazardous**  85:20
113:4 151:23
**head**  12:7,9
**headed**  135:4
155:7
**health**  85:16

**hear**  90:4
**heard**  7:20,23
76:18 101:13
**heat**  102:25
**hee**  45:16
**held**  132:14
**helga**  81:20
**hello**  148:3
**help**  17:5 21:17
28:18 46:24 139:2
139:7 144:8
145:18 152:14
161:15 172:12
178:4 180:17
**hereto**  19:10 22:9
23:16 25:9 27:6
30:8 48:11 91:9
106:9 114:8
143:25 152:12
162:8 178:16
181:5 183:22
188:20
**hey**  164:17
**hills**  65:11
**hire**  84:7
**hired**  84:5 155:18
173:11 174:14
**historic**  118:15
**historical**  118:16
**history**  16:13
128:14
**hit**  80:1 161:19,20
161:25
**hold**  28:12 44:9,9
61:8,8 129:8
130:12 143:11
156:7 166:17,17
179:6
**hole**  105:7 159:19
**home**  10:24 97:7,7

**homework**  157:22
**honest**  55:23 64:8
**honestly**  8:7
**hopefully**  143:3
145:24
**horses**  28:13
**hose**  103:16,20
104:22 136:12
140:9,12 159:13
159:15
**hostage**  55:18 57:5
**hour**  47:15 66:9
125:20,21 177:19
186:18
**hours**  125:14,19
**house**  11:21 14:9
14:14,19,23 15:17
16:4 141:3
**houses**  16:23
**hover**  36:19 37:20
**huh**  48:15 84:25
105:25 178:13
184:21
**hung**  143:1,3
**hussain**  1:10,18
2:1 3:4,10,13,16
3:20,23 4:3,22 6:3
6:11,12 19:6
22:12 23:22 25:25
27:9 29:13 44:23
49:20 134:14
136:9 150:7
178:19 183:3
187:5,14
**hydrogen**  123:6,9
123:12,17 124:3
**hydroxide**  124:4

**i**

**i2**  147:3
**ici**  66:25

**idea**  33:22 34:11
53:4 113:6 117:24
168:24 170:4
171:17 176:23
177:5 178:4
**identification**  4:24
19:9 22:8 23:15
25:8 27:5 30:7
48:10 91:8 106:9
114:8 143:25
152:12 162:8
178:16 181:5
183:22 184:3
**identified**  49:20
56:15 79:4 96:10
98:23 100:13
102:6,16 103:17
105:2 109:5
110:17,25 115:7
168:17 183:4
184:19
**identifies**  45:15
49:16 62:11
107:21 113:21
172:2 184:16
**identify**  72:22
82:16 88:16 93:16
123:6 124:9
**identifying**  144:19
**ignore**  115:3
**illegible**  38:11
**illustrated**  98:18
**illustration**  98:16
99:6,14 109:21
**imagine**  40:17
**immediately**
102:16 103:5
109:16 110:17
111:2 135:21,25
182:24 184:15

impeach 9:18
implements 33:18
implies 73:13
important 6:24
  7:2,7,24 9:22 12:9
imposing 131:19
inaccurate 137:8
  168:11
inch 110:6 140:10
inclination 118:2
include 38:17
included 53:15
  89:13 114:24
includes 163:11
including 71:3
incorporated 13:6
  13:7 51:21 56:11
  56:17,25 62:5
  65:24 66:5 114:5
  114:14 142:11
  167:4 182:18
incorporation 4:7
  13:14 48:14,25
  56:10,17 62:24
independent 17:13
indicate 118:18
  167:12
indicated 28:23
  94:25 118:13
indicates 147:22
individual 1:11
  46:14 51:8 81:22
  83:15 141:10
  166:25 177:8
  179:1,15,21 180:2
individually 34:22
individuals 74:15
  76:15,24 77:6
  78:3,8 81:18
indoor 4:12

industrial 4:20
  84:16 106:23
  134:3,13 135:5,11
  135:17 142:7
  146:14,19 147:7
  155:8 162:17,21
  163:3,23 165:1
  166:8 169:7
  170:10,19 182:7
  182:10 183:1,5
  184:17
industries 71:25
industry 11:13,20
  11:25 12:1,3,20
  13:2,9,18 16:6,17
  16:21 17:3 33:14
  34:17 55:5 63:8
  63:15 71:20,25
  72:8 74:8 81:12
  142:6
inform 89:2
information 5:6
  10:3 75:14 93:2
  94:15 114:23
  131:12 140:24
  158:4 173:20
  174:6 186:15
informed 128:15
  128:16 136:14
initial 132:3
initials 86:11
input 20:13
inside 95:1 149:9
inspect 32:1,10
inspected 147:19
inspection 101:1
  141:9 153:8,11
inspector 141:11
  141:16 150:21,21
  151:10,12

inspector's 136:1
  136:4
install 85:8 116:24
  138:4 145:2,7
installation 104:11
  127:6 129:21
  148:8
installed 35:3,8,9
  85:4 104:21
  116:11,15 117:4,7
  117:16,17,18
  141:22,23 145:11
  145:13,14
instance 172:3
instances 151:12
instruct 59:21
instructed 128:25
  138:4 147:20
  148:16
instruction 129:13
instructions 7:24
  129:2
insurance 43:15
  44:16
intake 77:3,7 78:5
  81:2
intellectual 89:24
intelligence 75:5,8
intended 35:5
interactions
  173:17 179:12
interceptor 150:14
  150:19 151:4
interest 36:9,11,12
  122:8
interested 10:4
  12:15,18 20:11
  73:1 94:4 115:5
  125:3 126:22
  168:18 188:21

interesting 39:21
interior 77:20
  90:23 113:12
  115:10,17,17
interject 100:20
  115:24
intermediate
  64:21
internet 47:4
interpreting
  128:21
interrogatories
  3:15,18,22 22:13
  23:24 26:1 87:22
interrogatory
  19:1 69:15 79:3
  88:18 90:20
  118:12 121:18
  126:17 127:20,24
  128:22
interrupt 12:5
  60:10 112:12
introduce 21:9,15
  21:21 29:8 46:17
  87:18 91:1,3
  113:23 143:2
  152:7 161:4 178:1
introduced 21:23
  23:21 25:12,19,24
  27:8 29:15 30:10
  47:25 91:20
  106:17 129:17
introducing 23:12
  26:23 29:17 30:2
  143:15 172:20
  180:14
investigation
  114:15 174:12
  179:24 180:5
investigations
  174:20

[involve - left]

**involve** 11:6
**involved** 11:23
    16:9 41:2 51:19
    53:4,11 74:6 76:9
    77:7 172:25
**involvement** 53:19
    82:4 83:5
**ipad** 19:12 37:6,18
    37:19,23 38:1,13
    38:21 143:20,22
    172:21
**iran** 55:18
**iranian** 57:5
**irrelevant** 30:1
    58:3
**irrespective** 71:8
**issuance** 149:24
**issue** 129:23
**issued** 136:18
    149:25
**item** 145:3 182:25
**items** 90:11
    155:25
**iteration** 72:4

**j**

**jacqueline** 179:17
**january** 139:20
    166:10 170:14,21
    170:22 171:3
**jeremy** 175:11
**job** 18:22 50:6,7
**jobs** 8:20
**jog** 6:25
**juan** 148:14
**july** 19:20 20:4
    61:24 136:17
    137:21 149:25
    154:20 165:10
    169:10,12,12
**jump** 132:8

**jumped** 141:6
**june** 94:2 101:2,15
    102:18 107:5,6,7
    136:5 142:12,17
**junked** 112:25

**k**

**k** 6:12 40:4 79:9
    81:20 157:18
**keep** 66:22 96:19
**kevin** 60:17 61:16
**khan** 39:9 40:4,12
    40:16,18 41:5,9,18
    41:21 42:17 43:2
    46:8,13
**khan's** 42:21
**kiernan** 50:11,14
    52:17 53:1,6 80:1
**kind** 12:6 94:13
**kindly** 72:23 90:19
**kirk** 2:19 20:20
    44:4 59:20 93:1
    168:5 181:21
    186:3
**knew** 75:7 114:25
**know** 6:18 8:5,6
    12:9 14:13 15:6
    16:14 17:6 23:18
    26:12,25 28:24
    29:18 30:12 32:11
    34:25 39:25 41:7
    43:24 53:8,12
    55:11 59:18 65:4
    71:24 73:13 75:1
    75:2 76:17 80:16
    80:17 82:14,25
    83:1 85:13 86:7
    88:16 92:23 93:8
    96:12,20 97:4,12
    104:25 105:4
    109:13 113:4,13
    113:14,16 115:3

115:18 116:4
117:23 122:12
124:12,22 125:1
128:11,14,20
129:14 131:5
132:3 133:20
137:11 141:2,3,4,4
141:24 144:9
145:9 146:4 149:4
149:9 150:23
151:14,17 152:16
153:18 158:25
160:5 161:7
164:18,21 169:1
170:2 175:5
176:22 177:5,5,18
181:7 186:2,9,9
**knowing** 73:1
164:16 168:18
**knowledge** 16:22
23:9 24:16 26:21
27:18 81:25 89:9
112:19 129:15
172:4 174:17
**known** 91:24
175:11
**ktracy** 2:23

**l**

**l** 14:24 45:17
81:21 83:10
**l.a.** 91:23 141:17
150:17 162:12
163:24 165:25
181:15
**lab** 95:12 96:14,21
167:8
**labeled** 122:19
**laboratory** 96:15
96:17 167:4,9
169:19 171:21

**lacountydpw**
144:21
**lacountydpw000...**
4:16
**lacountydpw000...**
4:17
**landlord** 35:25
57:20
**large** 67:2 71:6
97:14 123:7
130:16,17 140:9
158:23 172:17
**larger** 91:12 120:8
**largest** 91:11
109:16 158:24
**late** 17:25 64:18
**laugh** 119:4
**law** 2:18 83:24
85:18
**laws** 84:4 187:6
**lawyer** 28:5
**lawyers** 28:4
**lay** 77:12
**layout** 71:14 90:21
94:6,11
**lead** 174:22
**leaked** 155:14
**leaning** 12:6
**leaps** 8:19
**lease** 35:14,15,23
40:15 57:16,18,24
94:17,22,25 98:1,4
**leave** 150:16
157:15,21
**leaving** 105:7
**lee** 45:16
**left** 30:17,23 31:12
39:8,18 44:15,21
48:2 49:4 134:6
144:4,13,25
154:16

[legal - manufacture]

**legal** 110:16 111:3
150:15
**lengthy** 7:21 38:17
**letter** 4:8 133:1
147:2 151:7
**liability** 1:6
**licensed** 151:18
**life** 7:17 75:16
**light** 38:7 71:19
**limitations** 155:9
155:11
**limited** 1:6 90:14
**linda** 1:24 2:4
185:23 186:14
188:4,25
**line** 5:7 11:12
24:21 59:17 60:8
72:11 89:10
103:16 105:1,4,6
110:7,12 111:14
111:22 115:6
128:2 164:23
**lines** 115:16,19,19
**lining** 117:20,22
**link** 95:1 97:16
98:14
**liquids** 128:3,7
**list** 50:25 52:16
69:14 88:24 89:7
89:14
**listed** 51:1,8 52:17
52:19 81:18 88:22
90:11
**listing** 62:6
**lists** 51:4 62:21
**liter** 168:4
**literally** 7:5
**litigation** 178:22
**little** 6:20 10:2
12:6,17 18:24
31:10 32:6 48:1

52:4 53:8,12
63:10 72:4 75:18
77:13 85:11 88:9
100:11 101:17,22
105:20 106:4
108:23 111:2,3
114:18 118:14
128:9 132:21
139:7 147:2
148:25 163:2,3
183:14 185:8
**llc** 1:5
**llc's** 3:11,14,18,21
3:24 4:4 19:7
22:13 23:23 26:1
27:10
**llp** 2:9,18
**load** 24:24 113:25
130:25 131:24
**loaded** 93:9,10
114:1,2 130:4
131:5 152:14
**loading** 29:20 92:2
130:6,15,18,20,22
131:6,7,8 152:13
**loads** 145:24
**locate** 157:13
**located** 31:5 33:19
40:4 60:21 77:19
77:23 95:13,25
99:17 100:3 101:9
102:13,16 108:4,8
108:17 109:16
112:6 122:24
176:10
**location** 59:10
64:19,21,22 101:7
101:8 108:12
110:20 114:18
115:2,7 118:15
137:19 158:18

159:4
**locations** 115:20
149:15
**log** 91:6 126:1
132:7,7
**logged** 180:12
**long** 15:3,6 17:10
53:9 65:2 66:11
121:11 125:15
131:11,18 137:1
154:7 165:16,19
183:14
**longer** 112:9,14
132:10 140:20,20
**look** 21:25 37:14
72:15 92:14 94:9
97:14 105:9
115:16 125:2
135:15 144:3
156:10 163:7
164:1,8 166:7
169:23 182:20,24
184:15
**looked** 14:15
133:13,18
**looking** 38:5
114:20 116:4
121:5 134:1
147:11 163:1
**looks** 18:2 130:23
**loop** 20:23
**los** 2:14 15:2 31:6
67:16 84:17 93:23
132:20 133:3
134:4 135:4
138:21 139:14
140:6 145:1 153:9
155:20 158:21
160:20 176:14
184:1

**lot** 128:11
**loud** 88:25
**lower** 31:12 42:22
48:2,19 107:3
134:6
**lunch** 125:13,14
125:15,20
**luncheon** 126:11

### m

**m** 1:10 2:19 3:10
3:13,16,20,23 4:3
4:22 6:11 19:6
22:12 23:22 25:25
27:9 29:13 44:23
49:20 79:9 81:20
134:15 136:9
154:2 178:19
**macedonio** 76:13
76:20 78:2,15
83:13,14 86:21
148:14 160:7
**magic** 97:11,12
**mail** 20:23
**making** 75:1
181:21
**man** 164:20
**manage** 128:25
129:2
**management**
85:19 86:25
**manager** 14:9,11
14:14,19 15:18,20
84:2 140:9,15,22
141:2
**manifest** 113:4
151:23
**manufacture**
12:19 15:25 16:5
16:9,20 17:2
66:23

Page 18

[manufactured - mukesh]

**manufactured**
13:8 66:21 72:12
96:25
**manufacturer**
13:1 66:23,24,25
66:25 67:4
**manufactures**
60:2
**manufacturing**
11:13,23 16:16
34:16 54:22 63:7
107:17
**manzoor** 53:14,18
**map** 93:17,25 94:4
95:8 96:11 100:3
107:12 109:5
110:11,25 111:7
111:24 113:19,20
115:4 120:5 121:5
135:22 136:6
**maps** 101:5 105:8
108:2 119:25
125:2
**maq** 44:9 119:17
125:18 150:7
156:7 166:17,17
173:24 176:22
177:22 179:6
180:8 185:6
**march** 49:6
138:24
**mark** 2:10 6:14
12:5 21:1 31:14
37:5 43:24 59:17
74:23 92:6 119:20
144:15 177:14
180:25 185:1,10
**mark.elliott** 2:16
**marked** 19:5,8
22:4,7 23:14 25:7
27:4 29:14 30:6

48:9 87:7,8 91:7
106:7 114:6
143:23 152:10
161:24 162:6
178:2,14,18 181:3
182:6 183:20,24
**market** 35:5
**marking** 152:25
**marmac** 31:4
32:11 33:2
**material** 174:1
**materials** 120:25
121:3,20 124:5
156:17 159:2
**mean** 50:7 64:5
92:14 105:5
112:12,24 119:19
119:22 128:13
136:24 138:7
164:24
**means** 34:21
128:23
**meetings** 51:18
173:19
**members** 50:1
**memory** 7:1 43:21
58:19 65:10
132:21
**mention** 7:24
**mentioned** 6:17
113:22 120:23
177:1,3
**menu** 132:4
**message** 150:16
**met** 6:14
**metal** 117:23
**method** 71:1,5
**methods** 70:22
**mid** 98:4
**middle** 38:4 44:21
49:17 62:8 97:17

107:15 121:8,10
122:11 123:3,4,19
123:19,25 124:24
170:20
**milligrams** 168:4
**mind** 20:24 85:25
126:13 167:3
183:9
**mine** 142:18
152:19
**minute** 44:2 61:3
87:13,14 145:25
177:20
**minutes** 66:14
69:6 126:4,4
177:16 185:7
**mispronounced**
53:15
**misspelled** 108:8
**misspelling** 133:6
**misstates** 45:6
167:18
**mix** 34:24 74:11
103:17
**mixed** 67:17,24
68:18,22 70:1,5
71:19,22 72:11
89:12,20 103:3
161:2
**mixing** 34:19 55:4
67:8,12 68:6
70:22 71:15 74:6
75:25 76:25 77:23
77:24 78:9,10,17
78:22 80:22 81:11
86:24 99:17,19
100:7 101:17,23
102:5,7,8,10,17,24
103:22 107:17
108:24 109:2
112:2 118:16

120:24 121:1
124:3 127:3
136:11 140:10
**model** 72:4
**modest** 59:23
**mohammed** 49:25
50:4 51:8
**moment** 6:17
21:20 24:23 26:25
28:13,22 54:4
69:16 86:5 88:14
94:9 101:6 104:8
115:3 126:2 132:6
134:19 143:11
161:5 177:1
180:23 181:2
**monitored** 165:4
**monitoring** 4:21
162:21 163:4,23
166:9 169:8
170:11,19
**montes** 76:13,18
76:20 78:2,14
86:20 148:15
**monthly** 58:7
**months** 34:12 80:4
169:18
**morning** 6:9,11
181:24
**mouth** 12:11
**mouthful** 124:11
124:12
**move** 47:17
100:11 108:23
153:16
**moved** 101:17,22
153:13
**moving** 100:23
101:4
**mukesh** 79:6,9
166:10 171:2,22

Page 19

[multipage - obligations]

**multipage**  153:4 162:11 183:25
**murex**  114:5,10 149:14 173:11,17 173:19,23 174:11 174:15,19 175:3,9 175:16,20,23 176:2,5 177:10 179:22 180:3
**mute**  125:24,25
**mystery**  114:18

**n**

**n**  3:1 6:12 14:24 40:3,4 45:17 82:18,18 86:11,13 158:15
**name**  6:10,13 13:22 14:24 17:7 30:17,23 39:9 45:16,18 50:11 53:15 55:19,20,21 79:10,10,11 81:20 82:18,18 83:9 86:10,12 90:3 138:5 157:4,8,9,11 157:12,14,17,19 175:10
**named**  140:21 188:7,11
**names**  72:24 84:6 86:16 184:16
**nation's**  158:24
**nature**  175:22
**near**  105:3 115:6 120:21 121:11
**necessarily**  60:1 128:13
**necessary**  9:4 29:9
**necessitate**  127:8
**necessitated**  119:7 119:13

**necessity**  186:9
**need**  6:18 21:10 28:25 46:24 60:5 80:18 84:8 102:25 105:19 125:15 133:15 139:6,9 144:8 147:24 155:13 161:14 178:3 180:17
**needed**  84:12 136:15
**needs**  177:7
**neither**  41:18,21 68:21 70:5 164:20 164:20
**nerestant**  82:19,22 83:4
**neutralization**  147:17 148:4,9,13 148:17
**neutralizes**  147:25
**never**  51:19 153:17
**new**  8:19 15:1 44:5 46:20 57:25 64:18 109:23 110:3,6,8,13 113:23 120:2 136:17 140:21,22 152:8 161:4,10
**newer**  160:23
**nice**  32:9 66:10 185:18
**nickerson**  1:24 2:5 7:12 9:14 28:6 29:23 66:15 125:17 132:9 177:18 188:4,25
**nine**  154:7,11
**non**  84:1

**noncompliance**  5:3
**nontoxic**  63:15
**nope**  130:4 145:23 163:14
**normal**  150:22,24
**normalities**  32:4,5
**normality**  32:8
**normally**  119:1
**north**  95:9 97:16 100:11 101:17,22 102:17 103:6 108:24 109:16 110:7,18 111:2 115:13,13 122:25 124:20,21,23
**northeast**  95:15 95:25
**northwest**  95:13 95:20,20,23 123:3 123:4
**note**  19:20 44:21 52:16 53:13 62:3 89:10 110:5 142:10 163:10
**noted**  123:20
**notes**  125:10
**notice**  2:5 4:18 5:3 24:7 30:16 39:8 62:21 95:8 102:15 103:5,15 137:14 137:22 146:24 147:1 149:22,23 149:24 150:6 151:8 153:14,15 153:22 154:1 164:10
**noticed**  48:5 51:7 86:7,8
**november**  24:8 48:24 133:1

146:21 147:13 171:23,24,24,25 172:1
**ntana3**  89:13
**number**  3:9 4:2 5:2 11:14 19:5 22:12,14 23:13,22 23:24 25:13,25 26:2,20,24 27:8,10 37:22 59:23 73:19 73:22 92:7,25 93:14 126:18 127:20,21,25 130:1 144:15,21 162:13 182:8,25
**numbered**  88:10
**numbering**  182:11
**numbers**  92:11 161:13
**numerator**  89:14

**o**

**o**  40:3,3 79:10,13 81:21 83:10 144:25
**object**  59:15 165:6 167:17 168:10 174:5
**objected**  100:22
**objection**  36:15 45:6 60:8,12 77:10 100:21 156:7,8 162:23 176:20 180:7 181:17,22,23 182:2
**objections**  7:6 8:24 21:6 59:24
**obligation**  158:1 162:18
**obligations**  85:15 85:17

[observation - opened]

**observation**  140:8
**observed**  140:16
**obtain**  11:2 84:21
**obtained**  124:5
  160:17 173:21
  181:14
**obtaining**  11:9
  84:16
**obviously**  6:19
  76:3 120:22
  137:25 142:24
**occasionally**  29:9
**occasions**  7:18
**occupancy**  33:10
  34:9 58:8
**occupants**  32:24
  33:9
**occupation**  33:15
  35:16 58:21 83:20
  90:16
**occupied**  32:17
  54:6 57:15 58:12
  69:21 73:23 80:23
  86:2,18,22
**occupy**  40:12 95:4
**occupying**  63:21
**occur**  127:7
**occurred**  31:11
  33:14
**october**  26:15
  42:19 163:6 164:3
  171:9,9 172:6
**odd**  6:21 131:15
**office**  12:23 71:13
  74:22 79:1 81:19
  82:3,17 87:5
  95:12,20,22
  115:14 124:21
  126:23 129:12
  140:9,15,22

**officer**  14:5 15:12
  40:18 41:18,22
  49:20 50:5 51:24
  52:18,19 53:3
  62:12,13,14,18
  65:25 83:22 86:3
  141:2
**officerial**  84:1
**officers**  49:16
  52:17 62:7
**oh**  20:1 38:25
  83:17 92:3 161:20
  173:5
**okay**  7:13,14,18
  13:14 15:7 16:12
  16:19 17:12,22
  18:9,11,23 19:14
  19:16,19,20 20:1
  20:16 21:5,6,14,22
  21:23 22:5,6,24
  23:4,20,21,25
  24:18,25 25:5,11
  25:17,23 26:11
  29:4,5,15,16,17,23
  30:15 35:12 37:13
  38:2 39:22 40:2
  41:9 42:9,14
  43:22 44:6,11,20
  45:3,22 46:12
  47:14,19,23,24
  48:18 49:9,13,25
  50:10 51:12 52:1
  52:3 53:13 54:20
  54:24 55:23 56:13
  56:14 57:23 61:4
  61:7,11,18,19,20
  62:1,11 63:17
  64:3,7 65:16 66:7
  66:22 67:6,13,15
  69:14,18 70:19,25
  71:5 73:18 74:10

  76:3,24 78:2,14,24
  79:16 82:8 83:8
  83:17 87:20,24
  88:6,7,9,13 89:6
  89:16 90:25 91:17
  91:20 92:3 93:12
  93:18,20 94:14,25
  95:8,22 96:10
  97:4,5 98:25,25
  99:6,22 100:13
  102:5 103:5,15
  104:5,14,17
  105:10,22 106:1,6
  106:14 107:1,7,8
  107:10,11,20
  108:6,23 109:1,12
  109:19 111:6,7
  112:16,23 114:17
  116:7 117:3
  118:12 120:12,22
  121:8 122:22
  123:5 124:1,25
  126:3,19,19
  127:18,22 128:1
  128:10,18 129:9
  129:24 130:5,12
  130:20 131:16
  132:16,23 133:16
  133:18,25 134:1
  134:11 135:1,7,12
  135:15,16,17,23
  136:3,3 137:10,13
  138:1,8,12,15
  139:6,8,12,19,25
  140:2,4,14 141:1
  141:25 142:2,15
  142:21 143:4,10
  143:21,22 144:7
  144:18,23 145:10
  145:16,22 146:4
  146:16,24 147:15

  147:23 148:6,16
  148:25 149:12
  152:2,6,7,9,23
  153:7,8,15,19,21
  154:10,24 155:11
  155:15 156:12,21
  157:14 158:22,22
  159:13 160:8
  161:9,10,10,17
  163:21,21,22
  164:5,8 165:17,18
  165:21,22 166:3,6
  166:15,20 167:5,8
  167:16 169:4,9,22
  170:16,24 171:1
  171:18,20,21
  173:23 174:7,14
  174:18 175:8
  177:1,24 178:4,7
  180:14,16,24
  181:9,12 182:14
  182:15 183:8,8,15
  183:17 184:10,11
  184:24 185:15
  186:14
**old**  159:5 163:3
**older**  75:18
**once**  38:4 59:9
  92:4 112:16
  125:23 133:16
  136:11 151:6
**ones**  90:11,12
  91:12 99:19
  158:24 166:1,4
**ontario**  14:4
**open**  29:15 47:5
  87:17,19,23 88:2
  126:16 132:5
  143:8 159:14
**opened**  29:21
  47:13 123:21

[opening - page]

**opening** 88:4
**operate** 13:18 14:2
14:3,4 34:5 54:11
54:17 55:8,11
65:2
**operated** 16:15
41:8 54:6 64:22
64:23 73:4,7
75:22 76:22 120:6
121:22 126:25
151:2
**operating** 6:19 7:7
8:13 12:22 40:8
51:22,23 55:3,12
55:20 63:24 66:19
67:10,15,22 68:16
69:9 94:8 176:18
**operation** 13:15
52:23 53:19 74:25
75:3 140:18
147:24 148:1,5
**operations** 41:2
55:14 57:7 59:18
76:1 77:25 141:18
**operator** 55:9
**opportunity** 9:9
**opposed** 85:22
**opposite** 163:5
**option** 43:8
**orange** 17:9 187:3
188:3
**order** 4:18 21:9
29:8 30:1 91:4,21
136:17 137:15
149:25 185:4,25
186:16
**orientation** 95:10
115:12
**original** 186:5,7
**originated** 176:3

**osha** 85:15
**ousley** 2:25 21:17
21:20 22:2 25:4
25:14 36:23 37:1
37:9,13,16,17,25
38:8,20,24 39:2,12
39:19 47:1,2,7,11
47:24 56:7,9,12
60:19,21 61:6,8,12
61:18 87:8,11,14
87:23 88:4,6 91:5
91:15 92:2 93:13
93:18 96:2 105:12
105:14,23 106:1
114:1 125:23
126:8 129:24
130:3,10,12,15,19
130:21,23 131:7,9
131:16,22,25
132:2 138:18
139:2,8,10,14,17
139:19,23,25
143:5,13,19 144:8
145:19,23 161:15
161:18,21 162:3
170:21 172:12
178:5,8,10,13
180:17 181:10
183:13,16,18
185:19,20,21
**outside** 84:5,8,10
84:23 85:5 107:13
107:13 113:2
116:25 117:2
145:7
**overlapped** 13:16
**oversee** 76:8
174:10 175:3
177:10
**overseeing** 86:3

**oversight** 14:18
71:17 78:4 83:23
160:4
**owned** 42:1,4
112:21
**owner** 35:15,20,24
41:19,22 46:9,15
57:17,20 59:4
94:17 140:22
153:14 179:16

**p**

**p** 14:24
**p.m.** 186:18
**pac** 89:13,14,16
90:3
**pacifica** 11:22
12:22,25 13:6,15
16:14,25 17:25
18:21 32:18 33:10
40:8,12,15,19,21
40:24 41:3,8,23
42:4 54:3 55:8,12
56:10,17 57:1,6,11
57:19,25 58:11,20
58:25 59:7 62:4,8
62:18,19,22 63:1,3
63:9,10,21,24 64:9
64:17 65:7,18,23
66:4,20 67:17,23
67:25 68:3,17,22
69:9,22 71:14,18
72:3,17,18 73:7,23
74:16 75:22 76:21
79:7,17 80:9,10
83:22 86:1,17,22
88:21 89:17 90:6
90:16 94:7,15
96:17 98:11
114:14 116:22,24
119:5 120:5,19
121:21 123:8

126:25 140:21
141:14,14 142:11
148:8 151:1,13
153:13,16 159:1
160:11,11,13,17
161:2 162:17
166:23 167:9
168:19 169:20
171:22 172:23
173:3 174:10
175:2,9,24 176:4
177:8 181:19
182:17
**packages** 124:17
**page** 3:3,9 4:2 5:2
5:7 9:6 19:18 20:2
22:22,25 24:5,7,12
26:11 28:8 30:20
36:4,8,22 37:10,16
37:21 38:4 39:2,6
39:12,19,20 42:6,9
44:22 46:19 48:13
49:3,17 52:2
53:23 56:6,15
60:15,15 62:8
86:11 88:12,12,13
90:12 93:11,14
106:18 125:6
126:18,19 127:22
127:25 132:25
133:22 134:2,24
134:24 135:1,14
135:20,22,25
136:1 137:10,11
138:13,14 139:5
139:10,19,21
142:1,15 144:20
144:20 146:8
148:21,22 149:21
149:21 150:5
153:6,20 154:7,9

[page - plaintiff]

154:15 155:6,21
156:10 163:5,16
163:20,22 165:8
165:23 167:3
169:5,14,17 170:9
171:2,11,19 182:6
182:15,20 184:2,7
**pages** 1:23 38:19
38:23 43:13
129:22 131:10
138:16 146:8,11
154:7,11
**pagination** 36:18
36:20 37:5 38:21
**paid** 58:16,20
179:21 180:2
**paint** 125:4
**pakistan** 10:8,15
**paladin** 2:18
**paladinlaw.com**
2:23
**pallet** 122:13,20
122:20
**palletized** 122:23
**pallets** 122:11,12
**paper** 8:25 25:1
150:25
**paragraph** 136:17
184:15
**parameter** 103:25
**pardon** 26:8
**parents** 75:18
**part** 77:24 103:9
103:14 106:22
134:14 141:14
165:6 168:20
**partially** 59:25
**participate** 15:25
173:19
**participated** 141:8

**particular** 55:13
**particularly** 7:7
**parties** 70:6
**parts** 94:18,23
97:22,23 164:12
165:11 167:15
168:5
**party** 69:11 70:11
71:1,7 76:5 77:3
81:2 86:25
**passage** 28:1
**passing** 113:22
**patented** 89:23
90:8
**patient** 152:21
**patricia** 82:18
**pause** 181:16
**pay** 58:5,7,13,23
**paying** 59:12
**pce** 4:12 63:12
64:12 68:2,4,6,20
68:23 69:1,8
70:10,16 71:3
77:8,13,18 81:15
90:13 100:14
101:9,16 113:9
119:11,12 120:12
120:16 122:2
124:4 158:9,13
159:9 160:9,10,16
160:25,25 164:11
165:11,15 171:12
171:15 172:2
176:2 182:1
**pdf** 19:18 36:21
37:21 88:12 93:11
139:5 154:7,7
**peet's** 185:12
**penalties** 187:6
**penalty** 8:2

**pending** 29:3
89:12 166:18
**people** 14:16
72:18 150:22
**perchloroethylene**
64:12 67:20 108:7
108:13 112:5,17
158:9
**perfect** 27:3 39:1
125:21 126:7,8
133:21
**performed** 78:12
175:23 179:22
**performing**
148:12
**period** 14:10
17:17 18:8,18
43:4,6 51:21 54:2
54:5 55:12 58:8
58:11 64:12 68:1
70:1,9 71:3,4 73:6
73:10 74:15 75:21
77:14 78:15 79:19
81:15 82:9,12
83:20 86:1,17,21
94:21 121:21
151:1 158:11
188:19
**perjury** 8:2 187:6
**permanent** 155:4
**permission** 144:25
**permit** 4:15 84:17
84:21 85:23
106:23 133:15,19
133:20,23 134:3
134:14,17 142:6
143:16 144:3
162:16,17 164:24
165:2,4 182:7,8,10
182:16

**permits** 84:13
**peroxide** 123:6,9
123:12,17 124:4
**person** 6:25 7:3
25:3 85:13 134:12
138:3 182:25
183:4 184:20
**personally** 71:9
172:25
**persons** 184:16
**pertains** 184:12
**ph** 147:17,22,23
147:25 148:3
**phase** 153:1
**phone** 75:19
173:25
**physical** 71:14
74:6
**physically** 14:18
54:6 85:22
**pick** 93:3
**picture** 125:4
**piece** 85:23
**pillsbury** 2:9
**pillsburylaw.com**
2:16
**pilot** 176:8,13
177:1,3,4
**pipe** 105:6
**piping** 159:23
**pit** 103:7,12 105:3
**pittman** 2:9
**place** 8:17 9:18
32:9 79:2 102:18
147:13 155:4
188:11
**placed** 122:15
123:13
**placing** 186:15
**plaintiff** 1:8

Page 23

[plaintiffs - products]

plaintiffs  2:2,8
19:9 22:8 23:15
25:8 27:5 30:7
48:10 91:8 106:8
114:7 143:24
152:11 162:7
178:15 181:4
183:21
plan  4:12 110:14
135:8,14 147:19
planned  110:14
plans  4:10 147:21
plant  94:12 140:8
150:15
plastic  117:23
123:7,13
play  96:20 97:2
playing  97:4
please  6:10 22:22
23:18 26:12 28:21
28:22,24 29:1,18
30:12 36:22 42:6
43:23 88:23 92:4
100:24 110:23
124:10 129:17
130:13 133:16
138:1,14 141:25
145:18 150:16
169:4 172:14
173:18,19 177:18
179:10 182:21
183:12 186:7
plotted  115:4
plumbed  109:20
plumbing  4:14
84:23 106:21
109:21 143:16
144:3,24,25
plus  7:1 8:9 95:5
point  12:10 21:7
43:9 110:17,20

111:4 116:21
164:10
pointer  36:19
37:20
pointing  95:9
111:3
points  90:24 111:9
polish  157:12
polypropylene
107:14,16
pop  143:13
popped  48:1
portion  99:18
pose  9:5,11 44:5
position  15:15
18:15
possibly  38:20
58:10 72:16
postclosure  156:2
156:4
potential  127:14
powdered  124:13
pra  92:23
practice  168:9
pre  104:18
preceded  135:21
preexisting  43:7
preparation  22:19
26:7,9 27:14
prepared  48:25
113:5 114:5
115:11 149:13
167:10 174:19
182:19
prepopulated
165:3
presence  136:8
140:23 167:12
173:22
present  2:24 62:17
62:25 65:25 129:3

136:25,25 140:22
168:24 169:1
president  12:21,25
13:11 35:20 49:23
69:18 70:20 73:3
78:19 174:9 175:2
pretreat  148:18
pretreatment  85:4
136:16 138:5,7
141:21 150:12
pretty  21:25 66:21
69:19 145:9
158:22
previous  41:12,12
140:19 141:18
previously  7:16,20
9:1 14:22 18:5
19:2 22:16 26:5
28:23 29:15 30:25
57:14 87:7 129:17
131:4 135:23
136:6 183:24
primary  17:1
127:1 159:4
principal  175:10
prior  8:15 13:14
14:21 16:24 29:10
32:1 33:9,14
34:15 48:5 104:11
120:19 122:22
123:18,23 141:19
147:13 180:23
188:6
privileged  174:1
pro  167:4,9 169:19
171:21
probably  7:19,20
9:15 11:12 15:8
20:23 32:6 65:5
73:5 88:20 91:11
93:3 100:22

112:10 127:4
133:6 141:13
168:4 177:16
problem  24:22
92:5 93:1 131:11
173:13 174:16
procedures  74:11
78:21
proceedings
185:22 188:15
process  71:10 74:6
102:24 121:1
132:23 148:9,17
processes  168:21
172:5
produce  92:18
produced  88:3
92:8,17,22 153:3
162:12
product  67:1,19
67:20 68:6,12
71:8 78:5 120:8
122:3,4,14
production  14:15
14:16,18 70:22
75:24,25 78:12
80:22 82:5 83:6
93:4 98:19 103:21
107:17 114:20
115:21 118:13,22
119:6,25 127:13
168:20
products  66:21
67:18,24 68:18
69:11,15 70:1,4,10
71:2,3,7,22 74:7
76:7 77:25 78:22
80:23 81:2 86:24
86:25 89:14,20,23
96:24 97:8 102:11
103:1 119:5 120:2

Veritext Legal Solutions
866 299-5127

[products - ran]

120:3 124:6
158:12 161:1
**program** 10:11,12
28:10 155:8
**pronounce** 82:20
83:11
**pronounced** 79:5
**proper** 117:8
136:15 165:5
175:7
**properly** 100:3
102:13 109:5
115:13 118:3
128:4,8,12,20
**property** 30:12
31:5,23 32:1,13
33:14,17 34:3,13
34:18 35:15,20,24
40:4,9,11,13,16
43:5,9 45:5,11,16
45:21 46:9,13
51:22 54:7,9,11,14
54:18,21 55:3,8,14
57:15,16,20 58:1,5
58:9,12,22 59:4,9
59:13 60:3,9
64:13,17,25 65:7
65:11,17,20 66:20
67:10,16,22 69:10
69:20,21,22 70:21
70:23 72:13,23
73:4,8,24 75:23
76:22 77:15 79:7
80:6,13,24 81:24
82:10,13,23 83:21
85:5 86:2,18,23
88:19,20 89:12,21
89:24 90:16,21,23
93:17 94:16,19,23
95:14,16,21,25
96:7,9 97:17,20

98:6,10,11,12,22
99:18 104:13
106:21 107:16
112:3,6 113:1
114:15 115:10
116:19 120:7,19
121:22 124:8
127:1 128:4,7
136:8 138:6 151:3
153:14 172:24
173:3 174:13,21
175:19,25 176:3
176:11,19 179:17
179:25 180:6
181:25 183:2,6
**propose** 185:23
**proprietary** 67:8
68:23 77:25 89:19
90:2,11 96:23,24
97:8 102:11
120:24
**protections** 89:25
**provide** 8:2 9:2,22
28:19 69:14 72:7
114:23 150:2
151:20 156:22
157:13 160:22
162:19 186:6
**provided** 17:19
20:8,13 35:13
72:24 77:18 92:13
94:15 151:23
160:10,11 170:15
188:19
**provider** 158:13
**provides** 98:1,3
136:7 144:4
**providing** 156:4
173:20
**public** 84:18 91:24
93:24 106:12

153:10 181:15
**pull** 146:11
**pump** 103:7,12
105:3 140:12
159:14
**pumped** 120:9,16
123:10 150:14
151:4,24
**pumping** 150:18
160:5
**purchased** 34:22
35:8 54:14 68:7
**purchaser** 45:15
46:3
**purportedly** 93:25
**purpose** 17:2
118:7
**purposes** 16:6,10
35:4 54:22 84:20
84:24 99:22
106:14 117:9
144:18 186:9,11
**pursuant** 2:5
57:16
**pushed** 18:3
**put** 28:6 29:1
37:15 86:10 91:25
92:17 105:6,16,23
118:2 122:6,12,19
149:8 164:15,21
166:15 181:16
**putting** 69:8
107:20 117:7

| q |
|---|

**qualification** 67:7
**qualified** 67:21
**qualify** 64:16
**quantities** 67:3
69:3 71:6 76:6
**quantity** 67:2
120:8

**question** 19:23,24
22:11 28:8,12
29:3,4 31:13 41:5
41:12,16 43:25,25
44:4,5,10 45:9
59:22 67:21 68:14
84:13 85:11
101:13,14 110:23
119:18,22 128:5
148:6 165:7,12
166:18 167:2
179:10,20 180:21
181:20
**questionnaire**
4:25 184:3
**questions** 7:1,5,11
8:23 9:5,10 27:23
28:2 47:15 59:16
59:23 60:4,6,9
63:19 64:14 65:23
86:15 125:14
132:19 158:7
163:15 166:19
172:18 173:16
174:6 182:1,2
184:23 185:1
**quick** 115:25
177:17
**quickly** 47:18
125:10
**quitclaim** 36:5
**quitclaimed** 36:9
36:11,12
**quite** 11:13 82:24
94:6 102:7 149:13

| r |
|---|

**r** 40:3 81:20,20,21
82:18 86:11,11,13
86:13 97:18,19
**ran** 98:4 103:17
114:19 159:19,23

Veritext Legal Solutions
866 299-5127

[rancho - reload]

**rancho** 65:12,13 65:14,17
**raw** 120:25 121:3 124:5 159:1
**reacquire** 43:9
**reacquired** 46:13
**read** 28:8,13,15 43:20 88:25 102:8 145:3 167:18
**ready** 25:13
**real** 32:3 45:24 115:24
**reality** 8:21 59:20 92:20
**realize** 31:9 58:25 63:19 64:4,9 67:7 68:6 72:3 79:20 85:13 90:13 99:24 131:13 132:19 148:6
**realized** 58:4
**really** 7:10,12 8:3 9:12 14:12 58:19 60:5 73:13 88:19 88:21 125:18 176:7
**reason** 53:1 55:13 55:17 72:2 137:5 165:2 178:23
**rebar** 117:7
**recall** 17:7 31:22 40:17 45:4 50:8 54:24 55:1,25 57:4,13 58:10,19 68:3 72:1,25 79:5 80:15 82:22 84:9 86:17 88:23 89:4 98:25 101:21 102:4,9 108:21 109:13,20 112:7 112:14 116:11,15

117:3 119:3 123:16,23 134:18 136:23,25 151:3 156:3 157:4,14,19 157:24 158:12 159:17
**recalled** 83:9
**recalling** 44:19
**receipt** 137:16
**receive** 10:17 153:15
**received** 124:13 137:18 173:9
**receiving** 137:22 154:3
**recess** 66:17 126:11 177:25
**recitation** 12:15
**recognize** 19:14 24:2 42:21,23 44:1 45:1,15,18,21 52:14 62:1 86:12 106:24 142:21,23 164:5
**recognized** 43:1
**recollect** 15:6 43:21
**recollection** 8:4,7 15:7 28:3,19 42:25 53:2 58:15 64:7 80:11 82:8 82:12 83:5 84:6 88:17 89:7 94:11 100:4 103:11 104:20 108:11 110:12,19 111:9 112:1 115:20 117:6,25 119:10 129:11 132:23 133:9 136:20 137:6,22 142:22

145:6,10 150:3,17 151:22 154:3
158:2 160:16 163:17 165:13 170:6 171:13
**recommendations** 147:16
**reconvene** 126:6
**record** 6:10 7:4 8:18 29:23 41:14 48:21 66:18 68:13 75:20,20 79:9 99:12 106:11 116:4 125:4 126:10 132:10,13 132:14 144:19 149:22 151:19 153:9 162:10 181:17
**recording** 31:10 39:9
**recordkeeper** 80:2
**records** 92:11 104:11
**rectangle** 118:15
**red** 118:15
**reduce** 105:21
**reduced** 188:12
**refer** 29:10 56:4 60:13 67:11 129:16
**reference** 48:8
**referred** 19:8 22:7 23:14 25:7 27:4 30:6 48:9 91:7 106:7 114:6 143:23 152:10 162:6,21 178:14 181:3 183:20
**referring** 19:24 39:6 89:16 127:18

136:21 167:23
**refers** 119:15 147:7
**refilling** 160:5
**reflected** 115:20
**refrain** 173:20
**refresh** 21:16 22:4 25:11 28:3,18 108:11 110:19 145:5 165:13 171:13
**refurbished** 160:23
**refurbisher** 160:22
**regard** 72:9
**regarding** 173:1
**regular** 51:17 75:12
**regulations** 85:16 85:18
**reinspection** 150:16
**reintroduced** 29:24
**relate** 172:22 181:18
**related** 147:18
**relates** 129:21
**relating** 153:10 174:11,19 179:23 180:4
**relation** 84:16
**relationship** 40:24 41:6
**relevance** 59:16 59:17,21 181:24
**relevant** 60:4 63:14
**reload** 105:15 131:3,4

[relocated - right]

**relocated** 59:1
65:7 113:2
**remain** 113:1
**remarks** 147:15
**remediation**
174:12,16 179:24
180:5
**remember** 15:8
31:24 45:18 54:8
57:21,22 58:2,24
72:16 100:17
108:19 137:24
157:12 158:16,18
158:20
**remembering** 44:8
**remote** 2:3
**removal** 129:21
**remove** 119:22
151:5 176:9
**removed** 53:2
112:24 113:12,13
113:17 151:15
**rent** 58:5,8,13,16
58:20,23 59:12
**reopening** 126:13
**repackaged** 68:7
70:6,11 120:3
**repackaging** 71:2
71:7 76:5 77:3,7
78:6 81:2
**repeat** 110:22
124:10
**rephrase** 101:14
**replied** 177:3
**report** 4:21 114:4
114:22,24 136:2,4
136:7 140:5,7
151:20 156:2,4,15
156:23 162:22
163:4,10,19,24
166:9 167:4,8,10

167:22 169:8,19
170:3,11,13,19
171:22,25 173:9
**reported** 1:24
163:13 164:11
168:3,6 171:10
**reporter** 7:3 13:24
19:9 22:8 23:15
25:8 27:5 30:3,7
48:10 66:12,16
79:11 91:8 106:8
114:7 132:11
143:24 152:11
162:7 178:15
181:4 183:21
186:17 188:19
**reporting** 170:3
**reports** 156:11
165:1 168:16
173:12 174:19
**represent** 6:14
93:22 147:6
163:11
**representatives**
173:23
**represented** 171:9
**represents** 105:4
171:11
**request** 19:7 20:16
28:25 88:18 92:15
92:23
**requested** 5:6 39:9
67:9 158:4 188:17
188:18
**requests** 3:11,24
4:4 20:3 27:10
**require** 84:22
**required** 21:3
118:9 156:11,16
164:25 166:13

**requirements**
84:21
**resale** 70:16 71:2
123:14 158:8
160:9
**resell** 121:14
**reselling** 76:6
**resold** 69:12 77:14
87:1 124:14,16
**resources** 31:4
32:11
**respect** 26:19
59:24 67:8 84:22
**respects** 64:10
**respond** 7:11 8:6
19:3
**responded** 72:24
**response** 3:10,13
3:20,23 4:3 9:12
9:16 19:6 22:1,13
26:1 55:24 89:11
101:10 126:17
127:20,24 128:22
128:23 129:13
153:3
**responses** 3:17 7:6
8:3,5,25 9:5,10
19:2 20:3,14,17,18
23:7,23 24:14,15
26:21 27:9,16,17
64:11 69:15 77:18
79:3 82:17 87:22
90:20 93:4 118:13
118:18 120:15
121:18 123:6
**responsibilities**
15:19,24 51:15
52:23 80:21
166:23
**responsibility**
50:20 81:1 177:9

**responsible** 77:2
78:4,9,16 83:23
84:2 86:3,23
134:13 138:3
148:12 160:4
183:1,4 184:19
**rest** 90:14
**restate** 45:9
**restroom** 96:13
**result** 70:19 71:12
**results** 156:15
163:16 164:14
165:7 167:12
168:11,13 169:23
**retain** 186:7
**retaining** 96:20
**return** 160:12
**returned** 166:4,5
**returning** 65:22
98:16
**revealed** 140:9
**review** 9:3,9 26:5
28:22 44:4,13
88:24 135:8
174:18 186:6
188:16
**reviewed** 20:7
22:18 134:18
**reviewing** 111:24
**rfas** 21:3
**rich** 1:5 3:11,14,18
3:21,24 4:4 6:15
19:7 20:9 22:13
23:23 26:1 27:10
178:21 179:3,16
**richard** 179:17
**right** 6:22 10:20
12:23 16:2 20:6
20:18 21:5,5
23:10 29:22 40:10
40:13 42:22 45:13

[right - see]

46:5 48:19 49:1,6
49:8,9,22,24 51:3
52:9 54:16 56:1
56:20 61:2,17,22
65:13 66:2,21
82:2,20 84:19
89:15,15,18 92:19
95:7,11,11,17 96:8
97:1,11 98:17,20
98:24 99:19 100:8
100:11,12,16
106:19 107:3
108:20 109:6,14
109:18,25 111:1
111:10,16 113:3
118:17 120:10,10
120:13,17 121:2
121:15,19,25
122:16 123:22
124:15 127:12
130:1,19 132:24
134:16 135:6,24
137:9 138:13,24
138:25 142:2,4,9
142:18,20 143:9
143:10 144:17
145:9 146:5,20
147:19 152:4
153:7 154:19
155:1,5,10 157:20
158:10 161:21
171:4 172:10,15
173:7,10 175:6
178:12 179:13
180:24 182:9
183:19 184:21
**rinsate**  104:22
127:8
**rinse**  110:2 119:13
127:2

**rinsed**  118:19,23
**rinsing**  119:7
**robert**  94:1
**rogers**  158:14,14
158:15
**role**  14:8 17:13
62:13 70:19 80:3
174:9
**rolls**  60:2
**room**  8:16 103:3
**rotate**  143:17
**rotating**  144:10
**rough**  101:8
**rougher**  148:25
**roughly**  7:18 13:3
13:5,16 18:3,6,13
52:7 69:22 72:18
73:1,8,18,20 74:2
78:16 95:4 117:16
169:18
**round**  47:11
**rr**  96:10
**run**  80:18 159:13
159:15 185:14
**running**  97:16
110:13
**runs**  110:7
**rush**  28:21

**s**

**s**  3:8 4:1 5:1 6:12
6:12,12 79:9,10,13
82:18 144:25
157:18
**safety**  85:16 145:2
**sale**  40:11 46:8,8
57:9 88:20 89:13
112:17 123:18,24
165:14,15
**sales**  113:9
**sample**  162:18,19
164:9 165:7

167:13,13 169:24
171:8,8,10
**sampler**  145:2,4
**samples**  96:19,20
96:22,23 111:20
**sampling**  110:17
110:20 111:4,9
156:16 162:14
164:8,10
**sand**  165:25
**sanitary**  126:21
127:2,9
**sanitation**  84:18
91:23 93:24
131:13 133:3
134:4 148:19
162:4,12,15,20
163:25 184:1
**santa**  2:21
**satisfied**  150:1
**save**  28:7
**saw**  72:16
**saying**  9:24 66:22
167:19 168:3
**says**  43:14 44:16
45:7 49:4 51:6
56:8 61:13 64:2
97:20 99:9,9
107:14,16 108:15
111:3 118:15
136:24 140:16
147:3,17 150:13
156:13 162:1,3
166:4 167:23
170:14
**scale**  131:12 142:5
149:17
**scavenging**  93:2
**schematic**  149:12
149:13

**school**  10:4,7
**screen**  12:6 21:17
23:19,25 25:21
26:25 56:5 87:21
119:23 131:4
143:17 172:21
180:11
**scroll**  19:18 22:21
24:4 26:11 28:14
36:3 38:22 42:6
43:12 48:18 49:3
53:23 60:14 92:1
93:11 105:11
126:17 133:21
134:23 138:14
142:15 146:7
147:1 148:21
149:21 150:5
153:5,19 154:6,15
154:22 155:6
163:4,19 165:23
167:2 169:4,17
170:9 171:1 182:5
184:6
**scrolling**  36:17
**sealed**  120:11,16
121:25 124:21,23
**second**  8:12 27:1,2
36:4 49:3 61:4
79:10 130:3,5
144:6 145:3 155:6
163:21 184:6
**secondly**  140:16
**secretarial**  81:23
**secretary**  60:18
61:13 62:13
**section**  179:3
184:7
**see**  12:7,12 19:12
19:17 20:1 22:3
22:24 23:2 24:9

Page 28

[see - shows]

25:12 29:18 30:13
30:14,18 31:11,18
31:24 36:6,20
38:21 39:10,14
42:12,22 43:13
47:16 48:18 49:4
49:7,18 50:10,12
50:25 51:2,10
52:5,9,18,20 60:16
61:3 62:9 63:3
87:20 90:3 92:6
93:12,14 94:5
103:8 104:6 107:4
107:18,24 108:9
108:24 109:21,24
110:9,16,24 111:5
112:5 113:21
114:25 115:6
118:14 124:25
130:24 133:12,23
134:6,11 135:22
136:1 142:5,8,13
142:16 144:9,10
146:20,22 147:4
147:16,23 148:22
149:6 150:4,12
152:5 154:15,22
155:7 156:19,20
161:7,16 163:5
164:2 166:9,11
167:6,7 169:11,18
169:24 170:16
171:2 172:10
178:3,7 180:20
181:7 184:7
185:12
**seeing** 133:10
**seek** 174:6
**seeking** 144:25
**seen** 9:1 22:15
26:3 27:12 30:25

39:25 42:15 43:19
43:25 48:16 49:13
56:18 146:18
149:2 150:9,25
153:17 154:5
156:25 176:6
178:24 184:4
**selected** 162:11
**self** 4:21 162:21
163:4,23 166:9
169:8 170:11,19
**sell** 45:21 122:7
160:20 171:15
**selling** 45:4
**send** 153:14
**sent** 161:11 167:9
**separately** 92:13
**september** 56:25
60:25 62:6 139:17
153:12 154:2
**sequest** 89:13
**series** 47:16 48:4
88:22
**serve** 53:6 79:23
80:2,12 175:1
**served** 62:17,25
65:25 79:16 81:23
**service** 106:21
**services** 17:19
179:22 180:3
**serving** 50:19
62:12 81:9
**set** 3:12,15,19,22
3:25 4:5 19:7
22:13 23:24 26:1
27:10,20
**seventh** 37:1
**sewer** 104:4
111:14,14,22
127:2,9,16 182:17

**sewers** 126:21
**shah** 4:8 13:7,15
16:14,24 17:24
18:21 32:17 33:10
34:6,10,17 35:2,5
35:9,11,15,21,25
41:6,7,19 42:1
48:14 49:1,15
50:5,5,16,20,22
51:13,21 52:24
53:19,25 54:5,11
54:17,20 55:2,7,19
57:10,12,15,17,24
58:4,7,20 63:6,10
63:12 66:20 67:16
67:23,25 68:17,22
69:9,20 70:10,17
71:14,18 73:3
74:16 75:21 80:8
83:21 86:1,17,21
120:6 121:21
126:25 133:24
137:23 138:3
140:19
**shaikh** 1:10,18 2:1
3:4 6:3,9,11,13,23
7:15 12:12,14
25:19,24 29:14
31:5 36:9 38:12
40:3 42:18 44:14
44:23 46:6 47:17
47:21 49:21 50:1
51:4,8,14,14 52:9
52:12,18,23 53:14
53:18 58:18 61:21
93:8 101:13
106:17 114:11
119:24 125:14
132:19 133:6,11
134:15 136:9
137:19 140:4,9

141:6 150:7 154:2
161:8 162:14
166:22 168:12,15
178:18 179:14
183:4 185:2,11
186:6 187:5,14
**shaikh's** 3:10,13
3:16,20,23 4:3,22
19:6 22:12 23:23
25:25 27:9 50:4
50:11 87:21
178:19
**shake** 86:16
**share** 28:9 48:7
132:3
**shareholder** 53:25
66:4
**shares** 47:5
**shaw** 2:9
**shelley** 60:17
61:16
**ship** 122:13
**shipped** 122:1
**shipping** 120:19
122:21,22
**short** 17:16 96:15
**shorthand** 188:11
**show** 36:24 37:6
38:7 75:9 90:22
101:6 105:9,17
107:2 113:19
119:25 183:12
**showed** 74:21
140:19 148:19
**showing** 4:12
36:18,25 107:9
144:11 145:13
**shown** 106:1
**shows** 37:22 99:3
99:6,8 110:6
165:10

Page 29

[shrinking - softeners]

shrinking   106:3
shuffle   25:1
shut   133:4
side   96:7,9 97:19
  97:20 98:5
sign   9:6 87:12
  164:18,21,23
  166:13,14,25
signal   130:25
signature   19:21
  23:4 24:11 26:16
  26:17 42:22,24
  44:22,24,25 45:23
  49:10,11 52:8,14
  61:1,23,25 134:7,9
  137:16,18,25
  142:16,19,24
  154:16,17,18
  155:22,23,24
  163:6,8,9 164:1,5
  166:9 169:13,16
  171:2,6 182:21,22
  184:7,8,9 188:24
signatures   48:19
  48:22 56:21,22
signed   20:4 86:9
  87:11 163:12
  164:3,4
similar   15:20
  21:25 22:11 41:5
  67:19 68:11
similarly   13:8
  41:21 57:18 58:13
  70:25 76:8 77:2
  85:3
simple   43:24
simpler   75:2
simplest   126:1
simplicity   91:25
simplify   48:6

simply   117:4
  118:1 125:6
single   60:10
sink   103:18
  104:23 105:2
  136:12 140:11
sinks   126:23
sir   9:8,22 10:2,4
  10:15,17 11:3,11
  11:25 13:20 14:2
  15:4,13,23 16:12
  16:25 17:7,24
  18:23 19:12,17,25
  20:7 21:9,23
  22:11 23:2,13,22
  24:2,5,12 25:11
  26:12,17,19,24
  27:9,12,22 28:14
  29:18 30:10,15
  31:1,3,12,20 32:2
  32:14 34:4,22
  35:13 36:3,8,17,19
  39:6,23 40:7 41:5
  41:15,25 42:7,22
  43:2,13,18 44:18
  44:21 45:3,10,19
  45:25 46:18 47:25
  48:16,21,24 49:3
  49:11,21 50:2
  51:2,13,22 52:2,5
  52:10,16 53:13,23
  53:24 55:13 56:2
  56:15,18,22 57:3
  57:14 58:3 60:13
  60:16,23 62:3,16
  62:21 63:17 64:2
  64:4,8,9,16 65:20
  65:23 66:8,19
  67:6,21 68:5,16,21
  69:16 70:14 72:2
  72:15 73:1 74:5

75:6,20 76:15
  77:12 79:3,20
  81:6 82:17 84:15
  85:25 86:12,20
  87:6 88:14 89:10
  89:23 90:19 91:20
  93:22 94:14 97:9
  98:16 100:1
  101:15 102:9
  104:7,20 105:1
  106:24 107:3,20
  108:23 109:19
  111:22,24 112:7
  112:13 113:7,21
  115:3,12 116:10
  117:15 118:8,21
  120:22 122:2,8,22
  123:6 124:19,25
  126:21 128:2,21
  129:6,10 131:19
  132:25 133:9,21
  134:1,23 135:11
  136:20 137:3,11
  138:2,12 139:1
  141:16,20,25
  142:10,21,25
  144:2,22 145:5
  146:17 147:6,11
  147:16 148:6,22
  149:5,20 150:5,9
  150:11,17 151:3
  151:14,22 152:3,8
  153:4,8,20 154:4,6
  154:8,14 155:6
  156:10 157:21
  158:7,18 159:11
  161:5 163:1,10,12
  163:20 164:6,9,24
  165:12,23 166:7
  167:2,12 170:9
  171:1,19 172:9,17

172:25 173:14
  174:18 175:8,21
  176:15 177:2,13
  178:24 179:10,20
  180:14,24 181:8
  182:5,13,15,24
  184:4,7,23 185:16
sit   31:20 33:5
  44:18 58:18 70:14
  102:1 113:7 119:3
  128:5 129:10
  137:5 168:23
  175:21 176:16
site   4:12 54:21
  55:9 71:23 89:3,8
  94:1 96:4 136:21
  153:13
sitting   25:2 57:3
situation   6:19 8:8
  55:25
six   34:12
sixth   19:18
size   105:21 106:4
  109:13
skee   157:8,11,17
skip   129:22
skipped   177:12
skipping   38:19
slow   61:8 93:13
small   68:1 69:3
  159:10
smaller   67:2 71:7
  76:6 78:6 123:13
  123:16
smiling   75:10
soaps   67:3
soda   123:21 124:4
sodium   124:4
softeners   71:20
  89:11

Page 30

[software - street]

**software** 28:10
**soil** 176:2,10,17,18
**soils** 156:17
**sold** 45:11 46:14
  64:12 68:7 69:2
  70:6,12 74:8
  81:15 89:20
  112:25,25 113:15
**sole** 46:9,15 51:23
  53:24 62:18,22,25
  65:25 66:1 74:20
  76:4,24
**solicited** 145:7
**solid** 85:20
**solids** 150:12,13
  151:5,14,15,25
**solvents** 63:13,13
**somebody** 75:8
  105:6 141:2 157:9
  166:12,13
**somewhat** 17:12
  115:9
**soon** 152:13,18
**sooner** 100:22
**sorry** 12:5 13:20
  24:18 41:11 44:1
  51:12 61:9 79:11
  80:9 95:14 113:24
  116:2 119:16,17
  131:18 139:7
  145:18 180:8,13
**sort** 7:10 8:14 29:7
  41:15 44:21 55:24
  84:13 99:17
  107:15 114:19
  121:8 156:1
**sound** 177:22
**sounds** 11:11 93:6
  106:15
**source** 127:1

**sources** 127:15
**south** 2:12 97:16
  122:25
**southeast** 121:6,9
**southwest** 96:9
  98:21 99:16
  107:11
**space** 125:6
**spare** 94:6
**speak** 7:9
**speaking** 84:15
**specialty** 13:1
  71:24 74:7
**specific** 28:1 44:19
  55:17 70:18 80:16
  112:15 119:10
  128:10 129:14
  137:1 163:15
  165:21 168:12
**specifically** 57:4
  64:14 80:15 84:7
  84:15 119:3
**speculating** 113:11
**speculation** 176:21
**spell** 6:10 157:12
**spend** 75:19
**spill** 118:11
  128:11 129:13
**spills** 119:5,11
  127:7,14 128:3,6
  128:25 129:2
**spoke** 134:19
  180:8
**spread** 38:12
**square** 95:5
**squiggly** 103:16
**squire** 175:11
**ss** 187:2 188:2

**stage** 147:7
**stamp** 43:15 61:17
  92:18 107:4
  144:20
**start** 18:21 37:3
  132:8 135:2
  138:15 165:24
  169:6 170:12
**started** 18:11
**starting** 18:13
**state** 6:10 10:25
  51:20 60:8,17,18
  60:19 61:13,15
  62:16 83:24 84:3
  85:18 181:23
  182:2 187:1 188:1
  188:5
**stated** 81:22 98:4
  120:15 168:5
  176:2 181:24
**statement** 49:5,15
  52:5 112:13
  128:22
**states** 1:1 85:14
  89:11 128:2
  134:12 140:7
  142:6 149:23
  150:11 153:12
  182:25 187:7
**stationary** 99:21
**status** 40:19
**steam** 102:15
  103:6 105:3
**steffan** 66:24
**step** 34:4 54:3
  74:24,24 80:2
**stephanie** 2:11
  92:15
**sticky** 48:1
**stipulate** 186:8

**stipulated** 186:13
**stipulation** 185:4
  185:24
**stock** 41:19,22,25
  42:3 49:5 52:6
  53:25
**stone** 20:12 173:18
**stop** 93:13 125:24
  125:25 131:17
**stopped** 131:23
**storage** 33:18 69:2
  71:15 77:8,19,22
  78:5 81:16 94:18
  95:2 97:14,21,21
  98:1,10,22 99:1,15
  99:15,22,25
  100:10,10,14,18
  101:9,16,20,25
  107:9,15,21,23
  108:16,17 112:2
  112:18,20 119:11
  119:13 120:1
  122:15 123:10
  124:2,2,3 159:18
  165:15
**store** 94:23
**stored** 69:1 77:8
  77:19 88:18 89:3
  89:8,12 90:14
  97:25 120:5,11,18
  121:3,20,25 122:9
  122:23 123:7,17
  123:23,25 124:8
  124:19,20
**strange** 92:10
  113:24
**street** 2:12,20
  28:18 31:6 34:6
  35:16 36:10,13
  40:5,9 42:18 45:5
  45:11 46:8,15

Veritext Legal Solutions
866 299-5127

[street - tanks]

50:23 51:22 54:7
54:18 55:3,14
57:7,15,20 58:5,9
58:12,21 64:13,17
65:1,3,7,11,17
66:19 67:10,16,22
68:17 69:10,20
70:21 72:13,23
73:4,7 75:23
76:22 77:15 79:7
80:6,13,24 81:3,24
82:10,13,23 83:21
86:2,18,22 89:21
93:17 94:7,18
106:20 112:3
114:15 120:7
121:22 138:6
151:2 153:11
155:1 158:21
159:5,7 172:24
173:3 174:12,21
175:19,24 176:10
176:19 179:17,25
180:6 183:2
**strike** 29:25
**stuck** 130:24
131:23
**studies** 11:5,17
18:5 176:8
**study** 176:13
**stuff** 41:15 63:7
**subject** 21:6 89:24
**submit** 156:4,23
164:25
**submittal** 106:22
110:14 144:13
**submitted** 86:10
131:14 155:3
156:24 163:24
174:21 183:3

**subpoena** 153:3
**subsequently**
32:17 133:20
**substances** 174:22
175:13
**suffice** 86:20
**suggest** 186:3,12
**suggestion** 132:7
**suite** 2:13
**summary** 137:8
**supervise** 75:25
79:2
**supervised** 14:16
78:24 79:1
**supervisor** 74:14
74:20 78:19 87:4
128:24
**supervisorial**
173:1
**supervisors** 74:18
**supplemental** 3:17
23:23 87:21
**supplier** 158:13
**suppliers** 69:11
**supply** 159:4
**support** 145:7
**supported** 118:2
**supporting** 114:13
**supposed** 156:2
174:1
**sure** 12:7 17:4
41:14 67:15 68:15
69:7 99:12 100:21
101:12 103:13,23
110:24 119:21
136:23 138:10
143:8 145:9,14
155:21 156:24
160:20
**surprising** 46:2

**surrounding**
149:9
**survey** 135:5,11
135:17,21 136:7
136:21 140:19
141:19,19 146:14
**surveys** 146:19
**suspect** 92:18
**suspicion** 92:19
**swirl** 130:21
**sworn** 6:4 188:8
**system** 48:7
104:21 111:15
114:19 118:8
127:2,6,9,16
141:21,23 147:17
147:22,23,25
148:3 176:17
182:11

**t**

**t** 3:8 4:1 5:1 13:25
82:18,18 144:25
**t.s.** 86:11
**tab** 87:9
**tabs** 47:3
**taisho** 144:24
**take** 6:18 28:15,22
28:24 29:2,4 34:4
39:24 47:20 66:8
88:14 94:9 98:14
104:15 115:16
122:6,17 155:13
157:23 177:24
186:5
**taken** 2:2 66:17
91:22 112:24
121:24 126:11
177:25 188:10
**takes** 87:13,14
131:18

**talk** 28:4,5 175:17
185:6,13
**talked** 77:13
**talking** 9:13 39:14
39:14 61:4 68:5
68:10 83:13 85:21
96:22 97:4 120:13
122:2 135:9
153:25 174:3,4
**talks** 28:5
**tallman** 136:6,21
140:5,7 141:16
**tallman's** 137:8
**tank** 69:2 77:8,19
77:23 78:5 81:16
98:22 99:1,4,5,7,8
100:10,10,14,18
101:9,16,20 102:1
102:7,8 103:7,12
107:23 108:8,13
108:17 109:3,8,15
109:16 112:6,8,18
112:20 113:8,14
119:11 120:1,9
121:24 122:6,17
123:2,7,10 127:4
140:18 159:14,16
159:18,22 160:6
165:15
**tanker** 159:10
**tanks** 33:18 35:3
77:24 99:2,3,4,11
99:15,16,17,19,20
99:25 100:6,7
101:18,23 102:5,9
102:17 103:17,21
104:22 107:9,15
107:16,17,21
108:24,25,25
109:20 110:2
112:2,2 118:16,19

Page 32

[tanks - time]

120:21 124:2,3
125:3 127:3
136:11 140:11,13
tap   38:4,7,20 39:2
taped   124:22
tapped   38:25
tc   1:5 3:11,14,17
3:21,24 4:4 6:14
19:7 20:9 22:13
23:23 26:1 27:10
178:21 179:3,16
tca   167:14 168:20
168:24 170:1
172:2
tce   59:19 64:11
168:20,24 169:25
team   10:24
teams   10:25
tech   13:24
technical   61:10
145:7 164:19
technically   75:2
technologies   8:20
technology   2:4
75:14
tedious   74:25
tell   25:13 36:6
56:7 60:15 125:15
138:15 153:22
157:25 167:6
169:21 170:16
temperature
103:3
ten   66:14 73:17,18
74:2
tenant   35:25 57:17
57:19,25 58:4
59:8,13
tenants   98:12
tend   168:8

tendency   28:6
test   58:19 163:16
164:14 173:12
177:1
testified   6:5 18:4
121:12
testify   158:2 188:8
testifying   156:8
testimony   8:1 9:23
28:20 64:8 141:9
165:6 188:14
testing   163:11
169:23
tetrachloroethyl...
164:11 171:11
tex   17:8,8,19 18:1
texas   10:9,12,21
11:3,6,18
texfi   13:19,22,25
14:2,6,8,11,21
15:21 16:8 18:2
18:15,19
textile   12:2,20
13:2,8,17 16:6,7
16:17,20 17:3,21
33:13 34:16 55:4
63:8 71:20,25
74:8 81:12
textiles   11:21,24
16:5
thank   6:13 14:17
17:22 18:23 21:6
23:21 24:18 25:5
25:16,22 26:19
27:20 34:2 35:12
36:16 39:4,4
43:12,23 45:8
46:6,17 50:10,25
52:1 53:13,22
55:23 56:2,3,9
60:11 65:16 67:6

67:14,14 73:18
79:16 83:17,19
86:7,20 95:22
96:10,14 105:17
116:6 123:5
124:25 125:6,8
126:9 129:5,10,16
130:8 132:13
133:17 134:22
138:1,12 141:25
142:25 145:16
147:10 148:21
149:20 152:2
157:1 158:3 160:8
165:20,22 172:8
174:18 178:12
185:9,9,11,16,17
185:19,20
thanks   44:6
101:11
thing   6:23 28:16
32:8 64:16 75:11
122:19 166:12
175:6 176:12
177:6
things   97:13
127:10 137:1
143:1
think   7:10 14:25
15:5 19:17 20:23
21:1,2 37:7 38:7
39:13 60:5 66:10
72:6 80:4 82:21
96:6 98:18 100:5
104:24 109:9
112:9,10 118:9
119:17 125:21
126:1 131:22,22
133:14 135:13
138:8,9 139:22
145:4,21 148:19

154:10 157:8
158:16,17 168:11
172:19 180:8
185:1
thinking   75:4
third   51:7 69:11
70:6,11 71:1,7
76:5 77:3 81:2
86:25 153:5
thought   92:12
thousand   109:7
threats   55:20,21
three   7:19 15:5
18:13 37:4 65:5
73:5 99:15 100:1
108:25 110:6
146:11 147:8
158:15 172:5
throw   119:4
tigers   94:17,22
95:4 97:22 98:5,9
time   6:18 9:17
13:5,16 14:10
17:10 18:12 28:1
28:7,15,23 36:13
40:7 43:4,6,9
46:12 51:21 54:2
54:5 55:18 58:11
62:17 64:13 65:24
66:2 68:2 70:9
71:3,4 73:6,10,23
73:25 74:15 75:15
75:19,21 76:21
77:15 79:19 81:15
82:9,12 84:5,6
86:1,21 87:4
90:14,24 94:12
98:9 100:21,24
104:10 109:19
110:14 112:9
113:25 116:21

[time - uncertain]

117:16 118:10
119:5,19,25 120:5
121:21 125:9,11
126:25 128:13
133:12 136:13
137:1,1 145:14
151:1 153:9 156:1
158:11 160:19
163:12 166:24
176:19 177:15
185:16 188:11
**times**  41:25 42:3
101:4
**timing**  125:13
**timings**  14:13
**title**  37:10 39:15
39:15 43:15 44:16
50:5 79:18
**titled**  48:13
**today**  6:16,25 8:1
9:23 10:24 27:23
31:20 33:6 44:18
57:3 58:18 64:9
65:20 70:14 102:1
113:7 119:4 128:6
129:10 136:8
137:6 158:2
168:23 175:21
176:16 178:23
**tomas**  76:13,17
83:14 148:14
160:7
**top**  29:12 37:10,11
42:9 43:14 47:3,4
52:5 56:8 60:17
91:16 129:24
135:3 137:16
138:23 159:22
183:13
**topics**  29:8

**total**  73:19
**totally**  181:25
**totes**  123:13,17
**touch**  129:23
172:19
**toxic**  174:22
175:13
**tracy**  2:19 6:17
7:9 8:24 9:2 12:5
12:11 15:8 19:21
20:4,12 21:1 22:3
28:19,23 31:13
36:15 37:5 38:3
43:24 44:6,9 45:6
59:15 60:7 66:11
75:12 77:10 92:6
92:14 93:6 100:20
101:3,11 106:10
106:15 114:25
115:24 116:3
118:5 119:17
125:1,15,18
126:10 131:14
135:13 139:21
144:15 152:18,21
156:7 161:6
162:23 166:17
167:17,25 168:8
173:18,24 176:20
177:14,22,24
179:6 180:7
181:23 184:25
185:6 186:13
**tracy's**  7:5
**train**  76:8
**trained**  74:10
75:24 78:20
**trainer**  87:3
**transcribing**  7:4
**transcript**  8:22
9:17 157:15 185:4

186:1,6 188:14,17
**transfer**  57:10
**transferred**  55:15
119:12
**transitioned**  59:9
64:18 65:18
**trap**  150:15
**travel**  128:11,15
**traveling**  129:11
**trench**  115:2,8,21
116:10,14 127:6
149:6
**trenches**  104:12
104:19 117:12,21
118:24
**trepidation**  31:21
**trial**  9:17 186:9
**trichloroethane**
167:14,19,21
169:25
**trichloroethylene**
167:15,21 169:25
**tried**  27:25 38:17
**trier**  9:21
**truck**  95:24 96:2,3
96:6 159:11
**true**  63:9 187:7
188:13
**truth**  188:8,8,9
**truthful**  8:3,5 9:24
20:18 23:9 24:15
26:21 27:17
**try**  6:25 9:22 29:7
47:17 152:5
**trying**  43:21 91:15
131:24 132:5
146:23 157:8
158:16
**tuesday**  1:19 2:2
6:1

**turn**  19:16 69:16
88:11 136:2
137:10 142:1
143:20,21
**turning**  102:5
160:8
**twice**  161:25
**two**  3:22,25 4:5
7:19 11:8 15:9
16:15 24:20 26:2
27:11 37:4 38:12
43:13 48:19 56:21
65:5 73:5 74:9,10
74:15 76:11 77:6
99:2,4,9,11,17,25
100:5 102:6,9
105:8,20 108:25
140:10 144:20
146:13 147:7
148:14
**type**  63:4,12,14,16
67:20
**typewritten**
188:12
**typical**  28:4
**typically**  166:24
168:6 186:4
**typing**  7:5 177:18
**typo**  167:20
**typographical**
9:13,15 141:8

**u**

**u**  6:12 14:24 45:17
79:9 83:10
**uh**  48:15 84:25
105:25 178:13
184:21
**ultimately**  75:24
85:3
**uncertain**  102:1

Page 34

[uncomfortable - wave]

uncomfortable 55:24

underground 69:2

underside 140:13

understand 8:10 9:25 13:20 32:5 34:20 64:10 81:24 94:14 137:3 173:24

understanding 12:18 20:17 31:17 32:20,23 33:5,8,12 35:13 57:23 75:14 77:17 113:8 117:15 129:1 138:2 147:12 176:15

undertake 34:18 155:16

undertaken 172:23 173:2 175:18

undertook 11:17 74:15

unfortunate 128:24

unfortunately 37:8 75:1,17 92:24 108:7 143:16 157:10 161:25

unit 85:4

united 1:1 85:14 187:6

units 167:25

university 10:9,12 10:15,21 11:2,5,18

unrelated 181:25

unwritten 43:8

update 93:3

upper 30:17,23 39:8,18 44:15 49:4 61:16 98:20 115:14 144:4,13 182:9

upside 95:9

use 12:2 16:6,17 17:2 37:19 38:12 40:16 48:6 59:19 73:12 75:7 101:21 104:21 105:19 110:2 112:7 144:16 147:17 148:9 165:14 170:6 171:14 176:9

useful 28:3 106:4

ut 11:8 18:5

utilized 16:1 77:24 90:15 103:21 157:5 160:9,15

utilizing 2:3 148:17

v

v 158:15

vacant 153:13

vacate 98:5

vacated 69:22 88:21 98:10

vacation 98:11

vacuum 150:14,18

vague 180:7

van 158:14,14,18 159:2 160:6

vapor 176:9,10,16 176:18

variety 27:24 35:3 91:21

various 88:17 96:23

verification 20:21 23:1 24:7 26:15

verifications 20:21 21:2

veritext 28:9 47:5 48:7 185:25

version 186:2

video 6:20 8:14,17 125:24,25

videotape 8:16

view 106:5

viewing 87:18

violation 4:18 136:14 137:15,23 149:25 150:11

visible 115:10

visit 94:3

visited 94:1

voice 31:21

vs 1:9

w

w 81:21

wait 61:3 131:16

walk 129:18

wall 121:7,10,11 121:11 124:24 159:19,23

want 22:15 28:22 28:24 29:11 31:15 32:8 38:8,9,10 47:8,9,12 56:7 87:14,18,19 105:14 114:25 115:24 116:3 126:20,24 129:7 129:25 130:25 139:2 144:16 158:7 161:15 163:1 173:14 175:17 177:17,20 181:21 185:2

wanted 148:7 151:10

wants 47:21

warehouse 14:11 32:16 33:23,24 34:23,24 95:2,5 97:15 115:18 116:12,16,18 119:6 121:4 122:24 123:18 125:5 149:7

wash 127:11,11

washed 136:11 140:17

waste 84:17 85:20 85:20 106:23 110:7,12 113:4 135:5,11,17 146:14,19 151:23 155:8

wastewater 4:10 4:20 126:20 127:1 127:15 134:3,13 142:7 148:10 162:18,21 163:4 163:23 165:2,10 166:8 167:13 168:18 169:2,8,24 170:10,19 172:3 182:7 183:1,5 184:17

water 72:7 85:19 111:11,13,21 118:19,23 126:22 127:8 148:5 163:11 168:2

waters 127:3 158:14,14,15,19 159:2 160:6

wave 185:12

[way - years]

**way** 37:6 73:13
  74:21 97:19
  103:23 111:21
  124:24 126:1
  129:9 132:8
  138:11 146:10
  147:23,23 150:22
  150:23 151:10
  164:16 172:14
**we've** 6:14 8:19
  18:3 19:5 23:21
  25:12 27:8 38:24
  47:14,25 56:15
  60:21 61:18 66:8
  77:13 95:12
  106:17,17 107:11
  108:24 113:21
  130:3 146:1
  177:17,19 178:18
  182:6
**wearing** 128:23
**website** 72:17
**week** 136:12
**went** 10:8,8 11:19
  11:21 29:19 71:24
  84:9 85:5 92:21
  92:24 103:1
  114:20 126:21
**west** 2:20 13:19,23
  14:2,6,8,11,21
  15:21 16:8 17:8,8
  17:19 18:1,2,9,16
  18:19 31:6 99:18
  107:15 122:25
  123:19 153:11
  159:23
**whereabouts**
  81:25 83:2
**white** 166:1,3
  170:13,18

**wholesaler** 67:1
**whoops** 87:18
**wife** 36:13
**wiggle** 66:13
**winthrop** 2:9
**wise** 177:15
**wish** 75:7,7
**witness** 3:3 13:25
  21:10,14,18,22
  22:6 25:17 27:1
  28:7 31:18 36:24
  37:24 38:14 39:13
  39:20 44:7,11
  47:19,23 48:3
  56:13 60:20 61:7
  61:19 79:14 87:12
  87:24 88:5,7
  91:17 92:4 93:19
  96:3 105:13,17,22
  106:6 114:2 116:7
  125:21 126:3,7
  130:1,5,11,13,20
  130:22 131:8,18
  131:21 132:15
  135:15 138:19
  139:3,9,12,16
  140:2 143:10,21
  144:9,17 145:22
  146:1,4 152:9,13
  152:20,23 161:9
  161:13,16,20,23
  162:24 166:20
  170:22,24 172:13
  174:7 176:23
  177:23 178:3,6,9
  178:12 180:10,16
  180:18 181:11
  183:15,17,19
  184:24 185:9,14
  185:17,21 186:4
  188:6,23

**woman** 45:16
**wonderful** 9:14
  28:16
**word** 73:12 90:2
**words** 14:17
  141:22 158:15
**work** 11:19,21
  12:17 13:17 15:3
  16:24 17:1 38:3,3
  40:21 45:24,24
  50:22 81:14
  156:15 157:7
  174:11 175:3
  177:10
**worked** 17:6 18:8
  18:13 69:19 71:10
  82:9,13,22,24
  174:10
**worker** 85:16
**working** 11:12
  14:21 16:23 18:1
  175:7 176:13,24
  179:5
**works** 7:22 18:10
  74:21 84:18 91:24
  93:24 106:12
  147:24 153:10
  181:15
**world** 125:3
**worry** 60:5 75:10
**worth** 86:8
**wow** 14:12
**wrap** 177:21
**write** 157:16,21
**writing** 164:16
**written** 8:22 19:1
  43:8 182:9
**wrong** 29:19,22
  55:20 180:19
**wrote** 136:6

| x |
| --- |
| **x** 3:1,8 4:1 5:1
13:25 188:17 |

| y |
| --- |

**yeah** 12:8 17:23
  18:8 20:1,1 21:14
  26:14 30:4 31:15
  31:18,25 34:25,25
  37:8 41:10,17
  42:8 44:7,11
  46:24,24 47:8
  57:21 64:3,3
  74:19,21 79:21
  80:4,14,16,20,20
  82:21,25 83:16,18
  87:5 89:1 90:4,4
  91:3 92:20 93:20
  94:13 95:11,11,21
  99:23 100:2 103:9
  103:10 104:7,17
  111:6,19 112:14
  112:25 115:15
  116:7 117:23
  122:4 125:12,22
  126:4 127:11,11
  127:12 129:9,20
  131:21 137:25
  139:3,16 140:2
  142:9,24,24
  144:23 145:4
  149:8 153:24
  157:17 163:9
  167:20 171:20
  173:15 180:18
  181:11 185:3
  186:13
**year** 18:6 52:7
  69:25 112:11
**years** 7:1 8:9 11:8
  11:14 14:12 15:5

Veritext Legal Solutions
866 299-5127

**[years - zoom]**

15:9 16:16 17:10
17:11,15 18:14
28:17 53:9,11,11
54:8 65:4,5 75:13
76:17,19 78:16
79:25 80:14 82:14
82:15,24 104:16
157:10,10,11
173:4,5,6,7 175:11
**yellow**   48:1 140:9
166:2,3
**yep**   107:6,6
146:12 166:5
**york**   15:1
**younus**   51:8,14
52:18,22
**yousi**   133:6
**yousuf**   49:25 50:4
50:10 51:4,14
52:9,12 140:8

**z**

**zeroes**   144:21
**zoom**   2:3 37:21,21
75:9,15 106:12
107:1 115:25
163:2

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# EXHIBIT 1

1   Bret A. Stone   SBN 190161  BStone@PaladinLaw.com
2   Kirk M. Tracy   SBN 288508  KTracy@PaladinLaw.com
    PALADIN LAW GROUP® LLP
3   220 W. Gutierrez Street
    Santa Barbara, CA  93101
4   Telephone:  (805) 898-9700
5   Facsimile:   (805) 852-2495

6   Counsel for Defendant Hussain M. Shaikh
7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11  TC RICH, LLC, *et al.*,                    Case No. 2:19-CV-02123-DMG-AGR

12             *Plaintiffs*,                    HUSSAIN M. SHAIKH'S RESPONSE
                                                TO TC RICH, LLC'S REQUESTS
13      *v.*                                    FOR ADMISSIONS, SET ONE

14  HUSSAIN M. SHAIKH, *et al.*,               Fed. R. Civ. P. 36

15             *Defendants*.                    Judge:  Hon. Dolly M. Gee

16

17

18  ─────────────────────────────
    AND RELATED COUNTERCLAIMS
19  ─────────────────────────────

20  PROPOUNDING PARTY:        TC Rich, LLC

21  RESPONDING PARTY:         Hussain M. Shaikh

22  TYPE OF DISCOVERY:        Requests for Admissions – Fed. R. Civ. P. 36

23  SET NUMBER:               One

24

25

26

27                                                        **EXHIBIT**
                                                          0001
28



SHAIKH'S RESPONSE TO TC RICH'S REQUESTS FOR ADMISSIONS, SET ONE

The following responses are based on the information reasonably available to Defendant Hussain M. Shaikh ("Shaikh") at this time.

<u>**RESPONSES TO REQUESTSFOR ADMISSIONS**</u>

<u>**REQUEST FOR ADMISSION NO. 1.:**</u>

Airborne tetrachloroethane ("PCE") has been detected within the structure on the property commonly known as 132 West 132nd Street, Los Angeles, California (the "PROPERTY") at levels in excess of California Human Health Screening Levels for indoor air concentrations for commercial/industrial sites.

<u>**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**</u>

Responding party objects to this request as irrelevant, because the use or application of California Human Health Screening Levels ("CHHSLs") was discontinued by California regulatory agencies in 2014. In 2016, DTSC evaluated the health risk analysis and concurred that none of the sample-specific values exceeded commercial/industrial risk management level. Subject to this objection, responding party admits that concentrations of PCE were detected in indoor air within the structure on the PROPERTY in 2015 at levels in excess of the discontinued California Human Health Screening Levels for indoor air concentrations for commercial/industrial sites. Responding party denies that it was "airborne," as that term implies an aerosol rather than a vapor.

<u>**REQUEST FOR ADMISSION NO. 2.:**</u>

Shah Chemical Corporation ("SHAH CHEMICAL") was the occupant of the PROPERTY from approximately 1980 to 1983.

<u>**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**</u>

Deny.

<u>**REQUEST FOR ADMISSION NO. 3.:**</u>

PCE is a hazardous substance.

<u>**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**</u>

Admit.



**REQUEST FOR ADMISSION NO. 4.:**

PCE is regulated by the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Responding party admits that PCE is a "hazardous substance" under CERCLA § 101(14), 42 U.S.C. § 9601(14). Responding party denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 5.:**

SHAH CHEMICAL transported to and disposed of PCE on the PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Deny.

**REQUEST FOR ADMISSION NO. 6.:**

SHAH CHEMICAL stored PCE at the PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Admit.

**REQUEST FOR ADMISSION NO. 7.:**

PCE is currently present in groundwater and soil at the PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Admit.

**REQUEST FOR ADMISSION NO. 8.:**

A 1,500-gallon three-stage clarifier used on the PROPERTY was closed in place in 2004.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Admit.

**REQUEST FOR ADMISSION NO. 9.:**

Concrete trenches on the PROPERTY utilized for wastewater disposal were also filled in with concrete in 2004.

/ / /



**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Responding party admits the trenches are currently filled with concrete. After a reasonable inquiry, responding party is unable to admit or deny when they were filled with concrete because responding party sold the PROPERTY in 2003.

**REQUEST FOR ADMISSION NO. 10:**

From 1978 to 1999, business that operated on the PROPERTY generated wastewater from cleaning containers that had stored PCE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Admit.

**REQUEST FOR ADMISSION NO. 11:**

No removal or other protective action has been taken to ameliorate or otherwise reduce the PCE indoor air and soil vapor concentrations at the PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Deny.

**REQUEST FOR ADMISSION NO. 12:**

As of the date of these requests, risks posed by the PCE found in both groundwater and soil remain at the PROPERTY remain unabated.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Responding party objects to this request because the term "risks posed" is vague and ambiguous, including when used in combination with the phraseology that the "risks" "remain unabated." Responding party is unable to decipher a reasonable interpretation. Subject to these objections, responding party admits that PCE found in soil and groundwater at the PROPERTY still need to be remediated. Responding party denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 13:**

Pacifica Chemical Incorporated contributed to the handling, storage, and disposal of PCE at the PROPERTY.



**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

    Deny.

**REQUEST FOR ADMISSION NO. 14:**

    PCE present at the PROPERTY is hazardous waste under the Resource Conservation and Recovery Act ("RCRA").

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

    Admit.

**REQUEST FOR ADMISSION NO. 15:**

    As of November 2018, the California Department of Toxic Substances Control ("DTSC") and the U.S. Environmental Protection Agency ("USEPA") recognized 2.0 ug/m3 as the industrial air screening level for PCE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

    Admit.

**REQUEST FOR ADMISSION NO. 16:**

    The indoor air concentrations of PCE found at the Property constitute an "imminent and substantial endangerment to the health or the environment" within the meaning of RCRA § 7002(a)(1)(B) (42 U.S.C. § 6972 (a)(1)(B)).

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

    Deny.

**REQUEST FOR ADMISSION NO. 17:**

    The high concentrations of PCE in soil vapor found at the Property constitute an "imminent and substantial endangerment to the health or the environment" within the meaning of RCRA § 7002(a)(1)(B) (42 U.S.C. § 6972 (a)(1)(B)).

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

    Deny.

**REQUEST FOR ADMISSION NO. 18:**

    Disposal of PCE is a disposal of a hazardous substance within the meaning of Section 107(a)(2) of CERCLA (42 U.S.C. § 9607(a)(2)).



**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Admit.

**REQUEST FOR ADMISSION NO. 19:**

The discovery of PCE at the Property has resulted in the need to investigate and characterize volatile organic compounds (VOCs), including PCE and its daughter compounds, in soil, soil gas, and groundwater beneath the Property

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Admit.

**REQUEST FOR ADMISSION NO. 20:**

The discovery of PCE at the Property has resulted in the need to assess potential risks to human health associated with PCE in soil vapor and indoor air at the Property

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Admit.

**REQUEST FOR ADMISSION NO. 21:**

Hussain M. Shaikh was the CEO of Pacifica Chemical Incorporated for the entire time it operated at the PROPERTY

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Admit.


Dated: July 27, 2020                      PALADIN LAW GROUP® LLP

                              By:    */s/ Kirk M. Tracy*
                                     Kirk M. Tracy
                                     Counsel for Defendant
                                     Hussain M. Shaikh



# EXHIBIT 2

1  Bret A. Stone   SBN 190161  BStone@PaladinLaw.com
2  Kirk M. Tracy   SBN 288508  KTracy@PaladinLaw.com
   PALADIN LAW GROUP® LLP
3  220 W. Gutierrez Street
4  Santa Barbara, CA  93101
   Telephone:   (805) 898-9700
5  Facsimile:    (805) 852-2495

6  Counsel for Defendant Hussain M. Shaikh
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 TC RICH, LLC, *et al.*,                 | Case No. 2:19-CV-02123-DMG-AGR

12              *Plaintiffs*,              | HUSSAIN M. SHAIKH'S RESPONSE
                                           | TO TC RICH, LLC'S
13       *v.*                              | INTERROGATORIES, SET ONE

14 HUSSAIN M. SHAIKH, *et al.*,            | Fed. R. Civ. P. 33

15              *Defendants*.              | Judge:  Hon. Dolly M. Gee

16

17

18 AND RELATED COUNTERCLAIMS

19

20 PROPOUNDING PARTY:        TC Rich, LLC

21 RESPONDING PARTY:         Hussain M. Shaikh

22 TYPE OF DISCOVERY:        Interrogatories – Fed. R. Civ. P. 33

23 SET NUMBER:               One

24

25

26

27

28



SHAIKH'S RESPONSE TO TC RICH'S INTERROGATORIES, SET ONE

EXHIBIT

0002

The following responses are based on the information reasonably available to Defendant Hussain M. Shaikh ("Shaikh") at this time.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1.:**

Identify all individuals responsible for managing any aspect of your business operations at 132 West 132nd Street, Los Angeles, California (the "PROPERTY"), from 1978 to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 1:**

Hussain M. Shaikh.

**INTERROGATORY NO. 2.:**

Identify all individuals employed by Pacifica Chemical Corporation ("PACIFICA") and/or its subsidiaries and affiliates while PACIFICA was in operations at the PROPERTY who are still employed by PACIFICA or its subsidiaries and affiliates as of the date of these interrogatories.

**RESPONSE TO INTERROGATORY NO. 2:**

None.

**INTERROGATORY NO. 3.:**

Identify all chemicals stored at the PROPERTY from 1978 to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 3:**

None.

**INTERROGATORY NO. 4.:**

Describe in detail the containers for each of the chemicals stored at the PROPERTY from 1978 to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 4:**

None.

**INTERROGATORY NO. 5.:**

Describe in detail the containers used at the PROPERTY for mixing chemicals



SHAIKH'S RESPONSE TO TC RICH'S INTERROGATORIES, SET ONE

stored at the PROPERTY from 1978 to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 5:**

None.

**INTERROGATORY NO. 6.:**

Describe in detail how each of the containers for storing chemicals or mixing chemicals at the PROPERTY were cleaned from 1978 to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 6:**

None.

**INTERROGATORY NO. 7.:**

Describe in detail how each of the chemicals stored at the PROPERTY were disposed of during the period from 1978 to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 7:**

None.

**INTERROGATORY NO. 8.:**

Describe in detail how frequently the 1,500-gallon three-stage clarifier located in the northwest exterior portion of the PROPERTY (the "CLARIFIER") was used to dispose of chemicals at the PROPERTY prior to its sale by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 8:**

To the extent responding party can recall the details from operations at the PROPERTY, his recollection is that the clarifier was used two to three times per week.

**INTERROGATORY NO. 9.:**

Describe in detail how the CLARIFIER was cleaned and maintained from the time period of its installation to until the sale of the PROPERTY by Hussain M. Shaikh.



SHAIKH'S RESPONSE TO TC RICH'S INTERROGATORIES, SET ONE

**RESPONSE TO INTERROGATORY NO. 9:**

To the extent responding party can recall the details from operations at the PROPERTY, his recollection is that the clarifier was cleaned by draining any water from it and removing any debris by hand. There was no sludge or other buildup that had to be cleaned out.

**INTERROGATORY NO. 10:**

Identify each and every person responsible for maintaining the CLARIFIER prior to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 10:**

Responding party can only recall an individual with the name "Guadilio," who is believed to have died approximately twenty years ago. Responding party cannot recall whether any other individuals were responsible for maintaining the clarifier.

**INTERROGATORY NO. 11:**

Describe in detail all policies and procedures for preventing environmental contamination at the PROPERTY that were in place during the period from 1978 to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 11:**

Responding party objects to this interrogatory as overly broad, vague, and ambiguous as it could related to any number of business practices over an approximately twenty-five-year period and therefore an attempt to answer to that extent is not proportionate to the needs of this case. Accordingly, responding party will answer regarding the procedures for handling chemicals and wastewater at the PROPERTY. Subject to these objections, responding party responds as follows: Responding party's recollection is that, pursuant to state law and wastewater discharge permits issued for the PROPERTY, liquids and wastewater handled within the area of the trenches were drained to them and went into the clarifier. Any spills of chemicals or other liquids at the PROPERTY were promptly cleaned up.

/ / /



**INTERROGATORY NO. 12:**

Describe in detail all policies and procedures for the disposal of wastewater at the PROPERTY that were in place during the period from 1978 to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 12:**

Responding party objects to this interrogatory as overly broad, vague, and ambiguous as it could related to any number of business practices over an approximately twenty-five-year period and therefore an attempt to answer to that extent is not proportionate to the needs of this case.  Accordingly, responding party will answer regarding the procedures for handling chemicals and wastewater at the PROPERTY. Subject to these objections, responding party responds as follows: Responding party's recollection is that, pursuant to state law and wastewater discharge permits issued for the PROPERTY, liquids and wastewater handled within the area of the trenches were drained to them and went into the clarifier.  Any spills of chemicals or other liquids at the PROPERTY were promptly cleaned up.

**INTERROGATORY NO. 13:**

Identify each and every person responsible for preventing environmental contamination at the PROPERTY during the period of 1978 to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 13:**

Responding party can only recall an individual with the name "Guadilio," who is believed to have died approximately twenty years ago. Responding party cannot recall the names of other individuals who worked at the PROPERTY handling chemicals and would have been responsible for preventing environmental contamination.

**INTERROGATORY NO. 14:**

Identify each and every person was responsible for wastewater disposal at the PROPERTY during the period of 1978 to the sale of the PROPERTY.



**RESPONSE TO INTERROGATORY NO. 14:**

Responding party can only recall an individual with the name "Guadilio," who is believed to have died approximately twenty years ago. Responding party cannot recall the names of other individuals who worked at the PROPERTY handling chemicals and would have been responsible for wastewater disposal.

**INTERROGATORY NO. 15:**

Identify each and every person responsible for overseeing the closure of the wastewater disposal system at the PROPERTY, including but not limited to closure of the CLARIFIER, prior to the sale of the PROPERTY.

**RESPONSE TO INTERROGATORY NO. 15:**

Responding party cannot recall who was responsible for overseeing the closure of the wastewater disposal system at the PROPERTY, especially considering that responding party sold the PROPERTY in 2003 and believes the wastewater disposal system was closed thereafter. Responding party directs plaintiffs to the "CLADPW Clarifier Closure Permit," with Bates numbers TCR000313 – 321, produced by plaintiffs in the related matter of *TC Rich v. Pacifica Chemical Inc.* (C.D. Cal., no. 15-4878), for possible additional information responsive to this request.

Dated: January 27, 2020          PALADIN LAW GROUP® LLP

                                 By:   */s/ Kirk M. Tracy*
                                       Kirk M. Tracy
                                       Counsel for Defendant
                                       Hussain M. Shaikh



## VERIFICATION

Re:    *TC Rich, et al., v. Hussain M. Shaikh, et al.*
       Case No. 2:19-cv-02123-DMG-AGR (C.D. Cal.)

I, Hussain M. Shaikh, have read the foregoing:

**HUSSAIN M. SHAIKH'S RESPONSE TO TC RICH, LLC'S INTERROGATORIES, SET ONE**

and know its contents;

      I certify and declare under penalty of perjury under the laws of the State of California that

the foregoing answers are true and correct.

Executed on July 23, 2020 in the County of Los Angeles, California.

Hussain M. Shaikh

# EXHIBIT 3

1  Bret A. Stone   SBN 190161  BStone@PaladinLaw.com
2  Kirk M. Tracy  SBN 288508  KTracy@PaladinLaw.com
   PALADIN LAW GROUP® LLP
3  220 W. Gutierrez Street
4  Santa Barbara, CA  93101
   Telephone:  (805) 898-9700
5  Facsimile:   (805) 852-2495

6  Counsel for Defendant Hussain M. Shaikh
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10
   TC RICH, LLC, *et al.*,              Case No. 2:19-CV-02123-DMG-AGR
11
                    *Plaintiffs*,       HUSSAIN M. SHAIKH'S
12                                      SUPPLEMENTAL RESPONSES TO
                                        TC RICH, LLC'S
13        *v.*                          INTERROGATORIES, SET ONE
14 HUSSAIN M. SHAIKH, *et al.*,
                                        Fed. R. Civ. P. 33
15                  *Defendants*.
                                        Judge:  Hon. Dolly M. Gee
16
17
18 ────────────────────────────
   AND RELATED COUNTERCLAIMS
19
20 PROPOUNDING PARTY:       TC Rich, LLC
21 RESPONDING PARTY:        Hussain M. Shaikh
22 TYPE OF DISCOVERY:       Interrogatories – Fed. R. Civ. P. 33
23 SET NUMBER:              One
24
25
26
27                                              EXHIBIT
28                                              0003



The following responses are based on the information reasonably available to Defendant Hussain M. Shaikh ("Shaikh") at this time.

### RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 3:**

Identify all chemicals stored at the PROPERTY from 1978 to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 3:**

None.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

Responding party objects to this request as ambiguous as it is unclear whether it is asking about all chemicals stored from 1978 until 2003 or about all chemicals stored "by Hussain M. Shaikh." After discussions with opposing counsel, responding party understands it to be the former.

Subject to and without waiving this objection, responding party responds as follows: At various periods of time, not necessarily the entire duration requested in this interrogatory, the following chemicals were stored at the PROPERTY:

Tetrachloroethylene ("PCE"), hydrogen peroxide, sodium hydroxide, isopropyl alcohol, caustic soda, Milsoft N-20 (ICI), CARSANON N-9 (LONZA), CARSOSOFT T-90 (LONZA), Sodium Lauryl Sulfate, Ammonum Laurly Sulfate, and Peg-600 (EMBRY). Various dyes in powder form were also stored for resale, although responding party does not recall the exact names or chemical compounds for those dyes. The softeners and detergents mixed at the PROPERTY and stored pending sale included PAC SEQUEST NTANA3, PAC SEQUEST 100, PAC SEQUEST 200, PAC SEQUEST 250, PAC WETTING AGENT WET CO, and PAC SOFT 300. Responding party cannot recall any other chemicals.

**INTERROGATORY NO. 4:**

Describe in detail the containers for each of the chemicals stored at the PROPERTY from 1978 to the sale of the PROPERTY by Hussain M. Shaikh.



**RESPONSE TO INTERROGATORY NO. 4:**

None.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

Responding party objects to this request as ambiguous as it is unclear whether it is asking about all chemicals stored from 1978 until 2003 or about all chemicals stored "by Hussain M. Shaikh." After discussions with opposing counsel, responding party understands it to be the former.

Subject to and without waiving this objection, responding party responds as follows: For a few years in the 1980s, PCE was stored in a 2,000 gallon above-ground tank for resale purposes. PCE was received in bulk, put directly into the tank, and thereafter repackaged into 55-gallon drums that were promptly sealed. PCE was not mixed with or used in any other products.

Hydrogen peroxide was stored in bulk in a large plastic tank and then put into smaller plastic drums or bigger plastic totes for resale. Responding party cannot recall the specific sizes of the containers.

Sodium hydroxide was stored in the same packages in which it was delivered, never opened, and then resold in the same packages. Responding party believes it came in 25kg small drums.

Caustic soda was stored in the same packages in which it was delivered, never opened, and then resold in the same packages. Responding party believes it came in drums or totes.

Raw materials used for mixing products included isopropyl alcohol, Milsoft N-20 (ICI); CARSANON N-9 (LONZA); CARSOSOFT T-90 (LONZA); Sodium Lauryl Sulfate, Ammonum Laurly Sulfate, and Peg-600 (EMBRY). These chemicals were stored in the drums, totes, or boxes in which they were delivered to the PROPERTY from the seller. The mixtures were then placed in 55-gallon drums, which were sealed and stored for sale to customers.

Powdered dyes stored in the same packages in which they were delivered,

never opened, and then resold in the same packages. Responding party believes they came in 25kg small drums or boxes with some type of bag inside containing the powder.

**INTERROGATORY NO. 5:**

Describe in detail the containers used at the PROPERTY for mixing chemicals stored at the PROPERTY from 1978 to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 5:**

None.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

Responding party objects to this request as ambiguous as it is unclear whether it is asking about all chemicals mixed from 1978 until 2003 or about all chemicals mixed "by Hussain M. Shaikh." After discussions with opposing counsel, responding party understands it to be the former.

Subject to and without waiving this objection, responding party responds as follows: There were two circular mixing tanks, one smaller and one larger. Records produced in this matter indicate the tanks were 280 gallons and 1700 gallons in size. Responding party does not recall those sizes specifically, but believes they are reasonable estimates. The tanks had drain valves over portions of trenches in the floor.

**INTERROGATORY NO. 6:**

Describe in detail how each of the containers for storing chemicals or mixing chemicals at the PROPERTY were cleaned from 1978 to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 6:**

None.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

Responding party objects to this request as ambiguous as it is unclear whether



it is asking about all chemicals stored or mixed from 1978 until 2003 or about all chemicals stored or mixed "by Hussain M. Shaikh." After discussions with opposing counsel, responding party understands it to be the former.

Subject to and without waiving this objection, responding party responds as follows: Mixing tanks were cleaned by rinsing them with water. The water was drained to trenches in the floor that led to the wastewater clarifier. Responding party does not believe any containers for storage of chemicals were cleaned at the PROPERTY.

**INTERROGATORY NO. 7:**

Describe in detail how each of the chemicals stored at the PROPERTY were disposed of during the period from 1978 to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 7:**

None.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

Responding party objects to this request as ambiguous as it is unclear whether it is asking about all chemicals stored from 1978 until 2003 or about all chemicals stored "by Hussain M. Shaikh." After discussions with opposing counsel, responding party understands it to be the former.

Subject to and without waiving this objection, responding party responds as follows: Liquids and wastewater handled within the area of the trenches were drained to them and went into the clarifier. Any spills of chemicals or other liquids at the PROPERTY were promptly cleaned up. Spent chemical storage containers were either returned to the vendor or some 55-gallon drums were sent to a drum re-conditioner. Responding party does not believe any chemicals stored at the PROPERTY were disposed of in any other method at the PROPERTY.

**INTERROGATORY NO. 11:**

Describe in detail all policies and procedures for preventing environmental

contamination at the PROPERTY that were in place during the period from 1978 to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 11:**

Responding party objects to this interrogatory as overly broad, vague, and ambiguous as it could related to any number of business practices over an approximately twenty-five-year period and therefore an attempt to answer to that extent is not proportionate to the needs of this case. Accordingly, responding party will answer regarding the procedures for handling chemicals and wastewater at the PROPERTY. Subject to these objections, responding party responds as follows: Responding party's recollection is that, pursuant to state law and wastewater discharge permits issued for the PROPERTY, liquids and wastewater handled within the area of the trenches were drained to them and went into the clarifier. Any spills of chemicals or other liquids at the PROPERTY were promptly cleaned up.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

Responding party objects to this interrogatory as overly broad, vague, and ambiguous as it could related to any number of business practices over an approximately twenty-five-year period and therefore an attempt to answer to that extent is not proportionate to the needs of this case. Accordingly, responding party will answer regarding the procedures for handling chemicals and wastewater at the PROPERTY. Subject to these objections, responding party responds as follows: Responding party's recollection is that, pursuant to state law and wastewater discharge permits issued for the PROPERTY, liquids and wastewater handled within the area of the trenches were drained to them and went into the clarifier. Any spills of chemicals or other liquids at the PROPERTY were promptly cleaned up. There were no other specific policies or procedures outside of requirements under permits. Responding party does not recall chemicals used in other areas of the PROPERTY.

**INTERROGATORY NO. 12:**

Describe in detail all policies and procedures for the disposal of wastewater at

the PROPERTY that were in place during the period from 1978 to the sale of the PROPERTY by Hussain M. Shaikh.

**RESPONSE TO INTERROGATORY NO. 12:**

Responding party objects to this interrogatory as overly broad, vague, and ambiguous as it could related to any number of business practices over an approximately twenty-five-year period and therefore an attempt to answer to that extent is not proportionate to the needs of this case. Accordingly, responding party will answer regarding the procedures for handling chemicals and wastewater at the PROPERTY. Subject to these objections, responding party responds as follows: Responding party's recollection is that, pursuant to state law and wastewater discharge permits issued for the PROPERTY, liquids and wastewater handled within the area of the trenches were drained to them and went into the clarifier. Any spills of chemicals or other liquids at the PROPERTY were promptly cleaned up.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



SHAIKH'S SUPPLEMENTAL RESPONSES TO TC RICH'S INTERROGATORIES, SET ONE

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

Responding party objects to this interrogatory as overly broad, vague, and ambiguous as it could related to any number of business practices over an approximately twenty-five-year period and therefore an attempt to answer to that extent is not proportionate to the needs of this case.  Accordingly, responding party will answer regarding the procedures for handling chemicals and wastewater at the PROPERTY. Subject to these objections, responding party responds as follows: Responding party's recollection is that, pursuant to state law and wastewater discharge permits issued for the PROPERTY, liquids and wastewater handled within the area of the trenches were drained to them and went into the clarifier.  Any spills of chemicals or other liquids at the PROPERTY were promptly cleaned up. There were no other specific policies or procedures outside of requirements under permits. Responding party does not recall chemicals used in other areas of the PROPERTY.

Dated: November 12, 2020          PALADIN LAW GROUP® LLP

By:    _/s/ Kirk M. Tracy_____
Kirk M. Tracy
Counsel for Defendant
Hussain M. Shaikh

## VERIFICATION

Re:     *TC Rich, et al., v. Hussain M. Shaikh, et al.*
        Case No. 2:19-cv-02123-DMG-AGR (C.D. Cal.)

I, Hussain M. Shaikh, have read the foregoing:

**HUSSAIN M. SHAIKH'S SUPPLEMENTAL RESPONSES TO TC RICH, LLC'S INTERROGATORIES, SET ONE**

and know its contents;

I certify and declare under penalty of perjury under the laws of the State of California that

the foregoing answers are true and correct.

Executed on November  10, 2020 in the County of Los Angeles, California.

_____
Hussain M. Shaikh

# EXHIBIT 4

Bret A. Stone   SBN 190161  BStone@PaladinLaw.com
Kirk M. Tracy   SBN 288508  KTracy@PaladinLaw.com
PALADIN LAW GROUP® LLP
220 W. Gutierrez Street
Santa Barbara, CA  93101
Telephone:   (805) 898-9700
Facsimile:    (805) 852-2495

Counsel for Defendant Hussain M. Shaikh

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TC RICH, LLC, *et al.*, | Case No. 2:19-CV-02123-DMG-AGR |
| *Plaintiffs*, | HUSSAIN M. SHAIKH'S RESPONSE TO TC RICH, LLC'S INTERROGATORIES, SET TWO |
| *v.* | |
| HUSSAIN M. SHAIKH, *et al.*, | Fed. R. Civ. P. 33 |
| *Defendants*. | Judge:  Hon. Dolly M. Gee |

AND RELATED COUNTERCLAIMS

PROPOUNDING PARTY:      TC Rich, LLC

RESPONDING PARTY:       Hussain M. Shaikh

TYPE OF DISCOVERY:      Interrogatories – Fed. R. Civ. P. 33

SET NUMBER:             Two



SHAIKH'S RESPONSE TO TC RICH'S INTERROGATORIES, SET TWO

EXHIBIT

0004

The following responses are based on the information reasonably available to Defendant Hussain M. Shaikh ("Shaikh") at this time.

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 16:**

Identify all names YOU have used since 1979.

**RESPONSE TO INTERROGATORY NO. 16:**

Hussain Maqbool "Maq" Shaikh, also known as Shaikh Maqbool Hussain on certain documents.

**INTERROGATORY NO. 17:**

Identify the names and last known addresses of all current and former employees of PACIFICA CHEMICAL from 1979 to present.

**RESPONSE TO INTERROGATORY NO. 17:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.  Accordingly, responding party will limit its response to employees at the Subject Property.

Subject to these objections, responding party responds as follows:  The employees responding party can recall are:

Mukesh Doshi, to be contacted through Shaikh's counsel.

Juan Montes, whereabouts unknown, although believed to be deceased for approximately 20 years.

Tomas Macedonio, deceased for approximately 20 years.

A man named "Guadilio," who is believed to have died approximately twenty



SHAIKH'S RESPONSE TO TC RICH'S INTERROGATORIES, SET TWO

years ago.

Helga Markgraf-Fowler, whereabouts unknown.  Miss Fowler worked in a secretarial capacity with no involvement in any chemical processes.

Patricia Nerestant, whereabouts unknown.  Miss Nerestant worked in a secretarial capacity with no involvement in any chemical processes.

**INTERROGATORY NO. 18:**

Identify all PERSONS responsible for ENVIRONMENTAL MANAGEMENT AND COMPLIANCE for SHAH CHEMICAL during its period of operation at the 132nd STREET PROPERTY.

**RESPONSE TO INTERROGATORY NO. 18:**

Responding party can only recall an individual with the name "Guadilio," who is believed to have died approximately twenty years ago. Responding party cannot recall whether any other individuals were responsible for environmental management and compliance.

**INTERROGATORY NO. 19:**

Identify all PERSONS responsible for ENVIRONMENTAL MANAGEMENT AND COMPLIANCE for PACIFICA CHEMICAL between 1980 and the present.

**RESPONSE TO INTERROGATORY NO. 19:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.  Accordingly, responding party will limit its response to operations at the Subject Property.



Subject to these objections, responding party responds as follows: Responding party can only recall an individual with the name "Guadilio," who is believed to have died approximately twenty years ago. Responding party cannot recall whether any other individuals were responsible for environmental management and compliance.

**INTERROGATORY NO. 20:**

Identify all shareholders of SHAH CHEMICAL from formation to present.

**RESPONSE TO INTERROGATORY NO. 20:**

Hussain M. Shaikh.

**INTERROGATORY NO. 21:**

Identify all shareholders of PACIFICA CHEMICAL from formation to present.

**RESPONSE TO INTERROGATORY NO. 21:**

Hussain M. Shaikh.

Dated: November 5, 2020                      PALADIN LAW GROUP® LLP

By:    */s/ Kirk M. Tracy*
Kirk M. Tracy
Counsel for Defendant
Hussain M. Shaikh



SHAIKH'S RESPONSE TO TC RICH'S INTERROGATORIES, SET TWO

## VERIFICATION

Re:   *TC Rich, et al., v. Hussain M. Shaikh, et al.*
       Case No. 2:19-cv-02123-DMG-AGR (C.D. Cal.)

I, Hussain M. Shaikh, have read the foregoing:

**HUSSAIN M. SHAIKH'S RESPONSE TO TC RICH, LLC'S INTERROGATORIES, SET TWO**

and know its contents;

       I certify and declare under penalty of perjury under the laws of the State of California that

the foregoing answers are true and correct.

Executed on October 31, 2020 in the County of Los Angeles, California.

Hussain M. Shaikh

# EXHIBIT 5

1   Bret A. Stone   SBN 190161  BStone@PaladinLaw.com
2   Kirk M. Tracy   SBN 288508  KTracy@PaladinLaw.com
    PALADIN LAW GROUP® LLP
3   220 W. Gutierrez Street
4   Santa Barbara, CA  93101
    Telephone:   (805) 898-9700
5   Facsimile:   (805) 852-2495

6   Counsel for Defendant Hussain M. Shaikh
7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11  TC RICH, LLC, *et al.*,                Case No. 2:19-CV-02123-DMG-AGR

12                   *Plaintiffs*,          HUSSAIN M. SHAIKH'S RESPONSE
                                            TO TC RICH, LLC'S REQUESTS
13        *v.*                              FOR ADMISSIONS, SET TWO

14  HUSSAIN M. SHAIKH, *et al.*,            Fed. R. Civ. P. 36

15                   *Defendants*.          Judge:  Hon. Dolly M. Gee

16

17

18  _____

    AND RELATED COUNTERCLAIMS
19  _____

20  PROPOUNDING PARTY:        TC Rich, LLC

21  RESPONDING PARTY:         Hussain M. Shaikh

22  TYPE OF DISCOVERY:        Requests for Admissions – Fed. R. Civ. P. 36

23  SET NUMBER:               Two

24

25

26

27

28



**EXHIBIT**

**0005**

SHAIKH'S RESPONSE TO TC RICH'S REQUESTS FOR ADMISSIONS, SET TWO

The following responses are based on the information reasonably available to Defendant Hussain M. Shaikh ("Shaikh") at this time.

## RESPONSES TO REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 22:**

Admit there was a RELEASE of perchloroethylene ("PCE") to the ENVIRONMENT at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Admit.

**REQUEST FOR ADMISSION NO. 23:**

Admit that the 132nd STREET PROPERTY constitutes a FACILITY under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Admit.

**REQUEST FOR ADMISSION NO. 24:**

Admit that you were the OWNER of the 132nd STREET PROPERTY at the time of DISPOSAL of a HAZARDOUS SUBSTANCE at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Deny.

**REQUEST FOR ADMISSION NO. 25:**

Admit that PACIFICA CHEMICAL was the OPERATOR of the 132nd Street Property at the time of DISPOSAL of a HAZARDOUS SUBSTANCE at the property.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Deny.

**REQUEST FOR ADMISSION NO. 26:**

Admit that YOU were the President of PACIFICA CHEMICAL from

SHAIKH'S RESPONSE TO TC RICH'S REQUESTS FOR ADMISSIONS, SET TWO

1  formation to the present.

2  **RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

3      Admit.

4  **REQUEST FOR ADMISSION NO. 27:**

5      Admit that YOU were the President of SHAH CHEMICAL from formation to

6  its suspension.

7  **RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

8      Admit.

9  **REQUEST FOR ADMISSION NO. 28:**

10      Admit that YOU have not received an administrative enforcement order or

11  other legal directive from the California Department of Toxic Substances Control,

12  Regional Water Quality Control Board, Los Angeles Region, or any other

13  governmental agency with jurisdiction over the environmental conditions at the 132nd

14  STREET PROPERTY directing YOU to undertake any environmental investigation

15  and/or remediation.

16  **RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

17      Deny.

18  **REQUEST FOR ADMISSION NO. 29:**

19      Admit that PACIFICA CHEMICAL has not received an administrative

20  enforcement order or other legal directive from the California Department of Toxic

21  Substances Control, Regional Water Quality Control Board, Los Angeles Region, or

22  any other governmental agency with jurisdiction over the environmental conditions

23  at the 132nd STREET PROPERTY directing YOU to undertake any environmental

24  investigation and/or remediation.

25  **RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

26      Deny.

27  **REQUEST FOR ADMISSION NO. 30:**

28      Admit that SHAH CHEMICAL has not received an administrative



-3-                                    2:19-CV-02123-DMG-AGR

SHAIKH'S RESPONSE TO TC RICH'S REQUESTS FOR ADMISSIONS, SET TWO

enforcement order or other legal directive from the California Department of Toxic Substances Control, Regional Water Quality Control Board, Los Angeles Region, or any other governmental agency with jurisdiction over the environmental conditions at the 132nd STREET PROPERTY directing YOU to undertake any environmental investigation and/or remediation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

Admit.

**REQUEST FOR ADMISSION NO. 31:**

Admit that YOU have not entered into a Voluntary Cleanup Agreement with the California Department of Toxic Substances Control or Regional Water Quality Control Board, Los Angeles relating to the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

Admit.

**REQUEST FOR ADMISSION NO. 32:**

Admit that PACIFICA CHEMICAL has not entered into a Voluntary Cleanup Agreement with the California Department of Toxic Substances Control or Regional Water Quality Control Board, Los Angeles relating to the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

Admit.

**REQUEST FOR ADMISSION NO. 33:**

Admit that SHAH CHEMICAL has not entered into a Voluntary Cleanup Agreement with the California Department of Toxic Substances Control or Regional Water Quality Control Board, Los Angeles relating to the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

Admit.

/ / /



**REQUEST FOR ADMISSION NO. 34:**

Admit that PACIFICA CHEMICAL contends its current response activities, consisting of but not limited to the environmental investigation and remediation of the 132nd STREET PROPERTY, are necessary and consistent with the National Contingency Plan ("NCP") under CERCLA (*see* 42 U.S.C. section 9607).

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

Admit.

**REQUEST FOR ADMISSION NO. 35:**

Admit that YOU were the OWNER of the 132nd STREET PROPERTY from 1979 to 1984.

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

Admit.

**REQUEST FOR ADMISSION NO. 36:**

Admit that YOU were the OWNER of the 132nd STREET PROPERTY from 1987 to 2003.

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

Admit.

**REQUEST FOR ADMISSION NO. 37:**

Admit that YOU are the current OWNER of the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property). Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property. Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.



Responding party also objects to this request as overbroad and seeking irrelevant information. Records of current and historic financial information or property-ownership are not relevant to any claims, counterclaims, or cross-claims, elements of a cause of action in this matter. *Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1547, 309 U.S. App. D.C. 384 (D.C. Cir. 1994); *Metal Management Inc. v. Schiavone*, 514 F. Supp. 2d 227, 239-40 (D. Conn. 2007); *Sequa Corporation v. Gelmin*, 1995 U.S. Dist. LEXIS 9338, 1995 WL 404726, *2 (S.D.N.Y. July 7, 1995). Responding party further objects to this request because he has a constitutionally-based right to privacy and, as stated above, there is no demonstrable need for propounding party to have this information related to this litigation, which concerns environmental contamination at the subject property.

**REQUEST FOR ADMISSION NO. 38:**

Admit that PACIFICA CHEMICAL operated at the 132nd STREET PROPERTY between the dates of 1981 and 2003.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

Admit.

**REQUEST FOR ADMISSION NO. 39:**

Admit that SHAH CHEMICAL operated at the 132nd STREET PROPERTY between the dates of 1979 and 1981.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

Admit.

**REQUEST FOR ADMISSION NO. 40:**

Admit that YOU were a member of the Board of Directors of PACIFICA CHEMICAL from formation to the present.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

Admit.

**REQUEST FOR ADMISSION NO. 41:**

Admit that YOU were the registered agent for service of process of PACIFICA



CHEMICAL from formation to the present.

**RESPONSE TO REQUEST FOR ADMISSION NO. 41:**

Admit.

**REQUEST FOR ADMISSION NO. 42:**

Admit that PACIFICA CHEMICAL was registered as a large quantity generator of hazardous waste in 1989.

**RESPONSE TO REQUEST FOR ADMISSION NO. 42:**

Deny.

**REQUEST FOR ADMISSION NO. 43:**

Admit that PACIFICA CHEMICAL was registered as a small quantity generator of hazardous waste in 1996.

**RESPONSE TO REQUEST FOR ADMISSION NO. 43:**

Responding party admits that Pacifica Chemical was registered as a small quantity generator of hazardous waste but does not have any recollection as to when such registration occurred and therefore denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 44:**

Admit that during the period of YOUR ownership of the 132nd STREET PROPERTY, floors at the 132nd STREET PROPERTY in the chemical storage and mixing areas were rinsed with water and discharged to concrete floor trenches.

**RESPONSE TO REQUEST FOR ADMISSION NO. 44:**

Admit.

**REQUEST FOR ADMISSION NO. 45:**

Admit that PACIFICA CHEMICAL stored PCE in an above ground storage tank at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 45:**

Admit.

**REQUEST FOR ADMISSION NO. 46:**

Admit that during the period of YOUR ownership of the 132nd STREET



-7-

2:19-CV-02123-DMG-AGR

PROPERTY, PACIFICA CHEMICAL generated wastewater from rinsing drums, tanks and other storage containers that previously contained chemicals.

**RESPONSE TO REQUEST FOR ADMISSION NO. 46:**

Admit.

**REQUEST FOR ADMISSION NO. 47:**

Admit that during the period of YOUR ownership of the 132nd STREET PROPERTY PACIFICA CHEMICAL generated wastewater through the rinsing out of chemical blending and mixing tanks with fresh water and discharging the rinsate as wastewater.

**RESPONSE TO REQUEST FOR ADMISSION NO. 47:**

Admit.

**REQUEST FOR ADMISSION NO. 48:**

Admit that during the period of YOUR ownership of the 132nd STREET PROPERTY, PACIFICA CHEMICAL received citations from the Los Angeles Sanitation District for improper wastewater management practices.

**RESPONSE TO REQUEST FOR ADMISSION NO. 48:**

Responding party admits Pacifica Chemical received notices of violation from the Los Angeles Sanitation District related to wastewater management practices. Responding party denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 49:**

Admit that YOU were identified as the responsible person for wastewater management on at least one citation issued by the Los Angeles Sanitation District to PACIFICA CHEMICAL.

**RESPONSE TO REQUEST FOR ADMISSION NO. 49:**

Deny.

**REQUEST FOR ADMISSION NO. 50:**

Admit that YOU filed Articles of Incorporation for PACIFICA CHEMICAL.

/ / /

**<u>RESPONSE TO REQUEST FOR ADMISSION NO. 50:</u>**

Admit.

**<u>REQUEST FOR ADMISSION NO. 51:</u>**

Admit that YOU filed Articles of Incorporation for SHAH CHEMICAL.

**<u>RESPONSE TO REQUEST FOR ADMISSION NO. 51:</u>**

Admit.

**<u>REQUEST FOR ADMISSION NO. 52:</u>**

Admit that the DOCUMENT attached hereto as **Exhibit 1** is a true, correct, and genuine copy of SHAH CHEMICAL'S Articles of Incorporation, filed on February 22, 1977.

**<u>RESPONSE TO REQUEST FOR ADMISSION NO. 52:</u>**

Responding party admits that page one of Exhibit 1 is a true, correct, and genuine copy of SHAH CHEMICAL'S Articles of Incorporation, filed on February 22, 1977.

**<u>REQUEST FOR ADMISSION NO. 53:</u>**

Admit that the signature on the line for execution of SHAH CHEMICAL'S Articles of Incorporation, attached as **Exhibit 1**, is YOUR true and correct signature.

**<u>RESPONSE TO REQUEST FOR ADMISSION NO. 53:</u>**

Amit.

**<u>REQUEST FOR ADMISSION NO. 54:</u>**

Admit that the DOCUMENT attached hereto as **Exhibit 2** is a true, correct, and genuine copy of SHAH CHEMICAL'S Statement by Domestic Stock Corporation, filed on March 2, 1981.

**<u>RESPONSE TO REQUEST FOR ADMISSION NO. 54:</u>**

Responding party admits that, other than the fax transmittal text across the top of the page, page 1 of Exhibit 2 is a true, correct, and genuine copy of SHAH CHEMICAL'S Statement by Domestic Stock Corporation, filed on March 2, 1981.

/ / /



**REQUEST FOR ADMISSION NO. 55:**

Admit that the signature for President on SHAH CHEMICAL'S Statement by Domestic Stock Corporation, attached as **Exhibit 2**, is YOUR true and correct signature.

**RESPONSE TO REQUEST FOR ADMISSION NO. 55:**

Admit.

**REQUEST FOR ADMISSION NO. 56:**

Admit that the DOCUMENT attached hereto as **Exhibit 3** is a true, correct, and genuine copy of SHAH CHEMICAL'S Corporate Status Report, filed on March 1, 1981.

**RESPONSE TO REQUEST FOR ADMISSION NO. 56:**

Due to the poor quality of the scan of page one of exhibit 3, responding party cannot admit or deny this request.

**REQUEST FOR ADMISSION NO. 57:**

Admit that the DOCUMENT attached hereto as **Exhibit 4** is a true, correct, and genuine copy of PACIFICA CHEMICAL'S Articles of Incorporation, filed on October 10, 1978.

**RESPONSE TO REQUEST FOR ADMISSION NO. 57:**

Responding party admits that, other than the fax transmittal text across the top of the page, page 1 of Exhibit 4 is a true, correct, and genuine copy of PACIFICA CHEMICAL'S Articles of Incorporation, filed on October 10, 1978.

**REQUEST FOR ADMISSION NO. 58:**

Admit that the signature executing Pacifica Chemical Corporation's Articles of Incorporation, attached as **Exhibit 4**, is YOUR true and correct signature.

**RESPONSE TO REQUEST FOR ADMISSION NO. 58:**

Admit.

**REQUEST FOR ADMISSION NO. 59:**

Admit that the DOCUMENT attached hereto as **Exhibit 5** is a true, correct,



and genuine copy of PACIFICA CHEMICAL'S Statement of Information, filed on September 1, 2004.

**RESPONSE TO REQUEST FOR ADMISSION NO. 59:**

Responding party admits that, other than the fax transmittal text across the top of the page, page 1 of Exhibit 5 is a true, correct, and genuine copy of PACIFICA CHEMICAL'S Statement of Information, filed on September 1, 2004.

**REQUEST FOR ADMISSION NO. 60:**

Admit that the signature of the person completing PACIFICA CHEMICAL'S Statement of Information, attached as **Exhibit 5**, is YOUR true and correct signature.

**RESPONSE TO REQUEST FOR ADMISSION NO. 60:**

Admit.

**REQUEST FOR ADMISSION NO. 61:**

Admit that the DOCUMENT attached hereto as **Exhibit 6** is a true, correct, and genuine copy of PACIFICA CHEMICAL'S Statement of Information, filed on August 31, 2018.

**RESPONSE TO REQUEST FOR ADMISSION NO. 61:**

After a reasonable inquiry, responding party is unable to admit or deny this request.  The document does not appear to be publicly available on the California Secretary of State website.

**REQUEST FOR ADMISSION NO. 62:**

Admit that Lot 4 of Tract 27807 as recorded in Book 827 Pages 57-59 of Maps in the Los Angeles Office of the County Recorder, attached hereto as **Exhibit 7**, is the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 62:**

Admit.

**REQUEST FOR ADMISSION NO. 63:**

Admit that the DOCUMENT attached hereto as **Exhibit 8** is a true, correct, and genuine copy of the August 6, 1979 grant deed, in which Marmac Resources



1  Company granted YOU ownership of the 132nd STREET PROPERTY.

2  **RESPONSE TO REQUEST FOR ADMISSION NO. 63:**

3      After a reasonable inquiry, responding party is unable to admit or deny this

4  request.

5  **REQUEST FOR ADMISSION NO. 64:**

6      Admit that the DOCUMENT attached hereto as **Exhibit 9** is a true, correct,

7  and genuine copy of the December 10, 1984 grant deed, in which YOU granted

8  KHAN ownership of the 132nd STREET PROPERTY.

9  **RESPONSE TO REQUEST FOR ADMISSION NO. 64:**

10      After a reasonable inquiry, responding party is unable to admit or deny this

11  request.

12  **REQUEST FOR ADMISSION NO. 65:**

13      Admit that the DOCUMENT attached hereto as **Exhibit 10** is a true, correct,

14  and genuine copy of the October 26, 1987 grant deed, in which KHAN granted YOU

15  ownership of the 132nd STREET PROPERTY.

16  **RESPONSE TO REQUEST FOR ADMISSION NO. 65:**

17      After a reasonable inquiry, responding party is unable to admit or deny this

18  request.

19  **REQUEST FOR ADMISSION NO. 66:**

20      Admit that the DOCUMENT attached hereto as **Exhibit 11** to Plaintiff's

21  Request for Admission, Set One, is a true, correct, and genuine copy of the April 11,

22  2003 grant deed, in which YOU granted the individual Eun Hee Lee ownership of

23  the 132nd STREET PROPERTY.

24  **RESPONSE TO REQUEST FOR ADMISSION NO. 66:**

25      After a reasonable inquiry, responding party is unable to admit or deny this

26  request.

27  **REQUEST FOR ADMISSION NO. 67:**

28      Admit that the DOCUMENT attached hereto as **Exhibit 12** is a true, correct,



and genuine copy of the June 16, 2015 grant deed, in which HUSSAIN MAQBOOL SHAIKH granted SHAIKH MAQBOOL HUSSAIN ownership of the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 67:**

After a reasonable inquiry, responding party is unable to admit or deny this request.

**REQUEST FOR ADMISSION NO. 68:**

Admit that the DOCUMENT attached hereto as **Exhibit 13** is a true, correct, and genuine copy of a December 8, 1980 an Application for a County of Los Angeles Department of Public Works Permit for Industrial Wastewater Discharge at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 68:**

Admit.

**REQUEST FOR ADMISSION NO. 69:**

Admit that the signature on the line for execution by the applicant for the Application for a County of Los Angeles Department of Public Works Permit for Industrial Wastewater Discharge, attached as **Exhibit 13**, is YOUR true and correct signature.

**RESPONSE TO REQUEST FOR ADMISSION NO. 69:**

Admit.

**REQUEST FOR ADMISSION NO. 70:**

Admit that the DOCUMENT attached hereto as **Exhibit 14** is a true, correct, and genuine copy of a July 22, 1987 letter from the County of Los Angeles Department of Public Works, Attention to Hussain Shaikh at Pacifica Chemical, Inc., 132 W. 132nd Street, Los Angeles, CA 90061, enclosing Industrial Wastewater Discharge Permits for the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 70:**

Admit.



SHAIKH'S RESPONSE TO TC RICH'S REQUESTS FOR ADMISSIONS, SET TWO

**REQUEST FOR ADMISSION NO. 71:**

Admit that the DOCUMENT attached hereto as **Exhibit 15** is a true, correct, and genuine copy of a Notice of Violation and Order to Comply from the County of Los Angeles Department of County Engineer Sanitation Division, dated June 16, 1981, directed to SHAH CHEMICAL, located at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 71:**

Admit.

**REQUEST FOR ADMISSION NO. 72:**

Admit that the signature on the line for execution on the "Received by" line on the Notice of Violation and Order to Comply, attached as **Exhibit 15**, is YOUR true and correct signature.

**RESPONSE TO REQUEST FOR ADMISSION NO. 72:**

Admit.

**REQUEST FOR ADMISSION NO. 73:**

Admit that the DOCUMENT attached hereto as **Exhibit 16** is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated June 23, 1992, enclosing Notice of Violation No. 9702 directed to YOU for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 73:**

Responding party admits that Exhibit 16 is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated June 23, 1992, enclosing Notice of Violation No. 9702, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 74:**

Admit that the DOCUMENT attached hereto as **Exhibit 17** is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated November 20, 1992, enclosing Notice of Violation No. 6376, directed to YOU for violations at the 132nd STREET PROPERTY.



**RESPONSE TO REQUEST FOR ADMISSION NO. 74:**

Responding party admits that Exhibit 17 is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated November 20, 1992, enclosing Notice of Violation No. 6376, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 75:**

Admit that the DOCUMENT attached hereto as **Exhibit 18** is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated January 7, 1993, enclosing Notice of Violation No. 6655 directed to YOU for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 75:**

Responding party admits that Exhibit 18 is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated January 7, 1993, enclosing Notice of Violation No. 6655, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 76:**

Admit that the DOCUMENT attached hereto as **Exhibit 19** is a true, correct, and genuine copy of a letter from the enclosing Sanitation Districts of Los Angeles County, dated September 29, 1993, and Notice of Violation No. 9301 directed to YOU for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 76:**

Responding party admits that Exhibit 19 is a true, correct, and genuine copy of a letter from the enclosing Sanitation Districts of Los Angeles County, dated September 29, 1993, and Notice of Violation No. 9301, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 77:**

Admit that the DOCUMENT attached hereto as **Exhibit 20** is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles

County, dated December 8, 1993, enclosing Notice of Violation No. 5320 directed to
YOU for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 77:**

Responding party admits that Exhibit 20 is a true, correct, and genuine copy
of a letter from the County Sanitation Districts of Los Angeles County, dated
December 8, 1993, enclosing Notice of Violation No. 5320, relating to the 132nd
STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 78:**

Admit that the DOCUMENT attached hereto as **Exhibit 21** is a true, correct,
and genuine copy of a letter from the County Sanitation Districts of Los Angeles
County, dated October 4, 1995, enclosing Notice of Violation No. 13257 directed to
YOU for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 78:**

Responding party admits that Exhibit 21 is a true, correct, and genuine copy
of a letter from the County Sanitation Districts of Los Angeles County, dated October
4, 1995, enclosing Notice of Violation No. 13257, relating to the 132nd STREET
PROPERTY.

**REQUEST FOR ADMISSION NO. 79:**

Admit that the DOCUMENT attached hereto as **Exhibit 22** is a true, correct,
and genuine copy of a letter from the County Sanitation Districts of Los Angeles
County, dated May 16, 1996, enclosing Notice of Violation No. 7295 directed to
YOU for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 79:**

Responding party admits that Exhibit 22 is a true, correct, and genuine copy
of a letter from the County Sanitation Districts of Los Angeles County, dated May
16, 1996, enclosing Notice of Violation No. 7295, relating to the 132nd STREET
PROPERTY.

/ / /



**REQUEST FOR ADMISSION NO. 80:**

Admit that the DOCUMENT attached hereto as **Exhibit 23** is a true, correct, and genuine copy of Notice of Violation No. 248804 from County of Los Angeles Department of Public Works, dated February 4, 1999, for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 80:**

Responding party admits that Exhibit 23 is a true, correct, and genuine copy of Notice of Violation No. 248804 from County of Los Angeles Department of Public Works, dated February 4, 1999, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 81:**

Admit that the DOCUMENT attached hereto as **Exhibit 24** is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated August 31, 1999, enclosing Notice of Violation No. 17575 directed to YOU for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 81:**

Responding party admits that Exhibit 24 is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated August 31, 1999, enclosing Notice of Violation No. 17575, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 82:**

Admit that the DOCUMENT attached as **Exhibit 25** is a true, correct, and genuine copy of a Notice of Violation from County of Los Angeles Department of Public Works, dated November 22, 2000 for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 82:**

Responding party admits that Exhibit 25 is a true, correct, and genuine copy of a Notice from County of Los Angeles Department of Public Works, dated November 22, 2000, relating to the 132nd STREET PROPERTY.



**REQUEST FOR ADMISSION NO. 83:**

Admit that the DOCUMENT attached hereto as **Exhibit 26** is a true, correct, and genuine copy of Notice of Non-Compliance No. V000322687 from County of Los Angeles Department of Public Works, dated December 29, 2000, for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 83:**

Responding party admits that Exhibit 26 is a true, correct, and genuine copy of Notice of Non-Compliance No. V000322687 from County of Los Angeles Department of Public Works, dated December 29, 2000, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 84:**

Admit that the DOCUMENT attached hereto as **Exhibit 27** is a true, correct, and genuine copy of Notice of Violation and Order to Comply No. V322688 from County of Los Angeles Department of Public Works, dated March 5, 2001, for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 84:**

Responding party admits that Exhibit 27 is a true, correct, and genuine copy of Notice of Violation and Order to Comply No. V322688 from County of Los Angeles Department of Public Works, dated March 5, 2001, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 85:**

Admit that the DOCUMENT attached hereto as **Exhibit 28** is a true, correct, and genuine copy of Notice of Non-Compliance No. V347139 from the County of Los Angeles Department of Public Works, dated May 20, 2002 for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 85:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd



SHAIKH'S RESPONSE TO TC RICH'S REQUESTS FOR ADMISSIONS, SET TWO

Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 86:**

Admit that the DOCUMENT attached hereto as **Exhibit 29** is a true, correct, and genuine copy of a Notice of Violation and Order to Comply from County of Los Angeles Department of Public Works, dated June 10, 2002 for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 86:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 87:**

Admit that the DOCUMENT attached hereto as **Exhibit 30** is a true, correct, and genuine copy of Notice of Violation and Order to Comply No. 615661 from the Los Angeles County Department of Public Works Environmental Programs Division, dated June 3, 2004 for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 87:**

Responding party objects to this request as overbroad and unduly burdensome

1  to the extent it seeks information not related to the subject property at 132 W. 132nd

2  Street (Subject Property). Pacifica Chemical discontinued use of PCE in the 1980s,

3  before selling the Subject Property in 2003 and moving its business elsewhere to a

4  completely unrelated property. Therefore, information regarding Pacifica's

5  operations after it sold and moved away from the Subject Property is not relevant and

6  the burden of searching for and producing such information is not proportionate to

7  the needs of this case.

8  **REQUEST FOR ADMISSION NO. 88:**

9      Admit that the DOCUMENT attached hereto as **Exhibit 31** is a true, correct,

10  and genuine copy of Notice of Violation No. 462360 from the Los Angeles County

11  Department of Public Works Environmental Programs Division, dated September 15,

12  2005 for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

13  **RESPONSE TO REQUEST FOR ADMISSION NO. 88:**

14      Responding party objects to this request as overbroad and unduly burdensome

15  to the extent it seeks information not related to the subject property at 132 W. 132nd

16  Street (Subject Property). Pacifica Chemical discontinued use of PCE in the 1980s,

17  before selling the Subject Property in 2003 and moving its business elsewhere to a

18  completely unrelated property. Therefore, information regarding Pacifica's

19  operations after it sold and moved away from the Subject Property is not relevant and

20  the burden of searching for and producing such information is not proportionate to

21  the needs of this case.

22  **REQUEST FOR ADMISSION NO. 89:**

23      Admit that the DOCUMENT attached hereto as **Exhibit 32** is a true, correct,

24  and genuine copy of Notice of Violation No. 559912 from the County of Los Angeles

25  Department of Public Works Environmental Programs Division, dated March 10,

26  2008, for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

27  **RESPONSE TO REQUEST FOR ADMISSION NO. 89:**

28      Responding party objects to this request as overbroad and unduly burdensome

1  to the extent it seeks information not related to the subject property at 132 W. 132nd

2  Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s,

3  before selling the Subject Property in 2003 and moving its business elsewhere to a

4  completely unrelated property.   Therefore, information regarding Pacifica's

5  operations after it sold and moved away from the Subject Property is not relevant and

6  the burden of searching for and producing such information is not proportionate to

7  the needs of this case.

8  **REQUEST FOR ADMISSION NO. 90:**

9       Admit that the DOCUMENT attached hereto as **Exhibit 33** is a true, correct,

10  and genuine copy of Notice of Noncompliance No. 569931 from County of Los

11  Angeles Department of Public Works Environmental Programs Division, dated May

12  7, 2008, directed to YOU for violations by PACIFICA CHEMICAL at the ARTESIA

13  PROPERTY.

14  **RESPONSE TO REQUEST FOR ADMISSION NO. 90:**

15       Responding party objects to this request as overbroad and unduly burdensome

16  to the extent it seeks information not related to the subject property at 132 W. 132nd

17  Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s,

18  before selling the Subject Property in 2003 and moving its business elsewhere to a

19  completely unrelated property.   Therefore, information regarding Pacifica's

20  operations after it sold and moved away from the Subject Property is not relevant and

21  the burden of searching for and producing such information is not proportionate to

22  the needs of this case.

23  **REQUEST FOR ADMISSION NO. 91:**

24       Admit that the DOCUMENT attached hereto as **Exhibit 34**  is a true, correct,

25  and genuine copy of Notice of Violation No. 569945 from County of Los Angeles

26  Department of Public Works Environmental Programs Division, dated May 7, 2008,

27  directed to YOU, for violations by PACIFICA CHEMICAL at the ARTESIA

28  PROPERTY.



**<u>RESPONSE TO REQUEST FOR ADMISSION NO. 91:</u>**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**<u>REQUEST FOR ADMISSION NO. 92:</u>**

Admit that the DOCUMENT attached hereto as **Exhibit 35** is a true, correct, and genuine copy of Notice of Non-Compliance No. 575389 from County of Los Angeles Department of Public Works Environmental Programs Division, dated June 26, 2008 for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**<u>RESPONSE TO REQUEST FOR ADMISSION NO. 92:</u>**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**<u>REQUEST FOR ADMISSION NO. 93:</u>**

Admit that the DOCUMENT attached hereto as **Exhibit 36**  is a true, correct, and genuine copy of Notice of Violation and Order to Company No. 584005, dated September 9, 2008, directed to YOU, for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.



**RESPONSE TO REQUEST FOR ADMISSION NO. 93:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 94:**

Admit that the DOCUMENT attached hereto as **Exhibit 37** is a true, correct, and genuine copy of a letter from County Sanitation Districts of Los Angeles County, dated July 12, 2010, enclosing Notice of Violation No. 96520, for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 94:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 95:**

Admit that the DOCUMENT attached hereto as **Exhibit 38** is a true, correct, and genuine copy of Notice of Violation and Order to Comply No. 732212 from the County of Los Angeles Department of Public Works, dated December 10, 2012, for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.



**RESPONSE TO REQUEST FOR ADMISSION NO. 95:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property). Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property. Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 96:**

Admit that the DOCUMENT attached hereto as **Exhibit 39** is a true, correct, and genuine copy of a letter from County Sanitation Districts of Los Angeles County, dated July 7, 2014, enclosing Notice of Violation No. 86193A, directed to YOU, for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 96:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property). Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property. Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 97:**

Admit that the DOCUMENT attached hereto as **Exhibit 40** is a true, correct, and genuine copy of a letter from County Sanitation Districts of Los Angeles County, dated June 2, 2014, enclosing Notice of Violation No. 86187C, directed to YOU for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.



**RESPONSE TO REQUEST FOR ADMISSION NO. 97:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property). Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property. Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 98:**

Admit that the DOCUMENT attached hereto as **Exhibit 41** is a true, correct, and genuine copy of Notice of Noncompliance No. 539412 from County of Los Angeles Department of Public Works Environmental Programs Division, dated August 22, 2007, directed to YOU, for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 98:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property). Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property. Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

Dated: November 5, 2020          PALADIN LAW GROUP® LLP

By:   _/s/ Kirk M. Tracy_
Kirk M. Tracy
Counsel for Defendant
Hussain M. Shaikh



# EXHIBIT 6

1   Bret A. Stone   SBN 190161   BStone@PaladinLaw.com
2   Kirk M. Tracy   SBN 288508   KTracy@PaladinLaw.com
    PALADIN LAW GROUP® LLP
3   220 W. Gutierrez Street
    Santa Barbara, CA  93101
4   Telephone:   (805) 898-9700
5   Facsimile:   (805) 852-2495

6   Counsel for Defendant Hussain M. Shaikh
7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11  TC RICH, LLC, *et al.*,                    Case No. 2:19-CV-02123-DMG-AGR

12              *Plaintiffs*,                   HUSSAIN M. SHAIKH'S RESPONSE
                                                TO TC RICH, LLC'S REQUESTS
13      *v.*                                    FOR ADMISSIONS, SET TWO

14  HUSSAIN M. SHAIKH, *et al.*,                Fed. R. Civ. P. 36

15              *Defendants*.                   Judge:  Hon. Dolly M. Gee

16

17

18  _____
    AND RELATED COUNTERCLAIMS
19  _____

20  PROPOUNDING PARTY:        TC Rich, LLC

21  RESPONDING PARTY:         Hussain M. Shaikh

22  TYPE OF DISCOVERY:        Requests for Admissions – Fed. R. Civ. P. 36

23  SET NUMBER:               Two

24

25

26

27

28



**EXHIBIT**
0006

SHAIKH'S RESPONSE TO TC RICH'S REQUESTS FOR ADMISSIONS, SET TWO

The following responses are based on the information reasonably available to Defendant Hussain M. Shaikh ("Shaikh") at this time.

**RESPONSES TO REQUESTS FOR ADMISSIONS**

**REQUEST FOR ADMISSION NO. 22:**

Admit there was a RELEASE of perchloroethylene ("PCE") to the ENVIRONMENT at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Admit.

**REQUEST FOR ADMISSION NO. 23:**

Admit that the 132nd STREET PROPERTY constitutes a FACILITY under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Admit.

**REQUEST FOR ADMISSION NO. 24:**

Admit that you were the OWNER of the 132nd STREET PROPERTY at the time of DISPOSAL of a HAZARDOUS SUBSTANCE at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Deny.

**REQUEST FOR ADMISSION NO. 25:**

Admit that PACIFICA CHEMICAL was the OPERATOR of the 132nd Street Property at the time of DISPOSAL of a HAZARDOUS SUBSTANCE at the property.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Deny.

**REQUEST FOR ADMISSION NO. 26:**

Admit that YOU were the President of PACIFICA CHEMICAL from

1  formation to the present.

2  **RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

3      Admit.

4  **REQUEST FOR ADMISSION NO. 27:**

5      Admit that YOU were the President of SHAH CHEMICAL from formation to

6  its suspension.

7  **RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

8      Admit.

9  **REQUEST FOR ADMISSION NO. 28:**

10     Admit that YOU have not received an administrative enforcement order or

11  other legal directive from the California Department of Toxic Substances Control,

12  Regional Water Quality Control Board, Los Angeles Region, or any other

13  governmental agency with jurisdiction over the environmental conditions at the 132nd

14  STREET PROPERTY directing YOU to undertake any environmental investigation

15  and/or remediation.

16  **RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

17      Deny.

18  **REQUEST FOR ADMISSION NO. 29:**

19      Admit that PACIFICA CHEMICAL has not received an administrative

20  enforcement order or other legal directive from the California Department of Toxic

21  Substances Control, Regional Water Quality Control Board, Los Angeles Region, or

22  any other governmental agency with jurisdiction over the environmental conditions

23  at the 132nd STREET PROPERTY directing YOU to undertake any environmental

24  investigation and/or remediation.

25  **RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

26      Deny.

27  **REQUEST FOR ADMISSION NO. 30:**

28      Admit that SHAH CHEMICAL has not received an administrative



enforcement order or other legal directive from the California Department of Toxic Substances Control, Regional Water Quality Control Board, Los Angeles Region, or any other governmental agency with jurisdiction over the environmental conditions at the 132nd STREET PROPERTY directing YOU to undertake any environmental investigation and/or remediation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

Admit.

**REQUEST FOR ADMISSION NO. 31:**

Admit that YOU have not entered into a Voluntary Cleanup Agreement with the California Department of Toxic Substances Control or Regional Water Quality Control Board, Los Angeles relating to the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

Admit.

**REQUEST FOR ADMISSION NO. 32:**

Admit that PACIFICA CHEMICAL has not entered into a Voluntary Cleanup Agreement with the California Department of Toxic Substances Control or Regional Water Quality Control Board, Los Angeles relating to the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

Admit.

**REQUEST FOR ADMISSION NO. 33:**

Admit that SHAH CHEMICAL has not entered into a Voluntary Cleanup Agreement with the California Department of Toxic Substances Control or Regional Water Quality Control Board, Los Angeles relating to the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

Admit.

/ / /



**REQUEST FOR ADMISSION NO. 34:**

Admit that PACIFICA CHEMICAL contends its current response activities, consisting of but not limited to the environmental investigation and remediation of the 132nd STREET PROPERTY, are necessary and consistent with the National Contingency Plan ("NCP") under CERCLA (*see* 42 U.S.C. section 9607).

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

Admit.

**REQUEST FOR ADMISSION NO. 35:**

Admit that YOU were the OWNER of the 132nd STREET PROPERTY from 1979 to 1984.

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

Admit.

**REQUEST FOR ADMISSION NO. 36:**

Admit that YOU were the OWNER of the 132nd STREET PROPERTY from 1987 to 2003.

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

Admit.

**REQUEST FOR ADMISSION NO. 37:**

Admit that YOU are the current OWNER of the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.



Responding party also objects to this request as overbroad and seeking irrelevant information. Records of current and historic financial information or property-ownership are not relevant to any claims, counterclaims, or cross-claims, elements of a cause of action in this matter. *Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1547, 309 U.S. App. D.C. 384 (D.C. Cir. 1994); *Metal Management Inc. v. Schiavone*, 514 F. Supp. 2d 227, 239-40 (D. Conn. 2007); *Sequa Corporation v. Gelmin*, 1995 U.S. Dist. LEXIS 9338, 1995 WL 404726, *2 (S.D.N.Y. July 7, 1995). Responding party further objects to this request because he has a constitutionally-based right to privacy and, as stated above, there is no demonstrable need for propounding party to have this information related to this litigation, which concerns environmental contamination at the subject property.

**REQUEST FOR ADMISSION NO. 38:**

Admit that PACIFICA CHEMICAL operated at the 132nd STREET PROPERTY between the dates of 1981 and 2003.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

Admit.

**REQUEST FOR ADMISSION NO. 39:**

Admit that SHAH CHEMICAL operated at the 132nd STREET PROPERTY between the dates of 1979 and 1981.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

Admit.

**REQUEST FOR ADMISSION NO. 40:**

Admit that YOU were a member of the Board of Directors of PACIFICA CHEMICAL from formation to the present.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

Admit.

**REQUEST FOR ADMISSION NO. 41:**

Admit that YOU were the registered agent for service of process of PACIFICA



1   CHEMICAL from formation to the present.

2   **RESPONSE TO REQUEST FOR ADMISSION NO. 41:**

3      Admit.

4   **REQUEST FOR ADMISSION NO. 42:**

5      Admit that PACIFICA CHEMICAL was registered as a large quantity
6   generator of hazardous waste in 1989.

7   **RESPONSE TO REQUEST FOR ADMISSION NO. 42:**

8      Deny.

9   **REQUEST FOR ADMISSION NO. 43:**

10      Admit that PACIFICA CHEMICAL was registered as a small quantity
11   generator of hazardous waste in 1996.

12   **RESPONSE TO REQUEST FOR ADMISSION NO. 43:**

13      Responding party admits that Pacifica Chemical was registered as a small
14   quantity generator of hazardous waste but does not have any recollection as to when
15   such registration occurred and therefore denies the remainder of this request.

16   **REQUEST FOR ADMISSION NO. 44:**

17      Admit that during the period of YOUR ownership of the 132nd STREET
18   PROPERTY, floors at the 132nd STREET PROPERTY in the chemical storage and
19   mixing areas were rinsed with water and discharged to concrete floor trenches.

20   **RESPONSE TO REQUEST FOR ADMISSION NO. 44:**

21      Admit.

22   **REQUEST FOR ADMISSION NO. 45:**

23      Admit that PACIFICA CHEMICAL stored PCE in an above ground storage
24   tank at the 132nd STREET PROPERTY.

25   **RESPONSE TO REQUEST FOR ADMISSION NO. 45:**

26      Admit.

27   **REQUEST FOR ADMISSION NO. 46:**

28      Admit that during the period of YOUR ownership of the 132nd STREET



SHAIKH'S RESPONSE TO TC RICH'S REQUESTS FOR ADMISSIONS, SET TWO

PROPERTY, PACIFICA CHEMICAL generated wastewater from rinsing drums, tanks and other storage containers that previously contained chemicals.

**RESPONSE TO REQUEST FOR ADMISSION NO. 46:**

Admit.

**REQUEST FOR ADMISSION NO. 47:**

Admit that during the period of YOUR ownership of the 132nd STREET PROPERTY PACIFICA CHEMICAL generated wastewater through the rinsing out of chemical blending and mixing tanks with fresh water and discharging the rinsate as wastewater.

**RESPONSE TO REQUEST FOR ADMISSION NO. 47:**

Admit.

**REQUEST FOR ADMISSION NO. 48:**

Admit that during the period of YOUR ownership of the 132nd STREET PROPERTY, PACIFICA CHEMICAL received citations from the Los Angeles Sanitation District for improper wastewater management practices.

**RESPONSE TO REQUEST FOR ADMISSION NO. 48:**

Responding party admits Pacifica Chemical received notices of violation from the Los Angeles Sanitation District related to wastewater management practices. Responding party denies the remainder of this request.

**REQUEST FOR ADMISSION NO. 49:**

Admit that YOU were identified as the responsible person for wastewater management on at least one citation issued by the Los Angeles Sanitation District to PACIFICA CHEMICAL.

**RESPONSE TO REQUEST FOR ADMISSION NO. 49:**

Deny.

**REQUEST FOR ADMISSION NO. 50:**

Admit that YOU filed Articles of Incorporation for PACIFICA CHEMICAL.

/ / /



**RESPONSE TO REQUEST FOR ADMISSION NO. 50:**

Admit.

**REQUEST FOR ADMISSION NO. 51:**

Admit that YOU filed Articles of Incorporation for SHAH CHEMICAL.

**RESPONSE TO REQUEST FOR ADMISSION NO. 51:**

Admit.

**REQUEST FOR ADMISSION NO. 52:**

Admit that the DOCUMENT attached hereto as **Exhibit 1** is a true, correct, and genuine copy of SHAH CHEMICAL'S Articles of Incorporation, filed on February 22, 1977.

**RESPONSE TO REQUEST FOR ADMISSION NO. 52:**

Responding party admits that page one of Exhibit 1 is a true, correct, and genuine copy of SHAH CHEMICAL'S Articles of Incorporation, filed on February 22, 1977.

**REQUEST FOR ADMISSION NO. 53:**

Admit that the signature on the line for execution of SHAH CHEMICAL'S Articles of Incorporation, attached as **Exhibit 1**, is YOUR true and correct signature.

**RESPONSE TO REQUEST FOR ADMISSION NO. 53:**

Amit.

**REQUEST FOR ADMISSION NO. 54:**

Admit that the DOCUMENT attached hereto as **Exhibit 2** is a true, correct, and genuine copy of SHAH CHEMICAL'S Statement by Domestic Stock Corporation, filed on March 2, 1981.

**RESPONSE TO REQUEST FOR ADMISSION NO. 54:**

Responding party admits that, other than the fax transmittal text across the top of the page, page 1 of Exhibit 2 is a true, correct, and genuine copy of SHAH CHEMICAL'S Statement by Domestic Stock Corporation, filed on March 2, 1981.

/ / /



SHAIKH'S RESPONSE TO TC RICH'S REQUESTS FOR ADMISSIONS, SET TWO

**REQUEST FOR ADMISSION NO. 55:**

Admit that the signature for President on SHAH CHEMICAL'S Statement by Domestic Stock Corporation, attached as **Exhibit 2**, is YOUR true and correct signature.

**RESPONSE TO REQUEST FOR ADMISSION NO. 55:**

Admit.

**REQUEST FOR ADMISSION NO. 56:**

Admit that the DOCUMENT attached hereto as **Exhibit 3** is a true, correct, and genuine copy of SHAH CHEMICAL'S Corporate Status Report, filed on March 1, 1981.

**RESPONSE TO REQUEST FOR ADMISSION NO. 56:**

Due to the poor quality of the scan of page one of exhibit 3, responding party cannot admit or deny this request.

**REQUEST FOR ADMISSION NO. 57:**

Admit that the DOCUMENT attached hereto as **Exhibit 4** is a true, correct, and genuine copy of PACIFICA CHEMICAL'S Articles of Incorporation, filed on October 10, 1978.

**RESPONSE TO REQUEST FOR ADMISSION NO. 57:**

Responding party admits that, other than the fax transmittal text across the top of the page, page 1 of Exhibit 4 is a true, correct, and genuine copy of PACIFICA CHEMICAL'S Articles of Incorporation, filed on October 10, 1978.

**REQUEST FOR ADMISSION NO. 58:**

Admit that the signature executing Pacifica Chemical Corporation's Articles of Incorporation, attached as **Exhibit 4**, is YOUR true and correct signature.

**RESPONSE TO REQUEST FOR ADMISSION NO. 58:**

Admit.

**REQUEST FOR ADMISSION NO. 59:**

Admit that the DOCUMENT attached hereto as **Exhibit 5** is a true, correct,



and genuine copy of PACIFICA CHEMICAL'S Statement of Information, filed on September 1, 2004.

**RESPONSE TO REQUEST FOR ADMISSION NO. 59:**

Responding party admits that, other than the fax transmittal text across the top of the page, page 1 of Exhibit 5 is a true, correct, and genuine copy of PACIFICA CHEMICAL'S Statement of Information, filed on September 1, 2004.

**REQUEST FOR ADMISSION NO. 60:**

Admit that the signature of the person completing PACIFICA CHEMICAL'S Statement of Information, attached as **Exhibit 5**, is YOUR true and correct signature.

**RESPONSE TO REQUEST FOR ADMISSION NO. 60:**

Admit.

**REQUEST FOR ADMISSION NO. 61:**

Admit that the DOCUMENT attached hereto as **Exhibit 6** is a true, correct, and genuine copy of PACIFICA CHEMICAL'S Statement of Information, filed on August 31, 2018.

**RESPONSE TO REQUEST FOR ADMISSION NO. 61:**

After a reasonable inquiry, responding party is unable to admit or deny this request.  The document does not appear to be publicly available on the California Secretary of State website.

**REQUEST FOR ADMISSION NO. 62:**

Admit that Lot 4 of Tract 27807 as recorded in Book 827 Pages 57-59 of Maps in the Los Angeles Office of the County Recorder, attached hereto as **Exhibit 7**, is the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 62:**

Admit.

**REQUEST FOR ADMISSION NO. 63:**

Admit that the DOCUMENT attached hereto as **Exhibit 8** is a true, correct, and genuine copy of the August 6, 1979 grant deed, in which Marmac Resources



1  Company granted YOU ownership of the 132nd STREET PROPERTY.

2  **RESPONSE TO REQUEST FOR ADMISSION NO. 63:**

3  After a reasonable inquiry, responding party is unable to admit or deny this
4  request.

5  **REQUEST FOR ADMISSION NO. 64:**

6  Admit that the DOCUMENT attached hereto as **Exhibit 9** is a true, correct,
7  and genuine copy of the December 10, 1984 grant deed, in which YOU granted
8  KHAN ownership of the 132nd STREET PROPERTY.

9  **RESPONSE TO REQUEST FOR ADMISSION NO. 64:**

10  After a reasonable inquiry, responding party is unable to admit or deny this
11  request.

12  **REQUEST FOR ADMISSION NO. 65:**

13  Admit that the DOCUMENT attached hereto as **Exhibit 10** is a true, correct,
14  and genuine copy of the October 26, 1987 grant deed, in which KHAN granted YOU
15  ownership of the 132nd STREET PROPERTY.

16  **RESPONSE TO REQUEST FOR ADMISSION NO. 65:**

17  After a reasonable inquiry, responding party is unable to admit or deny this
18  request.

19  **REQUEST FOR ADMISSION NO. 66:**

20  Admit that the DOCUMENT attached hereto as **Exhibit 11** to Plaintiff's
21  Request for Admission, Set One, is a true, correct, and genuine copy of the April 11,
22  2003 grant deed, in which YOU granted the individual Eun Hee Lee ownership of
23  the 132nd STREET PROPERTY.

24  **RESPONSE TO REQUEST FOR ADMISSION NO. 66:**

25  After a reasonable inquiry, responding party is unable to admit or deny this
26  request.

27  **REQUEST FOR ADMISSION NO. 67:**

28  Admit that the DOCUMENT attached hereto as **Exhibit 12** is a true, correct,



and genuine copy of the June 16, 2015 grant deed, in which HUSSAIN MAQBOOL SHAIKH granted SHAIKH MAQBOOL HUSSAIN ownership of the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 67:**

After a reasonable inquiry, responding party is unable to admit or deny this request.

**REQUEST FOR ADMISSION NO. 68:**

Admit that the DOCUMENT attached hereto as **Exhibit 13** is a true, correct, and genuine copy of a December 8, 1980 an Application for a County of Los Angeles Department of Public Works Permit for Industrial Wastewater Discharge at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 68:**

Admit.

**REQUEST FOR ADMISSION NO. 69:**

Admit that the signature on the line for execution by the applicant for the Application for a County of Los Angeles Department of Public Works Permit for Industrial Wastewater Discharge, attached as **Exhibit 13**, is YOUR true and correct signature.

**RESPONSE TO REQUEST FOR ADMISSION NO. 69:**

Admit.

**REQUEST FOR ADMISSION NO. 70:**

Admit that the DOCUMENT attached hereto as **Exhibit 14** is a true, correct, and genuine copy of a July 22, 1987 letter from the County of Los Angeles Department of Public Works, Attention to Hussain Shaikh at Pacifica Chemical, Inc., 132 W. 132nd Street, Los Angeles, CA 90061, enclosing Industrial Wastewater Discharge Permits for the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 70:**

Admit.



**REQUEST FOR ADMISSION NO. 71:**

Admit that the DOCUMENT attached hereto as **Exhibit 15** is a true, correct, and genuine copy of a Notice of Violation and Order to Comply from the County of Los Angeles Department of County Engineer Sanitation Division, dated June 16, 1981, directed to SHAH CHEMICAL, located at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 71:**

Admit.

**REQUEST FOR ADMISSION NO. 72:**

Admit that the signature on the line for execution on the "Received by" line on the Notice of Violation and Order to Comply, attached as **Exhibit 15**, is YOUR true and correct signature.

**RESPONSE TO REQUEST FOR ADMISSION NO. 72:**

Admit.

**REQUEST FOR ADMISSION NO. 73:**

Admit that the DOCUMENT attached hereto as **Exhibit 16** is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated June 23, 1992, enclosing Notice of Violation No. 9702 directed to YOU for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 73:**

Responding party admits that Exhibit 16 is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated June 23, 1992, enclosing Notice of Violation No. 9702, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 74:**

Admit that the DOCUMENT attached hereto as **Exhibit 17** is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated November 20, 1992, enclosing Notice of Violation No. 6376, directed to YOU for violations at the 132nd STREET PROPERTY.



**RESPONSE TO REQUEST FOR ADMISSION NO. 74:**

Responding party admits that Exhibit 17 is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated November 20, 1992, enclosing Notice of Violation No. 6376, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 75:**

Admit that the DOCUMENT attached hereto as **Exhibit 18** is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated January 7, 1993, enclosing Notice of Violation No. 6655 directed to YOU for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 75:**

Responding party admits that Exhibit 18 is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated January 7, 1993, enclosing Notice of Violation No. 6655, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 76:**

Admit that the DOCUMENT attached hereto as **Exhibit 19** is a true, correct, and genuine copy of a letter from the enclosing Sanitation Districts of Los Angeles County, dated September 29, 1993, and Notice of Violation No. 9301 directed to YOU for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 76:**

Responding party admits that Exhibit 19 is a true, correct, and genuine copy of a letter from the enclosing Sanitation Districts of Los Angeles County, dated September 29, 1993, and Notice of Violation No. 9301, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 77:**

Admit that the DOCUMENT attached hereto as **Exhibit 20** is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles

County, dated December 8, 1993, enclosing Notice of Violation No. 5320 directed to YOU for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 77:**

Responding party admits that Exhibit 20 is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated December 8, 1993, enclosing Notice of Violation No. 5320, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 78:**

Admit that the DOCUMENT attached hereto as **Exhibit 21** is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated October 4, 1995, enclosing Notice of Violation No. 13257 directed to YOU for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 78:**

Responding party admits that Exhibit 21 is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated October 4, 1995, enclosing Notice of Violation No. 13257, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 79:**

Admit that the DOCUMENT attached hereto as **Exhibit 22** is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated May 16, 1996, enclosing Notice of Violation No. 7295 directed to YOU for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 79:**

Responding party admits that Exhibit 22 is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated May 16, 1996, enclosing Notice of Violation No. 7295, relating to the 132nd STREET PROPERTY.

/ / /



**REQUEST FOR ADMISSION NO. 80:**

Admit that the DOCUMENT attached hereto as **Exhibit 23** is a true, correct, and genuine copy of Notice of Violation No. 248804 from County of Los Angeles Department of Public Works, dated February 4, 1999, for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 80:**

Responding party admits that Exhibit 23 is a true, correct, and genuine copy of Notice of Violation No. 248804 from County of Los Angeles Department of Public Works, dated February 4, 1999, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 81:**

Admit that the DOCUMENT attached hereto as **Exhibit 24** is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated August 31, 1999, enclosing Notice of Violation No. 17575 directed to YOU for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 81:**

Responding party admits that Exhibit 24 is a true, correct, and genuine copy of a letter from the County Sanitation Districts of Los Angeles County, dated August 31, 1999, enclosing Notice of Violation No. 17575, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 82:**

Admit that the DOCUMENT attached as **Exhibit 25** is a true, correct, and genuine copy of a Notice of Violation from County of Los Angeles Department of Public Works, dated November 22, 2000 for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 82:**

Responding party admits that Exhibit 25 is a true, correct, and genuine copy of a Notice from County of Los Angeles Department of Public Works, dated November 22, 2000, relating to the 132nd STREET PROPERTY.



**REQUEST FOR ADMISSION NO. 83:**

Admit that the DOCUMENT attached hereto as **Exhibit 26** is a true, correct, and genuine copy of Notice of Non-Compliance No. V000322687 from County of Los Angeles Department of Public Works, dated December 29, 2000, for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 83:**

Responding party admits that Exhibit 26 is a true, correct, and genuine copy of Notice of Non-Compliance No. V000322687 from County of Los Angeles Department of Public Works, dated December 29, 2000, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 84:**

Admit that the DOCUMENT attached hereto as **Exhibit 27** is a true, correct, and genuine copy of Notice of Violation and Order to Comply No. V322688 from County of Los Angeles Department of Public Works, dated March 5, 2001, for violations at the 132nd STREET PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 84:**

Responding party admits that Exhibit 27 is a true, correct, and genuine copy of Notice of Violation and Order to Comply No. V322688 from County of Los Angeles Department of Public Works, dated March 5, 2001, relating to the 132nd STREET PROPERTY.

**REQUEST FOR ADMISSION NO. 85:**

Admit that the DOCUMENT attached hereto as **Exhibit 28** is a true, correct, and genuine copy of Notice of Non-Compliance No. V347139 from the County of Los Angeles Department of Public Works, dated May 20, 2002 for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 85:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd



Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 86:**

Admit that the DOCUMENT attached hereto as **Exhibit 29** is a true, correct, and genuine copy of a Notice of Violation and Order to Comply from County of Los Angeles Department of Public Works, dated June 10, 2002 for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 86:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 87:**

Admit that the DOCUMENT attached hereto as **Exhibit 30** is a true, correct, and genuine copy of Notice of Violation and Order to Comply No. 615661 from the Los Angeles County Department of Public Works Environmental Programs Division, dated June 3, 2004 for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 87:**

Responding party objects to this request as overbroad and unduly burdensome

SHAIKH'S RESPONSE TO TC RICH'S REQUESTS FOR ADMISSIONS, SET TWO

to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property). Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property. Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 88:**

Admit that the DOCUMENT attached hereto as **Exhibit 31** is a true, correct, and genuine copy of Notice of Violation No. 462360 from the Los Angeles County Department of Public Works Environmental Programs Division, dated September 15, 2005 for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 88:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property). Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property. Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 89:**

Admit that the DOCUMENT attached hereto as **Exhibit 32** is a true, correct, and genuine copy of Notice of Violation No. 559912 from the County of Los Angeles Department of Public Works Environmental Programs Division, dated March 10, 2008, for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 89:**

Responding party objects to this request as overbroad and unduly burdensome

to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 90:**

Admit that the DOCUMENT attached hereto as **Exhibit 33** is a true, correct, and genuine copy of Notice of Noncompliance No. 569931 from County of Los Angeles Department of Public Works Environmental Programs Division, dated May 7, 2008, directed to YOU for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 90:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 91:**

Admit that the DOCUMENT attached hereto as **Exhibit 34**  is a true, correct, and genuine copy of Notice of Violation No. 569945 from County of Los Angeles Department of Public Works Environmental Programs Division, dated May 7, 2008, directed to YOU, for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.



**RESPONSE TO REQUEST FOR ADMISSION NO. 91:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 92:**

Admit that the DOCUMENT attached hereto as **Exhibit 35** is a true, correct, and genuine copy of Notice of Non-Compliance No. 575389 from County of Los Angeles Department of Public Works Environmental Programs Division, dated June 26, 2008 for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 92:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 93:**

Admit that the DOCUMENT attached hereto as **Exhibit 36** is a true, correct, and genuine copy of Notice of Violation and Order to Company No. 584005, dated September 9, 2008, directed to YOU, for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.



**RESPONSE TO REQUEST FOR ADMISSION NO. 93:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 94:**

Admit that the DOCUMENT attached hereto as **Exhibit 37** is a true, correct, and genuine copy of a letter from County Sanitation Districts of Los Angeles County, dated July 12, 2010, enclosing Notice of Violation No. 96520, for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 94:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 95:**

Admit that the DOCUMENT attached hereto as **Exhibit 38** is a true, correct, and genuine copy of Notice of Violation and Order to Comply No. 732212 from the County of Los Angeles Department of Public Works, dated December 10, 2012, for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.



**<u>RESPONSE TO REQUEST FOR ADMISSION NO. 95:</u>**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.   Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**<u>REQUEST FOR ADMISSION NO. 96:</u>**

Admit that the DOCUMENT attached hereto as **Exhibit 39** is a true, correct, and genuine copy of a letter from County Sanitation Districts of Los Angeles County, dated July 7, 2014, enclosing Notice of Violation No. 86193A, directed to YOU, for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**<u>RESPONSE TO REQUEST FOR ADMISSION NO. 96:</u>**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.   Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**<u>REQUEST FOR ADMISSION NO. 97:</u>**

Admit that the DOCUMENT attached hereto as **Exhibit 40** is a true, correct, and genuine copy of a letter from County Sanitation Districts of Los Angeles County, dated June 2, 2014, enclosing Notice of Violation No. 86187C, directed to YOU for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.



SHAIKH'S RESPONSE TO TC RICH'S REQUESTS FOR ADMISSIONS, SET TWO

**RESPONSE TO REQUEST FOR ADMISSION NO. 97:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

**REQUEST FOR ADMISSION NO. 98:**

Admit that the DOCUMENT attached hereto as **Exhibit 41** is a true, correct, and genuine copy of Notice of Noncompliance No. 539412 from County of Los Angeles Department of Public Works Environmental Programs Division, dated August 22, 2007, directed to YOU, for violations by PACIFICA CHEMICAL at the ARTESIA PROPERTY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 98:**

Responding party objects to this request as overbroad and unduly burdensome to the extent it seeks information not related to the subject property at 132 W. 132nd Street (Subject Property).  Pacifica Chemical discontinued use of PCE in the 1980s, before selling the Subject Property in 2003 and moving its business elsewhere to a completely unrelated property.  Therefore, information regarding Pacifica's operations after it sold and moved away from the Subject Property is not relevant and the burden of searching for and producing such information is not proportionate to the needs of this case.

Dated: November 5, 2020            PALADIN LAW GROUP® LLP

By:   */s/ Kirk M. Tracy*
Kirk M. Tracy
Counsel for Defendant
Hussain M. Shaikh



# EXHIBIT 7

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

Name Hussain M. Shaikh
Street Address 447 E. Rosecrans Ave.
City & State Gardena, CA  90248

RECORDED IN OFFICIAL RECORDS
OF LOS ANGELES COUNTY, CA

AUG 10 1979 AT 8 A.M.

Recorder's Office

FEE
$3
R

MAIL TAX STATEMENTS TO

Name Hussain M. Shaikh
Street Address 132 W. 132nd St.
City & State Gardena, CA  90248

SPACE ABOVE THIS LINE FOR RECORDER'S USE

DOCUMENTARY TRANSFER TAX $ 1,111.00
.......... Title Insurance and
Ell L. Wilson Trust Company
SIGNED - PARTY OR AGENT   FIRM NAME

As Instructed by Imperial Bank

X COMPUTED ON FULL VALUE OF PROPERTY CONVEYED

# Corporation Grant Deed

TO 406 CA (7-68)    THIS FORM FURNISHED BY TITLE INSURANCE AND TRUST COMPANY

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

MARMAC RESOURCES COMPANY,

a corporation organized under the laws of the state of    California
hereby GRANTS to

HUSSAIN M. SHAIKH, a married man as his separate property

the following described real property in the
County of    Los Angeles    , State of California:

Lot 4 of Tract No. 27807, in the County of Los Angeles, State of
California, as per map recorded in Book 827, Pages 57 to 59 Inclusive
of Maps, in the office of the County Recorder of said County.

In Witness Whereof, said corporation has caused its corporate name and seal to be affixed hereto and this instrument to be executed by its _____ President and _____ Assistant _____ Secretary thereunto duly authorized.

Dated: __August 6, 1979__

MARMAC RESOURCES COMPANY, a corporation

By _____
Earl F. Chambers    President

By _____
Joseph W. Aidlin   asst   Secretary

STATE OF CALIFORNIA
COUNTY OF   LOS ANGELES   } ss.

On    August 6, 1979    before me, the under signed, a Notary Public in and for said State, personally appeared    EARL F. CHAMBERS    known to me to be the _____ President, and
JOSEPH W. AIDLIN    known to me to be
Assistant _____ Secretary of the Corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the Corporation therein named, and acknowledged to me that such Corporation executed the within Instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature _____

PHYLLIS TOTORO
Name (Typed or Printed)

OFFICIAL SEAL
PHYLLIS TOTORO
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My comm. expires JAN 5, 1981

(This area for official notarial seal)

Title Order No. 7776404   B Good    Escrow or Loan No. _____

MAIL TAX STATEMENTS AS DIRECTED ABOVE

EXHIBIT
0007

79 853044

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

Name  Hussain M. Shaikh
Street Address  76 Strawberry Lane
City & State  Rolling Hills Estates, Ca. 90274

RECORDED IN OFFICIAL RECORDS
OF LOS ANGELES COUNTY, CA

AUG 10 1979 AT 8 A.M.

Recorder's Office

MAIL TAX STATEMENTS TO

Name  Hussain M. Shaikh
Street Address  76 Strawberry Lane
City & State  Rolling Hills Estates, Ca.
90274

FEE
$3
R

—— SPACE ABOVE THIS LINE FOR RECORDER'S USE ——

## Individual Quitclaim Deed

THIS FORM FURNISHED BY TICOR TITLE INSURERS

TO 1922 CA. (1 75)                                                                          A.P.N.

The undersigned grantor(s) declare(s):
Documentary transfer tax is $ _None-no consideration_
( ) computed on full value of property conveyed, or
( ) computed on full value less value of liens and encumbrances remaining at time of sale.
( ) Unincorporated area: ( ) City of _____, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Judy Shaikh, a married woman, wife of grantee herein

hereby REMISE(S), RELEASE(S) AND FOREVER QUITCLAIM(S) to

Hussain M. Shaikh, a married man as his separate property

the following described real property in the        --        County of Los Angeles
State of California:  Lot 4 of Tract #27807 as recorded in Map Book 627,
pages 57 to 59 inclusive; commonly known as 132 West
132nd Street

Dated     June 18, 1979

Judy Shaikh

STATE OF CALIFORNIA
COUNTY OF _____ Los Angeles _____ } SS.
On _____ June 18, 1979 _____ before me, the under-
signed, a Notary Public in and for said State, personally appeared

Judy Shaikh

_____, known to me
to be the person _____ whose name _/S_ subscribed to the within
instrument and acknowledged that _SHE_ executed the same.
WITNESS my hand and official seal

Signature _____

OFFICIAL SEAL
SUNNY LEE FREEMAN
NOTARY PUBLIC CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires April 5, 1981

(This area for official notarial seal)

Title Order No. 7736404     B. Good     Escrow or Loan No. _____

MAIL TAX STATEMENTS AS DIRECTED ABOVE

RECORDED IN OFFICIAL RECORDS
OF LOS ANGELES COUNTY, CA

AUG 10 1979 AT 8 A.M.

Recorder's Office

FEE
$5
3R

When recorded mail to

**HOME SAVINGS AND LOAN ASSOCIATION**
P.O. BOX 3991
NORTH HOLLYWOOD, CALIFORNIA 91609

Escrow or
Loan No. 00398108-1    Title
Order No. 7776404

_____ SPACE ABOVE THIS LINE FOR RECORDER'S USE _____

## Deed of Trust and Assignment of Rents

This Deed of Trust, made this **30th** day of **July, 1979** between

HUSSAIN M. SHAIKH, A MARRIED MAN AS HIS SEPARATE PROPERTY

herein called TRUSTOR, whose address is

447 East Rosecrans Avenue
(number and street)

Gardena          California          90248
(city)            (state)            (zip code)

SERRANO RECONVEYANCE COMPANY, a California corporation, herein called TRUSTEE, and HOME SAVINGS AND LOAN ASSOCIATION, a California corporation, herein called BENEFICIARY.

WITNESSETH: Trustor irrevocably grants, transfers and assigns to Trustee, in Trust, with power of sale, that real property in Los Angeles County, California, described as:

Lot 4 of Tract NO. 27807, in the County of Los Angeles, State of California, as per Map Recorded in Book 827, Pages 57 to 59, inclusive of Maps, in the Office of the County Recorder of said County.

Together with all interest which Trustor now has or may hereafter acquire in or to said property and in and to: (a) all easements and rights of way appurtenant thereto, and (b) all buildings, structures, improvements, fixtures, and appurtenances now or hereafter placed thereon, including, but not limited to, all apparatus and equipment, whether or not physically affixed to the land or any building, used to provide or supply air-cooling, air-conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dishwashing, garbage disposal or other services; and all waste vent systems, antennas, pool equipment, window coverings, drapes and drapery rods, carpeting and floor covering, awnings, ranges, ovens, water heaters and attached cabinets, it being intended and agreed that such items be conclusively deemed to be affixed to and to be part of the real property that is conveyed hereby; and (c) all water and water rights (whether or not appurtenant) and shares of stock pertaining to said water or water rights, ownership of which affects said property; and (d) the rents, income, issues and profits of all property covered by this Deed of Trust, SUBJECT, HOWEVER, to the assignment by Trustor to Beneficiary of such rents, income, issues and profits, hereinafter set forth. Trustor agrees to execute and deliver, from time to time, such further instruments as may be requested by Beneficiary to confirm the lien of this Deed of Trust on any such equipment. The property conveyed to Trustee hereunder is hereinafter referred to as "such property."

The Trustor absolutely and irrevocably grants, transfers and assigns to Beneficiary the rents, income, issues, and profits of all property covered by this Deed of Trust.

FOR THE PURPOSE OF SECURING:

(1) Payment of the sum of $ 700,000.00 with interest thereon, according to the terms of a promissory note of even date herewith, made by Trustor, payable to Beneficiary or order, and all modifications, extensions or renewals thereof. (2) Payment of such additional sums with interest thereon (a) as may be hereafter borrowed from Beneficiary by the then record owner of such property and evidenced by a promissory note or notes reciting it or they are so secured and all modifications, extensions or renewals thereof or (b) as may be incurred, paid out, or advanced by Beneficiary, or may otherwise be due to Trustee or Beneficiary, under any provision of this Deed of Trust and all modifications, extensions or renewals thereof. (3) Payment of each agreement of Trustor contained herein or incorporated herein by reference or contained in any papers executed by Trustor relating to the loan secured hereby. (4) Performance, if the loan secured hereby or any part thereof is for the purpose of constructing improvements on such property, of each provision or agreement of Trustor contained in any building loan agreement or other agreement between Trustor and Beneficiary relating to such property. (5) The performance and keeping by Trustor of each of the covenants and agreements required to be kept and performed by Trustor pursuant to the terms of any lease and any and all other instruments creating Trustor's interest in or defining Trustor's right in respect to such property. (6) Compliance by Trustor, with each and every monetary provision to be performed by Trustor under any Declaration of Covenants, Conditions and Restrictions pertaining to such property and upon written request of Beneficiary, the enforcement by Trustor of any covenant to pay maintenance or other charges, if the same have not been paid or valid legal steps taken to enforce such payment within 90 days after such written request is made. (7) At Beneficiary's option, payment, with interest thereon, of any other present or future indebtedness or obligation of Trustor (or of any successor in interest of Trustor to such property) due to Beneficiary, whether created directly or acquired by absolute or contingent assignment, whether due or not, whether otherwise secured or not, or whether existing at the time of the execution of this Deed of Trust or arising thereafter, the exercise of such option to be evidenced by a notice in writing to Trustor or any successor in interest of Trustor. (8) Performance of all agreements of Trustor to pay fees and charges to the Beneficiary whether or not herein set forth. (9) Payment of charges, as allowed by law when such charges are made, for any statement regarding the obligation secured hereby.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

(1) Construction or Improvements. To complete in good and workmanlike manner any building or improvement or repair relating thereto which may be begun on such property or contemplated by the loan secured hereby, to pay when due all costs and liabilities incurred therefor, and not to permit any mechanic's lien against such property, nor any stop notice against any loan proceeds. Trustor also agrees, anything in this Deed of Trust to the contrary notwithstanding, (a) to promptly commence work and to complete the proposed improvements promptly, (b) to complete same in accordance with plans and specifications as approved by Beneficiary, (c) to allow Beneficiary to inspect such property at all times during construction, (d) to replace any work or materials unsatisfactory to Beneficiary, within fifteen (15) days after written notice from Beneficiary of such fact, which notice may be given to Trustor by registered mail, sent to his last known address, or by personal service of the same.

SF-926  PART 1  (3-74)   7776404  B. Good

(2)  Repair and Maintenance of Property. To keep such property in good condition and repair; not to substantially alter, remove or demolish any buildings thereon; to restore promptly and in good workmanlike manner any buildings which may be damaged or destroyed including, without restricting the generality of the foregoing, damage from termites, and earth movement; to pay when due all claims for labor performed and materials furnished in connection with such property and not to permit any mechanic's lien against such property; to comply with all laws affecting such property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereon; not to commit, suffer or permit any act upon such property in violation of law; to cultivate, irrigate, fertilize, fumigate and prune; and to do all other acts that from the character or use of such property may be reasonably necessary to keep such property in the same condition (reasonable wear and tear excepted) as at the date of this Deed of Trust.

(3)  Fire and Casualty Insurance. To provide and maintain in force, at all times, fire and other types of insurance with respect to such property as may be required by Beneficiary. Each policy of such insurance shall be in an amount, for a term and in form and content and by such companies, as may be satisfactory to Beneficiary, with loss payable to Beneficiary, and shall be delivered to, and remain in possession of, Beneficiary as further security for the faithful performance of these trusts. Trustor shall also furnish Beneficiary with written evidence showing payment of all premiums therefor. At least thirty (30) days prior to the expiration of any insurance policy, a policy renewing or extending such expiring insurance shall be delivered to Beneficiary with written evidence showing payment of the premium therefor, and, in the event any such insurance policy and evidence of payment of the premium are not so delivered to Beneficiary, Trustor by executing this Deed of Trust specifically requests Beneficiary to obtain such insurance. Beneficiary, but without obligation so to do, without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may obtain such insurance through or from any insurance agency or company acceptable to it, and pay the premium therefor. Neither Trustor nor Beneficiary shall be chargeable with obtaining or maintaining such insurance or for the collection of any insurance monies or for any insolvency of any insurer for insurance underwriter. Beneficiary, from time to time, may furnish to any insurance agency or company, or any other person, any information contained in or extracted from any insurance policy theretofore delivered to Beneficiary pursuant hereto, and any information concerning the loan secured hereby. Trustor hereby assigns to Beneficiary all unearned premiums on any such policy, and agrees that any and all unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the property conveyed at any Trustee's sale held hereunder.

(4)  Life, Health or Accident Insurance. If Trustor shall maintain life, accident or health insurance and Beneficiary shall be the owner or holder of any policy of such insurance as further security hereunder, Beneficiary may elect to pay any premiums thereon as to which Trustor shall be in default, and any amount so paid may be secured hereby.

(5)  Taxes and Other Sums Due. To pay, satisfy and discharge (a) at least ten (10) days before delinquency, all general and special City and County Taxes, and all assessments on water stock, affecting such property, (b) when due, all special assessments for public improvements, without permitting any improvement bond to issue for any special assessment, (c) on demand of Beneficiary but in no event later than the date such amounts become ... ... , (1) all encumbrances, charges and liens, with interest, on such property, or any part thereof, which are, or appear to Beneficiary to be prior ... superior hereto, (2) all costs, fees and expenses of this trust whether or not described herein, (3) fees or charges for any statement regarding the obligation secured hereby in any amount demanded by Beneficiary not to exceed the maximum amount allowed by law therefor at the time when such request is made, (4) such other charges as the Beneficiary may deem reasonable for services rendered by Beneficiary and furnished at the request of Trustor or any successor in interest to Trustor, (5) if such property includes a leasehold estate, all payments and obligations required of the Trustor or his successor in interest under the terms of the instrument or instruments creating such leasehold, and (6) all payments and monetary obligations required of the owner of such property under any declaration of covenants or conditions or restrictions pertaining to such property or any modification thereof. Should Trustor fail to make any such payment, Beneficiary without contesting the validity or amount may elect to make or advance such payment together with any costs, expenses, fees, or charges relating thereto. Trustor agrees to notify Beneficiary immediately upon receipt by Trustor of notice of any increase in the assessed value of such property and agrees that Beneficiary, in the name of Trustor, may contest by appropriate proceedings such increase in assessment. Trustor agrees to notify Beneficiary and appropriate taxing authorities immediately upon the happening of any event which does or may effect the value of such property, the amount or basis of assessment of such property, or the availability of any exemption to which Trustor is or may be entitled.

In the event of the passage of any law deducting from the value of real property for the purposes of taxation any lien thereon, or changing in any way the laws for the taxation of deeds of trust or debts secured by deeds of trust for state or local purposes, or the manner of the collection of any such taxes, including, but not limited to, the postponement of the payment of all or any part of any real or personal property taxes, so as to affect this Deed of Trust, the holder of this Deed of Trust and of the obligations which it secures shall have the right to declare the principal sum and the interest due on a date to be specified by not less than 30 days' written notice to be given to Trustor by Beneficiary; provided, however, that such election shall be ineffective if Trustor is permitted by law to pay the whole of such tax in addition to all other payments required hereunder and if, prior to such specified date, does pay such tax and agrees to pay any such tax when hereafter levied or assessed against such property, and such agreement shall constitute a modification of this Deed of Trust.

(6)  Impounds. To pay to Beneficiary, if Beneficiary shall so request, in addition to any other payments required hereunder, monthly advance installments, as estimated by Beneficiary, for taxes, assessments, insurance premiums, ground rents or other obligations secured by this Deed of Trust (hereinafter in this paragraph referred to as "such obligations") for the purpose of establishing a fund to ensure payment when due, or before delinquency, of any or all of such obligations required to be paid as to such property. If the amounts paid to Beneficiary under the provisions of this paragraph are insufficient to discharge the obligations of Trustor to pay such obligations as the same become due or delinquent, Trustor shall pay to Beneficiary, upon its demand, such additional sums necessary to discharge Trustor's obligation to pay such obligations. All monies paid to Beneficiary under this paragraph may be intermingled with other monies of Beneficiary and shall not bear interest. Beneficiary may pay such obligations whether before or after they become due and payable. In the event of a default in the payment of any monies due on the indebtedness secured hereby, default of any obligation secured hereby, or default in the performance of any of the covenants and obligations of this Deed of Trust, then any balance remaining from monies paid Beneficiary under the provisions of this paragraph may, at the option of Beneficiary, be applied to the payment of principal, interest or other obligations secured hereby in lieu of being applied to any of the purposes for which the impound account is established. Beneficiary will make such reports of impounds as are required by law.

(7)  Assignment of Awards and Damages to Beneficiary. All sums due, paid, or payable to Trustor or any successor in interest to Trustor of such property whether by way of judgment, settlement or otherwise (a) for injury or damage to such property, or (b) in connection with the transaction financed by the loan secured hereby, or (c) in connection with any condemnation for public use of ... ... ury to such property, or any part thereof, is hereby assigned and shall be paid to Beneficiary. Beneficiary shall be entitled, at its option, to commence, intervene in, appear in and prosecute in its own name, any action or proceeding, or to make any compromise or settlement, in connection with any such taking or damage. Trustor agrees to execute such further assignments of any compensation, award, damages, rights of action and proceeds as Beneficiary may require.

(8)  Disposition of the Proceeds of any Insurance Policy, Condemnation or other Recovery. The amount received by Beneficiary pursuant to this Deed of Trust under any fire or other insurance policy, in connection with any condemnation for public use of or injury to such property, for injury or damage to such property, or in connection with the transaction financed by the loan secured hereby, at the option of Beneficiary may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or, without reducing the indebtedness secured hereby, may be used to replace, restore, or reconstruct such property to a condition satisfactory to Beneficiary or may be released to Trustor, or any such amount may be divided in any manner among any such application, use or release. No such application, use or release shall cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(9)  Litigation. Trustor shall defend this Trust in any action or proceeding purporting to affect such property whether or not it affects the security hereof, or purporting to affect the rights or powers of Beneficiary or Trustee, and to file and prosecute all necessary claims and actions to prevent or recover for any damage to or destruction of such property; and either Trustee or Beneficiary is hereby authorized, without obligation so to do, to commence, appear in, or defend any such action, whether brought by or against Trustor, Beneficiary or Trustee, or with or without suit, to exercise or enforce any other right, remedy, or power available or conferred hereunder, whether or not judgment be entered in any action or proceeding, and Trustee or Beneficiary may appear or intervene in any action or proceeding, and retain counsel therein, and take such action therein, as either may be advised, and may settle, compromise or pay the same or any other claims and, in that behalf and for any of said purposes, may expend and advance such sums of money as either may deem necessary. Whether or not Trustor so appears or defends. Trustor on demand shall pay all costs and expenses of Beneficiary and Trustee including costs of evidence of title, in any such action or proceeding in which Beneficiary or Trustee may appear by virtue of being made a party defendant or otherwise and irrespective of whether the interest of Beneficiary or Trustee in such property is directly questioned by such action, including but not limited to any action for the condemnation or partition of such property and any suit brought by Beneficiary to foreclose this Deed of Trust.

(10)  Loan on Leasehold Estate. If such property includes a leasehold estate, Trustor agrees to comply with all of the terms, conditions, and provisions of the instrument or instruments creating such leasehold. Trustor also agrees not to amend, change, or modify his leasehold interest, or the terms on which such he such leasehold interest, or to agree to do so, without the written consent of Beneficiary being first obtained.

(11)  Prepayment Charge. Should any note or obligation secured hereby provide any fee for prepayment of any of the indebtedness secured hereby, to pay said fee notwithstanding Trustor shall have defaulted in any obligation secured hereby and Beneficiary, by reason thereof, shall have declared all sums secured hereby immediately due and payable.

(12)  Failure of Trustor to Comply with Deed of Trust. Should Trustor fail to make any payment, or to do any act as provided in this Deed of Trust, or fail to perform any obligation secured by this Deed of Trust, or do any act Trustor agreed not to do, Trustor shall be in default under this Deed of Trust. Beneficiary may, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, and without contesting the validity or amount of the same, may (a) make or do the same in such manner and to such extent as it may deem necessary to protect the security hereof, Beneficiary being authorized to enter upon such property for such purposes, and (b) pay, purchase, contest or compromise any encumbrance, charge, or lien, which in its judgment is or appears to be prior or superior hereto, and (c) in exercising any such power, pay necessary expenses, Trustor agrees to repay any amount so expended on demand of Beneficiary.

(13)  Sums Advanced to Bear Interest and To Be Added to Deed of Trust. To pay immediately upon demand any sums advanced or paid by Beneficiary or Trustee under any clause or provision of this Deed of Trust. Any such sum, until so repaid, shall be secured hereby and bear interest from the date it was advanced or paid at the same rate as such indebtedness and shall be secured by this Deed of Trust.

(14)  Application of Funds. Beneficiary shall have the right at its sole discretion to direct the manner in which payments or proceeds shall be applied upon or allocated among the various items composing Trustor's indebtedness or obligations secured hereby.

(15)  Obligation of Trustor Joint and Several. If more than one person is named as Trustor, each obligation of Trustor shall be the joint and several obligation of each such person.

(16)  Acceleration Clause: Right of Beneficiary to Declare All Sums Due on any Transfer, Etc. Beneficiary shall have the right, at its option, to declare any indebtedness and obligations secured hereby, irrespective of the maturity date specified in any note or agreement evidencing the same, due and payable within 30 days after such declaration if (a) Trustor or any successor in interest to Trustor of such property sells, enters into a contract of sale, conveys, further encumbers or alienates such property or any part thereof, or suffers his title or any interest therein to be divested or encumbered, whether voluntarily or involuntarily, or leases such property or any part thereof for a term of 5 years or more, or changes or permits to be changed the character or use of the property, or drills or extracts or enters into a lease for the drilling for or extracting oil, gas or other hydrocarbon substance or any mineral of any kind or character on such property, or (b) Trustor is a partnership and the interest of a general partner is assigned or transferred, or (c) Trustor is a corporation and more than 25% of the corporate stock thereof is sold, transferred or assigned during a 12 month period, or (d) Trustor is a trust and there is a change of beneficial interest with respect to more than 25% of such property, or (e) Trustor has made any material misrepresentation or failed to disclose any material fact, in those certain financial and other written representations and disclosures made by Trustor in order to induce Beneficiary to enter into the transaction evidenced by the Promissory Note or notes or agreements which this Deed of Trust secures.

(17)  No Waiver by Beneficiary. No waiver by Beneficiary of any right under this Deed of Trust shall be effective unless in writing. Waiver by Beneficiary of any right granted to Beneficiary under this Deed of Trust or of any provision of this Deed of Trust as to any transaction or occurrence shall not be deemed a waiver as to any future transaction or occurrence. By accepting payment of any sum secured hereby after its due date, or by making any payment or performing any act on behalf of Trustor that Trustor was obligated hereunder, but failed, to make or perform, or by adding any payment so secured or to receive prompt performance of all other acts required hereunder, or to declare a default for failure so to pay.

1F-524   PART 1   (3-74)

(18) Modification in Writing. This Deed of Trust cannot be changed except as otherwise provided in this Deed of Trust or by agreement in writing signed by Trustor, or any successor in interest to Trustor, and Beneficiary.

(19) Right to Collect and Receive Rents and Profits. Notwithstanding any other provisions hereof, Beneficiary and Trustee hereby grant permission to Trustor to collect and retain the rents, income, issues and profits of such property as they become due and payable, but each reserves the right to revoke such permission as to itself at any time with or without cause by notice in writing to Trustor, mailed to Trustor at his last known address. In any event, such permission to Trustor automatically shall be revoked upon default by Trustor in payment of any indebtedness secured hereby or in the performance of any agreement hereunder. On any such default, Beneficiary may at any time without notice, either in person, by agent, or by receiver to be appointed by the Court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of such property, or any part thereof, make, cancel, enforce or modify leases, obtain and eject tenants, set or modify rents, in its own name sue for or otherwise collect the rents, income, issues and profits thereof, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, upon any indebtedness secured hereby and in such order as Beneficiary may determine; and except for such application, Beneficiary shall not be liable to any person for the collection or non-collection of any rents, income, issues or profits, nor the failure to assert or enforce any of the foregoing rights. The entering upon and taking possession of such property, the collection of such rents, income, issues or profits, the doing of other acts herein authorized, and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(20) Remedies. No remedy herein provided shall be exclusive of any other remedy herein or now or hereafter existing by law, but shall be cumulative. Every power or remedy hereby given to Trustee or to Beneficiary or to which either of them may be otherwise entitled, may be exercised from time to time and as often as may be deemed expedient by them, and either of them may pursue inconsistent remedies. If Beneficiary holds any additional security for any obligation secured hereby, it may enforce the sale thereof at its option, either before or contemporaneously with, or after the sale is made hereunder, and on any default of Trustor, Beneficiary may, at its option, offset against any indebtedness owing by it to Trustor, the whole or any part of the indebtedness owing by it to Trustor, the whole or any part of the indebtedness secured hereby, and the Beneficiary is hereby authorized and empowered at its option, without any obligation so to do, and without affecting the obligations hereof, to apply toward the payment of any indebtedness secured hereby and of the Trustee to the Beneficiary, any and all sums or money which the Beneficiary may have in its possession or under its control, including without limiting the generality of the foregoing, the indebtedness evidenced by any savings or trust funds.

In order to assure the definiteness and certainty of the rights and obligations herein provided, Trustor waives any and all rights of offset of claims and no offset shall relieve Trustor from paying installments on the obligations secured hereby as they become due.

(21) Power of Trustee to Reconvey or Consent. Without affecting the liability of any other person, including Trustor, for the payment of any indebtedness secured hereby including such indebtedness as may be due at the time of or after full reconveyance, or the lien of this Deed of Trust upon remainder of such property for the full amount of any indebtedness then or thereafter secured hereby, or the rights or powers of the Beneficiary or the Trustee with respect to the remainder of such property (other than any person or property specifically released by Beneficiary), Beneficiary or Trustee, if so requested by Beneficiary, from time to time, without liability therefor, and without notice to Trustor, upon written request of Beneficiary and presentation of this Deed of Trust and any note or other agreement secured hereby for endorsement, together with payment for any fees of Trustee therefor, may do any one or more of the following: (1) release any indebtedness, (2) extend the time or otherwise alter the terms of payment of such indebtedness, (3) accept additional security, (4) substitute or release any property securing such indebtedness, (5) reconvey all or any part of such property, (6) consent to the making of any map or plat thereof, (7) join in granting any easement thereon, or (8) join in any extension agreement or any agreement subordinating or otherwise affecting the lien or charge hereof. Any reconveyance by Trustee shall be made without warranty. The recitals in any reconveyance of any matters of fact shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." A request for full reconveyance and full reconveyance shall operate as a reassignment of the rents, income, issues and profits assigned herein to Beneficiary. Trustee may destroy said note and this Deed of Trust five (5) years after issuance of a full reconveyance (unless directed in such request to retain them).

(22) Trustee's Sale on Default. Upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, or any agreement secured hereby, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and shall cause to be filed of record a written notice of default and election to sell such property. Beneficiary shall also deposit with Trustee this Deed of Trust and notes or other agreements and such documents as required by Trustee evidencing expenditures or advances secured hereby. Trustee, upon presentation to it of an affidavit signed by Beneficiary setting forth facts showing a default by Trustor under any paragraph or provision contained in this Deed of Trust, is authorized to accept as true and conclusive the facts and statements therein and to act thereon hereunder without any independent investigation or further inquiry by Trustee. Trustee hereby agrees to be bound thereby. After the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell such property either as a whole or in separate parcels, and in such order as it or Beneficiary may determine, at public auction to the highest bidder for cash in lawful money of the United States. Trustee may postpone and change the time and place of sale of all or any portion of such property by public announcement at the time and place affixed by it in said notice of sale, and from time to time and place to place thereafter and without any further posting or notice thereof may postpone such sale by public announcement to the time and place fixed by such postponement, whether or not said place fixed by any postponement be in the same city or other place as fixed in said notice of sale. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recital in such deed of any matters of fact or otherwise shall be conclusive proof of truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary, may purchase at such sale. After deducting all costs, fees and expenses of Trustee, and of this Deed of Trust, including cost of evidence of title in connection with such sale, Trustee first shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the rate then payable under the note or notes secured hereby, and then to payment of all other sums secured hereby, and if thereafter there be any proceeds remaining, distribute them to the person or persons legally entitled thereto.

(23) Substitution of Trustee. Beneficiary may, from time to time, by instrument in writing substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed and acknowledged by Beneficiary and recorded in the office of the recorder of the county or counties where such property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyances from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Such instrument shall contain the name and address of the new Trustee. The procedure herein provided for substitution of Trustees shall not be exclusive of other provisions for substitution provided by law.

(24) This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. Trustee accepts this Deed of Trust, when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Except as required by law, Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary, or Trustee shall be a party.

(25) Waiver of Statute of Limitations. Time is of the essence in all Trustor's obligations hereunder, and to the extent permitted by law, Trustor waives all present or future statutes of limitation with respect to any debt, demand or obligation secured hereunder in any action or proceeding for the purpose of enforcing this Deed of Trust or any rights or remedies hereunder.

(26) Inspection and Business Records. Beneficiary at any time during the continuation of this Deed of Trust may enter and inspect such property at any reasonable time. Trustor agrees that in the event that such property is now or hereafter used for commercial or residential income purposes, then when requested by Beneficiary, Trustor will promptly deliver to Beneficiary such certified financial statements and profit and loss statements of such types and at such intervals as may be required by Beneficiary which will be in form and content prepared according to the usual and acceptable accounting principles and practices, which statements shall cover the financial operations relating to such property, and Trustor further agrees when requested by Beneficiary to promptly deliver, in writing such further additional information as required by Beneficiary relating to any of such financial statements.

(27) General Provisions. (a) This Deed of Trust applies to, inures to the benefit of, and binds, all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. (b) The term "Beneficiary" shall mean the owner and holder (including a pledgee) of any note secured hereby, whether or not named as Beneficial herein. (c) Wherever the context so requires, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa. (d) Captions and paragraph headings used herein are for convenience only, are not a part of this agreement and shall not be used in construing it.

Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinabove set forth.

| Escrow or Loan No. 00398108-1 | Title Order No. 7776404 |
| --- | --- |

Signature of Trustor

STATE OF CALIFORNIA  
COUNTY OF Los Angeles } SS.

On August 7, 1979 , before me, the undersigned, a Notary Public, in and for said County and State, personally appeared

Hussain M. Shaikh

HUSSAIN M. SHAIKH

known to me to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same.

WITNESS my hand and official seal.

(Seal) _____  
Notary Public, in and for said County and State.

If executed by a Corporation the Corporation Form of Acknowledgment must be used.

OFFICIAL SEAL  
HELEN G. HENDERSON  
NOTARY PUBLIC — CALIFORNIA  
PRINCIPAL OFFICE IN  
LOS ANGELES COUNTY  
My Commission Expires June 21, 1982

SF-527 PART 2 (3-74)

AND WHEN RECORDED MAIL TO

Name: Marmac Resources Company
Street Address: 5143 Sunset Blvd.
City & State: Los Angeles, CA

RECORDED IN OFFICIAL RECORDS
OF LOS ANGELES COUNTY, CA

AUG 10 1979 AT 8 A.M.

Recorder's Office

FEE $3 R

TD-1

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

**This Deed of Trust,** made this 6th day of August, 1979, between

HUSSAIN M. SHAIKH, a married man

whose address is 76 Strawberry Lane, Rolling Hills Estates, CA 90274, herein called TRUSTOR,
(number and street)   (city)   (zone)   (state)

IMPERIAL BANCORP, a California corporation, herein called TRUSTEE, and

MARMAC RESOURCES COMPANY, a corporation , herein called BENEFICIARY,

**Witnesseth:** That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in Los Angeles County, California, described as:

Lot 4 of Tract No. 27807, in the County of Los Angeles, State of California, as per map recorded in Book 827, Pages 57 to 59 inclusive of Maps, in the office of the County Recorder of said County.

This Deed of Trust is second and subject to a Deed of Trust securing a note in the amount of $700,000.00 recording concurrently herewith.

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such rents, issues and profits. For the Purpose of Securing: 1. Performance of each agreement of Trustor incorporated by reference or contained herein. 2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $ 100,000.00 executed by Trustor in favor of Beneficiary or order.

To Protect the Security of This Deed of Trust, Trustor Agrees: By the execution and delivery of this Deed of Trust and the note secured hereby, that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in the counties set forth below, and in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, viz:

| COUNTY | DOCUMENT NO. | DATE | BOOK | PAGE | COUNTY | DOCUMENT NO. | DATE | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|
| LOS ANGELES | 3712 | July 12, 1965 | T4464 | 239 | ORANGE | 8380 | July 12, 1965 | 7589 | 934 |
| SANTA BARBARA | 24253 | July 12, 1965 | 2112 | 745 | SAN BERNARDINO | 625 | July 12, 1965 | 6428 | 575 |
| RIVERSIDE | 80502 | July 12, 1965 | | | | | | | |

(which provisions, identical in all counties, are printed on the reverse hereof) hereby are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that he will observe and perform said provisions; and that the references to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust. The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

STATE OF CALIFORNIA,
COUNTY OF Los Angeles } SS.
On August 7, 1979 before me, the undersigned, a Notary Public in and for said State, personally appeared Hussain M. Shaikh

_____ known to me
to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same.
WITNESS my hand and official seal.

Signature Helen B. Henderson
Helen G. Henderson
Name (Typed or Printed)

Signature of Trustor
Hussain M. Shaikh

OFFICIAL SEAL
HELEN G. HENDERSON
NOTARY PUBLIC — CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires June 21, 1982

Title Order No. 7776404 B. Good

Escrow or Loan No.

(This area for official notarial seal)

FOR USE IN LOS ANGELES, ORANGE, RIVERSIDE, SAN BERNARDINO, AND VENTURA COUNTIES ONLY

AMERICAN TITLE CO.

-RECORDING REQUESTED BY

**85  69977**

AND WHEN RECORDED MAIL THIS DEED AND UNLESS OTHERWISE SHOWN
BELOW MAIL TAX STATEMENT TO:

Name ⌐ Haroon Khan
Street
Address 132 W. 132nd Street
City &
State Los Angeles, California  ⌐

RECORDED IN OFFICIAL RECORDS
OF LOS ANGELES COUNTY, CA

**JAN 22 1985** AT 8 A.M.

Recorder's Office

MAIL TAX STATEMENTS TO

Name ⌐
Street
Address
City &
State same as above ⌐

TITLE ORDER NO. A 94326-93  ESCROW NO.

FEE
$5
N

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

DOCUMENTARY TRANSFER TAX is $___ 460. 20 ___ 44

☐ computed on full value of property conveyed, or
☒ computed on full value less value of liens or encumbrances remaining at time of sale.
☐ unincorporated area ☐ city of _____, AND

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Hussain M. Shaikh, an unmarried man

hereby GRANT(s) to

Haroon Khan, a single man

the following described real property in the
County of   Los Angeles   , State of California:

Lot 4 of Tract 27807 as recorded in Book 827 Pages 57-59 of Maps in the
office of the county recorder of said county.

This Instrument filed for record by American Title Company
as an accommodation only. It has not been examined to
its execution or as to its effect upon the title.

OFFICIAL SEAL
**SUNNY LEE FREEMAN**
NOTARY PUBLIC CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Exp. Nov. 9, 1985

Dated   December 10, 1984

STATE OF CALIFORNIA
COUNTY OF Los Angeles  } SS.
On this ___ day of January in the year 1985
before me, the undersigned, a Notary Public in and for said State, personally
appeared Hussain M. Shaikh
☐ personally known to me
☒ proved to me on the basis of satisfactory evidence
to be the person whose name is subscribed to this instrument, and acknowl-
edged to me that he (she or they) executed it.

Hussain M. Shaikh

OFFICIAL SEAL
**SUNNY LEE FREEMAN**
NOTARY PUBLIC CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Exp. Nov 9, 19__

Signature Sunny Lee Freeman

NOTARY PUBLIC IN AND FOR SAID STATE

(This area for official notarial seal)

T-217

**MAIL TAX STATEMENTS AS DIRECTED ABOVE.**

END OF RECORDED DOCUMENT

RECORDING REQUESTED BY
RECORDING REQUESTED BY FIDELITY NATIONAL TITLE INS. CO.

MAIL TAX STATEMENT TO
and
WHEN RECORDED MAIL TO

Name
Street Address
City & State

HUssain M. Shaikh
132 W. 132nd Street
Los Angeles, California

**87 1739359**

RECORDED IN OFFICIAL RECORDS
OF LOS ANGELES COUNTY, CA

OCT 30 1987    AT 8 A.M.

Recorder's Office

FEE $25   R
A.F.N.F.   1

ORDER NO.
ESCROW NO.

SPACE ABOVE RECORDER'S USE ONLY

# GRANT DEED (INDIVIDUAL)

44

The undersigned grantor(s) declare(s):
Documentary transfer tax is $ _____
(  ) Computed on full value of property conveyed, or
( >< ) Computed on full value less value of liens and encumbrances remaining at time of sale.
(  ) Unincorporated area (  ) City of _____
Tax Parcel No. _____

Haroon Khan, a single man

FOR A VALUABLE CONSIDERATION,    HEREBY GRANT TO

Hussain M. Shaikh, an unmarried man

the real property in the County of ___ Los Angeles _____, State of California, described as:

Lot 4 of Tract 27807 as per map recorded in Book 827 Pages 57-59
of Maps in the office of the county recorder of said county.

## ACCOMODATION STAMP
This document delivered to recorder
as an accomodation only at the
express request of the parties here to.
It has not been examined as to
its effect or validity.

Haroon Khan
Haroon Khan

Dated ___ October 26, 1987 ___

(Individual Acknowledgment)

STATE OF CALIFORNIA
County of _____ Los Angeles

On this ___27th___ day of _____October___ in the year 19 ___ before me, the undersigned, a Notary Public in and for,
said County and State, personally appeared _____ Haroon Khan

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person _____ whose name ____
subscribed to this instrument and acknowledged that _____ he _____ executed it.

WITNESS my hand and official seal.

Notary Public in and for said County and State.

OFFICIAL SEAL
SUNNY LEE FREEMAN
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Exp. Nov. 8, 1989

(Notary Seal)

MAIL TAX STATEMENT AS DIRECTED ABOVE

FD-13B

RECORDED DOCUMENT



This page is part of your document - DO NOT DISCARD

## 03 1309454

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

MAY 08 2003 AT 8 A.M.

**TITLE(S) :**                          DEED





L E A D     S H E E T

FEE

| FEE $13 | SS |
|         | 3  |

CODE
20

CODE
19

CODE
9

D.T.T

NOTIFICATION SENT-$4

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.          **Number of Parcels Shown**

6 1 3 2 - 041 - 022                          001

          **THIS FORM NOT TO BE DUPLICATED**

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:
Eun Hee Lee
2362 W. 232nd Street
Torrance, CA 90501

**03 1309454**

_____ Space Above This Line for Recorder's Use Only _____

A.P.N.: **6132-041-022**        Order No.: **31045288-X49**        Escrow No.: **16965**

# GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $2,344.65 /XXXXXXXXXXXX
[x] computed on full value of property conveyed, or
[  ] computed on full value less value of liens or encumbrances remaining at time of sale,
[x] unincorporated area; [ ] City of Los Angeles, and

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,

**Hussain M. Shaikh, an unmarried man**

hereby GRANT(S) to

**Eun Hee Lee, a married woman as her sole and separate property**

the following described property in the City of Los Angeles, County of **Los Angeles**, State of California;

See Exhibit 'A' attached hereto and made a part hereof.

_Hussain M. Shaikh_

Document Date: __April 11, 2003__

STATE OF CALIFORNIA
COUNTY OF Los Angeles        )SS
                            )
On __May 1, 2003__  before me, Aisha Malik, Notary Public
personally appeared __Hussain M Shaikh__
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _Aisha Malik_

AISHA MALIK
Comm. on # 1326739
Notary Public - California
Los Angeles County
My Comm. Expires Jan 23, 2007

Mail Tax Statements to:  SAME AS ABOVE or Address Noted Below  31045288 X49

LOT 4 OF TRACT 27807, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS
PER MAP RECORDED IN BOOK 827 PAGES 57 THROUGH 59 INCLUSIVE OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ONE-HALF OF ALL OIL, GAS MINERALS AND OTHER HYDROCARBON SUBSTANCES
WITHIN AND UNDER THAT PORTION OF SAID LAND WHICH LIES BELOW A DEPTH OF 500
FEET FROM THE SURFACE THEREOF, WITHOUT RIGHT TO ENTER UPON OR ONTO THE
SURFACE AND TOP 500 FEET OF THE SUBSURFACE OF SAID LAND, AS RESERVED BY
CATHERINE S. RUSSELL, AS TRUSTEE AND TITLE INSURANCE AND TRUST COMPANY, A
CORPORATION, SUCCESSOR IN DEED RECORDED DECEMBER 31, 1971 IN BOOK D5307 PAGE
444, OFFICIAL RECORDS AS DOCUMENT NO. 4116.

EXHIBIT A

PREA -10/31/97bk

03  1309454

ORDER NO.:  31045288-X49

### ILLEGIBLE NOTARY SEAL DECLARATION

#### GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

NAME OF NOTARY:  AISHA MALIK

COMMISSION NO.:  1226738

DATE COMMISSION EXPIRES:  JUNE 28, 2003

COUNTY OF COMMISSION:  LOS ANGELES

PLACE OF EXECUTION OF THIS DECLARATION:  LOS ANGELES

TODAY'S DATE:  MAY 5, 2003

SIGNATURE (FIRM NAME: CHICAGO TITLE)

03 1309454

EBLANK2 – 02/04/93 AA

# EXHIBIT 8

810095

ARTICLES OF INCORPORATION

OF

SHAH CHEMICAL CORPORATION

FILED
In the office of the Secretary of State
of the State of California
MARCH FONG EU, Secretary of State
FEB 22 1977

by _____
Deputy Secretary of State

### I

The name of this corporation is SHAH CHEMICAL CORPORATION.

### II

The purpose of this corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

### III

The name ~~and address~~ in the State of California of this corporation's initial agent for service of process is: The Prentice-Hall Corporation System, Inc., ~~5225 Wilshire Boulevard, Suite 1000, Los Angeles, California, 90036.~~

### IV

This corporation is authorized to issue only one class of shares of stock; and the total number of shares which this corporation is authorized to issue is 2,500.

DATED: February 15, 1977.

_____
HUSSAIN M. SHAIKH

I hereby declare that I am the person who executed the foregoing Articles of Incorporation, which execution is my act and deed.

_____
HUSSAIN M. SHAIKH

EXHIBIT
0008

Case 2:11-cv-02123-DMG-AGR    Document 74-1    Filed 9/28/21    Page 333 of 464    Page ID #:4098

# STATEMENT BY DOMESTIC STOCK CORPORATION

**FILED**
SACRAMENTO, CALIF

Mar 2 '81

March Fong Eu

MARCH FONG EU
SECRETARY OF STATE

PLEASE READ INSTRUCTIONS ON BACK OF FORM

PLEASE TYPE OR USE BLACK INK WHICH WOULD BE SUITABLE
FOR MICROFILMING

FEE FOR FILING THIS STATEMENT    $5.00

8100950   DUE DATE 02/28/81   25375

SHAH CHEMICAL CORPORATION
132 WEST 132ND ST
LOS ANGELES, CA 90061

THE CORPORATION NAMED HEREIN, ORGANIZED UNDER THE LAWS OF THE STATE OF CALIFORNIA, MAKES THE
FOLLOWING STATEMENT

| 132 W. 152nd Street | | Los Angeles, CA | 90061 |
| | | | |
| | | | CALIF. |

C0918016

NAMES OF THE FOLLOWING OFFICERS ARE:

| Hussain M. Shaikh | 132 W. 132nd Street | Los Angeles, CA | 90061 |
| Mohd. Yousuf Shaikh | 132 W. 132nd Street | Los Angeles, CA | 90061 |
| Craig Kiernan | 11661 San Vicente Blvd. #400 Los Angeles, CA | | 90049 |

NAMES AND COMPLETE BUSINESS OR RESIDENCE ADDRESS OF INCUMBENT DIRECTORS INCLUDING THOSE DIRECTORS WHO ARE
ALSO OFFICERS. (Attach a supplemental list of directors if needed).

| Hussain M. Shaikh | 132 W. 152nd Street | Los Angeles, CA | 90061 |
| Mohd. Younus Shaikh | 132 W. 132nd Street | Los Angeles, CA | 90061 |
| Mohd. Yousuf Shaikh | 132 W. 132nd Street | Los Angeles, CA | 90061 |

THE NUMBER OF VACANCIES ON THE BOARD, IF ANY    -0-

Hussain M. Shaikh

132 W. 132nd Street, Los Angeles, CA 90061

Chemicals

2/25/1981    President

SMAH CHEMICAL CORPORATION
132 WEST 132ND ST
LOS ANGELES, CA 90061

DO NOT ALTER PREPRINTED NAME. IF ITEM 1 IS BLANK PLEASE ENTER CORPORATE NAME.

**FOLLOWING STATE:**

| 1 STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | SUITE OR ROOM | 2A. | | 2B. |
|---|---|---|---|---|
| 132 West 132nd Street | | Los Angeles, | | 90061 |
| (DO NOT USE P.O. BOX NO.) | | CITY | | ZIP CODE |
| STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIF IF ANY | SUITE OR ROOM | 3A | | 3B. |
| 132 West 132nd Street | | Los Angeles, | CALIF. | 90061 |
| (DO NOT USE P.O. BOX NO.) | | | | ZIP CODE |
| 4 MAILING ADDRESS (OPTIONAL) | SUITE OR ROOM | 4A | | 4B. |
| | | CITY & STATE | | ZIP CODE |

**NAMES OF THE FOLLOWING OFFICERS ARE:**

| 5 Hussain M. Shaikh | 5A 132 West 132nd Street | 5B Los Angeles , CA | 5C 90061 |
|---|---|---|---|
| CHIEF EXECUTIVE OFFICER | BUSINESS OR RESIDENCE ADDRESS. DO NOT USE P.O. BOX. | CITY & STATE | ZIP CODE |
| 6 Mohamad Yousuf Shaikh | 6A 132 West 132nd Street | 6B Los Angeles , CA | 6C 90061 |
| SECRETARY | BUSINESS OR RESIDENCE ADDRESS. DO NOT USE P.O. BOX. | CITY & STATE | ZIP CODE |
| 7 Mohammad Younus Shaikh | 7A 132 W. 132nd Street | 7B Los Angeles, CA | 7C 90061 |
| CHIEF FINANCIAL OFFICER | BUSINESS OR RESIDENCE ADDRESS (DO NOT USE P.O. BOX) | CITY & STATE | ZIP CODE |

8 NAMES AND COMPLETE BUSINESS OR RESIDENCE ADDRESS OF INCUMBENT DIRECTORS INCLUDING THOSE DIRECTORS WHO ARE ALSO OFFICERS. (Attach a supplemental list of directors if needed).

| NAME | BUSINESS OR RESIDENCE ADDRESS. DO NOT USE P.O. BOX. | CITY & STATE | ZIP CODE |
|---|---|---|---|
| Hussain M. Shaikh | 132 West 132nd Street | Los Angeles, CA | 90061 |
| Mohamad Yousuf Shaikh | 132 West 132nd Street | Los Angeles, CA | 90061 |
| Mohamad Younus Shaikh | 132 West 132nd Street | Los Angeles , CA | 90061 |
| Manzoor Shaikh | 132 West 132nd Street | Los Angeles , CA | 90061 |
| | BUSINESS OR RESIDENCE ADDRESS. DO NOT USE P.O. BOX. | CITY & STATE | ZIP CODE |

THE NUMBER OF VACANCIES ON THE BOARD, IF ANY     -0-

AGENT FOR SERVICE OF PROCESS ___ Hussain M. Shaikh, 132 West 132nd Street, Los Angeles, California 90061

IF AGENT IS AN INDIVIDUAL RESIDENT IN THIS STATE ADDRESS IF AN INDIVIDUAL. ONLY ONE AGENT CAN BE NAMED. DO NOT ENTER THE NAME OF A CORPORATION AS AGENT. (DO NOT USE P.O. BOX).

Manufacturer and Distributor of Chemical Compounds.

X 2-19-82    X SEC/TRES    X Mohd Yousuf Shaikh

Best Copy Available

ARTICLES OF INCORPORATION

OF

PACIFICA CHEMICAL, INCORPORATED

FILED

In the office of the Secretary of State
of the State of California

OCT 10 1978

MARCH FONG EU, Secretary of State

By _Gloria J Carroll_
Deputy

900089

I

The name of this corporation is PACIFICA CHEMICAL, INCORPORATED.

II

The purpose of this corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

III

The name in the State of California of this Corporation's initial agent for service of process is: HUSSAIN M. SHAIKH, 447 East Rosecrans Avenue, Gardena, California 90248.

IV

This corporation is authorized to issue only one class of shares of stock; and the total number of shares which this corporation is authorized to issue is 2,500.

DATED: September 28, 1978.

HUSSAIN M. SHAIKH

I hereby declare that I am the person who executed the foregoing Articles of Incorporation, which execution is my act and deed.

HUSSAIN M. SHAIKH



# State of California
## Kevin Shelley
## Secretary of State
### STATEMENT OF INFORMATION
### (Domestic Stock Corporation)

17

**S**

04-416124

**FILED**
in the office of the Secretary of State
of the State of California

SEP 0 1 2004

KEVIN SHELLEY, SECRETARY OF STATE

This Space For Filing Use Only

FEES (Filing and Disclosure): $25.00. If amendment, see instructions.

IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM

1. CORPORATE NAME (Please do not alter if name is preprinted.)

C0900089  DUE 10-31-04 06139S NPT
PACIFICA CHEMICAL, INCORPORATED
2910 E ANA ST
RANCHO DOMINGUEZ CA  90221

**CALIFORNIA CORPORATE DISCLOSURE ACT** (Corporations Code section 1502)

2. ☐ Check here if the corporation is publicly traded  If publicly traded, complete this form and the Corporate Disclosure Statement (Form SI-PTSUPP). See Item 2 of instructions.

**NO CHANGE STATEMENT**

3. ☐ If there has been no change in any of the information contained in the last Statement of Information filed with the Secretary of State, including any information contained in Form SI-PTSUPP, if applicable, check the box and proceed to Item 16

If there have been any changes to the information contained in either form  or no Statement of Information has been previously filed, this form (and Form SI-PTSUPP, if publicly traded) must be completed in its entirety.

**COMPLETE ADDRESSES FOR THE FOLLOWING**  (Do not abbreviate the name of the city  Items 4 and 5 cannot be P O  Boxes)

| | | CITY AND STATE | | ZIP CODE |
|---|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE 935 EAST ARTESIA BLVD | | CARSON  CA | | 90746 |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY  CITY | | | STATE CA | ZIP CODE |

**NAMES AND COMPLETE ADDRESSES OF THE FOLLOWING OFFICERS** (The corporation must have these three officers  A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| 6. CHIEF EXECUTIVE OFFICER/ HUSSAIN SHAIKH | 935 E. ARTESIA BLVD | CARSON | 90746 |
| 7. SECRETARY/ HUSSAIN SHAIKH | 935 E. ARTESIA BLVD | CARSON | 90746 |
| 8. CHIEF FINANCIAL OFFICER/ HUSSAIN SHAIKH | 935 E. ARTESIA BLVD | CARSON | 90746 |

**NAMES AND COMPLETE ADDRESSES OF ALL DIRECTORS, INCLUDING DIRECTORS WHO ARE ALSO OFFICERS** (The corporation must have at least one director. Attach additional pages, if necessary.)

| | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| 9. NAME HUSSAIN SHAIKH | 935 E ARTESIA BLVD | CARSON CA | 90746 |
| 10. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| 11. NAME | ADDRESS | CITY AND STATE | ZIP CODE |

12. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

**AGENT FOR SERVICE OF PROCESS** (If the agent is an individual  the agent must reside in California and Item 14 must be completed with a California street address  If the agent is another corporation  the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 14 must be left blank.)

13. NAME OF AGENT FOR SERVICE OF PROCESS
HUSSAIN CHAIKH

| 14. ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 935 E ARTESIA BLVD | CARSON | CA | 90746 |

**TYPE OF BUSINESS**

15. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION
CHEMICALS & DYESTUFF FOR TEXTILE INDUSTRY

16. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE SECRETARY OF STATE  THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT

| HUSSAIN SHAIKH | | PRESIDENT | 7/22/04 |
|---|---|---|---|
| TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE |

SI-200 N C (REV 06/2004)   APPROVED BY SECRETARY OF STATE

## State of California
### Secretary of State

**S**

### Statement of Information
**(Domestic Stock and Agricultural Cooperative Corporations)**
FEES (Filing and Disclosure): $25.00.
If this is an amendment, see instructions.
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**G012819**

# FILED

In the office of the Secretary of State
of the State of California

**AUG-31 2018**

1. **CORPORATE NAME**

PACIFICA CHEMICAL, INCORPORATED

2. **CALIFORNIA CORPORATE NUMBER**
C0900089

*This Space for Filing Use Only*

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address. See instructions.)

3. **If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.**

[✓] If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed to **Item 17.**

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 4. | STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | |
| 5. | STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | | |
| 6. | MAILING ADDRESS OF CORPORATION, IF DIFFERENT THAN ITEM 4 | | | |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| 7. | CHIEF EXECUTIVE OFFICER/ | | | | |
| 8. | SECRETARY | | | | |
| 9. | CHIEF FINANCIAL OFFICER/ | | | | |

**Names and Complete Addresses of All Directors, Including Directors Who are Also Officers** (The corporation must have at least one director. Attach additional pages, if necessary.)

| | | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| 10. | NAME | | | | |
| 11. | NAME | | | | |
| 12. | NAME | | | | |

13. **NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:**

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 15 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 15 must be left blank.

14. **NAME OF AGENT FOR SERVICE OF PROCESS**

15. **STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL** CITY      STATE    ZIP CODE

**Type of Business**

16. **DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION**

17. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 08/31/2018 | HUSSAIN M SHAIKH | OWNER | | |
|---|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | | SIGNATURE |

SI-200 (REV 01/2013)            APPROVED BY SECRETARY OF STATE

# EXHIBIT 9

# COUNTY SANITATION DISTRICTS
## OF LOS ANGELES COUNTY

1955 Workman Mill Road / Whittier, California
Mailing Address: / P. O. Box 4998, Whittier, California 90607
Telephone: (213) 699-7411 / From Los Angeles (213) 685-5217

WALTER E. GARRISON
Chief Engineer and General Manager

November 18, 1980

In reply, please refer to
File: 08-00.05-00/80

Shah Chemical Corp.
132 W. 132nd St.
Los Angeles, CA 90061

Attention:  Yousi Shaikh

Subject:  Notification of Industrial Wastewater Discharge Permit and
Surcharge Requirements

Dear Mr. Shaikh:

According to Sanitation Districts' records, your company has not yet
applied for an Industrial Wastewater Discharge Permit. The Sanitation
Districts' Ordinance, adopted April 1, 1972, requires that a permit be
obtained by any company discharging industrial wastewater to the Districts'
sewerage system. A Surcharge Statement must also be filed annually to
reimburse the Districts for the costs of treatment of your industrial
wastewater. The Ordinance establishes a deadline for filing of permit
applications, which was April 1, 1976.

Since the deadline has passed for submittal of a permit application
by your company, continued use of the sewerage system for disposal of
industrial wastewater is technically illegal, and may be subject to
interruption through Districts' enforcement actions. To avoid any such
enforcement actions, you are advised to complete the enclosed permit
application as soon as possible, in accordance with the requirements
outlined in the Wastewater Ordinance and permit instruction booklet,
which are also enclosed. Your completed application should be submitted,
along with any necessary supporting information or plans to the local
agency responsible for processing industrial waste permits. In your
area, the responsible agency is:

        Dept. of County Engineer - Facilities
          Sanitation Division - 3rd Floor
        550 South Vermont Avenue
        Los Angeles, CA  90020

        Attn:  Rezai Khojasteh

EXHIBIT

0009

Yousi Shaikh
November 18, 1980
Page Two

        If you will be unable to submit your completed permit application
within 30 days from the date of this letter, or if you have any questions,
you are urged to telephone the Industrial Waste Section of the Sanitation
Districts at extension 261 so that any problems can be resolved.   The
information obtained through permit applications is used by the Sanitation
Districts to determine the best means to maintain a clean environment at
the least cost to the local community.  Please help us to render this
service.

                                        Very truly yours,

                                        Walter E. Garrison

                                        By Leon S. Directo
                                        Supervising Civil Engineer

LSD: RF : ca

ENCL:  *, **, ***

cc:  Dept. of County Engineer - Facilities

        Attn:  Rezai Khojasteh

REQUEST FOR:            I-NUMBER ⊠            DATA CHANGE ☐

When requesting a new I-No., fill in B and C only.

When requesting a Data Change, fill in A completely and fill in only items to be changed in B.

A:  (Fill in date as it appears on I.B.M. list now.)

    I-No._____

    Name_____

    Address_____     Zip Code_____

B:  (Fill in new data as you want it to appear on the next I.B.M. list.)

    Name _SHAH CHEMICAL CORPORATION_

    Address _132 W. 132 ND ST._          Zip Code _9006/_

    Region-City _20_          Status _C_          Permit No._____

    Classif._____          SMD_____          Disp. Code_____

C:  Show plot or sketch showing dimensions of the property and ties to cross streets.

    Located between streets_____     &_____

                                              W.S. No. _26_

                                        Thos. guide _64 A-1_

By_____          Date_____

PROCESSING

File folder & indexing by_____

Plotted by_____

City or unincorporated_____

ANNUAL INDUSTRIAL WASTE INSPECTION FILE UPDATE



## INDEX DATA

Card   Trans*  Index No.   Rec   Reg   City

`1`     `3`    `0 7 5 / 9`   `A`   `2`   `0`
1        2       3           8     9     10

Name of Firm

`P A C I F I C A   C H E M I C A L ,   I N C`
11

### SITUS ADDRESS

House No.   C/D          Street          Address Key     Thomas Guide Coordinates
                                                          Page .   Coord

`0 0 / 3 2`  `W`  `1 3 2 / 0   S T`        `56`      `57`      `60`
36           41   42

Card   Trans   Index No.   Rec   Inspection Start Date

`2`     `3`    `          `   `A`   `  -  `
1        2       3           8     9       11

### MAILING ADDRESS

House No.   C/D          Street

`          `  `  `  `                  `
13           18   19

          City                State      Zip

`                        `  `      `  `        `
35                          50      52

## PERMIT DATA

Card   Trans*  Index No.   Rec   Permit No.   Juris   Issue Date M M Y Y   Status

`3`     `3`    `0 7 5 / 9`   `B`   `        `   `1`    `  -    `            `C`
1        2       3           8     9           14     16     17             19

Industry Code     SIC          Insp. Freq.   Disp. Point   S/M Dist.   Facility

`/ / /`    `        `    `  `           `2`          `/ 5`        `    `
20          23           27            28           29           31

Sample Freq.   Self-Monitor   Fee Codes Class   RDS         Fee               Date Paid M M  D D  Y Y   Partial Fee Key

`  `           `  `           `  `            `  `    `      .      `    `  -    -    `           `  `
33             34            35             36     37                43    45    47              49

Billing Date M M  D D  Y Y    Remove Penalty   Credit   Change to Permit Number

`    -    -    `               `    `           `  `     `            `
50    52    54                56               57       58

* Delete = 1, Add = 2, Change = 3

Z 04215

RECEIVED

DEC 10 1980

01 APPLICATION IS HEREBY MADE

PERMIT FOR INDUSTRIAL WASTEWATER DISCHARGE

1955 Workman Mill Road / Whittier, Ca.
Mailing Address: / P.O. Box 4998, Whittier, California 90607
Walter E. Garrison, Chief Engineer and General Manager

LOS ANGELES , Calif. 12 / 8 / 80
                                    MO.    DAY    YR.

01 APPLICATION IS HEREBY MADE BY SHAH CHEMICAL CORP.
                              (PRINT)              (FIRM NAME)

02 (Mailing Address) 132 W. 132ND ST., LOS ANGELES  CA.  90061
                    (STREET)              (CITY)         (STATE)    (ZIP)

03 TENANT                                                            of the property located at:
   (OWNER, TENANT, ETC.)

04 (Street) 132 W. 132ND ST.  (City) LOS ANGELES  (Zip) 90061
   (PRINT)          (ADDRESS OF PROPERTY PRODUCING WASTEWATER DISCHARGE)

05 Assessors Map Book No. 6132  Page No. 041  Parcel No. 022
              (LEGAL ADDRESS OF PROPERTY PRODUCING WASTEWATER DISCHARGE)

06 CENTER OF BUILDING TO 132 ND STREET
   (PRINT)     (LOCATION OF POINT OF WASTEWATER DISCHARGE TO SEWERAGE SYSTEM)
   for a Permit for Industrial Wastewater Discharge to the sewerage system.

07 Type of Industry CHEMICAL SALES        2844
                    (GENERAL DESCRIPTION)         (FEDERAL SIC NOS.)

08 Number of Employees (Full Time) 8  (Part Time)

09 Raw Materials Used SOAP & WATER
                     (GENERAL DESCRIPTION – ADD ADDITIONAL SHEETS AS NEEDED)

10 Products Produced DETERGENTS, SOFTNERS
                     (GENERAL DESCRIPTION – ADD ADDITIONAL SHEETS AS NEEDED)

11 Wastewater Producing Operations OCCASIONAL RINSING of TANKS

                     (FULL DESCRIPTION – ADD ADDITIONAL SHEETS AS NEEDED)

12 Time of Discharge – 8:30 AM/PM to 4:30 AM/PM,  Days per Week (M) (T) (W) (Th) (F) Sa Su
                      (WORKING DAY – CROSS OUT AM OR PM)                (CIRCLE DAYS)

13 Wastewater Flow Rate 1689 AVERAGE DAILY INTAKE  (Gallons Per Day)

14 Constituents of Wastewater Discharge DETERGENTS & SOFTNERS

                     (GENERAL DESCRIPTION – ATTACH CHEMICAL ANALYSES RESULTS TO THIS APPLICATION)

15 Person in company responsible for industrial wastewater discharge:

HUSSAIN M. SHAIKH          PRESIDENT      213) 323-8881
(PRINT)  (NAME)            (POSITION)     (TELEPHONE NUMBER)

I affirm that all information furnished is true and correct and that the applicant will comply with the conditions stated on the back of this permit form.

Date 12 - 8  , 19 80

16 Signature for Applicant _____  PRESIDENT
   (COMPANY ADMINISTRATIVE OFFICIAL)   (NAME)            (POSITION)

17 Approved by City or County Official        18 Approved by Sanitation Districts of Los Angeles County

Date _____            Date _____

For Dept. of County Engineers .............. I-7519-20   Walter E. Garrison, Chief Engineer and General Manager

City of _____

Name _____           by _____

Position _____        Position _____

Note: Please submit application first to City or County Agency who may require a permit fee.
      This form when properly signed shall be a valid permit unless suspended or revoked.

RETURN THIS COPY TO APPLICANT WHEN APPROVED

**PERMIT NO.** _____

RECEIVED

DEC 1 0 1980

SANITATION

### ADDITIONAL INFORMATION QUESTIONNAIRE
### FOR PERMIT APPLICANTS

### SANITATION DISTRICTS OF LOS ANGELES COUNTY
1955 Workman Mill Rd., P.O. Box 4998, Whittier, CA. 90607

WALTER E. GARRISON, CHIEF ENGINEER AND GENERAL MANAGER

_____ LOS ANGELES _____, Calif. 12 / 8 / 80
MO.  DAY  YR.

Name of Company  SHAH CHEMICAL CORP.          S.I.C. No. _____

Mailing Address  132 W. 132ND ST., LOS ANGELES, CA.      90061
PRINT        (STREET)              (CITY)      (STATE)        (ZIP)

Address of Wastewater Discharge  132 W.132ND ST., LOS ANGELES, CA. 90061
PRINT        (STREET)              (CITY)      (STATE)        (ZIP)

Legal Address  [6] [1] [3] [2]  [0] [4] [1]  [0] [2] [2]  Permit Application No. _____
(MAP BOOK NO.)    (PAGE NO.)    (PARCEL NO.)

IF YOUR COMPANY DISCHARGES OR WILL DISCHARGE TO THE SEWER any of the wastewater constituents listed below, please check the appropriate box:

1. Flammable wastes (406A) ☐
2. Toxic or poisonous wastes (406B) ☐
3. Acidic materials (pH less than 6.0) (406C) ☐
4. Materials that could obstruct the sewer (406D) ☐
5. Rainwater (406E) ☐
6. Dilution water (406F) ☐
7. Petroleum based soluble cutting oils (406G) ☐
8. Any quantities of petroleum based oils (406H) ☐

9. Cyanide wastes (406J) ☐
10. Total dissolved solids above 5000 mg/1 (406K) ☐
11. Highly odorous wastes (406M) ☐
12. Dissolved sulfides over 0.1 mg/1 (406N) ☐
13. Basic materials (pH greater than 10.5) (406O) ☐
14. Toxic gases (406P) ☐
15. Temperature over 120° F. (406Q) ☐
16. Highly colored wastes (406V) ☐

17. Wastes larger than ⅜″ in diameter (406W) ☐
18. Any arsenic, boron, cadmium, chromium, copper, lead, mercury, nickel, selenium, silver, tin, zinc, or other toxic materials (406X) ☐
19. Blow down or bleed water from cooling towers, boilers or evaporative coolers (406Y) ☐
20. Single pass cooling water (406Z) ☐
21. Radioactive materials (406AA) ☐
22. Recognizable portions of the human anatomy (406BB) ☐
   NOTE: Numbers in parentheses refer to the designated section in the Districts' Industrial Waste Ordinance.

IF YOUR COMPANY HAS ANY OR WILL HAVE ANY OF THE FOLLOWING PRETREATMENT SYSTEMS for wastewater prior to disposal to the sewer, please check the appropriate box.

1. Interceptor, clarifier, sump or trap ☐
2. Screen or filter ☐
3. Centrifuge ☐
4. Cyclone ☐
5. Grit removal ☐
6. Grease or oil removal ☐
7. Solvent separation ☐
8. Acid or base neutralization ☐
9. Chemical coagulation or precipitation ☐

10. Cyanide destruction ☐
11. Chromium reduction ☐
12. Spill protection ☐
13. Rainwater diversion or storage system ☐
14. Grinder over 2 horsepower ☐
15. Air flotation ☐
16. Other _____ ☐
17. Other _____ ☐

I hereby affirm that all information furnished is true and correct to the best of my knowledge.

Date  DEC. 8 , 19 80

Signature for Applicant _____  Humain U. Hachh  President
(COMPANY ADMINISTRATIVE OFFICIAL)          (NAME)          (POSITION)

11

# SANITATION DISTRICTS OF LOS ANGELES COUNTY

## TABLE A

### REQUIREMENTS FOR INDUSTRIAL WASTEWATER DISCHARGE PERMIT

**January 1, 1974**

| STANDARD INDUSTRIAL CLASSIFICATION (SIC) NUMBER 6/ | DESCRIPTION OF INDUSTRY | MINIMUM WASTEWATER PRE-TREATMENT REQUIREMENTS | WATER CHARACTERIZATION INFORMATION REQUIRED FOR PERMIT 5/ | | CRITICAL SIC NO. CLASSIFICATION 2/ |
|---|---|---|---|---|---|
| | | | Type of Test Code 3/ | Minimum Frequency 4/ | |
| 0100-0199 | AGRICULTURAL PRODUCTION—CROPS | 1/ | 1/ | 1/ | 1/ |
| 0200-0299 | AGRICULTURAL PRODUCTION—LIVESTOCK | Screening, Sampling Point | A, B, C, D, E, H | 4/ | No |
| 0700-0799 except 0740-0749 and 0750-0759 | AGRICULTURAL SERVICES | 1/ | 1/ | 1/ | 1/ |
| 0740-0749 | Veterinary Services | Screening, Sampling Point | A, B, C, D E, H | 4/ | No |
| 0750-0759 | Animal Services excepting Veterinary | 1/ | 1/ | 1/ | 1/ |
| 0800-0899 | FORESTRY | 1/ | 1/ | 1/ | 1/ |
| 0900-0999 | FISHING, HUNTING AND TRAPPING | 1/ | 1/ | 1/ | 1/ |
| 1000-1099 | METAL MINING | 1/ | 1/ | 1/ | 1/ |

## FOOTNOTES

1/ Contact the Sanitation Districts directly for Permit requirements if any industrial wastewater (not residential type wastewater), is planned to be discharged to the sewer. Companies in this category may not have any discharge of industrial wastewater to the sewer and thus may not require an Industrial Wastewater Discharge Permit.

2/ A "yes" designation in this column indicates that the company is in a critical SIC No. classification and must, regardless of daily wastewater flow volume, furnish the information required under Permit Class 1 or 2, (Class 1 if flow is over 50,000 gallons per day).

3/ Wastewater characterization analysis data must be obtained by measurements or estimates (estimates permitted for new facilities only) and submitted by companies in Permit Class 1 or 2 with the application form for the Industrial Wastewater Discharge Permit. Companies in Permit Class 3 are not required to submit chemical analysis data but must submit measurements or accurate estimates of their flow discharged to the sewer. For code identification number see Critical Parameter Report Form.

4/ Wastewater characterization analysis data must be determined annually and submitted to the Sanitation Districts by only those companies having a discharge to the sewer of over 10,000 gallons per working day unless a required minimum frequency for obtaining this data is shown in Table A for the given type of industry.

Companies required to submit only annual characterization analysis data should submit it directly to the Districts on July 1; companies required to submit data every 6 months should submit data on January 1 and July 1; companies required to submit data every 3 months should submit data on January 1, April 1, July 1, and October 1. Required industrial wastewater characterization analysis data not received within 45 days of the required date will be considered delinquent and a possible cause for revocation of the Industrial Wastewater Discharge Permit.

5/ Wastewater analyses for use in the annually required Industrial Wastewater Treatment Surcharge Statement, including data on total flow, peak flow, chemical oxygen demand and suspended solids (A, B, C, and D), must be made according to the frequency shown in Table B.

6/ The Standard Industrial Classification (SIC) Number may be obtained for any industry or company by using the manufacturing or non-manufacturing index of the Federal Government's Standard Industrial Classification Manual, 1972, available for use at the office of the local City Engineer or County Engineer or by calling the Sanitation Districts at (213) 699-7411, or (213) 685-5217.

COUNTY OF LOS ANGELES
DEPARTMENT OF COUNTY ENGINEER
SANITATION DIVISION

PLAN CHECK REVIEW SHEET

Date _4/9/81_

FIRM NAME _SHAH CHEMICAL CORP._

Uninc. Co. Territory ✓

FIRM ADDRESS _132 W 132ND ST._   City of _____

Plan Check By _W. Y. TEN_

Co. Engr. is City Engr.
Yes_____   No _____

OK

1.  Required No. of Plans _____
2.  I. W. Plans and Details _____
3.  Permit Application (County, City, San. Dists.) ✓
4.  Permit Application Fee Received ✓
5.  City Authorization Received _____
6.  I. W. Statement _____
7.  Critical Parameter Report/Addl. Info. Questionnaire _____
8.  Type of I. W. Facilities (I-2-510, Nottingham 750, etc.) _____
9.  I. W. Facilites Adequate _____
10. Method of Disposal (Local, trunk, ground, haul, etc.) _____
11. Allocable Sewer Capacity (Peak Flow in gpm) _____
12. I-File Request Form (Indicate I-No. & Region, if assigned) _I-75/920_
13. Permit Form _____
14. Rainwater Diversion System Required      Yes___ No _____
15. Plans/Application Approved for Transmittal to San. Dists._____

Reviewed By:_____   Trap Card Required  Yes_____ No_____

FOLLOW UP INSTRUCTION:

_____
_____
_____
_____
_____
_____
_____
_____
_____

05/17/79

COUNTY OF LOS ANGELES
DEPARTMENT OF COUNTY ENGINEER-FACILITIES
SANITATION DIVISION

```
OFFICE CHECK
IBM ( )
Fee Class
Billing ( )
```

## INDUSTRIAL WASTE SURVEY

City _unincorporated_                     I-File No. _7518-20_

SMD No. _0860.15_                          Permit No. _____

FIRM NAME _Shah Chemical Corporation_

Address _132 West 132 nd street, LosAngeles_ Telephone No. _323-8881_

between _Broadway_ and _end of street_          TG _64,B-1_

Contact Name _HUSSAIN M Shaikh_     Title _President_
                    (List ALL chemicals )
Business and processes: (used and/or produced) _Fabric softners and_

_bulk detergent distributed to industry. They prepair solutions in mix-_

_ing tanks. The tanks are cleaned once a week to the sewer._

Type and Quantity I.W. (List chemical names)_____

_Total flow 500.0 gallons a week, once a week, Peak flow 5.0 G.P.M._

WASTE DISPOSAL:              Sample Taken _None_ Parameters _None_

  Sewer: SMD _yes_          San.Dist. _/_     Volume _as above_

  Surface Drainage _none_ Cooling Water _none_ Uncontaminated _none_

  Ground _none_          Holding Tank _none_ Level Alarm _none_
Name of Liquid
Waste Hauler _____ _None_ _____ Other _None_

PRETREATMENT FACILITIES:          Location _inside - next to hand sink_

  Trap:  Standard _none_          Non-Standard _none_

  Other _one floor sink_                    Sample Box _none_

REQUIREMENTS AND DATA:

  Inspection Freq._____ Rainwater list _none_ Permit Date _____

  New Industry _yes_     Resurvey _No_     T.C. Requested _____

  Classification _126_   SIC No. _2844_   Disp. Method _Local_

REMARKS AND RECOMMENDATIONS: _NO I.W. facilites exist.  Survey made at the_

_request of Carl Sjoberg on 4/6/81. For sketch see otherside. For Further_

_information see order to Comply dated 6/16/81_

Survey by: _____Robert W Startley_____          Date _6/16/81_

cs 41                                              2-80

SHAH CHEMICAL CORP.

132 West 132 nd street

I - 7510 - 20



Storage Tanks
○ ← 2 400 gallons
○ ← 2000 gallons
○ ←2- 1000 gallons

Storage

Mixing Tanks
○ ← 2 250 gallons
○ ← 2 1500 gallons

Loose Hose
TO Floor sink

□ ← 2 steam boiler (Not used)
← Boiler Blow Down Tank

Hand Sink ← □  F.S. □
Pump Pit

Truck Dock    RR    Lab.    office

N ↓

132 nd street

Not to Scale

**COUNTY OF LOS ANGELES**
**DEPARTMENT OF COUNTY ENGINEER**
PROJECT PLANNING AND POLLUTION CONTROL DIVISION

INSPECTOR'S REPORT

TO: _Don Tallman_  DATE: _June 16, 1981_

FROM: _Robert Hartley_  FILE: _I-7519-29_

INDUSTRY: _Shah Chemical Corporation_
_132 nd West 132nd street, Los Angeles, Ca_

REPORT: _A survey was made today of the above property in the presence of Mr. Hussain M. Shaikh. He stated that the mixing tanks were washed out once a week; and discharged through a hose to a floor sink. Approximately five hundred gallons at a time are used in the cleanup. He was informed that this was a violation and needed to be connected with a proper pretreatment facilities._

_On July 15, 1981 and order to comply was issued to him. He agreed to connect it._

Recieved by Human N. Marille

Position President

Date 7/15/81

COUNTY OF LOS ANGELES
DEPARTMENT OF COUNTY ENGINEER
SANITATION DIVISION

# NOTICE OF VIOLATION

# AND

# ORDER TO COMPLY

Date June 16, 1981

File I-7519-20

To Shah Chemical Corporation

Location 132 West 132nd street, Los Angeles

You are hereby directed to correct the following violations of Los Angeles County Ordinance No. 6130 and/or the conditions and limitations of Industrial Waste Disposal Permit No. ____ by Immediately , 19 81

Immediately discontinue the discharge of liquid waste to the sewer by way of a floor sink from the washing out of your mixing tanks.

An Industrial Waste Permit is required before discharging liquid waste to the sewer.

All liquid waste should be discharged to the sewer through an approved pretreatment facility. The facility can be installed after plans have been submitted and approved.

Submit a proposal by August 14,1981 that would correct the above violation.

550 So. Vermont Avenue
Los Angeles, California 90020
(213) 735-2523

STEPHEN J. KOONCE, COUNTY ENGINEER
Kenneth R. Kvammen, Asst. Deputy Co. Engr.

By Robert Hartley
    Robert Hartley

rw  41
3-27-81

COUNTY OF LOS ANGELES
DEPARTMENT OF COUNTY ENGINEER-FACILITIES
SANITATION DIVISION
550 SOUTH VERMONT AVENUE, LOS ANGELES  90020

INDUSTRIAL WASTE PLAN CHECK INSTRUCTION SHEET

*SHAH CHEMICAL CORP.*
Facility Name

*I-7519-20*
I-File No.

*132 W. 132 NO ST.*
Facility Address

*C.O.*
Locality

_____            _____
Applicant or Engineer                                      Mailing Address

THE APPLICATION AND PLANS YOU HAVE SUBMITTED FOR REVIEW ARE NOT APPROVED.  SUBMIT, COMPLETE OR CORRECT THE ITEMS CIRCLED BELOW.  RETURN THIS SHEET WITH REQUESTED MATERIAL.

1.  Complete and sign the County Sanitation Districts Permit Application.

2.  Complete and sign the County Industrial Waste Permit Application.

3.  Complete and sign the City of_____ Permit Application.

4.  Submit an application fee of $_____ payable to the Los Angeles County Engineer.

5.  Furnish chemical analyses and other data required on the attached County Sanitation Districts' Critical Parameter Report Form or Additional Information Questionnaire.

6.  Place the name and address of the Company having the wastewater discharge at the lower right-hand corner of the plans.

7.  Submit a plot plan drawn to scale showing acreage, adjacent streets and north arrow.

8.  Provide a site drainage plan.

9.  Provide a roof or an approved rainwater diversion system for all outside waste producing areas drained to the sewer.

10. Submit an industrial wastewater plumbing plan showing all floor drains, floor sinks, service sinks and waste lines and facilities for handling industrial wastewater from the point of origin to the connection to the public sewer.  All equipment or facilities generating industrial wastewater must be identified on plans.

11. Separate sanitary wastes originating from rest rooms, lavatories, drinking fountains, etc., from industrial process wastewater until all industrial wastewater pretreatment or flow measuring steps are completed.

12. Submit scaled drawings for all wastewater pretreatment facilities.

OVER

13. Provide and show on plans a gravity separation interceptor of ___500___ gallon capacity with a sampling box on the downstream end.

14. Provide an automatic full-time total flow measurement system with flow indication, totalization, and recording and show on plans.

15. Provide a schematic mass balance flow diagram of the plant wastewater sources from water supply to wastewater discharge.  Show water and wastewater flow rates, evaporation losses, losses to product, etc.

16. Provide a description of liquid waste materials leaving the plant other than in the industrial wastewater discharged to the sewer indicating types of materials and daily quantities.

17. Provide an automatic effluent pH control and recording system for acid wastes and show on plans.

18. Do not discharge one-pass cooling water to the public sewer.

19. The indicated rate of industrial waste discharge to the sewer is substantially higher than normally allocated for property of this size.  Contact _____ at telephone _____ for the procedure necessary to obtain sewer capacity clearance. _____

20. Submit a plan showing outdoor storage tanks, spill containment details and cooling tower facilities.

21. Application(s), six sets of revised plans and supporting information  must be returned to this office by _AUGUST 28, 1981_. (One set of plans has been retained for reference.)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Checked by __W. Y. TEN__   Date __7/28/81__   Telephone __738-2527__

ydf  42
3/79

## SURVEY REQUEST

DUE
~~Come up~~ Date _____ MAY 6, 1981 _____ To ___ DON TALLMAN ___

Firm Name ___ SHAH CHEMICAL CORPORATION _____ I-No. ~~I-7510-20~~ I-7519-20

Location ___ 132 WEST 132 ND STREET, LOS ANGELES _____

Thomas Guide Page _64, A-1_____ Telephone _323-8881___ Permit _____

Remarks ___ REQUIRE SURVEY REPORT AND SKETCH _____

_____

_____

_____

_____

_____

_____

_____

cp 8
12/72

By W. Y. TEN  HRL   Date _____

Case 2:19-cv-02123-DMG-AGR   Document 75-1   Filed 02/09/21   Page 347 of 464   Page ID #:4119



**STEPHEN J. KOONCE**
COUNTY ENGINEER

**RAYMOND W. LOOMIS**
CHIEF DEPUTY

### COUNTY OF LOS ANGELES
### DEPARTMENT OF COUNTY ENGINEER-FACILITIES
#### 550 SOUTH VERMONT, LOS ANGELES, CA 90020

(213) 738-2011

July 28, 1981

BOARD OF SUPERVISORS

PETER F. SCHABARUM
KENNETH HAHN
EDMUND D. EDELMAN
DEANE DANA
MICHAEL D. ANTONOVICH

Shah Chemical Corp.
132 W. 132nd St.
Los Angeles, CA 90061

Attention: Mr. Hussain M. Shaikh          File No.  I-7519-20

Gentlemen:  SHAH CHEMICAL CORP.
             132 W. 132ND ST. (COUNTY)

### APPLICATION FOR INDUSTRIAL
### WASTEWATER DISCHARGE PERMIT

The application you have submitted for review by the  **County**
Engineer and Sanitation Districts is NOT approved because
additional information and plans are required to allow
proper evaluation of your operations and their possible
effects on the sewerage system and on the environment.

Please submit the information outlined in the enclosed Plan
Check Instruction Sheet within 30 days of the date of this
letter.

If you have any questions, please contact  **Mr. W. Y. Ten**
of this office on (213) 738-**2527.**

                              Very truly yours,

                              STEPHEN J. KOONCE
                              **County Engineer**

                              *H.R. Khojasteh*

                              H. R. Khojasteh
                              Supervising Civil Engineer I
                              Sanitation Division

HRK:mls 41

Enclosures
cc:  Los Angeles County Sanitation Districts,
        Industrial Waste Section

2-26-81 (2a)




COUNTY OF LOS ANGELES
DEPARTMENT OF COUNTY ENGINEER-FACILITIES
550 SOUTH VERMONT, LOS ANGELES, CA 90020



STEPHEN J. KOONCE
COUNTY ENGINEER

Hiam Barmack
CHIEF DEPUTY

(213) 738-2011
December 31, 1981

BOARD OF SUPERVISORS

PETER F. SCHABARUM
KENNETH HAHN
EDMUND D. EDELMAN
DEANE DANA
MICHAEL D. ANTONOVICH

SHAH CHEMICAL CORP.
132 W. 132nd St.
Los Angeles, CA 90061

File No. I-7519-20

Attention: Mr. Hussain M. Shikh

Gentlemen:

DELINQUENCY NOTICE
APPLICATION FOR INDUSTRIAL WASTEWATER DISCHARGE PERMIT
Re: SHAH CHEMICAL CORP.
132 W. 132nd St. (Unincorporated Area)

On  July 28, 1981  you were notified that your firm's application for an Industrial Wastewater Discharge Permit was not approved. The application was not approved because additional information and plans were required to allow proper evaluation of your operations. To date, we have not received any response. The requested information must be furnished in satisfactory detail in order for you to obtain the required Industrial Wastewater Discharge Permit that will allow your company to legally discharge industrial wastewater to the public sanitary sewer system.

The required information must be submitted to this office within  15  days of the date of this letter. If you have any questions, please contact  Mr. Mert Ramos  at (213) 738-2463 .

Very truly yours,

STEPHEN J. KOONCE
County Engineer

H. R. Khojasteh
Supervising Civil Engineer I
Sanitation Division

cc:  Los Angeles County Sanitation Districts, Industrial Waste Section

(9)  7/16/81



STEPHEN J. KOONCE
COUNTY ENGINEER

Hiam Barmack
CHIEF DEPUTY

COUNTY OF LOS ANGELES
DEPARTMENT OF COUNTY ENGINEER-FACILITIES
550 SOUTH VERMONT, LOS ANGELES, CA 90020

(213) 738-2011

January  19,  1982



BOARD OF SUPERVISORS

PETER F. SCHABARUM
KENNETH HAHN
EDMUND D. EDELMAN
DEANE DANA
MICHAEL D. ANTONOVICH

SHAH CHEMICAL CORP.
132 W. 132nd St.
Los Angeles, CA 90061

File No.  I-7519-20

Attention: Mr. Hussain M. Shikh

Gentlemen:

SECOND DELINQUENCY NOTICE
APPLICATION FOR INDUSTRIAL WASTEWATER DISCHARGE PERMIT

On  7/28/81 & 12/31/81       you were notified that your firm's application for an Industrial Wastewater Discharge Permit was not approved.  The application was not approved because additional information and plans were required to allow proper evaluation of your operations.  To date, we have not received any response.  The requested information must be furnished in satisfactory detail in order for you to obtain the required Industrial Wastewater Discharge Permit that will allow your company to legally discharge industrial wastewater to the public sanitary sewer system.

The required information must be submitted to this office within  15  days of the date of this letter.  If you have any questions, please contact Mr. Mert Ramos                at (213) 738- 2463   .

Very truly yours,

STEPHEN J. KOONCE
County Engineer

H. R. Khojasteh
Supervising Civil Engineer I
Sanitation Division

cc:  Los Angeles County Sanitation Districts, Industrial Waste Section

(9)  7/16/81



# SHAH CHEMICAL CORPORATION

447 ~~EAST ROSECRANS AVENUE~~ ~~GARDENA, CALIFORNIA 90248~~

TEL. 213/323-8881

132 W. 132nd Street
Los Angeles, CA 90061



RECEIVED

JAN 26 1982
JAN. 25 1982

SANITATION

Mr. Mert Ramos
County of Los Angeles
Department of County Engineer-Facilities
550 South Vermont,
Los Angeles, California 90020

APPLICATION FOR INDUSTRIAL WASTEWATER DISCHARGE
PERMIT (Your Delinquency Notice dated 12/31/82)
FILE NO. I-7510-20

Dear Mr. Ramos:

With reference to our phone conversation of this date,
please let me reiterate that Mr. Hussain M. Shaikh, the
president of our company, is out of the country. He
has been away since the beginning of December, but is
expected back in Los Angeles by February 5th, 1982.

Kindly extend the originally prodived 15 day period
grace period up to the 8th of February, at which day Mr.
Hussain will for sure be back in the office. Mr. Shaikh
has not as yet seen the Delinquency Notice, since we are
holding his mail until he returns.

I am sure Mr. Shaikh will be taking care of this pending
matter immediately upon his return. Kindly grant the
extension.

Thank you.

Sincerely yours,

HELGA MARKGRAF-FOWLER
Secretary

RECEIVED

JAN 26 1982

SANITATION



STE HEN J KOONCE
COUNTY ENGINEER

COUNTY OF LOS ANGELES
DEPARTMENT OF COUNTY ENGINEER-FACILITIES
550 SOUTH VERMONT, LOS ANGELES, CA 90020



Elias Barmack
CHIEF DEPUTY

(213) 738-2011
March 22, 1982

BOARD OF SUPERVISORS

PETER F. SCHABARUM
KENNETH HAHN
EDMUND D. EDELMAN
DEANE DANA
MICHAEL D. ANTONOVICH

SHAH CHEMICAL CORP.
132 W. 132nd St.
Los Angeles, CA 90061

File No. I-7510-20

Attention: Mr. Hussain M. Shikh

Gentlemen:

## FINAL DELINQUENCY NOTICE
### APPLICATION FOR INDUSTRIAL WASTEWATER DISCHARGE PERMIT

On 7/28/81, 12/31/81 & 1/19/82 you were notified that your firm's
application for an Industrial Wastewater Discharge Permit was
not approved. The application was not approved because addi-
tional information and plans were required to allow proper
evaluation of your operations. To date, we have not received
any response. The requested information must be furnished in
satisfactory detail in order for you to obtain the required
Industrial Wastewater Discharge Permit that will allow your
company to legally discharge industrial wastewater to the
public sanitary sewer system.

The required information must be submitted to this office
within    15    days of the date of this letter.    If you have
any questions, please contact   Mr. Mert Ramos              at
(213) 738- 2463   .

Very truly yours,

STEPHEN J. KOONCE
County Engineer

H.R. Khojasteh

H. R. Khojasteh
Supervising Civil Engineer I
Sanitation Division

cc:   Los Angeles County Sanitation Districts, Industrial Waste Section

(9)   7/16/81

Case 2:19-cv-02123-DMG-AGR Document 75-1 Filed 02/09/21 Page 352 of 464   Page ID #:4124

76L268- PS

**LOS ANGELES COUNTY LETTERGRAM**

| **TO** | CWS | **FROM** | M. RAMOS |

**Subject**                                                          **Date** 6-27-83        **No.**

The following companies have not responded to our repeated delinquency notices as of today.  We are referring these companies to you for necessary action.  Copies of our final notices are attached for your reference.  Thank you.

| 1. | LA MICHOACANA BAKERY | I-7517-1K |
| 2. | COMMUNITY HOSPITAL OF L.A. | I-248-39 |
| 3. | LITTLE RANCHITO | I-558-22 |
| 4. | LUSTRO CORP. | I-6522-7 |
| 5. | ANTHONY H. COMPANY, INC. | I-692-59 |
| 6. | SHAH CHEMICAL CORP. | I-7519-20 |
| 7. | LONG BEACH BOTTLE SUPPLY | I-5923-22 |

**LOS ANGELES COUNTY LETTERGRAM**

| | | | |
|---|---|---|---|
| **TO** | Don Tallman | **FROM** | Carl Sjoberg<br>Supervising Industrial Waste<br>Engineering Inspector II<br>Sanitation Division |

**Subject**  FINAL NOTIFICATION FOR INDUSTRIAL
WASTEWATER PERMIT

**Date**  July 29, 1983  **No.**

Please inquire as to the status of the following facilities:

1. Long Beach Bottle Supply

   Permit on file dated 3/26/75, no longer valid due to past
   change of ownership.

2. Shah Chemical Co.

   No existing permit. No response since Plan Check Instruction
   Sheet sent out 7/28/81. Application fee paid.

3. Little Ranchito

   Slaughterhouse with no existing permit or sewer connection.
   No response since Plan Check Instruction Sheet sent out 12/30/81.

CWS:RW-rw 41

### COUNTY OF LOS ANGELES
### DEPARTMENT OF COUNTY ENGINEER
PROJECT PLANNING AND POLLUTION CONTROL DIVISION

INSPECTOR'S REPORT

TO: _Don Tallman_     DATE: _Aug. 12, 1983_

FROM: _Robert Hartley_     FILE: _I-7519-20_

INDUSTRY: _Shah Chemical Corporation_

_132 West 132nd street_

REPORT: _Observation of the above plant with Mr. Yousuf
Shaikh, office manager, revealed a long yellow hose (1½ inch
Diameter) connected from two mixing tanks (280 and 1700 gallons)
to the floor sink. The hose connected to a pump which
connected to the underside of the tanks._

_No discharge was observed. He said that they wash
out the tanks sometimes. The operation appeared to
be the same as previous surveys showed._

_Shah chemical corporation no longer exist. The
new company is named Pacifica chemical incorporated.
The new owner was not present. The office manager
was not familar with the processes and no further information
could be gained._





STEPHEN J. KOONCE
COUNTY ENGINEER

HIAM BARMACK
CHIEF DEPUTY

**COUNTY OF LOS ANGELES**
DEPARTMENT OF COUNTY ENGINEER-FACILITIES
550 SOUTH VERMONT, LOS ANGELES, CA 90020

(213) 738-2011

September 28, 1983

BOARD OF SUPERVISORS

PETER F. SCHABARUM
KENNETH HAHN
EDMUND D. EDELMAN
DEANE DANA
MICHAEL D. ANTONOVICH

Pacific Chemical Incorporated          File No. I-7519-20
132 West 132nd Street
Los Angeles, CA 90061

Gentlemen:                DELINQUENCY NOTICE

APPLICATION FOR INDUSTRIAL WASTEWATER DISCHARGE PERMIT

PACIFIC CHEMICAL INCORPORATED
132 WEST 132ND STREET

On ____August 24, 1983____ you were notified that your firm's
application for an Industrial Wastewater Discharge Permit was
not approved. The application was not approved because addi-
tional information and plans were required to allow proper
evaluation of your operations. To date, we have not received
any response. The requested information must be furnished in
satisfactory detail in order for you to obtain the required
Industrial Wastewater Discharge Permit that will allow your
company to legally discharge industrial wastewater to the
public sanitary sewer system.

The required information must be submitted to this office
within  30   days of the date of this letter. If you have
any questions, please contact __Mr. W. Y. Ten_____ at
(213) 738-2531___.

Very truly yours,

STEPHEN J. KOONCE
County Engineer

M. Ramos
Supervising Civil Engineer I
Sanitation Division

cc:  Los Angeles County Sanitation Districts, Industrial Waste Section

(9)  7/16/81

COUNTY OF LOS ANGELES
DEPARTMENT OF COUNTY ENGINEER-FACILITIES
550 SOUTH VERMONT, LOS ANGELES, CA 90020

STEPHEN J. KOONCE
COUNTY ENGINEER

HIAM BARMACK
CHIEF DEPUTY

(213) 738-2011

November 4, 1983

**BOARD OF SUPERVISORS**

PETER F. SCHABARUM
KENNETH HAHN
EDMUND D. EDELMAN
DEANE DANA
MICHAEL D. ANTONOVICH

Pacific Chemical Incorporated          File No. I-7519-20
132 West 132nd Street
Los Angeles, CA 90061

Gentlemen:      SECOND   DELINQUENCY NOTICE

APPLICATION FOR INDUSTRIAL WASTEWATER DISCHARGE PERMIT

PACIFIC CHEMICAL INCORPORATED
132 WEST 132ND STREET

On  8/24/83 & 9/28/83      you were notified that your firm's
application for an Industrial Wastewater Discharge Permit was
not approved.  The application was not approved because addi-
tional information and plans were required to allow proper
evaluation of your operations.  To date, we have not received
any response.  The requested information must be furnished in
satisfactory detail in order for you to obtain the required
Industrial Wastewater Discharge Permit that will allow your
company to legally discharge industrial wastewater to the
public sanitary sewer system.

The required information must be submitted to this office
within  15  days of the date of this letter.  If you have
any questions, please contact   Mr. W. Y. Ten            at
(213) 738-2531  .

Very truly yours,

STEPHEN J. KOONCE
County Engineer

M. Ramos
FOR   Supervising Civil Engineer I
Sanitation Division

cc:  Los Angeles County Sanitation Districts, Industrial Waste Section

(9)  7/16/81



**STEPHEN J. KOONCE**
COUNTY ENGINEER

**HIAM BARMACK**
CHIEF DEPUTY

**COUNTY OF LOS ANGELES**
**DEPARTMENT OF COUNTY ENGINEER-FACILITIES**
550 SOUTH VERMONT, LOS ANGELES, CA 90020

(213) 738-2011
January 18, 1984



BOARD OF SUPERVISORS

PETER F. SCHABARUM
KENNETH HAHN
EDMUND D. EDELMAN
DEANE DANA
MICHAEL D. ANTONOVICH

Pacific Chemical Incorporated
132 West 132nd Street
Los Angeles, CA 90061

File No. I-7519-20

Gentlemen:          FINAL DELINQUENCY NOTICE

APPLICATION FOR INDUSTRIAL WASTEWATER DISCHARGE PERMIT

On  8/24/83, 9/28/83&11/4/83  you were notified that your firm's
application for an Industrial Wastewater Discharge Permit was
not approved.  The application was not approved because addi-
tional information and plans were required to allow proper
evaluation of your operations.  To date, we have not received
any response.  The requested information must be furnished in
satisfactory detail in order for you to obtain the required
Industrial Wastewater Discharge Permit that will allow your
company to legally discharge industrial wastewater to the
public sanitary sewer system.

The required information must be submitted to this office
within   15   days of the date of this letter.  If you have
any questions, please contact  Mr. W. Y. Ten          at
(213) 738-_____.

Very truly yours,

STEPHEN J. KOONCE
County Engineer

W. J. Ten

for   M. Ramos
Supervising Civil Engineer I
Sanitation Division

cc:  Los Angeles County Sanitation Districts, Industrial Waste Section

(9)  7/16/81

PERMIT NO. _____

## ADDITIONAL INFORMATION QUESTIONNAIRE
### FOR PERMIT APPLICANTS

**SANITATION DISTRICTS OF LOS ANGELES COUNTY**
1955 Workman Mill Rd., P.O. Box 4998, Whittier, CA. 90607
John D. Parkhurst, Chief Engineer and General Manager

LOS ANGELES, CA _____ , Calif. 1 / 27 / 84
                                         MO.   DAY   YR.

Name of Company ___ PACIFICA CHEMICAL INCORPORATED _____ S.I.C. No. _____

Mailing Address _____ 132 W. 132nd Street, Los Angeles, CA 90061
PRINT               (STREET)                    (CITY)      (STATE)        (ZIP)

Address of Wastewater Discharge _____ dto.
PRINT                         (STREET)          (CITY)      (STATE)        (ZIP)

Legal Address    | 6 | 1 | 3 | 2 |  | 0 | 4 | 1 |  | 0 | 2 | 2 |  Permit Application No. Y 1 0 4 1 4 4
                 (MAP BOOK NO.)      (PAGE NO.)      (PARCEL NO.)

IF YOUR COMPANY DISCHARGES OR WILL DISCHARGE TO THE SEWER any of the wastewater constituents listed below, please check the appropriate box:

1. Flammable wastes (406A)  ☐
2. Toxic or poisonous wastes (406B)  ☐
3. Acidic materials (pH less than 6.0) (406C)  ☐
4. Materials that could obstruct the sewer (406D)  ☐
5. Rainwater (406E)  ☐
6. Dilution water (406F)  ☒
7. Petroleum based soluble cutting oils (406G)  ☐
8. Any quantities of petroleum based oils (406H)  ☐

9. Cyanide wastes (406J)  ☐
10. Total dissolved solids above 5000 mg/1 (406K)  ☐
11. Highly odorous wastes (406M)  ☐
12. Dissolved sulfides over 0.1 mg/1 (406N)  ☐
13. Basic materials (pH greater than 10.5) (4060)  ☐
14. Toxic gases (406P)  ☐
15. Temperature over 120° F. (406Q)  ☐
16. Highly colored wastes (406V)  ☐

17. Wastes larger than ⅜'' in any dimension (406W)  ☐
18. Any arsenic, boron, cadmium, chromium, copper, lead, mercury, nickel, selenium, silver, tin, zinc, or other toxic materials (406X)  ☐
19. Blow down or bleed water from cooling towers, boilers or evaporative coolers (406Y)  ☐
20. Single pass cooling water (406Z)  ☐
21. Radioactive materials (406AA)  ☐
22. Recognizable portions of the human anatomy (406BB)  ☐
    NOTE: Numbers in parentheses refer to the designated section in the Districts' Industrial Waste Ordinance.

IF YOUR COMPANY HAS ANY OR WILL HAVE ANY OF THE FOLLOWING PRETREATMENT SYSTEMS for wastewater prior to disposal to the sewer, please check the appropriate box.

1. Interceptor, clarifier, sump or trap  ☒
2. Screen or filter  ☐
3. Centrifuge  ☐
4. Cyclone  ☐
5. Grit removal  ☐
6. Grease or oil removal  ☐
7. Solvent separation  ☐
8. Acid or base neutralization  ☐
9. Chemical coagulation or precipitation  ☐

10. Cyanide destruction  ☐
11. Chromium reduction  ☐
12. Spill protection  ☐
13. Rainwater diversion or storage system  ☐
14. Grinder over 2 horsepower  ☐
15. Air flotation  ☐
16. Other _____  ☐
    _____  ☐
17. Other _____  ☐
    _____  ☐

I hereby affirm that all information furnished is true and correct to the best of my knowledge.

Date _1/27/_____ , 19 84

Signature for Applicant _____  President
(COMPANY ADMINISTRATIVE OFFICIAL)   HUSSAIN M. SHAIKH (NAME)        (POSITION)

# SANITATION DISTRICTS OF LOS ANGELES COUNTY

## John D. Parkhurst, Chief Engineer and General Manager

### PERMIT INFORMATION CHECK LIST 1/

**DETAIL PLAN REQUIREMENTS**

| Permit Class | Permit Application | Add'l. Inform. Questionnaire | Critical Parameter Report Form | Plot Plan | Floor or Plumbing Plan | Water Mass Balance Diagram | Water Source and Usage | Is Wastewater Discharge Non-Continuous | Location of Plant Sewers | Company Name & Address on Plans | Detailed Plans of Pre-treatment | Plans of Flow Measurement System | System for pH Control (if needed) | Description of Company's Raw Materials or Product | Description of Liquid Waste Materials Trucked From Plant | Sanitary Wastes Separate from Industrial Wastes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | X | — | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| 2 | X | — | X | X | X | — | X | X | X | X | X | — | X | X | X | X |
| 3 2/ | X | X | — | — | — | — | — | — | — | — | — | — | X | — | — | X |

**NOTES:**

1/ If any questions exist on the information required, or the methods of submitting the information to the Sanitation Districts, please call the Districts' Industrial Waste Section at 484-1370, ext. 308 or after June 1, 1974 call (213) 699-7411.

2/ Please note that companies in Permit Class 3 must normally provide a minimum industrial wastewater pre-treatment facility consisting of an interceptor (sump, clarifier) having a 30-minute detention time (min. 500 gals.) for peak wastewater flows, and properly baffled to prevent sand, grit, oil and grease from entering the sewer.



# PACIFICA CHEMICAL INCORPORATED

132 W. 132nd STREET • LOS ANGELES, CALIFORNIA 90061
TEL.: (213) 532-9291 • TELEX: 69-1496

1/30/1984

Mr. W. Y. Ten
Countyof Los Angeles
Department of County
    Engineer-Facilities
550 South Vermont
Los Angeles, CA 90020

Dear Mr. Ten:

Attached you will find completed application #Y104144
for a permit for Industrial Wastewater Discharge, as
well as a completed additional information question-
naire.  Also attached is our check #2154 for $228.00.

A to Z Plumbing of Long Beach has been engaged to
survey our existing plumbing lines.  Prints will be
submitted as soon as they are received.

If you have any further questions or require further
information, please contact the writer.

Very truly yours,

T. S. CARRAN

Enclosures

TSC/HM-F

RECEIVED

FEB 01 1984

L. A. COUNTY ENGINEER
SANITATION DIVISION

APPLICATION NO.

Z: 07946

PERMIT NO.

EXISTING INDUSTRY

PERMIT FOR INDUSTRIAL WASTEWATER DISCHARGE

SANITATION DISTRICTS OF LOS ANGELES COUNTY
1955 Workman Mill Road / Whittier, Ca.
Mailing Address: / P.O. Box 4998, Whittier, California 90607
XXXXXXXXXXXXXX, Chief Engineer and General Manager
Charles W. Carry

Los Angeles _____, Calif.   6 / 20 / 85
                                  MO.  DAY  YR.

01 APPLICATION IS HEREBY MADE BY   PACIFICA CHEMICAL INC.
PRINT                              (FIRM NAME)

02 (Mailing Address)   132 W. 132nd Street      Los Angeles, CA        90061
                       (STREET)                 (CITY)      (STATE)    (ZIP)

03 _____ Haroon Khan _____ of the property located at:
        (OWNER, TENANT, ETC.)

04 (Street)   132 W. 132nd Street   (City) Los Angeles, CA   (Zip) 90061
PRINT                (ADDRESS OF PROPERTY PRODUCING WASTEWATER DISCHARGE)

05 Assessors Map Book No. ___6132___ Page No. ___041___ Parcel No. ___022___
                    (LEGAL ADDRESS OF PROPERTY PRODUCING WASTEWATER DISCHARGE)

06 __132 W. 132nd Street, Los Angeles, CA_____
PRINT            (LOCATION OF POINT OF WASTEWATER DISCHARGE TO SEWERAGE SYSTEM)

for a Permit for Industrial Wastewater Discharge to the sewerage system.

07 Type of Industry   blending of textile detergents and softeners    2842   2844
                      (GENERAL DESCRIPTION)                  (FEDERAL SIC NOS.)

08 Number of Employees (Full Time) ___12___   (Part Time) ___none___

09 Raw Materials Used   Milsoft N-20 (ICI); CARSANON N-9(LONZA); CARSOSOFT T-90 (LONZA); Sodium
                        Lauryl Sulfate, Ammonium Lauryl Sulfate, Peg-600 (EMERY)
                        (GENERAL DESCRIPTION – ADD ADDITIONAL SHEETS AS NEEDED)

10 Products Produced   Detergents and softenes
                       (GENERAL DESCRIPTION – ADD ADDITIONAL SHEETS AS NEEDED)

11 Wastewater Producing Operations   Rinsing of tanks
                        (FULL DESCRIPTION – ADD ADDITIONAL SHEETS AS NEEDED)

12 Time of Discharge –   8   AM/PM to   5   AM/PM,   Days per Week   M  T  W  Th  F  Sa  Su
                     (WORKING DAY – CROSS OUT AM OR PM)                 (CIRCLE DAYS)

13 Wastewater Flow Rate   16 gl/min.                  500   (Gallons Per Day)

14 Constituents of Wastewater Discharge   rinsing tanks  of remaining material before starting new batches of
   detergents and softeners
                        (GENERAL DESCRIPTION – ATTACH CHEMICAL ANALYSES RESULTS TO THIS APPLICATION)

15 Person in company responsible for industrial wastewater discharge:

   JUAN MONTES  and TOMAS MACEDONIO        Operators           (213) 323-8881
   PRINT      (NAME)                       (POSITION)          (TELEPHONE NUMBER)

I affirm that all information furnished is true and correct and that the applicant will comply with the conditions stated on the back of this permit form.

Date   6/20/85 _____, 19 _____

16 Signature for Applicant _____
   (COMPANY ADMINISTRATIVE OFFICIAL)   (NAME)                    (POSITION)

17 Approved by City or County Official          18 Approved by Sanitation Districts of Los Angeles County

Date ___9  9  85_____                      Date _____

For Dept. of County Engineers ............ ☐   XXXXXXXXXX, Chief Engineer and General Manager
                                                Charles W. Barry
   City of _____ ☐   I-75149

Name _____                   by _____

Position _____                   Position _____

Note:  Please submit application first to City or County Agency who may require a permit fee.
       This form when properly signed shall be a valid permit unless suspended or revoked.

COUNTY OF LOS ANGELES
DEPARTMENT OF COUNTY ENGINEER
SANITATION DIVISION

## PLAN CHECK REVIEW SHEET

Date  8 - 16 - 85

FIRM NAME   PACIFICA  CHEMICAL   INC.

Uninc. Co. Territory ____ ✓

FIRM ADDRESS  132  W.  132nd  Street   City of   L.A.   90061
Co. Engr. is City Engr.
Plan Check By  JOHN  MARNERIS   Yes ____ .   No ____

OK

| | | |
|---|---|---|
| 1. | Required No. of Plans . 6 sets | ✓ |
| 2. | I. W. Plans and Details | ✓ |
| 3. | Permit Application (County, City, (San. Dists.) | ✓ |
| 4. | Permit Application Fee Received #160 . *Phone 8/22/85* | ☞ |
| 5. | City Authorization Received | N/A |
| 6. | I. W. Statement | ✓ |
| 7. | Critical Parameter Report/Addl. Info. Questionnaire | ✓ |
| 8. | Type of I. W. Facilities (I-2-510, Nottingham 750, etc.) | I-2/1500/NOTT |
| 9. | I. W. Facilites Adequate | ✓ |
| 10. | Method of Disposal (Local, trunk, ground, haul, etc.) | #1 |
| 11. | Allocable Sewer Capacity (Peak Flow in gpm) | 7.5 |
| 12. | I-File Request Form (Indicate I-No. & Region, if assigned) | I-7519-2 |
| 13. | Permit Form | N/A |
| 14. | Rainwater Diversion System Required   Yes___ No | ✓ |
| 15. | Plans/Application Approved for Transmittal to San. Dists. | ✓ |

Reviewed By:_____   Trap Card Required Yes___ No___

FOLLOW UP INSTRUCTION:

A. Thomas Guide Page No. & C/D   64 & A/1

B. SMD Page No.   C - 89

C. Facility Code   4E

D. Type of Rain Diversion System           } N/A
   & Square Footage of Unroofed Area

E. Standard Industrial Classication No. 2842/2844

F. Industry Code   905



# PACIFICA CHEMICAL INCORPORATED

132 W. 132nd STREET • LOS ANGELES, CALIFORNIA 90061
TEL.: (213) 532-9291 • TELEX: 69-1496

**RECEIVED**

SEP 0 9 1985

L. A. COUNTY ENGINEER
SANITATION DIVISION

9/3/1985

Mr. Carl Sjoberg
County of Los Angeles
Engineering Services
P.O.BOX 2418
LOS ANGELES, CA 90051

Gentlemen:

This letter is in response to our telephone conversation this date.

We have on our premises a 2,000 gl. tank in which we are storing Perchloroethylene. This material is used for resale purposes only. We receive it in a bulk shipment and it is pumped directly into the storage tank. Thereafter we are repackaging the bulk material and fill it into 55 gl. drums. We do not use Perchloroethylene in our products.

Sincerely,

HUSSAIN M. SHAIKH

HMS/HM-F

# COUNTY OF LOS ANGELES

## DEPARTMENT OF PUBLIC WORKS

2250 ALCAZAR STREET
LOS ANGELES, CALIFORNIA 90033
Telephone: (213) 226-4111

THOMAS A. TIDEMANSON, Director
HIAM BARMACK, Chief Deputy Director
JAMES L. EASTON, Chief Deputy Director
WYNN L. SMITH, Chief Deputy Director

ADDRESS ALL CORRESPONDENCE TO:
P.O. BOX 2418
LOS ANGELES, CALIFORNIA 90051

IN REPLY PLEASE
REFER TO FILE: I-7519-2

Mr. Charles W. Carry
Chief Engineer and General Manager
County Sanitation Districts
1955 Workman Mill Road

September 9 , 1985

Attention: Mr. Leon Directo

Dear Mr. Carry

Subject: PACIFICA CHEMICAL INC.
132 W. 132nd Street
Los Angeles, CA 90061

We are transmitting herewith the following:

|   |   |
|---|---|
| X | Permit Application No. Z-04946 |
| X | Industrial Waste Disposal Plans (6) sets |
|   | Additional Information Questionnaire |
|   | Critical Parameter Report Form |
| X | Supporting Information |
|   | Other _____ |

For the following action:

|   |   |   |   |
|---|---|---|---|
|   | For necessary action |   | Not in our jurisdiction |
| X | For your review and approval | X | Please return (4) approved sets |
|   | For your comments |   | County Public Works approval |
|   | Per our conversation |   | pending completion of sewer study |
|   | Other _____ |   |   |

Special remarks:

Very truly yours,

T.A. TIDEMANSON
Director of Public Works

Mert Ramos
Supervising Civil Engineer I
Engineering Services Division

MR:ps 41
5/8/85  (4)



# COUNTY SANITATION DISTRICTS
## OF LOS ANGELES COUNTY

1955 Workman Mill Road / Whittier, California
Mailing Address: / P. O. Box 4998, Whittier, California 90607
Telephone: (213) 699-7411 / From Los Angeles (213) 685-5217

CHARLES W. CARRY
*Chief Engineer and General Manager*

January 29, 1986
File:08-00.05-00/85-11027G

Mr. Mert Ramos
Dept. of Public Works
2250 E. Alcazar St.
P.O. Box 2418, Terminal Annex
Los Angeles, CA  90051

Dear Mr. Ramos:

### Industrial Wastewater Discharge Permit No. 11027

Pacifica Chemical, Inc.
132 W. 132nd Street
Los Angeles, CA  90061

Enclosed are four (4) approved sets of plans and copies of the approved Industrial Wastewater Discharge Permit for the subject company. Please review these for compliance with your requirements, and retain the copies you require for your files. A copy of this letter is forwarded to the applicant to notify him of the Sanitation Districts' permit requirements, which are in force from the current date. If any additional permit requirements are issued to the applicant by your agency, copies should be forwarded to the Sanitation Districts for our records. The approved plans consit of:

1. Dwg. : Sewer Plan of Pacifica Chemical, Inc.

Approval of the plans and permit is contingent upon continuing compliance with applicable Sanitation Districts' Ordinance requirements, upon any corrections shown in red on the drawings, and upon the items indicated on the attached requirement list.

If you have any questions concerning these requirements, please call Gilbert Chang of the Sanitation Districts' Industrial Waste Section at extension 257.

Very truly yours,

Charles W. Carry

Leon S. Directo
Supervising Civil Engineer

LSD:GC:wh
cc:  Pacifica Chemical, Inc.
     132 W. 132nd St.
     Los Angeles, CA  90061
     Attn:  Hussain Shaikh

## SANITATION DISTRICTS OF LOS ANGELES COUNTY

**Charles W. Carry, Chief Engineer and General Manager**
**1955 Workman Mill Road, P.O. Box 4998, Whittier, California 90607**

### INDUSTRIAL WASTEWATER DISCHARGE PERMIT

#### REQUIREMENT LIST

Company Name _____ Pacifica Chemical, Inc. _____

INDUSTRIAL WASTEWATER DISCHARGE PERMIT NO. _____ 132 W. 132nd Street _____

DATE OF PERMIT ISSUANCE _____ January 29, 1986 _____

The above named company is required to comply with all indicated items on this list as a condition of the permit approval. Satisfactory evidence of compliance with these conditions should be supplied to the Sanitation Districts where requested. Satisfactory evidence will consist of a minimum of written notification signed by a responsible company official, and in some cases may involve the submission of additional drawings and data.

1. Characterization tests of the industrial wastewater must be performed at the intervals indicated on the Required Characterization Tests form and reported on the enclosed Critical Parameter Report Form. All indicated analyses must be performed by a Sanitation Districts' approved laboratory. The certification section on the back of the Critical Parameter Report Form must be completed and signed by a responsible company official. Revision of the Required Characterization Tests may be considered after initial analyses and upon written request with valid supporting information from the subject company. It is the responsibility of the subject company to report analyses of any other toxic materials shown in the Critical Parameter List, which are known to be present in the wastewater. --------------------------- /XX/

2. The permittee is required to adopt a program of regular pretreatment equipment maintenance and cleaning at intervals frequent enough to prevent a build-up of grit, oil, or grease which may enter the sewer. ---------------------------------------------------------------- /XX/

3. The pH of the wastewater must be maintained above 6.0 at all times. Proper neutralization procedures must be observed to assure that this limit is not exceeded. Batch neutralization is required for any tanks containing acidic solutions before they are discharged to the sewer, if the solution pH is less than 6.0. ------------------------------------------------------------ /XX/

4. Numerical limits have been established by the Sanitation Districts for the maximum concentrations of heavy metals, and other toxic materials, permissible in an industrial discharge to the public sewers. The limits are those shown in the enclosed table of "Industrial Wastewater Effluent Limitations." The subject company is advised that any discharge in excess of these limits requires corrective action by the discharger. Penalties applicable to violations of these limits will be strictly enforced by the Sanitation Districts. ------------------------------------------------- /XX/

5. All wastewater discharged to the sewer must have a temperature lower than 140° F. ------------------------------------------------------------- /XX/

6. All industrial wastewater discharged to the sewer must not contain over 0.1 milligram/liter of dissolved sulfides. ---------------------------- /XX/

7. The permittee is required to notify the Sanitation Districts of any change in the status of the subject facility, if ownership or operating responsibility changes, or if the industrial waste connection is legally abandoned. ------------------------------------------------------------------- /XX/

8. A new permit application must be submitted when there is a significant change in wastewater quantity (25% or more) or quality from that given in the approved Permit information. The completed application should be submitted to the local governmental agency for initial processing prior to Sanitation Districts' review.  Approval must be obtained prior to any construction of new facilities. ---------------------------------------------- /XX/

9. Waste haulers reports must be obtained and kept on file for a period of at least 180 days for any liquid wastes leaving the plant other than in the sewer system.  These reports must be made available to representatives of the Sanitation Districts upon request. ---------------------------------------------------------------- /XX/

10. The proposed sample box is hereby designated as the legal sampling point for the subject company.  The permittee is responsible for maintaining and cleaning the sampling point to prevent any build-up of oil and grease, sediment or sludge; failure to do so does not invalidate sampling test results.  Analytical results from samples taken from this location according to accepted sampling procedure shall be accepted as binding.  Safe and convenient access to the sampling point must be provided for representatives of the Sanitation Districts. ------------------------------------------------------------------ /XX/

11. The Environmental Protection Agency requires the Sanitation Districts to obtain data on the quantities of the principal raw materials consumed or the principal products produced, if the company is considered to be a major discharger or discharges toxic materials in its wastewater.  The maximum daily rate of raw materials consumed or products produced should be reported in thousands of pounds per day, barrels per day, production units per day or other appropriate rate units. ----------------------------- /XX/

12. Under no circumstances shall process solution spills be discharged to the sewer.  Unreclaimed or untreated process solution spills shall be hauled to a legal disposal site. ------------------------------------------- /XX/

13. The discharge of flammable and toxic materials, such as petroleum solvents and chlorinated solvents to the sewer is prohibited.  The permittee must take precautionary measures to prevent accidental spillage of these substances to the sewer system. --------------------------- /XX/

13. The information requested, or satisfactory evidence of compliance, must be submitted to the Sanitation Districts within 60 days to satisfy condition number 11. ------------------------------------------------ /XX/

# SANITATION DISTRICTS OF LOS ANGELES COUNTY

## INDUSTRIAL WASTE SECTION

### REQUIRED WASTEWATER CHARACTERIZATION TESTS

Firm Name __Pacific Chemical, Inc.__ Permit No. __11027__

Address of Property Producing Wastewater Discharge __132 W. 132nd Street__

Date __January 29, 1986__

__Los Angeles, CA  90061__ S.I.C.No. __2842, 2844__

Frequency of Analyses __1 per six months__ __1/__ Flow __500,000__ Gal/Yr

The following analyses and flow measurements shall be reported at the indicated frequency to the Sanitation Districts on the Districts' Critical Parameter Report Form (copy attached), which must be signed by an administrative officer of the company.  Certain requested characterization tests may be deleted from future reports, if it can be demonstrated in writing that they exist in very minute amounts in the wastewater and are not used in any processes which generate wastewater.

| Ident. Code | Test 3/ | | Ident. Code | Test 3/ |
|---|---|---|---|---|
| A | Flow (Total) | 2/ | | |
| B XXXXXXXXXXXXXXXXXXXXX | | 2/ | | |
| C | COD | | | |
| D | SS (Suspended Solids) | | | |
| E | pH | | | |
| H | Sulfide - Dissolved | | | |
| GG | Oil & Grease | | | |
| II | Surfactants (MBAS) | | | |
| 607 | Tetrachloroethylene | | | |
| | | | | |

1/ Companies required to submit only annual characterization analysis data should submit it directly to the Districts on July 1; companies required to submit data every 6 months should submit data on January 1, and July 1; companies required to submit data every 3 months should submit data on January 1, April 1, July 1, and October 1.  Required industrial wastewater characterization analysis data not received within 45 days of the required date will be considered delinquent and a possible cause for revocation of the Industrial Wastewater Discharge Permit.

2/ Total Flow and maximum 30-minute peak flow rate for the day when composite characterization sample is taken.

3/ It is the responsibility of the subject company to report analyses of any other toxic materials shown on the Critical Parameter Report Form, which are known to be present in the wastewater, or may occur in the wastewater as a result of a process change.

## SANITATION DISTRICTS OF LOS ANGELES COUNTY

### TABLE OF SURCHARGE TEST FREQUENCY

| YEARLY CUMULATIVE FLOW | | Required Frequency of Tests for Surcharge Parameters (Critical Parameters A, B, C, D)  1/ (Flow, Peak Flow, COD and Suspended Solids, respt.) |
|---|---|---|
| Million Gallons | Million Cubic Feet | |
| Less than 6.0 | Less than 0.80 | 0                       2/ |
| 6.0 to 15.0 | 0.80 to 2.00 | 1 per 6 Months |
| 15.1 to 36.0 | 2.00 to 4.80 | 1 per 3 Months |
| 36.1 to 250 | 4.80 to 33.33 | 1 per Month |
| Over 250 | Over 33.33 | 1 per Week |

NOTES:

1/  Companies having peak flows of 100 gallons per minute or more or total flows of 50,000 gallons per working day or more must provide a continuous automatic indicating, totalizing and recording or total industrial wastewater flows discharged.

2/  Companies with cumulative yearly flows less than 6.0 million gallons may determine surcharge parameters for use in the "Long Form" Surcharge Statement or may pay for discharge at the current flat rate charge per million gallons used in the "Short Form" Surcharge Statement and not test for surcharge parameters.  At least two determinations of the surcharge parameters must be made to furnish data for use in the "Long Form" Surcharge Statement.

**SANITATION DISTRICTS OF LOS ANGELES COUNTY**
Charles W. Carry, Chief Engineer & General Manager
Telephone: (213) 699-7411 / From Los Angeles (213) 685-5217

**INDUSTRIAL WASTEWATER**
**CRITICAL PARAMETER REPORT FORM**

SURCHARGE ACCOUNT NO. _____

PERMIT NO. _11027_

(Print) Name of Company Having Wastewater Discharge: _PACIFICA CHEMICAL INC._

SIC Number(s): _2892 , 2844_

(Print) Address of Wastewater Discharge: _132 W. 132ND ST. LOS ANGELES CA 9006I_

(Print) Sample Date _____  Sample Point Location _____  to _____ Reporting Period

DAILY WATER USE FOR REPORTING PERIOD (GAL)  AVG. _____  MAX. _____

WASTEWATER FLOW (A,B) DETERMINED BY: ☐ DIRECT MEASUREMENT  ☐ METERED WATER SUPPLY  ☐ ADJUSTED METERED WATER SUPPLY

TYPE OF SAMPLE: ☐ GRAB  ☐ TIME COMPOSITE  ☐ FLOW PROPORTIONED COMPOSITE

## CRITICAL PARAMETER VALUES

| IDENT. CODE | PARAMETER 1/ | 2/ | QUANTITY VALUES | IDENT. CODE | PARAMETER 1/ | 2/ | QUANTITY VALUES |
|---|---|---|---|---|---|---|---|
| 3 / A | WASTEWATER FLOW (Total) | | gals/day | LL-370 371. 372. | RADIOACTIVITY (Alpha, Beta, Gamma) | | pci/l |
| 3 / B | WASTEWATER FLOW (Peak) | | gals/mi. | MM-111 | TEMPERATURE | | Degrees F |
| C-403 | COD | | mg/1 | NN-104 | COLOR | | Units |
| D-151 | SS (Suspended Solids) | | mg/1 | OO-253 | THIOSULFATE (S) | | mg/1 |
| E-101 | pH | | Units | PP-703 | CALCIUM | | mg/1 |
| F-155 | TOTAL DISSOLVED SOLIDS | | mg/1 | QQ-704 | MAGNESIUM | | mg/1 |
| G-201 | AMMONIA (N) | | mg/1 | RR-719 | POTASSIUM | | mg/1 |
| H-252 | SULFIDE – DISSOLVED | | mg/1 | SS-706 | BARIUM | | mg/1 |
| I-206 | CYANIDE | | mg/1 | TT-204 | NITRATE | | mg/1 |
| J-313 | FLUORIDE | | mg/1 | UU-301 | CHLORIDE | | mg/1 |
| K-707 | ALUMINUM – Total | | mg/1 | VV-319 | BROMIDE | | mg/1 |
| L-725 | ANTIMONY – Total | | mg/1 | WW-257 | SULFATE | | mg/1 |
| M-705 | ARSENIC – Total | | mg/1 | XX-311 | PHOSPHATE – ORTHO | | mg/1 |
| N-726 | BERYLLIUM – Total | | mg/1 | 620 | BENZENE | | µg/1 |
| O-314 | BORON – Total | | mg/1 | 604 | CARBON TETRACHLORIDE | | µg/1 |
| P-708 | CADMIUM – Total | | mg/1 | 611 | CHLOROBENZENE | | µg/1 |
| Q-709 | CHROMIUM – Total | | mg/1 | 613 | DICHLOROBENZENE | | µg/1 |
| R-711 | COBALT – Total | | mg/1 | 619 | 1,2-DICHLOROETHANE | | µg/1 |
| S-712 | COPPER – Total | | mg/1 | 603 | 1, 1, 1-TRICHLOROETHANE | | µg/1 |
| T-713 | IRON – Total | | mg/1 | 657 | 2-CHLOROPHENOL | | µg/1 |
| U-714 | LEAD – Total | | mg/1 | 658 | 2, 4-DICHLOROPHENOL | | µg/1 |
| V-716 | MANGANESE – Total | | mg/1 | 663 | PENTACHLOROPHENOL | | µg/1 |
| W-717 | MERCURY – Total | | mg/1 | 664 | 2, 4, 6-TRICHOROPHENOL | | µg/1 |
| X-732 | MOLYBDENUM – Total | | mg/1 | 602 | CHLOROFORM | | µg/1 |
| Y-718 | NICKEL – Total | | mg/1 | 626 | 2, 4-DIMETHYLPHENOL | | µg/1 |
| Z-720 | SELENIUM – Total | | mg/1 | 624 | ETHYL BENZENE | | µg/1 |
| AA-722 | SILVER – Total | | mg/1 | 601 | METHYLENE CHLORIDE | | µg/1 |
| BB-723 | SODIUM – Total | | mg/1 | 607 | TETRACHLOROETHYLENE | | µg/1 |
| CC-734 | THALLIUM – Total | | mg/1 | 621 | TOLUENE | | µg/1 |
| DD-735 | TIN – Total | | mg/1 | 606 | TRICHLOROETHYLENE | | µg/1 |
| EE-736 | TITANIUM – Total | | mg/1 | 525 | HCH (Total) | | µg/1 |
| FF-724 | ZINC – Total | | mg/1 | 530 | CHLORDANE ( Total) | | µg/1 |
| GG-409 | OIL & GREASE | | mg/1 | 507 | DDT (Total) | | µg/1 |
| HH-312 | PHENOLS | | mg/1 | 521 | PCBs (Total) | | µg/1 |
| II-315 | SURFACTANTS (MBAS) | | mg/1 | 512 | ALDRIN | | µg/1 |
| 316 | NONIONIC SURFACTANTS(NID) | | mg/1 | 514 | ENDRIN | | µg/1 |

1/ Report all critical parameters required by the Sanitation Districts and any other critical parameter known to be present in the wastewater. Those parameters required by the Districts but known to be absent from the wastewater may be reported by placing the word absent in the appropriate space. Test procedures must be in accordance with procedures contained in the current edition of STANDARD METHODS, if applicable. Test procedures for priority organics must be run in accordance with the appropriate EPA method.

2/ If values are obtained by measurements or analyses write A in this column. Analysis values must be determined, using representative 24-hour composite samples (unless the parameter is identified by footnote 4/), by a State Certified or Districts Approved Laboratory. If values are obtained by estimate, write E in this column. Estimated values are acceptable for new plants only.

3/ Report flow rates for sampling day.

4/ Grab samples should be acquired with precautions taken to insure that volatile constituents are preserved.

## OTHER CRITICAL PARAMETERS

| IDENT. CODE | PARAMETER | 2/ | QUANTITY VALUES | IDENT. CODE | PARAMETER | 2/ | QUANTITY VALUES |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

_____

(PRINT) Name and Address of Laboratory Preparing Analyses

_____

(PRINT) Name and Address of Company Collecting Wastewater Sample

### CERTIFICATION BY PERMITTEE

I certify, under the penalty of perjury, that I have personally examined, and am familiar with, all of the information in this Critical Parameter Report. Based upon my inquiry of those persons immediately responsible for obtaining the information contained in this Report, I believe that the information is a true and correct representation of the wastewater discharged from the stated discharge point.

Signature of responsible company official: _____     Date _____

Print name of official: _____

Title of person certifying report: _____

*Please submit this report to:*

**INDUSTRIAL WASTE SECTION**
**Sanitation Distrcits of Los Angeles County**
**P.O. Box 4998**
**Whittier, CA 90607**

# COUNTY OF LOS ANGELES

## DEPARTMENT OF PUBLIC WORKS

1540 ALCAZAR STREET
LOS ANGELES, CALIFORNIA 90033
Telephone : (213) 226-8111

THOMAS A. TIDEMANSON, Director
WYNN L. SMITH, Chief Deputy Director
CECIL E. BUGH , Assistant Director

ADDRESS ALL CORRESPONDENCE TO
P.O. BOX 4089
LOS ANGELES, CALIFORNIA 90051

July 22, 1987

IN REPLY PLEASE    WM-1
REFER TO FILE    I-7519-2

Pacifica Chemical, Inc.
132 W. 132nd Street
Los Angeles, CA  90061

Attention   Mr. Hussain Shaikh

Gentlemen:

PACIFICA CHEMICAL INC.
132 WEST 132ND STREET, LOMITA AREA
INDUSTRIAL WASTEWATER DISCHARGE PERMIT(S) NO. 11027 (J)

Enclosed is Industrial Wastewater Discharge Permit(s) (IWDP) regulating disposal
of waste from operations at the subject location. The permit(s) are issued
jointly by the Sanitation Districts of Los Angeles County (SDLAC) and the local
sewering agency (city or county) to satisfy permit requirements of the SDLAC
Wastewater Ordinance and the local agency Industrial Waste and Sanitary Sewer
Ordinance. Additional conditions and limitations have been attached to your
IWDP relating to local agency requirements and are an integral part of that
permit as are any approved plans submitted with your IWDP application. Your
IWDP(s) or copies thereof shall be kept on the premises for which the permit(s)
is issued.

Facilities under IWDP are subject to inspection by both SDLAC and the local
agency. Department of Public Works Industrial Waste Inspectors perform this
function for the local agency with jurisdiction over this IWDP. An annual
industrial waste inspection fee is required to maintain a valid IWDP.

If you have any questions concerning your IWDP, please call Mr. Shiv Gaur of
this office at (213) 226-4016.

Very truly yours,

T. A. TIDEMANSON
Director of Public Works

M. Michael Mohajer
Supervising Civil Engineer III
Waste Management Division

MMM:SG:ct

Enclosure

cc:  SDLAC/Industrial Waste Section

(5) 11-4-86

County of Los Angeles
Department of Public Works
Waste Management Division
P.O. Box 4089, Terminal Annex
Los Angeles, CA 90051

Permit No. 11027 (J)

File No. I-7519-2

Date 7-22-87

INDUSTRIAL WASTE DISPOSAL PERMIT
CONDITIONS AND LIMITATIONS

Part A - ON-SITE DISPOSAL, PUBLIC SANITARY SEWER

1. Disposal of industrial wastewater to the public sanitary sewer system shall be limited to the flow rate indicated below:

   [X] a. Local Sewer. The maximum permitted peak flow rate to the sewer shall be _____16_____ gallons per minute (gpm).

   [ ] b. Trunk Sewer. Maximum permitted daily flow to the sewer shall be no greater than 25% in excess of the value on line 13 of the attached Permit for Industrial Wastewater Discharge.

2. Pretreatment, monitoring and control facilities required under this permit shall consist of the system indicated below:

   [X] a. Sampling point prior to combining industrial wastewater flow with domestic wastewater.
   [X] b. Final gravity separator (clarifier) ___1500___ gallon capacity, __3__ stage.
   [ ] c. pH measurement and recording system.
   [ ] d. Automatic pH control.
   [ ] e. Flow measurement.
   [ ] f. Automatic rainwater diversion system with alarm capable of diverting storm flow in excess of the first 0.10 inch of rain from the sanitary sewer system.
   [X] g. Additional pretreatment/control facilities: Batch neutralization
   _____
   _____

3. Industrial wastewater shall at all times meet the following effluent quality limitations prior to discharge to the sanitary sewer system:

   [X] a. As specified in Part D - Effluent Quality Limitations.
   [ ] b. Additional quality limitations:_____
   _____
   _____

4. The permittee shall submit the following periodic reports:

   [ ] a. Self-monitoring and/or industrial wastewater treatment surcharge reports as may be required by the Sanitation Districts of Los Angeles County. NOTE: These reports are to be submitted directly to the Sanitation Districts.
   [ ] b. Self-monitoring compliance reports as described in Part E of this permit.

5. All required industrial wastewater collection, pretreatment, monitoring, disposal and sampling facilities must be installed in accordance with approved plans and prior to initiating any discharge to the sewer system.

County of Los Angeles, Department of Public Works
Industrial Waste Disposal Permit

6. Discharge of any toxic, flammable, explosive, corrosive, radioactive or nonbiodegradable substance to the sanitary sewer is prohibited except as provided in Part A.3 above.

7. Discharge of uncontaminated cooling water, groundwater, stormwater or surface drainage water to the sanitary sewer is prohibited except as specifically authorized by this permit.

8. Discharge of industrial wastewater to the sanitary sewer with temperatures exceeding 140°F is prohibited.

9. This permit is subject to additional Conditions & Limitations attached: Part B – Wastes Not Authorized for Discharge or Deposit in Part A, Part C – General Conditions and Limitations, Part D – Effluent Quality Limitations, Part E – Self-monitoring and Reporting (only if designated in Part A.4.b).

10. Other:

County of Los Angeles, Department of Public Works
Industrial Waste Disposal Permit

Part B - WASTES NOT AUTHORIZED FOR DISCHARGE OR DEPOSIT IN PART A

1.  Industrial wastes not specifically authorized for on-site pretreatment, storage, deposit, discharge or disposal in Part A of this permit shall be stored in leakproof containers within an area designated on plans approved by the Department of Public Works pending transport to a legal point of disposal.

2.  The permittee shall determine if industrial wastes stored pursuant to Part B.1 above are hazardous wastes as defined in the California Health and Safety Code, Chapter 6.5 and as determined by California Administrative Code, Title 22, Division 4, Chapter 30 and shall manage such wastes as prescribed therein.

3.  Hazardous wastes shall only be removed from the premises under a Uniform Hazardous Waste Manifest unless a variance from such documentation has been granted by the California Department of Health Services (DOHS). Generator copies of the Uniform Hazardous Waste Manifest shall be maintained by the permittee for not less than 180 days or as directed by DOHS.

4.  A copy of the generator's Uniform Hazardous Waste Manifest shall be provided to the Department of Public Works, Engineering Services Division, Solid Waste Management Unit, P.O. Box 2418, Terminal Annex, Los Angeles, CA 90051 within 30 days from removal of such wastes from the permittee's premises. **NOTE: This requirement is in addition to any Self-Monitoring requirement in Part E of this permit when so designated in Part A.**

5.  The permittee shall maintain records of the sources, quantity, name and address of hauler, date hauled, and point of legal disposal for nonhazardous industrial wastes and wastes granted a DOHS variance as described in Part B.3 above. Such records shall be kept a minimum of 180 days. A legal point of disposal is defined as one for which waste discharge requirements have been prescribed by a California Regional Waste Quality Control Board and which is in full compliance therewith or a facility authorized to receive such wastes by the jurisdiction(s) regulating the facility and is in full compliance with all permits, regulations and requirements.

6.  Discharge of industrial wastewater to a channel, stormdrain, stream, river, lake, ocean or other surface waters is prohibited unless authorized by a National Pollutant Discharge Elimination System (NPDES) permit issued by a California Regional Water Quality Control Board or the U.S. Environmental Protection Agency (EPA).

B-1

County of Los Angeles, Department of Public Works
Industrial Waste Disposal Permit

Part C - GENERAL CONDITIONS AND LIMITATIONS

1. A copy of this permit shall be maintained on the premises where it will be available at all times to operating personnel.

2. Industrial waste pretreatment, storage and disposal operations shall be conducted in such a manner that no nuisances are created.

3. The permittee shall allow representatives of interested governmental agencies concerned with the disposal of industrial waste access at any reasonable time to take samples, inspect operations and review any records required by this permit.

4. The permittee shall secure written approval from this Department before making any additions or modifications which may affect the quantity, quality, or method of disposal of industrial waste materials. Requests or plans for additions or modifications to industrial waste treatment facilities or method of disposal shall be submitted for approval to the Department of Public Works, Engineering Services Division, P.O. Box 2418, Terminal Annex, Los Angeles, CA 90051.

5. This permit is subject to suspension or revocation if conditions exist which would justify denial of a permit, if permittee fails to correct unsatisfactory conditions, if any of the Conditions and Limitations of this permit have been violated or if Annual Industrial Waste Inspection Fees, where required, are not paid within 90 days from date of notification.

6. The Director of Public Works may modify this permit by addition, revision, or elimination of conditions and limitations as may be necessary to accomplish the purpose of ordinances and laws covering disposal of waste materials.

7. This permit is valid only for the facility and location named thereon and is not transferable. In the event of any change of ownership, name or control of the industrial waste facilities subject to this permit, the permittee shall notify the Director of Public Works prior to the effective date of such change. Permittee shall also notify the succeeding owner or operator of the existence of this permit by letter, a copy of which shall be forwarded to the Director of Public Works. A new owner shall make application for an Industrial Waste Disposal Permit within 30 days from the date of assuming control of any facility subject to this permit.

8. Facilities subject to this permit shall not be abandoned. Cancellation of this permit may only be authorized pursuant to L.A. County Code Section 20.36.220.

COUNTY OF LOS ANGELES - DEPARTMENT OF PUBLIC WORKS - INDUSTRIAL WASTE DISPOSAL PERMIT

Part D - EFFLUENT QUALITY LIMITATIONS - JOINT OUTFALL SEWERS

| Constituents | Phase I Effluent Limits | Electroplating EPA (Existing Sources) FSES, 40 CFR Part 413 Less than 10,000 GPD | | Point Source Standard 10,000 GPD or more | | Metal Finishing Point Source FSES, 40 CFR Part 433** | |
|---|---|---|---|---|---|---|---|
| | | 1-Day Max, mg/l | Equiv. 30-Day Avg.(1) | 1-Day Max mg/l | Equiv. 30-Day Avg.(1) | 1-Day Max.mg/l | Equiv. 30-Day Avg. mg/l(1) |
| Arsenic | 3 mg/L | — | | — | | — | — |
| Cadmium | 15 mg/L | 1.2 | 0.5 | 1.2 | 0.5 | 0.69 | 0.26 |
| Copper | 15 mg/L | — | | 4.5 | 1.8 | 3.38 | 2.07 |
| Cyanide (Total) | 10 mg/L | — | | 1.9 | 0.55 | 1.20 | 0.65 |
| Cyanide (Free) | — | 5.0 | 1.5 | — | | 0.86 | 0.32 |
| Dissolved Sulfides | .1 mg/L | — | | — | | — | — |
| Lead | 40 mg/L | 0.6 | 0.3 | 0.6 | 0.3 | 0.69 | 0.43 |
| Nickel | 12 mg/L | — | | 4.1 | 1.8 | 3.98 | 2.38 |
| pH Range | Never Lower Than 6 | — | | — | | 6.0 – 9.0 | 6.0 – 9.0 |
| Silver | 5 mg/L | — | | 1.2(2) | 0.5(2) | 0.43 | 0.24 |
| Total Chromium | 10 mg/L | — | | 7.0 | 2.5 | 2.77 | 1.71 |
| Zinc | 25 mg/L | — | | 4.2 | 1.8 | 2.61 | 1.48 |
| Mineral oil and grease (Total) | 75 mg/L | — | | — | | 52 | 26 |
| Floatable oil and grease | Non Visible | | | | | | |
| Temperature | 140°F | | | | | | |
| TOTAL TOXIC ORGANICS (TTO) | — | 4.57 * | — | 2.13 | — | 2.13 | — |
| TOTAL METALS (3) | — | — | | 10.5 | 5.0 | — | — |

(1) For use by integrated facilities in determining alternative limits
(2) Applicable only to subcategory B, electroplating of precious metals
(3) The sum of concentrations or mass of copper, nickel, chromium (total) and zinc

** Compliance date for metals and Cyanide and final TTO is Feb.16,1986

* Compliance date for TTO is July 15, 1986

COUNTY OF LOS ANGELES
DEPARTMENT OF COUNTY ENGINEER-FACILITIES
SANITATION DIVISION

OFFICE CHECK
IBM ( )
Fee Class
Billing ( )

## INDUSTRIAL WASTE SURVEY

City ~~SANTA FE~~ *County*                     I-File No. I- 7519-2

SMD No. _____                         Permit No. 11027 (5)

FIRM NAME PACIFICA CHEMICAL INC.

Address 132 W 132ND ST          Telephone No. _____

between WESTERN and NORMANDIE              TG 63-A3

Contact Name HUSSAIN SHAIKH        Title MGR

Business and processes: (List ALL chemicals used and/or produced) PRODUCTION OF FABRIC

SOFTENER & LIGHT DETERGENTS

_____

Type and Quantity I.W. (List chemical names) RINSATE FROM PRODUCTION

TANKS -

WASTE DISPOSAL:              Sample Taken _____    Parameters _____

   Sewer: (SMD)              San.Dist. _____       Volume _____

   Surface Drainage NONE     Cooling Water _____   Uncontaminated _____

   Ground _____             Holding Tank _____    Level Alarm _____
   Name of Liquid
   Waste Hauler _____                              Other _____

PRETREATMENT FACILITIES:     1500 GAL    Location W SIDE OF BUILDING

   Trap: Standard ✓ I2 3comp    Non-Standard _____

   Other _____                          Sample Box ✓

REQUIREMENTS AND DATA:

   Inspection Freq. _____   Rainwater list _____  Permit Date _____

   New Industry ✓            Resurvey _____        T.C. Requested _____

   Classification _____     SIC No. _____         Disp. Method _____

REMARKS AND RECOMMENDATIONS: No PH SYSTEM. USE BATCH NEUTRALIZATION.

CONSTRUCTED AS PER APPROVED PLANS

Survey by: _____        Date 11-9-87

cs 41                                                    2-80



COUNTY OF LOS ANGELES
DEPARTMENT OF COUNTY ENGINEER
PROJECT PLANNING AND POLLUTION CONTROL DIVISION

TO: *Pacifica Chemical Inc                    Date _April 15, 1988_

LOCATION: _132 W, 132nd Street_              File No. _I-7519-29_

## NOTICE OF COMPLIANCE

The corrections made following issuance of the Notice of Violation

and Order to Comply issued on _June 16, 1981_ for violation of Los Angeles

County Ordinance No. _____ and/or the conditions and limitations of

Industrial Waste Disposal Permit No. _____, satisfy said Notice and

Order.

Department of County Engineer-Facilities
   Sanitation Division · Industrial Waste        C. G. Brisley, Jr., Division Engineer
      4353 Lennox Boulevard
      Lennox, CA. 90304
      419-5650                            By _Robert Hartly_
                                             Robert Hartley

spb  8    * Note previous name
11-76        was Shatt Chemical Corp.

Case 2:19-cv-02123-DMG-AGR   Document 75-1  Filed 02/09/21   Page 381 of 464   Page ID #:

DEPARTMENT OF COUNTY ENGINEER-FACILITIES
SANITATION DIVISION

# NOTICE

Date _Aug. 10, 1990_

To _Mr. MAQ HUSSAIN ShaikH_     File No. _I-7517-29_

Firm Name _Pacifica chemical Inc._     I.W. Permit No. _11027_

Location _137 w. 132nd street, South willowbrook Area_

VIOLATION(S):

☑ Excessive ~~oil/grease~~/solids in pretreatment facilities. _(see below)_
☐ pH of wastewater is outside of established limits.
☐ Rain Diversion System not working properly.
☐ Discharging Industrial Waste to the ground or street.
☐ Pretreatment facilities are in need of repair.

☐ Industrial Waste Facilities are not built according to plans approved by this office.

☐ Annual Industrial Waste Inspection Fee not paid.
Submit fee of $        to:
> L.A. County Engineer
> Cashier Section  Rm. 604
> 550 S. Vermont Ave.
> Los Angeles, CA 90020

☐ Not Having a valid Industrial Waste Discharge Permit.  Submit application and application fee of $        to the office below.

☐ Other: _The excessive solids in the interceptor must be Vacuum pumped and hauled to a legal point of disposal. After the trap is cleaned please call and leave a message for reinspection_

You are directed to have the above violation(s) corrected by _Sept. 10, 1990_

Kenneth R. Kvammen, Division Engineer

Department of County Engineer-Facilities
Sanitation Division - Industrial Waste
4353 Lennox Boulevard
Lennox, CA. 90304
419-5650

By _Robert Hartley_
_Robert Hartley 419-5650-31_

# EXHIBIT 10



# EXHIBIT 11



EXHIBIT

0011

W 132ND ST

SITE

AA-102 ▽ 0.30

LOCATION OF ABANDONED CLARIFIER

IA-102 ▼ 16

IA-101 ▼ 18

IA-104 ▼ 1.6

IA-105 ▼ 14

IA-103 ▼ 5.5

AA-101 (WALL) ▽ 0.40

IA-106 ▼ 7.4

146 W 132ND ST

13301 S MAIN ST

LOCATION OF HISTORICAL MIXING TANKS

132 W 132ND ST

AA-103 ▽ 0.32

145 W 134TH ST

109 W 134TH ST

LEGEND

▽ AMBIENT AIR SAMPLE

▼ INDOOR AIR SAMPLE

20 PCE CONCENTRATION IN AMBIENT AIR (µg/m³)

20 PCE CONCENTRATION IN INDOOR AIR (µg/m³)

------ APPROXIMATE LOCATION OF CEMENTED TRENCH DRAIN

LOCATIONS ARE APPROXIMATE

DRAWN BY: EL    REVISED BY: AW    DATE: 04/04/2016

-N-

SCALE IN FEET
0    30    60

FORMER PACIFICA CHEMICAL SITE
132 WEST 132ND STREET
LOS ANGELES, CALIFORNIA

SITE PLAN SHOWING
PCE IN INDOOR AND AMBIENT AIR

MUREX
environmental, inc

FIGURE
15

# EXHIBIT 12

EXHIBIT
0012

INSPECTOR COPY

# APPLICATION FOR PLUMBING PERMIT

## COUNTY OF LOS ANGELES

### BUILDING AND SAFETY

76A02A
CE 817 (REV. 10/81)

| BUILDING ADDRESS | 132 W. 132nd St. |
| LOCALITY | Gardena |
| NEAREST CROSS ST. | Broadway |
| OWNER | Pacific Chemical Inc. |
| MAIL ADDRESS | Same |
| CITY | Gardena | TEL. NO. |
| CONTRACTOR | Taisho Plumbing Inc. |
| ADDRESS | 2516 E. 1st St. |
| CITY | Los Angeles | TEL. NO. 262-7877 |
| STATE LICENSE NO. 442003 | CLASS C36 |
| FINAL DATE 2-26-86 | DISTRICT |
| FINAL BY | VALIDATION |

| NUMBER | FIXTURE OR ITEM | @ | FEE |
|---|---|---|---|
| | WATER CLOSET | | |
| | BATH TUB | | |
| | SHOWER | | |
| | LAVATORY | | |
| | SINK | | |
| | DISHWASHER | | |
| | CLOTHES WASHER | | |
| | SWIMMING POOL RECEPTOR | | |
| | LAWN SPRINKLER SYSTEM | | |
| | WATER HEATER | | |
| | GAS SYSTEM   OUTLETS | | |
| | OUTLETS OVER 5 PER SYSTEM | | |
| 1 | Chemical Waste Box | 17 | 1050 |
| 1 | Septic Box | 17 | |
| | PLUMBING PERMIT ISSUING FEE $ | | 4.50 |
| | TOTAL FEE | | |

Plan check fee

Plan check applicant
Name
Address
City                                    Tel. No.

### WORKERS' COMPENSATION DECLARATION
I hereby affirm that I have a certificate of consent to self insure, or a certificate of Workers' Compensation Insurance, or a certified copy thereof (Sec. 3800, Lab. C.)

Policy No. WC42-0485-00545  Western Employers

☐ Certified copy is filed with the county building inspection department.
☒ Certified copy is hereby furnished.

Date 2/10/86   Applicant _____

### CERTIFICATE OF EXEMPTION FROM WORKERS' COMPENSATION INSURANCE
(This section need not be completed if the permit is for one hundred dollars ($100) or less.)

I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the Workers' Compensation Laws.

Date _____   Applicant _____

NOTICE TO APPLICANT: If, after making this Certificate of Exemption, you should become subject to the Workers' Compensation provisions of the Labor Code, you must forthwith comply with such provisions or this permit shall be deemed revoked.

### LICENSED CONTRACTORS DECLARATION
I hereby affirm that I am licensed under provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.

License Number 442003   Lic. Class C36
Contractor Taisho Plumbing  Date 2/10/86

☐ I am exempt under Sec. _____

B.&P.C. for this reason _____

Signature _____   Date _____

### OWNER-BUILDER DECLARATION
☐ SINGLE FAMILY
HOME OWNER-BUILDER DECLARATION
I hereby affirm that I am exempt from the Contractor's License law for the following reason (Section 7031.5, Business and Professions Code):

☐ I, as owner of the property, will do the work and the structure is not intended or offered for sale (Section 7044, Business and Professions Code).

### CONSTRUCTION LENDING AGENCY
I hereby affirm that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civ. C.).

Lender's Name _____
Lender's Address _____

I certify that I have read this application and state that the above information is correct. I agree to comply with all County ordinances and State laws regulating Plumbing, and hereby authorize representatives of this County to enter upon the above-mentioned property for inspection purposes.

_____ 2/10/86
Signature of Permittee      Date

SEE REVERSE FOR EXPLANATORY LANGUAGE

LACOUNTYDPW0000011

| APPROVALS | DATE | INSPECTOR'S SIGNATURE |
|---|---|---|
| UNDER SLAB WORK | | |
| ROUGH PLUMBING | | |
| GAS PIPING | | |
| GAS VENT | | |
| HOT WATER HEATER | | |
| PLUMBING FIXTURES | | |
| GAS TEST | | |
| UTILITY CO. NOTIFIED | | |
| FINAL | Enter on Front | |
| INDUSTRIAL WASTE APPROVAL | Robert Bradley 2-11-96 | |

INSPECTOR'S NOTES

INSPECTOR'S NOTES

## OWNER-BUILDER DECLARATION

I hereby affirm that I am exempt from the Contractor's License Law for the following reason (Section 7031.5, Business and Professions Code): Any city or county which requires a permit to construct, alter, improve, demolish, or repair any structure, prior to its issuance, also requires the applicant for such permit to file a signed statement that he is licensed pursuant to the provisions of the Contractor's License Law (Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code) or that he is exempt therefrom and the basis for the alleged exemption. Any violation of Section 7031.5 by any applicant for a permit subjects the applicant to a civil penalty of not more than five hundred dollars ($500):

☐ I, as owner of the property, will do the work, and the structure is not intended or offered for sale. (Sec. 7044, Business and Professions Code: The Contractor's License Law does not apply to an owner of property who builds or improves thereon, and who does such work himself, provided that such improvements are not intended or offered for sale. If, however, the building or improvement is sold within one year of completion, the owner-builder will have the burden of proving that he did not build or improve for the purpose of sale.)

I am exempt under Sec. _____

B & P.C. for this reason. _____

Date. _____

Owner _____

LACOUNTYDPW0000012

# EXHIBIT 13

007187-035776   29

HUSSAIN SHAIKH

132 W 132ND ST

LOS ANGELES   90061

EXHIBIT
0013



## COUNTY OF LOS ANGELES

### DEPARTMENT OF PUBLIC WORKS

900 SOUTH FREMONT AVENUE
ALHAMBRA, CALIFORNIA 91803-1331
Telephone (213) 458-1109

HARRY W. STONE, Director

ADDRESS ALL CORRESPONDENCE TO:
P.O.BOX 1460
ALHAMBRA, CALIFORNIA 91802-1460

# NOTICE OF VIOLATION
## AND
### ORDER TO COMPLY

IN REPLY PLEASE
REFER TO F&E:

035776

Date __3-5-01__     File No. __7187-TD-1519-21__

To __MUKESH DOSHI__     Permit No. __11027__

Site Name __PACIFICA CHEMICAL__     Violation No. _____

Site Address __132 W 132rd St, UNINCORPORATED area__

Mailing Address __2910 E. Ana St.  Pareto Dominguez  90221__

You are hereby directed to correct the following violation(s) of [ ✓ Los Angeles County Code, Title 20 [ ] City of _____ Municipal Code/Ordinance _____ and/or conditions and limitations of Industrial Waste Disposal Permit No. __11027__ .

__Notices were issued on  11-22-00* and  12-29-00**__

__Requesting application for closure of clarifier__

__on permit for non-use.__

__You are required to submit the closure__

__application along with $155 fee—on—Closure__

__application along with $125 fee.__

If you have any questions regarding this matter, please contact __David Dolphin__
Monday through Friday, 8:00 a.m. to 9:30 a.m., at (310) __334-4862__ .

Very truly yours,

HARRY W. STONE
Director of Public Works

BY: _____
ENVIRONMENTAL PROGRAMS DIVISION
WASTE CONTROL ENGINEERING INSPECTOR

DEPARTMENT OF PUBLIC WORKS
ENVIRONMENTAL PROGRAMS DIVISION
24320 S. NARBONNE AVE
LOMITA CA 90717-1184

NOVC.FRM     ✱ NOTICE

✱✱ NOTICE OF
NON COMPLIANCE

PACIFICA CHEMICAL

L.A. COUNTY DPW
DATE COMPILED: 06/25/99
RUN DATE: 06/29/00 18:52:49

HAZARDOUS MATERIALS SYSTEM
IW INSPECTION JOB ORDER
SCHEDULED INSPECTIONS

REPORT: PWB150.001
INSP#: 1000289836
ASSC#: P000011027
PAGE:       1

35770   HUSSAIN SHAIKH

FILE #: 007187 107519   NAME: PACIFICA CHEMICAL INC
ADD: 132 W 132ND ST
LOS ANGELES, CA 90061                AREA: 29    SMD: 15
XSTREET: BROADWAY                 THOMAS GUIDE: 0064-A1
CONTACT: MUKESH DOSHI                          TEL: 310 532 9291

PROC: STD          SAMPLE REQUIRED? N

INSP INFO: CLARIFIER OUTSIDE FRONT OF BUILDING IN PARKING AREA.

---

PERM TYPE: I 01      OPERATING PERMIT-LOCAL SEWER     STATUS: PERMITTED
JURIS: J          JOINT PERMIT W/CSDLAC
INDUSTRY: 111     CHEMICAL PLANTS
FACILITY: 4E      >1250 GAL, 3 COMP, PRECAST
SIC: 2842         POLISHES & SANITATION GOODS
RDS:                                              RDS AREA:          SQ FT

            FREQUENCY    LAST PERFORMED    NEXT DUE
INSPECTION      03                         07/22/00
SAMPLE          00
SELF-MONITOR    00

ASSGN TO: LENNOX FIELD OFFICE            SECT: FIELD INSPECTION UNIT

==================================================================

RESULTS:    Site  vacant  -  Pacifica  Chemical  has
            moved  out

            Will send notice to property owner

REMARKS:

INSPECTOR: Edward Calleros     INSPECTION DATE: 9-14-00

DISP:

Case 2:19-cv-02123-DMG-AGR Document 75-1 Filed 02/09/21 Page 393 of 464 Page ID #:4165



# COUNTY OF LOS ANGELES

## DEPARTMENT OF PUBLIC WORKS

900 SOUTH FREMONT AVENUE
ALHAMBRA, CALIFORNIA 91803-1331
Telephone: (818) 458-5100

HARRY W. STONE, Director

## NOTICE

IN REPLY PLEASE
REFER TO FILE

Date __Sept 15, 2000__          File No. __7187 - 35276__

To __Hussain M Shaikh__          Permit No. ____

Site Name __Pacifica Chemical Inc.__   Violation No. __V000 300786__

Site Address __132 W. 132nd St. LA CA 90061-1619__

Mailing Address ____

### PERMIT REQUIRED

It has come to the attention of this office that you are utilizing or are presently responsible for the maintenance of industrial waste pretreatment or disposal facilities at the subject site. You are required to submit the items checked below, within 30 days from the date of this Notice, to continue use of your facility:

[X] Complete and sign the enclosed permit application.

[ ] Complete and sign the enclosed Additional Information Questionnaire for Permit Applicants.

[X] An application fee of $ __55.00__, and Plan check fee of $ ____. Total $ __55.00__ payable to the [ ] County of Los Angeles Department of Public Works, [ ] City of ____.

[X] Other __Since Pacifica Chemical Inc has moved out you are now responsible for the site as the property owner__

An Annual Industrial Waste Inspection Fee may be required upon permit issuance. If you have any questions regarding this matter, please contact __Edward Calleros__ Monday through Friday, 8:00 a.m. to 9:30 a.m., at (310) __534-4862__.

Very truly yours,

HARRY W. STONE
Director of Public Works

BY: __Edward Calleros__
ENVIRONMENTAL PROGRAMS DIVISION
WASTE CONTROL ENGINEERING INSPECTOR

Enc.

FERM. RQD

DEPARTMENT OF PUBLIC WORKS
ENVIRONMENTAL PROGRAMS DIVISION
24320 S. NARBONNE AVE
LOMITA CA 90717-1194

```
TRANS: FILE                    HMS FILE DISPLAY/UPDATE
PROG: HMC050
```

ACTION: A (A)DD   (C)HANGE   (D)ELETE   (B)ROWSE
FILE #: 7187          NAME: HUSSAIN SHAIKH              SEC? ___   STAT:
STREET #: 132  FR: W    DR:      NAME: 132nd            SF: S7 .   UN:
       CITY: LOS ANGELES          ZIP: 90061   AREA: 29   TEL: ___ ___ ___
XSTREET: MAIN ST.                         RES/TR?
BUS TYPE: ___                      OWN TYPE: ___
FIN RESP: ___                      EQUAL #: _____
MAIL NAME: HUSSAIN SHAIKH
MAIL AD1: 132 W. 132nd St.              AD2: _____
   CITY: LOS ANGELES        ST: CA   ZIP: 90061 1619   TEL: ___ ___ ___

CONTACTS: PRIMARY DAY:     HUSSAIN SHAIKH              TEL: ___ ___ ___
              NGT: _____            TEL: ___ ___ ___
   SECONDARY DAY: _____            TEL: ___ ___ ___
              NGT: _____            TEL: ___ ___ ___
# OF EMP:  FULL TIME: _____   PART TIME: _____   BUS YRS: _____

     IW CT:          TANK CT:        ADD DT:          CLUP? N
  ACT IW CT:     ACT TANK CT:
                               LAST TRAN/DATE/OPER:

(C) COPYRIGHT 1991, COUNTY OF LOS ANGELES, ALL RIGHTS RESERVED

007187-I07519 29

PACIFICA CHEMICAL INC

132 W 132ND ST

LOS ANGELES 90061

FN 7187 - I07519





July 20, 2004

County of Los Angeles Public Works
900 S. Freemont Avenue
Alhambra, Ca 91803

To Whom It May Concern:

As of May 8, 2003 we no longer own the property at 132 W 132nd Street Los
Angeles, Ca 90061. Please make the appropriate changes to your records.

If you have further questions, you can reach me at my office any time. (310)
464-8900.

Thank you.

Sincerely,

Hussain M. shaikh

COUNTY OF LOS ANGELES
DEPARTMENT OF PUBLIC WORKS
Environmental Programs Division
900 S. Fremont Avenue
Alhambra, CA 91803-1331
Telephone: (626) 458-3517 Fax: (626) 458-3569

| APP. NO | 419810 |
|---|---|
| FILE | 7187- I07519 |
| FEE $ | 36.60 | AREA 29 |
| CHECK ☒ | CASH ☐ |

## APPLICATION FOR CLOSURE

**FACILITY/SITE INFORMATION & ADDRESS**

| FACILITY/SITE NAME PACIFIC CHEMICAL Inc | C/O |
|---|---|
| ADDRESS 132 W. 132ND ST | CROSS STREET |
| CITY L.A STATE CA ZIP CODE 7006 | PHONE 310-464-8900 |
| EMERGENCY CONTACT HUSSAIN SHAIKH | PHONE 310-464-8400 |

**PROPERTY OWNER INFORMATION & ADDRESS**

| NAME HUSSAIN SHAIKH | C/O |
|---|---|
| MAILING ADDRESS 925 E ARTESIA S | |
| CITY CARSON STATE CA ZIP CODE 90746 | PHONE 310-464-8900 |

**CONTRACTOR INFORMATION & ADDRESS**

| NAME | OWNER/OPERATOR AS CONTRACTOR C/O |
|---|---|
| MAILING ADDRESS | CONTRACTOR LICENSE NO. |
| CITY STATE ZIP CODE | PHONE |

**CLOSURE REQUESTED**
☐ PERMANENT, FACILITY REMOVAL (SEE CONDITIONS A, B, C, E, and F on back)
☒ PERMANENT, CLOSURE IN PLACE (SEE CONDITIONS A, B, C, D, and F on back)

**DESCRIPTION OF WASTE GENERATING OPERATIONS/FACILITIES TO BE CLOSED**

| TYPE OF BUSINESS RETILLB ITD | IW PERMIT NUMBER P0000I1027 |
|---|---|
| FEDERAL SIC CODE 2842 | WASTEWATER PRODUCING OPERATIONS |
| FACILITY(S) TO BE CLOSED 132 W 132ND ST. L.A 90061 | |
| ATTACH PLOT PLAN SHOWING LOCATION OF FACILITIES TO BE CLOSED | |

**COMPLETE THE FOLLOWING:**

| | YES | NO |
|---|---|---|
| HAS AN UNAUTHORIZED RELEASE EVER OCCURRED AT THIS SITE? | ☐ | ☒ |
| HAVE STRUCTURAL REPAIRS EVER BEEN MADE TO THIS FACILITY? | ☐ | ☒ |
| WILL NEW FACILITIES BE INSTALLED AFTER CLOSURE? | ☐ | ☒ |
| WILL INDUSTRIAL WASTE GENERATING OPERATION REMAIN AFTER CLOSURE? | ☐ | ☒ |

>>>IF THE ANSWER TO ANY QUESTION ABOVE IS YES, ATTACH EXPLANATION<<<

**NOTICE: WASTEWATER AND/OR RESIDUES THAT MAY BE LEFT IN FACILITIES TO BE CLOSED AND CONTAMINATED SOILS MAY BE A HAZARDOUS WASTE WHICH MUST BE TRANSPORTED AND DISPOSED OF PURSUANT TO CHAPTER 6.5, OF THE CALIFORNIA HEALTH & SAFETY CODE. FAILURE TO COMPLY MAY BE PROSECUTED AS A FELONY VIOLATION.**

BY SIGNING BELOW AND UNDER PENALTY OF PERJURY, THE APPLICANT CERTIFIES THAT ALL STATEMENTS AND DISCLOSURES ABOVE ARE TRUE AND CORRECT AND THAT THEY HAVE READ AND AGREE TO ABIDE BY THIS CLOSURE AUTHORIZATION AND ALL CONDITIONS AND LIMITATIONS ON THE REVERSE SIDE OF THIS FORM AND ADDITIONAL CONDITIONS THAT MAY BE ATTACHED.

| APPLICANT'S SIGNATURE | DATE 7/14/04 |
|---|---|
| APPLICANT'S NAME (PRINT) HUSSAIN SHAIKH | PHONE 310-464-8900 |
| AS: ☒ OWNER ☐ OPERATOR ☐ CONTRACTOR | |

### To be completed by DPW only

PURSUANT TO SECTION 20.36.220, LOS ANGELES COUNTY CODE*, PERMISSION IS HEREBY GRANTED TO PROCEED WITH THE CLOSURE DESCRIBED ABOVE SUBJECT TO THE ATTACHED CONDITIONS AND LIMITATIONS. THIS AUTHORIZATION EXPIRES 180 DAYS FROM THE DATE BELOW. YOU MUST CONTACT THE FIELD OFFICE INDICATED ON THE ENCLOSED NOTIFICATION REQUIREMENTS SHEET NO LATER THAN 72 HOURS PRIOR TO THE START OF WORK. PLEASE NOTE THAT INSPECTORS CAN BE CONTACTED FROM 8:00 a.m. to 9:30 a.m. MONDAY THROUGH FRIDAY ONLY.

SOIL SAMPLING REQUIRED: ☐ NO ☒ YES (SEE ATTACHED)

JAMES A. NOYES
Director of Public Works

LACC, Title 20, Div 2; Ord 2002-0074

BY Zachelle Buelle DATE 7/27/04

* ☐ CITY MUNICIPAL SECTIONS APPLY.

Complete the Attached Certification of Compliance with Los Angeles County Lobbyist Ordinance

IWDP-DPW 2 Rev 3/02

# AUTHORIZATION FOR CLOSURE
# INDUSTRIAL WASTE CONTROL PROGRAM
## CONDITIONS AND LIMITATIONS

### A. GENERAL

1. This closure authorization is limited to closure of industrial wastewater pretreatment facilities NOT permitted as hazardous waste treatment units pursuant to Chapter 6.5, California Health & Safety Code, or underground storage tanks pursuant to Title 11, Division 4, Los Angeles County Code.

2. All work shall be carried out in full compliance with all applicable Federal, State and local laws, ordinances, rules and regulations.

3. The Environmental Programs Division (EPD) shall be notified in writing 30 days in advance of any facility closure unless this requirement is specifically waived by the Director of Public Works.

4. The applicant shall demonstrate that no pollution or nuisance will be created by the proposed closure.

5. All fees due to EPD for the operation and/or maintenance of the facility subject to closure through the date of closure shall be paid.

6. A fee pursuant to Section 20.36.270, Los Angeles County Code, or applicable city code shall accompany this application.

### B. PRIOR TO STARTING WORK

1. All wastewater generating operations tributary to the facility to be closed shall be terminated or directed to alternative approved facilities.

2. All accumulated industrial and/or hazardous wastes shall be removed from the industrial waste pretreatment facility.

3. All required plumbing and/or sewer abandonment permits shall be obtained from the Building Official prior to capping any drains, sewers or private sewer systems.

4. Inspection notification(s) shall be made as directed by this approval.

### C. APPLICABLE TO ALL CLOSURES

1. Sewer laterals serving the wastewater pretreatment facility to be closed and any open sewer connections shall be removed or severed and capped immediately downstream from such facility and shall include the removal of sample box, cleanout, trap and vent associated with the facility.

2. The severed outlet line shall be capped off with a fast-setting cement or other approved equivalent material.

3. All inlets, floor sinks, drains, trenches or other fixtures tributary to the pretreatment facility shall be removed or permanently sealed with a fast setting cement or other approved equivalent material.

4. If at any time evidence of an unauthorized discharge from the facility or tributary facilities is discovered, the applicant shall notify EPD within 24 working hours and shall take all necessary steps to secure any contaminated soils or residues.

5. No work shall be covered until all required inspections have been made.

### D. PERMANENT CLOSURE IN PLACE

1. Closure in place is allowed only when specified by this authorization.

2. Prior to backfill, any samples required by this approval shall be taken.

3. Upon completion of all work above, the pretreatment facility backfilled with sand, pea gravel other approved material compacted to within a maximum of 4 inches below grade.

4. The remaining 4 inches (minimum) shall be filled with concrete or equivalent approved material.

5. All backfill operations shall be carried out in compliance and in accordance with applicable Building Code requirements.

### E. PERMANENT CLOSURE BY REMOVAL

1. Upon completion of all work required by Conditions A through C above, the pretreatment facility shall be excavated and transported to a legal point of disposal.

2. Prior to backfill, any samples required by this approval shall be taken.

3. All excavation and backfill operations shall be carried out in compliance with applicable Building Code requirements.

### F. REQUIRED REPORTS

1. Within 30 days of the date of closure, the applicant shall furnish EPD a closure report describing all work done, results of any required sampling, disposition of any contaminated soils or materials found and evidence of compliance with Conditions B1, B2, B3, C4, D2, E1 and E2.

2. The closure report shall include any additional requirements made a part of this approval.

---

## CERTIFICATION OF COMPLIANCE WITH
## LOS ANGELES COUNTY LOBBYIST ORDINANCE

This is to certify that I, as permit applicant, for the project located at  132  W.  132ND  ST

**LOCATION ADDRESS**

am familiar with the requirements of Los Angeles County Code Chapter 2.160 et seq., (relating to the Los Angeles County Lobbyist Ordinance) and all persons acting on behalf of myself have complied with and will continue to comply therewith through the application process.

NUSSAIN SHAIKH.
**APPLICANT (PRINT NAME)**

_(signature)_
**APPLICANT SIGNATURE**

PACIFICA CHEMICAL
**COMPANY NAME (If employed by an entity/agency)**

**DATE**

IWDP.DPW.Z Rev. 3/92

# EXHIBIT 14

SANITATION DISTRICTS OF LOS ANGELES COUNTY
Charles W. Carry, Chief Engineer & General Manager
For information please call (213) 699-7411 ext. 2900

PAGE 01 OF 01

INDUSTRIAL WASTEWATER
SELF MONITORING REPORT

PERMIT NO.
011027

SURCHARGE ACCOUNT NO
1895971

Report due no later than 07/15/92

| | | |
|---|---|---|
| 1. Name of Company Having Wastewater Discharge | | 2. Has the Ownership or Operation Changed Since the Last Report? |
| PACIFICA CHEMICAL INC | 6 | Yes ☐ No ☑ |
| 3. Address of Wastewater Discharge | | 4. Name of Industrial Wastewater Contact  Ms. MONTES MACEDON | 5. Phone No. 532-4241 (213) 322-3381 |
| 132 W 132 ST LOS ANGELES 90061 | | | |
| 6. Mailing Address (if Different From Above) | | 7. SIC No(s) 2842, 2844 | 8. Reporting Period 01/01/92 - 06/30/92 |
| 132 W 132ND ST LOS ANGELES CA 90061 | | | |
| 9. (Print) Name of Company Collecting Wastewater Sample | | 10. (Print) Sample Date  07-20 & 09-17-92 | 11. (Print) Sample Location(s)  sample box |
| Chem Pro Laboratory, Inc | | | |

SAMPLING METHOD / TEST RESULTS [2] / LAB ID CODE [3]

| CODE | PARAMETER ID | SAMPLING METHOD | TEST RESULTS [2] | LAB ID CODE [3] |
|---|---|---|---|---|
| 701 | WASTEWATER FLOW, TOTAL (GPD) | GRAB | 7.4 | 10112 |
| 101 | PH (UNITS) | COMPOSITE | 260 | 10112 |
| 151 | SUSPENDED SOLIDS (MG/L) | GRAB | <0.05 | 10112 |
| 252 | SOLUBLE SULFIDE (MG/L) | COMPOSITE | 1.45 | 10105 |
| 315 | SURFACTANTS (MBAS) (MG/L) | COMPOSITE | 5,500 | 10112 |
| 400 | TOTAL COD (MG/L) | GRAB | <10 | 10112 |
| 408 | OIL & GREASE (MG/L) | GRAB | <10 | 10112 |
| 607 | TETRACHLOROETHYLENE (UG/L) | | | |

CERTIFICATION BY PERMITEE

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information presented. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Signature of responsible company officer  _____   Date 10/9/92

Print name of officer  HUSSAIN M SHAIKH   Title PRESIDENT

Please submit this report to:   Sanitation Districts of Los Angeles County, Industrial Waste Section, P.O. Box 4998, Whittier, CA 90607

EXHIBIT
0014

SANITATION DISTRICTS OF LOS ANGELES COUNTY
Charles W. Carry, Chief Engineer & General Manager
For information please call (310) 699-7411 ext. 2906

**INDUSTRIAL WASTEWATER
SELF MONITORING REPORT**

Report due no later than   01/15/92

PAGE 01 OF 01
PERMIT NO.
SURCHARGE ACCOUNT NO.   011027
1895971

| | |
|---|---|
| LACSD USE ONLY | Rec'd 1·15·93 ⟨sh⟩ |
| DATE RECEIVED | |

1. Name of Company Having Wastewater Discharge
PACIFICA CHEMICAL INC          C

3. Address of Wastewater Discharge
132 W 132ND ST LOS ANGELES CA 90061

5. Mailing Address (If Different From Above)
132 W 132ND ST LOS ANGELES CA 90061

7. (Print) Name of Company Collecting Wastewater Sample
Chem Pro Laboratory, Inc.

2. Has the Ownership or Occupancy Changed Since the Last Report?
☐ Yes   ☒ No

4. Name of Industrial Wastewater Contact
MR MONTES MACEDONI

5. Phone No.   (213) 532-889

6. Site No.(s)   2842, 2844

7. Billing Period   From: 07/01/91   To: 12/31/91

9. (Print) Sample Date   11-17-1992

11. (Print) Sample Location(s)   sample box

14. Type of Composite Sample
☐ Time Composite
☐ Flow Proportioned Composite

12. Daily Wastewater Discharge For Reporting Period (Gal.)
Average:   6,700
Maximum:   10,000

13. Method For Determining Wastewater Flow For Sampling Day (201, 202)
☐ Direct Measurement
☒ Adjusted Metered Water Supply
☐ No Discharge During Reporting Period

15. NOTE:

| CODES | PARAMETER(S) | SAMPLING METHOD | TEST RESULTS (2) | LAB I.D. COD |
|---|---|---|---|---|
| | | | 6,700 | 0C001 |
| 201 | WASTEWATER FLOW, (TOTAL)(GPD) | GRAB | 7.9 | 10112 |
| 101 | PH (UNITS) | COMPOSITE | 16 | 10112 |
| 151 | SUSPENDED SOLIDS (MG/L) | GRAB | < 0.05 | 10112 |
| 252 | SOLUBLE SULFIDE (MG/L) | COMPOSITE | 1.68 | 10196 |
| 315 | SURFACTANTS (MBAS) (MG/L) | COMPOSITE | 120 | 10112 |
| 403 | TOTAL COD (MG/L) | GRAB | 4 | 10112 |
| 408 | OIL & GREASE (MG/L) | GRAB | 0.006 | 10112 |
| 607 | TETRACHLOROETHYLENE (UG/L) | | | |

1) Report the test results from the most recent sample collected within the reporting period and include all laboratory test sheets with the self-monitoring report form.
2) Test results are valid only if the correct sampling method is observed and the laboratory analysis is performed by a State or Sanitation Districts' approved laboratory.
3) Indicate the appropriate laboratory certification I.D. Code for each testing parameter.

**CERTIFICATION BY PERMITTEE**

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Signature of responsible company official _____   Date: 1/14/93

Print name of official  HUSSAIN   M. SHAIKH   Title: PRESIDENT

Please submit this report to:   Sanitation Districts of Los Angeles County   Industrial Waste Section   P.O. Box 4998   Whittier, CA 90607

LACOUNTYSANITATION0000160

SANITATION DISTRICTS OF LOS ANGELES COUNTY
Charles W. Carry, Chief Engineer & General Manager
For information please call (310) 699-7411 ext. 2900

**INDUSTRIAL WASTEWATER
SELF MONITORING REPORT**

PAGE 01 OF 01
PERMIT NO.

SURCHARGE ACCOUNT NO. 1895971

| LACSD USE ONLY | | |
|---|---|---|
| LAB REPORT | SIGNATURE | |
| Y ☒ N ☐ | Y ☒ N ☐ | C |
| DATE RECEIVED | INITIALS | |
| 5/3/93 | CH | |

Report due no later than 07/15/93

2. Has the Ownership or Occupancy Changed Since the Last Report?  ☐ Yes  ☒ No

1. Name of Company Having Wastewater Discharge
PACIFICA CHEMICAL INC          C

4. Name of Industrial Wastewater Contact       5. Phone No.
MR MONTES MACEDONI      (013) 532-8881

3. Address of Wastewater Discharge
132 W 132ND ST LOS ANGELES CA 90061

6. Mailing Address (if Different From Above)       7. Sic No(s).       8. Reporting Period
132 W 132ND ST LOS ANGELES CA 90061      2842, 2844      From 04/01/93 To 06/30/93

9. (Print) Name of Company Collecting Wastewater Sample      10. (Print) Sample Date      11. (Print) Sample Location(s)
Chem Pro Laboratory, Inc.      02-22-1993      sample box

10. Daily Wastewater Discharge For Reporting Period (Gal.)

13. Method For Determining Wastewater Flow For Sampling Day (201, 202)
☐ Direct Measurement
☐ Adjusted Metered Water Supply
☐ No Discharge During Reporting Period

14. Type of Composite Sample
☐ Time Composite
☐ Flow Proportioned Composite

Maximum _____
Minimum _____

15. NOTE:

| CODE | PARAMETER (1) | SAMPLING METHOD | TEST RESULTS (2) | LAB ID CODE (3) |
|---|---|---|---|---|
| | | | | 00001 |
| 701 | WASTEWATER FLOW, TOTAL(GPD) | GRAB | 8.4 | 10112 |
| 101 | PH (UNITS) | COMPOSITE | 90 | 10112 |
| 151 | SUSPENDED SOLIDS (MG/L) | GRAB | <0.05 | 10112 |
| 252 | SOLUBLE SULFIDE (MG/L) | COMPOSITE | 37.65 | 10196 |
| 315 | SURFACTANTS (MBAS) (MG/L) | COMPOSITE | 420 | 10113 |
| 403 | TOTAL COD (MG/L) | GRAB | 97 | 10112 |
| 408 | OIL & GREASE (MG/L) | GRAB | 7 | 10112 |
| 607 | TETRACHLOROETHYLENE (UG/L) | | | |

(1) Report the test results from the most recent sample collected within the reporting period and include all laboratory test sheets with the self-monitoring report form.
(2) Test results are only valid if the correct sampling method is observed and the laboratory analysis is performed by a State or Sanitation Districts' approved laboratory.
(3) Indicate the accompanying laboratory certification LEF Code for each testing parameter.

**CERTIFICATION BY PERMITEE**

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Signature of responsible company official _____

Print name of official  HUSSAIN M. SHAISH      Title  PRESIDENT      Date 4/28/93

Please submit this report to:  Sanitation Districts of Los Angeles County, Industrial Waste Section, P.O. Box 4998, Whittier, CA 90607

LACOUNTYSANITATION0000152

SANITATION DISTRICTS OF LOS ANGELES COUNTY
Charles W. Carry, Chief Engineer & General Manager

PAGE 01 OF 01

PERMIT NO.
011027

SURCHARGE ACCOUNT NO.

INDUSTRIAL WASTEWATER
SELF MONITORING REPORT

1895971

Report due no later than  01/15/94

1. Name of Company Having Wastewater Discharge
PACIFICA CHEMICAL INC

2. Phone No.
(213) 532-6331

3. Address of Wastewater Discharge
132 W 132ND ST LOS ANGELES CA 90061

5. Name of Insuer's Wastewater Contact
MR MONTES MACEDONI

6. Mailing Address of (Different From Above)
132 W 132ND ST LOS ANGELES CA 90061

7. Schedule
2342, 2344

8. Reporting Period
From  07/01/93 to 12/31/93

9. Print Name of Company Collecting Wastewater Sample
Chem Pro Laboratory, Inc.

8. Print Sample Date
09-23-1993

9. Print Sample Type
sample box

| CODE | PARAMETER (1) | SAMPLING METHOD | TEST RESULTS (2) | LAB ID CODE (3) |
|------|---------------|-----------------|------------------|-----------------|
| 701 | WASTEWATER FLOW, TOTAL(GPD) | GRAB | 8.5 | 10112 |
| 101 | PH (UNITS) | COMPOSITE | 13 | 10112 |
| 151 | SUSPENDED SOLIDS (MG/L) | GRAB | <0.05 | 10112 |
| 252 | SOLUBLE SULFIDE (MG/L) | COMPOSITE | <0.01 | 10105 |
| 315 | SURFACTANTS (MBAS) (MG/L) | COMPOSITE | 110 | 10112 |
| 403 | TOTAL COD (MG/L) | GRAB | <2 | 10112 |
| 408 | OIL & GREASE (MG/L) | GRAB | 330 | 10112 |
| 607 | TETRACHLOROETHYLENE (UG/L) | | | |

CERTIFICATION BY PERMITTEE

Signature of responsible company officer  MUKESH DOSHI

Title  CONTROLLER

Date  10/25/93

SANITATION DISTRICTS OF LOS ANGELES COUNTY
Charles W. Carry, Chief Engineer & General Manager
For information please call (310) 699-7411 ext. 2000

PAGE 01 OF 01

PERMIT NO.

**INDUSTRIAL WASTEWATER
SELF MONITORING REPORT**

SURCHARGE ACCOUNT NO.  11027

1895971

Report due no later than  07/15/94

1. Name of Company Having Wastewater Discharge
PACIFICA CHEMICAL INC

2. Has the Ownership or Occupancy Changed Since the Last Report?
☐ Yes   ☒ No

3. Address of Wastewater Discharge
132 W 132ND ST LOS ANGELES CA 90061

4. Name of Industrial Wastewater Contact
MR. MONTES-MACEDON

5. Phone No.
(213) 532-8831

6. Mailing Address (If Different From Above)
132 W 132ND ST LOS ANGELES CA 90061

7. Site No.(s)
28421 7344

8. Reporting Period
From: 01/01/94  To: 06/30/94

9. (Print) Name of Company Collecting Wastewater Sample
CHEM PRO LABORATORY, INC

10. (Print) Sample Date
7-7 TO 7-8-94

11. (Print) Sample Location(s)

12. Daily Wastewater Discharge For Reporting Period (Gal.)

Average:

Maximum:

13. Method For Determining Wastewater Flow For Sampling Day (701, 705)
☐ Direct Measurement
☐ Adjusted Metered Water Supply
☐ No Discharge During Reporting Period

SAMPLE BOX
14. Type of Composite Sample
☐ Time Composite
☐ Flow-Proportioned Composite

15. NOTE:

| PARAMETER (1) | SAMPLING METHOD | TEST RESULTS (2) | LAB ID CODE (3) |
|---|---|---|---|
| 701 | WASTEWATER FLOW, TOTAL (GPD) | GRAB | 9.3 | 10112 |
| 101 | PH (UNITS) | COMPOSITE | 8.0 | 10112 |
| 151 | SUSPENDED SOLIDS (MG/L) | GRAB | < 0.05 | 10112 |
| 252 | SOLUBLE SULFIDE (MG/L) | COMPOSITE | 11 | 10196 |
| 315 | SURFACTANTS (MBAS) (MG/L) | COMPOSITE | 4000 | 10112 |
| 403 | TOTAL COD (MG/L) | GRAB | 710 | 10112 |
| 408 | OIL & GREASE (MG/L) | GRAB | < 500 | 10112 |
| 607 | TETRACHLOROETHYLENE (UG/L) | GRAB | | |

(1)   Report the test results from the most recent sample collected within the reporting period and include all laboratory test sheets with the self-monitoring report form.
(2)   Test results are valid only if the correct sampling method is observed and the laboratory analysis is performed by a State or Sanitation Districts' approved laboratory.
(3)   Indicate the appropriate laboratory certification I.D. Code for each testing parameter.

**CERTIFICATION BY PERMITEE**

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Signature of responsible company official

Date 8/15/94

Print name of official  MUKESH DOSHI

Title  CONTROLLER

Please submit this report to:   Sanitation Districts of Los Angeles County   Industrial Waste Section   P.O. Box 4998   Whittier, CA 90607

LACOUNTYSANITATION0000142



```
                    Laboratory Technical Data System        11/02/1994
                         SJC WQL Test Results                Page    1

Sample No: SJ81773        Sample Location: 3-IW11-027

Requestor: MARTYN         Completion Date: 10/14/94

Charge No: TS14905BM00    Approved By: FG        Sample Type: IWS

Grab Date and Time:  09/19/94  10:36

Sample Description:
    PACIFICA CHEMICAL, 132 W. 132ND ST., LAC (SBX)


No. Test  Description            Result   Unit of Measure   Footnote

1. 408   OIL & GREASE            104      MG/L    EXTRACT      46
2. 607   TETRACHLOROETHYLENE      6.1     UG/L

Footnotes:  46 - CENTRIFUGED

Notes:  VOCs 09/28/94; TCE: 56UG/L; ETHYLBENZENE: APPROX. 340UG/L
        ACETONE: APPROX. 1900UG/L; UNIDENTIFIED NONHALOGEN VCC'S
```

LACOUNTYSANITATION0000064

RETURNED

LACSD USE ... Reserve, Carry, Chief Engineer & General Manager

For information please call (310) 699-7411 ext. 2900

**INDUSTRIAL WASTEWATER
SELF MONITORING REPORT**

PAGE 01 OF 01

PERMIT NO.

**011027**
SURCHARGE ACCOUNT NO.

**1895971**

| LAB REPORT | SIGNATURE | 1/27/99 Signature missing |
|---|---|---|
| Y ☑ N ☐ | Y ☐ N ☐ | |
| DATE RECEIVED | INITIALS | |
| 2.3.99 | | |

Report due no later than **01/15/1999** ~~1999~~

| 1. Name of Company Having Wastewater Discharge | 2. Has the Ownership or Occupancy Changed Since the Last Report? |
|---|---|
| PACIFICA CHEMICAL INC          C | ☐ Yes   ☒ No |

| 3. Address of Wastewater Discharge | 4. Name of Industrial Wastewater Contact | 5. Phone No. |
|---|---|---|
| 132 W 132ND ST LOS ANGELES CA 90061 | MR. MONTES MACEDON | (213) 532-8881 |

| 6. Mailing Address (If Different From Above) | 7. Sic No.(s) | 8. Reporting Period From ~~01/01/1999 06/30/1999~~ 7/1/98 - 12/31/98 |
|---|---|---|
| 132 W 132ND ST LOS ANGELES CA 90061 | 2842, 2844 | |

| 9. (Print) Name of Company Collecting Wastewater Sample | 10. (Print) Sample Date | 11. (Print) Sample Location(s) |
|---|---|---|
| CHEM PRO LABORATORY, INC. | 10-26 TO 10-27-98 | SAMPLE BOX |

| 12. Daily Wastewater Discharge For Reporting Period (Gal.) | 13. Method For Determining Wastewater Flow For Sampling Day (Z01, Z02) | 14. Type of Composite Sample |
|---|---|---|
| Average: 11,000 | ☐ Direct Measurement | ☒ Time Composite |
| Maximum: 17,000 | ☒ Adjusted Metered Water Supply | ☐ Flow Proportioned Compos |
| | ☐ No Discharge During Reporting Period | |

15. NOTE:

| CODE | PARAMETER (1) | SAMPLING METHOD | TEST RESULTS (2) | LAB ID CODE ( |
|---|---|---|---|---|
| Z01 | WASTEWATER FLOW, TOTAL(GPD) | | 11,000 | |
| 101 | PH (UNITS) | GRAB | 8.6 | 10112 |
| 151 | SUSPENDED SOLIDS (MG/L) | COMPOSITE | 40 | |
| 252 | SOLUBLE SULFIDE (MG/L) | GRAB | <0.05 | |
| 315 | SURFACTANTS(MBAS) (MG/L) | COMPOSITE | 1.4 | 10196 |
| 403 | TOTAL COD (MG/L) | COMPOSITE | 130 | 10112 |
| 408 | OIL & GREASE (MG/L) | GRAB | 8.4 | |
| 607 | TETRACHLOROETHYLENE (UG/L) | GRAB | ≤25 | |

(1) Report the test results from the most recent sample collected within the reporting period and include all laboratory test sheets with the self-monitoring report form.
(2) Test results are valid only if the correct sampling method is observed and the laboratory analysis is performed by a State or Sanitation Districts' approved laboratory.
(3) Indicate the appropriate laboratory certification I.D. Code for each testing parameter.

**CERTIFICATION BY PERMITEE**

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Signature of responsible company official: _____     Date: 1/28/99

Print name of official: MUKESH DOSHI     Title: Controller

Please submit this report to: Sanitation Districts of Los Angeles County   Industrial Waste Section   P.O. Box 4998   Whittier, CA 90607

**CHEM PRO LABORATORY, INC.**

WATER TREATMENT
STATE CERTIFIED LAB
POLLUTION MONITORING
WASTE WATER ANALYSIS

CHEMICAL ENGINEERS
941 West 190th Street • Gardena • California 90248-4398



(310) 532 - 8611
(213) 770 - 8515
(714) 530 - 6623
FAX: (213) 770 - 4403

**CLIENT**   Pacifica Chemical,Inc.
132 W. 132nd St
Los Angeles, CA   90061

Mukesh

**LABORATORY NO.**   9679

**REPORTED**   12-02-1998

**SAMPLED**   10-27-1998

**RECEIVED**   10-27-1998

**DISCHARGE ADDRESS**
132 W. 132nd St., Los Angeles, CA   90061
**SAMPLE**   Wastewater from sample box
Time composite 10/26 to 10/27 refrigerated @ 37 F
**MARKS**   Semi-annual Composite and grabs-Permit#11027
sampled by MM@ 2pm
**BASED ON SAMPLE**   as taken by our representative

Results in mg/l unless otherwise noted.

| CONSTITUENTS | RESULTS | METHOD | REPORTING LIMITS |
|---|---|---|---|
| Chemical Oxygen Demand | 130 | 5220D | 10 |
| Suspended Solids | 40 | 2540D | 4 |
| pH, units * | 8.6 | 4500-H+ | 0.1 |
| Sulfides, Dissolved * | <0.05 | 4500-S-2 | 0.05 |
| MBAS | See Page 3 | | See Page 3 |
| Oil & Grease | 8.4 | 5520B | 4 |
| Purgeable Halocarbons | | 601 | See Page 2 |
| 1,1,1-Trichloroethane | 359 | | |
| Trichloroethane | 643 | | |

Respectfully Submitted,

**CHEM PRO LABORATORY, INC.**

Thomas N. Fukuman,
Manager, Analytical Services

TNF/txn
PM256

Chem Pro Laboratory Inc: State Certification #: 1265 * Environmental Protection Agency (EPA) ID #: CA00218 * Los Angeles County Sanitation District ID #: 10112.
Note:  Unless notified in writing, all samples for Sanitation Districts tests will be returned to customer.  All other samples will be discarded by appropriate disposal protocol 30 days from date reported.

All reports are submitted as the confidential information to clients. Publication from or regarding our reports is reserved pending our written approval.

Case 2:19-cv-02123-DMG-AGR   Document 75-1   Filed 02/09/21   Page 408 of 464   Page ID

# CHEM PRO LABORATORY, INC.
### CHEMICAL ENGINEERS
941 West 190th Street • Gardena • California 90248-4398



(310) 532 - 8611
(213) 770 - 8515
(714) 530 - 6623
FAX: (213) 770 - 4403

PAGE 2 OF 3

```
Customer:     PACIFICA CHEMICAL
Lab No.:      9679
Date:         11-5-1998
Purgeable Halocarbons          Limits of Detection
    EPA 601                         ug/l
-------------------            -------------------
Bromodichloromethane                25
Bromoform                           25
Bromomethane                        25
Carbon tetrachloride                25
Chloroethane                        25
Chloroform                          25
2-Chloroethyl vinyl ether           25
Chloromethane                       25
Dibromochloromethane                25
Dichlorofluoromethane               25
1,1-Dichloroethane                  25
1,2-Dichloroethane                  25
1,1-Dichloroethylene                25
Trans-1,2-dichloroethylene          25
1,2-Dichloropropane                 25
Cis-1,3-dichloropropylene           25
Trans-1,3-dichloropropylene         25
Methylene Chloride                  25
1,1,2,2-Tetrachloroethane           25
Tetrachloroethylene                 25
1,1,1-Trichloroethane               25
1,1,2-Trichloroethane               25
Trichloroethylene                   25
Trichlorofluoromethane              25
Vinyl chloride                      25
```

All reports are submitted as the confidential information to clients. Publication from or regarding our reports is reserved pending our written approval

**Client:**      Chem Pro Laboratory, Inc.
**Attn:**      Mr. Thomas N. Fukuman

PAGE 3
SAMPLE DATE:   10-27-1998
LAB # 9679

**Client's Project:**      P.O. #FU9907PM, 698

**Date Received:**    10/27/98
**Date Sampled:**    10/27/98

**Lab No:**    30198-001
**Sample ID:**    Pacific Chemical
**Matrix:**    Water

| Analysis | Date Analyzed | Results | Units | MDL | DLR | Analyst |
|---|---|---|---|---|---|---|
| EPA 425.1 (MBAS) | 10/29/98 | 1.4 | mg/L | 0.1 | 0.1 | MO |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

MDL = Method Detection Limit
ND  = Not Detected (Below DLR)
DF   = Dilution Factor (DLR/MDL)

Reviewed/Approved By: _David J. Kern_      Date: _11/3/98_
David J. Kern
Department Supervisor

The cover letter is an integral part of this analytical report.



*Advanced Technology Laboratories*      1510 E. 33rd Street   Signal Hill, CA 90807   Tel: 562 989-4045   Fax: 562 989-4040

**Spike Recovery and RPD Summary Report**

ADDENDUM 1 OF PAGE 3
SAMPLE DATE:  10-27-1998
LAB # 9679

| | |
|---|---|
| Method: | EPA 425.1 |
| Analyst: | MO |
| Data File: | 8302-1W |

| | |
|---|---|
| Date: | 10/29/98 |
| Sample ID: | BLANK |
| Matrix: | WATER |
| QC Batch:MBAS | 981029W-1 |

| ANALYTE | UNITS | LCS Conc | LCS Res | % Rec | METH BLANK | SPL CONC | SPK ADDED | MS RESULT | MSD RESULT | %MS REC | %MSD REC | % REC Limit | RPD | RPD Limit | MDL |
|---------|-------|----------|---------|-------|------------|----------|-----------|-----------|------------|---------|----------|-------------|-----|-----------|-----|
| MBAS | mg/L | 1.0 | 0.95 | 95 | ND | ND | 1.0 | 0.95 | 0.98 | 95 | 98 | 80-120 | 3 | 20 | 0.10 |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

Approved by: _David J. Kern_
David J. Kern
Inorganics Supervisor

Date: _11/3/98_


Advanced Technology Laboratories

| LACSD USE ONLY | | | SANITATION DISTRICTS OF LOS ANGELES COUNTY<br>Charles W. Carry, Chief Engineer & General Manager<br>For information please call (562) 699-7411 ext. 2900 | | PAGE 01 OF 01 |
|---|---|---|---|---|---|
| LAB REPORT<br>Y ☑ N ☐ | SIGNATURE<br>Y ☑ N ☐ | | **INDUSTRIAL WASTEWATER**<br>**SELF MONITORING REPORT** | | PERMIT NO.<br>011027 |
| DATE RECEIVED | INITIALS | | | | SURCHARGE ACCOUNT NO. |
| 10·27·99 | CH | Report due no later than **07/15/1999** | | | 1895971 |

| 1. Name of Company Having Wastewater Discharge<br>PACIFICA CHEMICAL INC          C | 2. Has the Ownership or Occupancy Changed Since the Last Report?<br>☐ Yes   ☒ No |
|---|---|

| 3. Address of Wastewater Discharge<br>132 W 132ND ST LOS ANGELES CA 90061 | 4. Name of Industrial Wastewater Contact<br>MR. MONTES MACEDON | 5. Phone No.<br>(213  532-8881 |
|---|---|---|

| 6. Mailing Address (If Different From Above)<br>132 W 132ND ST LOS ANGELES CA 90061 | 7. Sic No.(s)<br>2842, 2844 | 8. Reporting Period<br>From: **01/01/1999** To **06/30/1999** |
|---|---|---|

| 9. (Print) Name of Company Collecting Wastewater Sample<br>CHEM PRO LABORATORY, INC. | 10. (Print) Sample Date<br>4-26 TO 4-27-99 | 11. (Print) Sample Location(s)<br>SAMPLE BOX |
|---|---|---|

| 12. Daily Wastewater Discharge For Reporting Period (Gal.)<br>Average: 6384<br>Maximum: 9576 | 13. Method For Determining Wastewater Flow For Sampling Day (Z01, Z02)<br>☐ Direct Measurement<br>☒ Adjusted Metered Water Supply<br>☐ No Discharge During Reporting Period | 14. Type of Composite Sample<br>☒ Time Composite<br>☐ Flow Proportioned Composite |
|---|---|---|

15. NOTE:

| CODE | PARAMETER (1) | SAMPLING METHOD | TEST RESULTS (2) | LAB ID CODE (3) |
|---|---|---|---|---|
| Z01 | WASTEWATER FLOW, TOTAL(GPD) | | 6384 | |
| 101 | PH (UNITS) | GRAB | 7.6 | 10112 |
| 151 | SUSPENDED SOLIDS (MG/L) | COMPOSITE | 290 | " |
| 252 | SOLUBLE SULFIDE (MG/L) | GRAB | <0.05 | " |
| 315 | SURFACTANTS(MBAS) (MG/L) | COMPOSITE | <0.1 | 10196 |
| 403 | TOTAL COD (MG/L) | COMPOSITE | 510 | 10112 |
| 408 | OIL & GREASE (MG/L) | GRAB | 75 | " |
| 607 | TETRACHLOROETHYLENE (UG/L) | GRAB | ≦25 | " |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

(1)   Report the test results from the most recent sample collected within the reporting period and include all laboratory test sheets with the self-monitoring report form.
(2)   Test results are valid only if the correct sampling method is observed and the laboratory analysis is performed by a State or Sanitation Districts' approved laboratory.
(3)   Indicate the appropriate laboratory certification I.D. Code for each testing parameter.

**CERTIFICATION BY PERMITEE**

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Signature of responsible company official: _____   Date: _____

Print name of official: Hussain M. Shaikh                                    Title: _____

Please submit this report to:   Sanitation Districts of Los Angeles County   Industrial Waste Section   P.O. Box 4998   Whittier, CA 90607

**CHEM PRO LABORATORY, INC.**

WATER TREATMENT
STATE CERTIFIED LAB
POLLUTION MONITORING
WASTE WATER ANALYSIS

CHEMICAL ENGINEERS
941 West 190th Street • Gardena • California 90248-4398

(310) 532 - 8611
(323) 770 - 8515
(714) 530 - 6623
FAX: (323) 770 - 4403

---

**CLIENT**  Pacifica Chemical,Inc.
132 W. 132nd St
Los Angeles, CA  90061

Mukesh

**DISCHARGE ADDRESS**
132 W. 132nd St., Los Angeles, CA  90061
**SAMPLE**  Wastewater from sample box
Time composite 4/26 to 4/27 refrigerated 2 32 F
**MARKS**  Semi-annual Composite and grabs-Permit#11027
sampled by PH@ 10am
**BASED ON SAMPLE**  as taken by our representative

**LABORATORY NO.**  0505

**REPORTED**  05-18-1999

**SAMPLED**  04-27-1999

**RECEIVED**  04-28-1999

Results in mg/l unless otherwise noted.

| CONSTITUENTS | RESULTS | METHOD | REPORTING LIMITS |
|---|---|---|---|
| Chemical Oxygen Demand | 510 | 5220D | 10 |
| Suspended Solids | 290 | 2540D | 4 |
| pH, units* | 7.6 | 4500-H+ | 0.1 |
| Sulfides, dissolved* | <0.05 | 4500-S2-ABCD | 0.05 |
| Surfactants, (MBAS) | See Page 3 | 425.1 | See Page 3 |
| Purgeable Halocarbons(µg/l)* | | 601 | See Page 2 |
| 1,1-Dichloroethane | 45 | | |
| 1,1,1-trichloroethane | 360 | | |
| Trichloroethene | 28 | | |
| Oil & Grease, Total* | 75 | 5520B | 4 |

* Denotes grab sample unless otherwise noted above.

Respectfully Submitted,

**CHEM PRO LABORATORY, INC.**

Thomas N. Fukuman,
Manager, Analytical Services

TNF/mm
PM256

Chem Pro Laboratory Inc: State Certification #: 1265 * Environmental Protection Agency (EPA) ID #: CA00218 * Los Angeles County Sanitation District I D #: 10112.
Note:  Unless notified in writing, all samples for Sanitation Districts tests will be returned to customer.  All other samples will be discarded by appropriate disposal protocol 30 days from date reported.

All reports are submitted as the confidential information to clients. Publication from or regarding our reports is reserved pending our written approval.



**CHEM PRO LABORATORY, INC.**

WATER TREATMENT
STATE CERTIFIED LAB
POLLUTION MONITORING
WASTE WATER ANALYSIS

CHEMICAL ENGINEERS
941 West 190th Street • Gardena • California 90248-4398



(310) 532 - 8611
(323) 770 - 8515
(714) 530 - 6623
FAX: (323) 770 - 4403

PAGE 2 OF 3

Customer:    Pacifica Chemical Inc.
Lab No.:     0505
Date:        4-25-99
Purgeable Halocarbons              Limits of Detection
    EPA 601                            ug/l
------------------                 -------------------
Bromodichloromethane                     25
Bromoform                                25
Bromomethane                             25
Carbon tetrachloride                     25
Chloroethane                             25
Chloroform                               25
2-Chloroethyl vinyl ether                25
Chloromethane                            25
Dibromochloromethane                     25
Dichlorofluoromethane                    25
1,1-Dichloroethane                       25
1,2-Dichloroethane                       25
1,1-Dichloroethylene                     25
Trans-1,2-dichloroethylene               25
1,2-Dichloropropane                      25
Cis-1,3-dichloropropylene                25
Trans-1,3-dichloropropylene              25
Methylene Chloride                       25
1,1,2,2-Tetrachloroethane                25
Tetrachloroethylene                      25
1,1,1-Trichloroethane                    25
1,1,2-Trichloroethane                    25
Trichloroethylene                        25
Trichlorofluoromethane                   25
Vinyl chloride                           25

All reports are submitted as the confidential information to clients. Publication from or regarding our reports is reserved pending our written approval.

**Client:**        **Chem Pro Laboratory, Inc.**
**Attn:**          **Tom Fukuman**

Page 3 of 3
Laboratory #:  0505
Date Sampled:  4-27-99

**Client's Project:**     **#758, PO#FU4688PM**

| | | | |
|---|---|---|---|
| **Date Received:** | 04/29/99 | **Lab No:** | 35283-001 |
| **Date Sampled:** | 04/27/99 | **Sample ID:** | Pacifica Chemical (0505) |
| | | **Matrix:** | Wastewater |

| Analysis | Date Analyzed | Results | Units | MDL | DLR | Analyst |
|---|---|---|---|---|---|---|
| **EPA 425.1 (MBAS)** | 04/29/99 | ND | mg/L | 0.1 | 0.1 | OL/MO |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

MDL = Method Detection Limit
ND  = Not Detected (Below DLR)
DF  = Dilution Factor (DLR/MDL)

Reviewed/Approved By: _____  Date: ___4/30/99___
**Cheryl de los Reyes**
**Technical Operations Manager**

The cover letter is an integral part of this analytical report.



*Advanced Technology*
*Laboratories*

*1510 E. 33rd Street   Signal Hill, CA 90807   Tel: 562 989-4045   Fax: 562 989-4040*

Spike Recovery and RPD Summary Report

| Method: | EPA 425.1/SM 5540C |
| Analyst: | MO/OL |
| Data File: | 9119-1W |

| Date: | 04/29/99 |
| Sample ID: | BLANK |
| Matrix: | WATER |
| QC Batch:MBAS | 990429W-1 |

**Addendum to Page 3**
**Laboratory #:  0505**
**Date Sampled:  4-27-99**

| ANALYTE | UNITS | LCS Conc | LCS Res | % Rec | METH BLANK | SPL CONC | SPK ADDED | MS RESULT | MSD RESULT | %MS REC | %MSD REC | % REC Limit | RPD | RPD Limit | MDL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MBAS | mg/L | 1.0 | 1.0 | 100 | ND | ND | 1.0 | 0.97 | 1.0 | 97 | 100 | 80-120 | 3 | 20 | 0.10 |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

Approved by: _____

Liping Liu
Inorganics Supervisor

Date: _4/30/99_


Advanced Technology
Laboratories

**LACSD USE**

Charles W. Carry, Chief Engineer & General Manager
For information please call (562) 699-7411 ext. 2900

PAGE 01 OF 01

| LAB REPORT | SIGNATURE |
|---|---|
| Y ☑ N ☐ | Y ☑ N ☐ |
| DATE RECEIVED | INITIALS |
| 1.26.00 | CH |

**INDUSTRIAL WASTEWATER
SELF MONITORING REPORT**

Report due no later than **01/15/2000**

PERMIT NO.
011027

SURCHARGE ACCOUNT NO.
1895971

1. Name of Company Having Wastewater Discharge
PACIFICA CHEMICAL INC          C

2. Has the Ownership or Occupancy Changed Since the Last Report?
☐ Yes  ☒ No

3. Address of Wastewater Discharge
132 W 132ND ST LOS ANGELES CA 90061

4. Name of Industrial Wastewater Contact
MR. MUKESH DOSHI

5. Phone No.
(213) 532-8881

6. Mailing Address (If Different From Above)
132 W 132ND ST LOS ANGELES CA 90061

7. Sic No.(s)
2842, 2844

8. Reporting Period
From: **07/01/1999** To **12/31/1999**

9. (Print) Name of Company Collecting Wastewater Sample
CHEM PRO LABORATORY, INC.

10. (Print) Sample Date
10-27 TO 10-28-99 &

11. (Print) Sample Location(s)
SAMPLE BOX

12. Daily Wastewater Discharge For Reporting Period (Gal.)
Average: _____
Maximum: _____

13. Method For Determining Wastewater Flow For Sampling Day (Z01, Z02)
☐ Direct Measurement     12-21 TO 12-22-99
☐ Adjusted Metered Water Supply
☐ No Discharge During Reporting Period

14. Type of Composite Sample
☒ Time Composite
☐ Flow Proportioned Composite

15. NOTE:

| CODE | PARAMETER (1) | SAMPLING METHOD | TEST RESULTS (2) | LAB ID CODE (3) |
|---|---|---|---|---|
| Z01 | WASTEWATER FLOW, TOTAL(GPD) | | 5024 | |
| 101 | PH (UNITS) | GRAB | 11.1 | 10112 |
| 151 | SUSPENDED SOLIDS (MG/L) | COMPOSITE | 270 | 10112 |
| 252 | SOLUBLE SULFIDE (MG/L) | GRAB | <0.05 | 10112 |
| 315 | SURFACTANTS(MBAS) (MG/L) | COMPOSITE | 3.6 | 10196 |
| 403 | TOTAL COD (MG/L) | COMPOSITE | 2200 | 10112 |
| 408 | OIL & GREASE (MG/L) | GRAB | 180 | 10112 |
| 607 | TETRACHLOROETHYLENE (UG/L) | GRAB | 110 | 10138 |

(1)  Report the test results from the most recent sample collected within the reporting period and include all laboratory test sheets with the self-monitoring report form.
(2)  Test results are valid only if the correct sampling method is observed and the laboratory analysis is performed by a State or Sanitation Districts' approved laboratory.
(3)  Indicate the appropriate laboratory certification I.D. Code for each testing parameter.

**CERTIFICATION BY PERMITEE**

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted, is to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Signature of responsible company official: _____    Date: 1/24/00

Print name of official:  MUKESH DOSHI    Title: CONTROLLER.

Please submit this report to:   Sanitation Districts of Los Angeles County   Industrial Waste Section   P.O. Box 4998   Whittier, CA 90607

**WATER TREATMENT**
**STATE CERTIFIED LAB**
**POLLUTION MONITORING**
**WASTE WATER ANALYSIS**

# CHEM PRO LABORATORY, INC.
### CHEMICAL ENGINEERS
941 West 190th Street • Gardena • California 90248-4398



(310) 532 - 8611
(323) 770 - 8515
(714) 530 - 6623
FAX: (323) 770 - 4403

---

**CLIENT**  Pacifica Chemical,Inc.
132 W. 132nd St
Los Angeles, CA  90061

Mukesh

**LABORATORY NO.**  1249

**REPORTED**  11-19-1999

**SAMPLED**  10-28-1999

**RECEIVED**  10-28-1999

**DISCHARGE ADDRESS**
132 W. 132nd St., Los Angeles, CA  90061
**SAMPLE**  Wastewater from sample box
Time composite 10/27 to 10/28 refrigerated @ 34 F
**MARKS**  Semi-annual Composite and grabs-Permit#11027
sampled by PH@ 8:30am
**BASED ON SAMPLE**  as taken by our representative

Results in mg/l unless otherwise noted.

| CONSTITUENTS | RESULTS | METHOD | REPORTING LIMITS |
|---|---|---|---|
| Chemical Oxygen Demand | 2200 | 5220D | 10 |
| Suspended Solids | 270 | 2540D | 4 |
| pH, units* | 11.1 | 4500-H+ | 0.1 |
| Sulfides, dissolved* | <0.05 | 4500-S2-ABCD | 0.05 |
| Purgeable Halocarbons(µg/l)* | | 601 | See Page 2, 3 |
| 1,1-Dichloroethene | 130 | | |
| 1,1,1-Trichloroethane | 1800 | | |
| Tetrachloroethene | 110 | | |
| Oil & Grease, Total* | 180 | 5520B | 4 |

* Denotes grab sample unless otherwise noted above.

Respectfully Submitted,

**CHEM PRO LABORATORY, INC.**

Thomas N. Fukuman,
Manager, Analytical Services

TNF/mam
PM256

Chem Pro Laboratory Inc: State Certification #: 1265 * Environmental Protection Agency (EPA) ID #: CA00218 * Los Angeles County Sanitation District ID #: 10112.
Note: Unless notified in writing, all samples for Sanitation Districts tests will be returned to customer.  All other samples will be discarded by appropriate disposal protocol 30 days from date reported.

All reports are submitted as the confidential information to clients. Publication from or regarding our reports is reserved pending our written approval.



**POSITIVE**
**LAB SERVICE**

Page 2 of 5
Laboratory #:  1249
Date Sampled:  10-28-99

781 East Washington Blvd., Los Angeles, CA 90021
(213) 745-5312   FAX (213) 745-6372

# CERTIFICATE OF ANALYSIS

**Chem Pro Laboratory, Inc.**                                                         11/08/99
**File# 70770**
**941 West 190th St.**
**Gardena,      CA    90247**                           **Prj.# 816**
                                                        **P.O.No. FU4315WT**

**Attn: Thomas Fukuman**
**Phone: (323) 770-8515      Fax: (323) 770-4403**

| **Sample#:** 99-0415-001 | **Collector:** Client | **Method:** Submitted By Client |
|---|---|---|
| **Received:** 11/02/1999 | **Sampling Date/Time:** 10/28/1999 | 8:30:00 AM |
| **Type:** Water | | |

**I.D.:** Pacific Chemical (1249)

| Parameter | Prep/Test Method | | Result | Unit | PQL |
|---|---|---|---|---|---|
| Extraction Method/Date | EPA 5030B | EPA 601 | 11/03/99 | | |
| Analysis Date | EPA 5030B | EPA 601 | 11/03/99 | | |
| Dichlorodifluoromethane | EPA 5030B | EPA 601 | ND | ug/l | 80 |
| Chloromethane | EPA 5030B | EPA 601 | ND | ug/l | 40 |
| Vinyl chloride | EPA 5030B | EPA 601 | ND | ug/l | 40 |
| Bromomethane | EPA 5030B | EPA 601 | ND | ug/l | 40 |
| Chloroethane | EPA 5030B | EPA 601 | ND | ug/l | 100 |
| Trichlorofluoromethane | EPA 5030B | EPA 601 | ND | ug/l | 20 |
| 1,1-Dichloroethene | EPA 5030B | EPA 601 | ND | ug/l | 40 |
| Methylene chloride | EPA 5030B | EPA 601 | ND | ug/l | 200 |
| trans-1,2-dichloroethene | EPA 5030B | EPA 601 | ND | ug/l | 20 |
| 1,1-Dichloroethane | EPA 5030B | EPA 601 | 130 | ug/l | 20 |
| Chloroform | EPA 5030B | EPA 601 | ND | ug/l | 20 |
| 1,1,1-Trichloroethane | EPA 5030B | EPA 601 | 1800 | ug/l | 20 |
| Carbon Tetrachloride | EPA 5030B | EPA 601 | ND | ug/l | 20 |
| 1,2-Dichloroethane | EPA 5030B | EPA 601 | ND | ug/l | 20 |
| Trichloroethene | EPA 5030B | EPA 601 | ND | ug/l | 20 |
| 1,2-Dichloropropane | EPA 5030B | EPA 601 | ND | ug/l | 20 |
| Bromodichloromethane | EPA 5030B | EPA 601 | ND | ug/l | 20 |
| 2-Chloroethylvinyl ether | EPA 5030B | EPA 601 | ND | ug/l | 100 |
| trans-1,3-dichloropropene | EPA 5030B | EPA 601 | ND | ug/l | 20 |
| cis-1,3-Dichloropropene | EPA 5030B | EPA 601 | ND | ug/l | 20 |
| 1,1,2-Trichloroethane | EPA 5030B | EPA 601 | ND | ug/l | 20 |
| Tetrachloroethene | EPA 5030B | EPA 601 | 110 | ug/l | 20 |
| Dibromochloromethane | EPA 5030B | EPA 601 | ND | ug/l | 20 |
| Chlorobenzene | EPA 5030B | EPA 601 | ND | ug/l | 20 |
| Bromoform | EPA 5030B | EPA 601 | ND | ug/l | 40 |

**POSITIVE**
**LAB SERVICE**

Page 3 of 5
Laboratory #:  1249
Date Sampled:  10-28-99
781 East Washington Blvd., Los Angeles, CA 90021
(213) 745-5312   FAX (213) 745-6372

# CERTIFICATE OF ANALYSIS

**Chem Pro Laboratory, Inc.**                                                        11/08/99
**File# 70770**
**941 West 190th St.**
**Gardena,        CA    90247**                      Prj.# 816
                                                    P.O.No. FU4315WT

**Attn: Thomas Fukuman**
**Phone: (323) 770-8515      Fax: (323) 770-4403**

| 1,1,2,2-Tetrachloroethane | EPA 5030B | EPA 601 | ND | ug/l | 20 |
| 1,3-Dichlorobenzene | EPA 5030B | EPA 601 | ND | ug/l | 40 |
| 1,4-Dichlorobenzene | EPA 5030B | EPA 601 | ND | ug/l | 40 |
| 1,2-Dichlorobenzene | EPA 5030B | EPA 601 | ND | ug/l | 40 |
| Surrogates | EPA 5030B | EPA 601 | * | | |
| Bromochloromethane | EPA 5030B | EPA 601 | 96 | Percent | |
| 4-Bromofluorobenzene | EPA 5030B | EPA 601 | 100 | Percent | |
| 4-Bromochlorobenzene | EPA 5030B | EPA 601 | 97 | Percent | |

**Sample#:**  99-0415-002                        **Collector:**              **Method:**
**Received:**  11/02/1999                          **Sampling Date/Time:**
**Type:**   Water

**I.D.:**  Method Blank

| Parameter | Prep/Test Method | | Result | Unit | PQL |
|-----------|------------------|--|--------|------|-----|
| Extraction Method/Date | EPA 5030B | EPA 601 | 11/03/99 | | |
| Analysis Date | EPA 5030B | EPA 601 | 11/03/99 | | |
| Dichlorodifluoromethane | EPA 5030B | EPA 601 | ND | ug/l | 2 |
| Chloromethane | EPA 5030B | EPA 601 | ND | ug/l | 1 |
| Vinyl chloride | EPA 5030B | EPA 601 | ND | ug/l | 1 |
| Bromomethane | EPA 5030B | EPA 601 | ND | ug/l | 1 |
| Chloroethane | EPA 5030B | EPA 601 | ND | ug/l | 2.5 |
| Trichlorofluoromethane | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| 1,1-Dichloroethene | EPA 5030B | EPA 601 | ND | ug/l | 1 |
| Methylene chloride | EPA 5030B | EPA 601 | ND | ug/l | 5 |
| trans-1,2-dichloroethene | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| 1,1-Dichloroethane | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| Chloroform | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| 1,1,1-Trichloroethane | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| Carbon Tetrachloride | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| 1,2-Dichloroethane | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| Trichloroethene | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| 1,2-Dichloropropane | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| Bromodichloromethane | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |

2

99-0415-002



Page 4 of 5
Laboratory #:  1249
Date Sampled:  10-28-99

781 East Washington Blvd., Los Angeles, CA 90021
(213) 745-5312   FAX (213) 745-6372

# CERTIFICATE OF ANALYSIS

**Chem Pro Laboratory, Inc.**                                           **11/08/99**
**File# 70770**
**941 West 190th St.**
**Gardena,      CA    90247**                    **Prj.# 816**
                                                 **P.O.No. FU4315WT**

**Attn: Thomas Fukuman**
**Phone: (323) 770-8515      Fax: (323) 770-4403**

| | | | | | |
|---|---|---|---|---|---|
| 2-Chloroethylvinyl ether | EPA 5030B | EPA 601 | ND | ug/l | 2.5 |
| trans-1,3-dichloropropene | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| cis-1,3-Dichloropropene | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| 1,1,2-Trichloroethane | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| Tetrachloroethene | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| Dibromochloromethane | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| Chlorobenzene | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| Bromoform | EPA 5030B | EPA 601 | ND | ug/l | 1 |
| 1,1,2,2-Tetrachloroethane | EPA 5030B | EPA 601 | ND | ug/l | 0.5 |
| 1,3-Dichlorobenzene | EPA 5030B | EPA 601 | ND | ug/l | 1 |
| 1,4-Dichlorobenzene | EPA 5030B | EPA 601 | ND | ug/l | 1 |
| 1,2-Dichlorobenzene | EPA 5030B | EPA 601 | ND | ug/l | 1 |
| Surrogates | EPA 5030B | EPA 601 | * | | |
| Bromochloromethane | EPA 5030B | EPA 601 | 89 | Percent | |
| 4-Bromofluorobenzene | EPA 5030B | EPA 601 | 93 | Percent | |
| 4-Bromochlorobenzene | EPA 5030B | EPA 601 | 74 | Percent | |

ND = Not Detected
NA = Not Applicable
PQL = Practical Quantitation Limit

Sub = Subcontracted analysis, original report enclosed
Any remaining sample(s) for testing will be disposed of 30 days from receipt date unless notified.

Authorized Signature(s)



99-0415-002



**POSITIVE LAB SERVICE**

Page 5 of 5
Laboratory #:  1249
Date Sampled:  10-28-99
781 East Washington Blvd., Los Angeles, CA 90021
(213) 745-5312  FAX (213) 745-6372

November 8, 1999

### QUALITY CONTROL DATA
LCS

CLIENT:           Terra Vac
FILE NO:          72484
REPORT NO:        99-0403
MATRIX:           Water
METHOD:           EPA 601
LAB NO:           LCS
BATCH NO:         9307601
DATE EXTRACTED:   11/03/99
DATE ANALYZED:    11/03/99

| PARAMETER | AMOUNT SPIKED (ug/l) | AMOUNT RECOVERED (ug/l) | % REC | LCS RECOVERY ACCEPTANCE RANGE(%) |
|---|---|---|---|---|
| 1,1-Dichloroethane | 30 | 34 | 114 | 47-132 |
| Chloroform | 30 | 33 | 109 | 80-123 |
| Carbon Tetrachloride | 30 | 33 | 110 | 69-131 |
| Trichloroethene | 30 | 34 | 113 | 71-125 |
| Tetrachloroethene | 30 | 33 | 109 | 65-133 |
| Surrogates: | | | | |
| Bromochloromethane | 30 | 27 | 91 | 78-120 |
| 4-Bromofluorobenzene | 30 | 37 | 122 | 64-120 |
| 4-Bromochlorobenzene | 30 | 29 | 98 | 74-130 |

LCS    = LABORATROY CONTROL SAMPLE
R.P.D. = RELATIVE PERCENT DIFFERENCE
ND     = NONE DETECTED



WATER TREATMENT
STATE CERTIFIED LAB
POLLUTION MONITORING
WASTE WATER ANALYSIS

**CHEM PRO LABORATORY, INC.**
CHEMICAL ENGINEERS
941 West 190th Street • Gardena • California 90248-4398



(310) 532 - 8611
(323) 770 - 8515
(714) 530 - 6623
FAX: (323) 770 - 4403

| | |
|---|---|
| **CLIENT**  Pacifica Chemical, Inc.<br>132 W. 132nd St<br>Los Angeles, CA  90061 | **LABORATORY NO.**  1445 |
| | **REPORTED**   01-13-2000 |
| Mukesh | **SAMPLED**   12-21-1999 |
| | **RECEIVED**  12-22-1999 |

**DISCHARGE ADDRESS**
   132 W. 132nd St., Los Angeles, CA  90061
**SAMPLE**  Wastewater from sample box
   Time composite 12/20 to 12/21 refrigerated @ 34 F
**MARKS**  Repeat for Semi-annual Report
   sampled by PH@ 2:30pm
**BASED ON SAMPLE**  as taken by our representative

Results in mg/l unless otherwise noted.

| **CONSTITUENTS** | **RESULTS** | **METHOD** | **REPORTING LIMITS** |
|---|---|---|---|
| Surfactants, (MBAS) | 3.6 | 425.1 | See Page 2 |


Respectfully Submitted,

**CHEM PRO LABORATORY, INC.**

Thomas N. Fukuman,
Manager, Analytical Services

TNF/mm
PM256

Chem Pro Laboratory Inc: State Certification #: 1265 • Environmental Protection Agency (EPA) ID #: CA00218 • Los Angeles County Sanitation District ID #: 10112.
Note:  Unless notified in writing, all samples for Sanitation Districts tests will be returned to customer.  All other samples will be discarded by appropriate disposal protocol 30 days from date reported.

All reports are submitted as the confidential information to clients. Publication from or regarding our reports is reserved pending our written approval.

| Client: | Chem Pro Laboratory, Inc. | Page 2 of 2 |
| Attn: | Tom Fukuman | Laboratory #:  1445 |
| | | Date Sampled:  12-21-99 |
| Client's Project: | #831, PO#FU5620WT | |

| Date Received: | 12/22/99 | Lab No: | 40569-002 |
| Date Sampled: | 12/21/99 | Sample ID: | Pacific Chemical (1445) |
| | | Matrix: | Sewer Waste Water |

| Analysis | Date Analyzed | Results | Units | MDL | DLR | Analyst |
|----------|---------------|---------|-------|-----|-----|---------|
| EPA 425.1 (MBAS) | 12/22/99 | 3.6 | mg/L | 0.10 | 0.2 | NS |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

MDL = Method Detection Limit
ND = Not Detected (Below DLR)
DF = Dilution Factor (DLR/MDL)

Reviewed/Approved By:_____     Date:__1/1/00__

**Cheryl de los Reyes**
**Technical Operations Manager**

The cover letter is an integral part of this analytical report.

*Advanced Technology*
*Laboratories*

*1510 E. 33rd Street   Signal Hill, CA 90807   Tel: 562 989-4045   Fax: 562 989-4040*

# EXHIBIT 15

Case 2:19-cv-02123-DMG-AGR   Document 75-1   Filed 02/09/21   Page 425 of 464   Page ID
#:4197
Case 2:19-cv-02123-DMG-AGR   Document 46-1   Filed 12/27/19   Page 1 of 7   Page ID #:690



1   Bret A. Stone   SBN 190161  BStone@PaladinLaw.com
2   Kirk M. Tracy   SBN 288508  KTracy@PaladinLaw.com
    PALADIN LAW GROUP® LLP
3   220 W. Gutierrez Street
    Santa Barbara, CA  93101
4   Telephone:  (805) 898-9700
    Facsimile:   (805) 852-2495
5
6   Counsel for Defendant and Counter-Claimant
    Hussain M. Shaikh
7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  TC RICH, LLC, et al.,              Case No. 2:19-CV-02123-DMG-AGR

12                    Plaintiffs,       HUSSAIN M. SHAIKH'S
                                        COUNTERCLAIM
13        v.

14  HUSSAIN M. SHAIKH, et al.,

15                    Defendants.

16  _____

17  HUSSAIN M. SHAIKH,

18                    Counter-Claimant,

19        v.

20  TC RICH, LLC; RICHARD G.
    FLEISCHER; and JACQUELINE
21  FLEISCHER,

22                    Counter-Defendants.

23  _____

24        Defendant and Counter-Claimant Hussain M. Shaikh ("Counter-Claimant")

25  brings this Counterclaim against Plaintiffs and Counter-Defendants TC Rich, LLC,

26  Richard G. Fleischer, and Jacqueline Fleischer (collectively, "Counter-Defendants")

27  and alleges upon knowledge as to its own acts, and upon information and belief as to

28  the acts of all others, as follows:

SHAIKH'S COUNTERCLAIM

EXHIBIT
0015

# NATURE OF THE ACTION

1.    Counter-Claimant files this Counterclaim in order to avoid or minimize its alleged liability associated with responding to environmental contamination alleged in the Complaint.

2.    The area of contamination for which Counter-Complainant seeks relief includes the property located at 132 West 132nd Street, Los Angeles, (the "Property") and areas to which the contamination has migrated outside the boundaries of the Property (the "Site").

# PARTIES

### *Counter-Claimant*

3.    Hussain M. Shaikh is a prior owner of the Property.

### *Counter-Defendants*

4.    TC Rich, LLC is the current owner of the Property.

5.    Richard G. Fleischer owns and controls TC Rich, LLC.

6.    Jacqueline Fleischer owns and controls TC Rich, LLC.

# JURISDICTION, VENUE, AND NOTICE

7.    This Court has jurisdiction over the subject matter of Counter-Claimant's First Cause of Action pursuant to section 113 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9613.

8.    Venue is proper in this Court pursuant to Section CERCLA § 113(b) because the release and damage occurred in this district.  42 U.S.C. § 9613(b).

9.    The state law claims alleged in this Counterclaim are related to the federal claims pursuant to 28 U.S.C. § 1367(a) and fall within the Court's supplemental jurisdiction.

# GENERAL ALLEGATIONS

10.    The Site has been impacted by the presence of tetrachloroethylene ("PCE") and other hazardous substances.



11.     On information and belief, each Counter-Defendant caused or contributed to the past or present handling, storage, treatment, transportation, generation, release, or disposal of hazardous substances, hazardous waste, and/or solid waste in the environment in, at, and around the Site, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, because each Counter-Defendant controlled and/or operated the Site from which hazardous substances, hazardous waste, and/or solid waste were released or otherwise discarded, and failed to exercise due care or to prevent or abate the hazardous substances, hazardous waste, and/or solid waste  contamination.

12.     On information and belief, once released into the environment, these hazardous substances, hazardous waste, and/or solid wastes have continued to spread and migrate within the environment at the Site, but Counter-Defendants failed to abate this contamination.

13.     On information and belief, as a result of Counter-Defendants' failure to abate the contamination, Counter-Claimant has incurred and will incur response costs in order to investigate and remediate the contamination.

14.     On information and belief, Counter-Defendants did not make all appropriate inquiry when purchasing the Property, were not passive owners of the Property, and did not take any preventive actions or measures to avoid, prevent, reduce, or mitigate known or foreseeable releases of hazardous substances at the Property.

<div align="center">

**FIRST CAUSE OF ACTION**
**(Contribution – CERCLA § 113(f))**
**(Against All Counter-Defendants)**

</div>

15.     Counter-Claimant realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 14, inclusive, as though set forth in full herein.

16.     Counter-Defendants are the current owners of the Property.  Counter-Defendants are thereby jointly and severally liable under section 107(a) of CERCLA



§ 107(a), 42 U.S.C. § 9607(a).

17.    The Site is a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

18.    Counter-Defendants are each a "person" as that term is defined in CERCLA § 101(21), 42 U.S.C. § 9601(21).

19.    Counter-Defendants have alleged that a "release" or threatened release of a "hazardous substance," as those terms are defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), has occurred at the Site.

20.    Counter-Defendants are each a "covered person" under CERCLA § 107(a) each of Counter-Defendants are the current owners of the Property, within the meaning of CERCLA § 107(a)(1).

21.    Pursuant to CERCLA § 113(f), Counter-Claimant is entitled to contribution from any other person who is liable or potentially liable under CERCLA for any amount that Counter-Claimant is found liable for costs incurred responding to the alleged releases or threatened releases of hazardous substances at the Site.  If Counter-Claimant is in the future held liable to Counter-Defendants, then it is entitled to contribution from Counter-Defendants for some or all of any amounts for which the Estates are held liable and are required to pay.

22.    Counter-Claimant gave notice of this Counterclaim to the Attorney General of the United States and the Administrator of the United States Environmental Protection Agency, as required by CERCLA § 113(*l*), 42 U.S.C. § 9613(*l*).

**SECOND CAUSE OF ACTION**
**(Declaratory Relief – CERCLA § 113(g))**
**(Against All Counter-Defendants)**

23.    Counter-Claimant realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 22, inclusive, as though set forth in full herein.

24.    Pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f), Counter-Claimant

Case 2:19-cv-02123-DMG-AGR   Document 75-1   Filed 02/09/21   Page 429 of 464   Page ID #:4201
Case 2:19-cv-02123-DMG-AGR   Document 46-1   Filed 11/27/19   Page 6 of 7   Page ID #:3902
#:4201

is entitled to contribution from any other person who is liable or potentially liable under CERCLA for any amount for which Counter-Claimant is held responsible in responding to the presence of hazardous substances at the Site, and to the actual or threatened release of such hazardous substances.

25.     Accordingly, an actual legal controversy exists between Counter-Claimant, on the one hand, and Counter-Defendants, on the other hand.  Counter-Claimant contends that it is entitled to indemnification and contribution based on the above-described threatened or actual liability. Counter-Claimant is informed and believes that Counter-Defendants contend otherwise.

26.     Counter-Claimant desires and is entitled to a declaration of the parties' respective rights and duties pursuant to 28 U.S.C. § 2201, *et seq.*, CERCLA § 113 (f) and (g), 42 U.S.C. § 9613 (f) and (g). No adequate or speedy remedy exists for Counter-Claimant in the absence of such a judicial declaration. Accordingly, Counter-Claimant hereby requests a declaration from the Court setting forth Counter-Claimant's and Counter-Defendants' liability for past, present and future response, removal and remediation costs, and other penalties and/or damages imposed on Counter-Claimant in connection with the Site.

**THIRD CAUSE OF ACTION**
**(Contribution Under the HSAA – Cal. Health & Saf. Code § 25363(d))**
**(Against All Counter-Defendants)**

27.     Counter-Claimant realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 26, inclusive, as though set forth in full herein.

28.     The California Hazardous Substance Account Act ("HSAA"), California Health & Safety Code § 25300 *et seq.*, provides for an action by parties who have been held liable for removal or remedial action costs under the HSAA. Pursuant to the HSAA, such parties may seek contribution or indemnity for those costs from any person who is a "responsible party" under Health & Safety Code § 25323.5.

29.     Counter-Defendants are each a "person" within the meaning of HSAA, California Health & Safety Code § 25319, and a "responsible party" or "liable person" within the meaning of the HSAA, California Health & Safety Code § 25323.5.

30.     Counter-Defendants are liable to Counter-Claimant pursuant to California Health & Safety Code § 25363(d) in contribution or indemnity, to the extent that Counter-Claimant is are held liable or responsible for any costs pursuant to or otherwise recoverable under the HSAA.

31.     Counter-Claimant gave notice of this Counterclaim to the Director of the California Department of Toxic Substances Control, as required by section 25363(d) of the Health & Safety Code.

<div align="center">

**FOURTH CAUSE OF ACTION**
**(Declaratory Relief:  Equitable Indemnity/Contribution)**
**(Against All Counter-Defendants)**

</div>

32.     Counter-Claimant realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 31, inclusive, as though set forth in full herein.

33.     An actual controversy has arisen and now exists between Counter-Claimant and Counter-Defendants in that Counter-Claimant contends, and, on information and belief, Counter-Defendants deny, the following:

(a)     That, as between Counter-Claimant and Counter Defendants, responsibility, if any, for damages arising from or relating to the alleged contamination of the Site rests entirely or partially on Counter-Defendants; and

(b) That, as a result, Counter-Defendants are obligated to partially or fully indemnify Counter-Claimant for any sums that Counter-Claimant may be compelled to pay as the result of any damages, judgment, or other awards recovered against Counter-Claimant as a result of such alleged contamination.

34.     Counter-Claimant desires a judicial determination of the respective rights and duties of Counter-Claimant and Counter-Defendants of the comparative

Case 2:19-cv-02123-DMG-AGR  Document 75-1  Filed 02/09/21  Page 431 of 464  Page ID
#:4203
Case 2:19-cv-02123-DMG-AGR  Document 46-1  Filed 11/27/19  Page 7 of 7  Page ID #:936

liability of Counter-Claimant and Counter-Defendants for these damages, and a declaration of Counter-Defendants' responsibility for equitable indemnity to Counter-Claimant for any sums that Counter-Claimant may be compelled to pay and for which Counter-Defendants are determined to be responsible, entirely or in part.

35.  Such a declaration is necessary and appropriate at this time so that Counter-Claimant may ascertain its rights and duties, if any, with respect to Counter-Defendants' and other persons' present and future claims for damages.  Furthermore, Counter-Claimant's and Counter Defendants' claims arise out of the same transaction (*i.e.*, the alleged contamination of the Site) and determination of both in one proceeding is necessary and appropriate in order to avoid a multiplicity of actions.

## PRAYER FOR RELIEF

WHEREFORE, Counter-Claimant respectfully requests that judgment be entered in its favor for the following:

1.  For contribution under CERCLA and the HSAA, according to proof;

2.  For a judicial declaration under CERCLA and the HSAA that Counter-Defendants are liable for each of their equitable shares of all present and future response costs and other damages allegedly incurred in connection with the Site, according to proof;

3.  For all costs of suit herein;

4.  For such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Counter-Claimant hereby demands trial by jury of any and all issues so triable.

Dated: November 27, 2019          PALADIN LAW GROUP® LLP

By:    _/s/ Kirk M. Tracy_____
          Kirk M. Tracy
          Counsel for Defendant and Counter-Claimant Hussain M. Shaikh



| From: | cacd_ecfmail@cacd.uscourts.gov |
|---|---|
| To: | ecfnef@cacd.uscourts.gov |
| Subject: | Activity in Case 2:19-cv-02123-DMG-AGR TC Rich, LLC et al v. Hussain M. Shaikh et al Answer to Complaint (Attorney Civil Case Opening) |
| Date: | Wednesday, November 27, 2019 12:23:54 PM |

**\* EXTERNAL EMAIL \***

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Stone, Bret on 11/27/2019 at 10:22 AM PST and filed on 11/27/2019

| **Case Name:** | TC Rich, LLC et al v. Hussain M. Shaikh et al |
|---|---|
| **Case Number:** | 2:19-cv-02123-DMG-AGR |
| **Filer:** | Hussain M Shaikh |

**Document Number:** 46

**Docket Text:**
**ANSWER to Amended Complaint/Petition, [22] with JURY DEMAND *HUSSAIN M. SHAIKHS*, COUNTERCLAIM against Jacqueline Fleischer, Richard G Fleischer, TC Rich, LLC filed by Defendant Hussain M Shaikh.(Stone, Bret)**

**2:19-cv-02123-DMG-AGR Notice has been electronically mailed to:**

Bret A Stone     bstone@paladinlaw.com, bpaget@paladinlaw.com, cbaker@paladinlaw.com, chughes@paladinlaw.com, ktracy@paladinlaw.com, mmariotti@paladinlaw.com, rcasstevens@paladinlaw.com

Cory T Baker     cbaker@paladinlaw.com

John Sung Cha     jcha@raineslaw.com, cwilliams@raineslaw.com

Kirk Matthew Tracy     ktracy@paladinlaw.com

Mark Erik Elliott     mark.elliott@pillsburylaw.com, april.iniguez@pillsburylaw.com,

firmwidecalendardocket@pillsburylaw.com, helen.moreno@pillsburylaw.com,
lester.nemesh@pillsburylaw.com, stella.pulman@pillsburylaw.com,
stephanie.amaru@pillsburylaw.com

**2:19-cv-02123-DMG-AGR Notice has been delivered by First Class U. S. Mail or by
other means <u>BY THE FILER</u> to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\2019-11-27 Shaikh Counterclaim.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=11/27/2019] [FileNumber=28847026-
0] [2f656d90b1814f489b820bba760919e0a1dd7cb8571a44e6deb650956a2af03c22
936d49edefbb901208278d9ce1f67539f1d483e5e9678e4c2b1f2e97676a28]]

# EXHIBIT 16

*Previous occupant*
*was Hanyoung Americ*
*Inc. #14285*

**COUNTY SANITATION DISTRICTS OF LOS ANGELES COUNTY**
JAMES F. STAHL - Chief Engineer and General Manager
1955 Workman Mill Road - Whittier, CA 90601-1400
P.O. Box 4998 - Whittier, CA 90607-4998
Telephone: (562) 699-7411 - Fax (562) 692-5103

**DISCHARGER IDENTIFICATION QUESTIONNAIRE**

## SECTION A

1. Legal Business Name(s): _PACIFICA CHEMICAL INC_ Permit No(s): _16768_

2. Fictitious Name/DBA: _____

3. Situs Address: _935 E ARTESIA BLVD CARSON CA 90746_

4. Mailing Address: _SAME_

5. Business Phone: (210) 464·8900 Fax: (310) 464 - 8935

6. Property Owner(s) of Situs: _HUSSAIN SHANKEL._

7. Address(es) of Property Owners: _935 E ARTESIA BLVD_

## SECTION B

8. Please circle the appropriate item (a-f) which best describes your organization and provide the applicable requested information:

   a. Corporation:
      (1) State(s) of incorporation: _CALIFORNIA_
      (2) Year(s) of incorporation: _OCT 1978_
      (3) Corporate ID number(s): _C 900084_
      (4) Please attach a copy of the Statement of Officers filed with the Secretary of State.

   b. Division, Operational Group, or Subsidiary  (☐ wholly-owned, ☐ direct, ☐ indirect):
      (1) State(s) of incorporation of Parent Co.: _N/A_
      (2) Year(s) of incorporation of Parent Co.: _N/A_
      (3) Corporate ID number(s) of Parent Co.: _N/A_
      (4) Please attach a copy of the Statement of Officers of Parent Company filed with the Secretary of State.

   c. General Partnership:
      (1) List the General Partners: _N/A_
      (2) Please attach a copy of the certified statement of partnership filed pursuant to Corporations Code §16105.

   d. Limited Partnership:  _N/A_
      (1) Please attach a copy of the Certificate of Limited Partnership prepared in accordance with Corporations Code §1621(a)(1)-(5), and any amendments filed pursuant to §15622 within the last five (5) years.

   e. Limited Liability Company:
      (1) Please attach a copy of the current list of members prepared pursuant to Corporations Code §17058(a)(1).

   f. Sole Proprietor:
      (1) Owner's Name: _____
      (2) Owner's home address: _____
      (3) Business Fictitious Name and County it is registered in: _____

9. When did your company begin operations at this situs? _ABOUT YEAR._

RECEIVED

DEC 2 - 2004

Per _____

EXHIBIT
16

## SECTION B (Continued)

10. Was this location previously occupied prior to your operations? ___*___ Yes _____ No

If yes, please answer a through c:

a. Name of previous company: _HAN YOUNG AMERICA INC._
b. Name(s) of previous owners/operators: _MR PARK_
c. Address of previous owner: _1005  E ARTESIA BLVD_
CARSON   CA 90746

## SECTION C

The Sanitation Districts' Wastewater Ordinance specifies in Section 401 that the Industrial Wastewater Discharge Permit is not transferable. Each permittee shall immediately notify the Districts in writing of any change in name or legal capacity (business ownership).

11. Since the last permit approval has your company undergone any of the following? Please check the appropriate box and indicate the dates for (a) or (b):

a. ☐  Change in name,  Date: _NO_
b. ☐  Change in legal capacity (ownership),  Date: _NO_
c. ☒  No change

12. If you checked either 11a or 11b, please indicate if appropriate documents were filed with the Secretary of State.

a. ☐  Yes,  Date: _____
b. ☐  No

If you checked 12a, please attach copies of the appropriate documents provided to you by the Secretary of State.

13. Is the present operation an acquisition of the previous business? _____ Yes _✗_ No

If yes, did you acquire: _____ Assets _____ Liabilities _____ % of Stock

Explain briefly, if needed: _____

14. Name(s) and title(s) of person(s) in charge of the industrial wastewater discharge: _____
_HUSSAIN  SHAIKH   PRESIDENT_

## SECTION D

*Must be signed by a company official (i.e., President, Vice President, Controller, Corporate Secretary, etc.)*

I represent and warrant that the above information is true and correct.

Print your name and title: _HUSSAN  SHAIKH_
Signature: _[signature]_
Date: _11.30.04_
Address: _935 EAST  ARTESIA BLVD  CARSON  CA  90746_

---

**FOR DISTRICTS' USE ONLY**

DIQ requested by: _R. Wienke_     Reason: _Change of ownership from
                                          Hunyoung America #14285_
☒ Change   ☐ No Change   Reason: _____
Initials: _AX_  Date: _1/19/05_

C:\My Documents\DIQRevised.doc                                        -2-

**Kevin Shelly**
**Secretary of State**

**STATEMENT OF INFORMATION**
(Domestic Stock Corporation)

**FEES (Filing and Disclosure): $** 5.00. If amendment, see instructions.

**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

CORPORATE NAME (Please do not alter if name is preprinted.)

C0900089  DUE 31-06-06139S NPT
PACIFICA CHEMICAL, INCORPORATED
2910 E ANA ST
RANCHO DOMINGUEZ C  90221

935 E ARTESIA BLVD.
CARSON CA 90746

This Space For Filing Use Only

**CALIFORNIA CORPORATE DISCLOSURE ACT (Corporations Code section 1502)**

☐ Check here if the corporation is publicly traded. If publicly traded, complete this form and the Corporate Disclosure Statement (Form SI-PTSUPP). **See Item 2 of instructions.**

**NO CHANGE STATEMENT**

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the Secretary of State, including any information contained in Form SI-PTSUPP, if applicable, check the box and proceed **to Item 16.**

If there have been any changes to the information contained in either form, or no Statement of Information has been previously filed, this form (and Form SI-PTSUPP, if public traded) must be completed in its entirety.

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE — 935 EAST ARTESIA BLVD | CITY AND STATE — CARSON CA | ZIP CODE — 90746

STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | CITY | STATE — CA | ZIP CODE

**NAMES AND COMPLETE ADDRESSES OF THE FOLLOWING OFFICERS** (The corporation must have these three officers. A corporation for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

CHIEF EXECUTIVE OFFICER/ ADDRESS — HUSSAIN SHAIKH 935 E. ARTESIA BLVD | CITY AND STATE — CARSON | ZIP CODE — 90746

SECRETARY/ ADDRESS — HUSSAIN SHAIKH 935 E. ARTESIA BLVD | CITY AND STATE — CARSON | ZIP CODE — 90746

CHIEF FINANCIAL OFFICER/ ADDRESS — HUSSAIN SHAIKH 935 E. ARTESIA BLVD | CITY AND STATE — CARSON | ZIP CODE — 90746

**NAMES AND COMPLETE ADDRESSES OF ALL DIRECTORS, INCLUDING DIRECTORS WHO ARE ALSO OFFICERS** (The corporation must have at least one director. Attach additional pages, if necessary.)

NAME — HUSSAIN SHAIKH 935 E ARTESIA BLVD CARSON CA 90746 | CITY AND STATE | ZIP CODE

NAME | ADDRESS | CITY AND STATE | ZIP CODE

NAME | ADDRESS | CITY AND STATE | ZIP CODE

NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

**AGENT FOR SERVICE OF PROCESS:** (If the agent is an individual, the agent must reside in California and Item 14 must be completed with a California address. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 14 must be left blank.)

NAME OF AGENT FOR SERVICE OF PROCESS

ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE — CA | ZIP CODE

**TYPE OF BUSINESS**

DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION — CHEMICALS & DY STUFF FOR TEXTILE INDUSTRY

BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED CORRECT.

HUSSAIN SHAIKH | SIGNATURE | PRESIDENT | DATE 7/02/21

TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE

APPROVED BY SECRETARY OF STATE

**IFICA CHEMICAL INC.**
5 E. ARTESIA BLVD.
CARSON, CA 90746

DEC 01 2004 PM 01:58

DOC #

Winkie S.
90600141415



*LFF*
COUNTY of SANITATION DISTRICTS
OF... L. A COUNTY.
1955 WORKMAN MILL ROAD
WHITTER CA 90607

# EXHIBIT 17



# COUNTY OF LOS ANGELES

## DEPARTMENT OF PUBLIC WORKS

**900 S FREMONT AVENUE**
**ALHAMBRA, CA 91803-1331**
**TELEPHONE: (626)458-5100**

# NOTICE OF NON-COMPLIANCE

Date _5/20/02_          File No. _8379 - 37519_

To _MAQ SHAIKH_          Permit No. _____

Site Name _PACIFICA CHEMICAL_     Violation No. _V347139_

Site Address _935 E. ARTESIA BLVD, CARSON_

Mailing Address _____

**YOUR ATTENTION IS DIRECTED TO YOUR NON-COMPLIANCE WITH THE NOTICE ISSUED ON** _4-11-02_

[✓]  Failure to submit the required Industrial Waste Permit Application.
[✓]  Failure to submit the required permit application fee of $ _160.00_ .
[ ]  Failure to submit the required plans.
[ ]  Failure to cease and desist discharging waste materials to ground, public, or private property.
[ ]  Failure to clean the interceptor.
[ ]  Failure to repair the Rain Diversion System.
[ ]  Failure to legally abandon the pretreatment facilities.
[ ]  Failure to pay the Annual Industrial Waste Inspection Fee.
[ ]  Other _____
_____
_____
_____

You are hereby directed to correct the above by _6-5-02_ . If you have any questions regarding this matter, please contact _JOHN A. VINCENT_ , Monday through Friday, 8:00 a.m. to 9:30 a.m., at (_310_) _534-4862_ .

Very truly yours,

JAMES A NOYES,
Director of Public Works

BY _John Vincent_
Waste Control Engineering Inspector
Environmental Programs Division

L A County, Department of Public Works
Environmental Programs Division
Palos Verdes-Centinela Valley District
24320 South Narbonne Avenue
Lomita, CA 90717-1194

**EXHIBIT**
**0017**

**LOS ANGELES COUNTY DEPARTMENT OF PUBLIC WORKS**
**ENVIRONMENTAL PROGRAMS DIVISION**

### NOTICE OF VIOLATION
### AND
### ORDER TO COMPLY

Date: _06/03/04_                     File No.: _008379-037519_

To: _Mukesh Doshi_                   Permit No.: _____

Site Name: _Pacifica Chemical_       Violation No.: _015661_

Site Address: _935 E. Artesia Blvd., Carson 90746_

Mailing Address: _same as above_

You are hereby directed to correct the following violation(s) of [✓] Los Angeles County Code,

Title 20 [ ] City of _Carson_____ Municipal Code/Ordinance _____

and/or conditions and limitations of Industrial Waste Disposal Permit No. _____.

_Notices written 11/03/03, 02/23/04 - For non submittal_
_of permit package for Industrial Waste Permit._
_# 260.00 - app-fee  # 618.00 - plan check fee. Total $888°°_
_You are required to complete a Sanitation Districts app._
_for your Chemical Distribution operation._

If you have any questions regarding this matter, please contact _Wanda Davis_,

Monday through Friday, 8 a.m. to 9:30 p.m., at ( _310_ ) _534-4862_ .

Very truly yours,

JAMES A. NOYES
Director of Public Works

By: _Wanda Davis_
Environmental Programs Division

Address all correspondence to:

DEPARTMENT OF PUBLIC WORKS
ENVIRONMENTAL PROGRAMS DIVISION
24320 S. NARBONNE AVE
LOMITA CA 90717-1194

D Joe/NVOC.frm
Revised 11/13/02

_High Profile Business - May be referred to U.S. Attorney's Office_



LOS ANGELES COUNTY DEPARTMENT OF PUBLIC WORKS
ENVIRONMENTAL PROGRAMS DIVISION
P. O. BOX 1460
ALHAMBRA, CA 91802-1460 TEL: (626) 458-3517

INDUSTRIAL WASTE DISPOSAL PERMIT
INTERIM PERMIT-LOCAL SEWER

PERMIT NO: 000016768
EFFECTIVE DATE: 01/26/05
EXPIRATION DATE:

PERMISSION IS HEREBY GRANTED TO:

| PACIFICA CHEMICAL     UNIT A | << CERTIFICATE HOLDER | 008379 037519 22 | <<<<< FILE NUMBER/AREA |
| 935 E ARTESIA BLVD | | 935 E ARTESIA BLVD | <<<<< FACILITY ADDRESS |
| CARSON, CA 90746 | | MUKESH DOSHI, CONTROLLER | <<<<< PRIMARY CONTACT |
| | | (310) 464-8900 | <<<<< CONTACT PHONE |

TO TREAT/STORE/DISPOSE INDUSTRIAL WASTE MATERIALS LOCATED AT THE FACILITY INDICATED ABOVE, UNDER THE SANITARY SEWER AND INDUSTRIAL
WASTE ORDINANCE FOR:

| CITY OF CARSON | <<<<< AREA/CITY | ARTICLE VIII, CHAPTER 5 | <<<<< ORDINANCE/MUN CODE |
| JOINT PERMIT W/CSDLAC | <<<<< JURISDICTION | NON-METALS WITH CHEMICAL WASTES, NO | <<<<< INDUSTRY |

THE INDUSTRIAL WASTE OPERATIONS REGULATED BY THIS PERMIT CONSIST OF THE FOLLOWING:
WASTE GENERATING OPERATIONS:    EQUIPMENT CLEANING, RO REJECT, FLOOR WASHDOWN, DRUM WASH
        CONSTITUENTS:    COD, TSS
      DISCHARGE TIME:    FROM 08.00.00 TO 17.00.00   DISCHARGE DAYS: M T W TH F
       AVERAGE FLOW:       340 GAL PER DAY        PEAK FLOW:     1 GAL PER MIN
           FACILITY:    RECEPTOR ONLY (STD I-1, I-12)
          SPEC INFO:    SAMPLE BOX LOCATED NEXT TO THE LIQUID CHEMICAL STORAGE AREA

THIS CERTIFICATE IS SUBJECT TO THE FOLLOWING CONDITIONS:

| J  | JOINT PERMIT COVER LETTER | A1 | COND & LIM, PUBLIC SEWER |
| A2 | COND & LIM, PUBLIC SEWER (CONTD) | B1 | WASTES NOT AUTHORIZED, PUBLIC SEWER AND ON-SITE |
| C1 | GENERAL CONDITIONS & LIMITATIONS | D1 | EFFLUENT LIMITS, JOINT OUTFALL |

THE PLANS APPROVED IN CONJUNCTION WITH THIS PERMIT AND ANY PLANS REFERENCED HEREIN ARE MADE PART OF THIS PERMIT.
THE INDUSTRIAL WASTE CONTROL ENGINEERING INSPECTOR IN YOUR AREA WILL EXPLAIN THE PERMIT CONDITIONS, AND MAKE PERIODIC
INSPECTIONS OF YOUR OPERATIONS. THIS PERMIT IS SUBJECT TO ANNUAL INDUSTRIAL WASTE INSPECTION FEES.

GAIL FARBER
DIRECTOR OF PUBLIC WORKS

BY: _____          DATE OF ISSUANCE: 12/01/14          38-003 DPW 12/86
    ENVIRONMENTAL PROGRAMS DIVISION

---

LOS ANGELES COUNTY DEPARTMENT OF PUBLIC WORKS
ENVIRONMENTAL PROGRAMS DIVISION
P. O. BOX 1460
ALHAMBRA, CA 91802-1460 TEL: (626) 458-3517

INDUSTRIAL WASTE DISPOSAL PERMIT

PERMIT NO: 000016768
EFFECTIVE DATE: 01/26/05
EXPIRATION DATE:

PERMISSION IS HEREBY GRANTED TO:

| PACIFICA CHEMICAL     UNIT A | << CERTIFICATE HOLDER | 008379 037519 22 | <<<<< FILE NUMBER/AREA |
| 935 E ARTESIA BLVD | | 935 E ARTESIA BLVD | <<<<< FACILITY ADDRESS |
| CARSON, CA 90746 | | MUKESH DOSHI, CONTROLLER | <<<<< PRIMARY CONTACT |
| | | (310) 464-8900 | <<<<< CONTACT PHONE |

TO TREAT/STORE/DISPOSE INDUSTRIAL WASTE MATERIALS LOCATED AT THE FACILITY INDICATED ABOVE, UNDER THE SANITARY SEWER AND INDUSTRIAL
WASTE ORDINANCE FOR:

| CITY OF CARSON | <<<<< AREA/CITY | ARTICLE VIII, CHAPTER 5 | <<<<< ORDINANCE/MUN CODE |
| JOINT PERMIT W/CSDLAC | <<<<< JURISDICTION | NON-METALS WITH CHEMICAL WASTES, NO | <<<<< INDUSTRY |

POST THIS AT YOUR LOCATION



# PERMIT/CERTIFICATE



COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC WORKS          **A1**

Environmental Programs Division
P.O. Box 1460
Alhambra, CA 91802–1460

## INDUSTRIAL WASTE DISPOSAL PERMIT CONDITIONS AND LIMITATIONS

### PART A: ON-SITE DISPOSAL – PUBLIC SEWER

1. Disposal of industrial wastewater to the public sanitary sewer shall be limited to the flow indicated on the industrial waste disposal permit.

2. Pretreatment, monitoring and control facilities required under this permit shall consist of the system(s) indicated on the approved plans.

3. Industrial Wastewater shall at all times meet the effluent quality, indicated on the attached Part D, if applicable prior to discharge to the sanitary sewer system.

4. If applicable, the permittee shall submit periodic compliance reports, as indicated on the attached Part E and/or any self-monitoring or industrial wastewater treatment surcharge reports which may be required by the County Sanitation Districts of Los Angeles County. **Note: Self-monitoring reports required by the Sanitation Districts are to be submitted directly to the Sanitation Districts**.

5. All required industrial wastewater collection, pretreatment, monitoring, disposal and sampling facilities must be installed in accordance with approved plans prior to initiating any discharge to the sewer.

6. Dilution prohibited as substitute for treatment. Except where expressly authorized to do so by an applicable Pretreatment Standard or Requirement, no Industrial User shall ever increase the use of process water, or in any other way attempt to dilute a Discharge as a partial or complete substitute for adequate treatment to achieve compliance with a Pretreatment Standard or Requirement. The Control Authority may impose mass limitations on Industrial Users which are using dilution to meet applicable Pretreatment Standards or Requirements, or in other cases where the imposition of mass limitations is appropriate. 40 CFR 403.6(d)

COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC WORKS
INDUSTRIAL WASTE DISPOSAL PERMIT

| A2 |
| --- |

PART A: ON-SITE DISPOSAL – PUBLIC SEWER (CONTINUED)

6. Discharge of any toxic, flammable, explosive, corrosive, radioactive or non-biodegradable substance to the sanitary sewer is prohibited except as provided in **Part A.3** above.

7. Discharge of uncontaminated cooling water, groundwater, storm water or surface drainage water to the sanitary sewer is prohibited except as specifically authorized by this permit.

8. Discharge of industrial wastewater to the sanitary sewer with temperatures exceeding 140° F is prohibited.

9. This permit is subjected to additional Conditions and Limitations attached:
   **Part B** – Wastes Not Authorized for Discharge or Deposits in **Part A**
   **Part C** – General Conditions and Limitations
   **Part D** – Effluent Quality Limitations
   **Part E** -- Self-monitoring and Reporting (if applicable)

10. Other:

COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC WORKS
INDUSTRIAL WASTE DISPOSAL PERMIT

| B1 |

**PART B:  WASTES NOT AUTHORIZED FOR DISCHARGE OR DEPOSIT IN PART A**

1.  Industrial wastes not specifically authorized for on-site pretreatment, storage, deposit, discharge or disposal in Part A of this permit shall be stored in leakproof containers within an area designated on plans approved by the Department of Public Works pending transport to a legal point of disposal.

2.  The Permittee shall determine if industrial wastes stored pursuant to Part B.1 above are hazardous wastes as defined in the California Health and Safety Code, Chapter 6.5 and as determined by California Administrative Code, Title 22, Division 4, Chapter 30 and shall manage such wastes as prescribed therein.

3.  Hazardous wastes shall only be removed from the premises under a Uniform Hazardous Waste Manifest unless a variance from such documentation has been granted by the California EPA Department of Toxic Substances Control (Cal EPA).  Generator copies of the Uniform Hazardous Waste Manifest shall be maintained by the Permittee for not less than three years or as directed by Cal EPA.

4.  The Permittee shall maintain records of the sources, quantity, name and address of hauler, date hauled, and point of legal disposal for nonhazardous industrial wastes and wastes granted a Cal EPA variance as described in Part B.3 above. Such records shall be kept a minimum of three years.  A legal point of disposal is defined as one for which waste discharge requirements have been prescribed by a California Regional Water Quality Control Board and which is in full compliance therewith or a facility authorized to receive such wastes by the jurisdiction(s) regulating the facility and is in full compliance with all permits, regulations and requirements.

5.  Discharge of industrial wastewater to a channel, stormdrain, stream, river, lake, ocean or other surface waters is prohibited unless authorized by a National Pollutant Discharge Elimination System (NPDES) permit issued by a California Regional Water Quality Control Board or the U.S. Environmental Protection Agency (EPA).

6.  The Permittee shall immediately notify the County of Los Angeles Department of Public Works (LACDPW) at (626) 458-3517 and the Publicly Owned Treatment Works (POTW) of all discharges that could cause problems to the POTW including slug loading, spills, bypasses, upsets, etc.  A follow-up written notification describing the discharge is required to be submitted within 5 days of the incident.

7.  The Permittee shall conform to the discharge prohibitions outlined in 40CFR 403.5 (a) (1) and 40CFR 403.5 (b).

COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC WORKS
INDUSTRIAL WASTE DISPOSAL PERMIT

| C1 |

PART C   GENERAL CONDITIONS AND LIMITATIONS

1. A copy of this permit shall be maintained on the premises where it will be available at all times to operating personnel

2. Industrial waste pretreatment, storage and disposal operations shall be conducted in such a manner that no nuisances are created

3. The permittee shall allow representatives of interested governmental agencies concerned with the disposal of industrial waste access at any reasonable time to take samples, inspect operations and review any records required by this permit

4. The permittee shall secure written approval from this Department before making any additions or modifications which may affect the quantity, quality, or method of disposal of industrial waste materials. Requests or plans for additions or modifications to industrial waste treatment facilities or method of disposal of disposal shall be submitted for approval to the Department of Public Works, Environmental Programs Division, PO Box 1460, Alhambra, CA 91802-1460.

5. This permit is subject to suspension or revocation if conditions exist which would justify denial of a permit, if permittee fails to correct unsatisfactory conditions, if any of the Conditions and Limitations of this permit have been violated or if Annual Industrial Waste Inspection Fees where required are not paid within 90 days from date of notification.

6. The Director of Public Works may modify this permit by addition, revision, or elimination of conditions and limitations as may be necessary to accomplish the purpose of ordinances and laws covering disposal of waste materials.

7. The permit is valid only for the facility and location named thereon and is not transferable. In the event of any change of ownership, name or control of the industrial waste facilities subject to this permit, the permittee shall notify the Director of Public Works prior to the effective date of such change. Permittee shall also notify the succeeding owner or operator of this permit by providing a copy of this permit by letter, as well as carbon copy (cc) the Director of Public Works. A new owner shall make application for an Industrial Waste Disposal Permit within 30 days from the date of assuming control of any facility subject to this permit.

8. Facilities subject to this permit shall not be abandoned. Cancellation of this permit may only be authorized pursuant to Los Angeles County Code Section 20.36.220.

COUNTY OF LOS ANGELES DEPARTMENT OF PUBLIC WORKS
INDUSTRIAL WASTE DISPOSAL PERMIT

| D1 |

PART D:  EFFLUENT QUALITY LIMITATIONS - JOINT OUTFALL PERMIT

| CONSTITUENTS | PHASE I CONTROL PERIOD LOCAL EFFLUENT LIMITS, mg/L* |
|---|---|
| Arsenic | 3 |
| Cadmium | 15 |
| Chromium (Total | 10 |
| Copper | 15 |
| Cyanide (Total) | 10 |
| Dissolved Sulfides | 0.1 |
| Lead | 40 |
| Mercury | 2 |
| Nickel | 12 |
| pH Range | Never lower than 6 |
| Silver | 5 |
| Zinc | 25 |
| Floatable Oil & Grease | None visible |
| Temperature | 140°F |
| Total Identifiable Chlorinated Hydrocarbons** | Essentially None |

\*      Maximum concentration at any time
\*\*     Total Identifiable Chlorinated Hydrocarbons (TICH) comprise:

Aldrin and Dieldrin;
Endrin and Toxaphene
Chlordane (cis & trans), trans-nonachlor, oxychlordane, heptachlor,
and heptachlor epoxide
DDT and derivatives: p,p', and o, p' isomers of DDT, DDD, and DDE
HCH: sum of α, β, γ, δ isomers of hexachlorocyclohexane
Polychlorinated biphenyls (PCB's)



**DONALD L. WOLFE, Director**

# COUNTY OF LOS ANGELES

## DEPARTMENT OF PUBLIC WORKS

*"To Enrich Lives Through Effective and Caring Service"*

900 SOUTH FREMONT AVENUE
ALHAMBRA, CALIFORNIA 91803-1331
Telephone: (626) 458-5100
http://dpw.lacounty.gov

ADDRESS ALL CORRESPONDENCE TO:
P.O. BOX 1460
ALHAMBRA, CALIFORNIA 91802-1460

IN REPLY PLEASE
REFER TO FILE: EP-1
008379-037519

Mr. Hussain Shaikh
Pacific Chemical
935 East Artesia Boulevard
Carson, CA 90746

Dear: Mr. Shaikh

**TRANSMITTAL OF APPROVED PLANS (A560883)**
**FACILITY LOCATED AT 935 EAST ARTESIA BOULEVARD, CARSON (22)**

Enclosed are two sets of approved industrial waste disposal plans. The plans must be presented to the local building official when filing for any building or plumbing permits which may be required if new construction or plumbing changes are indicated on the plans.

One set of these plans should be retained by your firm as a permanent record.

If you have any questions, please contact Mr. Rogelio Gamino of this office at (626) 458-3571, Monday through Thursday, 7 a.m. to 5:30 p.m.

Very truly yours,

DONALD L. WOLFE
Director of Public Works

TIM SMITH
Senior Civil Engineer
Environmental Programs Division

RG:my
P:\sec\Shaikh C560887

Enc.



# COUNTY SANITATION DISTRICTS
## OF LOS ANGELES COUNTY

STEPHEN R  MAGUIN
*Chief Engineer and General Manager*

1955 Workman Mill Road
Whittier  CA 90601-1400
Mailing Address: P. O. Box 4998, Whittier, CA 90607-4998
Telephone: (562) 699-7411  Fax  (562) 908-4224
www.lacsd.org

March 10, 2008
Facility ID:2082711

Frank Chin
Los Angeles County Department of Public Works
P. O. Box 1460
Alhambra, CA 91802-1460

Dear Mr. Chin:

Industrial Wastewater Discharge Permit No. 016768

Pacifica Chemical Inc.
935 E. Artesia Boulevard
Carson, CA 90746

  Enclosed are  approved plans and copies of the approved Industrial Wastewater Discharge Permit for the subject company.  This permit application was submitted in accordance with Ordinance requirements.  The approved permit consists of the approved permit application and plans, this approval letter, the Industrial Wastewater Discharge Permit Requirement list and the Industrial Wastewater Discharge Permit Data Sheet. Please review these for compliance with your requirements, and retain the copies you require for your files.  The applicant's copy of the approved plans and Industrial Wastewater Discharge Permit, along with a copy of this letter and requirement list, should be forwarded to the applicant.  A copy of this letter is forwarded to the applicant as notification of the Districts' permit requirements, which are in force from the current date.  If any additional permit requirements are issued to the applicant by your agency, copies should be forwarded to the Districts for our records.

  Approval of the permit is subject to compliance with all applicable Ordinance requirements, upon any corrections shown in red on the drawings, and upon the items indicated on the attached requirement list.  Failure to comply with all items on the requirement list, including the deadline for submittal of approvable plans, invalidates this approval and issuance.  Invalidation of this permit will result in the permittee being deemed to be operating without a valid permit and subject to immediate discontinuance of sewer services for industrial operations.

Frank Chin                                    -2-                          March 10, 2008

If you have any questions concerning these requirements, please call Shannon Grund of the Districts' Industrial Waste Section at extension 2913.

Very truly yours,

Stephen R. Maguin

Suzanne S. Wienke
Supervising Civil Engineer

cc:   Mr. Hussain  Shaikh
      President
      Pacifica Chemical Inc.
      935 E. Artesia Blvd.
      Carson, CA 90746

SANITATION DISTRICTS OF LOS ANGELES COUNTY

INDUSTRIAL WASTE SECTION
1955 Workman Mill Road
Whittier, CA 90601
P.O. Box 4998
Whittier, CA 90607-4998
(562) 699-7411 Ext. 2900
FAX: (562) 908-4224

## INDUSTRIAL WASTEWATER DISCHARGE PERMIT
## REQUIREMENT LIST

The approval and issuance of this permit is being made conditionally and subject to Pacifica Chemical Inc. being in compliance with all indicated items on this list and accompanying data sheet. Satisfactory evidence of compliance with these conditions should be supplied to the Districts where requested. Satisfactory evidence will consist of a minimum of written notification signed by a responsible company official, and in some cases may involve the submission of additional drawings and data, or verification by a Districts representative. Failure to comply with all items on the requirement list, including all deadlines specified, invalidates this approval and issuance. Invalidation of this permit will result in Pacifica Chemical Inc. being deemed to be operating without a valid permit and subject to immediate discontinuance of sewer services for industrial operations.

| | |
|---|---|
| **FACILITY NAME** | Pacifica Chemical Inc. |
| **FACILITY ID** | 2082711 |
| **PERMIT NUMBER** | 016768 |
| **DATE OF APPROVAL** | March 10, 2008 |
| **DATE OF EXPIRATION** | March 09, 2013 |

**1. Approval SIU (Rev 01-01-2007)**
This Industrial Wastewater Discharge Permit is issued only for the discharge of treated wastewater from the operations listed as "outgoing" in Section 3 of the Permit Data Sheet. This Permit will expire as shown in Section 2 of the Permit Data Sheet.

**2. Local Limits (Rev 01-01-2007)**
Numerical limits have been established by the Districts for the temperature, pH, flashpoint, and maximum concentrations of heavy metals and other toxic materials permissible in an industrial discharge to the public sewers. The limits are those shown in Section 6 of the Permit Data Sheet with the designation of Local in the Regulation column. In addition, applicable state and federal limits are shown in Section 6 of the Permit Data Sheet with the respective designations of State and Federal in the Regulation column. The permittee is advised that any discharge in excess of the limits shown in Section 6 of the Permit Data Sheet requires corrective action by the discharger. Penalties applicable to violations of these limits will be strictly enforced by the Districts.

**3. Soap COD-BOD7 Ratio (Rev 02-28-2008)**
There shall be no discharge of wastewater streams in which both the COD/BOD7 ratio exceeds 10.0 and the COD exceeds 1.10 kg/kkg of anhydrous product. The permittee shall provide a one-time certification of compliance with this requirement within 30 days of permit issuance. The term Anhydrous Product shall mean the theoretical product if all water were removed from the actual product.

Pacifica Chemical Inc.
Industrial Waste Permit Number: 016768
Permit Approved: 3-10-2008

2 of 6

4.  **SMR (Rev 01-01-2007)**

Self-monitoring of the industrial wastewater must be performed at the intervals indicated in Section 5 of the Permit Data Sheet and reported on the Self-Monitoring Report (SMR) form.  The Districts will send the necessary SMR forms before each reporting period.  All indicated analyses must be performed by a State or Districts' certified laboratory.  The certification section of the SMR form must be completed and signed by a responsible company official.  For each reporting period, the completed SMR form and the corresponding laboratory report must be submitted to the Districts' Industrial Waste Section no later than the due date indicated on the form.  The wastewater samples analyzed must be collected in such a way that they are representative of the total discharge generated by a typical day's operations.  Each representative sample (composite and/or grab) should be collected over one 24-hour period and analyzed for all parameters in Section 5.  All representative samples must meet all applicable limits.  It is the permittee's responsibility to submit results from any additional self-monitoring, and to notify the Districts of any other toxic materials, which are known to be present in the wastewater.  If the permittee is subject to EPA Categorical Pretreatment Standards, violations of effluent categorical limitations must be reported to the Districts within 24 hours of the discharger becoming aware of the violation at (562) 699-7411, extension 2907.  Additional sampling and analysis must be conducted for all categorical parameters in violation.  The results of the repeat analysis must be submitted within 30 days of becoming aware of the violation.

5.  **Records Retention (Rev 01-01-2007)**

The permittee shall maintain records of all information resulting from any monitoring activities required by 40 CFR 403.12, including self-monitoring reports and baseline monitoring reports.  Such records shall include for all samples:

   a)  The date, exact place, method, and time of sampling and the name of the person or persons taking the samples;

   b)  The dates analyses were performed;

   c)  Who performed the analyses;

   d)  The analytical techniques/methods used; and

   e)  The results of such analyses.

The permittee is required to retain for a minimum of four years any records of monitoring activities and results (whether or not such monitoring activities are required by 40 CFR 403.12) and shall make such records available for inspection and copying by the Districts.  This period of retention shall be extended during the course of any unresolved litigation regarding the permittee or when requested by the Districts.

6.  **Sample Point (Rev 01-01-2007)**

The permittee's legal sampling point(s) are indicated in Section 4 of the Permit Data Sheet.  The permittee is responsible for maintaining and cleaning the sampling point(s) to prevent any build-up of oil and grease, sediment or sludge; failure to do so does not invalidate sampling test results.  Analytical results from samples taken from the location(s) according to accepted sampling procedures shall be accepted as binding.  Safe and convenient access to the sampling point(s) must be provided for representatives of the Districts.  Should Districts' staff determine that the sampling locations(s) are unsafe, difficult to access or require modification, the permittee must propose alternatives which will provide sampling point(s) acceptable to the Districts.  If a locked security enclosure is necessary, a Districts' padlock shall be used to secure the sampling point area.  The permittee must call (562) 699-7411, extension 2907 to make arrangements for installation of the lock.

Catalina Chemical In.
Industrial Waste Permit Number: 016768
Permit Approved: 3/10/2005

**7.  Split Sample (Rev 01-01-2007)**
The Districts' personnel <u>may</u> provide a split of any composite sample collected if sufficient sample volume is available.  Districts' personnel <u>may</u> also provide split, concurrent, or sequential grab samples.  These samples will be left with a designated company representative.  If the designee is not available, these samples will be left with whoever is available.

The permittee is required to follow appropriate preservation techniques, analytical procedures, and holding periods specified in 40 CFR 136, if the analytical test results from these samples are to be used for compliance or surcharge reporting purposes.  Failure to follow the prescribed procedures will invalidate the test results.

**8.  Pretreatment Maintenance (Rev 01-01-2007)**
The permittee is required to have in place a program of regular pretreatment equipment maintenance and cleaning to prevent a build-up of grit, oil, or grease or other prohibited materials which may enter the sewer and to ensure compliance at all times with applicable industrial wastewater effluent limits.  The permittee should also provide trained personnel for proper operation and regular maintenance of all components of the pretreatment system and should also maintain an adequate supply of treatment chemicals as well as replacement parts for key components of the pretreatment system.

**9.  Floor Drains Advisory (Rev 01-01-2007)**
All floor drains shall have grated covers with 3/8" maximum openings to prevent larger particles from clogging the sewer.

**10.  Rainwater, General (Rev 01-01-2007)**
The Districts' policy on rainwater and stormwater is established under the provisions of Section 305 of the Wastewater Ordinance as amended November 1, 1989.  Section 305 specifies that no rainwater or stormwater shall be discharged to the Districts' sewerage system, except where prior approval has been given by the Chief Engineer.  As a general practice, the Districts require roofing or regrading of all open areas with exposed drains which discharge to the public sewer.  This practice protects the Districts' sewerage system from excessive hydraulic loads that can be created by unwanted rainwater and stormwater runoff.  Rainwater diversion systems shall divert any rainfall in excess of 0.1 inch to the storm drain.  Diverted rainwater must meet any requirements of the Regional Water Quality Control Board.  Any rainwater discharge to the sewer system must be in accordance with the Districts' "Guidelines for the Discharge of Rainwater, Stormwater, Groundwater and Other Water Discharges" available at http://www.lacsd.org/info/industrial_waste/forms/default.asp.

**11.  Spill Containment, General (Rev 01-01-2007)**
Any industrial user with a significant potential to discharge restricted materials, as defined in the Districts' "Slug Discharge Control and Spill Containment Policy" available at http://www.lacsd.org/info/industrial_waste/policies/slugdischarge.asp, is required to install and maintain an adequate spill containment system.

Pacific Chemical Inc.
Industrial Waste Permit Number 036768
Permit Approved: 3-19-2008

**12. Spill Containment Logbook (Rev 01-01-2007)**
If the permittee has restricted materials which must be contained in spill containment areas, the permittee is required to maintain a log book that is available to Districts' employees upon request or during inspections. Any material that enters a spill containment area must be handled as a spill, including rainwater and any process wastewater that results from "normal" operations. All materials removed from spill containment areas, whether restricted or non-restricted as defined in the Districts' "Slug Discharge Control and Spill Containment Policy" (http://www.lacsd.org/info/industrial_waste/policies/slugdischarge.asp) must be included in the log book. The log book must contain the following information:

a) Date and time

b) Identity of material (an analysis is required if the spill is of unknown origin to determine the type of treatment or remediation for proper disposal)

c) Quantity (volume)

d) Cause

e) Method of disposal (includes transfer to off-site treatment system)

f) Corrective action implemented to prevent spills from reoccurring

**13. Haul Untreated Spills (Rev 01-01-2007)**
Under no circumstances shall process solution spills be discharged directly to the sewer. Unreclaimed or untreated process solution spills shall be hauled to a legal disposal site.

**14. Manually Actuated Pump (Rev 01-01-2007)**
Spills may be pumped from containment areas to pretreatment systems for treatment prior to discharge after determining their treatability and entering the information into the required log book. Pumps used for this purpose must be manually actuated and there must be no other available access to the sewer.

**15. Spill Containment Modifications**
The spill containment trench in Area 2 must be disconnected and sealed off from the wastewater trench.
Also, a berm must be installed in the tote storage area to provide adequate containment for the chemical storage totes.

**16. Spill Containment, Proposed (Rev 01-01-2007)**
This approval of the proposed spill containment system by the Districts is for only the general concept presented. The proper construction and maintenance of the system is the responsibility of the permittee and its associated contractors.

**17. Walls-Dikes Integrity (Rev 01-01-2007)**
When spill containment walls or dikes are constructed on existing concrete or masonry, the contact mortar or concrete shall be bonded to the existing surface and all joints shall be sealed with acid resistant sealant or materials.

### 18. Slug Discharge Control Plan Adv (Rev 01-01-2007)

Upon request by the Districts, the permittee is required to develop a Slug Discharge Control Plan which complies with the Districts' Spill Containment Guidelines and includes, at a minimum, the following elements:

a) Description of discharge practices, including non-routine batch discharges (non-routine batch discharges are not allowed unless specified as an approved discharge in the permit);

b) Description of stored chemicals;

c) Procedures for immediately notifying the Districts of slug discharges, including any discharge that would violate a prohibition under 40 CFR 403.5(b), with procedures for follow-up written notification within five days;

d) If necessary, procedures to prevent adverse impact from accidental spills, including inspection and maintenance of storage areas, handling and transfer of materials, loading operations, control of plant site run-off, worker training, building of containment structures or equipment, measures for containing toxic organic pollutants (including solvents), and/or measures and equipment for emergency response.

e) This plan must be maintained at the discharge location and must be made available for review by Districts' personnel. Copies may be required to be submitted to the Districts for review.

### 19. Penalties (Rev 01-01-2007)

Every person or permittee violating any provision of this Industrial Wastewater Discharge Permit (permit) or the Districts' *Wastewater Ordinance* (*Ordinance*) is guilty of a misdemeanor, and upon conviction is punishable as provided by law (California Health & Safety Code Section 4766 currently allows for a fine not to exceed $1,000, or imprisonment for not more than thirty days, or both. Misdemeanor violations of California Health & Safety Code Section 25189.5 currently allow for a fine not to exceed $100,000 and imprisonment not to exceed one year. Misdemeanor violations of the Clean Water Act, 33 USC 1319(c) currently allow for a fine not to exceed $25,000 and imprisonment not to exceed one year). Each day during which any violation continues shall constitute a separate offense. The Chief Engineer is authorized to seek, through the office of the District Attorney of Los Angeles County or other appropriated authority, prosecution of criminal charges against any person violating any provision of the permit or the *Ordinance*. Violations of discharge limitations established under this permit or the *Ordinance* may also be violations of state and federal environmental laws which may be punishable as felonies and which may also carry substantial fines and penalties (California Health & Safety Code 25189-5 currently allows for a fine not to exceed $100,000 (except the fine can be up to $250,000 for great bodily injury or substantial probability of death) and imprisonment up to three years and 33 USC Section 1319(c) currently allows for a fine not to exceed $1,000,000 for a first conviction and imprisonment of up to 15 years).

In addition, any person or permittee who violates any provision of the *Ordinance* or any term or condition of any permit issued pursuant to the *Ordinance* or plan approval that prohibits or limits the discharge of any waste or imposes any pretreatment requirement shall be civilly liable to the Districts in the maximum sum provided by law for each day in which such violation occurs (California Government Code Section 54740 currently allows for civil penalties which include, but are not limited to, a fine of up to $25,000 per day of violation).

### 20. Additional Pretreatment Advisory (Rev 01-01-2007)

The permittee is advised that additional industrial wastewater pretreatment equipment or other measures may be required if inspection or monitoring indicates prohibited materials are discharged. If such measures include installation of new pretreatment equipment, plans and necessary documentation for such added equipment must be submitted to the local permit agency and the Districts for approval prior to construction.

**21. Prohibited Discharge Notification (Rev 01-01-2007)**
In the event of the discharge of any prohibited waste, excessive quantities or concentrations of any restricted waste, or of the discharge of material not covered under this permit, the company must immediately notify the Districts by calling (562) 699-7411, extension 2907, during office hours or the Long Beach Pumping Plant, (562) 437-6520, during non-office hours.

The Districts must also be notified of any circumstances affecting plant processes or facility operations that may potentially result in the discharge of similarly prohibited or restricted wastes, including but not limited to the malfunction, upset or improper operation of plant processes, pretreatment systems, spill containment facilities, or diversion/bypass mechanisms. Failure to immediately notify the Districts of any such event or condition is a violation of the Wastewater Ordinance.

**22. Surcharge Testing (Rev 01-01-2007)**
If the permittee is required or chooses to file a Long Form Surcharge Statement, surcharge tests of the industrial wastewater must be performed at the intervals indicated on Table A of the Long Form Surcharge Statement booklet and submitted annually with the wastewater treatment surcharge statement. The company is reminded that the surcharge testing requirements are independent of the test for self-monitoring reports required in Section 5 of the Permit Data Sheet. For further information on surcharge testing requirements, please contact the Districts' Surcharge group at (562) 699-7411, extension 2600.

**23. Capacity Unit Increase Advisory (Rev 01-01-2007)**
If the wastewater flow rate and strength data indicate an increase in the sewerage capacity unit usage by 25% or more, the permittee may be required to revise its permit, and will be required to pay a corresponding connection fee should existing sewerage baseline capacity units be insufficient to accommodate discharge at that time.

**24. Status Change Notification (Rev 01-01-2007)**
The permittee is required to notify the Districts of any change in the status of the subject facility, if ownership or operating responsibility changes, or if the industrial waste connection is legally abandoned.

**25. 25 Percent Increase - Rev Req (Rev 01-01-2007)**
A new permit application must be submitted when there is a significant change in wastewater quantity (more than 25 percent) or quality from that given in the approved permit information. The completed application must be submitted to the local governmental agency for initial processing prior to Districts' review. Approval must be obtained prior to any construction of new facilities.

**26. Waste Hauler Reports (Rev 01-01-2007)**
Waste hauler reports must be obtained and kept on file for a period of at least four years for any solid wastes from the wastewater pretreatment system and liquid wastes leaving the plant other than in the sewer system. These reports must be made available to representatives of the Districts upon request.

**27. Equipment Changes (Rev 01-01-2007)**
Engineering drawings for changes in equipment or processes must be submitted to the Districts through the local agency for approval before implementation.

**28. Construction Deadline (Spill Containment), 60 days (Rev 01-01-2007)**
The proposed construction shall be completed within 60 days from the date of approval.

INDUSTRIAL WASTE SECTION
1955 Workman Mill Road
Whittier, CA 90601
P.O. Box 4998
Whittier, CA 90607-4998
(562) 699-7411 Ext. 2900
FAX: (562) 908-4224

SANITATION DISTRICTS OF LOS ANGELES COUNTY

# SANITATION DISTRICTS OF LOS ANGELES COUNTY
## INDUSTRIAL WASTEWATER DISCHARGE PERMIT DATA SHEET

### SECTION 1: *General Information*

| | | | |
|---|---|---|---|
| Permit Number | 016768 | Facility ID | 2082711 |
| Facility Name | Pacifica Chemical Inc. | Parcel Number | 7326-002-033 |
| | | | 8117-008-014 |
| Facility Address | 935 E. Artesia Boulevard | District Number | 08 |
| | Carson, CA 90746 | Thomas Bros. Grid | 734/E7 |
| Facility Permit Contact | Hussain Shaikh | Number of Employees | 20 |
| Telephone Number | 310-763-5600 | | |
| Local Agency | Los Angeles County Department of Public Works | | |
| Agency Address | P. O. Box 1460 | | |
| | Alhambra, CA 91802-1460 | | |

### SECTION 2: *Permit Status*

| | |
|---|---|
| Industrial Waste Discharge Permit Status | **APPROVED** |
| Application Received Date | May 20, 2005 |
| Approval Date | March 10, 2008 |
| Expiration Date | March 09, 2013 |

### SECTION 3: *Flow Stream Information*

| Name | Type | Direction | Federal Regulation | State Regulation | Local Regulation |
|---|---|---|---|---|---|
| RO reject, and floor and equipment wash down | Process Flow | Outgoing | 403 | | IU Standard - All Others |

**NOTES** (re: Regulations, Section 3):

Federal Regulation: 403 - 40CFR 403 IU

Local Regulation: IU Standard - All Others

### SECTION 4: *Sample Point Information*

| Name | Description | Location Status | Location Type | Location Category |
|---|---|---|---|---|
| 016768A | The existing weir box located at the northwest corner of the facility. | Active-IW-Permit Required | Final Effluent | Noncategorical Significant |
| Point of Connection to Sewer: | The local sewer on Walnut Street. | | | |
| Physical Location: | 935 E. Artesia Boulevard Carson, CA 90746 | | | |

Purdue Chemical Inc.
Industrial Waste Permit Number 016768
Permit Approved 3-10-2008

2 of 4

## SECTION 5: *Monitoring Requirements*

Sample Location:      016768A (The existing weir box located at the northwest corner of the facility.)

| SMR Requirement | Frequency | Sample Method | Units |
|---|---|---|---|
| COD, Total | Semiannually | Composite | mg/L |
| MBAS | Semiannually | Composite | mg/L |
| Oil & Grease | Semiannually | Grab | mg/L |
| pH | Semiannually | Grab | S.U. |
| Solids, Suspended | Semiannually | Composite | mg/L |
| Sulfide, Soluble | Semiannually | Grab | mg/L |

Beginning date of next required SMR reporting period:      January 01, 2008

## SECTION 6: *Substance Limits*

Sample Location:      016768A (The existing weir box located at the northwest corner of the facility.)

| Substance Name | Regulation | Sample Method | At Any Time Max | At Any Time Min | Daily Avg Max | Average Limit |
|---|---|---|---|---|---|---|
| pH | Federal | Composite | | 5.0 S.U. | | |
| pH | Federal | Grab | | 5.0 S.U. | | |
| pH | Local | Composite | | 6.0 S.U. | | |
| pH | Local | Grab | | 6.0 S.U. | | |
| Flash Point | Federal | Composite | | 60 Deg. C | | |
| Flash Point | Federal | Grab | | 60 Deg. C | | |
| Flash Point | Local | Composite | | 60 Deg. C | | |
| Flash Point | Local | Grab | | 60 Deg. C | | |
| Temperature | Local | Grab | 140 Deg. F | | | |
| Solids, Suspended | | | | | | |
| Cyanide | Local | Composite | 10 mg/L | | | |
| Cyanide | Local | Grab | 10 mg/L | | | |
| Sulfide, Soluble | Local | Grab | 0.1 mg/L | | | |
| MBAS | | | | | | |
| COD, Total | | | | | | |
| Oil & Grease | | | | | | |
| Total Detectable DDT | Local | Composite | 0 ug/L | | | |
| Total Detectable DDT | Local | Grab | 0 ug/L | | | |
| Aldrin | Local | Composite | 0 ug/L | | | |
| Aldrin | Local | Grab | 0 ug/L | | | |
| Dieldrin | Local | Composite | 0 ug/L | | | |
| Dieldrin | Local | Grab | 0 ug/L | | | |
| Endrin | Local | Composite | 0 ug/L | | | |
| Endrin | Local | Grab | 0 ug/L | | | |
| Toxaphene | Local | Composite | 0 ug/L | | | |
| Toxaphene | Local | Grab | 0 ug/L | | | |
| Total Detectable PCBs | Local | Composite | 0 ug/L | | | |
| Total Detectable PCBs | Local | Grab | 0 ug/L | | | |
| Total HCH | Local | Composite | 0 ug/L | | | |
| Total HCH | Local | Grab | 0 ug/L | | | |
| Total Detected Chlordanes | Local | Composite | 0 ug/L | | | |
| Total Detected Chlordanes | Local | Grab | 0 ug/L | | | |
| Arsenic, Total | Local | Composite | 3 mg/L | | | |
| Arsenic, Total | Local | Grab | 3 mg/L | | | |

| Cadmium, Total | Local | Composite | 15 mg/L | | | |
|---|---|---|---|---|---|---|
| Cadmium, Total | Local | Grab | 15 mg/L | | | |
| Chromium, Total | Local | Composite | 10 mg/L | | | |
| Chromium, Total | Local | Grab | 10 mg/L | | | |
| Copper, Total | Local | Composite | 15 mg/L | | | |
| Copper, Total | Local | Grab | 15 mg/L | | | |
| Lead, Total | Local | Composite | 40 mg/L | | | |
| Lead, Total | Local | Grab | 40 mg/L | | | |
| Mercury, Total | Local | Composite | 2 mg/L | | | |
| Mercury, Total | Local | Grab | 2 mg/L | | | |
| Nickel, Total | Local | Composite | 12 mg/L | | | |
| Nickel, Total | Local | Grab | 12 mg/L | | | |
| Silver, Total | Local | Composite | 5 mg/L | | | |
| Silver, Total | Local | Grab | 5 mg/L | | | |
| Zinc, Total | Local | Composite | 25 mg/L | | | |
| Zinc, Total | Local | Grab | 25 mg/L | | | |

**SECTION 7:** *Flow Limits*

Sample Location:       016768A (The existing weir box located at the northwest corner of the facility.)

| Limit Type | Flow Data Type | Start Time | End Time | Flow Limit Value | Flow Units |
|---|---|---|---|---|---|
| Daily Average Flow Limit | Average | | | 5900 | GPD |
| 5-minute Peak Flow Limit | Maximum | | | 22 | gpm |

**SECTION 8:** *Pretreatment Equipment/Process*

Pretreatment Process Name:       Solids Removal

| Equipment Name | Equipment Type |
|---|---|
| Clarifiers | Pretreatment |
| Weir Box | Pretreatment |

**SECTION 9:** *Program Requirements*

| Program Name | Status | Due Date | Approved Date | Plan Name |
|---|---|---|---|---|
| Spill Containment | Approved | | 2/12/2008 | Spill Containment |

**SECTION 10:** *Submissions/Completions Requirements*

| Required Submissions/Completions | Due Date |
|---|---|
| Submit COD/BOD7 Certification | 04/10/2008 |
| Construction Deadline (spill containment modifications), 60 days | 05/10/2008 |

Pacifica Chemical Inc
Industrial Waste Permit Number: 016763
Permit Approved: 3/10/2008

Except as directed in permit requirement statements, all submissions and notifications of completions should be mailed to:

County Sanitation Districts of Los Angeles County
Industrial Waste Section
Shannon Grund
P.O. Box 4998
Whittier, CA 90607-4998

Permit related questions should be directed to:

Shannon Grund
562-699-7411 Ext. 2913
sgrund@lacsd.org

Product Description
Industrial Waste Permit Number: 004-001
Permit Approved: 3-10-2006

## SELF-MONITORING REPORTING SCHEDULE

Permittees required to submit self-monitoring reports per Section 5 of this Permit Data Sheet are subject to the following schedule:

| SELF-MONITORING REPORTING SCHEDULE[1] | | |
|---|---|---|
| **Analysis Frequency** | **Reporting Period** | **Due Date[2]** |
| Annually | July 1 - June 30 | July 15 (the following year) |
| Semi-annually | January 1 - June 30<br>July 1 - December 31 | July 15<br>January 15 |
| Quarterly | January 1 - March 31<br>April 1 - June 30<br>July 1 - September 30<br>October 1 - December 31 | April 15<br>July 15<br>October 15<br>January 15 |
| Monthly | Day 1 - Day 31 of the month | Day 15 (the following month) |

[1]The laboratory data sheet(s) for each analysis performed during the reporting period must be included with the Self-monitoring Report form.  However, only the results from the most recent sample collected during the reporting period should be recorded on the Self-monitoring Report form.

[2]The Self-monitoring Report form may be submitted before the due date as long as the sample is taken during the appropriate reporting period.

## SURCHARGE TEST REQUIREMENTS

Industrial users participating in the Sanitation Districts' Surcharge Program may be subject to additional self-monitoring requirements besides those specified in the permit conditions.  Surcharge testing parameters include Chemical Oxygen Demand (COD) and suspended solids (SS).  For companies that file Long Form Surcharge Statements, the testing frequency for COD and SS is based on flow as shown in the table below.  Surcharge wastewater analyses must adequately represent the average daily discharge to the sewer system and the results must be submitted annually with the wastewater treatment surcharge statement in accordance with each year's "Instruction for Filing a Long Form Wastewater Treatment Surcharge Statement."  **Surcharge test requirements are independent of the self-monitoring report requirements**.

| SURCHARGE TESTING FREQUENCY FOR COD AND SS<br>(Must be 24-hour Composite Samples) | |
|---|---|
| **Yearly Cumulative Flow from Each Outlet<br>(in million gallons)** | **Required Testing Frequency** |
| Less than 15.00 | 1 sample per 3 months |
| 15.01 to 40.00 | 1 sample per 2 months |
| 40.01 to 100.00 | 2 samples per month |
| 100.01 to 250.00 | 1 sample per week |
| More than 250.00 | 2 samples per week |

PERMIT FOR INDUSTRIAL WASTEWATER DISCHARGE
COUNTY SANITATION DISTRICTS OF LOS ANGELES COUNTY
1955 Workman Mill Road / Whittier, CA
Mailing Address: P.O. Box 4998 / Whittier, California 90607-4998
Stephen R. Maguin, Chief Engineer and General Manager
(562) 699-7411

PERMIT NO. _16766_

Fac ID: _20827/1_

01 CHECK ONE: New Sewer Connection ☐     Existing Sewer Connection ☒

02 Applicant   PACIFICA CHEMICAL INCORPORATED (PCI)
               (Legal Company Name)

03 Check one and fill in appropriate information
   ☒ Corporation   Name  PACIFICA CHEMICAL INCORPORATED
                   Year Incorporated  1978    State of Incorporation  CA        ID#  95-3301661
   ☐ Partnership   Name _____  Partners _____
   ☐ Sole Proprietor Name _____  Business Names _____

04 Situs Address    935 E. Artesia Blvd.,        Carson                    CA            90746
                    (Street)                     (City)                   (State)       (Zip)

05 Mailing Address  Same as above
                    (Street)                     (City)                   (State)       (Zip)

06 Point of Discharge  ~~Same as above~~   local sewer in Walnut Street north of the facility

07 Number of years applicant has been in business at present location     3          6
                                                                        (yrs)     (months)

08 Name of Property Owner   Hussain Shaikh
   Address of Property Owner  935 E. Artesia Blvd.,     CA        90746        310)464-8900
                              (Street)                 (City)    (Zip)        (Telephone Number)

09 Assessors Map Book No. | 7 | | 3 | | 1 | | 9 | Page No. | 0 | | 3 | | 3 | Parcel No. | 0 | | 4 | | 1 |

10 Type of Industry   Manufactures textile & industrial chemicals   | 2 | | 8 | | 4 | | 2 |, | 2 | | 8 | | 4 | | 4 |
                      (General Description)                              (Federal SIC No.)

11 Number of Employees (Full Time)   20          (Part Time) _____

12 Raw Materials Used   Nonyl Phenol, Acetic Acid, Sodium Hypochlorite, Hydrogen Peroxide, Soda Ash, Sodium Chloride,
                        (General Description – Add Additional Sheets as Needed)
                        Sodium Hydrosulfide, Sodium Gluconate
                                                                                    (Daily Amount Used)

13 Products Produced   Detergent, Fabric Softener, Fabric Lubricant
                       (General Description – Add Additional Sheets as Needed)
                                                                                 (Daily Amount Produced)

14 Wastewater Producing Operations   Washing chemical mixing tanks, drums, and totes. Please see Attachment 1.
   _Floor and equipment wash down_ and RO reject
                       (Full Description – Add Additional Sheets as Needed)

                                                                        M☒ T☒ W☒ Th☒
15 Time of Discharge  8:30   AM☒ PM☐  5:00   AM☐ PM☒. Shifts per day  1   Days per Week F☒ Sa☐ Su☐

16 Wastewater Flow Rate   5,900   Gallons per Day _22_ _____  Gallons per Minute
                          (Average)                        (Peak)

17 Constituents of Wastewater Discharge   COD, SS, MBAS

                       (General Description – Attach Chemical Analysis Results to the Application)

18 Person in company responsible for industrial wastewater discharge
   Hussain Shaikh                  President                        310)464-8900
        (Name)                     (Position)                     (Telephone Number)

I affirm that all information furnished is true and correct and that the applicant will comply with the conditions stated on the back of this permit form.
Date        09/26          20 07

19 Signature for Applicant _____  _____    President
   (Company Administrative Official)   (Name)                           (Position)

20 Approved/Reviewed by City or County Official          Approved by Sanitation Districts of Los Angeles County
   Date  10/1/07                    #533702          Date   March 10, 2008
   For L.A. County Dept. of Public Works . . . ☐     Expiration Date   March 9, 2013
   City of _____  #N 008379         Stephen R. Maguin, Chief Engineer and General Manager
   Name  ROGELIO GAMINO   -045508                    By _____
   Position  SCEA                                    Position   Supervising Civil Engineer

Note: Please submit application first to the applicable City or County agency in which the point of discharge is located. Please contact the local agency for the required permit-processing fee. Submit the **original application** (Do not send copies).

CONTINUED ON NEXT PAGE



FIGURE 1 : SITE PLAN

PACIFICA CHEMICAL, INC.

935 E. ARTESIA BLVD.
CARSON, CA 90746

INDUSTRIAL WASTEWATER
DISCHARGE PERMIT



TANK LIST

NO. 1: HYDROGEN PEROXIDE MIXING TANK (HEIGHTXDIAMETER: 5'X7')
NO. 2: HYDROGEN PEROXIDE STORAGE TANK (6'X4'-2")
NO. 3: WATER STORAGE TANK (7'-8"X7'-4")
NO. 4: HYDROGEN PEROXIDE STORAGE TANK (14'-8"X8'-10")
NO. 5: MIXING TANK (4'X6'-6")
NO. 6: MIXING TANK (4'X4'-4")
NO. 7: MIXING TANK (4'X4'-4")
NO. 8: MIXING TANK (5'-2"X3'-9")
NO. 9: SODIUM HYPOCHLORITE STORAGE TANK (7'-4"X7'-4")
NO. 10: SODIUM HYPOCHLORITE STORAGE TANK (7'-4"X7'-4")
NO. 11: CAUSTIC SODA STORAGE TANK (12'-4"X10'-4")
NO. 12: ACETIC ACID STORAGE TANK (12'-4"X10')
NO. 13: EMPTY, NOT IN USE (10'-4"X9'-3")
NO. 14: EMPTY, NOT IN USE (10'-4"X9'-3")
NO. 15: EMPTY, NOT IN USE (8'-8"X7'-6")
NO. 16: EMPTY, NOT IN USE (5'-6"X5'-10")
NO. 17: EMPTY, NOT IN USE (8'-6"X6'-5")

NOTES:

1. S: CHEMICAL STROAGE TANK (NO. 2, 4, 9, 10, 11, 12)
   W: WATER STORAGE TANK (NO. 3)
   M: MIXING TANK (NO. 1, 5, 6, 7, 8)
   E: EMPTY TANK NOT IN USE (NO. 13, 14, 15, 16, 17)

2. TANKS NO. 1, 5, 6, 7, 8 ARE USED AS MIXING TANKS TO PREPARE PRODUCTS.

3. WASTEWATER IS GENERATED WHEN 55-GALLON DRUMS & TOTES ARE CLEANED BY WASHING BEFORE THEY ARE FILLED WITH PRODUCT SOLUTIONS.

4. DEEP TRENCH IN THE TANK AREA 2 CAN BE USED AS A SPILL CONAINMENT STRUCTURE.

COUNTY OF LOS ANGELES
DEPT. OF PUBLIC WORKS
ENVIRONMENTAL PROGRAMS DIVISION
CLEARANCE
FOR INDUSTRIAL WASTES

Facilities for the collection and disposal of liquid industrial wastes including any floor drains, floor sinks, and interceptors or other pretreatment facilities shall be installed as shown on this plan with the traps, vents or other appurtenances required by the Plumbing Code. No additions or alterations of these facilities shall be made without the written permission of the Dept. of Public Works. This clearance does not permit or approve the violations of this provisions of any ordinance or statute.

By_____ Date 3/18/08
ENVIRONMENTAL PROGRAMS DIVISION

SCALE: 1"=25'-0"

0   12.5  25        50

NORTH

PACIFICA CHEMICAL, INC.

935 E. ARTESIA BLVD.
CARSON, CA 90746

INDUSTRIAL WASTEWATER
DISCHARGE PERMIT

FIGURE 2 : CHEMICAL TANK AREA