1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TC RICH, LLC, et al.,

                Plaintiffs,

      v.

HUSSAIN M. SHAIKH, et al.,

                Defendants.

Case No. CV 19-2123-DMG (AGRx)

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT [59, 61]**

     Before the Court are Defendant Hussain M. Shaikh's Motion for Partial Summary Judgment ("DMSJ") [Doc. # 59] and Plaintiffs' Motion for Partial Summary Judgment ("PMSJ") [Doc. # 61]. The motions are fully briefed. [Doc. ## 64 ("Opp. to PMSJ"), 65 ("Opp. to DMSJ"), 70 ("Reply ISO DMSJ"), 72 ("Reply ISO PMSJ")]. The Court held a hearing on the motions on February 19, 2021. For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Plaintiffs' Motion and **DENIES** Shaikh's Motion.

**I.**

**RELEVANT PROCEDURAL BACKGROUND**

     Plaintiffs TC Rich, LLC, Rifle Freight, Inc., Fleischer Custom Brokers, Richard Fleisher, and Jacqueline Fleischer initiated this action on March 21, 2019. [Doc. # 1.] In their operative First Amended Complaint ("FAC"), Plaintiffs allege causes of action for, *inter alia*, cost recovery and contribution under the Comprehensive Environmental

Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and injunctive relief under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*, against Shaikh, Haroon Khan, and Shah Chemical Corporation ("Shah"). The Clerk entered default against Shah on August 21, 2019 [Doc. # 37], and the Court approved Plaintiffs' voluntary dismissal of the claims against Khan on December 10, 2019 [Doc. # 50].   On November 27, 2019, Shaikh filed Counterclaims against TC Rich and Richard and Jacqueline Fleischer for cost recovery and contribution under CERCLA and its state-law equivalent, the California Hazardous Substance Account Act ("HSAA"), Cal. Health & Safety Code § 25300 *et seq.*, as well as a declaratory relief claim for equitable indemnity and contribution.

This case is related to another proceeding before this Court, *TC Rich, LLC, et al. v. Pacifica Chemical, Inc., et al.*, No. CV 15-4878-DMG (AGRx), which involves the same Plaintiffs against Pacifica Chemical, Inc. ("Pacifica"), a corporation owned by Shaikh, and which involves a similar factual background.

The parties filed the instant cross-motions on January 22, 2021.   In Plaintiffs' motion, they seek partial summary judgment on their RCRA and CERCLA claims, full summary judgment on Shaikh's CERCLA and HSAA claims against the Fleischers, and full summary judgment on Shaikh's equitable indemnity and contribution claim.   In Shaikh's motion, he seeks summary judgment on his CERCLA and HSAA claims.

## II.

## FACTUAL BACKGROUND[1]

From 1979 to 1984, and again from 1987 to 2003, Shaikh owned the property at 132 W. 132nd Street in Los Angeles, California (the "Property").   PSUF 1, 22.   Haroon Khan

---

[1] The summarized facts are undisputed, unless otherwise stated.  Facts are drawn from Plaintiffs' Statement of Undisputed Facts ("PSUF"), as set forth in their Reply [Doc. # 73], and Defendant's Statement of Undisputed Facts ("DSUF"), as set forth in his Reply [Doc. # 70-1].  Many of both sides' purportedly disputed facts are not in fact controverted by the evidence, and the Court therefore cites to them as uncontroverted facts.  The Court has reviewed the parties' evidentiary objections.  To the extent the Court does not address any of them, it is because the Court did not rely on the objected-to evidence in reaching its ruling.  Any objections to such evidence are **OVERRULED as moot.**

-2-

held title to the Property from 1984 to 1987.  Shaikh leased the Property at various times to Shah and Pacifica, companies of which Shaikh was the sole owner, officer, and director.  PSUF 2-13.  Shah operated at the Property from 1979 until 1981, when it transferred operations to Pacifica, which operated there through at least 1999.  PSUF 15-16.  Pacifica continued operations at the Property through the time period when Khan held title.  PSUF 23.  Khan was not involved in Pacifica's ownership or operation.  PSUF 24.

Shaikh's companies were in the business of blending and mixing specialty chemicals for the textile industry, as well as purchasing chemicals for resale.  PSUF 21.  They operated out of a warehouse on the Property, which was built in approximately 1978 and was empty until Shah began operations.  PSUF 17-18.  For some period of time, ending in approximately 1986, the businesses stored the chemical perchloroethylene ("PCE") in a 2,000-gallon above-ground storage tank inside the warehouse, near other tanks used for mixing and blending other chemicals and dyes.  PSUF 25.  The companies acquired PCE and resold it in small quantities, delivering it through a hose connected to the storage tank that ran through a hole in the wall to the exterior of the building.  PSUF 26-27.

