Bret A. Stone   SBN 190161 BStone@PaladinLaw.com
Kirk M. Tracy   SBN 288508 KTracy@PaladinLaw.com
PALADIN LAW GROUP® LLP
220 W. Gutierrez Street
Santa Barbara, CA 93101
Telephone:   (805) 898-9700
Facsimile:   (805) 852-2495

Counsel for Defendant and Counter-Claimant
Hussain M. Shaikh

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TC RICH, LLC, *et al.*, | Case No. 2:19-CV-02123-DMG-AGR |
| Plaintiffs, | |
| *v.* | HUSSAIN M. SHAIKH'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW |
| HUSSAIN M. SHAIKH, *et al.*, | |
| Defendants. | Final pretrial conference: May 4, 2021 2:00 p.m. Courtroom 8C, 8th Floor |
| AND RELATED COUNTERCLAIMS | Judge Dolly M. Gee |
| | Action filed: March 21, 2019 Trial date: June 1, 2021 |



# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................2

INTRODUCTION ..............................................................................................4

I.    TC RICH'S CLAIMS ................................................................................5

   A.   Plaintiffs' CERCLA § 107(a) Cost Recovery Claim based Owner Liability..6

   B.   Plaintiffs' CERCLA § 107(a) Cost Recovery Claim based Operator Liability.
     ......................................................................................................................8

   C.   Plaintiffs' CERCLA § 113(g)(2) Declaratory Relief Claim ...........................9

   D.   Plaintiffs' Continuing Private Nuisance Claim.............................................10

   E.   Plaintiffs' Continuing Trespass Claim .........................................................11

   F.   Plaintiffs' RCRA §7002(a)(1)(B) Injunctive Relief Claim...........................11

   G.   First Affirmative Defense: Failure to State a Claim Upon Which Relief Can
     Be Granted.....................................................................................................14

   H.   Second Affirmative Defense: Third Party Defense ......................................14

   I.   Third Affirmative Defense: Lack of Standing ..............................................17

   J.   Fourth Affirmative Defense: Intervening Acts ............................................17

   K.   Fifth Affirmative Defense: Conformance with Statutes, Regulations, and
     Industry Standards.........................................................................................18

   L.   Sixth Affirmative Defense: Mitigation of Damages ....................................19

   M.    Seventh Affirmative Defense: Due Care ...................................................20

   N.   Eighth Affirmative Defense: Cause in Fact .................................................21

   O.   Ninth Affirmative Defense: Proximate Cause of Harm................................21

   P.   Tenth Affirmative Defense: Contribution and Equitable Indemnification ....21

   Q.   Eleventh Affirmative Defense: De Minimus Harm ......................................22

   R.   Twelfth Affirmative Defense: Comparative Negligence ..............................22

   S.   Seventeenth Affirmative Defense: Set Off ..................................................22

II.   SHAIKH'S CLAIMS................................................................................23

   A.   Shaikh's CERCLA § 113(f) Counterclaim ..................................................24

B.  Shaikh's CERCLA § 113(g)(2) Declaratory Relief Claim .............................26

C.  Shaikh's HSAA Counterclaim ..................................................................26

D.  Shaikh's Lack of Standing Affirmative Defense ............................................27

E.  Shaikh's Intervening Acts Affirmative Defense .............................................28

F.  Shaikh's Affirmative Defense of Mitigation of Damages ............................29

G.  Shaikh's Affirmative Defense of Due Care ....................................................31

H.  Shaikh's Affirmative Defense of Contribution and Equitable Indemnification
    .............................................................................................................32

I.  Shaikh's Affirmative Defense of Comparative Negligence .........................33

J.  Shaikh's Affirmative Defense of No Attorneys' Fees ..................................34

K.  Shaikh's Affirmative Defense of Set Off ........................................................35

III.  EVIDENTIARY ISSUES .............................................................................36

IV.  LEGAL ISSUES .........................................................................................36

V.  BIFURCATION OF ISSUES .........................................................................36

VI.  JURY TRIAL .............................................................................................36

VII.  ATTORNEYS' FEES .................................................................................36

VIII.  ABANDONMENT OF ISSUES ..................................................................36

IX.  CONCLUSION .............................................**Error! Bookmark not defined.**



## **INTRODUCTION**

Shaikh was the record title owner of the property at 132 West 132nd Street, Los Angeles, California (the "Property") from August 1979 to December 1984 and again from October 1987 to April 2003. Shaikh had an interest in two corporate entities that were in the business of blending and mixing specialty chemicals or the textile industry, as well as purchasing chemicals for resale. For some period of time in the mid-1980s, the businesses stored the chemical perchloroethylene ("PCE") in a 2,000-gallon above-ground storage tank inside the warehouse, near other tanks used for mixing and blending other chemicals and dyes. In December 1984, Shaikh transferred ownership of the Property to Haroon Khan. Shaikh sold the Property to Eun H. Lee in 2003, who in turn sold the Property to TC Rich, LLC ("TC Rich") the current owner, in May 2005.

TC Rich is a single-purpose entity that owns the Property and performs no other activities. The Fleischers, and each of their corporate and sole proprietorship entities, operated the property. Richard Fleischer is the managing member of TC Rich and Jacqueline Fleischer is the only other member identified by Plaintiffs.[1] Fleischer Customs Brokers is a sole proprietorship. The Fleischers control all activities at the Property. In 2005, TC Rich purchased the Property. Plaintiffs' due diligence prior to purchase of the Property was limited to "review" of a Phase I Environmental Site Assessment Report and a Project Report on Subsurface Environmental Investigation of Soil for Wastewater Clarifier Closure. The Project Report was limited to two shallow borings and soil samples adjacent to the clarifier—nowhere else at the Property. TC Rich has admitted that "the investigation . . . . was revealed to be insufficient for purposes of evaluating the potential nature and extent of contamination at the property."

Nonetheless, Plaintiffs were aware from review of those reports that the

---

[1] "Plaintiffs" include TC Rich, Rifle Freight, Inc. ("Rifle Freight"), Fleischer Customs Brokers, Richard G. Fleischer, and Jacqueline Fleischer.



Property had been occupied by a chemical supply company and that an above-ground storage tank containing PCE was used onsite for storage and resale of PCE. Further, they were well-aware of the wastewater clarifier and associated trenches (since filled with concrete), but did not inquire any further than reviewing the two reports—they just did whatever the bank told them to do.

Plaintiffs claim that it was not until ten years later, in 2015, that they first became aware of the contamination at the Property during another Phase I investigation as part of refinancing effort. Plaintiffs notified DTSC of the sampling results and asked Pacifica Chemical, Inc. ("Pacifica"), to take action to investigate. Since then, Plaintiffs have merely reviewed work performed by Shaikh and Pacifica's consultant, Murex Environmental, Inc. ("Murex"). Plaintiffs have undertaken no remedial actions at the Property hin step toward that end, Shaikh now submits its Memorandum of Contentions of Fact and Law, as required by Local Rule 16-4.

## I.   TC RICH'S CLAIMS

The following is a summary statement of the claims Plaintiffs pled and plan to pursue at trial against Shaikh and the affirmative defenses to Shaikh's counterclaims that TC Rich, LLC, Richard G. Fleischer, and Jacqueline Fleischer (collectively, "Counter-Defendants") have pled and plans to pursue. *See* L.R. 16-4.1(a).

Claim 1: Cost recovery and contribution based on owner liability under the Comprehensive Environmental Response, Compensation, And Liability Act ("CERLA"), 42 U.S.C. § 9607(a).

Claim 2: Cost recovery and contribution based on operator liability under CERLA, 42 U.S.C. § 9607(a).

Claim 3: Declaratory relief claim against Shaikh, including under CERCLA § 113(g)(2) with respect to Plaintiffs' future response costs.

Claim 4: Damages for continuing private nuisance.



Claim 5: Damages for continuing trespass.

Claim 6: Injunctive Relief Under RCRA § 7002(a)(1)(B) (42 U.S.C. § 6972(a)(1)(B) against Shaikh.

