RAINES FELDMAN LLP
JOHN S. CHA, ESQ. (SBN 129115)
jcha@raineslaw.com
1800 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone: (310) 440-4100
Facsimile:   (424) 239-1613

PILLSBURY WINTHROP SHAW PITTMAN LLP
MARK E. ELLIOTT (SBN 157759)
mark.elliott@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone:  (213) 488-7100
Facsimile:   (213) 629-1033

Attorneys for Plaintiffs
TC RICH, LLC, Rifle Freight, Inc., Fleischer
Customs Brokers, Richard G. Fleischer, and
Jacqueline Fleischer

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TC RICH, LLC, a California Limited Liability Company, RIFLE FREIGHT, INC., a California corporation, FLEISCHER CUSTOMS BROKERS, a sole proprietorship, RICHARD G. FLEISCHER, an individual, and JACQUELINE FLEISCHER, an individual, <br><br>              Plaintiffs, <br><br>      v. <br><br> HUSSAIN M. SHAIKH, an individual, HAROON KHAN, an individual, and SHAH CHEMICAL CORPORATION, a California Corporation. <br><br>              Defendants. | Case No.: 2:19-CV-02123-DMG-AGR <br><br> **PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** <br><br><br> Pre-trial Conference <br> Date: May 4, 2021 <br> Time: 2:00 p.m, <br> Courtroom: 8C <br> Judge: Hon. Dolly M. Gee <br><br> Trial Date: 06/01/21 <br><br> First Amended Complaint: 06/04/2019 |

# TABLE OF CONTENTS

Page

I. PLAINTIFFS' THEORY OF THE CASE AND FACTUAL CONTENTIONS ...................................................................................1

   A. Claims ....................................................................................1

   B. Affirmative Defenses ............................................................2

   C. Elements ................................................................................2

   D. Theory of the Case................................................................5

   E. Factual Contentions .............................................................8

II. PLAINTIFFS' LEGAL CONTENTIONS: ISSUES OF LAW ...................12

   A. Conditions at the Property may present an imminent and substantial endangerment to health or the environment ...................12

   B. Shaikh is Liable as an Owner of Property and Plaintiffs have incurred necessary and NCP-consistent response costs ...................16

   C. Plaintiff TC Rich performed all appropriate inquiries and is entitled to the innocent landowner defense.....................................19

   D. The Fleischers are not liable as current operators under CERCLA.....21

III. ADDITIONAL ISSUES ........................................................................24

   A. Bifurcation of Issues ...........................................................24

   B. Jury Trial.............................................................................24

   C. Attorneys' Fees ...................................................................24

   D. Motions in Limine ..............................................................24

   E. Abandonment of Certain Affirmative Defenses............................25

# **Table of Authorities**

Page

## Cases

*3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*,
  915 F.2d 1355 (9th Cir. 1990)..................................................................... 3, 17

*Beck Development Co. v. Southern Pacific Transportation Co.*,
  44 Cal. App. 4th 1160 (1996) ..........................................................................4

*Burlington N. & Santa Fe Ry. Co. v. Grant*,
  505 F.3d 1013 (10th Cir. 2007)........................................................................ 14

*Cal. Dep't of Toxic Substances Contol v. Westside Delivery, LLC*,
  888 F.3d 1085 (9th Cir. 2018).......................................................................... 20

*Cal. Dep't of Toxic Substances Control v. Farley*,
  No. C 05-3150 PJH, 2006 U.S. Dist. LEXIS 78607 (N.D. Cal. Oct.
  17, 2006) ............................................................................................................ 20

*Carson Harbor Vill., Ltd. v. Unocal Corp.*,
  270 F.3d 863 (9th Cir. 2001) ........................................................................... 19

*Castaic Lake Water Agency v. Whittaker Corp.*,
  272 F. Supp. 2d 1053 (C.D. Cal. 2003) ......................................................... 23

*City of Colton v. Am. Promotional Events, Inc. – West*,
  614 F.3d 998 (9th Cir. 2010) ....................................................................... 3, 18

*City of Los Angeles v. San Pedro Boat Works*,
  635 F.3d 440 (9th Cir. 2011) ..................................................................... 18, 22

*Cmty. Ass'n for Restoration of the Env't v. Cow Palace, LLC*,
  80 F. Supp. 3d 1180 (E.D. Wash.)............................................................. 14, 15

*Coppola v. Smith*,
  No. 1:11-cv-01257-AWI-BAM, 2015 WL 224730 (E.D. Cal. Jan.
  15, 2015) ............................................................................................................ 21

*Cose v. Getty Oil Co.*,
  4 F.3d 700 (9th Cir. 1993).............................................................................. 3, 17

*Dague v. City of Burlington*,
  935 F.2d 1343 (2d Cir. 1991)........................................................................... 13

*Hinds Investments, L.P. v. Angioli*,
   654 F.3d 846 (9th Cir. 2011) ................................................................. 4

*Kara Holding Co. v. Getty Petroleum Marketing, Inc.*
   No. 99 Civ. 0275 (RWS), 2004 WL 1811427 (S.D.N.Y. Aug. 12,
   2004) ...................................................................................................... 16

*Liebhart v. SPX Corporation*,
   917 F.3d 952 (7th Cir. 2019) ................................................................ 16

*McBride v. Smith*,
   18 Cal. App. 5th 1160 (2018) ................................................................. 4

*Me. People's Alliance v. Mallinckrodt, Inc.*,
   471 F.3d 277 (1st Cir. 2006) ................................................................ 13

*Newark Group v. Dopaco, Inc.*,
   No. 2:08-cv-02623-GEB-DAD, 2010 U.S. Dist. LEXIS 95061 (E.D.
   Cal. Sept. 12, 2010) ............................................................................... 15

*Price v. U.S. Navy*,
   39 F.3d 1011 (9th Cir. 1994) ................................................................ 13

*Ralphs Grocery Co. v. Victory Consultants, Inc.*,
   17 Cal. App. 5th 245 (2017) ................................................................... 4

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) .............................................................. 13

*Sisters of Notre Dame de Manur v. Garrett-Murray*,
   No. C10-01807 ..................................................................................... 16

*Sullins v. Exxon/Mobil Corp.*,
   729 F. Supp. 2d at 1137 ....................................................................... 14

*Taylor Farm Liab. Co. v. Viacom Inc.*,
   234 F. Supp. 2d 950 (S.D. Ind. 2002) ................................................. 21

*Trinity Indus. v. Greenlease Holding Co.*,
   903 F.3d 333 (3rd Cir. 2018) ............................................................... 22