Between 1981 and 2001, Shah and Pacifica received 12 Notices of Violation from the Los Angeles County Sanitation District and Department of Public Works for violations of wastewater ordinances and industrial wastewater discharge permits.  PSUF 30-32, 37.  Pacifica's self-monitoring reports from 1992 to 1994 and 1998 to 2000 reflect detections of PCE in industrial wastewater.  PSUF 36.

Shaikh actively managed Shah and Pacifica throughout their operation, worked at the Property from its office on a regular basis (aside from periods when he traveled), and was familiar with the products and methods of the business.  PSUF 50-51.  He employed approximately two to three employees during the Shah period and 10 to 12 during the Pacifica period, whom he trained and supervised in the blending, mixing, and repackaging of chemicals, including in the intake and repackaging of PCE.  PSUF 54-58.

Around 2000, Pacifica relocated to another facility.  PSUF 69.  In 2003, Shaikh sold the Property to Eun Hee Lee, who used the Property for storing garments and handbags.

1    PSUF 41.  In 2005, TC Rich purchased the Property.  PSUF 71.  Prior to the closing of the

2    purchase, TC Rich's lender commissioned a contractor to perform an investigation of the

3    Property, which ultimately included a soil sampling.  PSUF 72-76.   The sampling did not

4    raise any concerns, and TC Rich completed the purchase.   PSUF 77.   Richard and

5    Jacqueline Fleischer are the only members of TC Rich.  DSUF 10-11.[2]  Since TC Rich's

6    acquisition of the Property in 2005, it has been used for logistics and distribution services

7    businesses.  PSUF 43.

8        In 2015, TC Rich sought to refinance the Property, causing its intended lender to

9    commission a new investigation.   PSUF 78.   The contractor, EEC Environmental,

10   performed a subsurface and indoor air sampling.  PSUF 80.  This time, the sampling

11   revealed PCE contamination at the Property.   *Id.*   Plaintiffs notified the California

12   Department of Toxic Substances Control ("DTSC") and requested its oversight, and

13   Plaintiffs and DTSC together engaged Pacifica to further investigate the contamination.

14   PSUF 81.   DTSC reported that the PCE contamination resulted from discharges that

15   occurred during the time when Shaikh's businesses operated at the Property.  PSUF 82.[3]

16       Pacifica, through its contractor, Murex Environmental, Inc. ("Murex"), has taken the

17   lead in investigating the contamination and determining its extent and the associated risks

18

19       [2] Notwithstanding the Court's clear instruction that "[n]o legal argument should be set forth in [the

20   statements of uncontroverted facts]," Initial Standing Order at 7 [Doc. # 18], Shaikh's statements of "facts"
     are all framed in terms of legal conclusions.  *See, e.g.*, DSUF 3 ("The hazardous waste contamination at

21   132 W. 132nd Street ('Property') does not 'present an imminent and substantial endangerment,' nor 'may'
     it.").  When the Court cites to Shaikh's statements, it refers only to the facts presented in the "supporting

22   evidence," with no regard to the legal arguments.

23       [3] Shaikh objects to DTSC's report, which Plaintiffs offer through a request for judicial notice [Doc.

24   # 63].  Because the truth of the matters therein is under dispute, the facts presented in the document are
     not judicially noticeable.  Nonetheless, the DTSC report also is submitted as evidence and the statement

25   relied upon therein is not controverted by any evidence.  PSUF 82; Elliott Decl. ¶ 24, Ex. 22 [Doc. # 69].
     The statement is more accurately viewed as hearsay evidence that falls within the exception for public

26   records setting out factual findings in a legally authorized investigation.  *See* Fed. R. Evid. 803(8)(A)(iii).
     In light of the totality of the circumstantial evidence in the record, the report's minor misstatement as to

27   when the "current owner" began operations does not demonstrate a lack of trustworthiness as to the cited

28   portions.  *See id.* at 803(8)(B).  The objection is **OVERRULED**.