First Affirmative Defense: Failure to State a Claim Upon Which Relief Can Be Granted

Second Affirmative Defense: Third Party Defense

Third Affirmative Defense: Lack of Standing

Fourth Affirmative Defense: Intervening Acts

Fifth Affirmative Defense: Conformance with Statutes, Regulations, and Industry Standards

Sixth Affirmative Defense: Mitigation of Damages

Seventh Affirmative Defense: Due Care

Eighth Affirmative Defense: Cause in Fact

Ninth Affirmative Defense: Proximate Cause of Harm

Tenth Affirmative Defense: Contribution and Equitable Indemnification

Eleventh Affirmative Defense: De Minimus Harm

Twelfth Affirmative Defense: Comparative Negligence

Seventeenth Affirmative Defense: Set Off

## A.   Plaintiffs' CERCLA § 107(a) Cost Recovery Claim based Owner Liability.

### 1.   Elements

To prevail on their CERCLA § 107(a) cost recovery claim against Shaikh based on owner liability, Plaintiffs must prove:

(1)   that the Site on which the hazardous substance is present is a "facility;"

(2)   that a "release" or "threatened release" of a "hazardous substance" at or from the facility has occurred;

(3)   that the release or threatened release caused Plaintiffs to incur "necessary costs of response . . . consistent with the national contingency plan" ("NCP"); and

(4)   that Shaikh is within one of four classes of persons subject to liability under CERCLA § 107(a), specifically, a "person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed."

*See* 42 U.S.C. § 9607(a); *Trinity Indus. v. Greenlease Holding Co.,* 903 F.3d 333, 352 (3d Cir. 2018); *Castaic Lake Water Agency v. Whittaker Corp.,* 272 F. Supp. 2d 1053, 1058–59 (C.D. Cal. 2003).

A response cost is considered "consistent with the [NCP]" "if the action, when evaluated as a whole, is in substantial compliance" with it. 40 C.F.R. § 300.700(c)(3)(i); *City of Colton,* 614 F.3d at 1003.

### 2.   Evidence

The evidence is undisputed that TC Rich is an owner of the Property, PCE and its break-down products, including TCE, are "hazardous substances," that the Property and Site constitute a "facility," since they are an area where PCE, a hazardous substance, was stored, disposed of, and has otherwise come to be located. The Court has ruled that "the parties concur that the Property is a "facility," that PCE is a "hazardous substance," and that a "release" of PCE has occurred on the Property. ECF No. 79 (Order on Cross-Motions for Summ. J.), at 12:8-9. It is also undisputed that Plaintiffs, other than Rifle Freight[2], have incurred some response costs as a result of the contamination. *Id.* at 12:8-11.  Plaintiffs deferred to trial the issue of whether their response costs were "necessary" and "consistent with the national contingency plan." *Id.* at 12:11-14.

Thus, the issues that remain for trial are (1) whether Rifle Freight incurred any response costs, (2) which response costs, if any, incurred by any Plaintiffs were necessary costs of response consistent with the NCP, and (3) whether Shaikh was

---

[2] Shaikh anticipates that Rifle Freight will be dismissed as a Plaintiff for this reason.



1   an owner at the time of a release of contamination at the Property.

2       Plaintiffs cannot show that Shaikh is subject to owner liability, because it is

3   possible the disposal occurred only between 1984 and 1987, when Khan was the fee

4   title owner. ECF No. 79, at 12:17-19.

5       Shaikh will rely primarily on testimony of expert witness Anthony Brown to

6   demonstrate the uncertainty of when a disposal of PCE may have occurred and

7   Wiley Wright to demonstrate that none of Plaintiffs' claimed response costs were

8   necessary or consistent with the NCP because Shaikh and Pacifica immediately

9   stepped up to do all of the work. Shaikh will also rely on testimony from Jeremy

10  Squire of Murex and Vanessa Diep to demonstrate the nature of Plaintiffs' alleged

11  response costs, in addition to any admissible documents that Plaintiffs proffer into

12  evidence that purportedly support their claims for such costs. Further, the evidence

13  Plaintiffs propose to introduce, along with testimony from Mr. Shaikh, will

14  demonstrate an inability to identify a time of a release of contamination during Mr.

15  Shaikh's ownership of the Property as compared to the time that Haroon Khan was

16  the owner.  No party's expert testimony will provide an opinion as to a date of a

17  release at the Property other than the general time-period spanning operations by

18  Shaikh's companies, but also spanning the period of time that Shaikh did not own

19  the Property.

20  **B.**    **Plaintiffs' CERCLA § 107(a) Cost Recovery Claim based Operator**

21         **Liability.**

22      **1.**    **Elements**

23       To prevail on their CERCLA § 107(a) cost recovery claim against Shaikh

24  based on operator liability, Plaintiffs must prove the same four elements listed

25  above for owner liability.

26      **2.**    **Evidence**

27       The Court has ruled that Shaikh was an "operator" under CERCLA. ECF No.

28  79, at 13:1-18. Thus, the issues that remain for trial are (1) whether Rifle Freight

incurred any response costs and (2) which response costs, if any, incurred by any Plaintiffs were necessary costs of response consistent with the NCP. As discussed above regarding Plaintiffs' CERCLA claim against Shaikh as an owner, Shaikh will rely primarily on testimony of expert witnesses Anthony Brown and Wiley Wright to demonstrate the costs were neither necessary nor consistent with the NCP. Shaikh will also rely on testimony from Jeremy Squire of Murex and Vanessa Diep to demonstrate the nature of Plaintiffs' alleged response costs, in addition to any admissible documents that Plaintiffs proffer into evidence that purportedly support their claims for such costs.

## C.   Plaintiffs' CERCLA § 113(g)(2) Declaratory Relief Claim

### 1.   Elements

To prevail on its CERCLA § 113(g)(2) declaratory relief claim against Shaikh with respect to future response costs, Plaintiffs must prove:

> (1)   they are entitled to judgment on their CERCLA § 113(f)(3)(B) indemnity/contribution claim against Shaikh.

See 42 U.S.C. § 9613(g)(2); *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 586 (9th Cir. 2018); *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1191 (9th Cir. 2000); *New York v. Solvent Chem. Co.*, 664 F.3d 22, 25 (2d Cir. 2011); *Cal. DTSC v. Jim Dobbas, Inc.*, No. 2:14-595 WBS EFB, 2014 U.S. Dist. LEXIS 130583, *12–14, n.3 (E.D. Cal. Sep. 16, 2014).

### 2.   Evidence

Plaintiffs' declaratory relief claim does not depend on evidence. If any Plaintiffs prevails on their CERCLA claim related to past costs, then those respective Plaintiffs will be entitled as a matter of right to a declaratory judgment as to Shaikh's liability for any future response costs incurred by Plaintiffs that are necessary and consistent with the NCP.

/ / /

/ / /



### D. __Plaintiffs' Continuing Private Nuisance Claim__

### 1. __Elements__

To prevail on its private nuisance claim against Shaikh, Plaintiffs must prove:

(1)  that Plaintiff owns, leases, occupies, or controls the Property;

(2)  that Shaikh, by acting or failing to act, created a condition or permitted a condition to exist that constitutes a "nuisance" within the meaning of Civil Code § 3479;

(3)  the nuisance is "substantial" because an ordinary person would be reasonably annoyed or disturbed by it;

(4)  the nuisance is "unreasonable" because the seriousness of the harm outweighs the social utility of Shaikh's conduct;

(5)  that Plaintiffs did not consent to Shaikh's conduct;

(6)  that Plaintiffs were harmed; and

(7)  that Shaikh's conduct was a substantial factor in causing Plaintiffs' harm.

*See* CACI No. 2021; *See Dep't of Fish & Game v. Superior Court*, 197 Cal. App. 4th 1323, 1352 (2011); *Lautemann v. Bird Rides, Inc.*, No. CV 18-10049 PA (RAOx), 2019 U.S. Dist. LEXIS 123864, *19 (C.D. Cal. May 31, 2019); CACI No. 2021.