*United States v Price*,
   688 F.2d 204 (3d Cir. 1982), *rev'd on other grounds*, 505 U.S. 557
   (1992) ................................................................................................... 13

*United States v. Bestfoods*,
524 U.S. 51 (1998)........................................................................5, 22, 23, 24

*United States v. Sterling Centrecorp Inc.*,
977 F.3d 750 (9th Cir. 2020) ...................................................................... 17

## Administrative Proceedings

Federal Register
Vol. 68, FR 24888-01 (May 9, 2003)............................................................ 20

## Statutes and Codes

California Civil Code
Section 3479 ................................................................................................4
Section 3481 ................................................................................................4

Resource Conservation and Recovery Act
Section 7002 ................................................................................................4

United States Code
Title 42, Section 6972(b)(2)..........................................................................4
Title 42, Section 9601.....................................................................................1
Title 28, Section 2201, et seq. ........................................................................1
Title 42, Section 6901 *et seq.* .......................................................................1
Title 42, Section 6903(15).............................................................................. 12
Title 42, Section 6903(27).............................................................................. 12
Title 42, Section 6903(5)(B) .............................................................. 9, 12, 18
Title 42, Section 6972(a)................................................................................ 16
Title 42, Section 6972(a)(1)(B) .......................................................... 4, 6, 12
Title 42, Section 6972(a)(2)............................................................................1
Title 42, Section 6972(e)................................................................................ 24
Title 42, Section 9601(14)...................................................................... 9, 18
Title 42, Section 9601(21)............................................................................. 18
Title 42, Section 9601(25)..................................................................... 3, 17
Title 42, Section 9601(29)............................................................................. 18
Title 42, Section 9601(35)(A)...............................................2, 5, 19, 21
Title 42, Section 9601(35)(A)(i)................................................................. 19
Title 42, Section 9601(35)(B)(i)...................................................... 5, 20
Title 42, Section 9601(35)(b)(IV)(II)......................................................... 20
Title 42, Section 9601(9)............................................................................. 18
Title 42, Section 9607(a)....................................................................... passim
Title 42, Section 9607(a)(2)...................................................... 1, 20

Title 42, Section 9607(b)(3)...................................................................5

Title 42, Section 9613(g)(2)............................................................. 1, 3

## Rules and Regulations

Code of Federal Regulations

Title 40, Part 300, et seq.......................................................... 6, 19

Title 40, Section 261.33 .........................................................13, 18

## I.   PLAINTIFFS' THEORY OF THE CASE AND FACTUAL CONTENTIONS

A.   Claims

Plaintiffs TC Rich, Richard G. Fleischer and Jacqueline Fleischer (together, the "Fleischers"), Rifle Freight, Inc., and Fleischer Customs Broker (collectively, "Plaintiffs") filed this action against Hussain M. Shaikh ("Shaikh")—the prior owner, operator, and polluter of the Property—seeking:

(1) cost recovery and contribution based on Shaikh's owner and operator liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 *et seq.* ("CERCLA"), as an owner and operator of a facility at the time of disposal of hazardous substances, 42 U.S.C. § 9607(a)(2) [Dkt. 22, Causes of Action 1 & 2];

(2) declaratory relief under CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2) and the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., declaring Shaikh jointly and severally liable as a responsible party under CERCLA §107(a)(2), and obligated to pay all future response costs incurred for remediation of the Property [Dkt. 22, Cause of Action 3];

(3) a judgment against Shaikh for the continuing trespass and continuing nuisance his actions caused on Plaintiffs' Property, and an order requiring Shaikh to abate the trespass and nuisance [Dkt. 22, Cause of Action 4 & 5]; and

(4) an order pursuant the Resource Conservation and Recovery Act 42 U.S.C. § 6901 *et seq.* ("RCRA"), 42 U.S.C. § 6972(a)(2), requiring Shaikh to remediate the PCE contamination at the Property as a person who contributed to the disposal of hazardous wastes at the

1   Property, which contamination constitutes a substantial and imminent
2   threat to Plaintiffs and their employees [Dkt. 22, Cause of Action 6].

3   B.   <u>Affirmative Defenses</u>

4   Shaikh filed Counterclaims against TC Rich and the Fleischers. [Dkt. 46].

5   The Fleischers intend to assert the following affirmative defense at trial, as
6   stated in their Answer to Shaikh's Counterclaim [Dkt. 51]:

7   <u>First Affirmative Defense</u>: Failure to state a claim upon which
8   relief can be granted. The Fleischers are neither owners nor
9   operators of a facility at which a hazardous substance has been
10   discharged, and therefore are not responsible parties under
11   CERCLA, §107(a)(1).

12   TC Rich intends to assert the following affirmative defense at trial, as stated
13   in its Answer to Shaikh's Counterclaim [Dkt. 51]:

14   <u>Second Affirmative Defense</u>: Third Party Defense (Innocent
15   Landowner). TC Rich did not cause or contribute to the
16   discharge of hazardous substances at the Property, TC Rich did
17   not know and had no reason to know that the Property was
18   contaminated, prior to purchase TC Rich performed all
19   appropriate inquiries in accordance with generally accepted
20   good commercial and customary standards and practices, and
21   since discovering the contamination, TC Rich has exercised due
22   care. Therefore, TC Rich is entitled to a complete "innocent
23   landowner" defense under CERCLA, 42 U.S.C. § 9601(35)(A).

24   C.   <u>Elements</u>

25   **CERCLA**

26   The elements of a cause of action for owner and/or operatory liability under
27   CERCLA require proof of the following:

28

CERCLA imposes strict liability when four elements are satisfied: (1) the site on which the hazardous substances are contained is a "facility"; (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred; (3) such "release" or "threatened release" has caused the plaintiff to incur response [1] costs that were "necessary" and "consistent with the national contingency plan"; and (4) the defendant is within one of four classes of "persons" subject to liability under the statute. 42 U.S.C. § 9607(a), in this instance "a person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed." See, *Cose v. Getty Oil Co.,* 4 F.3d 700, 703–04 (9th Cir. 1993); *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1358 (9th Cir. 1990). In addition to the elements of liability, a prima facie case for CERCLA liability further requires the plaintiff to have incurred response costs that were "necessary" and "consistent with the national contingency plan." *City of Colton v. Am. Promotional Events, Inc. – West*, 614 F.3d 998, 1002-1003 (9th Cir. 2010) (citing 42 U.S.C. § 9607(a)).