to human health.  PSUF 83-85.  Beginning in 2015 and continuing through 2020, Murex conducted a number of investigative tests and pilot remediation studies, in consultation with DTSC.  DSUF 1; Brown Decl. ¶¶ 40-55 [Doc. # 59-15].  Murex first submitted a draft Removal Action Workplan ("RAW") to DTSC in November 2017, and Murex submitted a final RAW in July 2018 after addressing all of DTSC's comments.  PSUF 86; Brown Decl. ¶ 48; Layne Decl. ¶ 4 [Doc. # 65-3].  The RAW stated that Pacifica's storage and transfer of PCE in the late 1970s and early 1980s was the likely source of the PCE contamination.  PSUF 86.[4]  Aside from pilot tests, full-scale remediation efforts to reduce or eliminate the PCE contamination have not begun on the Property.  PSUF 87; Brown Decl. ¶¶ 54, 78 (describing a recommended full-scale remediation effort that has not commenced and noting that only "site investigations and remediation pilot tests" have been performed to date).  In May 2018, DTSC tendered a Facility Initiated Corrective Action Agreement ("FICA") to Pacifica to guarantee its participation with remediation efforts, which Pacifica declined to sign without adding TC Rich.  PSUF 88; DSUF 1.

## III.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Material facts are those that may affect the outcome of the case.  *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

---

[4] Shaikh objects to the statements in the RAW report for the same reason he objects to the DTSC report.  The objection is **OVERRULED**.  While the RAW report is not the proper subject of judicial notice, the statements were made by Shaikh's company's *own contractor* and are admissible as evidence. PSUF 86; Elliott Decl. ¶ 25, Ex. 23.  *See* Fed. R. Evid. 801(d)(2)(D) (statements of opposing party's agent are not hearsay).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

A court presented with cross-motions for summary judgment should review each motion separately, giving the nonmoving party for each motion the benefit of all reasonable inferences from the record. *Center for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008).

## IV.

## DISCUSSION

Both Plaintiffs and Shaikh seek summary judgment on at least one element of the RCRA and CERCLA claims against Shaikh, and the CERCLA and HSAA claims against Counter-defendants. The Court discusses each claim in turn.

### A.    RCRA Claim Against Shaikh

RCRA provides a private right of action for injunctive relief "against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). To prevail on an RCRA claim, a plaintiff must prove that the defendant (1) has contributed to or is contributing to the handling, storage, treatment, transportation, or

disposal of (2) a solid or hazardous waste (3) which may present an imminent and substantial endangerment to health or the environment.  Shaikh concedes that the second element is met in that PCE is a hazardous waste.  PSUF 46.  The parties dispute the other two elements.  Plaintiffs move for summary adjudication on the first element, arguing that Shaikh undisputedly contributed to the disposal of PCE.  PMSJ 24-27.[5]  Shaikh moves on the third element, arguing Plaintiffs cannot show that the PCE contamination may present an imminent and substantial endangerment.  DMSJ 18-23.  Shaikh also separately seeks summary judgment on the RCRA claim because he argues it lacks redressability.

### 1.   Redressability

As a threshold issue of standing, the Court addresses redressability first.  For a plaintiff to have standing under Article III, the alleged injury must be "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  Courts have held that for an RCRA claim for injunctive relief to be redressable, "plaintiff would have to identify some action that defendant could be ordered to take that is not already in place."  *87th St. Owners Corp. v. Carnegie Hill-87th St. Corp.*, 251 F. Supp. 2d 1215, 1220 (S.D.N.Y. 2002); *see also W. Coast Home Builders, Inc. v. Aventis Cropscience USA Inc.*, No. C 04-2225 SI, 2009 WL 2612380, at *4 (N.D. Cal. Aug. 21, 2009) ("[T]here is no basis for the relief plaintiff seeks because the contamination is already being addressed[.]")

In *87th St. Owners*, a state agency was already involved in ongoing remedial efforts by the time the court heard the case.  251 F. Supp. 2d at 1218.  Even though the contamination had not been fully eliminated yet, the claim was not redressable because the plaintiff could not identify any additional efforts beyond what the agency was already pursuing that would reduce the danger any further.  *Id.* at 1220-21.  The plaintiff's speculation that the agency could decide to abandon its work, or that improved measures could come to light that the agency may not undertake, was not sufficient to make the claim

---

[5] All page references herein are to the page numbers inserted by the CM/ECF system.

redressable.  *Id.*  In *W. Coast Home Builders*, the claim was not redressable because DTSC had already issued a binding Consent Order and Remedial Action Plan.  2009 WL 2612380, at *4.