### 2. __Evidence__

It is undisputed that TC Rich owns the Property. Plaintiffs have not put forth sufficient evidence yet as to which other Plaintiffs lease, occupy, or control the Property and in fact they claim that none of the other Plaintiffs control the Property. The evidence does not demonstrate that Shaikh caused a nuisance under common law—a different standard than "cause and contribute" under RCRA. Further, the evidence shows that Shaikh and his company have been responding to the contamination since 2015, thus eliminating the existence of a nuisance condition, as confirmed by sampling at the Site. Moreover, Plaintiffs consented to their ownership and operation at a property formerly occupied by a chemical supply company that had aboveground storage tanks. Shaikh will rely primarily on

testimony from Plaintiffs, Sara Vela of DTSC, and Shaikh's expert witness Anthony Brown for evidence to rebut this cause of action.

**E.** **Plaintiffs' Continuing Trespass Claim**

    **1.** **Elements**

To prevail on their trespass claim against Shaikh, Plaintiffs must prove:

    (1)   that Plaintiff owns, leases, occupies, or controls the Property;

    (2)   that Shaikh entered or caused something to enter that Property;

    (3)   that Plaintiffs did not give permission for the entry;

    (4)   that Plaintiffs were harmed; and

    (5)   that Shaikh's entry or conduct causing the entry was a substantial factor in causing Plaintiff's harm.

*See* CACI No. 2000.

    **2.** **Evidence**

It is undisputed that TC Rich owns the Property. Plaintiffs have not put forth sufficient evidence yet as to which other Plaintiffs lease, occupy, or control the Property and in fact they claim that none of the other Plaintiffs control the Property. The evidence does not demonstrate that Shaik caused a trespass under common law—a different standard than "cause and contribute" under RCRA. Further, the evidence shows that Shaikh and his company have been responding to the contamination since 2015, thus eliminating or reducing the harm to Plaintiffs. Moreover, Plaintiffs consented to their ownership and operation at a property formerly occupied by a chemical supply company that had aboveground storage tanks. Shaikh will rely primarily on testimony from Shaikh, Plaintiffs, Sara Vela of DTSC, and Shaikh's expert witness Anthony Brown for evidence to rebut this cause of action.

**F.** **Plaintiffs' RCRA §7002(a)(1)(B) Injunctive Relief Claim**

    **1.** **Elements**

To prevail on a claim under RCRA § 7002(a)(1)(B), Plaintiffs must prove:

-11-

(1)   the defendant is "any person, . . . including any past or present generator, past or present transporter, or past or present owner or operator of the treatment, storage, or disposal facility,

(2)   who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste

(3)   which may present an imminent and substantial endangerment to health or the environment"; and

(4)   proper notice of the endangerment was given to the Administrator, the State, and the alleged violator under 42 U.S.C. § 6972(b)(2), 90 days prior to the commencement of the RCRA action.

42 U.S.C. § 6972(a)(1)(B); *Center for Cmty. Action & Envtl. Justice v. BNSF Ry. Co.*, 764 F.3d 1019, 1023 (9th Cir. 2014). It is unclear whether notice is an element of, or lack of such notice is a defense to, a RCRA claim. *See KI/FLA San Leandro v. Gildard Hess,* No. 97-01675 TEH, 1998 U.S. Dist. LEXIS 1516, at *4-5 (N.D. Cal. Feb. 9, 1998). Here, Shaikh treats it as an element, but reserves the right to argue it as a defense should the Court consider it to be one.

Further, "[RCRA] §7002(a)(1)(B) does not encompass past harms that no longer pose an imminent and substantial endangerment to health. The pollutant risk must fulfil this criteria **at the time the suit is filed.**" *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 32 F. Supp. 2d 38, 40 (D. Conn. 1998) (emphasis added); *Meghrig*, 516 U.S. at 488 (same).

**2.    Evidence**

The Court has held that Shaikh caused and contributed to the disposal of PCE. ECF No. 79, at 11:9-10. Thus, the issues remaining for trial are (1) whether the contamination at the time of filing the RCRA cause of action met the standard that it "may present an imminent and substantial endangerment" and (2) whether Plaintiffs gave sufficient notice under RCRA.



### *Lack of Imminent and Substantial Endangerment*

To demonstrate there was no imminent and substantial endangerment at the time Plaintiffs filed their RCRA cause of action in June 2019 (filed for the first time in the FAC), Shaikh will rely primarily on documentary evidence that includes the various environmental investigation reports by Murex and correspondence between Murex and DTSC, and testimony from Plaintiffs, Shaikh, Sara Vela of DTSC, and Shaikh's expert witness Anthony Brown to demonstrate that Murex had been performing the required work for four years prior to the filing of the FAC, all with DTSC oversight and approval. In addition, Plaintiffs' expert, David Chamberlin, will acknowledge at trial that there is no imminent risk to the onsite occupants (who operate with doors open all day) and there is no imminent risk to drinking water (as there are no drinking water supply wells, presently or planned, in the area). Accordingly, Plaintiffs' notice did not explain what further action was necessary; it did not identify any "failure to take action to prevent the VOC groundwater plume from migrating to and further impacting the Property, or to remediate past and continuing waste discharges at the Property." This will be further demonstrated by the notice itself.

The evidence will demonstrate that it is very unlikely that there are any exposure pathways to PCE contamination at the Site through groundwater, soil, or soil vapor and thus PCE in groundwater, soil, and soil vapor at the Site do not present an imminent and substantial endangerment. This will be further demonstrated by evidence that DTSC has been involved with and provided oversight for the ongoing investigation and remedial activities from the very beginning in 2015 and that DTSC did *not* issue an Imminent and Substantial Endangerment Order here. Instead, the extensive correspondence between DTSC and Murex demonstrates DTSC supports Murex's investigative and remedial efforts and that those activities are proceeding in a timely manner. Further, evidence of indoor air sampling events in 2015 will show that the indoor air samples were at

"acceptable levels," and Murex's activities prior to and including 2019 were already demonstrating effective results at reducing contaminant concentrations, all of which is further demonstrated by confirmatory indoor air sampling in 2020.

In sum, the evidence will show that even if there was a threat in 2015 (there was not), the threat was no longer imminent in June 2019, when Plaintiffs filed their FAC.

**_Insufficient Notice_**

Shaikh will also present evidence to dispute that the notice here was sufficient because Plaintiffs concede that Murex was already performing the work necessary to respond to the contamination. Testimony from Plaintiffs, Shaikh, Sara Vela of DTSC, and Shaikh's expert witness Anthony Brown will demonstrate that Murex had been doing performing the required work for four years prior to the filing of the FAC, all with DTSC oversight and approval. Accordingly, Plaintiffs' notice did not explain what further action was necessary; it did not identify any "failure to take action to prevent the VOC groundwater plume from migrating to and further impacting the Property, or to remediate past and continuing waste discharges at the Property." This will be further demonstrated by the notice itself.

**G.   First Affirmative Defense: Failure to State a Claim Upon Which Relief Can Be Granted**

Counter-Defendants identified this defense in their Local Rule 16-2.8 disclosures. However, this is not an affirmative defense, but rather a "negative defense" attacking the elements of Shaikh's counterclaims. Thus, consideration of this defense is properly encompassed within Shaikh's counterclaims, below.

**H.   Second Affirmative Defense: Third Party Defense**

**1.   Elements**

Plaintiffs contend they are exempt from CERCLA liability under the "Third Party Defense," which includes the "innocent landowner" defense. There is no "innocent" operator defense available for Richard Fleischer and Jacqueline



-14-

Fleischer. *Litgo New Jersey, Inc. v. Comm'r New Jersey Dept. of Envt'l Prot.* (3d Cir. 2013) 725 F.3d 369, 382 (*Litgo*). Rather, "operator liability may be imposed when a party is responsible for 'decisions about compliance with environmental regulations . . . .'" *Id.* Thus, the Fleischers, as individuals, cannot assert an "innocent operator" defense. Section 25323.5(b) of the HSAA incorporates the federal innocent landowner defense to the HSAA claims at issue here.

To avail themselves of the "innocent landowner" defense, Plaintiffs have the burden of proof to establish each of the four elements "by a preponderance of the evidence":

(1) the contamination occurred prior to Plaintiffs' purchase of the land;

(2) Plaintiff had "no reason to know" that the property was contaminated;

(3) Plaintiffs conducted "all appropriate inquiries," at the time of acquisition, into the previous ownership and uses of the property consistent with good commercial or customary practice; and

(4) Plaintiffs exercised due care with respect to the hazardous substances once the contamination was discovered.