**Declaratory Relief**

The elements of a cause of action for declaratory relief under CERCLA § 113(g)(2) requires a showing that Plaintiffs are entitled to judgment on their CERCLA claim for response costs, after which the court shall enter a declaratory judgment that will be binding on any subsequent action or actions to recovery further response costs or damages. 42 U.S.C. § 9613(g)(2)

**Continuing Nuisance**

The elements of a cause of action, as stated in CACI 2021, for continuing nuisance requires a showing that (a) Plaintiffs currently own, occupy, or control the Property, (b) that Defendant, by acting or failing to act, created a condition that was

---

[1] In the context of CERCLA, "response" means "remove, removal, remedy, and remedial action," including "enforcement activities related thereto." 42 U.S.C. § 9601(25).

an obstruction of the free use of property, so as to interfere with the comfortable enjoyment of property, (c) that Defendant's conduct in acting or failing to act was intentional, negligent or reckless, (d) the condition substantially interfered with the use and enjoyment of the Property such that an ordinary person would be disturbed by the conduct, (e) that Plaintiffs did not consent to the conduct, (f) that Plaintiffs were harmed and Defendant's conduct was a substantial factor in that harm. California Civil Code §§ 3479, 3481; *Beck Development Co. v. Southern Pacific Transportation Co.*, 44 Cal. App. 4th 1160, 1209 (1996).

**Continuing Trespass**

The elements of a cause of action for trespass, as stated in CACI 2000, requires a showing that (a) Plaintiffs owned the Property, (b) Defendant intentionally caused a physical entry on the Property, (c) Plaintiffs did not permit such entry, (d) Plaintiffs were harmed by the act and the act was a substantial factor in causing the harm. *See Ralphs Grocery Co. v. Victory Consultants, Inc.*, 17 Cal. App. 5th 245, 261-62 (2017); *McBride v. Smith*, 18 Cal. App. 5th 1160, 1174 (2018).

**RCRA**

The elements of a cause of action for injunctive relief on a citizen suit claim under RCRA § 7002 requires a showing that (a) Defendant is a person and a past or present owner or operator of the facility, (b) who has contributed or is contributing to the past or present handling, storage, treatment or disposal of any solid or hazardous waste, (c) which may present an imminent and substantial endangerment to health or the environment; and (d) proper notice of the endangerment was given to the Administrator, the State and the alleged responsible party under 42 U.S.C. § 6972(b)(2) prior to the commencement of the action.  42 U.S.C. § 6972(a)(1)(B); *Hinds Investments, L.P. v. Angioli,* 654 F.3d 846, 850 (9th Cir. 2011).

**Affirmative Defense: Fleischers are not Operators under CERCLA**

The elements of the affirmative defense proffered by the Fleischers that they are not operators of a facility within the meaning of CERCLA, §107(a)(1), requires a showing that the Fleischers do not personally and currently operate the *facility* at which a disposal of hazardous substances occurred, and they do not personally manage, conduct, or direct decisions about compliance with environmental regulations at the facility. *See United States v. Bestfoods*, 524 U.S. 51, 68 (1998).

**Affirmative Defense: TC Rich is entitled to "innocent landowner" protection from liability.**

The elements of the affirmative defense proffered by TC Rich that it is entitled to a complete shield to liability as an "innocent landowner" under CERCLA is that: (1) TC Rich acquired the Property after disposal of hazardous substances occurred; (2) TC Rich did not know and had no reason to know that hazardous substances had been released on the Property; (3) TC Rich carried out "all appropriate inquiries" prior to purchase of the Property in accordance with generally accepted good commercial and customary standards and practices; and (4) TC Rich has exercised due care with respect to the hazardous substance since its discovery. 42 U.S.C. §§ 9601(35)(A) & (B)(i); 9607(b)(3).

The evidence supporting the forgoing causes of action and affirmative defenses are collectively summarized in the following sections.

D.     <u>Theory of the Case</u>

This action arises out of hazardous substance contamination at and released from the real property commonly known as 132 West 132nd Street, Los Angeles, California ("Property"). Plaintiff TC Rich, LLC ("TC Rich"), the current record owner of the Property, discovered chemical contamination at its Property in 2015, which includes significant subsurface concentrations of volatile organic compounds, including tetrachloroethene (a.k.a. perchloroethylene or "PCE"), a known toxic and carcinogenic compound commonly used as a cleaning solvent. In addition to appearing in soil, soil vapor, and groundwater samples taken from the Property,

airborne PCE has been detected within the structure on the Property at levels in excess of California Human Health Screening Levels for indoor air concentrations for commercial/industrial sites.

This Court previously determined in its Order Re Cross Motions for Summary Judgment ("Order") that Shaikh is a responsible party under CERCLA as a prior operator of a facility where hazardous substances were disposed, and that Plaintiffs (with the exception of Rifle Freight) incurred response costs. [Dkt. 79 at 12-13]. Therefore, the only elements remaining for Plaintiffs to establish for their CERCLA cost recovery and contribution claim against Shaikh with respect to his operator liability under CERCLA §107(a)(2) is whether Plaintiffs' response costs were necessary and consistent with the National Contingency Plan ("NCP").

In addition, the Order established that Shaikh contributed to the disposal of hazardous waste at the property within the meaning of RCRA § 6972(a)(1)(B). [Dkt. 79 at 9]. With that determination, in order to prevail on their RCRA claim, Plaintiffs must establish at trial that the contamination may pose an "imminent and substantial endangerment" to health or the environment.  42 U.S.C. § 6972(a)(1)(B).

The facts of this case are straight forward, and Plaintiffs' theory of the case is equally straight forward. Shaikh and his companies, over a period of more than two decades, operated chemical blending businesses that resulted in a release of PCE and other volatile organic compounds (VOCs) at the Property. Rather than ensuring the Property was free of contamination when Shaikh sold it to a third party in 2003, Shaikh and his companies walked away without ever disclosing their releases and the likelihood of subsurface contamination.

In 2005, TC Rich began due diligence in advance of its eventual purchase of the Property. Its lender commissioned an environmental contractor, A/E West, to conduct a Phase I investigation. A/E West recommended a limited further investigation based on historical operation of the clarifier at the Property, including creation of a closure report for the clarifier with accompanying soil sampling. In

accordance with A/E West's recommendation, Plaintiffs retained Aqua Science Engineers to review the status of the clarifier and conduct any necessary additional investigation. Aqua Science thereafter coordinated with the Los Angeles Department of Public Works ("DPW") to perform the requisite soil sampling in the area of the clarifier under DPW supervision. The sampling did not identify any concerns and, following these activities, TC Rich acquired the Property in May 2005. Since TC Rich's purchase in 2005, the Property has been used for customs brokerage, logistics and distribution services businesses.