Shaikh argues that Murex's ongoing efforts, in conjunction with DTSC, render Plaintiffs' claim not redressable.  But unlike in *87th St. Owners* and *W. Coast Home Builders*, no actual, full-scale remediation work has begun at the Property, much less remedial work by a state agency or mandated by a state agency.  While Murex has pursued extensive investigation to determine the scope of the problem and assess *potential* remedial plans, it has not taken the next step of actually beginning the cleanup on a Property-wide scale.  There is nothing to stop Shaikh from deciding, once the full scope and cost of the remedial plan has been ascertained, to tell Murex to hold off.  Nor is this possibility purely speculative.  Shaikh and Pacifica have notably declined to enter into a voluntary corrective action agreement with DTSC unless TC Rich is also a party to the agreement.  Shaikh notes that Pacifica's refusal to sign the agreement was about not letting "the current owners and operators off scot-free," and should not be construed as a sign that it would not continue remedial work.  DSUF 1.  But guaranteeing Shaikh's responsibility for the cleanup regardless of any other party's contribution is precisely what an injunction is meant to accomplish.

Because an injunction would compel Shaikh to conduct full-scale remediation, which he has thus far not committed to doing, the RCRA claim is redressable.

### 2.      Shaikh's Contribution to PCE Disposal

Plaintiffs move for summary adjudication on the issue of Shaikh's contribution to the disposal of PCE.  To prove that a defendant "contributed to" disposal of a hazardous waste, the plaintiff must show "that the defendant had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process." *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 852 (9th Cir. 2011).

It is undisputed that Shaikh's companies handled large volumes PCE on the Property for at least some period of time, and they are the only entities in the record that did so.

Shaikh admits that there was a release of PCE into the environment at the Property, but he attempts to manufacture a genuine dispute by pointing to the lack of direct evidence of when specifically the release occurred.  PSUF 38.  Overwhelming circumstantial evidence points to Shah and/or Pacifica as the only possible sources of the PCE disposal.  *See United Alloys, Inc. v. Baker*, No. CV 93-4722 CBM (Ex), 2011 WL 2749641, at *23 (C.D. Cal. July 14, 2011) (finding circumstantial evidence of location of PCE storage and location of the contamination sufficient to establish source of contamination).  Both DTSC and Murex—Shaikh's *own contractor*—suspect Shaikh's businesses to be the likely source of the contamination.  Shaikh offers nothing more than speculation that the source could have been anyone other than his companies, and speculation does not create a genuine dispute of fact.  *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221-22 (9th Cir. 1995).

Shaikh next argues that merely because he was the president or owner of the corporations does not mean he *personally* contributed to the disposal of PCE.  Opp. to PMSJ at 11-12.  While true, this is beside the point.  Shaikh was not just the president and owner of the businesses; he was their active, day-to-day manager.  That he occasionally traveled and delegated tasks to others does not controvert this fact.  Nor does he provide any authority for the notion that he must have physically handled the PCE himself to have a "measure of control," even though he directly trained and supervised those who did.  *See Hinds*, 654 F.3d at 852.  Shaikh's active and sole management of the day-to-day operations of the business is enough to prove his "measure of control."  *See Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1229 (E.D. Wash. 2015) (defendant's active decision-making authority in his role as president, chairman, director, and sole manager of company established a "measure of control"); *Zands v. Nelson*, 797 F. Supp. 805, 810 (S.D. Cal. 1992) ("[T]he Court holds that owners and operators contribute to the contamination if the contamination is the direct result of activities related to the operation of a gas station.").  Because this fact is uncontroverted, the Court concludes that Shaikh had a "measure of control" as a matter of fact and law and therefore contributed to the disposal of PCE.

### 3.      Imminent and Substantial Endangerment

Plaintiffs do not seek summary adjudication on the final element of the RCRA claim, that the contamination may present an imminent and substantial endangerment—but Shaikh does.

Courts construe this standard "expansively," with "emphasi[s] [on] the statute's use of the word 'may.'" *Maine People's All. And Nat. Res. Def. Council v. Mallinckrodt, Inc.*, 471 F.3d 277, 288 (1st Cir. 2006).  A "reasonable prospect of future harm" satisfies the statutory requirement "so long as the threat is near-term and involves potentially serious harm." *Id.* at 296.  Showing the mere presence of hazardous substances—even in excess of government guidelines—alone is not always sufficient to meet the standard.  *City of Fresno v. United States*, 709 F. Supp. 2d 934, 942 (E.D. Cal. 2010) ("[A]bsent additional evidence, the mere fact that a plaintiff has produced contaminant samples exceeding non-binding levels does not support a reasonable inference that the contamination presents an imminent and substantial endangerment to health or the environment.").  *But see Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 261 (3d Cir. 2005) ("Proof of contamination in excess of state standards may support a finding of liability, and may alone suffice for liability in some cases[.]")