42 U.S.C. §§ 9607(b)(3), 9601(35)(A).

## 2. Evidence

Plaintiffs cannot meet their burden for elements 2, 3, and 4. The primary evidence related to this defense will include the environmental reports produced for Plaintiffs' lender prior to the purchase of the Property, testimony from Plaintiffs, testimony from A/E West and Aqua Science (the consultants that performed work at the Property in 2005), and expert testimony from Anthony Brown.

There is no dispute that TC Rich's lender commissioned two environmental contractors to conduct investigations of the Property prior to the 2005 purchase, which included a soil sampling, and which reported no issues. ECF No. 79, at 14:18-20. However, the evidence will demonstrate that Plaintiffs "had reason to know" the Property was contaminated because they had Phase I reports, before

1  acquiring the Property, identifying the historical presence of an aboveground
2  storage tank and the use of PCE at the Property. Despite knowing of the historical
3  existence of the AST and that a chemical supply company previously operated on
4  the Property, they made no inquiry about its contents and took no samples in that
5  area.

6      Further, the evidence will show that A/E West failed to follow the required
7  "all appropriate inquiry" protocols in preparing the 2005 Phase I ESA and that its
8  investigation was not sufficient to test the property for contamination because it
9  failed to test the entire Property and did not investigate the area that housed a
10  2,000-gallon tank of PCE. Indeed, Plaintiffs sued, and ultimately reached a
11  settlement with, A/E West for professional negligence related to its deficient
12  Phase I. Plaintiffs also sued Aqua Science for negligence related to its deficient
13  2005 investigation.[3]

14      Moreover, Plaintiffs cannot present sufficient evidence to demonstrate they
15  exercised due care once they discovered the contamination. Indeed, other than
16  taking some initial samples in 2015, Plaintiffs have done nothing to address the
17  contamination. Instead, Plaintiffs admit that "[s]ince mid-2015, Shaikh's company,
18  Pacifica Chemical, has taken the lead in conducting investigations of the
19  contamination at the Property under DTSC's supervision." ECF No. 22.

20      In sum, the evidence will demonstrate that Plaintiffs were aware of the
21  history of PCE use at the property but failed to exercise due care or conduct all
22  appropriate inquiries. Thus, Plaintiffs do not satisfy the requirements of the
23  "innocent landowner" defense.

24  / / /
25  / / /
26
27  [3] A party cannot rely on a faulty Phase I report (i.e., one that does not satisfy the required ASTM standards) to meet the "all appropriate inquiry" standard. *See Von Duprin Llc v. Moran Elec. Serv.*, No. 1:16-cv-01942-TWP-DML, 2020 U.S. Dist. LEXIS 54789, at *38-42 (S.D. Ind. Mar. 30, 2020).
28



SHAIKH'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**I.     Third Affirmative Defense: Lack of Standing**

    **1.     Elements**

        To prove a defense of lack of standing, Counter-defendants must show that Shaikh has not:

        (1) suffered an injury in fact,

        (2) that is fairly traceable to the challenged conduct of the defendant, and

        (3) that is likely to be redressed by a favorable judicial decision.

*See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)

    **2.     Evidence**

        As discussed with respect to Shaikh's counterclaims, below, Shaikh will present evidence at trial that he has incurred response costs through the work performed by Murex at the Site by way of introducing invoices from Murex and proof of payment, and relying on testimony from Mr. Shaikh and from Jeremy Squire of Murex. The evidence will demonstrate that Murex's work was performed in response to the contamination at issue. The response costs are traceable to the contamination at the Property, for which Counter-Defendants are liable.

**J.     Fourth Affirmative Defense: Intervening Acts**

    **1.     Elements**

        This is a tort or contract defense, not a defense to CERCLA or HSAA. Accordingly, this defense should not be applicable to Shaikh's counterclaims. Nonetheless, Shaikh will address it briefly.

        As a tort defense, an allegation of an unforeseeable intervening or superseding cause is an affirmative defense that challenges causation and applies only after the plaintiff proves proximate causation. *See, e.g.*, *Park v. Kitt,* No. 1:19-cv-01551-AWI-HBK (PC), 2021 U.S. Dist. LEXIS 63168 (E.D. Cal. Mar. 31, 2021); *Kane v. Lewis*, 604 F. App'x 229, 235 n.6 (4th Cir. 2015); *In re Neurontin Mktg. & Sales Practices Litig*., 712 F.3d 21, 45 (1st Cir. 2013). The defendant has the burden to prove the affirmative defense of superseding cause, that is, that the

intervening event is so highly unusual or extraordinary that it was unforeseeable. Arreola v. County of Monterey, 99 CA4th 722, 760, 122 CR2d 38, 68 (2002).

**2.     Evidence**

The primary evidence related to this defense will include the environmental reports produced for Plaintiffs' lender prior to the purchase of the Property, testimony from Plaintiffs, testimony from A/E West and Aqua Science (the consultants that performed work at the Property in 2005), and expert testimony from Anthony Brown.

The evidence will demonstrate that Plaintiffs had reason to know the Property was contaminated because they had Phase I reports, before acquiring the Property, identifying the historical presence of an aboveground storage tank and the use of PCE at the Property. Despite knowing of the historical existence of the AST and that a chemical supply company previously operated on the Property, they made no inquiry about its contents and took no samples in that area.

Further, there is no evidence that any other party or non-party has taken any action to spread or exacerbate the contamination at the Site since Plaintiffs acquired the Property, such that any such actions would be a superseding cause.  Rather, the evidence will show that, other than taking some initial samples in 2015, Plaintiffs have done nothing to address the contamination. Instead, Plaintiffs admit that "[s]ince mid-2015, Shaikh's company, Pacifica Chemical, has taken the lead in conducting investigations of the contamination at the Property under DTSC's supervision."

**K.     Fifth Affirmative Defense: Conformance with Statutes, Regulations, and Industry Standards**

Counter-Defendants identified this defense in their Local Rule 16-2.8 disclosures. However, it is not clear which statutes, regulations, or industry standards Counter-Defendants are relying upon for this defense. Shaikh anticipates such arguments will be encompassed wholly within the Third Party Defense, above,

and will rely on the same elements and evidence described therein.

To the extent Counter-Defendants identify other statutes, regulations, or industry standards relied upon for this defense, Shaikh contends that such arguments are waived for untimely disclosure under the Local Rules. Alternatively, Shaikh reserves its right to supplement this memorandum to respond to such disclosures and arguments by Counter-Defendants.

**L.   Sixth Affirmative Defense: Mitigation of Damages**

### 1.   Elements

This is a tort or contract defense, not a defense to CERCLA or HSAA. Accordingly, this defense should not be applicable to Shaikh's counterclaims. Nonetheless, Shaikh will address it briefly.

Counterclaimants have a duty to mitigate both economic and non-economic damages. A counter-defendant arguing a counterclaimant failed to mitigate damages bears the burden of proving two elements by a preponderance of the evidence:

(1) that the plaintiff (or counterclaimant) failed to use reasonable efforts to mitigate damages; and

(2) the amount by which damages would have been mitigated.

*See Gomez v. American Empress Ltd. Partnership*, 189 F.3d 473 (9th Cir. 1999); Model Civ. Jury Instr. 9th Cir. 5.3.

### 2.   Evidence

The primary evidence related to this defense will include the environmental reports produced for Plaintiffs' lender prior to the purchase of the Property, testimony from Plaintiffs, testimony from A/E West and Aqua Science (the consultants that performed work at the Property in 2005), environmental reports from 2015 when contamination was first discovered, and expert testimony from Anthony Brown.

The evidence will demonstrate that since contamination was discovered in

-19-

2015, Shaikh and his company have acted diligently to respond to the contamination and mitigate any damages. Plaintiffs admit that "[s]ince mid-2015, Shaikh's company, Pacifica Chemical, has taken the lead in conducting investigations of the contamination at the Property under DTSC's supervision."

**M.**    **Seventh Affirmative Defense: Due Care**

    **1.**    **Elements**

This is a tort or contract defense, not a defense to CERCLA or HSAA. Accordingly, this defense should not be applicable to Shaik's counterclaims. Nonetheless, Shaikh will address it briefly.