It was not until 2015 that TC Rich discovered subsurface contamination at the Property through a refinancing effort, and since that date the Plaintiffs have acted reasonably and diligently to work with DTSC and Shaikh's company, Pacifica Chemical, to investigate the contamination. In addition, Plaintiffs have instituted mitigation measures at the Property to protect their workers from vapor intrusion. DTSC has recommended these measures continue until subsurface remediation is complete.

The evidence shows that Shaikh and his companies are the sole causes and contributors to the subsurface contamination now found in groundwater, soil, soil vapor, and indoor air at the Property. As such, it is Shaikh and his companies who should be required to fully remediate the Property.

The evidence also demonstrates, and Plaintiffs will prove at trial, that DTSC has determined that remediation is necessary and will be required – either through voluntary action or by order – and that Property conditions pose a threat to human health and the environment. In particular, soil vapor concentrations below the Property are several orders of magnitude higher than USEPA's screening levels for indoor air quality, there is contamination of potential drinking water offsite with PCE concentrations 20x greater than MCL standards, and to date there have been only inconclusive indoor air quality in buildings regularly occupied by employees. The serious risk of migration of PCE vapors from subsurface soils into indoor air

PLAINTIFFS' MEMORANDUM OF CONTENTIONS
OF FACT AND LAW
Case No. 2:19-cv-02123-DMG-AGR

(i.e., soil vapor intrusion) posed by the soil vapor concentrations below the Property clearly demonstrate a very serious and substantial risk of imminent and substantial endangerment, which is requiring Plaintiffs to take mitigation measures to protect the building occupants, including by leaving all windows and doors open during working hours.

Plaintiffs respectfully urge this Court to rule, consistent with CERCLA and RCRA, that: (1) Shaikh is jointly and severally liable for the contamination at the Property and must reimburse all past and future response costs incurred by Plaintiffs; (2) Shaikh must fully remediate the Property pursuant to RCRA and reimburse Plaintiffs for the attorneys' fees and costs they have incurred prosecuting this action; and (3) Shaikh must abate the continuing nuisance and trespass at the Property that his past activities caused.

E.    Factual Contentions

**Shaikh was the Owner and Operator at the Property for over 20 Years When Disposal Of Hazardous Substances Occurred**

In August 1979, Shaikh purchased the Property and used it as the site of operations for his wholly-owned specialty chemical company, Shah Chemical Corporation ("Shah Chemical"), and later for its successor company, Pacifica Chemical Incorporated ("Pacifica Chemical"). Shaikh's companies blended and mixed chemicals for the textile industry and repackaged chemicals, including PCE – an industrial solvent and a hazardous substance under CERCLA and RCRA – for resale.

Until at least 1986, large quantities of PCE were stored by Shaikh's companies in a 2,000-gallon above-ground storage tank located in the interior of the building at the Property next to mixing and blending tanks utilized for production of company products. In addition to the 2,000-gallon above-ground tank, Shaikh's companies also installed a clarifier and corresponding sampling box, plus un-lined

cement trench drains in the floor of its warehouse building, which channeled to the clarifier system.

From 1979 until approximately 2000, Shaikh's companies generated industrial wastewater from reported cleaning of chemical mixing and blending operations, and both companies received numerous notices of violation from oversight agencies for improper wastewater handling practices, including wastewater containing PCE. Shaikh admits that there was a release of PCE to the environment during this time, that PCE is a hazardous substance under RCRA (42 U.S.C. § 9601(14); 42 U.S.C. § 6903(5)(B)), and that PCE is currently present in soil and groundwater at the Property.

Shaikh also admits that he, and he alone, was responsible for the waste management practices and environmental compliance obligations of and for his companies. Since Shaikh's sale of the Property to a third party in 2003, no subsequent owners or operators have generated industrial wastewater or utilized the now abandoned clarifier, nor have there been any known uses of PCE or other hazardous substances at the Property.

**TC Rich had no knowledge of PCE contamination when it purchased the Property in 2005**

In early 2005, TC Rich performed due diligence in anticipation of its eventual purchase of the Property from a third party, Eun Hee Lee. By this point, the Property had been kept vacant and/or used for dry storage for nearly five years, and the chemical tanks, trenches, and clarifier had long since been removed or filled with cement.

TC Rich and its lender commissioned a licensed environmental contractor, A/E West, to conduct a Phase I investigation. A/E West recommended a limited further investigation based on historical operation of the clarifier at the Property, including creation of a closure report for the clarifier with accompanying soil sampling. In accordance with A/E West's recommendation, another licensed

1  environmental contractor, Aqua Science Engineers, reviewed the status of the
2  clarifier to conduct any necessary additional investigation.

3       Aqua Science determined that Shaikh had obtained a closure certificate for
4  the clarifier from the DPW in 2004, but that no confirmatory soil sampling had been
5  performed. Aqua Science thereafter coordinated with DPW to perform soil sampling
6  near the abandoned clarifier under DPW's direction and supervision. The sampling
7  did not identify any concerns and, following these activities, TC Rich acquired the
8  Property in May 2005. After TC Rich's purchase in 2005, the Property has been
9  leased by customs brokerage, logistics and distribution services businesses, none of
10 which uses hazardous substances.

11 **Plaintiffs have acted with due care since discovering PCE contamination in**
12 **2015 and have incurred necessary and NCP-consistent response costs**

13       In March 2015, in connection with a refinancing effort, a new Phase I
14 investigation was conducted. The contractor hired to conduct the Phase I identified
15 the former Shah Chemical and Pacifica Chemical operations as recognized
16 environmental conditions and recommended further soil sampling near the closed
17 clarifier and along the concrete trenches leading to the clarifier. In March-April
18 2015, additional sampling was performed by EEC Environmental ("EEC"),
19 revealing PCE contamination at the Property. TC Rich immediately notified DTSC
20 of the sampling results, requested agency oversight, and together with DTSC,
21 actively engaged with Shaikh and Pacifica Chemical to further investigate the
22 contamination.

23       TC Rich has continuously retained EEC to oversee and monitor the
24 investigation progress at the Property under DTSC's oversight and initial directions
25 to the company to do so. Initially, and before Pacifica Chemical agreed to assume
26 the lead, EEC also prepared an investigation workplan as directed by DTSC. EEC
27 currently assists in the on-going investigation through consultations with the
28 agencies, reviews and comments on all investigations and work plans submitted to

DTSC, assists with technical interpretations, and monitors the investigation activities. In addition, the businesses that operate at the Property have cooperated with all investigatory activities, including by providing access upon request and instituting mitigation measures to protect employees from the risk of vapor intrusion.