Such a standard inherently invites expert testimony.  Predictably, both sides offer experts that disagree as to whether the level of PCE contamination at the Property may present an imminent and substantial endangerment.  Shaikh's expert, Anthony Brown, opined that the level of PCE contamination does not present a risk of imminent and substantial endangerment.  Brown Decl. ¶ 131-32.  Plaintiffs' experts, David Chamberlin and Vanessa Layne, rely on much of the same data to reach the opposite conclusion. Chamberlin Decl., ¶¶ 3-7 [Doc. # 65-1]; Layne Decl., ¶¶ 3, 5.  The data demonstrates soil vapor concentrations "several orders of magnitude higher than USEPA's screening levels for indoor air quality," and groundwater concentrations more than 20 times government standards.  Chamberlin Decl. ¶¶ 4, 7.  Chamberlin and Layne also criticize an indoor air quality test performed by Murex in December 2020, which informed Brown's conclusions,

as being inappropriately conducted with all windows and doors open, and therefore not accurately capturing the *indoor* air quality.  Layne Decl. ¶ 3; Chamberlin Decl. ¶ 5.  This criticism,[6] combined with their opinion that recently detected concentrations of PCE in the soil and groundwater pose a risk of imminent and substantial endangerment,[7] creates a triable issue of fact.  *See Cal. Dep't of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d 930, 982 (E.D. Cal. 2003) (expert's testimony that opposing party's expert used flawed methodology creates a triable issue of fact as to whether imminent and substantial endangerment exists).[8]

In sum, the Court **GRANTS** Plaintiffs' MSJ on the RCRA claim as to Shaikh's contribution to the disposal of PCE, and **DENIES** Shaikh's MSJ as to the risk of imminent and substantial endangerment.

## B.   CERCLA Claim Against Shaikh

CERCLA creates a private right of action to "recover expenses associated with cleaning up contaminated sites." *United States v. Atl. Research Corp.,* 551 U.S. 128, 131, (2007).  To establish a *prima facie* claim, a plaintiff must show (1) the site on which hazardous substances are contained is a "facility" as defined by the statute, (2) a "release" or "threatened release" of a "hazardous substance" from the facility has occurred, (3) the

---

[6] For the purpose of issuing a ruling on summary judgment, the Court need not exclude entirely the portions of the Brown Declaration that rely on the December 2020 test.  It suffices to say that the disagreement as to the test's validity creates a triable issue of fact.  Therefore, Plaintiffs' objection to them is **OVERRULED**.

[7] Shaikh protests that Chamberlin and Layne rely on data from 2015 to 2017, which does not necessarily suggest an imminent endangerment in 2019, when the Complaint was filed.  Reply ISO DMSJ at 7-9.  Given that no full-scale remediation has occurred yet, it is reasonable to assume that the concentrations from 2015 would not have materially changed, absent uncontroverted evidence to the contrary.

[8] Shaikh's reliance on *Bd. of Cty. Comm'rs of Cty. of La Plata, Colorado v. Brown Grp. Retail, Inc.*, 768 F. Supp. 2d 1092 (D. Colo. 2011)—decided following a bench trial and not at summary judgment—is unavailing.  There, the court merely held that the state agency's involvement combined with contaminant levels exceeding state guidelines alone did not warrant a finding of imminent and substantial endangerment.  *Id.* at 1110-11.  Here, Plaintiffs' experts provide enough evidence to create a triable issue.

1    plaintiff has incurred response costs that were "necessary" and "consistent with the national
2    contingency plan," and (4) the defendant is within one of four classes of "persons" subject
3    to liability under the statute. *City of Colton v. Am. Promotional Events, Inc.-West*, 614
4    F.3d 998, 1002–03 (9th Cir. 2010) (citing 42 U.S.C. § 9607(a)). A "person" subject to
5    liability includes (1) the current owner or operator of a facility,[9] and (2) "any person who
6    at the time of the disposal of any hazardous substance owned or operated any facility at
7    which such hazardous substance were disposed of." 42 U.S.C. § 9607(a)(1)-(2).