The standard of due care is the exercise of reasonable care given the specific set of circumstances. Since the question of whether reasonable care was exercised involves factual inquiries. *See Parsons v. Crown Disposal Company*, 15 Cal. 4th 456, 472-473 (1997); *Brue v. Wal-Mart Stores, Inc.,* No. 2:09-CV-00585-KJD-RJJ, 2010 U.S. Dist. LEXIS 63360 at 10* (D. Nev. June 23, 2010).

    **2.**    **Evidence**

The primary evidence related to this defense will include the environmental reports produced for Plaintiffs' lender prior to the purchase of the Property, testimony from Plaintiffs, testimony from A/E West and Aqua Science (the consultants that performed work at the Property in 2005), and expert testimony from Anthony Brown.

The evidence will demonstrate that Plaintiffs had reason to know the Property was contaminated because they had Phase I reports, before acquiring the Property, identifying the historical presence of an aboveground storage tank and the use of PCE at the Property. Despite knowing of the historical existence of the AST and that a chemical supply company previously operated on the Property, they made no inquiry about its contents and took no samples in that area.

Further, the evidence will show that, other than taking some initial samples in 2015, Plaintiffs have done nothing to address the contamination. Instead, Plaintiffs

admit that "[s]ince mid-2015, Shaikh's company, Pacifica Chemical, has taken the lead in conducting investigations of the contamination at the Property under DTSC's supervision."

**N.    Eighth Affirmative Defense: Cause in Fact**

This is a tort or contract defense, not a defense to CERCLA or HSAA. Accordingly, this defense is not applicable to Shaik's counterclaims. To the extent the Court holds otherwise, Shaikh's response above to Plaintiffs' Intervening Acts affirmative defense is equally applicable here.

**O.    Ninth Affirmative Defense: Proximate Cause of Harm**

This is a tort or contract defense, not a defense to CERCLA or HSAA. Accordingly, this defense is not applicable to Shaik's counterclaims. To the extent the Court holds otherwise, Shaikh's response above to Plaintiffs' Intervening Acts affirmative defense is equally applicable here.

**P.    Tenth Affirmative Defense: Contribution and Equitable Indemnification**

**1.    Elements**

The common law equitable indemnity doctrine relates to the allocation of loss among multiple tortfeasors. The duty to indemnify may arise and indemnity may be allowed when in equity and good conscience the burden of a judgment should be lifted from a person seeking indemnity to one from whom indemnity is sought. The doctrine applies only among defendants who are jointly and severally liable to the plaintiff. California Code of Civil Procedure §§ 875-880 allows for contribution joint and/or concurrent tortfeasors in limited circumstances. *Wimbeldon Fund, SPC (Class TT) v. Graybox, LLC*, No. 2:15-cv-6633-CAS (SSx), 2019 U.S. Dist. LEXIS 96237 at 15* (C.D. Cal. June 6, 2019); *Fireman's Fund Ins. Co. v. Haslam,* 29 Cal. App. 4th 1347, 1353 (1994); *BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 119 Cal. App. 4th 848, 852 (2004).

**2.    Evidence**

To the extent this affirmative defense applies to Shaikh's CERCLA and



HSAA counterclaims, it will be considered in the allocation phase of trial. With respect to the equitable allocation of response cost liability, Shaikh will prove at trial that his proportion of liability should be greatly reduced based on the facts of this case; Shaikh acted promptly and diligently to respond to the contamination once he was put on notice; Shaikh has performed nearly all of the work at the Site, while Plaintiffs have done very little that even qualifies as necessary response costs; and Plaintiffs have already received settlement from its environmental consultants, whom Plaintiffs sued for negligence. Shaikh will rely primarily on testimony from Shaikh, the Fleischers, Jeremy Squire, Sara Vela of DTSC, and Shaikh's expert witnesses Anthony Brown and Wiley Wright to demonstrate these facts.

**Q.   Eleventh Affirmative Defense: De Minimus Harm**

This is a tort or contract defense, not a defense to CERCLA or HSAA. Accordingly, this defense is not applicable to Shaik's counterclaims.

**R.   Twelfth Affirmative Defense: Comparative Negligence**

This is a tort, not a defense to CERCLA or HSAA.  Accordingly, this defense is not be applicable to Shaikh's counterclaims.

**S.   Seventeenth Affirmative Defense: Set Off**

**1.   Elements**

Counter-Defendants identified this defense in their Local Rule 16-2.8 disclosures. Shaikh asked for further explanation of this purported defense as it is not clear how it applies to Shaikh's counterclaims given that Shaikh has not received any amount of money or payments that would set off his counterclaims against Counter-Defendants. No explanation from Counter-Defendants has yet been provided.  Accordingly, Shaikh contends that such arguments are waived for untimely disclosure under the Local Rules. Alternatively, Shaikh reserves its right to supplement this memorandum to respond to such disclosures and arguments by Counter-Defendants.

/ / /



1

### 2.     Evidence

2       The only set off in this matter is the settlement payments received by

3  Plaintiffs related to their claims against A/E West and Aqua Science.  Those do not

4  apply to Shaikh's counterclaims, but instead serve as an affirmative defense for

5  Shaikh against Plaintiffs' claims, discussed below.

6              ## II. <u>SHAIKH'S CLAIMS</u>

7       The following is a summary statement of the counterclaims Shaikh pled and

8  plans to pursue at trial against TC Rich, LLC, Richard G. Fleischer, and Jacqueline

9  Fleischer (collectively, "Counter-Defendants") and the affirmative defenses to

10  Plaintiffs' claims that Shaikh has pled and plans to pursue. *See* L.R. 16-4.1(a).

11
12     Counterclaim 1: CERCLA § 113(f) contribution claim against Counter-
        Defendants with respect to Shaikh's past response costs.

13
14     Counterclaim 2: Declaratory relief claim against Counter-Defendants,
        including under CERCLA § 113(g)(2) with respect to Shaikh's future
15      response costs.

16     Counterclaim 3: California Health and Safety Code § 25363(d) contribution
        claim against Counter-Defendants with respect to Shaikh's response costs.
17

18     Third Affirmative Defense: Lack of Standing

19     Fourth Affirmative Defense: Intervening Acts

20     Sixth Affirmative Defense: Mitigation of Damages

21     Seventh Affirmative Defense: Due Care

22     Tenth Affirmative Defense: Contribution and Equitable Indemnification

23     Twelfth Affirmative Defense: Comparative Negligence

24
25     Thirteenth Affirmative Defense: No Attorneys' Fees

26     Seventeenth Affirmative Defense: Set Off

27  *See* Dkt. Nos. 45, 46.

28  / / /



**A. <u>Shaikh's CERCLA § 113(f) Counterclaim</u>**

**1.     Elements**

To prevail on his counterclaim for contribution under CERCLA § 113(f) against Counter-Defendants, Shaikh must prove:

(1)   that the Site on which the hazardous substance is present is a "facility;"

(2)   that a "release" or "threatened release" of a "hazardous substance" at or from the facility has occurred;

(3)   that the release or threatened release caused Plaintiff to incur "necessary costs of response . . . consistent with the national contingency plan" ("NCP"); and

(4)   that Counter-Defendants are within one of four classes of persons subject to liability under CERCLA § 107(a)

*See* 42 U.S.C. § 9613(f)(1); *Trinity Indus. v. Greenlease Holding Co.,* 903 F.3d 333, 352 (3d Cir. 2018); *Castaic Lake Water Agency v. Whittaker Corp.,* 272 F. Supp. 2d 1053, 1058–59 (C.D. Cal. 2003).

After liability is established, "the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Courts typically consider the so-called Gore and Torres factors. *TDY Holdings, LLC v. United States,* 885 F.3d 1142, 1146, n.1 (9th Cir. 2018); *AmeriPride Servs. v. Valley Indus. Serv.,* No. Civ. S-00-113 LKK/JFM, 2012 U.S. Dist. LEXIS 47936, at *17–20 (E.D. Cal. Apr. 4, 2012).