**DTSC determined harmful soil vapor levels exist beneath the building and present a risk to human health due to vapor intrusion**

The discovery of PCE at the Property resulted in the need to investigate and characterize volatile organic compounds (VOCs), including PCE and its daughter compounds, in soil, soil gas, and groundwater beneath the Property and to assess potential risks to human health associated with PCE in soil vapor and indoor air at the Property. Upon discovery of the contamination and the high concentrations of PCE in indoor air which presented a risk to company employees, in June 2015 DTSC directed TC Rich to undertake mitigation measures to reduce the concentrations of the chemical though increased ventilation until completion of subsurface remediation at the Property. TC Rich undertook mitigation measures, still in effect today, to combat PCE vapor intrusion into the building through the opening of doors and windows during operating hours and increased air exchange. Those mitigation measures will remain in effect until the remediation is complete and human health risks presented by subsurface contamination are eliminated.

Since late-2015, Shaikh's company, Pacifica Chemical, has begrudgingly taken the lead in conducting investigations of the contamination under DTSC's supervision. Its environmental contractor, Murex, has performed these activities, including development of a July 2018 Removal Action Workplan ("RAW"), which states:

> The Site was reportedly occupied by Pacifica from the late-1970s until roughly 1999. Operations conducted by Pacifica were reported to include chemical mixing and distribution, including the formulation of fabric softeners, dyes, and light detergents. It is the storage and

1   <u>transfer of tetrachloroethylene (PCE) in the late-1970s/early-1980s</u>
2   <u>that is suspected of being the source of PCE impacts at the Site</u>.

3   (Emphasis added).

4   Despite these activities, no actual remediation has been performed, nor has
5   any removal or other protective action been taken to ameliorate or otherwise reduce
6   elevated PCE concentrations in indoor air and soil vapor. Despite having been
7   approached by the DTSC to do so, Shaikh and his companies have not agreed to
8   enter into a Voluntary Cleanup Agreement ("FICA") with DTSC to guarantee their
9   performance of the cleanup.

10   To date, Shaikh has not paid for any of the services performed by Murex or
11   any other environmental contractor relating to the investigation and remediation of
12   the Property. Plaintiffs, on the other hand, have incurred necessary and NCP-
13   consistent response costs, including the costs to perform initial investigations and
14   notifications to DTSC immediately following discovery of the contamination.

15   **II.   PLAINTIFFS' LEGAL CONTENTIONS: ISSUES OF LAW**

16   A.   <u>Conditions at the Property may present an imminent and substantial</u>
17   <u>endangerment to health or the environment</u>

18   RCRA provides for a citizen suit cause of action against "any person . . . who
19   has contributed or who is contributing to the past or present handling, storage,
20   treatment, transportation, or disposal of any solid or hazardous waste which may
21   present an imminent and substantial endangerment to health or the environment." 42
22   U.S.C. § 6972(a)(1)(B). Under RCRA, a "person" means an "individual", including
23   such persons as Shaikh. 42 U.S.C. § 6903(15). A "hazardous waste" means a "solid
24   waste" which "<u>may</u> . . . pose a substantial present or potential hazard to human
25   health or the environment when improperly treated, stored, transported, or disposed
26   of, or otherwise managed." 42 U.S.C. §6903(5)(B) (emphasis added). "Solid waste"
27   includes "discarded material, including solid, liquid, semisolid, or contained gaseous
28   material" from industrial or commercial operations. 42 U.S.C. § 6903(27). Although

RCRA does not define "discarded material," the Ninth Circuit has interpreted the term according to its ordinary meaning, as "to cast aside; reject; abandon; give up." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1041 (9th Cir. 2004). PCE disposed to the environment at the Property is recognized as a hazardous waste under RCRA. *See* 40 C.F.R. § 261.33.

RCRA's "expansive language" is "intended to confer upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate <u>any risk</u> posed by toxic wastes," such as we see at the Property due to presence of high levels of hazardous substances in soil vapor beneath the building. *Dague v. City of Burlington*, 935 F.2d 1343, 1355 (2d Cir. 1991) (emphasis in original) (quoting *United States v Price*, 688 F.2d 204, 213-14 (3d Cir. 1982), *rev'd on other grounds*, 505 U.S. 557 (1992). In evaluating whether site conditions may present an imminent and substantial endangerment, "courts have emphasized the preeminence of the word 'may' in defining the degree of risk needed to support" liability under RCRA. *Me. People's Alliance v. Mallinckrodt, Inc.*, 471 F.3d 277, 288 (1st Cir. 2006). Moreover, the term "imminent" "does not require a showing that actual harm will occur immediately so long as the risk of threatened harm is present." *Price v. U.S. Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994); *see also Interstate Non-Ferrous Corp.*, 298 F.Supp.2d at 980 ("When one is endangered, harm is threatened; no actual injury need ever occur.").

As found by the Court, the record supports the conclusion that Shaikh contributed to the disposal of hazardous waste at the Property through his management of the waste practices of his chemical companies [Dkt. 79 at 11], and evidence introduced at trial will show that the resulting contamination poses a risk of threatened, actual harm to health or the environment. *See, Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d at 980. In particular, there is a serious risk of migration of PCE vapors from subsurface soils into indoor air (i.e., soil vapor intrusion) posed by the soil vapor concentrations below the Property, which are several orders of

magnitude higher than USEPA's screening levels for indoor air quality, clearly demonstrating a very serious and substantial risk of imminent and substantial endangerment. *Sullins v. Exxon/Mobil Corp.*, 729 F. Supp. 2d at 1137 (holding plaintiffs are "not required to show actual harm or to quantify the threat of danger. They merely must show that 'someone or something may be exposed to a risk of harm by a release or a threatened release of a hazardous substance if remedial action is not taken.'").

Plaintiffs' experts' testimony makes clear through irrefutable soil vapor data (as opposed to the erroneous indoor air sampling data relied upon by Mr. Brown which ignores the mitigation measures – namely open doors and windows – instituted at the Property prior to the initial November 2015 indoor air quality sampling by Defendants and which remained in effect during the improper December 2020 sampling event) that site conditions—including soil vapor concentrations exceeding USEPA health-based standards by several orders of magnitude, contamination of potential drinking water offsite with PCE concentrations 20x greater than MCL standards, and inconclusive indoor air quality in buildings regularly occupied by employees—may constitute an imminent and substantial endangerment to health or the environment.