8        The parties concur that the Property is a "facility," that PCE is a "hazardous
9    substance," and that a "release" of PCE has occurred on the Property. PSUF 38, 45, 47;
10   DSUF 5-7. It is also undisputed that most Plaintiffs have incurred response costs as a result
11   of the contamination. PSUF 90-92.[10] Plaintiffs move for summary adjudication as to
12   Shaikh's potential liability as a past owner or operator of the facility at the time when PCE
13   was disposed of. PMSJ at 29-30. They defer to trial the issue of whether their response
14   costs were "necessary" and "consistent with the national contingency plan."

15       An "owner" under CERCLA refers to the common law definition, meaning the fee
16   title owner of the real property. *City of Los Angeles v. San Pedro Boat Works*, 635 F.3d
17   440, 444, 451 (9th Cir. 2011). Plaintiffs cannot show that Shaikh is subject to owner
18   liability, because it is possible the disposal occurred only between 1984 and 1987, when
19   Khan was the fee title owner. Plaintiffs effectively concede as much in their Reply,
20   emphasizing operator liability instead. *See* Reply ISO PMSJ at 12.[11]

---

[9] Although the statute uses the word "and" in this subsection, courts interpret the two terms "owner" and "operator" in the disjunctive. *Long Beach Unified Sch. Dist. v. Dorothy B. Godwin California Living Tr.*, 32 F.3d 1364, 1367 (9th Cir. 1994).

[10] The record does not show, however, that Plaintiff Rifle Freight, Inc. has incurred any costs. *See* PSUF 90-92. For that reason, to the extent Plaintiffs seek summary adjudication on Rifle Freight's CERCLA claim, the motion is **DENIED**.

[11] With respect to Plaintiffs' motion as to their cause of action against Shaikh for owner liability, the motion is **DENIED**.

The Supreme Court has defined an "operator" as one who "manage[s], direct[s], or conduct[s] operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations. *United States v. Bestfoods*, 524 U.S. 51, 66-67 (1998).  For largely the same reasons why Shaikh "contributed" to the disposal of PCE, *see* Part IV.A.2, *supra*, he also managed, directed, and conducted operations related to its disposal.  He quite literally was the manager of an operation that disposed of PCE.  Again, he offers no support for the theory that he must personally handle the PCE himself to be liable, and that managing the operations from the office while delegating the physical labor to employees somehow makes him not an operator.  *See United States v. Kayser-Roth Corp.*, 272 F.3d 89, 102 (1st Cir. 2001) (parent company that "was in charge in practically all of [subsidiary's] operational decisions" was subject to operator liability).  And again, he does not controvert the overwhelming circumstantial evidence that the disposal of PCE occurred at the time when he was an operator of the facility.  *See Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 892 (10th Cir. 2000) ("CERCLA liability may be inferred from the totality of the circumstances; it need not be proven by direct evidence.").

The Court **GRANTS** Plaintiffs' (except Rifle Freight's) motion for adjudication as to Shaikh's status as an operator who is subject to potential liability under CERCLA.

## C.   Shaikh's CERCLA and HSAA Counterclaims Against TC Rich and the Fleischers

Shaikh seeks summary judgment on his CERCLA and HSAA[12] counterclaims against Counter-defendants on all elements, including on TC Rich's "innocent landowner defense."  DMSJ at 23-31.  As to TC Rich, Counter-defendants oppose solely based on their affirmative defense.    Opp. to DMSJ at 21-24.  In their own motion, Counter-

---

[12] An HSAA claim has the same elements as a CERCLA claim. *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 897 (N.D. Cal. 2011).  The Court discusses the two claims in tandem.

defendants seek summary judgment as to the Fleischers' owner or operator liability.  PMSJ at 30-34; *see also* Opp. to DMSJ at 24-27.

### 1.    Innocent Landowner Defense

In contrast with a past operator, in the case of a *current* operator of a facility, "the plaintiff is not even required to show that the party was an operator when an active 'disposal' of hazardous waste occurred."  *Orange Cty. Water Dist. v. Sabic Innovative Plastics US, LLC*, 14 Cal. App. 5th 343, 377 (2017) (quoting *Litgo New Jersey Inc. v. Comm'r New Jersey Dep't of Envtl. Prot.*, 725 F.3d 369, 382 (3d Cir. 2013)).  Yet, current owners and operators may be shielded from liability by the "innocent landowner defense," which immunizes those who acquired property after the disposal of hazardous substances occurred and who "at the time [they] acquired the facility . . . did not know and had no reason to know" that hazardous substances had been released on the property.  42 U.S.C. § 9601(35)(A).  To demonstrate that they had no reason to know of the contamination, defendants must show that they "carried out all appropriate inquiries" prior to purchase "in accordance with generally accepted good commercial and customary standards and practices."  *Id.* at § 9601(35)(B)(i).  Finally, they must exercise due care with respect to the hazardous substance once they discover its presence.  *Id.* at §§ 9601(35)(A); 9607(b)(3).