**2.     Evidence**

The evidence is undisputed that TC Rich is an owner of the Property, PCE and its break-down products, including TCE, are "hazardous substances," that the Property and Site constitute a "facility," since they are an area where PCE, a hazardous substance, was stored, disposed of, and has otherwise come to be located. The Court has ruled that "the parties concur that the Property is a "facility," that PCE is a "hazardous substance," and that a "release" of PCE has occurred on the Property. ECF No. 79 (Order on Cross-Motions for Summ. J.), at 12:8-9. Thus,

the issues that remain for trial are (1) whether Richard Fleischer and Jacqueline Fleischer are operators under CERCLA and (2) whether Shaikh has incurred necessary costs of response consistent with the NCP.

Shaikh will present evidence at trial that he has incurred response costs through the work performed by Murex at the Site by way of introducing invoices from Murex and proof of payment, and relying on testimony from Mr. Shaikh and from Jeremy Squire of Murex. The evidence will demonstrate that Murex's work was performed in response to the contamination at issue. Further, the evidence will demonstrate that at least some of those costs were for initial investigation and evaluation of the contamination at the Property; therefore, NCP compliance is not a requirement for those specific costs. The evidence will further demonstrate that Murex's response actions were with DTSC oversight and approval to investigate and evaluate the nature and extent of the contamination.

Next, Shaikh will rely on testimony from Richard Fleischer and Jacqueline Fleischer regarding their roles in managing the various entities and all of the activities at the Property, including approval and payment of certain environment investigation costs, which will also be demonstrated by invoices and proof of payment by the Fleischers and their entities.

With respect to the equitable allocation of response cost liability, Shaikh will prove at trial that his proportion of liability should be greatly reduced based on the facts of this case; Shaikh acted promptly and diligently to respond to the contamination once he was put on notice; Shaikh has performed nearly all of the work at the Site, while Plaintiffs have done very little that even qualifies as necessary response costs; and Plaintiffs has already received settlement from its environmental consultants, whom Plaintiffs sued for negligence. Shaikh will rely primarily on testimony from Shaikh, the Fleischers, Jeremy Squire, Sara Vela of DTSC, and Shaikh's expert witnesses Anthony Brown and Wiley Wright to demonstrate these facts.

**B.**   **Shaikh's CERCLA § 113(g)(2) Declaratory Relief Claim**

  **1.** **Elements**

To prevail on its CERCLA § 113(g)(2) declaratory relief claim against Counter-Defendants with respect to Shaikh's future response costs, Shaikh must prove:

> (1)    that he is entitled to judgment on his CERCLA § 113(f)(3)(B) indemnity/contribution claim against Counter-Defendants.

*See* 42 U.S.C. § 9613(g)(2); *Pakootas v. Teck Cominco Metals, Ltd.,* 905 F.3d 565, 586 (9th Cir. 2018); *Boeing Co. v. Cascade Corp.,* 207 F.3d 1177, 1191 (9th Cir. 2000); *New York v. Solvent Chem. Co.,* 664 F.3d 22, 25 (2d Cir. 2011); *Cal. DTSC v. Jim Dobbas, Inc.,* No. 2:14-595 WBS EFB, 2014 U.S. Dist. LEXIS 130583, *12–14, n.3 (E.D. Cal. Sep. 16, 2014).

  **2. Evidence**

Shaikh's declaratory relief claim does not depend on evidence. If Shaikh prevails on its CERCLA claim related to past costs, then he is entitled as a matter of right to a declaratory judgment as to Counter-Defendants' liability for any response costs that Shaikh may incur in the future.

**C.**   **Shaikh's HSAA Counterclaim**

  **1. Elements**

To prevail on his HSAA, Cal. Health & Safety Code § 25363(d), contribution claim against Counter-Defendants, Shaikh must prove the same four elements noted above with respect to Shaiks's CERCLA § 113(f) counterclaims. *See* Cal. Health & Saf. Code §§ 25310, 25323.5(a)(1), 25363(d); 42 U.S.C. § 9613 (f)(3)(B); *Trinity,* 903 F.3d at 352; *Castaic,* 272 F. Supp. 2d at 1058–59, 1084 n.40. *see* Cal. Health & Saf. Code § 25310 (providing that definitions provided by CERCLA apply to the HSAA).[4] The court then allocates response costs among liable parties using such

---

[4] The HSAA is California's counterpart to CERCLA. *Orange Cty. Water Dist. v. Alcoa Glob. Fasteners, Inc.*, 12 Cal. App. 5th 252, 297 (2017). Like CERCLA, the HSAA includes a private

equitable factors as the court deems appropriate, just as it does under CERCLA § 113(f)(1).

### 2. Evidence

Again, given that the elements and analysis are the same, Shaikh will rely on the same evidence and arguments noted above to prove that Counter-Defendants are liable, that Shaikh is entitled to response costs, and that Shaikh's proportion of liability under the HSAA should be greatly reduced based on the facts of this case.

### D. <u>Shaikh's Lack of Standing Affirmative Defense</u>

### 1. Elements

To prove a defense of lack of standing, Shaikh must show that Plaintiffs have not:

(1) suffered an injury in fact,

(2) that is fairly traceable to the challenged conduct of the defendant, and

(3) that is likely to be redressed by a favorable judicial decision.

*See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)

### 2. Evidence

Through testimony of Plaintiffs and invoices and proof of payment likely to be introduced by Plaintiffs, Shaikh will demonstrate that Rifle Freight has suffered no injury in fact because it has not incurred any response costs and that TC Rich, Rifle Freight, and Fleischer Customs Brokers have suffered no injury in fact related to the presence of contamination at the Property because there has been no impact to their ability to lease, occupy, or use the Property.

/ / /

---

right of action. It provides that "[a] person who has incurred response or corrective action costs in accordance with [the HSAA] or [CERCLA] may seek contribution or indemnity from any person who is liable pursuant to [the HSAA]." Cal. Health & Saf. Code § 25363(d). A "'[r]esponsible party' or 'liable person,' for the purposes of [the HSAA], means those persons described in Section 107(a) of [CERCLA]." Cal. Health & Saf. Code § 25323.5(a)(1). Contribution and cost recovery claims under the HSAA thus have the same elements as such claims under CERCLA. *Alcoa,* 12 Cal.App.5th at 297–98; *Gregory Village Partners, L.P. v. Chevron U.S.A., Inc.,* 805 F.Supp.2d 888, 898 (N.D. Cal. 2011).



**E.** **Shaikh's Intervening Acts Affirmative Defense**

**1.** **Elements**

An allegation of an unforeseeable intervening or superseding cause is an affirmative defense that challenges causation and applies only after the plaintiff proves proximate causation. *See, e.g.*, *Park v. Kitt,* No. 1:19-cv-01551-AWI-HBK (PC), 2021 U.S. Dist. LEXIS 63168 (E.D. Cal. Mar. 31, 2021); *Kane v. Lewis*, 604 F. App'x 229, 235 n.6 (4th Cir. 2015); *In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21, 45 (1st Cir. 2013). The defendant has the burden to prove the affirmative defense of superseding cause, that is, that the intervening event is so highly unusual or extraordinary that it was unforeseeable. Arreola v. County of Monterey, 99 CA4th 722, 760, 122 CR2d 38, 68 (2002).

**2.** **Evidence**

To prove this affirmative defense, Shaikh will rely primarily on documentary evidence of environmental reports produced in 2005 and testimony from A/E West, Aqua Science, Plaintiffs, Jeremy Squire of Murex, and Shaikh's expert witness Anthony Brown. The evidence will show that A/E West failed to follow the required "all appropriate inquiry" protocols in preparing the 2005 Phase I ESA and that its investigation was not sufficient to test the property for contamination because it failed to test the entire Property and did not investigate the area that housed a 2,000-gallon tank of PCE. Indeed, Plaintiffs sued, and ultimately reached a settlement with, A/E West for professional negligence related to its deficient Phase I.

The evidence will further demonstrate that Plaintiffs' due diligence prior to purchase of the Property in 2005 was limited to "review" of the 2005 Phase I Environmental Site Assessment Report and a Project Report on Subsurface Environmental Investigation of Soil for Wastewater Clarifier Closure. The Project Report was limited to two shallow borings and soil samples adjacent to the clarifier—nowhere else at the Property. TC Rich has admitted that "the

-28-

investigation . . . . was revealed to be insufficient for purposes of evaluating the potential nature and extent of contamination at the property." Plaintiffs also sued Aqua Science for negligence related to its deficient 2005 investigation.