As expressed both by DTSC and Plaintiffs' expert Mr. Chamberlin, an endangerment is "substantial" where there is "reasonable cause for concern that someone or something may be exposed to risk of harm by release, or threatened release, of hazardous substances." *See Interstate Non–Ferrous Corp.*, 298 F. Supp. 2d at 980; *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1021 (10th Cir. 2007); *Cmty. Ass'n for Restoration of the Env't v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1227 (E.D. Wash.) ("When determining whether imminent and substantial endangerment exists … an endangerment is 'substantial' when it is serious … [it] does not require proof of actual harm but rather a threatened or potential harm."). There are exposure pathways to PCE contamination at the

Property through groundwater, soil, and soil vapor, and the risk of such exposure poses an imminent and substantial endangerment to health and the environment. *Newark Group v. Dopaco, Inc.*, No. 2:08-cv-02623-GEB-DAD, 2010 U.S. Dist. LEXIS 95061, *19-20 (E.D. Cal. Sept. 12, 2010) (finding that evidence of an "exposure pathway" can suffice to create a genuine issue of material fact); *Cow Palace, LLC*, 80 F. Supp. 3d at 1227 ("When determining whether imminent and substantial endangerment exists … the term imminent does not require a showing that actual harm will occur immediately so long as the risk of threatened harm is present.").

Here, the PCE contamination is not merely *present* in groundwater, soil, and soil vapor, or in excess of California's public health goals, it includes soil vapor concentrations tested over time that exceeded USEPA health-based standards by several orders of magnitude, contamination of potential drinking water offsite with PCE concentrations 20x greater than MCL standards, and inconclusive indoor air quality in buildings regularly occupied by employees due in part to improper sampling protocols by Defendant's consultant.

DTSC itself has stated in official correspondence that Property conditions pose a threat to human health and the environment and directed that the mitigation measures in effect today be instituted pending the completion of the remediation of the property so as to eliminate the continuing risk from vapor intrusion. These conditions will continue to exist until remediation is completed. Pursuant to DTSC policy, the risk presented by vapor intrusion must be considered in a conservative, protective manner. In the absence of completing the remediation of the Property, defendants may not capitalize upon the mitigation measure to claim that the site contamination does not present an imminent and substantial endangerment to human health and the environment based exclusively upon the improperly conducted 2015 and 2020 indoor air quality sampling events and sampling results. When imminent and substantial endangerment arises from a threat to human health, plaintiffs must

typically show "that there are [contaminants] currently on the property that have the potential to substantially threaten [human] health at some point in the future if they continue occupy the property and prolong their exposures." *Liebhart v. SPX Corporation*, 917 F.3d 952, 959 (7th Cir. 2019). While Defendant may profess that his company has begun remediation through the long dormant vapor extraction system pilot test, that is insufficient to abate the contamination and eliminate potential harm. Significant remediation must be completed to document consistent and significant reductions in site contamination to combat the risk presented by the subsurface contamination. *Kara Holding Co. v. Getty Petroleum Marketing, Inc.* No. 99 Civ. 0275 (RWS), 2004 WL 1811427, at *11 (S.D.N.Y. Aug. 12, 2004). In the absence of remediation of the Property, past evidence of unabated contamination at the site is sufficient to establish potentially threatening activity. *Sisters of Notre Dame de Manur v. Garrett-Murray*, No. C10-01807 (HRL, 2012 WL 2050377, at *5 (N.D. Cal. June 6, 2012).

Also, it must be noted in brief, that the evidence upon which Shaikh and Mr. Brown rely to support the claim of "no" endangerment, is ill-gotten and so inherently unreliable so as to be inadmissible, as set forth in Plaintiffs' Motion in Limine filed concurrently herewith. That indoor air data, and the opinions Mr. Brown derives from it, should be stricken from the record.[2]

B.    Shaikh is Liable as an Owner of Property and Plaintiffs have incurred necessary and NCP-consistent response costs

As noted at the outset, this Court has already adjudicated the liability of Shaikh as an operator at the Property. [Dkt. 79 at 13]. However, CERCLA liability

---

[2] The final "element" of Plaintiffs' RCRA citizen suit claim against Shaikh is to establish the factual and legal basis to restrain the responsible party from the improper disposal of a hazardous waste and to order such person to "take such other action as may be necessary." 42 U.S.C. section 6972(a). Plaintiffs, Defendant, and the testifying experts are in agreement that remediation is required at the Property to abate the PCE contamination in soil, soil vapor and groundwater and to prevent vapor intrusion into the building at the Property.

in this instance is not limited to Shaikh's role as the Property's operator.  He also has liability as an owner at the time of release of hazardous substances.

CERCLA imposes strict liability when four elements are satisfied: (1) the site on which the hazardous substances are contained is a "facility"; (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred; (3) such "release" or "threatened release" has caused the plaintiff to incur response[3] costs that were "necessary" and "consistent with the national contingency plan"; and (4) the defendant is within one of four classes of "persons" subject to liability under the statute. 42 U.S.C. § 9607(a); *Cose v. Getty Oil Co.,* 4 F.3d 700, 703–04 (9th Cir. 1993); *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1358 (9th Cir. 1990). Courts construe CERCLA liberally to effectuate its two primary goals of ensuring the prompt cleanup of hazardous waste disposal sites, and to "assure that parties responsible for hazardous substances bear the cost of remedying the conditions they created." *United States v. Sterling Centrecorp Inc.*, 977 F.3d 750, 756 (9th Cir. 2020) (internal quotations omitted).

It is undisputed that Shaikh was the record owner of the Property from 1979 until 1984, and again from 1987 (after re-acquiring the Property) until its sale in 2003. According to records acquired from the Los Angeles County Sanitation District between November 1992 and October 1999, PCE was regularly detected in the wastewater sampling at Pacifica Chemical's three stage clarifier. As will be explained by Plaintiffs' expert, David Chamberlin, it is not in dispute that the presence of PCE in wastewater throughout this time is attributable to the use and disposal PCE in the interior of the building on the Property. This use and disposal occurred during Shaikh's ownership of the Property.

---

[3] In the context of CERCLA, "response" means "remove, removal, remedy, and remedial action," including "enforcement activities related thereto." 42 U.S.C. § 9601(25).

PLAINTIFFS' MEMORANDUM OF CONTENTIONS
OF FACT AND LAW
Case No. 2:19-cv-02123-DMG-AGR

In brief, Shaikh, an individual, is a "person" within the meaning of CERCLA. 42 U.S.C. § 9601(21). Shaikh admitted in responses to written discovery that the Property is a "facility" within the meaning of CERCLA (*see* 42 U.S.C. § 9601(9)), and that PCE is a "hazardous substance" under CERCLA (*see* 42 U.S.C. § 9601(14); 42 U.S.C. § 6903(5)(B); 40 C.F.R. § 261.33). As discussed at length in Plaintiffs' Motion for Partial Summary Judgment, PCE was used and stored in large quantities by Shaikh's companies at the Property for over 20 years while he was the fee title owner, including the years immediately noted above. *See San Pedro Boat Works,* 635 F.3d at 451. It is the PCE that was disposed in the course of Shaikh and his companies' operations that is now found in groundwater and soil at the Property. *See* 42 U.S.C. § 9601(29) ("disposal" refers to "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such [waste] or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."); *Voggenthaler,* 724 F.3d at 1064. These undisputed facts regarding ownership, facility, and disposal/release of a hazardous substance meet the liability requirements of CERCLA Section 107(a)(2) and (4) as an owner.