There is no dispute that TC Rich's lender commissioned two environmental contractors to conduct investigations of the Property prior to the 2005 purchase, which included a soil sampling, and which reported no issues.  PSUF 72-77.  Counter-defendants' expert, Suzi Rosen, opined—albeit in somewhat conclusory fashion—that the investigations conformed with industry standards and therefore satisfied the "all appropriate inquiries" standard.  Rosen Decl. ¶¶ 32-37 [Doc. # 65-2].  Shaikh's expert pokes holes in the adequacy of the work of one of the contractors, A/E West, opining that its investigation was faulty because it failed to review land use records to identify prior use of PCE on the Property.  Brown Decl. ¶¶ 62-77.  Yet, neither Shaikh nor his expert question the propriety of *TC Rich* in commissioning A/E West's investigation.  Rather, it appears that TC Rich—not an industry insider in environmental pollutants—commissioned the

exact investigations that were appropriate in the circumstances, but that A/E West allegedly may have been negligent in its work.   Shaikh points to no authority supporting the proposition that a prospective landowner who reasonably relies on an expert contractor's investigation and recommendation, which he had no reason to question at the time, did not perform "all appropriate inquiries" because the contractor's work was flawed.   Absent any such authority—or any facts suggesting TC Rich had any reason not to trust A/E West's report—the Court declines to say that TC Rich had reason to know about the contamination as a matter of law.

As for the final element—that TC Rich exercised due care upon discovering the contamination—Shaikh's theory is that TC Rich did not actively engage in any cleanup activity itself.   But TC Rich immediately notified DTSC after its discovery and coordinated with Pacifica, letting its contractor, Murex, take the lead in investigation and remediation efforts.   Again, Shaikh has no support for the notion that notifying and coordinating with state authorities on further efforts is somehow insufficient due care simply because TC Rich did not insert itself in the middle of a heavily regulated process already underway.

In sum, Shaikh's motion as to TC Rich's CERCLA liability is **DENIED**.

## 2.   The Fleischers' Operator Liability

Both Counter-defendants and Shaikh seek summary judgment as to whether the Fleischers can be liable as operators of the facility.   PMSJ at 30-34; DMSJ at 27-28.[13]

In contrast with Plaintiffs' evidence of Shaikh's active management of Shah and Pacifica when they operated on the Property, Shaikh does not offer sufficient evidence to prove that the Fleischers personally "manage, direct, or conduct" operations at the Property.   *Bestfoods*, 524 U.S. 51, 66-67.   Shaikh seeks to have it both ways—his own

---

[13] Shaikh concedes that the Fleischers would not be subject to owner liability, since TC Rich is the title holder of the Property.   Opp. to PMSJ at 15-16.   Counter-defendants protest that Shaikh alleged only owner liability in his Counterclaim, and so are precluded from asserting operator liability now.   Reply ISO PMSJ at 15.   But in their motion, Counter-defendants acknowledge that "Shaikh includes certain 'General Allegations' in his counterclaim . . . including that the Fleischers 'controlled and/or operated the Site from which hazardous substances . . . were released.'"   PMSJ at 32 (quoting Counterclaim ¶ 11.)

status as a corporate officer of Shah and Pacifica does not make him an operator, but when it comes to the Fleischers, their ownership and control of TC Rich and the other entity Plaintiffs is enough.  *See* DSUF 10-11 (pointing to the Fleischers' corporate control over other entities as evidence of their operator liability).  Shaikh emphasizes that a current operator need not have been the operator when the disposal occurred, Opp. to PMSJ at 16, but he still *must be an operator*—that is, he still must satisfy the *Bestfoods* definition.  As the Supreme Court made clear, corporate structure is not enough to show that the defendant is an operator.  *Bestfoods*, 524 U.S. at 68 ("The question is not whether the parent operates the subsidiary, but rather whether it operates the facility, and that operation is evidenced by participation in the activities of the facility, not the subsidiary.").