Nonetheless, Plaintiffs were aware from review of those reports that the Property had been occupied by a chemical supply company and that an above-ground storage tank containing PCE was used onsite for storage and resale of PCE. Further, they were well-aware of the wastewater clarifier and associated trenches (since filled with concrete), but did not inquire any further than reviewing the two reports—they just did whatever the bank told them to do.

Thus, the evidence demonstrates that the acts and omissions of Plaintiffs, A/E West, and Aqua Science allowed the contamination to undetected for another decade, allowing further spread.

**F.   Shaikh's Affirmative Defense of Mitigation of Damages**

**1.   Elements**

Plaintiffs have a duty to mitigate both economic and non-economic damages. A defendant arguing a plaintiff failed to mitigate damages bears the burden of proving two elements by a preponderance of the evidence:

(1) that the plaintiff failed to use reasonable efforts to mitigate damages; and

(2) the amount by which damages would have been mitigated.

*See Gomez v. American Empress Ltd. Partnership*, 189 F.3d 473 (9th Cir. 1999); Model Civ. Jury Instr. 9th Cir. 5.3.

**2.   Evidence**

Similar to the intervening acts affirmative defense, to prove this affirmative defense, Shaikh will rely primarily on documentary evidence of environmental reports produced in 2005 and testimony from A/E West, Aqua Science, Plaintiffs, Jeremy Squire of Murex, and Shaikh's expert witness Anthony Brown. The evidence will show that A/E West failed to follow the required "all appropriate inquiry" protocols in preparing the 2005 Phase I ESA and that its investigation was

1   not sufficient to test the property for contamination because it failed to test the
2   entire Property and did not investigate the area that housed a 2,000-gallon tank of
3   PCE. Indeed, Plaintiffs sued, and ultimately reached a settlement with, A/E West
4   for professional negligence related to its deficient Phase I.

5          The evidence will further demonstrate that Plaintiffs' due diligence prior to
6   purchase of the Property in 2005 was limited to "review" of the 2005 Phase I
7   Environmental Site Assessment Report and a Project Report on Subsurface
8   Environmental Investigation of Soil for Wastewater Clarifier Closure. The Project
9   Report was limited to two shallow borings and soil samples adjacent to the
10  clarifier—nowhere else at the Property. TC Rich has admitted that "the
11  investigation . . . . was revealed to be insufficient for purposes of evaluating the
12  potential nature and extent of contamination at the property." Plaintiffs also sued
13  Aqua Science for negligence related to its deficient 2005 investigation.

14         Nonetheless, Plaintiffs were aware from review of those reports that the
15  Property had been occupied by a chemical supply company and that an above-
16  ground storage tank containing PCE was used onsite for storage and resale of PCE.
17  Further, they were well-aware of the wastewater clarifier and associated trenches
18  (since filled with concrete), but did not inquire any further than reviewing the two
19  reports—they just did whatever the bank told them to do.

20         Thus, the evidence demonstrates that the acts and omissions of Plaintiffs,
21  A/E West, and Aqua Science allowed the contamination to undetected for another
22  decade, allowing further spread, rather than mitigating damages.

23         Further, since 2015, Plaintiffs have merely reviewed work performed by
24  Pacifica's consultant, Murex. Plaintiffs have undertaken no remedial actions at the
25  Property or the Site. Rather, Murex has done all the work with oversight and
26  approvals by DTSC.

27  / / /

28  / / /

SHAIKH'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**G.    Shaikh's Affirmative Defense of Due Care**

**1.    Elements**

The standard of due care is the exercise of reasonable care given the specific set of circumstances. Since the question of whether reasonable care was exercised involves factual inquiries, it is a matter that must generally be decided by a jury. *See Parsons v. Crown Disposal Company*, 15 Cal. 4th 456, 472-473 (1997); *Brue v. Wal-Mart Stores, Inc.,* No. 2:09-CV-00585-KJD-RJJ, 2010 U.S. Dist. LEXIS 63360 at 10* (D. Nev. June 23, 2010).

**2.    Evidence**

To prove this affirmative defense, Shaikh will rely on various environmental investigation reports by Murex and correspondence between Murex and DTSC, and testimony from Plaintiffs, Shaikh, Sara Vela of DTSC, and Shaikh's expert witness Anthony Brown to demonstrate that Murex had been performing the required work Shaikh was first put on notice of the contamination in 2015, all with DTSC oversight and approval.

The evidence will demonstrate that it is very unlikely that there are any exposure pathways to PCE contamination at the Site through groundwater, soil, or soil vapor and thus PCE in groundwater, soil, and soil vapor at the Site do not present an imminent and substantial endangerment. This will be further demonstrated by evidence that DTSC has been involved with and provided oversight for the ongoing investigation and remedial activities from the very beginning in 2015 and that DTSC did *not* issue an Imminent and Substantial Endangerment Order here. Instead, the extensive correspondence between DTSC and Murex demonstrates DTSC supports Murex's investigative and remedial efforts and that those activities are proceeding in a timely manner. Further, evidence of indoor air sampling events in 2015 will show that the indoor air samples were at and "acceptable levels," and Murex's activities prior to and including 2019 were already demonstrating effective results at reducing contaminant concentrations, all

of which is further demonstrated by confirmatory indoor air sampling in 2020.

Further, the evidence will show that since 2015, Plaintiffs have merely reviewed work performed by Pacifica's consultant, Murex. Plaintiffs have undertaken no remedial actions at the Property or the Site. Rather, Murex has done all the work with oversight and approvals by DTSC.

**H.   Shaikh's Affirmative Defense of Contribution and Equitable Indemnification**

**1.   Elements**

The common law equitable indemnity doctrine relates to the allocation of loss among multiple tortfeasors. The duty to indemnify may arise and indemnity may be allowed when in equity and good conscience the burden of a judgment should be lifted from a person seeking indemnity to one from whom indemnity is sought. The doctrine applies only among defendants who are jointly and severally liable to the plaintiff. California Code of Civil Procedure §§ 875-880 allows for contribution joint and/or concurrent tortfeasors in limited circumstances. *Wimbeldon Fund, SPC (Class TT) v. Graybox, LLC*, No. 2:15-cv-6633-CAS (SSx), 2019 U.S. Dist. LEXIS 96237 at 15* (C.D. Cal. June 6, 2019); *Fireman's Fund Ins. Co. v. Haslam,* 29 Cal. App. 4th 1347, 1353 (1994); *BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 119 Cal. App. 4th 848, 852 (2004).

**2.   Evidence**

With respect to the equitable allocation of response cost liability, Shaikh will prove at trial that his proportion of liability should be greatly reduced based on the facts of this case; Shaikh and his company acted promptly and diligently to respond to the contamination once he was put on notice; Shaikh and his company have performed nearly all of the work at the Site, while Plaintiffs have done very little that even qualifies as necessary response costs; and Plaintiffs has already received settlement from its environmental consultants, whom Plaintiffs sued for negligence. Shaikh will rely primarily on testimony from Shaikh, the Fleischers, Jeremy Squire,

Sara Vela of DTSC, and Shaikh's expert witnesses Anthony Brown and Wiley Wright to demonstrate these facts.

**I.      Shaikh's Affirmative Defense of Comparative Negligence**

**1.      Elements**

In order to determine the proportionate share of the negligence attributable to the plaintiff, an evaluation is required of the combined negligence of the plaintiff and of the defendants and of all other persons whose negligence proximately contributed to plaintiff's injury. In making this evaluation, it is the negligence of such persons that is measured and not the mere physical causation for the accident. All the surrounding circumstances as shown by the evidence need to be considered in comparing negligence of such persons.

Cal. Jury Instructions - Civil No. 14.91

**2.      Evidence**

To prove this affirmative defense, Shaikh will rely primarily on documentary evidence of environmental reports produced in 2005 and testimony from A/E West, Aqua Science, Plaintiffs, Jeremy Squire of Murex, and Shaikh's expert witness Anthony Brown. The evidence will show that A/E West failed to follow the required "all appropriate inquiry" protocols in preparing the 2005 Phase I ESA and that its investigation was not sufficient to test the property for contamination because it failed to test the entire Property and did not investigate the area that housed a 2,000-gallon tank of PCE. Indeed, Plaintiffs sued, and ultimately reached a settlement with, A/E West for professional negligence related to its deficient Phase I.

The evidence will further demonstrate that Plaintiffs' due diligence prior to purchase of the Property in 2005 was limited to "review" of the 2005 Phase I Environmental Site Assessment Report and a Project Report on Subsurface Environmental Investigation of Soil for Wastewater Clarifier Closure. The Project Report was limited to two shallow borings and soil samples adjacent to the

clarifier—nowhere else at the Property. TC Rich has admitted that "the investigation . . . . was revealed to be insufficient for purposes of evaluating the potential nature and extent of contamination at the property." Plaintiffs also sued Aqua Science for negligence related to its deficient 2005 investigation.

Nonetheless, Plaintiffs were aware from review of those reports that the Property had been occupied by a chemical supply company and that an above-ground storage tank containing PCE was used onsite for storage and resale of PCE. Further, they were well-aware of the wastewater clarifier and associated trenches (since filled with concrete), but did not inquire any further than reviewing the two reports—they just did whatever the bank told them to do.

Thus, the evidence demonstrates that the acts and omissions of Plaintiffs, and its agents, A/E West and Aqua Science, allowed the contamination to undetected for another decade, allowing further spread. Thus, Plaintiffs' recovery, if any, from Shiakh must be diminished in proportion to the amount of negligence attributable to Plaintiff.

**J.      Shaikh's Affirmative Defense of No Attorneys' Fees**

### 1.      Elements

Federal Rule of Civil Procedure 54(d)(2) allows a party to file a motion for attorneys' fees if it: (1) is filed within 14 days after judgment is entered; (2) identifies the legal basis for the award; and (3) indicates the amount requested or an estimate thereof. Moreover, "[a] federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." Pursuant to California Code of Civil Procedure section 1033.5(a)(10), a party may recover attorneys' fees only if authorized by contract, statute, or law. Cal. Civ. Proc. Code § 1033.5(a)(10); Fed. R. Civ. Proc. R. 54(d)(2); *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000).

Plaintiffs seek to recovery attorneys' fees under 42 U.S.C. § 6972(e). ECF No. 22 (FAC), at 21:6-7.



### 2. Evidence

This defense will likely only arise after a determination of liability is made. For the reasons stated in response to Plaintiffs RCRA claim, above, the evidence will show that Plaintiffs do not have a valid RCRA cause of action. For that reason, there is no statutory basis for an award of attorneys' fees to Plaintiffs.

## K. <u>Shaikh's Affirmative Defense of Set Off</u>

### 1. Elements

California Code of Civil Procedure section 877 requires a good faith settlement before judgment or verdict among joint tortfeasors. The term "joint tortfeasor," as used in sections 877 and 877.6, is broadly applied to not only to those who act in concert in causing an injury but generally to joint, concurrent and successive tortfeasors, and even more generally to all tortfeasors joined in a single action whose acts or omissions coincided to produce the sum total of the injuries to the plaintiff. Courts have given numerous non-inclusive factors relevant to determining whether a settlement was made in "good faith" under section 877.6.

Section 877 allows a non-settling defendant claimed to be liable for the same tort to set off against judgment in the amount specified in the release or dismissal of the settling defendant, or the amount of consideration paid, whichever is more for their remaining liability.

Cal. Civ. Proc. Code §§ 877, 877.6; *Mid-Century Ins. Exch. v. Daimler-Chrysler Corp.*, 93 Cal. App. 4th 310, 314 (2001); *PacifiCare of Cal. v. Bright Med. Assocs., Inc.,* 198 Cal. App. 4th 1451, 1460 (2011); *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.,* 38 Cal. 3d 488, 499 (1985).

### 2. Evidence

Shaikh will rely on testimony from Plaintiffs and judicially noticeable records from the related *TC Rich v Pacifica* matter to demonstrate that settlement payments received by Plaintiffs related to their claims against A/E West and Aqua Science entitle Shaikh to a setoff for those payments in the amount of $100,000.



Plaintiffs sued, and ultimately reached a settlement with both A/E West for professional negligence related to its deficient Phase I and Aqua Science for negligence related to its deficient 2005 investigation. Plaintiffs claim Shaikh is liable for the same harm as A/E West and Aqua Science.

### III.     EVIDENTIARY ISSUES

Plaintiffs disclosed that they intend to challenge Shaikh's use of air sampling data from the Property from December 2020, including use by Shaikh's expert witness(es). This issue was fully briefed for the Court in the recent cross-motions for summary judgment (see ECF No. 79, at n. 6) and Shaikh believes Plaintiffs may be filing a motion in limine regarding that evidence.

Shaikh also believes there will be issues regarding authenticity of multiple documents in this matter. The parties will continue to meet and confer to determine for which proposed exhibits they can stipulate to admissibility, but Shaikh anticipates the authenticity of a number of documents will remain at issue at trial.

Shaikh is not aware of any other evidentiary issues.

### IV.     LEGAL ISSUES

Shaikh is not aware of any issues of law that may arise at trial, such as the proper interpretation of a governing statute.

### V. BIFURCATION OF ISSUES

Shaikh is not seeking bifurcation of any issues or claims at this time.

### VI.     JURY TRIAL

This Court correctly stated that "the trial will be a bench trial." Dkt. No. 052 at 3:12. The parties have thus waived their right to a jury trial of any issues triable by a jury. *See id.*

### VII.     ATTORNEYS' FEES

As discussed above, a request for attorneys' fees will likely only arise after a determination of liability is made. For the reasons stated in response to Plaintiffs' RCRA claim, above, the evidence will show that Plaintiffs do not have a valid



RCRA cause of action. For that reason, there is no statutory basis for an award of attorneys' fees to Plaintiffs.

## VIII.   <u>ABANDONMENT OF ISSUES</u>

Shaikh has abandoned the following affirmative defenses:

- First Affirmative Defense: Failure to state a claim upon which relief can be granted
- Second Affirmative Defense: Third Party Defenses
- Fifth Affirmative Defense: Conformance with Statutes, Regulations, and Industry Standards
- Eighth Affirmative Defense: Case in Fact
- Ninth Affirmative Defense: Proximate Cause of Harm
- Eleventh Affirmative Defense: De Minimus Harm
- Fourteenth Affirmative Defense: Costs Inconsistent with the National Contingency Plan
- Fifteenth Affirmative Defense: Unnecessary Costs of Response
- Sixteenth Affirmative Defense: Act of God
- Eighteenth Affirmative Defense: Promissory Estoppel
- Nineteenth Affirmative Defense: Equitable Estoppel
- Twentieth Affirmative Defense: Statute of Limitations
- Twenty-First Affirmative Defense: Waiver
- Twenty-Second Affirmative Defense: Laches
- Twenty-Third Affirmative Defense: Unclean Hands
- Twenty-Fourth Affirmative Defense: Vagueness and Uncertainty
- Twenty-Fifth Affirmative Defense: Lack of Capacity
- Twenty-Sixth Affirmative Defense: Res Judicata
- Twenty-Seventh Affirmative Defense: Insufficient Notice
- Twenty-Eighth Affirmative Defense: Diligent Prosecution
- Twenty-Ninth Affirmative Defense: Statutory Bar



- Thirtieth Affirmative Defense: Lack of Subject Matter Jurisdiction
- Thirty-First Affirmative Defense: No Imminent and Substantial Endangerment
- Thirty-Second Affirmative Defense: Mootness
- Thirty-Third Affirmative Defense: Primary Jurisdiction
- Thirty-Fourth Affirmative Defense: Additional and Unstated Defenses

Respectfully submitted,

Dated: April 13, 2021         PALADIN LAW GROUP® LLP

                      By:   */s/ Kirk M. Tracy*
                            Kirk M. Tracy
                            Counsel for Defendant and Counter-Claimant Hussain M. Shaikh



-38-