In addition to the elements of liability, a prima facie case for CERCLA liability further requires the plaintiff to have incurred response costs that were "necessary" and "consistent with the national contingency plan." *City of Colton v. Am. Promotional Events, Inc. – West*, 614 F.3d 998, 1002-1003 (9th Cir. 2010) (citing 42 U.S.C. section 9607(a)). While not an issue previously before the Court in anything more than a surficial manner, Plaintiffs will establish through trial evidence – including the invoicing and proofs of payment for the services of EEC Environmental, Plaintiffs' primary environmental contractor for their response activities – the necessity and consistency of the response costs incurred. Expert testimony from Jeffrey Zelikson, a former 25-year employee of the United States Environmental Protection Agency, who currently provides expert evaluations on

recovery of remediation costs will assist in laying this foundation. Mr. Zelikson, who focuses his work on consistency with the National Oil and Hazardous Substances Pollution Contingency Plan, 40 CFR Part 300, et seq. ("NCP"), has conducted an analysis of the necessity and consistency of Plaintiffs' response costs and will establish that $56,587 of response activities are properly accounted for, and the underlying activities were both necessary and consistent with the NCP. In particular, the site evaluation conducted by EEC Environmental in response to the release of hazardous substances and in collaboration with DTSC forms a significant portion of these response costs.

C.    <u>Plaintiff TC Rich performed all appropriate inquiries and is entitled to the innocent landowner defense</u>

In response to Shaikh's counterclaim under CERCLA and the HSAA as a current owner of property, TC Rich asserts the affirmative defense afforded to an innocent purchaser of property. The innocent landowner defense, added to CERCLA 1986 as part of the Superfund Amendments and Reauthorization Act (SARA), provides that a person who acquires contaminated property but who "did not know and had no reason to know" of the contamination at the time of purchase will not be liable for the contamination. 42 U.S.C. § 9601(35)(A)(i).[4]

To qualify as an innocent landowner, the purchaser must meet certain statutory requirements. First, the purchaser must have acquired ownership of the property after all disposal of hazardous substances has occurred at the property. *Id.* § 9601(35)(A). There is ample evidence on the record establishing – and Shaikh cannot seriously dispute – that the disposal of hazardous substances occurred when Shaikh owned the Property, and no disposal has occurred at the Property since TC Rich assumed ownership in 2005. *See, e.g.,* Dkt. 61-3 at 7-8 (SSUF 29, 35-38); *see also Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 879 (9th Cir. 2001)

---

[4] As Shaikh states in his Motion, Section 25323.5(b) of the HSAA incorporates the federal innocent landowner defense.

(holding that gradual passive migration of contamination through soil is not a "disposal" within the meaning of § 9607(a)(2)).

Second, on or before the date of purchase, the purchaser must make "all appropriate inquiries" regarding the previous ownership and use of the property, consistent with "generally accepted good commercial and customary standards and practices." 42 U.S.C. § 9601(35)(B)(i). When TC Rich purchased the Property in 2005, the "all appropriate inquiry" standard was defined as compliance with the procedures under the American Society for Testing and Materials (ASTM) Standard E1527-00. Rosen Decl., ¶ 15; *see* 42 U.S.C. § 9601(35)(b)(IV)(II) & 68 FR 24888-01 (May 9, 2003).

A court deciding whether the innocent landowner defense applies must consider only the purchaser's knowledge and actions at the time of purchase; not information he gains through hindsight. *See Cal. Dep't of Toxic Substances Contol v. Westside Delivery, LLC*, 888 F.3d 1085, 1092 (9th Cir. 2018) (noting that the relevant inquiry for innocent-landowner defense is whether the private purchaser of land "did not have actual or constructive knowledge of contamination at the time of purchase"); *see also Cal. Dep't of Toxic Substances Control v. Farley*, No. C 05-3150 PJH, 2006 U.S. Dist. LEXIS 78607, at *20-22 (N.D. Cal. Oct. 17, 2006) (denying summary judgment on applicability of innocent landowner defense because genuine dispute existed as to whether landowners had knowledge or reason to know of contamination "when they bought the property").

The innocent landowner defense is fact-intensive and requires a weighing of the evidence. Here, the parties have differences in how they interpret the evidence, in particular whether TC Rich had the right to rely on the Phase I report prepared by A/E West prior to TC Rich's purchase of the Property. TC Rich's expert, Ms. Rosen, has offered an opinion in support of TC Rich's affirmative defense in which she concludes that TC Rich followed standard industry protocol for performing all appropriate inquiries due diligence under CERCLA in 2005, and had no reason to

know that contamination existed on the Property. Rosen Decl., ¶¶ 32-39. In deposition, and assumedly at trial, Defendant's expert Mr. Brown will testify that, lacking any education, training, or experience in management of environmentally contaminated sites, TC Rich had no reason to dispute the conclusion of A/E West.

Shaikh's unsupported assertion that TC Rich's settlement with A/E West for professional negligence over ten years later somehow voids the reasonableness of TC Rich's actions *at the time of purchase*, is erroneous. To the contrary, the innocent landowner defense is available to a landowner who "had no reason to know of contamination on the property **at the time of purchase**." *Coppola v. Smith*, No. 1:11-cv-01257-AWI-BAM, 2015 WL 224730, at *12 (E.D. Cal. Jan. 15, 2015) (emphasis added); *see also Taylor Farm Liab. Co. v. Viacom Inc.*, 234 F. Supp. 2d 950, 966 (S.D. Ind. 2002) (stating that the innocent landowner defense is available where landowner was unaware of contamination and "exercised the kind of diligence to find out that would have been appropriate at the time of purchase").

Finally, upon discovery by TC Rich of the contamination left by Shaikh and his companies, TC Rich immediately notified DTSC and has continued to exercise due care. 42 U.S.C. § 9601(35)(A). In prior motion practice, Shaikh misconstrued the law by asserting that TC Rich must "address the contamination" in order to satisfy its due care obligations, when in fact Shaikh and his companies have been tasked with addressing the contamination by the oversight agency. [Dkt. 79 at 15]. It is incorrect to suggest that TC Rich must conduct affirmative cleanup activities without agency approval in order to satisfy its statutory obligations as an innocent landowner. *Id.* As provided above, and as will be established at trial, the test to determine whether TC Rich satisfied the innocent landowner defense is defined by the company's knowledge at the time of the investigation, not by the ultimate remedy for the Property.

D.      The Fleischers are not liable as current operators under CERCLA

**The Fleischers are Not Owners of a Facility**

Shaikh's counterclaim against the Fleischers specifically alleges that the Fleischers are individually liable under CERCLA because they are "owners" of a facility pursuant to CERCLA §107(a)(1). (ECF 46, ¶16). The Ninth Circuit held in *City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440 (9th Cir. 2011), that an "owner" under CERCLA § 107(a) means the fee title owner. *Id.* at 451. There is no allegation, much less evidence, that the Fleischers are the fee title "owners" of the Property. As acknowledged by the Court, Defendant has conceded that the Fleischers are not subject to owner liability under the CERCLA statutes. [Dkt. 79 at fn. 13).

**The Fleischers Are Not Current Operators of a Facility**

Shaikh seeks to misapply the law governing direct operator liability of a parent company under CERCLA § 107(a)(2) (operator at the time of disposal), to his allegation that the Fleischers are liable as current operators of a facility under CERCLA § 107(a)(1) – a different liability category under CERCLA. Shaikh has previously relied on the Supreme Court's interpretation of CERCLA § 107(a)(2) in *United States v. Bestfoods*, 524 U.S. 51 (1998), to argue that the Fleischers are operators of a facility because they are "the owners and operators of their various entities." (ECF 59-1, p. 28). As previously noted by the Court, corporate structure is not enough to show that the counter-defendants are operators under the Bestfoods test. *See Bestfoods*, 524 U.S. at 68; [Dkt. 79 at 16]. This argument is legally deficient on its face, but, even if it had some merit (which it does not), it would require this Court to perform a fact intensive inquiry into the Fleischers' specific roles and activities vis-à-vis their companies and the facility, the review of which would require determination of numerous disputed material facts. *See Trinity Indus. v. Greenlease Holding Co.*, 903 F.3d 333, 365 (3rd Cir. 2018) (noting that direct CERCLA liability "will only exist if there is evidence that [the parent] managed the day-to-day activities of the [subsidiary] in a manner that exceeds the interference that stems from the normal relationship between parent and subsidiary."). Payment

1  of an invoice associated the Property investigation is not alone sufficient to establish
2  the pervasive level of control required by *Bestfoods*.

3       In *Bestfoods*, the Court evaluated the standards for imposing direct and
4  derivative operator liability under CERCLA § 107(a)(2) on a parent company that
5  managed waste management operations at its subsidiary's facility. *Bestfoods*, 524
6  U.S. at 63-64, 66-67. Shaikh has made no veil-piercing allegations in this matter,
7  and therefore *Bestfoods*' discussion of derivative liability is not relevant.  Instead,
8  Shaikh's reliance on *Bestfoods* evidently relates to the Court's direct liability
9  discussion as it pertains to a parent company's potential for direct operator liability
10  under CERCLA § 107(a)(2).

11       The Court reasoned that under the facts before it, the parent could be held
12  directly liable as an operator under CERCLA. *Id.* at 67 (analyzing operator liability
13  "on the facts of this case"). However, the Court was careful to note that a finding of
14  direct operator liability against a parent company for activities occurring at a
15  subsidiary's facility, requires something more than "common corporate personnel
16  acting at management and directorial levels." *Id.* at 70. Rather, "[t]he critical
17  question is whether, in degree and detail, actions directed to the facility by an agent
18  of the parent alone are eccentric under accepted norms of parental oversight of a
19  subsidiary's facility." *Id.* at 72.

20       Shaikh can make no showing that the Fleischers' status as owners, officers,
21  and employees of their companies is a sufficient basis upon which to impose direct
22  operator liability on them as individuals. *See Castaic Lake Water Agency v.*
23  *Whittaker Corp.*, 272 F. Supp. 2d 1053, 1079 (C.D. Cal. 2003) (holding that the
24  mere fact an entity is the sole owner of its subsidiary is insufficient to satisfy the
25  direct operator liability test articulated in *Bestfoods*).

26       Instead, the evidence shows that the Fleischers are businesspeople whose
27  businesses cumulatively employ over a dozen employees, occupy well-defined
28  portions of the Property pursuant to month-to-month leases with TC Rich, and pay

set monthly rents to TC Rich. There are no facts or legal authority – and Shaikh can cite none – suggesting that the Fleischers' operation of their *businesses* can be legally equated to personal direct operator liability under the *Bestfoods* analysis; and in any case, such an analysis would require the weighing and adjudication of numerous disputed material facts for which Defendant possesses no evidence to controvert.

## III.  ADDITIONAL ISSUES

A.  Bifurcation of Issues

Plaintiffs do not request a bifurcation of issues.

B.  Jury Trial

Plaintiffs do not request a jury trial.

C.  Attorneys' Fees

Plaintiffs are entitled to recover their costs of litigation, including reasonable attorney and expert witness fees, if they are the prevailing or substantially prevailing party under their Sixth Cause of Action against Shaikh seeking injunctive relief under the citizen suit provision of RCRA. 42 U.S.C. § 6972(e).

D.  Motions in Limine

Plaintiffs filed two motions in limine seeking to: (1) exclude scientifically unsound indoor air sampling data collected in December 2020 on the basis that the evidence was obtained using methodologies so improper as to render the evidence lacking any indicia of reliability and therefore is inadmissible, and in addition, the evidence was surreptitiously and improperly obtained outside of the discovery process (Motion in Limine #1); and (2) exclude opinions C & D contained in the report of Defendant's rebuttal expert Wiley R. Wright, III on the basis that the opinions expressed are not his own, but rather, represent a mere adoption of another expert's opinion (Motion in Limine #2).

E.      <u>Abandonment of Certain Affirmative Defenses</u>

The 3rd through 33rd affirmative defenses pleaded in TC Rich and the Fleischers' Answer to Shaikh's Counterclaim are abandoned. [Dkt. 51].

Dated: April 13, 2021          RAINES FELDMAN LLP


                               By:    */s/ John S. Cha*
                                      JOHN S. CHA


                               PILLSBURY WINTHROP SHAW PITTMAN LLP

                               By:    */s/ Mark E. Elliott*
                                       MARK E. ELLIOTT

                                      Attorneys for Plaintiffs
                                      TC RICH, LLC, Rifle Freight, Inc., Fleischer
                                      Customs Brokers, Richard G. Fleischer, and
                                      Jacqueline Fleischer