Shaikh offers evidence that the Fleischers control their corporate entities, not that they control any actual *operations* on the Property themselves.  He points out that one of the Property's tenants, Fleischer Custom Brokers, is a sole proprietorship, and so with respect to it the Fleischers are not entitled to any corporate protections.  Opp. to PMSJ at 16.  But Shaikh's only evidence that *Fleischer Custom Brokers* is an operator, other than that it pays rent at the Property,[14] is that Fleischer Custom Brokers paid for environmental consultant work.  *See* Fleischer Depo. 100:4-11 (testifying that Fleischer Custom Brokers paid the bills for EEC Environmental's work).  That Fleischer Custom Brokers paid some bills is not enough to meet Shaikh's burden of proving that it "manage[s], direct[s], or conduct[s] . . . decisions about compliance with environmental regulations.  *Bestfoods*, 524 U.S. at 66-67.  In his Opposition, Shaikh also haphazardly suggests that the corporate veil should be pierced, but his counterclaims include no allegations of alter ego liability, nor are there facts presented to support it.  *See Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1067 (C.D. Cal. 2002) (declining to address alter ego theory of liability at summary judgment that was not alleged in pleading).

---

[14] In fact, as Jacqueline Fleischer testified in her deposition, the sole proprietorship is just one of several entities that pays rent at the Property.  Fleischer Depo. 94:1-96:19 [Doc. # 75-2].

Accordingly, the Court **DENIES** Shaikh's motion as to the Fleischers' owner or operator liability.  The Court also **DENIES**, however, Counter-defendants' motion as to the same issue.  While Shaikh has not met his burden on summary judgment as to his own Counterclaim, on which he has the burdens of both proof and persuasion, the uncontroverted fact that the Fleischers, through their sole proprietorship, paid for environmental consulting work is enough to at least create a triable issue of fact as to whether they manage, conduct, or direct decisions about compliance with environmental regulations.  *See Litgo*, 725 F.3d at 381 (parties who hired environmental consultants and oversaw their work could be liable as current operators, even though they did not cause any contamination themselves).  This is especially true where Counter-defendants do not provide any evidence as to why the Fleischers are *not* operators (*e.g.*, that they do not actively manage day-to-day operations at the property or do not oversee the consultant's work, and who does).  Viewing the evidence in the light most favorable to Shaikh, a triable issue of fact exists as to the Fleischers' operator status.

**D.      Equitable Indemnity and Contribution Counterclaim**

Finally, Counter-defendants move for summary judgment on Shaikh's counterclaim for equitable indemnity and contribution, based on the fact that because there is no evidence that they caused any disposal of PCE, they are not responsible for the injury.  *See Wells Fargo Bank, N.A. v. Renz*, 795 F. Supp. 2d 898, 927 (N.D. Cal. 2011) ("[T]here can be no indemnity where the party from whom indemnity is sought owes no duty to the plaintiff or is not responsible for the injury.").  PMSJ at 33.  Shaikh does not respond to this point.  Nor can he, because there is no evidence in the record that Counter-defendants contributed to any release of PCE or otherwise caused injury.  Counter-defendants' motion on this claim is **GRANTED**.

//

//

//

**V.**

**CONCLUSION**

In light of the foregoing, the Court **ORDERS** as follows:

1. On Plaintiffs' RCRA claim, Plaintiffs' motion for summary adjudication is **GRANTED** and Shaikh's motion is **DENIED**.  Plaintiffs have established Shaikh's contribution to the disposal of hazardous waste as a matter of fact and law.  Triable issues remain as to whether the disposal may present an imminent and substantial endangerment to health or the environment.

2. On Plaintiffs' CERCLA claim as to Shaikh's liability as an owner, Plaintiffs' motion for summary adjudication is **DENIED**.

3. On Plaintiffs' CERCLA claim as to Shaikh's potential liability as an operator, Plaintiff Rifle Freight's motion is **DENIED**.  The other Plaintiffs' motion is **GRANTED**.  Plaintiffs other than Rifle Freight have established that they have incurred response costs, and that Shaikh is subject to liability as an operator of a facility at the time of disposal of a hazardous substance.  Triable issues remain as to whether Plaintiffs' response costs are necessary and consistent with the national contingency plan, and whether Rifle Freight incurred any response costs at all.

4. On Shaikh's CERCLA and HSAA counterclaims, Shaikh's motion for summary judgment is **DENIED**.  Counter-defendants' motion is also **DENIED**.  Triable issues remain as to whether Counter-defendants are entitled to the innocent landowner defense and whether the Fleischers are subject to liability as operators.

//
//
//

5.  On Shaikh's counterclaim for equitable indemnity and contribution, Counter-defendants' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

DATED:  February 22, 2021

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE